**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:  **CLASS CASES**

*Southeast Laborers Health & Welfare Fund*
*v.*
*Bayer Corp.*
Case No.  9:08-cv-80873-DMM

**BAYER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED CLASS ACTION COMPLAINT**

Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer

Healthcare, A.G., and Bayer Healthcare, LLC respectfully move the Court to dismiss plaintiff's

Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**INTRODUCTION**

This Court dismissed plaintiff's First Amended Class Action Complaint because

plaintiff's proffered proximate causation theory – that "but for" alleged misrepresentations and

concealment by Bayer, it and other third-party payers would never have paid for Trasylol

administered to covered individuals – was too indirect and "purely speculative" to support

recovery under RICO, consumer fraud, or common law claims.  *Southeast Laborers Health and*

*Welfare Fund v. Bayer Corp.,* -- F. Supp. 2d --, 2009 WL 2355747 (S.D. Fla. July 30, 2009).

Expressing skepticism that plaintiff could overcome the "fatal" deficiency, the Court

nevertheless, "in an abundance of caution," granted plaintiff leave to amend to allege "a *different*

premise of proximate causation in the unlikely event that can be accomplished."  *Id.* at *12

(emphasis added); *see also id.* at *16 ("I will grant leave to amend the Complaint as to establish

a *different* premise of proximate causation distinguishable from that addressed herein.") (emphasis added).

Plaintiff has proven the Court's prediction correct. Rather than cure by repleading, plaintiff has merely renewed its unsuccessful theory of proximate cause in more strident terms – like a person who assumes that a non-English speaker will understand his English if he speaks louder. Plaintiff's new allegations – regarding alleged misrepresentations and concealment (SAC ¶¶ 82-83, 92-93, 96-101, 186-201), plaintiff's duties to its plan members (SAC ¶¶ 20-43), and new common law claims for breach of implied and express warranty (SAC ¶¶ 296-315) – do nothing to cure the defects in plaintiff's proximate causation theory, which this Court has already ruled is too remote and speculative. *Compare, e.g.,* SAC, ¶ 258 ("Properly informed third party payors would never have paid for Trasylol. Indeed, absent Bayer's fraudulent concealment of the truth regarding Trasylol, Plaintiff and Class Members would have refused to pay for the drug ") *with* First Amended Complaint (FAC), ¶ 172 (identical proximate cause allegation).[1] For that reason alone, the Second Amended Complaint should be dismissed without leave to amend.

---

[1] *See also, e.g.*, SAC, ¶ 59 ("Bayer's suppression and misrepresentation of Trasylol's true safety and efficacy profile during the Relevant Period … caused Plaintiff and other like entities to pay for or reimbursed the price of the drug where they would not have otherwise"); *id., ¶* 60 ("But for the misrepresentations and omissions by Bayer, … Plaintiff and Class Members would not have paid for the drug"); *id.*, ¶ 266 ("Absent Bayer's fraudulent scheme Plaintiff and other Class Members would not have paid for Trasylol and, at most, would have paid for the cheaper alternative drugs"); *id.*, ¶ 270 ("Bayer … denied Plaintiff and Class Members the information necessary to determine whether or not to pay for Trasylol"); *id.*, ¶ 287 ("Plaintiffs and members of the Class have been injured in their business or property by paying for Trasylol, which they would not have done absent Bayer and other KOLE participants' unlawful conduct"); *id.*, ¶ 293 ("Plaintiff and the Class were damaged by paying for these prescriptions which they would not have paid for if they had known the safety risk associated with Trasylol"). Plaintiff also added conclusory allegations that regurgitate unsuccessful legal arguments plaintiff made in opposition to the first motion to dismiss. *See, e.g.,* SAC ¶¶ 6-7 (alleging that plaintiff is the most "direct victim"); *id.*, ¶¶ 261-275 (alleging that plaintiff "would not have paid" for Trasylol had it "been aware that Trasylol was not safer, more efficacious or of greater value than available alternatives that were significantly cheaper").

In addition, a host of additional defects in plaintiff's claims independently warrant dismissal:  (1) the RICO claim fails because plaintiff has not pled, and cannot plead, a proper association-in-fact enterprise; (2) the NJCFA claim fails because third-party payers, like plaintiff, are not "consumers" entitled to bring suit under that statute; (3) all of the state law claims fail under both New Jersey and Tennessee law; and (4) the new breach of express and implied warranty claims fail because a third-party payer is not a "buyer" in a "sale," plaintiff did not see any express warranty, and plaintiff does not allege that any plan member experienced any side effect it claims should have more fully been disclosed.

For all of these reasons, the Complaint should now be dismissed without leave to amend.

## BACKGROUND

As before, plaintiff alleges that it is a Tennessee-based employee benefit plan that reimburses for some or all of the covered healthcare costs incurred by plan members.  *See* SAC, ¶¶ 11, 24, 29.  Plaintiff alleges that Trasylol is administered intravenously during surgery, nearly always during coronary artery bypass graft procedures and without the patient's prior knowledge, to control excessive bleeding.  *Id*. ¶¶ 61, 63, 66.  Plaintiff purports to represent a nationwide class of third-party payers who reimburse for such surgeries.  *See id*. ¶ 276.

Plaintiff alleges that one or more of the defendants made certain misrepresentations and "non-disclosures" regarding safety and efficacy in connection with the marketing of Trasylol. *See, e.g., id*. ¶¶ 2, 5, 54-55, 69-70.[2]  Plaintiff also alleges that defendants enlisted outside medical experts, referred to as "key opinion leaders" (KOLs), to promote their message about the safety

_____

[2] Although the Complaint names four defendants, plaintiff does not distinguish among them, instead alleging that the four acted "in concert" and "as one unit in perpetrating the fraudulent scheme alleged herein."  *See* SAC ¶ 16.

and efficacy of Trasylol and to encourage doctors to consider Trasylol for off-label uses.  *Id.* ¶¶
56-7, 202, 206-8, 215, 223-32.[3]

      Plaintiff does not allege that Trasylol failed to work as intended or that it injured any plan
participant.  Instead, it alleges that the purported representations and omissions of defendants and
the KOLs "lulled" surgeons into using Trasylol during surgeries, *id*. ¶ 203; that less expensive
alternative medications exist, *id*. ¶ 68; and that plaintiff and other third-party payers paid too
much as a result, *id*. ¶¶ 2, 4.  But plaintiff does not allege that any or all of the doctors' decisions
to administer Trasylol were based solely (or even principally) on affirmative statements or
omissions by defendants or the KOLs.

<strong><u>LEGAL STANDARD</u></strong>

      Dismissal of a complaint at the pleading stage is appropriate where, accepting the
allegations as true, the complaint fails to allege the essential elements of a claim or discloses a
defect in a claim.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550
U.S. 544 (2007).  A complaint must "state a claim to relief that is plausible on its face," not
simply one that is "speculative," "conceivable" or "possible."  *Twombly*, 550 U.S. at 555-56,
562-63, 570.  Thus, a complaint must provide "enough facts to raise a reasonable expectation
that discovery will reveal evidence" sufficient to establish the existence of each required element
of plaintiff's claims.  *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007).  The court
may properly conduct an examination of proximate cause on a motion to dismiss.  *See, e.g.*, *Anza
v. v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459-61 (2006); *United Food & Commercial
Workers Unions, Employers Health & Welfare Fund v. Philip Morris, Inc.*, 223 F.3d 1271, 1273-
74 (11th Cir. 2000).

---

[3] The term "key opinion leader" (or "thought leader") is widely used to refer to "recognized
clinical experts well-known and respected in their field."  *In re Zyprexa Prods. Liab. Litig.*, 253
F.R.D. 69, 108 (E.D.N.Y. 2008); *see also District 1199P Health & Welfare Plan v. Janssen,
L.P.*, 2008 WL 5413105, at *2-3 & n.5 (D.N.J. Dec. 23, 2008) (dismissing RICO claims that
drug company used KOLs and others to promote off-label uses).

4

## ARGUMENT

**I.    PLAINTIFF HAS FAILED TO STATE A VIABLE FEDERAL RICO CLAIM.**

To allege a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must adequately plead:  (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) that is the proximate cause of an injury to the plaintiff's business or property.  *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 265-68 (1992); *Sedima S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 495-97 (1985); *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311-12 (11th Cir. 2000).  Here, plaintiff has failed to allege at least two of these required elements: proximate causation and the existence of a cognizable RICO enterprise.

**A.    Plaintiff Has Not Alleged, And Cannot Allege, That Bayer's Conduct Was A Proximate Cause of Any Injury to Plaintiff.**

This Court dismissed plaintiff's earlier complaint for failure to establish proximate cause. Proximate cause "limit[s] a person's responsibility for the consequences of that person's acts [through] a demand for some *direct relation* between the injury asserted and injurious conduct alleged."  *Holmes*, 503 U.S. at 268 (emphasis added).  In the context of a civil RICO claim, the Supreme Court identified three factors to analyze in determining whether a direct relation exists:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors.  Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Id.* at 269-70.

On amendment, plaintiff largely repeats its previously unsuccessful theory of proximate causation – that but for defendants' misrepresentations and concealment, plaintiff and other

third-party payers would have refused to pay for Trasylol. *See, e.g.,* SAC ¶¶ 59, 60, 258, 266, 270, 287, 293. This Court already conclusively (and correctly) rejected that theory of causation as being "purely speculative." *Southeast Laborers*, -- F. Supp. 2d --, 2009 WL 23355747, at *9.

Trasylol is administered by a doctor during surgery, while the patient is anesthetized. SAC, ¶ 66. Because plaintiff's theory necessarily implicates a doctor's decision-making process, *see* SAC, ¶ 6, this Court held that the link between the allegedly fraudulent marketing of Trasylol and the purported economic harm to plaintiff is far too remote and indirect to satisfy the principles of proximate cause. *Southeast Laborers*, -- F. Supp. 2d --, 2009 WL 23355747, at *9.[4] Many other courts have reached the same conclusion in dismissing RICO claims brought by third-party payers in prescription medication cases. *E.g.*, *Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339, 1344 (M.D. Fla. 2008) (holding that the physicians' independent medical judgment "raise[d] serious concerns regarding the ascertainment of damages caused by Defendants' alleged fraudulent conduct"), *appeal docketed*, No. 08-16851-C (11th Cir. Feb. 27, 2009); *Southern Illinois Laborers' & Employers Health and Welfare Fund v. Pfizer Inc.*, 2009 WL 3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (holding that plaintiffs had not adequately alleged causation); *In re Schering-Plough Corp. Intron/Temodar*

---

[4] "There are many factors that a doctor may consider in determining what medication to administer to a given patient. Doctors are presumed to go beyond advertising medium and use their independent knowledge in making medical decisions. Loss calculation necessarily would require an analysis of whether or not a particular physician ever received or relied on Bayer's allegedly fraudulent statements, and whether or not a physician, knowing the risk vs. benefit of Trasylol, would still have used it during an operation. It would require a determination as to how many doses a patient received, and whether or not the number of doses was tied into any fraudulent marketing. It would also require speculation as to what alternative medications a particular physician would have ordered in a particular surgery, and how much that medication would have cost. A cost calculation would be problematic, as costs clearly would have fluctuated over the ten year period. Lastly, it would entail determining those patients who received Trasylol who did not suffer any adverse reactions, and who might have been helped by the use of the drug." *Southeast Laborers*, 2009 WL 23355747, at *9.

*Consumer Class Action*, 2009 WL 2043604, at *26 (D.N.J. July 10, 2009) (same); *In re Actimmune Mktg. Litig.*, 614 F. Supp. 2d 1037, 1053 (N.D. Cal. 2009) (same).

Plaintiff cannot remedy this defect by asserting price inflation or some other "fraud on the market" theory. As this Court has already held, the "fraud on the market" theory requires an efficient market and thus is limited to federal securities cases; it has no application in a case alleging fraudulent representations or omissions relating to a prescription drug. *Southeast Laborers*, -- F. Supp. 2d --, 2009 WL 2355747, at *11 (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997); *N.J. Citizens Action v. Schering-Plough Corp.*, 842 A.2d 174 (N.J. Super. Ct. App. Div. 2003)); *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223-24 & n.5 (2d Cir. 2008) (rejecting the plaintiff's attempt to use fraud-on-the-market theory to prove causation).

Nor can plaintiff save its claims by citing to the goal of "deterring injurious conduct," as identified in *Holmes*, 503 U.S. at 269-70. This Court has already rejected that argument, noting that numerous individual personal injury lawsuits (including in the MDL) allege the same misrepresentations and concealment as plaintiff does here; to the extent that there is any "injurious conduct" that needs to be "deterred," then the plaintiffs in those actions will be able to "vindicate the law." *Southeast Laborers*, -- F. Supp. 2d --, 2009 WL 2355747, at *12.

Plaintiff may assert that it has now offered two "different" theories of proximate causation. Even generously read, however, neither has merit. *First*, plaintiff repeatedly alleges that but for defendants' conduct, FDA would never have granted approval to defendants to market Trasylol in the United States. *See, e.g.*, SAC, ¶¶ 6, 60, 270. But this is a "fraud on the FDA" claim, which fails because (a) there is no federal private cause of action for such a claim;

7

and (b) any state law private causes of action for fraud on the FDA are preempted. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001).[5]

*Second*, plaintiff alleges that Trasylol was so expensive that it "caused Plaintiff and Class Members to pay significantly more for heart surgeries" in general under various reimbursement methodologies. SAC, ¶ 275.[6] But, that theory is even more remote, speculative and attenuated

---

[5] Moreover, plaintiff fails to allege the factual basis for any "fraud of the FDA" type claim. It repeatedly alleges that after the FDA learned of the purported facts that defendants had allegedly concealed, FDA stated on November 5, 2007, that (in plaintiff's words) "Trasylol was a drug for which there is no specific patient population where the benefits of the drug outweigh the health risk associated with the drug." SAC, ¶ 4. FDA's actual statement – which the Court can take judicial notice of and consider in ruling on a motion to dismiss, *see, e.g., Fin. Sec. Assur., Inc. v. Stephens, Inc.,* 500 F.3d 1276, 1284-85 (11th Cir. 2007); *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002) – is, however, completely inconsistent with plaintiff's allegation. To the contrary, after noting that "preliminary" results from a terminated study in Canada "suggested" risks from the administration of Trasylol, FDA then stated:

> *FDA has not yet received full study data* but expects to act quickly with Bayer, the study's researchers at the Ottawa Health Research Institute, and other regulatory agencies *to undertake a thorough analysis of data to better understand the risks and benefits of Trasylol*.
>
> …
>
> *Until FDA can review the data from the terminated study* it is not possible to determine and identify a population of patients undergoing cardiac surgery for which the benefits of Trasylol outweigh the risks. *Understanding that individual doctors may identify specific cases where benefit outweighs risk, FDA is committed to exploring ways for those doctors to have continued, limited access to Trasylol.*

Request For Judicial Notice, Exh. A (emphasis added).

[6] Plaintiff alleges nothing about its reimbursement practices; however, the way in which such payers generally reimburse for in-hospital services (such as surgeries) has been described in similar litigation:

> [State statutory schemes] regulate hospital rates for all in-patient care, except for services provided to Medicare beneficiaries. The scheme calls for patients to be charged not for the cost of their individual treatment, but for the average cost of treating the patient's medical problem, as classified under one or another of the 794 Diagnostic Related Groups (DRGs).

than plaintiff's initial (deficient) causation theory.  *See Southeast Laborers*, 2009 WL 2355747, at \*10-11 (courts have "consistently held that, for RICO purposes, the increased cost of medical care" was "too far attenuated from ... the alleged fraud of ailing to disclose dangers" associated with the product to establish proximate cause); *id.* at \*11 (plaintiff's attempt to differentiate itself from the price inflation theory "is simply a question of semantics and does not affect my determination as to proximate cause").

Indeed, dozens of factors may affect the prices that hospitals charge for, and that third-party payers agree to pay for, cardiac surgery, including, *inter alia,* the patient's previous medical history; the complexity and length of heart surgery; the risk of "takeback" surgeries for patients; complications caused by factors other than Trasylol use; the length of each patient's hospitalization; and the contractual agreement(s) between each hospital and third-party payer regarding reimbursement for various categories of cardiac procedures.  Just the process of analyzing the contribution of each such factor to the final price, let alone speculating on the contribution that a theorized change in communication from Bayer would have had, would involve precisely the type of "intricate, uncertain inquir[y]" that the *Holmes* test is designed to prevent.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006); *Ironworkers Local Union No. 68*, 585 F. Supp. 2d at 1344; *see also Holmes*, 503 U.S. at 287 ("'for want of a nail, a kingdom was lost' is a commentary on fate, not the statement of a major cause of action against a blacksmith") (Scalia, J., concurring).

---

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 649-50 (1995); *see also United Wire, Metal, & Machine Health and Welfare Fund v. Morristown Mem'l Hosp.*, 995 F.2d 1179, 1189 (3d Cir. 1993) ("Patients in the same DRG at a particular hospital pay the same bill regardless of the duration of their stays and the demands they make on the resources of the hospital").  Thus, the amount that payors reimburse is not affected by whether a surgeon decides to use a medication such as Trasylol during the procedure.

Thus, under the principles set forth in *Holmes*, plaintiff has not alleged, and cannot allege, a direct relation between its injury and Bayer's conduct.  Accordingly, this Court should now dismiss plaintiff's RICO claim without leave to amend.

### B.   Plaintiff Has Not Alleged a Cognizable RICO Enterprise.

Plaintiff's RICO claim fails because for the independent reason that plaintiff has not properly alleged the existence of a RICO enterprise, on two grounds.[7]

*First*, where, as here, a RICO plaintiff asserts the existence of an "association-in-fact" enterprise, the complaint must allege that the members of the enterprise shared a common fraudulent or illegal purpose.[8]  Here, plaintiff alleges an association-in-fact consisting of defendants, certain employees, and the KOLs, SAC ¶¶ 205, 242, but does not allege that the members of the enterprise shared a common illegal purpose.  Indeed, plaintiff fails to allege that the KOLs even had knowledge of the allegedly concealed facts or knowingly and intentionally participated in the alleged fraud.  Accordingly, the plaintiff has failed to allege "facts that are suggestive enough to render [an agreement between the KOLs and Bayer] plausible."  *Southeast Laborers*, -- F. Supp. 2d --, 2009 WL 2355747, at *5 (quoting *Watts v. Fla. Int'l Univ.*, 495 F.3d

---

[7] In declining to decide the enterprise point in connection with the previous motion to dismiss, this Court noted that "*Boyle v. United States*, 129 S. Ct. 2237 (2009), appears to run contrary" to certain arguments asserted in that earlier motion.  *Boyle,* however, does not address the enterprise arguments raised in *this* motion to dismiss.

[8] The Eleventh Circuit has repeatedly assumed that a common fraudulent or illegal purpose is required.  *See, e.g.*, *Williams v. Mohawk Indus. Inc.*, 465 F.3d 1277, 1284 (11th Cir. 2006) (stating that the alleged common purpose was "'obtaining illegal workers for employment'"); *United States v. Church*, 955 F.2d 688, 698 (11th Cir. 1992) (common purpose was to make money from illegal activity); *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984) ("A RICO enterprise exists where a group of persons associates ... with the purpose of conducting illegal activity").  Courts in other circuits have clearly stated this rule.  *E.g.*, *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004); *United States v. Cianci*, 378 F.3d 71, 82 (1st Cir. 2004); *but cf. Lockheed Martin*, 357 F. Supp. 2d at 1361-62 n.7 (noting the issue and suggesting that it remains unresolved in the Eleventh Circuit).

10

1289, 1296 (11th Cir. 2007)).  Thus, the purported RICO enterprise fails as a matter of law.  *See, e.g.*, *In re Pharm. Indust. Average Wholesale Price Litig. II*, 307 F. Supp. 2d 196, 204-05 (D. Mass. 2004) (dismissing RICO claim because publishers were not alleged to be aware of the fraudulent nature of the information they were publishing); *Blue Cross of Cal. v. SmithKline Beechem Clinical Labs., Inc.*, 62 F. Supp. 2d 544, 553 (D. Conn. 1998) (dismissing RICO claim where the complaint was devoid of "specific allegation[s] that any physician, hospital, or laboratory shared [defendant's] alleged common purpose to defraud public and private health care payers").

*Second,* a proper association-in-fact enterprise must be distinct from the RICO defendants.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 162-63 (2001); *United States v. Goldin Indus. Inc.*, 219 F.3d 1268, 1271 (11th Cir. 2000) (en banc).  Where, as here, the defendant is a corporation, the enterprise generally cannot be merely an association of the corporation and its employees.  *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994); *Fuller v. Home Depot Servs. LLC*, 512 F. Supp. 2d 1289, 1295 n.3 (N.D. Ga. 2007); *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1365-67 (M.D. Fla. 2005); *Metcalf v. PaineWebber Inc.*, 886 F. Supp. 503, 512-13 (W.D. Pa. 1995), *aff'd without op.*, 79 F.3d 1138 (3rd Cir. 1996).  Numerous courts both in the Eleventh Circuit and elsewhere have extended the logic of this rule to prohibit a claim that the enterprise consists of only a corporation, its employees, *and its agents* – in part because such a significant matter as liability for treble damages under RICO should not turn on the fortuity of whether a corporation chooses to accomplish certain tasks through employees (individuals on its payroll) or agents (individuals retained as independent contractors).  *E.g.*, *Smart Science Labs. v. Promotional Mktg. Servs.*, 2008 WL 2790219 at *5-6, 8 (M.D. Fla. July 18, 2008); *Fla. Evergreen Foliage v.*

*E.I. DuPont de Nemours & Co.*, 336 F. Supp. 2d 1239, 1260-62 (S.D. Fla. 2004), *aff'd*, 470 F.3d 1036 (11th Cir. 2006) (following federal case law to decide issue under state RICO statute).[9]

Plaintiff alleges an enterprise that lacks distinction between its members.  In particular, it alleges that the conduct of the KOLs on behalf of the defendants was at all times tightly controlled by the defendants.  For example, plaintiff alleges that the KOLs merely delivered the defendants' "scripted presentations designed by Bayer to be given to groups of doctors and at medical conferences,"  SAC ¶ 215, and were taken "to task for any variation from Bayer's scripted message," *id.* ¶ 216.  Taking these allegations as true, the KOLs were not sufficiently distinct from the defendants to permit plaintiff to state a RICO claim premised upon an enterprise that is nothing more than an alleged association-in-fact of defendants, their employees, and the KOLs.

For these independent reasons, plaintiff's RICO claim should be dismissed without prejudice.

## II.    PLAINTIFF CANNOT MAINTAIN A CLAIM UNDER THE NEW JERSEY CONSUMER FRAUD ACT

Just as with the RICO claim, this Court dismissed plaintiff's NJCFA claim with leave to amend "to establish a *different* premise of proximate causation distinguishable from" its assertion that it "established an ascertainable loss due to Bayer's conduct."  *Southeast Laborers*, 2009 WL

---

[9] *See also Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 229-30 (5th Cir. 2003); *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000); *Brannon v. Boatmen's First Nat'l Bank of Okla.*, 153 F.3d 1144, 1149 (10th Cir. 1998); *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 228 (7th Cir. 1997); *Riverwoods Chappaqua Corp.*, 30 F.3d at 344; *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 883 F.2d 132, 139-41 (D.C. Cir. 1989); *Metcalf*, 886 F. Supp. at 512-13.  While the Eleventh Circuit appears to follow a different rule when the agents or affiliates of a corporation are themselves separate corporate entities, *see Williams*, 465 F.3d at 1284; *United States v. Goldin Indus. Inc.*, 219 F.3d 1271, 1277 (11th Cir. 2000), it has not addressed the distinct issue of whether RICO liability should turn on whether a corporation hires natural persons as employees or agents.

2355747, at *16 (emphasis added).  Plaintiff, however, has done nothing more in its amended complaint than re-allege its original, unsuccessful theory of proximate causation.  *See supra* section I.A.  For this reason alone, the NJCFA claim should be dismissed.  *See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007) (dismissing claim for failure to allege facts establishing "a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss"); *New Jersey Citizen Action v. Schering-Plough Corp.*, 842 A.2d 174 (N.J. Super. Ct. App. Div. 2003); *Ironworkers*, 585 F. Supp. 2d at 1345-46 (dismissing NJCFA claim for lack of proximate cause); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *31 (D.N.J. July 10, 2009) (same).

Plaintiff's NJCFA claim should be dismissed for the second, independent reason that, as a third-party payer, it is not a "consumer" entitled to bring suit under the statute.  *See*, *e.g.*, *City Check Cashing Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990) (only "consumer" has standing to sue under NJCFA).  As this Court recognized, whether a party is a "consumer" is determined by the character of the transaction – that is, by what the parties intend to accomplish in the context of the transaction – rather than by the identity of the purchaser.  *Southeast Laborers*, 2009 WL 2355747, at *13; *J & R Ice Cream v. Cal. Smoothie Licensing Corp.*, 31 F.3d 1259, 1273 (3d Cir. 1994).  Based on this settled law, three courts have held – since this Court declined to decide the question – that third-party payers are not "consumers" under the NJCFA because they do not "use or consume prescription medications themselves."  *Central Regional Employee Benefit Fund v. Cephalon, Inc.*, 2009 WL 3245485, at *3; *In re Schering-Plough Corp.*, 2009 WL 2043604, at *31-32 (same); *Southern Illinois Laborers' and Employers Health & Welfare Fund v. Pfizer Inc.*, 2009 WL 3151807, at *10

(S.D.N.Y. Sept. 30, 2009) (holding that third-party payer "is not a consumer within the meaning of the New Jersey Act because it does not use Lipitor in a way that diminishes or destroys its utility").[10]  Because plaintiff merely reimburses for healthcare services and medications provided to its plan members,  SAC ¶¶ 24, 29, it is not a "consumer" entitled to sue under the NJCFA.[11]

## III.    PLAINTIFF'S COMMON LAW CLAIMS ALSO FAIL AS A MATTER OF LAW

Plaintiff asserts various claims under common law theories of negligent misrepresentation, fraud, unjust enrichment and breach of warranty.  The first three are renewed claims that fail for the same reasons that this Court dismissed them initially; the warranty claims fail as a matter of law because plaintiff has no standing to bring them.[12]

---

[10] *See also In re Rezulin Prods. Liab. Litig.*, 392 F. Supp. 2d 597, 616-17 (S.D.N.Y. 2005) (health insurer was not a consumer under CFA because it "was not a consumer of prescription drugs" and did not benefit from medical services for which it paid); *Plumbers & Pipefitters Local 572 Health & Welfare Fund v. Merck & Co., Inc.*, 2003 WL 25652433 (N.J. Super. Ct. Law Div. Feb. 14, 2003) (health benefit plan is not a consumer under CFA because it "buys for the use of another").

[11] To the extent that plaintiff is deemed to be a "consumer," then its NJCFA claim is subsumed by the New Jersey Products Liability Act, N.J. Stat. § 2A:58C-1 *et seq*., which provides the exclusive remedy under New Jersey law for "product liability actions."  N.J. Stat. § 2A:58C-1(b)(3); *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007).  That plaintiff has alleged economic loss instead of personal injury is not relevant, because the gravamen of its complaint is that Trasylol was not fit for its intended uses, and that the defendants failed to warn of risks associated with its use.  *See, e.g.*, SAC ¶¶ 2-5, 44, 50-54, 56, 58-60; *see also Sinclair v. Merck & Co.*, 948 A.2d 587, 596 (N.J. 2008) (holding that a plaintiff cannot avoid the requirements of the PLA by proceeding under a CFA theory, noting that the determining factor is whether a product liability allegation is at the "heart" of the claim); *McDarby v. Merck Co., Inc.*, 949 A.2d 223, 278 (N.J. Super. Ct. App. Div. 2008) (holding that PLA subsumed claim under CFA that was premised on the claim that defendant "failed to warn of dangers from a product of which it had knowledge, resulting in alleged economic harm").

[12] Despite being informed of the proper allegations to make, plaintiff reasserted the incorrect allegations regarding principal place of business it had previously asserted.  Regardless, this error does not affect the analysis relating to any of the common law claims because, as this Court previously pointed out, "the issue of which states' law applies appears to have little or no impact on resolution" of the claims.  *Southeast Laborers*, 2009 WL 2355747, at *17.

*Fraud and negligent misrepresentation*.  This Court granted plaintiff leave to amend to allege "any [knowingly or recklessly false] statement made directly to Plaintiff [and] any allegation of how Plaintiff reasonably relied upon any statement made to it."  *Southeast Laborers,* 2009 WL 2355747, at *17.  Plaintiff's complaint is still utterly devoid of any such allegations, *see supra* section I.A, and therefore this claim fails as a matter of law.  *Id.* at *17-18; *see also Ironworkers*, 585 F. Supp. 2d at 1346; *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (proximate cause is required element of fraud); *Banco Popular N. America v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (same); *Bethlehem Steel Corp. v. Ernst & Whinney*, 822 S.W.2d 592, 595 (Tenn. 1991) (same as to negligent misrepresentation); *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000) (same).

*Unjust enrichment*.  Plaintiff's unjust enrichment claim fails for two independent reasons.  First, as a tort-based claim, it is wholly derivative, and therefore cannot stand in the absence of a viable tort claim.  *Perry v. Am. Tobacco Co., Inc.*, 324 F.3d 845, 851 (6th Cir. 2003) (applying Tennessee law); *Blystra v. Fiber-Tech Group, Inc.*, 407 F. Supp. 2d 636, 645 n.11 (D.N.J. 2005) (applying New Jersey law).  Second, even if the plaintiff had an independent claim for unjust enrichment, that claim would fail because plaintiff has not and cannot allege that it conferred any direct benefit or measurable value on defendants.[13]  Plaintiff alleges that it and the class paid for Trasylol, and that defendants made a profit from the sale, *see* SAC ¶¶ 336-38, but

[13] *See Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (plaintiff must demonstrate that it provided some "measurable value" to defendant); *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) ("a plaintiff is required to show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant, and that the failure of remuneration enriched defendant beyond the contractual rights"); *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966) (unjust enrichment claims require "some direct relationship between the parties"); *see also Eli Lilly & Co. v. Roussell Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998) ("it is the plaintiff's, as opposed to a third party's, conferral of a benefit on defendant which forms the basis of an unjust enrichment claim") (applying New Jersey law).

not that plaintiff had any contact with defendants, that defendants sold Trasylol to plaintiff, that plaintiff's payment was made to defendants, or that plaintiff was anything but a fund that simply reimbursed for healthcare services on behalf of its plan members. *Id.* ¶¶ 11, 24, 29. Any indirect benefit conferred on the defendants is thus too attenuated to give rise to a claim of "measurable value" (under Tennessee law) or "direct relationship between the parties" (under New Jersey law).[14] Accordingly, this claim should also be dismissed as a matter of law.

**Breach of express and implied warranties.** Plaintiff alleges two new claims – breach of express and implied warranty under N.J. Stat. Ann. §§ 12A:2-313, 12A:2-314 – alleging that Trasylol was inherently defective because it did not have the qualities supposedly warranted. These claims fail as a matter of law for four reasons.

*First*, to prevail on a claim for breach of either express or implied warranty, plaintiff must establish that the alleged breach was the proximate cause of the damages sustained. *See Lara-Arcinega v. Crown Equip. Corp.*, 2008 WL 2783341, at *8 (D.N.J. Jul. 15, 2008) ("In breach of warranty actions, a plaintiff is entitled to recover [only] for any injury 'proximately resulting' from the breach of warranty."); *Hollinger v. Shoppers Paradise of New Jersey, Inc.*, 340 A.2d 687, 692 (N.J. Super. Ct. Law Div. 1975), *aff'd*, 361 A.2d 578 (N.J. Super. Ct. App. Div. 1976) (applying New Jersey law); *accord Ford Motor Co. v. Eads*, 457 S.W.2d 28, 29, 32 (Tenn. 1970) (dismissing cause of action including breach of express and implied warranties under Tennessee law for lack of proximate cause). Plaintiff's failure to establish proximate cause, *see supra* section I.A., is fatal to its warranty claims.

---

[14] Additionally, plaintiff has offered no allegations that it has exhausted all remedies with the entity with whom it had privity of contract, a requirement under Tennessee law. *See Freeman*, 172 S.W.3d at 525-26 (requiring the plaintiff to exhaust all remedies with the person with whom it had privity of contract or demonstrate the futility of exhausting all remedies).

*Second,* both warranty claims also fail because plaintiff is not a "buyer" in a "sale," as is required to create an express or implied warranty under the relevant states' laws. *See* N.J. Stat. Ann. § 12A: 2- 313 (express warranties can only be made by the "seller to the buyer as part of a contract for sale"); *accord* Tenn. Code Ann. § 47-2-313 (same); N.J. Stat. Ann. § 12A: 2-314 (explaining that "the warranty of merchantability applies to sales"); *accord* Tenn. Code Ann. § 47-2-314 (same). The transaction at issue here – reimbursing medical providers for Trasylol –is not a "sale," because plaintiff never takes title to Trasylol. *See* N.J. Stat. Ann. § 12A:2-106 ("[a] 'sale' consists in the passing of title from the seller to the buyer for a price"); *accord* Tenn. Code Ann. § 47-2-106 (same); *see also American Container Corp. v Hanley Trucking Corp*., 268 A.2d 313, 316 (N.J. Super. Ct. Ch. Div. 1970) (recognizing that a "sale" consists of the transfer of title and possession of the property). Nor can third-party payers be considered "buyers," because they merely reimburse others for its purchase. *Compare* N.J. Stat. Ann. §12A:2-103 (defining buyer as "a person who buys or contracts to buy goods"); *and* Tenn. Code Ann. 47-2-103 (same) *with U.S. v. Serafini*, 233 F.3d 758, 767 n.11 (3d Cir. 2000) (reimbursement entails the "delivery of money to a person to pay back that person for money that the person expended"). Accordingly, plaintiff's warranty claims should be dismissed.

*Third,* the express warranty claim further fails because plaintiff has not alleged a cognizable warranty. An express warranty is created only when the seller makes an affirmation of fact or promise relating to the goods that becomes part of the "basis of the bargain." N.J. Stat. Ann. § 12A:2-313; *accord* Tenn. Code Ann. § 47-2-313 Here, plaintiff alleges that Bayer, "directly and through the Key Opinion Leaders," made unspecified warranties through its label and sales and marketing materials to physicians and hospitals. *See* SAC ¶ 5 (alleging "false statements on the Trasylol label, on physician pamphlets and other materials … that Trasylol was

safe and effective"); *id.* ¶¶102, 104-106; 299.  These allegations do not constitute the "basis of the bargain," however, because plaintiff has not alleged and thus cannot establish that it "read, heard, saw or knew of" any warranty made by Bayer.  *Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 567 (3rd Cir. 1990), *aff'd in part, rev'd in part on other grounds*, 505 U.S. 504 (1992) (holding that to effectuate the "basis of the bargain" requirement for an express warranty, the plaintiff must prove that it "read, heard, saw or knew of the advertisement containing the affirmation of fact or promise") (applying New Jersey law); *accord Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 973 (M.D. Tenn. 2002), *aff'd*, 89 Fed. Appx. 927 (6th Cir. 2003) (dismissing warranty claim under Tennessee law because it was unclear whether the plaintiff "read or specifically relied" on affirmations).  Indeed, the Complaint does not identify a single communication between plaintiff and Bayer, or allege that plaintiff was aware of the terms of *any* alleged warranty made by Bayer to *anyone*.  This omission is fatal to plaintiff's express warranty claim.  *See id.*

 *Finally,* the claim for breach of implied warranty fails because plaintiff has not alleged that Trasylol did not work for any of its plan members or that Trasylol injured them.  *See Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 379 (D.N.J. 2004) ("breach of implied warranty claims are not intended to address hypothetical economic loss; they are meant to compensate a buyer who has not gotten the benefit of her bargain," that is, that buyers did "not get what they paid for," and rejecting "fraud on the market" economic loss based on theory "that consumers might be inclined to take a drug with certain side [e]ffects if they could pay less for it, or that drugs with certain side effects should cost less").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss plaintiff's Second Amended Complaint with prejudice.


Dated:  November 12, 2009                              Respectfully submitted,


                                              /s/  Barbara Bolton Litten
                                              Patricia E. Lowry (Florida Bar No. 332569)
                                              Email: plowry@ssd.com
                                              Barbara Bolton Litten (Florida Bar No. 91642)
                                              Email: blitten@ssd.com
                                              **SQUIRE, SANDERS & DEMPSEY L.L.P.**
                                              1900 Phillips Point West
                                              777 South Flagler Drive
                                              West Palm Beach, FL 33401-6198
                                              Telephone:  561-650-7120
                                              Facsimile:   561-655-1509


                                              Eugene A. Schoon
                                              Email: eschoon@sidley.com
                                              Catherine Valerio Barrad
                                              Email: cbarrad@sidley.com
                                              **SIDLEY AUSTIN LLP**
                                              One South Dearborn
                                              Chicago, IL  60603
                                              Telephone:  312-853-7000
                                              Facsimile:   312-853-7036

                                              ***Attorneys for Bayer Defendants***

**CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pre se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive Notices of Filing electronically.

*Barbara Bolton Litten*
Barbara Bolton Litten

**SERVICE LIST**

**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON**

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,**
    **FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email:  tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
    **& LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, Florida 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email:  plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-759-1400
Facsimile:  713-759-1217
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Neal Moskow
Email:  neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*

Joe R. Whatley, Jr.
Email:  jwhatley@wdklaw.com
Edith M. Kallas, Esq.
Email: ekallas@wdklaw.com
W. Tucker Brown, Esq.
Email:  tbrown@wdklaw.com
**WHATLEY DRAKE & KALLAS**
1540 Broadway, 37th Floor
New York, NY  10036
Telephone:  212-447-7011
Facsimile:  212-447-7077
*Attorneys for Plaintiffs*

Steven J. Kherkher, Esq.
Email: skherkher@williamskherkher.com
John T. Boundas, Esq.
Email:  jboundas@williamskherkher.com
G. Erick Rosemond, Esq.
Email: erosemond@williamskherkher.com
E. Armistead (Armi) Easterby
Email:  aeasterby@williamskherkher.com
**WILLIAMS KHERKHER HART BOUNDAS, LLC**
8441 Gulf Freeway, Suite 600
Houston, TX  77017
Telephone:  713-230-2308
Facsimile:  713-643-6226
*Attorneys for Plaintiffs*

James G. Stranch III, Esq.
Email: jgs@branstetterlaw.com
J. Gerard Stranch, IV, Esq.
Email: gstranch@branstetterlaw.com
Joe P. Leniski, Esq.
Email: jleniski@branstetter.com
Randall C. Ferguson, Esq.
Email: rcf@branstetter.com
**BRANSTETTER STRANCH AND JENNINGS, PLLC**
227 Second Ave., North, 4th Floor
Nashville, TN  37201
Telephone:  615-254-8801
Facsimile:  615-250-3937
*Attorneys for Plaintiffs*

William Charles Wright, Esq.
Email: willwright@wrightlawoffice.com
**WILLIAMS C. WRIGHT, P.A.**
319 Clematis Street, Suite 109
West Palm Beach, FL  33401
Telephone:  561-514-0904
Facsimile:  561-514-0905
*Attorneys for Plaintiffs*