# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION – MDL-1928 | ) ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| *Summerlin* v. *Bayer Corp., et al.*, Case No. 9:08-cv-80903-DMM | ) ) ) |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendants respectfully move for summary judgment on all of plaintiff's claims. Plaintiff cannot sustain his wrongful death claims (on theories of negligence and product liability) because the claims were not brought within two years after the death, as required by Alabama law. Alabama has no discovery rule or equitable tolling for wrongful death claims. Plaintiff's breach of warranty claims fail as a matter of law because Alabama law does not recognize a general implied warranty of product safety, and plaintiff does not allege and cannot prove that an express warranty was made to him by any defendant. Finally, plaintiff's fraud claim fails because there is no evidence that would allow a jury to conclude that either he or the decedent relied on a statement made by any defendant in electing to undergo heart surgery.

## MEMORANDUM

This product liability case involves aprotinin injection, a prescription pharmaceutical that has the trade name Trasylol. Trasylol was approved by the United States Food and Drug Administration (FDA) for prophylactic use to reduce perioperative blood loss and the need for

blood transfusion in patients undergoing cardiopulmonary bypass in the course of coronary artery bypass graft (CABG) surgery.  Plaintiff, Melvin Summerlin, is the surviving husband of Frances Summerlin, who died at the age of 75 from a heart attack following CABG surgery in March 2006.  *See* Deposition of Dr. Russell Ronson at 60-61, 66-67, 101-02 (May 11, 2009) (Ex. A).  Mrs. Summerlin was administered Trasylol in the course of the surgery, *see id*. at 66, and plaintiff alleges that Trasylol caused her death.

Plaintiff filed his original lawsuit on May 12, 2008, in the Southern District of Alabama, naming as defendants Bayer Corporation, Bayer Pharmaceuticals Corporation, Bayer HealthCare LLC, Bayer HealthCare Pharmaceuticals Inc., and Bayer AG.  *See* Plaintiff's Complaint and Motion for Expedited Appointment of International Process Server filed May 12, 2008 ("Motion for Appointment of Process Server"), ¶ 1 (Ex. B).  On July 7, 2008, plaintiff was granted leave to file an amended complaint removing Bayer Pharmaceuticals Corporation as a defendant and substituting Bayer HealthCare AG for Bayer AG.  The case was transferred to this MDL on August 15, 2008.  The complaint states four claims.

Count I, a wrongful death claim for negligence and wantonness, alleges that defendants acted "negligently and/or wantonly" in "designing, testing, manufacturing, licensing, packaging, promoting, advertising, selling, and/or distributing Trasylol," in warning of the risks of Trasylol use, and in conducting pre-clinical testing and post-marketing surveillance of Trasylol, and that plaintiff's decedent died as a result.  Am. Compl. ¶¶ 54-59.

Count II, a wrongful death claim under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), alleges that Trasylol "is defective in design and failure to warn" and that the defects "were a direct and proximate cause of the death of Frances Summerlin."  *Id*. ¶¶ 64, 69.

Count III alleges that "Defendants, through their advertising and promotional materials, expressly and impliedly warranted that Trasylol was safe for the use for which it were [sic] intended"; that "Defendants breached these express and implied warranties because Trasylol was unsafe in light of the risk of life-threatening side effects associated with its use"; and that "Frances Summerlin relied to her detriment" on the alleged warranties and died as a result of the alleged breach.  *Id.* ¶¶ 72-75.

Count IV alleges that defendants "suppressed and/or concealed their knowledge of [the] hazards [of Trasylol use] and the risks associated with administering Trasylol."  *Id.* ¶ 79. Specifically, it alleges that defendants "misrepresented results of their own study as well as suppressed findings from its [sic] own study," *id.*—referring to the observational database study conducted by i3 Drug Safety in the summer of 2006, *see id.* ¶¶ 22-44.[1]  Count IV alleges that "Plaintiff has suffered harm" as a result of that alleged concealment.  *Id.* ¶ 80.

## ARGUMENT

Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. 56(c); *Haves* v. *City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995); *Phonometrics, Inc.* v. *Choice Hotels Int'l*, 117 F. Supp. 2d 1341, 1343 (S.D. Fla. 2000).  The purpose of summary judgment is to "dispose of factually unsupported claims."  *Celotex* v. *Catrett*, 477 U.S. 317, 327 (1986); *Bald Mountain Park, Ltd.* v. *Oliver*, 863 F. 2d 1560, 1563 n.5 (11th Cir. 1989).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . .  If the evidence is merely colorable, or is not significantly

---

[1]  That observational study was commenced in June 2006, three months *after* Mrs. Summerlin's death (*see* Am. Compl. ¶¶ 27), and preliminary results became available in September 2006 (*see id.* ¶ 39).

probative, summary judgment may be granted."  *Spence* v. *Zimmerman*, 873 F.2d 256, 257 (11th

Cir. 1989) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 250-51 (1986)).

Plaintiff's wrongful death claims are time barred; plaintiff cannot sustain his breach of

warranty claim because he has not identified a relevant warranty under Alabama law, and the

fraudulent concealment claim lacks any support in the record.[2]

I.      **PLAINTIFF'S WRONGFUL DEATH CLAIMS ARE BARRED BECAUSE THEY
        WERE NOT FILED WITHIN THE PRESCRIBED TWO-YEAR PERIOD.**

Counts I ("Negligence/Wantonness") and II ("Product Liability/AEMLD") of plaintiff's

Amended Complaint are time barred.  Those claims are brought pursuant to the Alabama

Wrongful Death Act, Ala. Code § 6-5-410, *see* Am. Compl. at 10, 12, which is the only vehicle

by which the claims could be brought.  Under Alabama law, tort claims that were not filed before

the death of a decedent do not survive in favor of the estate or personal representative.[3]

Plaintiff filed his claims two years and two months after the death of the decedent.  *See*

Complaint and Motion for Appointment of Process Server (Ex. B).  Wrongful death claims in

Alabama must be commenced "within two years from and after the death of the testator or

intestate."  Ala. Code § 6-5-410(d); *see Spain* v. *Brown & Williamson Tobacco Corp.*, 872 So.

2d 101, 112 (Ala. 2003) ("Alabama's Wrongful Death Act requires that an action be filed within

---

[2]  Alabama substantive law governs in this diversity case.  *See Middleton* v. *Caterpillar Indus., Inc.*, 979 So. 2d 53, 57 (Ala. 2007) (Alabama courts "determine the substantive rights of an injured party according to the law of the state where the injury occurred") (quoting *Fitts* v. *Minnesota Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991)); *Menowitz* v. *Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (an MDL court "applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed"); *In re Vioxx Prods. Liab. Litig.*, 522 F. Supp. 2d 799, 805 (E.D. La. 2007).

[3]  Ala. Code § 6-5-462; *Bates* v. *L&N Employees Credit Union*, 374 So. 2d 323, 324 (Ala. 1979); *see also Bassie* v. *OBGYN Assocs. of Nw. Ala., P.C.*, 828 So. 2d 280, 285 (Ala. 2002) (Houston, J., concurring) ("In almost every other state, a tort claim not filed during the victim's lifetime survives to the estate . . . even if suit is filed after death.  But, in Alabama, unfiled tort claims do not survive to the victim's estate.").

two years of the date of the death.").  That is a firm limitation, not subject to any equitable extension or tolling.  "It is well settled that the time limitation set out in § 6-5-410(d) is part of the substantive cause of action and that it is not subject to any provision intended to temporarily suspend the running of a limitations period.  The two-year period is not a limitation against the remedy only, because after two years the cause of action expires."  *Ex parte FMC Corp.*, 599 So. 2d 592, 594 (Ala. 1992); *see also Ogle* v. *Gordon*, 706, So. 2d 707, 708 (Ala. 1997) ("this Court has held that the wrongful death statute, which provides a two-year limitations period, is a statute of creation, otherwise known as a nonclaim bar to recovery, and that it is not subject to tolling provisions") (citations omitted); *Buck* v. *City of Rainsville*, 572 So. 2d 419, 424 (Ala. 1990) (holding that the two-year period in the Alabama Wrongful Death Act "is a substantive part of the cause of action and is not to be treated as a statute of limitations; the two-year period is not a limitation against the remedy only, because after two years the remedy expires."); *Cofer* v. *Ensor*, 473 So. 2d 984, 991 (Ala. 1985) ("It is well-settled that the limitations period found in § 6-5-410(d) is a *statute of creation,* and not subject to tolling provisions because it is 'of the essence of the cause of action.'").

Plaintiff's claims accrued on March 26, 2006, when Mrs. Summerlin died.  Plaintiff did not file suit until May 12, 2008.  *See* Ex. B.  Accordingly, plaintiff's wrongful death claims are barred pursuant to Alabama Code section 6-5-410(d) and should be dismissed.

## II.  PLAINTIFF'S BREACH OF WARRANTY CLAIM FAILS AS A MATTER OF LAW.

Count III of the complaint alleges that defendants breached "express and implied warranties" because of the purported "life-threatening side effects" of Trasylol.  Am. Compl. ¶ 73.  This claim, whether on a theory of implied or express warranty, fails as a matter of law.

**1. *Implied Warranty.*** A plaintiff alleging breach of an implied warranty must "prove the existence of the implied warranty, a breach of that warranty, and damages proximately resulting from that breach." *Spain*, 872 So. 2d at 110 (citations omitted). Under Alabama law, the implied warranty of merchantability "is one of *commercial* fitness and suitability, and a private right of action is afforded only where the user or consumer is injured by the breach of *that* warranty." *Shell* v. *Union Oil Co.*, 489 So. 2d 569, 572 (Ala. 1986) (emphasis in original).

> That is to say, the U.C.C. does not impose upon the seller the broader obligation to warrant against health hazards inherent in the use of the product when the warranty of commercial fitness has been complied with. Those injured by the use of or contact with such a product, under these circumstances, must find their remedy outside the warranty remedies afforded by the U.C.C.

*Id*. Thus, in *Shell*, the Alabama Supreme Court rejected an argument that the defendant had breached the implied warranty of merchantability by selling an industrial product that contained the carcinogen benzene, because the product met all specifications and was "fit for the ordinary purposes for which such goods are used." *Id*. at 572 (quoting Ala. Code § 7-2-314); *see also McClain* v. *Metabolife Int'l, Inc*., 193 F. Supp. 2d 1252, 1258 (N.D. Ala. 2002) (summarizing the *Shell* decision as holding "that the U.C.C. is concerned with product *quality,* while products liability law (viz., the AEMLD) is concerned with product *safety*") (emphasis in original).

Likewise, Alabama law provides no general implied warranty cause of action for alleged injuries from a pharmaceutical product. In *Bodie v. Purdue Pharmaceuticals Company*, the Eleventh Circuit relied on *Shell* in rejecting a breach of warranty claim based on a prescription drug's dangerousness because the evidence showed "that OxyContin was, in fact, fit for its intended use as an analgesic treatment for chronic pain; . . . As in *Shell*, there was no 'implied warranty of merchantability in the sense that [Purdue] promised [Bodie] that he would not be injured by his use or contact with their product.'" 236 Fed. Appx. 511, 524 (11th Cir. 2007) (alterations in original). For that reason, the court concluded "that Bodie does not have a viable

cause of action under Alabama law for breach of the implied warranty of merchantability." *Id*. Similarly, the district court in *McClain* dismissed implied warranty claims based on injuries from taking a weight-loss drug, because "when the essence of the claim is that the product in question is unreasonably dangerous, the AEMLD is the appropriate avenue through which redress might be sought." 193 F. Supp. 2d at 1258. The implied warranty claims failed as a matter of law because "Plaintiffs do not contend that Metabolife 356 was not fit for the purpose for which it was sold, *i.e.*, weight loss. The essence of their claim is that Metabolife 356 is unreasonably dangerous, and lacked minimally appropriate warnings of the product's latent dangers." *Id*.[4]

Likewise here, plaintiff's claims do not concern Trasylol's "*commercial* fitness and suitability," *Shell*, 489 So. 2d at 572, and therefore plaintiff "does not have a viable cause of action under Alabama law for breach of the implied warranty of merchantability." *Bodie*, 236 Fed. Appx. at 524. Rather, plaintiff claims that Trasylol was unreasonably dangerous and Mrs. Summerlin was injured as a result. Thus, "the AEMLD is the appropriate avenue through which redress might be sought." *McLain*, 193 F. Supp. 2d at 1258.

   **2.**   ***Express Warranty.*** Plaintiff cannot recover on an express warranty claim because he cannot establish the existence of an express warranty relating to Trasylol. Under Alabama law, an express warranty is defined as an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or a "description of the goods which is made part of the basis of the bargain." Ala. Code § 7-2-313(1). In this case, there is no evidence of any "affirmation," "promise," or "description" made to plaintiff by any defendant in relation to Trasylol, nor evidence that any affirmation, etc., by

---

[4]  *Accord Emody* v. *Medtronic, Inc.,* 238 F. Supp. 2d 1291, 1296 (N.D. Ala. 2003) (holding that implied warranty claims were subsumed by product liability claims and not separately viable); *Brock* v. *Baxter Healthcare Corp.*, 96 F. Supp. 2d 1352, 1356 n.2 (S.D. Ala. 2000) (same).

any defendant formed "the basis of the bargain" for the use of Trasylol in Mrs. Summerlin's surgery. *See* Deposition of Melvin Summerlin at 196 (May 8, 2009) (Ex. C) (acknowledging that neither plaintiff nor his wife "ever [saw] any warranty or language guaranteeing that Trasylol would work"). Moreover, plaintiff testified that he did not even know that his wife had been administered Trasylol at the time of the surgery and that he only learned of it some two years later, from his attorney. *See id.* at 21. Obviously, therefore, no statement about Trasylol could have formed the basis for any decision or "bargain" made by plaintiff in connection with his wife's surgery; something cannot be the basis of a bargain if the plaintiff was unaware of it. *See Rudder* v. *Kmart Corp.*, No. Civ. A. 97-0272-BH-S, 1997 WL 907916, at *4 (S.D. Ala. Oct. 15, 1997) ("once the buyer has become aware of the affirmation of fact or promise, the statements are presumed to be 'part of the basis of the bargain'") (quoting *Cipollone* v. *Liggett Group, Inc.*, 893 F.2d 541, 568 (3d Cir. 1990)); *cf. Tiger Motor Co.* v. *McMurtry*, 224 So. 2d 638, 642-44 (Ala. 1969) (holding that a warranty disclaimer had no effect where the buyer did not receive the disclaimer until after he had made the purchase).[5]

---

[5]  Any argument by plaintiff that he is a third-party beneficiary of an express warranty made to another party (such as the treating surgeon, Dr. Ronson) would not change this conclusion. *Cf. Harris Moran Seed Co.* v. *Phillips*, 949 So. 2d 916, 920-25 (Ala. Civ. App. 2006). To recover under a third-party beneficiary theory, plaintiff would have to show (i) that an express warranty existed, (ii) "that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party," and (iii) that plaintiff (as opposed to his decedent, who was administered Trasylol) "was the intended beneficiary of the contract." *Id.* at 920 (quoting *Sheetz, Aiken & Aiken, Inc.* v. *Spann, Hall, Ritchie, Inc.*, 512 So. 2d 99, 101-02 (Ala. 1987)). Plaintiff has not made and cannot make those showings. Moreover, Dr. Ronson testified that he could not "remember receiving any written communication from Bayer" prior to making the decision to administer Trasylol to Mrs. Summerlin. Ronson Dep. at 72 (Ex. A). Accordingly, even on a third-party beneficiary theory, there is no evidence of an affirmation or promise by a defendant that formed the basis of the bargain, and thus no evidence of an express warranty.

### III.   PLAINTIFF CANNOT SUSTAIN A CLAIM FOR FRAUDULENT CONCEALMENT.

As noted above (p. 4 & n.3), tort claims that were not filed before the decedent's death do not survive under Alabama law.  Ala. Code § 6-5-462; *Bates*, 374 So. 2d at 324; *see also Continental Nat'l Indem. Co.* v. *Fields*, 926 So. 2d 1033, 1037 (Ala. 2005) (noting that Alabama's survival statute "did not change the common-law rule in Alabama that a cause of action in tort does not survive in favor of the personal representative of the deceased."). Therefore, plaintiff's claim for fraudulent concealment, Count IV, cannot be brought on behalf of the decedent under Alabama law.  *See Sanford* v. *Western Life Ins. Co.*, 368 So. 2d 260, 263 (Ala. 1979) (holding that a fraud claim "does not survive in favor of the personal representative of a deceased person under the provisions of § 6-5-462").[6]

Rather, Count IV purports to state a claim for fraud on plaintiff himself.  *See* Am. Compl. ¶ 78 (alleging defendants "had a duty to disclose to Plaintiff and the public" the risks of Trasylol use); *id*. ¶ 79 (alleging defendants "suppressed and/or concealed" the risks of Trasylol from "the public, including the Plaintiff"); *id*. ¶ 80 (alleging that "Plaintiff has suffered harm" as a result of the alleged concealment).  Plaintiff cannot support that claim.

Plaintiff cannot establish the elements of fraudulent concealment under Alabama law. "To sustain a claim for fraudulent concealment or suppression under Alabama law, a plaintiff must produce substantial evidence establishing: (1) a duty on the part of the defendant to disclose; (2) the defendant's suppression of material facts; (3) the defendant's knowledge of the facts and their materiality; (4) action by the plaintiff in reliance on the suppression; and (5)

---

[6]  Count IV is not styled as a wrongful death claim, and it does not include allegations that would make out a wrongful death claim.  At all events, if Count IV could be read to state a claim under the Wrongful Death Act, it would be time barred for the same reasons that Counts I and II are time barred, set out in section II.A.

damages resulting from the reliance action."  *Holton* v. *Blue Cross & Blue Shield of S.C.*, 56 F.

Supp. 2d 1338, 1344 (M.D. Ala. 1999); *Hardy* v. *Blue Cross & Blue Shield of Ala.*, 585 So. 2d

29, 32 (Ala. 1991).

Plaintiff's fraudulent concealment claim fails because there is no evidence that plaintiff

acted in reliance on a concealment or suppression by any defendant.  Indeed, the evidence shows

the contrary.  First, as noted above, plaintiff did not know until long after the decedent's surgery

that Trasylol had been used in the surgery.  *See* Summerlin Dep. at 177-181 (Ex. C).  As a result,

he could not have taken action in connection with his wife's surgery in reliance on

representations or omissions concerning Trasylol.[7]  Second, the only instance of purported

concealment that plaintiff alleges—the failure to disclose preliminary results from the

observational study conducted by i3 Drug Safety, *see* Am. Compl. ¶¶ 22-44, ¶ 79—did not occur

until September 2006, six months after the decedent's surgery and death.  To support a claim for

fraudulent concealment, plaintiff must establish concealment of "an existing, material fact."

*Hardy*, 585 So. 2d at 32.  The facts surrounding the preliminary results of the i3 study did not

exist at the time of Mrs. Summerlin's surgery and cannot support the fraudulent concealment

claim.  *See Holton*, 56 F. Supp. 2d at 1345 (granting summary judgment on fraudulent

concealment claim where the alleged concealment "came after" the applicable actions by the

plaintiff and therefore "could not have induced him" to take those actions).

---

[7]  Even if a fraud claim is based on alleged representations made to (or facts concealed from) a
third party, that does not "excus[e] a plaintiff from the requirement of establishing *his* reliance
upon that misrepresentation"; the plaintiff still must prove that he (the plaintiff) acted in reliance
on the putative fraud and was injured as a result.  *Ex Parte DaimlerChrysler Corp.*, 952 So. 2d
1082, 1091 (Ala. 2006) (quoting *Delta Health Group, Inc.* v. *Stafford*, 887 So. 2d 887, 899 (Ala.
2004)) (emphasis added); *see also Thomas* v. *Halstead*, 605 So. 2d 1181, 1184-85 (Ala. 1992);
*Wheelan* v. *Sessions*, 50 F. Supp. 2d 1168, 1174 (M.D. Ala. 1999).

## CONCLUSION

For these reasons, defendants respectfully submit that summary judgment should be granted for defendants on all of plaintiff's claims.

November 25, 2009                    Respectfully submitted,

                                     /s/  Barbara Bolton Litten
                                     Patricia E. Lowry (Florida Bar No. 332569)
                                     Email: plowry@ssd.com
                                     Barbara Bolton Litten (Florida Bar No. 91642)
                                     Email: blitten@ssd.com
                                     **SQUIRE, SANDERS & DEMPSEY L.L.P.**
                                     1900 Phillips Point West
                                     777 South Flagler Drive
                                     West Palm Beach, Florida  33401-6198
                                     Telephone:  561-650-7120
                                     Facsimile:  561-655-1509


                                     Eugene A. Schoon
                                     Email: eschoon@sidley.com
                                     **SIDLEY AUSTIN LLP**
                                     One South Dearborn
                                     Chicago, Illinois  60603
                                     Telephone:  312-853-7279
                                     Facsimile:  312-853-7036

                                     *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on November 25, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/  Barbara Bolton Litten*
Barbara Bolton Litten

**SERVICE LIST**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**
**Case No. 9:08-cv-80903-MIDDLEBROOKS/JOHNSON**

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN**
**& SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-759-1400
Facsimile:  713-759-1217
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Theodore Babbitt
Email:  tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
**& LeCLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, Florida 33409
Telephone: 561-684-2500
Facsimile:  561-684-6308
*Plaintiffs' Steering Committee/Liaison Counsel*

Neal Moskow
Email:  neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Plaintiffs' Steering Committee/*
*Federal-State Liaison*

Patricia E. Lowry
Florida Bar No. 332569
Email:  plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone: 561-650-7200
Facsimile:  561-655-1509
*Defendants' Liaison Counsel and*
*Attorneys for Defendant Bayer Corporation*

Leslie Ann Caldwell
Email: lac@lusklaw.com
**LUSK, LUSK, DOWDY & CALDWELL, P.C.**
2100 Highland Avenue, Suite 410
Birmingham, Alabama  35205
Telephone:  205-933-7090
Facsimile:  205-933-7099
*Attorneys for Plaintiff*