IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:  **ALL ACTIONS**

**BAYER'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT
F. GARY TOBACK, M.D., Ph.D. AND MEMORANDUM OF LAW IN SUPPORT**

PLEASE TAKE NOTICE that Defendants Bayer Corporation, Bayer HealthCare Pharmaceuticals Inc., and Bayer Schering Pharma AG move to exclude certain testimony of plaintiffs' expert F. Gary Toback.

### MEMORANDUM OF LAW

Dr. F. Gary Toback is a nephrologist offered by plaintiffs to speculate about the mechanisms through which Trasylol might cause acute renal failure. Dr. Toback concedes these are unproven theories. His testimony therefore should be excluded because "the courtroom is not the place of scientific guesswork, even of the inspired sort. Law lags science; it does not lead it." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d at 1247; *see also Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002) ("Courts are cautioned not to admit speculation, conjecture, or inference that cannot be supported by sound scientific principles. The courtroom is not the place for scientific guesswork") (internal quotation marks and citation omitted). *See generally Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993)

Dr. Toback also opines that Bayer failed to adequately test Trasylol because it did not test Trasylol in comparison to Amicar (*i.e.*, aminocaproic acid) and tranexamic acid, two drugs not approved by the FDA for use in CABG surgeries. Deposition of F. Gary Toback

("Toback Dep.") (Ex. A) at 173:17-174:15; Report of F. Gary Toback, M.D., Ph.D. ("Toback Report") (Ex. B) ¶¶ 21, 24.  This opinion, too, should be excluded.  Dr. Toback is not an FDA regulatory expert, and his personal opinions about what Bayer should or should not have done are inadmissible.  Moreover, because Dr. Toback concedes that such testing may not have been permissible, his opinion can only serve to mislead the jury.

Finally, Dr. Toback offers a variety of other opinions that also should be excluded.  He should not be allowed to testify regarding (1) his views on what should have been included in Trasylol's labeling, because he has never designed or drafted any drug label; (2) his speculative musings on Bayer and FDA's knowledge, state of mind and motive; (3) his admittedly baseless opinion that Bayer withheld adverse event reporting data from FDA; and (4) his argumentative and slanted summaries of documents produced in this litigation.  *See* Fed. R. Evid. 702.

**ARGUMENT**

I. **THE COURT SHOULD EXCLUDE DR. TOBACK'S SPECULATIONS ABOUT THE MECHANISM THROUGH WHICH TRASYLOL PURPORTEDLY CAUSES RENAL FAILURE.**

Much of Dr. Toback's Report is devoted to theories about how Trasylol *might* cause acute renal failure.[1]  These theories should be excluded because they are admitted speculation and because Dr. Toback cannot even identify a threshold level at which Trasylol

---

[1] Dr. Toback also uses a definition of renal failure that is not generally accepted in the medical community.  For purposes of his opinion, Dr. Toback defines acute renal failure as a 0.3 mg/dL increase in the level of creatinine in the blood.  Toback Dep. (Ex. A) at 273:10-274:13.  He concedes, however, that most scientists do not think that small an increase is "meaningful," and instead require a 0.5 mg/dL increase.  *Id*.  For this reason as well, the Court should exclude Dr. Toback's opinion that Trasylol causes renal failure.  *See McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) ("whether the technique is generally accepted in the scientific community" is a relevant consideration even under *Daubert*).

supposedly is toxic. These fundamental flaws require exclusion not only of his "mechanism" testimony, but also Dr. Toback's opinion on general causation.

In *McClain*, the Eleventh Circuit held that the district court abused its discretion in admitting the testimony of a general causation expert who had not "offered a reliable explanation of the physiological process by which [the drug] causes heart attacks and ischemic strokes." 401 F.3d at 1253. "*The underlying predicates of any cause-and-effect medical testimony are that medical science understands the physiological process by which a particular disease or syndrome develops.*" *Id*. (quoting *Black v. Food Lion, Inc.*, 171 F.3d 308, 314 (5th Cir. 1999)) (emphasis in original).

Following *McClain*, courts in the Eleventh Circuit routinely exclude general causation opinions where the expert has not offered a proven mechanism by which the drug causes the alleged injury. *See In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1296 (M.D. Fla. 2007) (excluding a general causation expert whose possible mechanisms had not "been tested or proven" because his "theory remains an educated guess"); *Kilpatrick v. Breg, Inc.*, No. 08-10052, 2009 WL 2058384, *5 (S.D. Fla. June 25, 2009) (excluding an expert where "none of the articles [upon which the expert relied] explains the mechanism by which bupivacaine damages cartilage"); *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 602 (N.D. Fla. 2009).

### A.     Dr. Toback's Theories of Potential Mechanism Are Pure Speculation.

Although Dr. Toback offers three possible mechanisms by which Trasylol causes renal failure, none is tested. Thus, Dr. Toback offers no more than speculation to support his proposed mechanisms of injury, which is insufficient to withstand *Daubert* challenge.

3

> ***Mechanism 1:*** Trasylol may lead to vasoconstriction, which may reduce blood flow to the kidney and thus reduce filtration.

The first possible mechanism identified by Dr. Toback is his subjective belief that Trasylol causes a cascade of events that eventually results in vasoconstriction, which may decrease blood flow in the kidney and thereby reduce the kidney's filtration rate.  Toback Report (Ex. B) ¶ 10A.  The sole support he offers for this opinion is a study done in rats.[2] *Id.*; Toback Dep. (Ex. A) at 178:2-25.  It is well-settled that a rat study cannot prove causation in humans. *Rider,* 295 F.3d at 1201 (holding that the trial court did not abuse its discretion in concluding that "plaintiffs offered insufficient evidence … that the effect of bromocriptine would be the same on humans as it is on animals"); *Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1313-14 (11th Cir. 1999) (holding that the trial court properly excluded an expert who "failed to explain the correlation of the results of Lightfoote's rat studies … to symptoms in a human patient"); *Kilpatrick*, 2009 WL 2058384 at *6 (recognizing "the difficulty inherent in extrapolating conclusions about human disease from animal-based studies"); *In re Accutane Prods. Liab.*, 511 F. Supp. 2d at 1291-92 (noting the limitations of animal studies, difficulties extrapolating across species and the customary use of high doses in animal studies, and excluding an expert's causation opinion for ignoring the animal studies' conclusions that do not support his opinion).

Dr. Toback's extrapolation from a single rat study is especially problematic here.  In 2000, researchers found that Trasylol had no effect on renal blood flow in *humans*.  *See* Schweizer, "Aprotinin does not impair renal haemodynamics and function after cardiac surgery," Brit. J. Anaesth., 2000; 80(1): 16-22 (Ex. D).  That study concluded that "[d]espite inhibition of killikrein-kinin pathways, aprotinin pretreatment did not influence prostaglandin synthesis,

---

[2] Seto, "The effect of aprotinin (a serine protease inhibitor) on renal function and renin release," Hypertension, 1983; 5(6):893-899 (Ex. C).

glomerular filtration, renal plasma flow or tubular transport mechanisms." *Id*. at 21.  Nowhere in Dr. Toback's report or deposition does he even mention this study or these results.  His litigation-driven opinion thus does not paint a complete picture of the state of the science and should be excluded.  *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996) (affirming exclusion of expert opinion as unreliable based on district court's finding that expert "has seen fit to 'pick and chose' [sic] from the scientific landscape and present the Court with what he believes the final picture looks like.  This is hardly scientific.") (alteration in original); *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1331, 1335 (10th Cir. 2004) (affirming exclusion of plaintiffs' causation expert because "selective reliance" on certain evidence to the exclusion of other evidence is "not a generally accepted methodology"); *MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*, 132 F. Supp. 2d 289, 292-93 (S.D.N.Y. 2001) (excluding as unreliable expert opinion that ignored key information).

More fundamentally, however, even if Dr. Toback were justified in extrapolating from the rat study to humans, the study still would not provide support for his mechanism of injury.  As Dr. Toback is forced to concede, the reduction in filtration seen in the rat study is not sufficient to trigger acute renal failure:

> Q   Did the rats in Seto have renal ischemia?
>
> A   I don't think so.  There is no way to know from these studies whether the an[im]als went on to develop acute renal injury.  It's unlikely they would from a fallen GFR of 37 percent.  Remember that if you took out one kidney, the fall would be 50 percent and that's not by itself a terribly bad – so I would guess that they could do okay with that.

Toback Dep. (Ex. A) at 184:24-185:8.  Thus, the rat study is not sufficient to support his mechanism opinion.

*Mechanism 2:* Trasylol accumulates in kidney cells, which may lead to cellular injury.

Dr. Toback's second possible mechanism is his theory that Trasylol has a direct effect on kidney cells by accumulating in them, which ultimately leads to cellular injury. Toback Report (Ex. B) ¶ 10B. Dr. Toback concedes he does not know whether this occurs in humans:

> Q   Okay. So in humans, given the last part of your statement, you don't really know, then it wouldn't be your opinion with reasonable degree of medical certainty that the changes in the tubules are permanent –
>
> MR. OVERHOLTZ:   Object to form.
>
> BY MR. STEPHENSON: Q.   – is that fair to say?
>
> A.   I think it's unknown what happens to the tubular cells in patients who have been given aprotinin. I think in patients who are given a large amount of aprotinin, I would guess that there could be injury or death to the tubular cells. And people giving lesser amounts of aprotinin, I think that would be much less likely.

Toback Dep. (Ex. A) at 100:23-101:12. That concession alone shows that this mechanism has not been proven. *See In re Accutane Prods. Liab.*, 511 F. Supp. 2d at 1296 ("biological plausibility is not proof of causation").

Dr. Toback's inability to provide a definitive opinion on this mechanism is unsurprising because he only points to one human study in support of it. He admits, however, that the study, "is not a particularly good one," because the "authors [did not] correct[] for these imbalances the way I wish they did." Toback Dep. (Ex. A) at 201:13-202:14; *see also id.* at 197:17-198:16. Moreover, the other studies he relies upon are simply animal studies, which cannot show causation in humans – a point that Dr. Toback concedes. *Id.* at 181:8-184:22 (animal studies do not "tell me that's true in humans"); *see also Rider*, 295 F.3d at 1201; *Allison*, 184 F.3d at 1313-14.

>   *Mechanism 3:* Trasylol may cause clots to form in renal arteries, which could lead to reduced blood flow and therefore reduced filtration.

The third mechanism offered by Dr. Toback is that it is possible that Trasylol could cause clots to form in renal arteries. Toback Report (Ex. B) ¶ 16; Toback Dep. (Ex. A) at 171:21-23 ("Q. And is it your belief that aprotinin contributes to excessive formation of clots? A. I think it certainly could").

Again, Dr. Toback relies upon a single study (Sundt 1993) with questionable results to support this theory.[3] He admits that the Sundt study showed that clots formed under circumstances in which patients were given inadequate amounts of heparin, a blood thinning agent designed to prevent clots. Toback Dep. (Ex. A) at 174:16-175:19 ("one of the criticisms of the Sundt study, that their patients weren't perhaps adequately Heparinized"); *id*. at 175:20-22 ("Q. And if patients were under-Heparinized, you would expect to see excessive clotting, correct? A. Yes, well, Heparin would tend to oppose that"). As Dr. Toback conceded, these results could not be duplicated where the proper amounts of heparin were used:

>   Q   After Bayer changed the Heparinization protocol, did you ever see any studies like Sundt where they found thrombi like he found?
>
>   A   I didn't see any.

*Id.* at 177: 6-9.

Thus, none of the Dr. Toback's three competing theories on how Trasylol purportedly causes acute renal failure has been proven. Rather, those theories are nothing more than educated guesses.

---

[3] Sundt, "Renal Dysfunction and Intravascular Coagulation With Aprotinin and Hypothermic Circulatory Arrest," Ann. Thorac. Surg., 1993;55:1418-24 (Ex. E).

### B. Dr. Toback Cannot Identify a Threshold Toxicity Level.

Dr. Toback's mechanism opinions should be excluded for an additional reason. One of the keys to establishing a biologically proven mechanism is to "demonstrate the levels of exposure that are hazardous to human beings generally." *McClain*, 401 F.3d at 1241 (internal quotation omitted). This is because, for most substances, "thresholds exist, such that there is some dose below which even repeated, long-term exposure would not cause an effect in any individual." *Id*. at 1242.

Dr. Toback admits that he does not know the dosage at which Trasylol supposedly causes renal failure:

> Q   When you say sufficient aprotinin, what are you referring to there?
>
> A   I'm trying to get around the problem that in certain patients the amount of aprotinin that may be required to do that will be different from other patients. And I don't know how much that would be, and I don't have access to kidney tissue to measure it. And so it's a virtual amount.

Toback Dep. (Ex. A) at 275:2-9.

This concession is fatal to his general causation opinion. *In re Accutane*, 511 F. Supp. 2d at 1293-94 (excluding expert who had conducted no analysis to determine whether threshold dose existed).

\* \* \*

In short, Dr. Toback cannot identify a biologically proven explanation for how Trasylol supposedly causes renal failure and cannot identify the threshold dosage at which this occurs. These failures render his opinion that Trasylol causes renal failure nothing more than an "educated guess." *In re Accutane*, 511 F. Supp. 2d at 1296. It is well-settled, however, that "the courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science; it does not lead it." *McClain*, 401 F.3d at 1247. The Court thus should exclude Dr. Toback's

8

speculative musings. *See In re Accutane,* 511 F. Supp. 2d at 1296; *Kilpatrick,* 2009 WL 2058383, at *5; *Hendrix*, 255 F.R.D. at 602.

## II.    DR. TOBACK'S OPINION THAT BAYER FAILED TO COMPARE TRASYLOL WITH AMICAR AND TRANEXAMIC ACID IS INADMISSIBLE.

Dr. Toback freely concedes that Trasylol was more thoroughly studied than the lysine analogues sometimes used to treat bleeding during CABG. *Id*. at 301:2-5 ("Q. As between the three drugs, aprotinin, tranexamic acid, and Amicar, which of those three drugs has been the most thoroughly studied? A. Aprotinin"). Nevertheless, Dr. Toback wishes to tell the jury that Bayer did not adequately test Trasylol because it funded only placebo controlled clinical trials and did not do clinical trials comparing its drug with Amicar and tranexamic acid:

> Q.   So is it your view that Bayer should have done a large randomized controlled clinical trial comparing aprotinin to Amicar and tranexamic acid in the early 1990s?
>
> A.   Yes. Now, using placebo is a real problem for me as a control. I talked before that I would rather see the Amicar and tranexamic acid ... . So it seems to me that the placebo comparative trials are in a sense defective in that way, as well. Those are the ones that I read in the documents that I have from Bayer. I'm not aware that Bayer actually did a comparative study where they looked at aprotinin versus Amicar versus tranexamic acid. And I would have thought they would do that.

*Id*. at 173:17-174:15.

This opinion is inadmissible for three separate and independent reasons. *First*, Dr. Toback is admittedly "not an FDA regulations expert" and has no expertise in how drugs are tested. Toback Dep. (Ex. A) at 139:24-140:9. *See also Ackley v. Wyeth Labs., Inc.*, 919 F.2d 397, 405 (6th Cir. 1990) (manufacturer is "not obligated to provide a comparison of its drug with others"); *cf*. 21 C.F.R. § 201.57(c)(2)(iii). Neither Amicar nor tranexamic acid was approved by FDA for use in CABG surgeries during the relevant time period. *See* Toback Dep. (Ex. A) at 300:5-24.

*Second*, to the extent this opinion seeks to establish that Bayer had a legal duty to test Trasylol in comparison to Amicar and tranexamic acid, it is inadmissible for an additional reason. It is settled that experts "may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

*Third*, if Dr. Toback is suggesting that Bayer had an ethical or moral obligation to do studies beyond those required by the FDA, that opinion is inadmissible. Courts routinely have excluded an expert's personal opinion about what he thinks companies like Bayer should or should not have done. *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 879 (E.D. Ark. 2008) (reaffirming the preclusion of an expert from "talk[ing] about or refer[ing] to what an 'ethical' or 'responsible' pharmaceutical company does or would do") *aff'd in relevant part, rev'd in part on other grounds* 586 F.3d 547 (8th Cir. 2009); *Lofton v. McNeil Consumer & Specialty Pharms.*, No. 05-cv-1531, 2008 WL 4878066, *7 (N.D. Tex. July 25, 2008) (excluding physician's opinion on defendant pharmaceutical company's "ethical obligations, motive, state of mind, asserted knowledge, and alleged conduct"); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) (prohibiting expert from testifying "as to whether Bayer acted ethically, irresponsibly, or recklessly"); *Kadlec Med. Ctr. v. Lakeview Anesthesia Ass'n*, No. 04-997, 2006 WL 1328809, *1 (E.D. La. May 12, 2006) ("The Court remains unpersuaded by plaintiffs' arguments that expert testimony as to defendants' ethical and/or moral duties would be helpful"); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2001 WL 454586, *3, *9-10 (E.D. Pa. Feb. 1, 2001) (excluding expert testimony on "truth, honesty and integrity in the context of medical ethics") (internal quotation marks excluded).

### III. DR. TOBACK'S OTHER OPINIONS ARE INADMISSIBLE.

#### A. Dr. Toback Is Admittedly Unqualified To Provide Labeling Opinions.

Dr. Toback opines that Bayer should have included information regarding the Sundt 1993 study in its package insert:

> The other point, I keep coming back to this Sundt study because as a nephrologist who is really interested in renal pathology and actually can see platelet fibrin thrombi, I really think the results of that study should have been incorporated into the package insert for doctors who were giving – who were prescribing or using aprotinin in 2003, 2006 because the study had been done back in 1993, and there was this really disastrous result.  And I think doctors should have been made aware that this had happened and were told to use the drug with extreme caution ... and that you should be really careful in your patients because this is out there and it might happen to your case, and so you should be aware that this is something you should keep in mind.

Toback Dep. (Ex. A) at 174:16-175:16.

Despite conceding that the thrombi issue disappeared with adequate heparinization in patients receiving Trasylol, Dr. Toback still thinks that Bayer should have provided more information in the package insert on this issue:

> Q   The package insert did say how to Heparinize, did it not?
>
> A   I believe it did.
>
> Q   Okay.  And in that way, addressed the issue from Sundt, correct?
>
> MR. OSBORNE:  Form, predicate.
>
> THE WITNESS:  Well, that's – you're right in the sense that that would be a to prevent – to make it less likely that the platelet thrombi would form and cause thromboses, but it doesn't really put the physicians in a state of awareness that that's what they're trying to deal with.

*Id*. at 176:5-177:5.

11

This opinion should be excluded. Dr. Toback concedes he is "not an FDA regulations expert," *id.* at 140:8-9, and has no demonstrable expertise in crafting or evaluating drug labels. Accordingly, his conclusions about Bayer's labeling amount to no more than "[t]alking off the cuff." *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 539 (7th Cir. 2000) ("The fact that [the proposed expert] never even drafted a proposed warning renders his opinion akin to 'talking off the cuff' and not acceptable methodology"); *Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1062, 1089 (D. Kan. 2002) ("[W]ithout any data or research regarding [a label's] potential efficacy, [the proposed expert] has merely offered phrases that he thinks might be reasonably included"); *Grdinich v. Bradlees*, 187 F.R.D. 77, 82 (S.D.N.Y. 1999) ("Without 'industry standards' to rely upon, [the physician] seems to base his conclusions on his own authority"); *see also Tyler v. Sterling Drug, Inc.*, 19 F. Supp. 2d 1239, 1245 (N.D. Okla. 1998) (courts must exclude an expert who "does not rely on any scientific method in formulating his opinion on the issue of notice and failure to warn" and "concepts of informed consent [do not] equate to specific industry standards for warning labels").

### B. Dr. Toback's Opinions Regarding Bayer's and FDA's Knowledge or State of Mind Are Inadmissible.

Throughout his report, Dr. Toback opines on Bayer and FDA's motive, knowledge, intent and state of mind, for instance:

- "It was well-known to Bayer even in 1993, when they submitted their NDA (Bayer 00674772) that there was a higher incidence of clinically significant increases above baseline in serum creatinine …" Toback Report (Ex. B) ¶ 14;

- "It is clear that Bayer scientists were aware of these findings and Aprotinin's affect [sic] on the kidneys." *Id.* ¶ 15;

- "Bayer also knew there was a greater incidence of subsequent creatinine increases in patients with certain conditions … ." *Id.*;

- "The incidence rate was relatively low and Bayer was able to argue successfully to the FDA that this incidence was acceptable." *Id.* ¶ 16;

12

- "Bayer was clearly aware of adverse events with Trasylol." *Id*. ¶ 17;

- "Clearly, Bayer was aware of the renal connection with Aprotinin for years …" *Id*. ¶ 21;

- "[I]t is clear from the evidence that's not when the study [Mangano 2006] was started or even when the results were first known by Bayer." *Id*. ¶ 23;

- "Bayer knew patients who received Aprotinin had elevated serum creatinine concentrations indicating decreased renal function and kidney injury." *Id*. ¶ 23;

- "FDA was not aware of these new data when it held the September 21, 1006 [sic] Advisory Committee meeting on Trasylol safety." *Id*. ¶ 25.

Opinions about Bayer's purported motives, knowledge, intent, or state of mind fall outside Dr. Toback's knowledge or stated expertise, and do not rest upon "scientific, technical or other specialized knowledge . . ." Fed. R. Evid. 702; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 545-47, 561-66 (S.D.N.Y. 2004). Each of these topics is a "classic jury question and not one for the experts," *In re Diet Drugs Prods. Liab.*, MDL No. 1203, 2000 WL 876900, *9 (E.D. Pa. June 20, 2000), and thus is inadmissible.

    **C.**     **Dr. Toback's Opinion That Bayer Allegedly Withheld Information From FDA Is Inadmissible.**

In his report, Dr. Toback opines that certain adverse event reports received by Bayer "were not reported to the FDA." Toback Report (Ex. B) ¶ 17. At deposition, Dr. Toback clarified that he does not know whether Bayer in fact withheld any information from FDA:

Q    Well, are you assuming that these did not find their way into the reporting system?

A    I'm saying I don't know.

Q    You can't say that these weren't reported by Bayer to the FDA after this document was created, you don't know one way or the other?

A    I don't. I don't even know for sure if those are patients that received aprotinin.

13

Toback Dep. (Ex. A) at 231:9-16. Because he lacks a factual basis for his opinion, it should be excluded.

Moreover, any such opinion testimony would only be relevant to a fraud-on-the FDA theory, which plaintiffs cannot pursue. For this reason as well, his opinion should be excluded. *In re Baycol Prods. Litig.*, 532 F. Supp. 2d at 1053 (excluding expert testimony "offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA"); *see also Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36-37 (D.D.C. 2003) (holding that, under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2006), "what was told to the FDA cannot support a tort claim"; such evidence "would be nothing more than an invitation for the jury to speculate about what ... the FDA ... might do if the facts were different"); *Bouchard v. American Home Prods. Corp.*, 213 F. Supp. 2d 802, 811-812 (N.D. Ohio 2002) (excluding "any evidence or argument that [defendant] 'misled' the [FDA] ... or 'violated' the Food, Drug and Cosmetic Act").

    **D.**    **Dr. Toback Should Not Be Permitted To Testify Regarding What Happened At The FDA Advisory Committee Meetings.**

Dr. Toback's report contains a factual narrative of what he believes happened at the FDA Advisory Committee meeting based solely on his review of various documents produced in this litigation. *See* Toback Report (Ex. B) ¶ 25. To the extent that he intends to offer such an "opinion" to the jury, it should be excluded. "Having an expert witness simply summarize a document (which is just as easily summarized by a jury) with a tilt favoring litigant, without more, does not amount to expert testimony." *In re Prempro Prods. Liab. Litig.,* 554 F. Supp. 2d at 887; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551.

14

## CONCLUSION

None of the opinions of Dr. Toback discussed above has support in either scientific learning and literature, or in settled law. None meets the standard set forth in Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Therefore, Defendants respectfully request that this testimony be excluded.

## RULE 7.1(A)(3) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good faith with counsel for all parties who may be affected by the relief sought in the motion, and has been advised that plaintiffs will contest this motion.

December 17, 2009                                    Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
Email:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
Email:  blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
   & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:  312-494-4440

15

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:  312-853-73036

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN &
   MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation,
Bayer Healthcare Pharmaceuticals, Inc.,
and Bayer Schering Pharma. AG*

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

>    */s/ Barbara Bolton Litten*
>    Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,
   FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:   215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
   & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:   561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:   713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:   203-610-6399
*Federal-State Liaison for Plaintiffs*