**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:  **ALL CASES**

**BAYER'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT
SUZANNE PARISIAN, M.D. AND MEMORANDUM OF LAW IN SUPPORT**

PLEASE TAKE NOTE that Defendants Bayer Corporation, Bayer Healthcare

Pharmaceuticals Inc., and Bayer Schering Pharma AG move to exclude the testimony of

plaintiffs' expert Suzanne Parisian.

**MEMORANDUM OF LAW**

Dr. Suzanne Parisian is a putative regulatory expert who has submitted a 250-

page report that argues plaintiffs' case in the guise of expert testimony.  *See* Expert Report of

Suzanne Parisian, M.D. ("Parisian Report") (Ex. A).  Her testimony should be excluded because

*Daubert* precludes "engagement of 'expert' witnesses whose intended role is more to argue the

client's cause from the witness stand than to bring to the fact-finder specialized knowledge or

expertise that would be helpful in resolving the issues of fact presented by the lawsuit."  *In re*

*Rezulin Prods. Liab. Litig.* 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004).  *See*, *e.g.*, *Oakberg v.*

*Zimmer, Inc.*, No. 05-35231, 2006 WL 3478318, at *1 (9th Cir. Dec. 1, 2006) (affirming

exclusion of Dr. Parisian's testimony on content and application of FDA regulations).

Dr. Parisian is a pathologist who has not practiced medicine in decades.  *See*

Deposition of Suzanne Parisian, M.D. ("Parisian Dep.") (Ex. B) at 16:6-7; 46:20-22.  She worked

in FDA's medical device division — which is separate from the division that regulates

prescription medicines such as Trasylol — from 1991-1995. *See id.* at 53:6-9; Curriculum Vitae of Suzanne Parisian ("Parisian C.V.") (Ex. C). Thereafter, Dr. Parisian formed her own medical device consulting company, and has spent the past 13 years testifying on behalf of plaintiffs — and only plaintiffs — in product liability litigation. *See* Parisian Dep. (Ex. B) at 48:15-17; 107:7-9. Currently, 90% of her time is devoted to being a hired expert for plaintiffs in litigation. *Id.* at 111:25-112:3. In the approximately 130 instances in which Dr. Parisian has either been deposed (more than 100 times) or testified in court (about 30 times), she has *never* served as an expert for a pharmaceutical company in a product liability case. *Id.* at 107:7-9; 108:21-24. Indeed, at her deposition, Dr. Parisian could not name a single pharmaceutical company that she had not testified against. *Id.* at 108:16-19. Her reflexive conclusions are the same in every case:

> Q.    Have you ever given an opinion in a case that a medication's label was adequate?
>
> A.    Not at this time.
>
> Q.    Have you ever given an opinion in a case that a pharmaceutical company adequately studied its medication?
>
> A.    Not at this time. But, again, I pick the cases that I want to take.
>
> Q.    Have you ever given the opinion in a case that a pharmaceutical company appropriately followed up on safety concerns?
>
> A.    Not yet.

*Id.* at 108:5-15.

Here, Dr. Parisian seeks to opine that yet another pharmaceutical company violated the Food, Drug and Cosmetic Act ("FDCA") and FDA regulations by failing to adequately test, monitor, and warn about the risks of its medical product and by failing to disclose safety information to FDA and physicians. Parisian Report (Ex. A) ¶ 17 (summary of opinions). Dr. Parisian's conclusions are based on a factual narrative of Trasylol's regulatory

history, a slanted view of select documents and Bayer witness depositions presented to her by plaintiffs' counsel, and her own speculation about Bayer's knowledge, state of mind, and motives.

As so many other federal courts faced with similar pseudo "expert" opinions by Dr. Parisian have done, this Court should hold that Dr. Parisian is not qualified to testify on these matters, that her opinions fall outside the purview of proper expert testimony, and that her methodology is fundamentally unsound.  *See*, *e.g.*, *In re Prempro Prods. Liab. Litig.*, 586 F.3d 547, 571 (8th Cir. 2009) (affirming MDL court's exclusion of Dr. Parisian's narrative testimony about a drug's regulatory history); *Oakberg*, 2006 WL 3478318, at *1 (affirming exclusion of Dr. Parisian's testimony on FDA regulations, defendant's alleged failure to warn, defendant's marketing or advertising, and medical causation because it did not rest on reliable foundation and Dr. Parisian was not qualified); *Reece v. AstraZeneca Pharms., LP*, 500 F. Supp. 2d 736, 744-46 (S.D. Ohio 2007) (excluding Dr. Parisian's testimony on medical issues because she "is not qualified to offer such opinions" and because "Dr. Parisian failed to demonstrate that she used scientifically valid methodology or reasoning in reaching her conclusions").[1]  Because Dr.

---

[1] *See*, *e.g.*, *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191-92 (S.D.N.Y. 2009) (holding that Dr. Parisian may not offer conclusory opinions, selectively quote or read from exhibits, or opine as to the knowledge, motivations, intent, state of mind, or purposes of the defendant); *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 668 (D.N.J. 2008) (excluding Dr. Parisian's testimony on medical issues as outside of her qualifications and unreliable); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. 05-md-1708, 2007 WL 1964337, at *7-8 (D. Minn. June 29, 2007) (excluding proffered testimony by Dr. Parisian regarding whether defendant violated the FDCA and related regulations, defendant's knowledge, and whether defendant's conduct was ethical); *Jacob v. Caesars Entm't, Inc.*, No. 05-0805, 2007 WL 594714, at *4 (E.D. La. Feb. 21, 2007) (excluding Dr. Parisian's opinion regarding medical causation issues); *Lillebo v. Zimmer, Inc.*, No. 03-2919, 2005 WL 388598, at *5 (D. Minn. Feb. 16, 2005) (excluding Dr. Parisian's proffered testimony on the legal requirements of the FDCA and FDA regulations and whether defendant's actions comply with those requirements); *Linsley v. C.R. Bard, Inc.*, No. 98-2007, 2000 WL 343358, at *4-5 (E.D. La.

Parisian's testimony suffers from the same flaws in this case, Bayer moves to exclude her testimony in its entirety.

## ARGUMENT

Dr. Parisian's testimony does not pass *Daubert*'s gatekeeping standards. *See Daubert v. Merrell Dow Pharmas., Inc.*, 509 U.S. 579, 592 (1993). First, she lacks the expertise to offer regulatory, medical, or scientific opinions about Trasylol. Second, her testimony consists of nothing more than factual narratives, legal conclusions, personal opinions, and unsupported speculation — all of which fall outside the purview of proper expert testimony. Third, even assuming such testimony is permissible (and it is not), Dr. Parisian has not applied a sound methodology to the facts of the case to reach reliable conclusions. Accordingly, Dr. Parisian should not be permitted to testify. *See* Fed. R. Evid. 702; *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999).

## I.    THE COURT SHOULD EXCLUDE DR. PARISIAN'S TESTIMONY BECAUSE SHE IS NOT QUALIFIED TO OFFER THE OPINIONS SHE PROPOSES.

As a threshold matter, Dr. Parisian is not qualified to offer expert testimony on three matters that encompass the vast majority of her proposed testimony: (1) foreign regulatory issues; (2) causation opinions about Trasylol; and (3) FDA's regulation of prescription pharmaceuticals and Trasylol.

An expert witness must be "qualified as an expert by knowledge, skill, experience, training, or education" with regard to the topics of the proposed testimony. Fed. R. Evid. 702. Even if Dr. Parisian may have expertise in some areas, she does not have the requisite expertise in the specific areas of her proposed testimony here. *See*, *e.g.*, *Dura Auto. Sys. of Ind.*,

_____

Mar. 30, 2000) (excluding Dr. Parisian's testimony on medical causation and the adequacy of a medical device's labeling under state law).

*Inc. v. CTS Corp.*, 285 F.3d 609, 612-14 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty.  That would not be responsible science."); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2001 WL 454586, at *7 (E.D. Pa. Feb. 1, 2001) ("a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue").

Excluding such pseudo-expertise is critical given that this kind of testimony may have the veneer of credibility to a jury even though it actually does not meet the requisite standards of real-world expertise.  *See*, *e.g.*, *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (absent proper judicial gatekeeping, "the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it'") (quoting *Daubert*, 509 U.S. at 595).

## A.  Dr. Parisian Lacks Expertise To Opine About Foreign Regulatory Matters.

Dr. Parisian seeks to testify about foreign regulatory matters that are beyond her expertise.  *E.g.*, Parisian Report (Ex. A) ¶¶ 207-210 (relying on two foreign inspection reports as a basis to conclude that defendants' pharmacovigilance system was deficient); *id.* ¶¶ 211-214 (referencing the May 2006 European Union Trasylol label change, which added warnings about renal dysfunction).  Dr. Parisian concedes that she is not an expert on foreign regulatory matters. Parisian Dep. (Ex. B) at 78:19-25; 80:16-19.  As is the case with so many of her proffered opinions, the only knowledge Dr. Parisian has on foreign regulatory matters is confined to her work as a testifying expert witness for litigation.  *Id.* at 77:20-25; 81:13-16.  Given this lack of real-world training and experience, Dr. Parisian is not qualified to make inferences or draw conclusions for the jury's consideration based on foreign regulatory documents and this testimony should be excluded.  *Daubert*, 43 F.3d at 1317.

**B.      Dr. Parisian Lacks Expertise To Render Causation Opinions About Trasylol.**

Although she testified that she is not plaintiffs' "causation expert," Parisian Dep. (Ex. B) at 26:5-14, Dr. Parisian nevertheless has opined that Trasylol leads to renal failure, thrombosis, and mortality.  *See, e.g.*, Parisian Report (Ex. A) ¶ 24 ("Bayer should also have been aware that Trasylol carried an increased risk at any dose of renal failure for certain populations of patients.").  This testimony should be excluded because Dr. Parisian does not have medical or scientific expertise regarding the alleged side effects of Trasylol.

Dr. Parisian has not practiced medicine in more than 20 years (since 1987), and does not possess the necessary education, training, or experience to opine about the renal or other medical effects of Trasylol.  She is not a nephrologist, hematologist, or cardiac surgeon; she has never prescribed Trasylol, and her experience performing the type of surgery in which Trasylol was administered is limited to assisting surgeons during a cardiothoracic rotation in medical school in the 1970s.  *See* Parisian Dep. (Ex. B) at 97:16-98:5; 99:10-13, 19-20; Parisian C.V. (Ex. C).  She has only reviewed a handful of scientific articles about Trasylol, as reflected in her list of documents reviewed that is attached to her expert report.  Documents Reviewed by Dr. Suzanne Parisian (Ex. D).

The mere fact that Dr. Parisian was once trained as a medical doctor does not qualify her to opine on medical issues generally, and her testimony on medical causation has been excluded in many cases for this reason.  *See, e.g.*, *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 668 (D.N.J. 2008) (excluding Dr. Parisian's testimony on medical causation given that she "has very little relevant experiences"); *Reece*, 500 F. Supp. 2d at 745 ("[P]laintiff has not demonstrated that there is anything in Dr. Parisian's background or training that qualifies her to testify as an expert on chronic pain patients, rhabdomyolysis, or renal failure"); *Oakberg v. Zimmer*, No. CV-03-47, 2004 WL 5503779, at *2 (D. Mont. Nov. 23,

2004) ("Parisian may not offer opinions relating to medical causation of the failure of Centralign implant."); *Linsley v. C.R. Bard, Inc.*, No. 98-2007, 2000 WL 343358, at *4-5 (E.D. La. Mar. 30, 2000) (excluding Dr. Parisian's testimony on causation).[2]  Accordingly, this testimony should be excluded.

Dr. Parisian is similarly not qualified to testify to the implications of scientific studies related to Trasylol and should be prohibited, as she has been in other cases, from offering testimony on these matters here.  *See*, *e.g.*, *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 884 (E.D. Ark. 2008) (holding that Dr. Parisian is not qualified to opine on a scientific study because matters related to epidemiology are "outside the scope of Dr. Parisian's qualifications"), *aff'd in relevant part*, 586 F.3d 547, 571 (8th Cir. 2009).

Dr. Parisian acknowledged at her deposition that plaintiffs have offered a separate epidemiology expert to testify in the Trasylol litigation and that she will not testify about the "science of epidemiology" and "would not be the one who specifically talked about statistical significance and power."  Parisian Dep. (Ex. B) at 33:6-7, 34:13-14, 33:21-22; *id.* at 88:14-15 ("I'm not the person that would originally design large epidemiological studies").  Dr. Parisian refused to admit, however, that an epidemiologist would be more qualified to speak about the import of Trasylol studies and stated that she may opine on matters such as "the design of a study," "what is a study actually designed to look at," and "information that can be obtained from the study."  *Id.* at 33:15-18; 33:25-34:25.  Moreover, her report is replete with improper

---

[2] *See generally O'Conner v. Commonwealth Edison Co.*, 807 F. Supp. 1376, 1389-90 (C.D. Ill. 1992) (barring doctor's expert testimony where the "witness attempts to give an opinion on a subject for which he is not qualified. . . . The Rules recognize that there is some limit to every expert's expertise and that he can not be allowed to go beyond it"); *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 697-98 (W.D.N.C. 2003) (barring physicians' purported expert testimony because "any expert, including physicians, must have the specialized knowledge or skill in the specific area in which the testimony is proffered").

opinions about scientific studies related to the medical effects of Trasylol.  *See* Parisian Report (Ex. A) ¶ 31 ("These three studies above provide reasonable evidence of causal association of risk of Trasylol as well as association of increased risk with increasing dose"); *id.* ¶ 133 (opining on the design of animal studies conducted by Bayer); *id.* ¶ 132 ("Bayer should have been aware that for the 649 patient population enrolled in the clinical trials completed before 1992 to obtain approval of an NDA for an orphan indication, when aprotinin patients were compared to placebo, there were *clinically and statistically significant changes produced in renal function* associated with patients *[sic]* receipt of aprotinin") (emphasis added).  Lacking the relevant expertise, Dr. Parisian should not be permitted to present these conclusions to the jury.

     **C.**    **Dr. Parisian Is Not Qualified To Render Opinions on FDA's Regulation of Prescription Drugs Such as Trasylol.**

More fundamentally, Dr. Parisian has no real-world experience in FDA's regulation of prescription drugs or a company's compliance with FDA prescription drug requirements:[3]

    Q.    So your assignment at FDA was in the part of the FDA that regulates medical devices; correct?

---

[3] Dr. Parisian's employment as a medical reviewer for FDA's Center for Devices and Radiological Health ("CDRH") is not pertinent in this prescription drug case.  FDA's regulatory system pertaining to drugs is separate and distinct from the system that governs devices, such that experience in one division does not qualify an expert to testify regarding regulations that govern the other.  *See* 21 C.F.R. § 3.4 (establishing that separate "agency components" have primary jurisdiction for the premarket review of drugs, devices, and biological products).  As she conceded at deposition, Dr. Parisian never worked at the Center for Drug Evaluation and Research ("CDER"), FDA division responsible for the regulation of prescription drugs, or the Division of Drug Marketing, Advertising, and Communications ("DDMAC"), which oversees the promotion of drugs, Parisian C.V. (Ex. C), Parisian Dep. (Ex. B) at 53:6-9; never served as a primary reviewer for an IND, NDA, or sNDA for a prescription drug, Parisian Dep. (Ex. B) at 54:3-15; never had responsibility for labeling changes for drugs, *id.* at 54:16-20; and never participated in an FDA Advisory Committee meeting related to a prescription drug.  *Id.* at 57:16-18.  Dr. Parisian's limited involvement with so-called combination products that draw on aspects of prescription drug and medical device regulation, *see id.* at 61:21-62:4, does not qualify her to opine on all aspects of FDA prescription drug regulation, as she purports to do here.

> A.    Yes, ma'am.
>
> Q.    And you never were assigned to the part of the FDA that has the authority to regulate prescription drugs; right?
>
> A.    That's correct.
>
> Q.    And while you were at FDA, did you review any investigational new drug applications?
>
> A.    In a peripheral manner.  I wouldn't have been primarily involved with IND.  We only had 10 medical officers.  There's 300 and something over at CDER.  And so my center would have been quite angry if I was doing CDER's work.

Parisian Dep. (Ex. B) at 53:6-16.  And yet, throughout her report, Dr. Parisian opines as to the meaning of prescription drug regulations and Bayer's alleged lack of compliance with those regulations.  *E.g.*, Parisian Report (Ex. A) ¶ 283 ("Bayer was required by 21 CFR 314.50 to have provided those reports to FDA in its marketing application.").  Even Dr. Parisian's experience with FDA's regulation of medical *devices* is limited to four years of work as a medical reviewer nearly 15 years ago.  *See* Parisian C.V. (Ex. C).  Given this lack of experience, Dr. Parisian should be precluded from testifying about FDA regulatory issues.  *See McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (requiring experts be qualified by skill, experience, training, or education).

## II.    DR. PARISIAN'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY EXCEED THE SCOPE OF PERMISSIBLE EXPERT TESTIMONY.

Even if the Court deemed Dr. Parisian qualified — and she is not — her testimony should be excluded because, at bottom, it consists of nothing more than factual narratives that do not assist the trier of fact, legal conclusions that invade the province of the court and the role of the jury, personal opinions that masquerade for attorney argument, and unsupported speculation.  Dr. Parisian's opinions are irrelevant or otherwise not proper subjects of expert testimony.

**A.**  **Dr. Parisian's Narrative of Trasylol's Regulatory History Is Not a Proper Subject of Expert Testimony.**

Nearly 150 pages of Dr. Parisian's report purport to summarize Trasylol's regulatory history and selected Bayer documents.  *See* Parisian Report (Ex. A) ¶¶ 81-342.  These are matters of fact; Dr. Parisian played no role in FDA's regulation of Trasylol and offers no percipient testimony on these matters.  Rather, she is recounting plaintiffs' theory of the case.  Because this testimony improperly invades the province of the jury and is unreliable, it should be excluded.

Other courts have excluded similar narratives by Dr. Parisian masquerading as expert testimony.  The *Fosamax* MDL court squarely rejected such testimony, holding that Dr. Parisian "will not be permitted to merely read, selectively quote from, or 'regurgitate' the evidence."  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 191-192.  Similarly, the Eighth Circuit upheld the exclusion of Dr. Parisian's narrative testimony because, *inter alia*, she did not provide analysis, opinions, or expertise, but merely "read the contents of exhibits."  *In re Prempro Prods. Liab. Litig.*, 586 F.3d at 571; *cf. In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551 (explaining that because a jury "is equally capable of constructing" the facts of the case from evidence introduced through "percipient witnesses and documentary evidence," the expert's testimony on the subject is not only unnecessary, it is improper).

The *Prempro* MDL court's exclusion of a similar effort to introduce a drug's regulatory history through Dr. Parisian's "expert" testimony — which recently was affirmed by the Eighth Circuit — is instructive.  554 F. Supp. 2d at 879-87.  Despite assurances by plaintiffs' counsel that Dr. Parisian's opinions would be tied to expert analysis, the *Prempro* court determined (on post-trial motions) that Dr. Parisian had simply summarized or read excerpts of documents from the witness stand, "as any layperson could have done."  *Id.* at 880.  The court

described Dr. Parisian's testimony as "track[ing] plaintiff's legal arguments" with "very little significant analysis" and cautioned that such "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id.* at 887 (quoting *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997)) (internal quotations omitted).  The Eighth Circuit agreed that Dr. Parisian's practice of simply reading from documents selected by plaintiff's counsel was "largely devoid of regulatory analysis" and "undermin[ed] the asserted basis for expert testimony."  *In re Prempro Prods. Liab. Litig.*, 586 F.3d at 571.  The testimony offered by Dr. Parisian in this case is strikingly similar.

> Dr. Parisian's lengthy narrative is simply an attempt to offer her "personal belief as to the weight of the evidence."  *See Bouchard v. American Home Prods.*, 213 F. Supp. 2d 802, 809 (N.D. Ohio 2002).  Her narrative "does no more than counsel for plaintiff will do in argument, *i.e.,* propound a particular interpretation of [defendant's] conduct."  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551 (citation omitted; alteration in original).  *See also In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument").  Such advocacy should not be put before the jury in the guise of expert opinion.

* * *

> The Court should be aware that the reports of Bayer's regulatory experts include descriptions of the regulatory history of Trasylol.  Bayer does not believe such chronologies are a proper subject of expert testimony for plaintiffs or defendants.  Bayer has included these chronologies so that Bayer may respond if Dr. Parisian is allowed to give her skewed recounting of the Trasylol regulatory history, and she should not be.  Rather, the Court should exclude such testimony.

**B.     Dr. Parisian's Legal Conclusions That Bayer Violated the FDCA and Related Regulations Are Improper and Should Be Excluded.**

Dr. Parisian's proposed testimony that Bayer violated the FDCA and FDA regulations in its development and marketing of Trasylol amounts to nothing more than improper legal conclusions that should be excluded.

**1.     Dr. Parisian's legal conclusions go beyond the scope of proper expert testimony.**

It is well established that expert testimony proffering legal conclusions usurps the role of the court in instructing on the law and invades the province of the jury by applying that law to the facts of the case and is, therefore, prohibited.  *See*, *e.g*., *Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what result to reach"); *see also Chick-Fil-A, Inc. v. CFT Develop., LLC*, No. 5:07-cv-501, 2009 WL 1754058, at *3 (M.D. Fla. June 18, 2009) ("[E]xpert testimony that expresses a legal conclusion is inadmissible."); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 541 (experts may not "communicate a legal standard — explicit or implicit — to the jury"); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at *7 (E.D. Pa. June 20, 2000) ("testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury").  Accordingly, Dr. Parisian should not be permitted to opine as to whether Bayer complied with the FDCA and related regulations.

Notwithstanding these clear rules, nearly every opinion in Dr. Parisian's report improperly seeks to opine that Bayer violated the FDCA and related regulations.  For example, Dr. Parisian asserts that Bayer violated federal standards by 1) failing to adequately test, monitor, and warn FDA about the risks associated with Trasylol; 2) promoting Trasylol for off-label uses; 3) failing to adequately disclose safety information to FDA; and 4) engaging in false and misleading marketing of Trasylol.  *See* Parisian Report (Ex. A) at 11-14 (listing opinions).  As a

result of these alleged transgressions, Dr. Parisian concludes that Bayer is not a reasonable or responsible pharmaceutical manufacturer.  *E.g.*, Parisian Dep. (Ex. B) at 254:18-20 ("What I'm saying is that in terms of this particular drug, they're not reasonable and responsible.").  These kinds of legal conclusions are not a proper subject of expert testimony and must be excluded.

Dr. Parisian's report clearly exceeds the scope of permissible expert testimony by opining on the legality of defendants' conduct.[4]  Similar testimony regarding the duties of pharmaceutical companies has been held improper by many federal courts, including the judge in the *Rezulin* MDL.  309 F. Supp. 2d at 553-54, 557-58.  In that case, the court excluded expert opinion on the duties of pharmaceutical companies because such testimony "embrace[s] ultimate questions of law outside the province of an expert."  *Id.* at 557.  In so ruling, the court rejected plaintiffs' argument that the challenged expert testimony merely set forth "standards of conduct within the medical community," affirming the principle that "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not [admissible]" and explaining that it "*may not be made so simply because it is presented in terms of industry practice*."  *Id.* at 558 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991)) (internal quotations omitted) (alteration and emphasis in original).

The *Rezulin* court also excluded any testimony about the defendant's alleged suppression of research, finding the proposed testimony an attempt to have the witness "argue, based on other non-technical evidence, from the witness stand."  *Id.* at 553-54.  For these same

---

[4] *E.g.*, Parisian Report (Ex. A) at 24 ("Opinion #1:  "Bayer failed to fulfill its duty and obligations as a prescription drug manufacture[r] pursuant to the requirements of the [FDCA] when it did not adequately and timely test, monitor, update and warn FDA about the post-operative risks of aprotinin (Trasylol) which included renal failure, thrombosis and death."); Parisian Dep. (Ex. B) at 183:9-14 ("It was just totally in violation of the Act.  So for a manufacturer to provide information to physicians about unapproved use changes the intended use of the drug and it misbrands it under 21 U.S.C. 352(f)(1) and f(2) if you don't provide adequate warnings and instructions for use.").

reasons, Dr. Parisian's legal conclusions that certain aspects of Bayer's conduct violated the

FDCA and related regulations should be prohibited.  *Id.  See also Montgomery*, 898 F.2d at 1541

(excluding expert testimony regarding insurance company's duty to hire tax counsel because it

was a legal conclusion); *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988)

(jury was just as qualified as expert to determine whether defendant breached its duty);

*Nicholson v. McCabe*, No. 02-1107, 2003 WL 25676474, at *1 (N.D. Ala. June 2, 2003)

(excluding expert testimony on whether defendant violated regulations).[5]

### 2.        Dr. Parisian's opinions are preempted by federal law.

Dr. Parisian's legal conclusions that Bayer violated the FDCA by suppressing

safety information and her testimony related to evidence that Bayer misled FDA are barred for

the additional reason that such testimony contravenes the Supreme Court's holding in *Buckman*

*Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 350-51 (2001).  In *Buckman*, the Supreme

Court held that the FDCA preempts state law tort claims to the extent plaintiffs argue that FDA

would not have approved a medical device but for misrepresentations made to FDA.  *Id.*  In

rejecting this fraud-on-the-agency theory, the Court reasoned that the FDCA empowered FDA,

not state courts or juries, to police whether a fraud was committed on FDA.  *Id.*

Courts applying *Buckman* to prescription drug failure to warn claims have held

that evidence of fraud on FDA is inadmissible.  *See, e.g., In re Bextra & Celebrex Mktg. Sales*

*Pracs. & Prod. Liab. Litig.*, No. 05-1699, 2006 WL 2374742, at *10 (N.D. Cal. Aug. 16, 2006)

---

[5] To the extent *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191-192 (S.D.N.Y. 2009), can be read to allow Dr. Parisian to present legal conclusions to the jury, it stands against the weight of authority on this issue and should be rejected by this Court.  *See Rezulin*, 309 F. Supp. 2d at 544 n.36, 558 ("Plaintiffs' argument that the challenged opinions are relevant to 'illuminate the applicable negligence standard' disregards the principle that expert opinions that would encroach on the role of the trial judge in instructing the jury as to the applicable law are inadmissible.").

("a claim premised on a drug manufacturer's failure to provide data to the FDA is preempted");

*Bouchard*, 213 F. Supp. 2d at 811 (excluding "evidence or argument that [the defendant]

'misled' the [FDA] . . . or 'violated' the [FDCA]").

Under *Buckman*, Dr. Parisian's testimony that Bayer withheld safety information

from FDA should be excluded.  *See*, *e.g.*, Parisian Report (Ex. A) ¶¶ 285-274 (testimony related

to studies that defendants allegedly delayed in providing to FDA); *id.* ¶¶ 308-311 (testimony

related to non-disclosure of the i3 Drug Safety Study prior to the September 2006 Advisory

Committee meeting).  This testimony is relevant to plaintiffs' failure to warn claim only for the

implicit conclusion that FDA would have required a different warning had defendants timely

disclosed the information.  Dr. Parisian, in fact, makes this very claim.  *Id.* at 99 (opining that if

Bayer had fully disclosed the i3 Safety Study to FDA prior to the Advisory Committee meeting,

"[t]he outcome of the meeting would have been different . . . ").  Such testimony is exactly what

*Buckman* precludes.  *See*, *e.g.*, *Bouchard*, 213 F. Supp. 2d at 811-12 (excluding similar evidence

in pharmaceutical drug context).

### C.   Dr. Parisian's Testimony Regarding Foreign Regulatory Actions Is Irrelevant and Will Only Serve To Confuse the Jury.

As explained above (I.A.), Dr. Parisian is not qualified to offer testimony on

foreign regulatory actions.  But even if she were, any discussion of foreign regulatory actions

should be excluded as irrelevant and unnecessarily confusing in the context of this litigation,

where U.S. domestic law provides the only applicable standards for pharmaceutical companies.

*See*, *e.g.*, *Deviner v. Electrolux Motor AB*, 844 F.2d 769, 773 (11th Cir. 1988) (upholding

exclusion of "Swedish law and statistics" "to avoid confusing the jury"); *In re Viagra Prods.*

*Liab. Litig.*, MDL No. 06-1724, 2009 WL 2899881, at *10 (D. Minn. Aug. 19, 2009) ("The

Court finds that any discussion of foreign regulatory actions is irrelevant to the current litigation

15

and should therefore be excluded"); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) ("[T]he Court finds that allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion").

Moreover, to the extent Dr. Parisian recites the foreign agencies' conclusions without offering analysis, *see* Parisian Report (Ex. A) ¶¶ 209-10, such testimony should be excluded because it does not assist the trier of fact.  *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 551 (barring plaintiffs' experts from testifying as to foreign regulatory matters because "the challenged testimony focuses on a set of non-technical factual allegations" that does not qualify as "scientific, technical or other specialized knowledge"); *see* II.A, *supra* (explaining why Dr. Parisian's factual narrative about Trasylol should be excluded).  Any probative value of such testimony also would be substantially outweighed by the danger of unfair prejudice and jury confusion, such that it should be excluded under Federal Rule of Evidence 403.  *See In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) ("probative value [of foreign regulatory evidence] is greatly overmatched by the jury confusion, waste of time, and unfair prejudice that would result"); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d at 1054 (excluding foreign regulatory action testimony due to danger of jury confusion).

D.    **Dr. Parisian's Opinions About Bayer's Conduct Are Based on Unsupported Speculation and Must Be Excluded.**

Rule 702 requires that expert testimony be based on "scientific, technical, or other specialized *knowledge*."  Fed. R. Evid. 702 (emphasis added).  "[T]he requirement of 'knowledge' guards against the admission of subjective or speculative opinions."  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 541.  This limitation is critical to the Court's gatekeeping function, as it prevents plaintiffs' experts from improperly "assum[ing] the role of advocates for the plaintiffs' case."  *Id.* at 546.  Throughout her report, Dr. Parisian offers testimony lacking in

foundation, turning her testimony into a mere "editorial about pharmaceutical companies putting sales and marketing before science." *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d at 881. Dr. Parisian's speculation should be excluded.

> **1.    Dr. Parisian's speculation about Bayer's knowledge, motives, or state of mind does not call for expert analysis and invades the province of the jury.**

Dr. Parisian made repeated assurances at her deposition that she would not testify as to Bayer's knowledge or motives related to the sales and marketing of Trasylol:

> A.    Well, I can't say what Bayer knew, but I can say what the documents show that Bayer knew in terms of the information that they had.  Only Bayer could answer for what Bayer knew or why Bayer did things.

Parisian Dep. (Ex. B) at 21:21-24; *see also id.* at 22:19-22.  But her report belies that conclusion. Indeed, many of Dr. Parisian's opinions are grounded in conclusory assertions that Bayer knew or should have known about alleged safety information at various points in time and Dr. Parisian's conjecture as to why defendants took or failed to take certain actions.  *E.g.*, Parisian Report (Ex. A) at 55 (Opinion No. 4) (opining that Bayer's intent in including certain information in the labeling was to promote Trasylol for an unapproved use); *id.* at 100 (Opinion No. 9) (opining that Bayer knew, in January 2005, that FDA considered the risk benefit profile for Trasylol to have significantly changed and that, despite FDA's concerns, Bayer trained its sales force with the goal of minimizing the risks of Trasylol to physicians); *id.* at 207 (Opinion No. 10) (testifying that Bayer's intent in using key opinion leaders was to reinforce the use of full dose).  Dr. Parisian also speculates about FDA's knowledge and why the agency took certain actions related to Trasylol.  *See id.* ¶ 150 (opining that FDA's request that Bayer Corporation's predecessor, Miles, Inc., add a statement to its video news release was "because FDA had major concerns with this issue").  None of this testimony is admissible.

17

Numerous federal courts have prohibited experts, including Dr. Parisian, from offering such speculative testimony. *E.g.*, *In re Fosamax Prods. Liab. Litig.*, 654 F. Supp. 2d at 192 (excluding Dr. Parisian's "conjecture" regarding the "knowledge, motivations, intent, state of mind, or purposes" of pharmaceuticals manufacturer); *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d at 878-79 ("Plaintiff has conceded that Dr. Parisian will not give an opinion on Upjohn's intent or whether Upjohn's advertisement influenced either Plaintiff or any treating physician"); *In re Diet Drugs Prods. Liab. Litig.*, 2000 WL 876900, at *9 ("The question of intent is a classic jury question and not one for experts"). As the *Rezulin* court explained, an expert's "musings" about "the intent, motives or states of mind of corporations, regulatory agencies or others have no basis in any relevant body of knowledge or expertise" and are therefore inadmissible. 309 F. Supp. 2d at 546. Furthermore, such opinions improperly transform experts into "advocates for the plaintiffs' case" by allowing them to "argu[e] as to the intent or motives" behind defendant's conduct. *Id.* That Dr. Parisian purports to base her conclusions on documentary evidence does not assist her. In *In re Diet Drugs Prods. Liab. Litig.*, the MDL court rejected the idea that an expert witness could extrapolate intent from documentary evidence, explaining: "If the witnesses' bases for the opinions concerning improper intent comes from other evidence . . . *that* is what the jury should hear and the question of [defendant's] intent would flow from such evidence to be determined by the jury." 2000 WL 876900, at *9 (emphasis in original). *See also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 546-47 (expert's conclusions about FDA intent excluded because he merely "drew simple inferences from documents produced in discovery," which a jury is capable of doing without his help).

### 2.   Dr. Parisian's personal or moral opinions about pharmaceutical companies are improper.

Dr. Parisian offers a variety of personal opinions that Bayer failed to act as a responsible pharmaceutical manufacturer; notably absent from her testimony is any analysis based on FDA regulations or other potentially applicable industry standards to support her bald claims. *E.g.*, Parisian Report (Ex. A) ¶ 233 (asserting that physicians' alleged underreporting of adverse event reports of renal failure associated with Trasylol "increases the responsibility for Bayer to test and monitor the safety of Trasylol and adequately update physicians about the potential risk"); Parisian Dep. (Ex. B) at 253:23-254:3 ("But I'm saying that in terms of Aprotinin and the documents I looked at Aprotinin, they're not being reasonable and responsible when they allow product to be out there with labeling that can potentially hurt people"). Far from requiring specialized knowledge or expertise, these conclusory opinions are based wholly on Dr. Parisian's personal ethical standards, unsupported by any expert analysis and, therefore, must be excluded. *See In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d at 883 (excluding Dr. Parisian's opinion that defendant's conduct "would not be appropriate from a public health point of view in terms of women's safety" because this opinion was devoid of regulatory analysis); *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 191 (excluding opinions in Dr. Parisian's report that are "too conclusory or insufficiently based on expertise or analysis to be admitted"). As the *Prempro* court stated in rejecting similar testimony from Dr. Parisian, "[o]pinion given through the mouth of an expert does not necessarily make it *expert* opinion." 554 F. Supp. 2d at 887. Dr. Parisian's attempts to vouch for plaintiffs' theory of the case by proffering personal opinion testimony in the guise of expertise should similarly be prohibited. *Id.*

Dr. Parisian also improperly injects ungrounded, personal "bad company" opinions about pharmaceutical manufacturers generally and Bayer specifically that should be excluded.  *E.g.*, Parisian Report (Ex. A) ¶ 53 (testifying that pharmaceutical companies have "gamed the post-marketing surveillance system" including "companies employ[ing] ghostwriters to publish contrary published literature so that the company could point to 'independent' journal articles when questioned by FDA"); *id.* ¶ 250 (suggesting that defendants' strategy in response to the Mangano article was to attack the validity of the study to detract from the safety issues). Such standardless advocacy by an expert witness is not only unhelpful in assisting the trier of fact understand a complex or technical aspect of the litigation, it also is inappropriate.  *See In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 192 (excluding "bad company" testimony, including assertions about ghostwriting and attacking the credibility of physicians not favorable to the pharmaceutical defendant); *In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d at 885 (Dr. Parisian's testimony that FDA would not have been aware of ghostwriting was improper because she did not ground her opinion in any expert analysis).

## III.   DR. PARISIAN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS UNRELIABLE.

Even assuming Dr. Parisian's testimony were relevant to the litigation and within the scope of permissible expert testimony under Rule 702 — and it is not — her testimony should be excluded because it fails to meet *Daubert*'s reliability requirement.  *Kumho Tire*, 526 U.S. at 147 (quoting *Daubert*, 509 U.S. at 589).  As other federal courts have found, Dr. Parisian's conclusions are not based on the sound application of a valid scientific methodology to the facts of the case.  *See Reece*, 500 F. Supp. 2d at 745 (excluding Dr. Parisian's testimony because she "failed to demonstrate that she used scientifically valid methodology or reasoning in reaching her conclusions on these matters").

20

An essential function of *Daubert*'s gatekeeping standard is to ensure that unreliable testimony does not reach the jury. *Kilpatrick v. Breg, Inc.*, No. 08-10082, 2009 WL 2058384 at, *2 (S.D. Fla. June 25, 2009). The reliability inquiry requires the court to "independently analyze each step in the logic leading to the expert's conclusions." *Id.* at *3. As this Court has recognized, "[t]he objective of the gatekeeping inquiry 'is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire Co.*, 526 U.S. at 152). Proposed expert testimony must "'fit' the issues in a case by having a 'valid scientific connection to the pertinent inquiry' before the trier of fact." *In re Diet Drugs Prods. Liab. Litig.*, 2000 WL 876900, at *5 (citing *Daubert*, 509 U.S. at 591-92)).

Dr. Parisian's testimony is anything but the product of such sound methods. Although she claims to have used the same methodology in forming her opinions here that she used while a medical reviewer at CDRH, Parisian Report (Ex. A) ¶ 16, Dr. Parisian, in fact, conducted only a cursory and conclusory look at Trasylol from the perspective of the plaintiffs in this case. Far from conducting the independent, full-scale review that is done when the federal agency approves a prescription pharmaceutical, Dr. Parisian's review was incomplete and substantially influenced by the documents plaintiffs' counsel provided. *See* Parisian Dep. (Ex. B) at 36:19-37:4; 41:14-16 (counsel provided several disks containing documents in folders, access to a database containing litigation documents that plaintiffs' counsel created, and a select handful of depositions of defendants' company witnesses). At deposition, Dr. Parisian would not even concede that it is important to consider information on both sides of the issue in assessing a drug's safety profile:

> Q.      You'd want to consider information on both sides of a safety issue; right?
>
> A.      I want to consider the information that I have.  It's not like I'm looking at information from one side or the other.  I'm looking at the information that I find.  If you have other information you want me to look at, I will look at it.

*Id.* at 162:10-16.  This is hardly the type of "intellectual rigor" independent of the litigation that is mandated by *Daubert*.  *Kumho Tire*, 526 U.S. at 152.  Dr. Parisian's opinions here, like those she proffered in the *Reece* case, are not the product of reliable, scientific research conducted independent of this litigation; rather, they were developed solely for purposes of testifying at trial.  *Reece*, 500 F. Supp. 2d at 745-46.  As in *Reece*, such testimony does not assist the trier of fact and must be excluded.  *Id.*

Dr. Parisian's opinions also should be excluded because they are not the product of a reliable application of any methodology to the facts of the case.  As the Supreme Court stated, the court may conclude that there is "too great an analytical gap between the data and the opinion proffered" to admit the expert's testimony.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  As explained *supra* in Section II.D, many of Dr. Parisian's conclusions are based on speculation and conjecture and have no reliable basis in expertise.  For example, her opinion that Bayer trained its sales force with the goal of minimizing the risks of Trasylol to physicians, Parisian Report (Ex. A) at 100 (Opinion No. 9), is devoid of any evidence or analysis to support this conclusion.  Dr. Parisian also opines that "Bayer's undisclosed involvement in the Dr. Royston letter to the editor was *false and misleading* as well as *inappropriate*.  The information Bayer provided was not *fair and balanced* . . . ."  *Id.* ¶ 294 (emphasis added).  The same declaration that "this isn't fair and balanced" was rejected in *Prempro* because Dr. Parisian offered no explanation or analysis to support her testimony.  554 F. Supp. 2d at 887.  She offers none here either.  Rather, her opinions are largely the result of a preconceived analysis that is

connected to the factual evidence merely by the "ipse dixit" of this expert.  *See Rezulin*, 309 F. Supp. 2d at 543-44 (excluding speculative testimony as unreliable).

As is evident from the substantial speculation and unfounded conclusions offered in her report and testimony, Dr. Parisian's opinions are the product of a flawed methodology and are not reliable.  Accordingly, this Court should exclude them.

## CONCLUSION

For these reasons, Bayer respectfully submits that this Court should grant the motion to exclude Dr. Parisian's proposed testimony.

## RULE 7.1(A)(3) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good faith with counsel for all parties who may be affected by the relief sought in the motion, and has been advised that plaintiffs will contest this motion.

December 17, 2009                          Respectfully submitted,

                                           */s/ Barbara Bolton Litten*
                                           Patricia E. Lowry
                                           Florida Bar No. 332569
                                           Email:  plowry@ssd.com
                                           Barbara Bolton Litten
                                           Florida Bar No. 91642
                                           Email:  blitten@ssd.com
                                           **SQUIRE SANDERS & DEMPSEY L.L.P.**
                                           1900 Phillips Point West
                                           777 South Flagler Drive
                                           West Palm Beach, FL  33401-6198
                                           Telephone:  561-650-7200
                                           Facsimile:  561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR**
    **& SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:  312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:  312-853-73036

Rebecca K. Wood
Email:  rwood@sidley.com
Amy L. Hanke
Email:  ahanke@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:  202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN &
    MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation,
Bayer Healthcare Pharmaceuticals Inc.,
and Bayer Schering Pharma AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

**SERVICE LIST**

**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON**

**United States District Court**
**Southern District of Florida**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,**
    **FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
    **& LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone: 713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: 203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*