# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to All Actions

## BAYER'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT LUCA A. VRICELLA, M.D., AND MEMORANDUM OF LAW IN SUPPORT

PLEASE TAKE NOTICE that Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals Inc., Bayer Schering Pharma AG move to exclude certain testimony of plaintiffs' expert Luca A. Vricella.

## MEMORANDUM OF LAW

Plaintiffs have designated Luca A. Vricella, M.D., a cardiac surgeon, as a generic expert in this litigation.  Bayer does not dispute that Dr. Vricella is qualified to explain CABG surgery to a jury.  However, Dr. Vricella also opines that (1) aprotinin (Trasylol) is unsafe for clinical use in all patients in all circumstances; (2) there are safer alternatives to aprotinin; and (3) Bayer failed to share information with the medical community and the FDA and should have conducted additional testing.  Report of Luca A. Vricella, M.D. ("Vricella Rep.") (Ex. A) at 16-17.  These opinions are not based on scientific methodology and thus are not admissible.

Dr. Vricella bases his opinions that Trasylol is unsafe and that there are safer alternatives on a few recent articles about Trasylol.  He did not attempt to consider the totality of the evidence on Trasylol's safety. And he did not analyze critically the articles he did review, but instead accepted them at face value.  These opinions therefore are not based on "good grounds"

or derived by "scientific method," as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).

Dr. Vricella's third opinion, that Bayer did not share safety information with the medical community, is similarly unreliable. He arrived at this opinion after being provided with a subset of Bayer documents by the plaintiffs' lawyers. Dr. Vricella's opinion was not developed through scientific method or use of any sort of expertise; he simply is serving as an advocate for plaintiffs' position, which he may not do in the guise of expert testimony. Accordingly, the Court should exclude all three of these opinions under *Daubert* and Federal Rules of Evidence 401, 402, 403, 702 and 703.

## ARGUMENT

### I.    DR. VRICELLA'S OPINION ABOUT THE SAFETY OF TRASYLOL IS INADMISSIBLE.

Dr. Vricella's primary opinion is that "the safety risks posed by the administration of aprotinin, including increased risks of renal failure requiring dialysis, myocardial infarction, and death, render Trasylol unsafe for use in clinical practice" and that, therefore, "no reasonably prudent physician would use aprotinin for patients undergoing cardiac surgical procedures." Vricella Rep. (Ex. A) at 16; Deposition of Luca A. Vricella, M.D. ("Vricella Dep.") (Ex. B) at 423:9-14.

In an apparent attempt to evade *Daubert* scrutiny, Dr. Vricella claims that he is not an expert on causation and that he is only testifying based on his clinical experience:

> *I've not been called for this case as an expert in causation* but as
> – you know, I've been called to render my opinion whether I
> would use this in a patient, knowing what I know today, and if I
> thought that my patient will be at increased risk of renal failure or
> dysfunction.

2

> So I would give you my clinical opinion, but ***I'm not an expert on causation in this case.***

Vricella Dep. (Ex. B) at 46:22-47:6 (emphasis added); *see also id.* at 47:22-48:1 ("Q.  Okay.  Let me ask it again, because it's not clear on the record.  Are you an expert in causation in this case? A.  No.").

Given that he selectively invokes medical literature and Bayer documents, Dr. Vricella's claim to be testifying purely as a clinician is not true, nor does it insulate his "safety" opinions from *Daubert* reliability requirements.  The fact "that an expert may be qualified by experience does not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express."  *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004); *accord Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) ("Qualifications alone do not suffice.  A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under the test set forth by the Supreme Court in *Daubert*") (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999)) (alterations omitted); *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) (on remand) (holding that "the experts' qualifications, their conclusions and their assurances of reliability" are "not enough" for admissibility).

Moreover, as demonstrated below, Dr. Vricella's personal professional experience with Trasylol was favorable.  Thus, his present negative opinions are not based on his clinical experience, but on a haphazard, incomplete and superficial review of some recent articles about Trasylol.  Dr. Vricella's opinions are not supported by sound scientific methodology and therefore should be excluded.

A.     **Dr. Vricella's Opinions Are Contrary to His Own Clinical Experience
With Trasylol.**

Dr. Vricella testified that he understood his role in the litigation was to "bring to
the table what I know as a cardiac surgeon . . . and to basically just state whether I think that this
is a reasonable drug that has a reasonable place in the – in the armamentarium of a surgeon."
Vricella Dep. (Ex. B) at 44:10-17.  He used Trasylol in adults for a "theoretical anti-
inflammatory effect in complex cases" and for "reduction in bleeding."  *Id.* at 284:9-15.  Dr.
Vricella also used Trasylol off-label in children because he believed "there were some patients
that would benefit from that."  *Id.* at 190:24-191:5.  As set forth below, this experience as a
cardiac surgeon does not support his opinion that Trasylol is not safe.

More specifically, Dr. Vricella admitted that, in his practice, he saw no evidence
that Trasylol was associated with increased risk of adverse events.  Specifically, he conceded that
he had no evidence from his clinical practice of increased risk of renal failure or renal
dysfunction:

Q.     Did you see an increase in renal failure in the patients for which you used
aprotinin?

A.     No, we really did not. . . .

*Id.* at 294:17-21.

Q.     So you didn't do any analysis to see whether there's an increased incidence of
renal failure in the patients for which you used aprotinin versus any other agent.

A.     No.

Q.     Did you see an increased risk – sorry, did you see an increase in renal dysfunction
in the patients for which you used aprotinin?

A.     I've seen a few cases, but you know, it's very hard to make a judgment based on,
you know, a few cases out of a practice –

4

> Q.   Did you use – do they do any sort of analysis to determine whether there was a statistically significant increase in renal dysfunction in the patients for which you used aprotinin versus anything else?
>
> A.   No, I didn't do analysis.

*Id.* at 295:2-23.

Dr. Vricella also conceded that his clinical practice did not support an opinion that Trasylol was associated with heart attack, graft thrombosis, or mortality.  He did not see increases in these side effects and/or did not analyze the data from his practice:

> Q.   Did you see an increase in myocardial infarction in the patients for whom you used aprotinin?
>
> A.   No. . . .

*Id.* at 296:22-25.

> Q.   Did you see an increase in graft thromboses in the patients for which you used aprotinin?
>
> A.   No.
>
> Q.   Did you do any analysis to determine whether the patients for which you used aprotinin had a higher incidence of graft thromboses?
>
> A.   I didn't do any analysis.

*Id.* at 298:1-9.

> Q.   Did you see an increase in mortality in the patients for which you used aprotinin?
>
> A.   Again, it's very – an answer very similar to my prior answer.  I, you know, luckily we don't have a huge mortality, and it's hard to make an analysis.  And I didn't do an analysis.

*Id.* at 295:25-296:7.

Q.    My question is, did you go back and try to do an analysis of your surgical
database to see if the patients which used aprotinin had a higher incidence of
mortality?

A.    No.

*Id.* at 296:16-21.

Thus, Dr. Vricella plainly is not offering an opinion based on his own clinical
experience.  Where, as here, an expert offers an opinion that conflicts with his clinical
experience, that conflict indicates the unreliability of his opinion and its litigation-driven nature.
*See*, *e.g., Daubert*, 43 F.3d at 1317 (emphasizing the importance of expert testimony that
"grow[s] naturally and directly out of research [the expert has] conducted independent of the
litigation"); *Clarke v. Schofield*, 632 F. Supp. 2d 1350, 1362 (M.D. Ga. 2009) (considering
"[w]hether the expert is proposing to testify about matters growing naturally and directly out of
research he has conducted independent of the litigation, or whether he has developed his opinion
expressly for purposes of testifying"); *Craig v. Orkin Exterminating Co.*, No. 99-8931-CIV,
2000 WL 35593214, at *6 (S.D. Fla. Nov. 22, 2000) ("Courts have discounted the reliability of
ex parte opinions formed within the context of litigation and not the laboratory.").

**B.    Dr. Vricella's Safety Opinion Is Based on a Haphazard Review of Cherry-
Picked Data.**

Rather than relying on his clinical experience, Dr. Vricella arrived at his opinion
that Trasylol is unsafe for all patients by reading a tiny fraction of the available medical
literature, which he selected without using any orderly method and then read uncritically.  This
approach ignores an expert witness's obligation to use an orderly scientific methodology in
arriving at a conclusion, to review the totality of the evidence, and to make reasoned decisions
about why to rely on some materials and not on others.  *See*, *e.g., Miller v. Pfizer, Inc.*, 356 F.3d

6

1326, 1331, 1335 (10th Cir. 2004) (affirming exclusion of plaintiffs' causation expert because

"selective reliance" on certain evidence to the exclusion of other evidence is "not a generally

accepted methodology"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 563 (S.D.N.Y.

2004) (excluding as unreliable an expert's opinion based on an unpublished analysis of a study

rather than his own published, peer-reviewed analysis of the study); *MTX Commc'ns Corp. v.

LDDS/WorldCom, Inc.*, 132 F. Supp. 2d 289, 292-93 (S.D.N.Y. 2001) (excluding as unreliable

expert opinion that ignored key information).

The record here demonstrates that Dr. Vricella did not use any scientific method

at all in selecting the articles that form the basis for his opinion:

> Q.    Okay.  Are the 41 references that you reviewed all the publications that you've
> reviewed for purposes of this litigation?
>
> A.     Yes.

Vricella Dep. (Ex. B) at 89:19-22.

> Q.    Do you recall how many studies came up when you – when you ran the search
> terms on PubMed for Trasylol?
>
> A.    No, but out of curiosity I just punched "Trasylol" and "aprotinin" without a time
> limit, and it was, you know, 7,000-plus.

*Id.* at 95:14-19.

> Q.    How of the 7,000 articles on Trasylol did you decide what to do, and include on
> this list?
>
> A.    Well, I started from 2000, and went onward, and pulled a few articles along the
> way.  As I was reading and found that, you know, something was pertinent or
> important, I added to it.
>               So – and looked at, you know, big journals, basically, and – that's really it.
> I do this pretty much like I do for any clinical scenario.  If I have to change
> something or do something new on a patient or administer a new drug, I'm going
> to look at what it is.

*Id.* at 91:15-92:4.

Q.     And you said that you started your literature search from 2000.
       Why did you start from 2000?

A.     Well, I – I kind of picked that point, you know, arbitrarily.  I wanted to see a
       decade of information, if I could.

*Id.* at 92:10-15.

Because of this haphazard literature review, Dr. Vricella did not consider the totality of the evidence necessary to offer a scientifically reliable and admissible opinion.  *See*, *e.g., Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996) (affirming exclusion of expert opinion as unreliable based on district court's finding that expert "has seen fit to 'pick and chose' [sic] from the scientific landscape and present the Court with what he believes the final picture looks like.  This is hardly scientific.") (alteration in original); *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F. Supp. 2d 465, 472-73 (M.D.N.C. 2006) (rejecting as unreliable expert's literature review based on "a number of disparate and unconnected studies . . . to reach a piecemeal conclusion with respect to general causation").

Moreover, because he did not even methodically determine the more and less clinically important studies on each side, he cannot explain why he relied on some rather than others.[1]  Such an explanation is required for admission of a reliable scientific opinion under *Daubert* – regardless of whether it is characterized as an opinion that Trasylol can cause certain side effects or that the purported risks of Trasylol are so great no one should use the medicine. *See*, *e.g. Rezulin*, 309 F. Supp. 2d at 561, 563 (rejecting as unreliable expert's opinion that a drug's risks outweigh its benefits based on "glaring" omission in his review of relevant scientific literature); *Rimbert v. Eli Lilly & Co.*, No. 06-0874, 2009 WL 2208570, at *14 (D.N.M. July 21,

---

[1] Dr. Vricella's lack of familiarity with the basic medical literature on aprotinin is apparent from his testimony that he is unaware of any randomized controlled trials showing aprotinin is not associated with a prothrombotic effect.  Vricella Dep. (Ex. B) at 60:7-11.  *But see* Donahue, "Factor V Leiden and Perioperative Risk," 98 Anesth. Analg. 1623 (2004) (Ex. C) at 1629.

2009) (concluding that expert's methodology was unreliable because she "did not address" or "discounted [] without explanation" the many studies that contradicted her opinion related to medical causation).

Dr. Vricella's safety opinion is unreliable for many other reasons, each of which requires exclusion of his testimony:

▪ ***Lack of critical review.***  Dr. Vricella did not read articles about Trasylol with a scientist's eye.  He simply assumed that, if an article had been published in a peer-review journal, its findings must be reliable.  Vricella Dep. (Ex. B) at 153:14-25; *see also id.* at 348:18-25.  This "methodology" effectively abdicates the expert's role to the journal and peer-review process.  As the Eleventh Circuit has noted, "if peer review alone was dispositive, then the *Frye* standard of general acceptability in the scientific community would have remained adequate." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1313 (11th Cir. 1999).

▪ ***Failure to consider the impact of "confounders."***  Because he relied entirely on the peer-review process and "the methodology of the journal," Vricella Dep. (Ex. B) at 348:21-25, Dr. Vricella did not consider whether the Trasylol studies upon which he relied were confounded – *i.e.*, whether the data was biased by factors unrelated to Trasylol use, *id.* at 345:11-349:5.  It is settled law that an expert relying on observational studies must show that he evaluated confounders before drawing conclusions from the study results.  *See Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 591-592 (D.N.J. 2002) ("There are three reasons that a positive association may be observed:  (1) bias (including confounding factors), (2) chance, and (3) real effect.  *Each must be evaluated to extract a valid message* from the study") (emphasis added)); Federal Judicial Center, Reference Manual on Scientific Evidence 370-71 (2d ed. 2000) ("The main problem in many observational studies . . . is that the

individuals are not assigned randomly to the groups being compared. . . . The lack of randomization leads to the potential problem of confounding.").

■     ***Reliance on preliminary data.***  Dr. Vricella also relied on preliminary study results and did not even compare them against the final study reports.  For example, Dr. Vricella cites a draft i3 study report, Vricella Rep. (Ex. A) at 12, but fails to cite the final results that were later published in the *New England Journal of Medicine*.[2]  Although he was aware of both the final publication and its connection to the initial study results, Vricella Dep. (Ex. B) at 359:10-363:22, Dr. Vricella did not compare the preliminary and published results to assess whether the results were different after peer review and statistical analysis, *id.* at 360:17-23.  Indeed, one of the preliminary i3 study findings upon which Dr. Vricella relies was omitted from the final, peer-reviewed report.  *See id.* at 365:7-15.[3]

Dr. Vricella also relies on the initial results of the BART study.  Vricella Rep. (Ex. A) at 13.  When pressed at deposition, he admitted that he knew that Health Canada had commissioned an expert advisory panel to review the BART results but did not recall the panel's conclusions and did not know whether the panel had reviewed additional data beyond that reported initially (and on which he relied for his opinion).  Vricella Dep. (Ex. B) at 385:11-24.  Where an expert purports to rely on a study, his failure to review and analyze all of the relevant data renders the resulting opinion unreliable because it is based on incomplete data.  *See* Fed. R.

---

[2] Schneeweiss, "Aprotinin During Coronary-Artery Bypass Grafting and Risk of Death," 358 N. Engl. J. Med. 771-83 (2008) (Ex. D).  Notably, although the preliminary draft did not address confounders, the published article adjusted for confounders, excluding, for example, patients who were on some form of dialysis prior to the surgery during which aprotinin was used.

[3] *Compare* Schneeweiss, Draft Report, Mortality and Cardiovascular and Renal Outcomes in Recipients of Aprotinin, Aminocaproic Acid, and Tranexamic Acid During CABG Surgery, Sept. 13, 2006 (Ex. E) at 5 (supporting hypothesis of higher risk of acute renal failure) *with* Schneeweiss (2008) (Ex. D) at 772 (omitting discussion of acute renal failure).

Evid. 702; *Rezulin*, 309 F. Supp. 2d at 561-62 (excluding as unreliable expert's opinion based on an unpublished study where the same study later was published with a different conclusion).

■       ***Failure to consider the background rate.***  Although he is a cardiac surgeon, Dr. Vricella does not know the background rate of renal failure, stroke, myocardial infarction, thromboses, or mortality for adult patients undergoing CABG surgery.[4]  Vricella Dep. (Ex. B) at 235:21-236:4, 260:13-17, 263:10-22, 265:22-266:8, 321:22-322:6, 427:16-428:15.  Without a baseline against which to compare adverse events purported to be associated with aprotinin, Dr. Vricella cannot render an accurate opinion on safety.  *See Kilpatrick v. Breg, Inc.*, No. 08-10052, 2009 WL 2058384, at *7 (S.D. Fla. June 25, 2009) ("Experts must offer a 'sufficient explanation of the background risk for [the injury].'"); *McClain v. Metabolife Int'l Inc.,* 401 F.3d 1233, 1243, 1244 (11th Cir. 2005) ("A reliable methodology should take into account the background risk.").

        In short, Dr. Vricella did not use a scientific method in arriving at his conclusion that the risks of Trasylol are so great that the medicine should not be given to patients.  His opinion is therefore unreliable and should not be presented to a jury.[5]

_____

[4] Dr. Vricella bases his safety opinion in part on the theory that Trasylol is prothrombotic and that this is the mechanism by which the risk of myocardial infarction, stroke, and thromboses is purportedly increased.  Vricella Dep. (Ex. B) at 51:25-52:11, 70:2-17, 72:6-15, 73:3-74:2. However, Dr. Vricella lacks the toxicology and pharmacology background to offer reliable insight on Trasylol's mechanism of action and should not be permitted to testify outside his area of expertise.  *See id.* at 256:23-257:1 ("I'm not a hematologist, or I'm not a pharmacodynamicist, but I just kind of know what the mechanism of action is. . . .").

[5] Dr. Vricella's opinion that aprotinin is unsafe to use in clinical practice also should be excluded because it invades the province of the FDA.  As the New Jersey Supreme Court aptly put it, "Congress empowered the FDA alone to . . . make the necessary risk/benefit analysis involved in the marketing of prescription drugs."  *Feldman v. Lederle Labs.*, 592 A.2d 1176, 1207 (N.J. 1991).  Moreover, to the extent Dr. Vricella seeks to supplant his judgment for that of the FDA, he lacks the requisite regulatory expertise:  "I'm not an expert in rules and regulations, but I can tell you what ethically I think would be the right thing to do.  But I don't know what – you know, I'm not an expert in FDA rules."  Vricella Dep. (Ex. B) at 163:6-10.  Evaluation of the safety profile of pharmaceutical products is a function of regulators, not individual physicians.

## II.   DR. VRICELLA'S OPINIONS REGARDING ALTERNATIVES TO TRASYLOL ARE INADMISSIBLE.

Although he has not (except for the purposes of this litigation) researched, written, lectured, or published on the drugs he deems comparable to aprotinin, Vricella Dep. (Ex. B) at 133:6-7, 160:10-161:5, Dr. Vricella opines that Amicar and tranexamic acid are safer, less expensive alternatives to Trasylol.[6]  Adding these purported comparative drugs to his analysis simply compounds the methodological shortcomings seen with Dr. Vricella's safety opinion.

By his own admission, Dr. Vricella conducted no research on the risks and benefits of the comparator drugs, *id.* at 160:19-161:1, nor does he recall reading their labels, *id.* at 327:19-21, 331:22-332:3.  Instead, he simply went back to the 41 articles on aprotinin that he selected to support his safety opinion, even though the articles address the safety of the purportedly comparative drugs only tangentially.  *Id.* at 322:7-15, 323:8-16, 326:16-19, 330:11-19, 338:4-21.  This limited body of literature explains why Dr. Vricella does not know the risks associated with tranexamic acid.  *Id.* at 330:6-19.  For example, although he had heard of a study showing seizures are associated with tranexamic acid, he did not factor it into his opinion.  *Id*. at 323:17-324:3, 330:20-331:7.  Nor did Dr. Vricella review any randomized, placebo-controlled studies of Amicar or tranexamic acid in adult patients undergoing CABG procedures.  *Id.* at 335:6-336:6.

With no indication that he reviewed relevant data for the drugs he opines are safer than aprotinin, Dr. Vricella's opinion is nothing more than his *ipse dixit*.  It thus is inadmissible. Accordingly, Dr. Vricella's opinion on whether aprotinin is safe enough to be available to physicians in the United States should be excluded.

[6] Notably, the FDA disagrees.  It reports that there are no therapeutic equivalents to aprotinin. FDA, http: //www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?fuseaction =Search.DrugDetails (on search for "aprotinin"; last visited Dec. 17, 2009).

*See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *see also Kilpatrick,* 2009 WL 2058384, at *3 ("'leaps of faith' unsupported by good science preclude the admission" of expert testimony) (citing *Rider v. Sandoz Pharms.*, 295 F.3d 1194, 1202 (11th Cir. 2002)).

Dr. Vricella cannot salvage his opinion by resorting to his personal experiences with Amicar and tranexamic acid.  As an initial matter, Dr. Vricella admitted that he has never used tranexamic acid and thus has no personal experience on which to rely.  Vricella Dep. (Ex. B) at 160:23-161:3.  Although he has used Amicar, *id.* at 293:22-294:3, 322:16-323:7, Dr. Vricella's anecdotal experience with that drug is insufficient to support the weight of this opinion.  *See McClain*, 401 F.3d at 1250 (holding that expert's causation opinion based upon adverse event reports was unreliable because "[u]ncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation"); *Rider,* 295 F.3d at 1199 (holding the district court "properly concluded that the case reports did not by themselves provide reliable proof of causation" because "[t]hey reflect only reported data, not scientific methodology").

In any event, Dr. Vricella has done nothing to critically analyze and evaluate his personal experiences.  When asked if he had analyzed whether there was a statistically significant difference in blood loss between aprotinin and Amicar, Dr. Vricella responded "I told you, I didn't feel the need to go and look at the statistical significance because there was really no changes from my perception, and for that of my colleagues."  Vricella Dep. (Ex. B) at 433:10-14.  "I've done no statistical analysis, but I can tell you that plenty of surgeons have said that to

me. . . ." *Id.* at 430:24-431:1; *see also id.* at 430:1-434:5.  Dr. Vricella's lack of rigorous

analysis dooms this opinion.  *See Kilpatrick,* 2009 WL 2058384, at *3.

## III.  DR. VRICELLA'S OTHER OPINIONS ARE INADMISSIBLE.

The Court should prevent Dr. Vricella from offering opinions on matters in which

he concededly lacks expertise.  His opinions on (a) Trasylol's label, (b) Bayer's statements to the

FDA, and (c) Bayer's testing of Trasylol fail to meet the basic requirements of Rule 702 and thus

should be excluded.

### A.  Dr. Vricella Is Unqualified to Offer Labeling Opinions.

Dr. Vricella intends to testify to the jury that he would have included additional

warnings in Trasylol's label:

> Q.   Is it your opinion that Bayer did something wrong by not putting
> the risk of – an increase of serum creatinine in the warning section
> of its label?
>
> A.   My opinion is yes, they should have put it in the warning section.  I
> don't know if they violated any rule, but I would have put it in the
> warning.

Vricella Dep. (Ex. B) at 396:10-17.

This opinion should be excluded.  Dr. Vricella concedes he is "not an expert in

label preparation," *id.* at 398:7-8, and has no demonstrable expertise in crafting or evaluating

drug labels, *id.* at 396:20-22 ("Q. . . . Have you ever drafted a pharmaceutical label? A.  No.  But

I read them.").  *See also id.* at 162:15-18 ("Q.  Are you an expert on drug warnings or labels?  A.

No.").  His conclusions about Bayer's labeling thus amount to no more than inadmissible

"[t]alking off the cuff."  *Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 539 (7th Cir. 2000)

("The fact that [the proposed expert] never even drafted a proposed warning renders his opinion

akin to 'talking off the cuff' and not acceptable methodology"); *Miller v. Pfizer, Inc.*, 196 F.

Supp. 2d 1062, 1089 (D. Kan. 2002) ("[W]ithout any data or research regarding [a label's]

potential efficacy, [the proposed expert] has merely offered phrases that he thinks might be reasonably included").  Accordingly, this opinion should be excluded.

> **B.**     **Dr. Vricella Should Not Be Permitted to Opine That Bayer Withheld Information from the FDA or Medical Community.**

Although Dr. Vricella freely admits that he has no expertise in FDA regulations, *see* Vricella Dep. (Ex. B) at 162:12-14 ("Q.  Are you an expert on FDA rules and regulations? A.  I said that.  No, I'm not."), he seeks to tell the jury that Bayer withheld information from both the FDA and the medical community.  The Court should exclude this opinion because Dr. Vricella admittedly is unqualified to render it.  Because his opinion fails to meet the standards of Rule 702, it is inadmissible.

Moreover, Dr. Vricella's opinion that Bayer withheld information from the FDA is only relevant to a fraud-on-the FDA theory, which plaintiffs cannot pursue.  It thus should be excluded.  *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007) (excluding expert testimony "offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA"); *see also Webster v. Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36-37 (D.D.C. 2003) (holding that, under *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2006), "what was told to the FDA cannot support a tort claim"; such evidence "would be nothing more than an invitation for the jury to speculate about what . . . the FDA . . . might do if the facts were different"); *Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 811-12 (N.D. Ohio 2002) (excluding "any evidence or argument that [defendant] 'misled' the [FDA] . . . or 'violated' the Food, Drug and Cosmetic Act").

In any event, Dr. Vricella's opinion boils down to his view that Bayer violated its "moral" and "ethical" duties by failing to provide information to the FDA and medical

community.  Indeed, Dr. Vricella is aware of no regulation that Bayer violated; he bases his

opinion on moral obligations:

> Q.    Did Bayer violate any FDA regulations in relating to [the
>        disclosure of] the Saint George's Study?
>
> A.    As I told you, I'm not an FDA – regulation expert, so I can't really
>        tell if you there's an regulation that obligates a company to be
>        candid about their data.
>
>               I can tell you that ethically I think it is – it is something that
>        I hold true.
>
>                                           * * *
>
> Q.    Are you aware of any regulations or rules that Bayer violated by
>        submitting Kress when they did?
>
> A.    I am not aware of the regulations, so I cannot even tell you that
>        they were violated.  I think there's a violation of ethical standards.

Vricella Dep. (Ex. B) at 166:1-10, 172:2-8.  Similarly, Dr. Vricella believes that Bayer violated

its ethical obligation to the medical community:

> Q.    And the standard you're using for saying that Bayer should have
>        shared Saint George's and Kress [with the medical community] is
>        your moral and ethical standard; right?
>
> A.    As a physician, yes.

*Id.* at 441:11-16.[7]

Physician or not, Dr. Vricella's ethical standards cannot form the basis of an

expert opinion.  Courts routinely have excluded an expert's personal opinion about what he

thinks companies like Bayer should or should not have done.  *See*, *e.g.*, *In re Prempro Prods.*

---

[7] Dr. Vricella's opinion that Bayer affirmatively misled the medical community is based on only one document from 2004.  But, as Dr. Vricella admitted, he does not know if that document was ever shown to anyone outside of Bayer.  *See* Vricella Dep. (Ex. B) at 410:12-411:15 (conceding that the document is merely a "piece of paper" and that he has no "way of knowing whether [it] was merely an internal document").  Because his opinion is based on an unsubstantiated assumption, his opinion is inadmissible under Rule 702.  *See Kilpatrick*, 2009 WL 2058384, *3 ("if the court determines that any step in the expert's chain of logic is unreliable, his entire opinion must be excluded") (citing *McClain*, 401 F.3d at 1245).

*Liab. Litig.*, 554 F. Supp. 2d 871, 879 (E.D. Ark. 2008) (holding that regulatory experts are not "permitted to talk about or refer to what an 'ethical' or 'responsible' pharmaceutical company does or would do"); *Lofton v. McNeil Consumer & Specialty Pharms.*, No. 05-cv-1531, 2008 WL 4878066, *7 (N.D. Tex. July 25, 2008) (excluding physician's opinion on defendant pharmaceutical company's "ethical obligations, motive, state of mind, asserted knowledge, and alleged conduct"); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d at 1054 (prohibiting expert from testifying "as to whether Bayer acted ethically, irresponsibly, or recklessly"); *Kadlec Med. Ctr. v. Lakeview Anesthesia Ass'n*, No. 04-997, 2006 WL 1328809, *1 (E.D. La. May 12, 2006) ("The Court remains unpersuaded by plaintiffs' arguments that expert testimony as to defendants' ethical and/or moral duties would be helpful"); *In re Diet Drugs*, MDL No. 1203, 2001 WL 454586 at *3, *9-10 (E.D. Pa. Feb. 1, 2001) (excluding expert testimony on "truth, honesty and integrity in the context of medical ethics") (internal quotation marks excluded).

**C.     Dr. Vricella Is Unqualified to Opine on the Adequacy of Bayer's Studies of Trasylol.**

Dr. Vricella also seeks to tell the jury that he "think[s]" Bayer should have conducted studies on Trasylol earlier than it did:

> Q.     Do you have an opinion that Bayer should have done a particular study earlier than it did?
>
> A.     I think so.
>
> Q.     What studies should Bayer have done earlier than it did?
>
> A.     Well, the ideal study would have been a prospective randomized – a placebo controlled study largely powered.
>
>         But I think in the real world, prospectively collected observation – or observational studies that are adjusted with propensity score analysis, you know, and cohort matching, are almost just as good. They reflect the real world.

Vricella Dep. (Ex. B) at 371:1-15.

This opinion, too, should be excluded, because Dr. Vricella lacks the expertise to offer such an opinion.  Dr. Vricella has never designed a randomized clinical study at all, and he conceded that he does not even know how to power such a study:

> Q.     Have you ever designed any long-term randomized control clinical
>        trial?
>
> A.     No.
>
>                              * * *
>
> Q.     So a thousand patients is large enough for a randomized control
>        trial to assess mortality.  Is that your opinion?
>
> A.     I am not a statistician, so I cannot tell you what the statistical
>        power has to be and the number of patients but –

*Id.* at 158:4-6, 302:12-18.

Because he lacks any experience designing studies, Dr. Vricella is simply unqualified to offer this opinion.  Lacking any sound basis for his opinion, Dr. Vricella falls back on his view that Bayer had a "moral" and "ethical" obligation to undertake studies of Trasylol earlier than it did:

> Q.     Is there any regulation that required Bayer to do a study earlier
>        than it did?
>
> A.     I don't know about any obligation.  I think that, you know, a
>        company that represents itself as, you know, having the interests of
>        the patient at the top of the list, has a moral obligation.
>
> Q.     So is it your testimony that Bayer had a moral obligation to do a
>        large randomized controlled trial earlier than it did?
>
> A.     Yes.

*Id.* at 377:3-17.[8]

---

[8] To the extent Dr. Vricella's opinion concerns Bayer's legal obligation to test Trasylol, that opinion, too, is inadmissible.  It is settled that experts "may not testify to the legal implications of conduct; the court must be the jury's only source of law."  *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

By his own admission, however, Dr. Vricella's opinion about Bayer's obligations is not grounded in specialized knowledge.  It is simply reflective of his personal morals and ethics.  But the expert's role *requires* specialized knowledge to explain difficult concepts not within a layperson's knowledge base.  "[A]n expert who . . . lacks personal knowledge may 'only testify about the underlying facts if he [is] actually bringing to bear his scientific expertise.'"  *In re Rezulin*, 309 F. Supp. 2d at 554; *see also Bouchard v. American Home Prods. Corp.*, No. 3:98 CV 7541, 2002 WL 32597992, at *6 (N.D. Ohio May 24, 2002) (rejecting plaintiffs' expert opinion about the content or significance of corporate documents because the expert could not testify to defendants' intent or state of mind).  Thus, even if he were qualified to opine that Bayer should have conducted additional studies (and he is not), Dr. Vricella's opinion is nothing more than legal advocacy presented under the guise of professional expertise.  It should be excluded.

## CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Luca Vricella's testimony under *Daubert* and Federal Rules of Evidence 401, 402, 403, 702 and 703.

## RULE 7.1(A)(3) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good faith with

counsel for all parties who may be affected by the relief sought in the motion, and has been advised that plaintiffs will contest this motion.

December 18, 2009                               Respectfully submitted,

                                               */s/ Patricia E. Lowry*
                                               Patricia E. Lowry
                                               Florida Bar No. 332569
                                               E-mail:  plowry@ssd.com
                                               Barbara Bolton Litten
                                               Florida Bar No. 91642
                                               E-mail:  blitten@ssd.com
                                               **SQUIRE SANDERS & DEMPSEY L.L.P.**
                                               1900 Phillips Point West
                                               777 South Flagler Drive
                                               West Palm Beach, FL  33401-6198
                                               Telephone:  561-650-7200
                                               Facsimile:  561-655-1509

                                               Philip S. Beck
                                               Email:  philip.beck@bartlit-beck.com
                                               Steven E. Derringer
                                               Email:  steven.derringer@bartlit-beck.com
                                               **BARTLIT BECK HERMAN PALENCHAR**
                                               **& SCOTT LLP**
                                               54 W. Hubbard Street, Suite 300
                                               Chicago, IL  60603
                                               Telephone:  312-494-4400
                                               Facsimile:  312-494-4440

                                               Eugene A. Schoon
                                               Email:  eschoon@sidley.com
                                               Susan A. Weber
                                               Email:  saweber@sidley.com
                                               Catherine Valerio Barrad
                                               Email:  cbarrad@sidley.com
                                               **SIDLEY AUSTIN LLP**
                                               One South Dearborn Street
                                               Chicago, Illinois 60603
                                               Telephone:  312-853-7000
                                               Facsimile:  312-853-73036

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN &
   MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation,
Bayer HealthCare Pharmaceuticals Inc.,
and Bayer Schering Pharma AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<p style="margin-left: 40%;"><i>/s/ Patricia E. Lowry</i><br>Patricia E. Lowry</p>

**SERVICE LIST**

**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON**

**United States District Court**
**Southern District of Florida**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,**
    **FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
    **& LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*

WESTPALMBEACH/562627.1