# Exhibit D

| | | |
|---|---|---|
| Timothy Coon/ESCM | To | aldrushal@trenam.com |
| 06/30/2009 04:11 PM | cc | |
| | bcc | "Lowry, Patricia E." <PLowry@ssd.com> |
| | Subject | Trasylol - Morrill - deposition of Dr. Thomas Kelly 7/14/09 |


www.eckertseamans.com

Supplementing our prior production of materials, attached are documents reflecting payments made by BHCP to Dr. Kelly.


kelly document.PDF

Timothy S. Coon
Eckert Seamans Cherin & Mellott, LLC
44th Floor, 600 Grant Street
Pittsburgh, PA 15219
TCoon@eckertseamans.com
TEL 412-566-1214
FAX 412-566-6099

This communication may contain federal tax advice. Recent IRS regulations require us to advise you that any discussion of federal tax issues in this communication was not intended or written to be used and cannot be used to avoid any penalty under federal tax law or to promote, market or recommend any transaction or matter addressed herein. Only formal, written tax opinions meeting these IRS requirements may be relied upon for the purpose of avoiding tax-related penalties. Please contact one of the Firm's Tax partners if you have any questions regarding federal tax advice.

Attachment to Exhibit D

kelly document.PDF

**Bayer Corporation**
**Innovative Strategies to Improve Open Heart Surgery Outcomes**
Swissotel
Atlanta, GA
September 19-21, 2003
XPENSE REIMBURSEMENT FORM

DOC 2403220654

MIRPH
OCT 21 2003
E. DeLoughery
20138

RECEIVED OCT 16 2003 EH INTERNAL CONTROL

PLEASE TYPE OR PRINT LEGIBLY

Name: Thomas F. Kelly MD
Address: 1880 Arlington St. #103
Sarasota, Fl 34239
Telephone: 941-365-9411
Social Security #: _____
Tax ID #: V7617991

Out of pocket expenses: (Please itemize and attach original receipts; no payment without receipts)

| Description | Amount |
|---|---|
| Swissotel - Atlanta Parking | $ 18.00 |
| Alamo Car rental | $ 54.36 |
| ESPN Zone Meals | $ 31.00 |
| | $ |
| Honoraria Honoraria | 500.00 |

Total miles/@ $0.36 a mile  $ _____

From: _____ To: _____

Total $ 603.36

Please mail this form with original receipts by Oct 15, 2003 to:
Meetings Department
Debbie DeFillippo
Bayer Corporation, 400 Morgan Lane, West Haven, CT 06516
Phone (203)812-6455

FOR BAYER OFFICE USE ONLY/Revised for SAP:

Requester's Name: Debra DeFillippo
Requester's Signature: [signature]
Employee ID: 026528
Invoice(aka: Meeting Mate #): 7461
G/L Acct/Cost Element: 6743100
Internal Order (project code): MT3007
Check Stub Message: Cardiac Team Mtg 9/19-9/21, 2003

Approver's Name: Jill Pecheur
Approver's Signature: [signature]
Employee ID: 029325
Material #: 08610323 (Mandatory Do Not Remove)
US1/Works/Cost Center: US12567887
WBS Element #: _____

TOTAL AMOUNT TO BE PAID $ 603.36
Date sent to Accounting: 10/15/03

Revised 2/04/03

BAYTEMPKELLY26

| Form **W-9**<br>(Rev November 1999)<br>Department of the Treasury<br>Internal Revenue Service | Request for Taxpayer<br>Identification Number and Certification | Give form to the<br>requester. Do NOT<br>send to the IRS. |
|---|---|---|

**Please print or type**

Name (If a joint account or you changed your name, see Specific Instructions on page 2.)
**Thomas F. Kelly**

Business name, if different from above (See Specific Instructions on page 2.)

Check appropriate box: ☐ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ..........

Address (number, street, and apt. or suite no.)
**1880 Arlington St #103**

Requester's name and address (optional)
**20138**

City, state, and ZIP code
**Sarasota Fl 34239**

### Part I  Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, if you are a resident alien OR a sole proprietor, see the instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see **How to get a TIN** on page 2.

Note: *If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.*

OR

Employer identification number

List account number(s) here (optional)

### Part II  For Payees Exempt From Backup Withholding (See the instructions on page 2.)

### Part III  Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), **and**

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

Sign Here  Signature ▶  _T. Kelly_   Date ▶ _10/22/03_

**Purpose of form.** A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9, if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are an exempt payee.

If you are a foreign person, IRS prefers you use a Form W-8 (certificate of foreign status). After December 31, 2000, foreign persons must use an appropriate Form W-8.

Note: *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What is backup withholding?** Persons making certain payments to you must withhold and pay to the IRS 31% of such payments under certain conditions. This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

If you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return, payments you receive will not be subject to backup withholding. Payments you receive will be subject to backup withholding if:

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part III instructions on page 2 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 3 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the Part II instructions and the separate Instructions for the Requester of Form W-9.

### Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

Cat. No. 10231X       Form **W-9** (Rev. 11-99)

BAYTEMPKELLY27

GUEST FOLIO

Dr. Thomas Kelly

| | |
|---|---|
| Arrival      09/20/03 | Room         1122 |
| Departure    09/21/03 | Person(s)    1 |
| Market Seg   CGM | Cashier      26 NAMARE |
| | Page         1 |
| | Settlement   AX |

I N V O I C E    N O.   774769            Swissôtel Atlanta, 09/21/03    12:04

| Date | Text | | Room | Charges | Credits |
|---|---|---|---|---|---|
| 09/20 | Garage Valet Overnight | | 1122 | 18.00 | |
| 09/21 | Amex ▇▇▇▇4000 | 04/06 | | | 18.00 |
| | | Total | | 18.00 | 18.00 |
| | | Balance | | | 0.00 |

Signature: _____

Thank you for staying at Swissôtel Atlanta.
We look forward to your next visit.
For reservations please call (888) 737-9477 or (888) 73-SWISS.
Cross reservations can now be made between select Raffles International properties and Okura Hotels & Resorts. These properties include Raffles Hotel, Raffles The Plaza , Swissotel The Stamford and Swissotel Merchant Court in Singapore and Okura Hotels in Tokyo, Kobe, Fukuoka and Shanghai.
http://www.raffles.com

BAYTEMPKELLY28



```
RENTAL AGREEMENT NO.        CAR SERIAL NO.              RENTAL DATE-TIME-ALAMO OFFICE-MILEAGE    RETURN DATE-TIME-ALAMO OFFICE-MILEAGE
210-445636-7                264NS2J1 31243053            20SEP03  07:18                           21SEP03  12:58
                                                         ATLANTA          18239                   ATLANTA          18339

** RETURNED **
THOMAS KELLY
SARASOTA FL 34239-3702 UNITED STATES

## ALL CURRENCIES SHOWN ARE IN U.S. DOLLARS                                            TIME           42.12 T
                                                                                       CONRCFEE        4.68 T
EXCISE TAXES OF 3.00% ARE INCLUDED IN TAX CHARGE                                       RNTLTAX         1.48
EXCISE TAX IS THE CITY OF ATLANTA TAX ON MOTOR VEHICLE RENTALS.                        VLFR            2.62 T
* APPLICABLE TAXES ARE 7.00% ON ALL CHARGES MARKED 'T'.                                TAXES           3.46 *
'CONRCFEE' IS THE 11.11% CONCESSION RECOUPMENT FEE.                                    TOT CHR        54.36
'VLFR' IS THE $1.31 PER DAY VEHICLE LICENSE FEE RECOUPMENT                             CR. CARD       54.36-
                                                                                       BALANCE          .00
ALAMO WELCOMES YOUR COMMENTS!  CALL 1-800-445-5664 CUSTOMER RELATIONS.
             IT HAS BEEN A PLEASURE TO SERVE YOU!  - 37201

RES: 26205905            RA: 210-445636-7           W2 W2 (P) - C4    D42$ 1
```

BAYTEMPKELLY29

```
        Steamhouse
         Lounge
       3041 Bolling Way
        Atlanta, Ga.
       (404) 233-7980
Date:       Sep 20'03 03:56PM
Card Type:  Amex
Acct #:           ████4000
Exp Date:   04/06
Auth Code:  500877
Check:      9632
Table:      NB 2/1
Server:     205 AM N
VSCA: Auth Driver
            TF KELLY

Subtotal:        17.30

Tip              3.00

Total            20.30
```

_____
Signature

I agree to pay above total
according to my agreement

* * * * Merchant Copy * * * *

```
           ESPN ZONE
         (404) 682-3776
         WWW.ESPNZONE.COM

6072 Knox
----------------------------------
1231  SEP20'03  1:35PM
----------------------------------
           Dine-In

1 COORS LIGHT           4.50
1 RED BRICK ALE         5.50

  Subtotal             10.00
  Tax                   0.70
  Payment              10.70
  Cash                 20.00
  Change Due            9.30
```

AGREEMENT FOR CONSULTING SERVICES   **FILE COPY**

THIS AGREEMENT, effective as of September 19, 2003 (the "Effective Date"), is by and between Bayer Pharmaceuticals Corporation, a Delaware corporation with offices located at 400 Morgan Lane, West Haven, Connecticut 06516, ("Bayer") and _____ with offices located at _____ ("Consultant").

1. Term and Duties

    Bayer hereby retains Consultant to perform, and Consultant hereby agrees to perform, from September 19, 2003 through September 18, 2004 (the "Consultative Period"), such consultative and advisory services as more clearly set forth in the Appendix attached hereto (the "Services").

    Upon acceptance of this offer Bayer and Consultant agree to the following terms:

    a. The Services shall be performed in such a place or places within the United States as Bayer and Consultant may from time to time agree to.

    b. Consultant shall devote the appropriate number of hours to complete the agreed upon Services in a timely manner.

    c. There is no guarantee of any minimum amount to be paid under this Agreement.

    d. The principal Bayer contact with Consultant will be David Nederhood.

2. Representations, Warranties and Covenants

    a. Consultant represents and warrants that: (i) he or she has the authority to enter into this Agreement and perform the Services required hereunder; (ii) the Services shall be performed competently, by Consultant, in a professional manner, and within the time frames described herein or agreed to by the parties; (iii) Consultant has the proper skill, training and background necessary to accomplish the assigned tasks; (iv) the work product to be provided to Bayer in connection with this Agreement will meet the specifications outlined herein in the manner intended as described herein or as otherwise agreed upon in a writing signed by both parties; (v) his or her activities hereunder are not in conflict with any other obligations, contractual or otherwise; and (vi) he or she has disclosed to Bayer any and all direct and indirect financial interests held by Consultant or any of his or her principals in any subcontractors to be utilized by Consultant in the performance and execution of this Agreement.

    b. Bayer and Consultant each represents and warrants to the other that it shall cooperate with and render necessary assistance and advice to the other party as reasonably requested by the other.

    c. Consultant represents that he or she is not and has never been: 1) convicted of a crime for which a person or entity can be debarred, under Section 306(a) or 306(b) Federal Food, Drug and Cosmetic Act [21 U.S.C. 335a or 335b] or under

H:\Interactive Consultants\interactive consultants 091103.doc

FILE COPY

Section 1128 of the Social Security Act [42 U.S.C. Section 1320a-7], or 2) sanctioned by, suspended, excluded or otherwise ineligible to participate in, any federal or state health care program, including Medicare and Medicaid, or in Federal procurement or non-procurement programs.

d. Consultant further represents and warrants that his or her services under this Agreement will not conflict with, nor violate the terms of, Consultant's employment with any entity, and that Consultant therefore can serve as an advisor to Bayer in an individual capacity.

e. Although Consultant is not subject to management and control in the delivery of Services hereunder, if Services are to be provided by Consultant on Bayer property, Consultant must comply with the requirements applicable to persons on Bayer property such as safety and security rules and Consultant will be responsible for any violation thereof, or any damage to persons or property caused by Consultant while on Bayer's property.

3. Compensation

a. Bayer hereby agrees to pay, and Consultant hereby agrees to accept, a fee of Five Hundred Dollars ($500) for Consultant's performance of Services under this Agreement. In no event shall Bayer be obligated for a sum greater than Five Hundred Dollars ($500) as payment for Consultant's performance of Services under this Agreement.

b. Bayer (or a third party vendor hired by Bayer) shall reimburse Consultant, upon submission of vouchers by Consultant, for his or her pre-approved, reasonable, out-of-pocket, travel-related expenses incurred in the furtherance of the services under this Agreement, including but not limited to, all reasonable meals, hotel accommodations and travel expenses including airfare and automobile mileage at the rate per mile approved by the Internal Revenue Service as of the time of travel.

c. As an independent contractor, Consultant shall be responsible for withholding and payment of all income taxes and social security, and other financial responsibilities arising out of Consultant's services, and is not covered by state or federal programs applicable to employees of Bayer.

c. All invoices shall be submitted by Consultant, to the attention of such individual as designated by Bayer, at such address as designated by Bayer. Requests for payment are to include an itemization of dates and types of services rendered and hours spent on each task.

4. Non-Exclusivity

It is understood and agreed by and between Bayer and Consultant that Consultant maintains the right, at his or her sole discretion, to render similar consulting services, and/or otherwise seek engagements with other companies during the term of this Agreement, so long as the same does not create a conflict of interest with others

2

BAYTEMPKELLY32

including competitors of Bayer or interfere with the business of Bayer and the confidentiality of Bayer information is protected by Consultant. All information disclosed to Consultant by Bayer, as well as that generated by Consultant pursuant to the execution of services hereunder, shall be maintained by Consultant in strictest confidence in accordance with the terms of Article 5. Consultant shall avoid all circumstances and actions which would place Consultant in a position of divided loyalty with regard to the obligations undertaken pursuant to this Agreement.

5. Confidential Matters

   a. Consultant shall keep in strictest confidence all information relating to this Agreement which may be acquired in connection with or as a result of this Agreement. During the term of this Agreement or at any time thereafter, without the prior written consent of Bayer, Consultant shall not publish, communicate, divulge, disclose, or use any of such information which has been designated orally or in writing as Bayer proprietary or confidential information ("Confidential Information"). Upon termination or expiration of this Agreement, Consultant shall deliver all records, data, information, and other documents and all copies thereof to Bayer and such shall remain the property of Bayer.

   b. Nothing in this Article 5 shall be construed to impose a confidentiality obligation on Consultant in connection with any information to the extent such information:

      i. is at the time of disclosure already known to Consultant as clearly established by Consultant's records;

      ii. is at the time of disclosure or subsequently becomes part of the public domain through no fault or act or omission by Consultant;

      iii. is subsequently disclosed to Consultant by a third party whose receipt and disclosure of such information does not constitute a violation of any confidentiality obligation; or

      iv. is independently developed by Consultant as clearly established by Consultant's records.

   c. In the event that Consultant becomes legally compelled to disclose any Confidential Information, Consultant will provide Bayer with prompt written notice of such fact prior to making any such disclosure so that Bayer may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Article 5. In the event that such protective order or other remedy is not obtained, or Bayer waives compliance with the provisions of this Article 5, Consultant shall furnish only that portion of the Confidential Information which Consultant is legally required to furnish and will exercise reasonable efforts to obtain reliable assurance that confidential treatment will be afforded the Confidential Information.

   d. In addition to damages and other rights Bayer may have, Bayer shall have the right to obtain injunctive or other equitable relief to restrain any breach or

· 3

FILE COPY

BAYTEMPKELLY33

FILE COPY

> otherwise to specifically enforce the provisions of this Article 5, it being agreed that money damages alone would be inadequate to compensate Bayer and would be an inadequate remedy for such breach.

6. Ownership

   All Materials, including but not limited to any data, documents, plans, articles, information, prototypes, reports, speeches, slides, reports, or other articles (hereafter collectively referred to as "Materials"), designed, compiled, provided, developed, or prepared by Bayer or for Bayer under this Agreement shall be the exclusive property of Bayer; and at all times, Consultant agrees to assign the copyright in any and all of the Materials produced for Bayer under this Agreement or by Bayer to Bayer and Bayer shall have the full and free right to use, publish, and disseminate any and all such Materials in any way deemed by it to be necessary or advisable, either directly or through agents or otherwise, without payment of any compensation to Consultant for the same, except as herein specifically provided.

7. Infringement

   Consultant shall take all necessary and appropriate action to assure that none of the work product or any other items which it shall prepare or which it shall have prepared pursuant to this Agreement shall violate or infringe upon any patent, trademark or copyright, or any other right of any person, corporation, or other entity, and Consultant shall hold Bayer harmless from any losses incurred as a result of such violation or infringement. Consultant shall be responsible for obtaining assignment of copyright interests from the authors or work to be selected hereunder to allow inclusion of such work in the services.

8. Governmental Laws

   Consultant shall comply with the Fair Labor Standards Act. Consultant shall not discriminate against any employee or applicant for employment because of age, race, religion, color, creed, national origin, or sex. Consultant shall comply with all applicable federal, state and local fair employment practices laws, including all provisions of Executive Order 11246 of September 24, 1965, the Rehabilitation Act of 1973, and the Vietnam Era Veterans Readjustment Assistance Act of 1974 and any amendments thereto. Any clause required to be in a document of this type by any applicable law or administrative regulation having the effect of law shall be deemed to be incorporated herein. Consultant warrants that the goods and services rendered hereunder shall comply with all applicable laws, standards and regulations, whether governmental, industrial, in effect on the date of delivery, or known in the industry to become effective after such date.

9. Indemnification

   a. Consultant will indemnify and hold Bayer, and its affiliates, successors, officers, directors, and employees harmless from any loss, expense (including counsel fees), cost, liability, damage or claim (collectively, "Loss") for personal injury, including death, at any time resulting therefrom, or for damage to property arising

4

BAYTEMPKELLY34

FILE COPY

out of or in connection with the performance or breach of this Agreement no matter how such Loss arises, whether by acts or omissions, except to the extent such Loss is due to Bayer's negligence.

b. Consultant shall indemnify and hold Bayer, and its affiliates, successors, officers, directors, and employees harmless with respect to any Loss related to or arising out of any assertion that Bayer should be deemed the "employer" or "joint employer" of any individual performing services under this Agreement. In any and all claims for any Loss against any of Bayer, and its affiliates, successors, officers, directors, and employees by Consultant or any employee of Consultant, or anyone directly or indirectly employed by Consultant, or anyone for whose acts Consultant may be liable, Consultant's indemnity obligations of this Article 9 shall not be limited in any way by any limitation on the amount or type of damages under workers' compensation, disability benefits, or any other employee benefits.

10. Termination

Bayer and Consultant each reserves the right to cancel this Agreement for any reason upon thirty (30) days prior written notice to the other party. In the event of such termination, Consultant shall immediately cease incurring any additional costs in connection with this Agreement and Bayer's sole obligation to Consultant shall be limited to payment of those costs and expenses actually incurred by Consultant up to the date of cancellation or termination and related to Consultant's performance under this Agreement, which are not cancelable or recoverable. In no event shall Bayer be obligated to pay a total amount greater than the total compensation set forth for the Services in Article 3.

11. General

a. Independent Contractor. In all matters relating to this Agreement, Consultant shall be acting as an independent contractor. Consultant is not an employee of Bayer under the meaning or application of any federal or state unemployment or insurance laws or workers' compensation laws, or otherwise. Consultant shall assume all liabilities or obligations imposed by any one or more of such laws with respect to Consultant in his or her performance of this Agreement. Consultant shall not have any authority to assume or create any obligation, express or implied, on behalf of Bayer and Consultant shall have no authority to represent itself as an agent, employee, or in any other capacity of Bayer.

b. Assignment. This Agreement shall be binding upon and inure to the benefit of the parties and their successor and assigns. Bayer may assign its rights and duties under this Agreement without Consultant's consent. Consultant may not assign this Agreement without the prior written consent of Bayer. Any assignment by Consultant in contravention of this provision shall be void.

c. Modification. This Agreement contains the entire agreement between the parties, and no statement, provision, or inducement made by either party or an agent of either party that is not contained in this Agreement shall be valid or

5

BAYTEMPKELLY35

FILE COPY

binding. This Agreement shall not be modified in any way unless such modification is agreed to in writing signed by both parties.

d. <u>Waiver</u>. No failure on the part of either party to exercise and no delay in exercising any right hereunder shall operate as a waiver of such right nor shall any single or partial exercise of such right preclude any other further exercise or the exercise of any other right.

e. <u>Invalidity</u>. In case any one or more of the provisions of this Agreement is determined to be invalid, illegal, or unenforceable in any respect, such provision shall be reformed to the minimum extent necessary to cause such provision to be valid, legal, or enforceable. If no such reformation is possible, then such provision shall be omitted and the balance of the Agreement shall remain valid and enforceable.

f. <u>Survivorship</u>. The following provisions of this Agreement shall survive the performance, expiration, or termination of this Agreement: 5, 6, 7, and 9.

g. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Facsimile execution and delivery of this Agreement are legal, valid and binding execution and delivery for all purposes.

h. <u>Governing Law</u>. Any controversy or claim arising out of or relating to this Agreement shall be governed by the law of the state of Connecticut without regard to its conflicts of laws principles. The parties agree to the exclusive jurisdiction of the Connecticut courts, both state and federal.

i. <u>Remedies</u>. The rights and remedies of the parties to this Agreement are cumulative and not alternative.

j. <u>Notices</u>. All notices shall be in writing and delivered personally, by mail, return receipt requested, or by overnight courier, to the addresses of the parties set forth at the beginning of this Agreement, to the attention of the undersigned. Any such notice shall be deemed given on the date delivered.

BAYTEMPKELLY36

IN WITNESS WHEREOF the parties hereto have set their respective hands and seals, as of the day and year first above-written.

Bayer Pharmaceuticals Corporation

| By: __[signature]_____ | By: __[signature]_____ |
|---|---|
| [print name] | [print name] |
| __[print title]_____ | |

By: __[signature]_____
   [print name]

__[print title]_____

By: __[signature]_____
   [print name]

__[print title]_____

7

BAYTEMPKELLY37

FILE COPY

**APPENDIX A**
**Cardiac Team Meeting**
**New Orleans, Louisiana**

**MEETING:**
Fairmont New Orleans
New Orleans, Louisiana

Date: Friday, September 19, 2003 – Sunday, September 21, 2003
Friday Evening: Arrival
Saturday Time: 8:00 a.m. to 12:30 p.m.
Sunday Time: 7:30 a.m. to Noon

Participants are expected to arrive on Friday evening and to depart on Sunday afternoon.

**MEETING OVERVIEW:**
The purpose of this meeting is to bring together cardiac team members from hospitals throughout the country to provide new information, experiences and ideas for improving outcomes in open heart surgery to Bayer.

Consultant will provide feedback on the topics to be presented during the scientific sessions, which include: coagulation, graft patency, blood use in cardiac surgery, renal safety, anti-platelet therapy and cardio-pulmonary bypass, stroke issues, cost, neuroprotection and endothelial function during cardiac surgery. (See **Agenda**).

Each topic will include a panel and roundtable discussion with questions and responses from Consultant and other attendees about experiences and proposals for improving open heart surgery outcomes.

**AGENDA:**
**Friday**
| | |
|---|---|
| 7:00 pm – 8:00 pm | Reception |
| 8:00 pm – 9:30 pm | Buffet Dinner |

**Saturday**
| | |
|---|---|
| 8:00 am – 8:05 am | Introduction – Peter Smith |
| 8:05 am – 8:15 am | Q&A Demographics/ Pre-Assessment* - Peter Smith |
| 8:15 am – 8:45 am | Overview of Aprotinin – Peter Smith |
| 8:45 am – 8:55 am | Moderator directed Group Consultation* |
| 8:55 am – 9:25 am | The High Risk Patient and Risk Factors in Cardiac Surgery – David Royston |
| 9:25 am – 9:35 am | Moderator directed Group Consultation* |
| 9:35 am – 10:05 am | Inflammatory response to CPB – John Murkin |
| 10:05 am – 10:15 am | Moderator directed Group Consultation* |
| 10:15 am – 10:30 am | BREAK |

8

BAYTEMPKELLY38

FILE COPY

| | |
|---|---|
| 10:30 am – 11:00 am | Improving Neurologic Outcomes – David Stump |
| 11:00 am – 11:10 am | Moderator directed Group Consultation* |
| 11:10 am – 11:40 am | Myocardial Protection in CPB – David Bull |
| 11:40 am – 11:50 am | Moderator directed Group Consultation* |
| 11:50 am – 12:20 pm | Optimizing OPCAB Surgery – Lars Englberger |
| 12:20 pm – 12:30 pm | Moderator directed Group Consultation* |
| 12:30 pm | Adjournment |

Sunday

| | |
|---|---|
| 7:30 am – 8:20 am | **Breakfast Breakout Sessions** |
| **Breakout Room** | Surgeons (Englberger & Bull) |
| **Breakout Room** | Anesthesiologists (Levy) |
| **Breakout Room** | Perfusionists & Pharmacists (Royston) |
| 8:30 am – 9:00 am | Anti-Platelet Drugs and Cardiac Surgery – John Lemmer |
| 9:00 am – 9:10 am | Moderator directed Group Consultation* |
| 9:10 am – 9:40 am | Risks of Blood Transfusion – Bruce Spiess or Thomas Slaughter |
| 9:40 am – 9:50 am | Moderator directed Group Consultation* |
| 9:50 am – 10:10 am | BREAK |
| 10:10 am – 10:40 am | Analysis of Blood Conservation – Tim Hannon |
| 10:40 am – 10:50 am | Moderator directed Group Consultation* |
| 10:50 am – 11:20 am | Anti-thrombotic Actions of Aprotinin – Jerry Levy |
| 11:20 am – 11:30 am | Moderator directed Group Consultation* |
| Noon | Adjournment |

*An interactive Audience Response Session will take place after each presentation.
The faculty will be present both program days and will participate in all sessions.

**DESCRIPTION OF SERVICES:**

Consultant will be asked for his or her advice and input on issues related to Bayer's product Trasylol®. Consultant will respond to questions posed by speakers for each scientific presentation to provide advice and feedback to Bayer on issues related to marketing research and current medical practice procedures. Consultant will provide feedback to Bayer about current practices in the field, how those practitioners understand how Trasylol® is used, and how Bayer can better address the clinical market requirements. Responses will be facilitated via a touch-pad response system to allow instantaneous feedback to the audience and Bayer.

In addition, Consultant shall provide general consulting services to Bayer during the period from September 19, 2003 through September 18, 2004 as requested by Bayer. Such services may include, but are not limited to, review of marketing strategies, educational concepts, and materials, and consultation via conference call and/or e-mail.

9

BAYTEMPKELLY39