**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**


**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

**IN RE TRASYLOL PRODUCTS LIABILITY**
**LITIGATION – MDL-1928**


**This Document Relates to All Actions.**

<u>**PLAINTIFFS' OPPOSITION TO BAYER'S MOTION TO EXCLUDE**</u>
<u>**TESTIMONY OF PLAINTIFFS' EXPERT MARK J.S. HEATH, M.D.**</u>
<u>**AND BRIEF IN SUPPORT THEREOF**</u>

<u>**TABLE OF CONTENTS**</u>

**TABLE OF CONTENTS** ............................................................................................ii

TABLE OF AUTHORITIES ....................................................................................iii

**INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION**...........................1

**INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS'
CONCURRENTLY FILED OPPOSITION TO BAYER'S MOTION TO EXCLUDE THE
TESTIMONY OF DR. MARK J. EISENBERG**..................................................1

**EVIDENCE** ........................................................................................................2

**ARGUMENT AND AUTHORITIES**...................................................................3

      A.     DR.  HEATH IS COMPETENT AND QUALIFIED TO OPINE ABOUT THE
           SAFETY RISKS POSED BY TRASYLOL. [In Response to Bayer's Argument I.
           p. 2 - 9].......................................................................................3

           1.     Bayer Does Not Contest that Dr. Heath is an Imminently Qualified
                  Anesthesiologist. ...........................................................3

           2.     Bayer Seeks to Exclude the Testimony of Dr. Heath on an Issue Which he
                  is not Offered. ..............................................................4

           3.     The Methodology Employed by Dr. Heath in Rendering His Expert
                  Opinions on the Safety of Trasylol is Reliable. ...............................7

                a.     Dr. Heath's Methodologies in Reaching Conclusions in this Case
                        are the Exact Same He Employs in His Clinical Practice..............7

                b.     Dr. Heath's Safety Opinions are Not Contradicted by His Clinical
                        Experience and Practice.............................................8

      B.     DR. HEATH'S OTHER OPINIONS ARE WELL WITHIN HIS EXPERTISE
           AND ARE ADMISSIBLE.  [In Response to Bayer's Argument II. p. 9-17].......10

           1.     Dr. Heath's Opinions Regarding Bayer's Marketing Efforts. .................10

           2.     Dr. Heath's Opinions Regarding What Bayer Characterizes as
                    "Knowledge, Motives, Intent, or State of Mind"....................................11

           3.     Dr. Heath's Opinions About Bayer's Labeling of Trasylol. ....................11

**CONCLUSION** ...............................................................................................12

**CERTIFICATE OF SERVICE** .........................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Ambrosini v. Labarraque*,
101 F.3d 129 (D. C. Cir. 1996) ................................................................................... 4

*Doe v. Ortho-Clinical Diagnostics, Inc.*,
440 F.Supp.2d 465 (M.D.N.C. 2006) ......................................................................... 5

*Ellis v. C.R. Bard, Inc.*,
311 F.3d 1272 (11th Cir. 2002) .................................................................................. 5

*In re Fosomax*,
645 F.Supp.2d 164 (S.D.N.Y. 2009) ........................................................................... 4

*Jones v. Otis Elevator Co.*,
81 F.3d 655 (11th Cir. 1998) ..................................................................................... 7

*Kilpatrick v. Breg, Inc.*,
No. 08-10052, 2009 WL 2058384 (S.D. Fla. June 25, 2009) ...................................... 5

*Lust v. Merrell Dow Pharm., Inc.*,
89 F.3d 594 (9th Cir. 1996) ....................................................................................... 5

*Malletier v. Dooney & Bourke, Inc.*,
525 F.Supp.2d 558 (S.D.N.Y. 2007) ........................................................................... 4

*McClain v. Metabolife Int'l Inc.*,
401 F.3d 1233 (11th Cir. 2005) .................................................................................. 5

*Stone v. Smith, Kline & French Laboratories*,
731 F.2d 1575 (11th Cir. 1984) .................................................................................. 5

*Timm v. Upjohn Co.*,
624 F.2d 536 (5th Cir. 1980) ..................................................................................... 4

*United States v. Downing*,
753 F.2d 1224 (3d Cir. 1985) ..................................................................................... 4

COME NOW, Plaintiffs in the above styled cause ("Plaintiffs") and submit the following "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark J.S. Heath, M.D. and Brief in Support Thereof" (hereinafter "Opposition"). Plaintiffs would respectfully show the Court that Dr. Heath's proposed expert testimony is methodologically sound and reliable and would be of assistance to the jury. Dr. Heath's expert testimony should be admitted for the following reasons:

**I.**
**INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION**

Dr. Heath has been proffered by the PSC on behalf of Plaintiffs as an expert on anesthesiology, particularly in the context of cardiac surgery and drugs utilized during cardiac surgery, specifically antifibrinolytics, and their risks and benefits in a clinical setting - areas in which he is eminently qualified. Tellingly, Bayer does not challenge the expertise of Dr. Heath as an anesthesiologist. Instead, Bayer seeks to exclude certain of Dr. Heath's opinions by co-opting the nature of his opinions and shoehorning them into categories more suitable to its needs.

In fact, as discussed below, Dr. Heath has not acted merely as an advocate with handpicked documents. Instead, his opinions reflect the totality of his experience and research, as detailed below, and thus, are reliable.

**II.**
**INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS' CONCURRENTLY FILED OPPOSITION TO BAYER'S MOTION TO EXCLUDE THE TESTIMONY OF DR. MARK J. EISENBERG**

In the interest of brevity and to avoid burdening the Court with duplicative briefing, Plaintiffs have set forth the following matters in their "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark J. Eisenberg and Brief in Support Thereof" (hereinafter "Eisenberg Opposition") which are fully incorporated herein by reference.

- Section "I" – BACKGROUND AND HISTORY OF MDL LITIGATION

- Section "IV.B" – THE PROPER *DAUBERT* STANDARDS

In order to further the Court's understanding of the history of this litigation, the scientific data that underlies the expert testimony in this case, and the separate and distinct areas of each expert's proffered testimony, Plaintiffs would respectfully encourage the Court to begin its review of Plaintiffs' *Daubert* briefing with Plaintiffs' Eisenberg Opposition.

## III.
## EVIDENCE

In support of this Opposition, Plaintiffs specifically rely upon the following documents which are set forth in Plaintiffs' Compendium of Exhibits in Support of Plaintiffs' Opposition to Exclude the Testimony of Expert Mark J.S. Heath and Brief in Support Thereof " (hereinafter "Compendium of Exhibits") filed herewith:

A.   Expert Report of Mark J.S. Heath, M.D. (hereinafter "Heath Report") (Exhibit A);

B.   Excerpts from the Deposition of Mark J.S. Heath, M.D. (hereinafter "Heath Depo.") (Exhibit B);

C.   Excerpts from the Deposition of Donald Williams, M.D. (hereinafter "Williams Depo.") (Exhibit "C");

D.   Expert Report of Donald Williams, M.D.  (hereinafter "Williams Report") (Exhibit "D");

E.   Food and Drug Administration (2007-11-05),"FDA Requests Market Suspension of Trasylol", Press Release (Exhibit "E").

Additionally, Plaintiffs rely upon all pleadings, discovery and evidence filed in this case and any admissions made by Bayer therein.

## IV.

## ARGUMENT AND AUTHORITIES

A.   **DR. HEATH IS COMPETENT AND QUALIFIED TO OPINE ABOUT THE SAFETY RISKS POSED BY TRASYLOL.** [In Response to Bayer's Argument I. p. 2 - 9].

Defendants take no issue with Dr. Heath's qualifications to opine on anesthesiology, particularly in the context of cardiac surgery, yet are eager to preclude Dr. Heath from opining on the safety of drugs commonly used during those same procedures. Despite the illogical nature of Bayer's arguments, each is taken up in turn below.

1.   **Bayer Does Not Contest that Dr. Heath is an Imminently Qualified Anesthesiologist.**

As indicated in his report, Dr. Mark Heath is an Assistant Professor of Clinical Anesthesiology at Columbia University Medical Center in New York. [Heath Report p. 1 (Plaintiffs' Compendium of Exhibits at Exhibit "A")]. He has a B.A. in Biology from Harvard, Magna Cum Laude, and an M.D. from University of North Carolina at Chapel Hill. *Id.* He was an internal medicine intern at George Washington Medical Center and the Veteran's Administration hospital, both in Washington, D.C. *Id.* He completed his residency and completed a research and cardiac anesthesiology fellowship at Columbia University, Columbia Presbyterian Hospital. *Id.* Since 1993, Dr. Heath has served as an attending anesthesiologist at Columbia University Medical Center. He is Board Certified in Anesthesiology and a Diplomat in Advanced Perioperative Transesophageal Echocardiography. In the course of his clinical anesthesiology practice, Dr. Heath has administered both aprotinin (Trasylol) and aminocaproic acid (Amicar) to patients. [Heath Report p. 6 – 9]. Dr. Heath is well published, having:

- Published at least 13 peer-reviewed scientific articles;

- Authored or co-authored book chapters; and

- Presented work in the field of heart disease as invited lecturer or presenter both nationally and internationally.

*Id.*, Exhibit A.  In addition, Dr. Heath actively teaches medical students, residents, and fellows how to provide perioperative and anesthesia care for cardiac and thoracic surgical procedures. *Id*. at 1-2.

Dr. Heath's qualifications and professional stature provide circumstantial evidence of the reliability of his methods and research.  *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D. C. Cir. 1996); *United States v. Downing*, 753 F.2d 1224, 1239 (3d Cir. 1985).  "[T]he more qualified the expert, the more likely that expert is using reliable methods in a reliable manner—highly qualified and respected experts don't get to be so by using unreliable methods or conducting research in an unreliable manner."  *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 616 (S.D.N.Y. 2007); *see also In re Fosomax*, 645 F. Supp. 2d 164 (S.D.N.Y. 2009).

### 2.    Bayer Seeks to Exclude the Testimony of Dr. Heath on an Issue Which he is not Offered.

To be clear, Plaintiffs are not offering Dr. Heath's testimony as evidence of causation. However, he is being offered to opine on the risk/benefit analysis of administration of aprotinin *vis-à-vis* less expensive, safer and efficacious alternatives.

As an anesthesiologist who has administered both Trasylol and its alternatives, Dr. Heath is in a unique position to opine on the safety of a drug administered in cardiac surgery.  Federal courts have consistently and repeatedly held that the threating physician "is in the best position to weigh the benefits against the risks of a particular drug therapy."  *Timm v. Upjohn Co.*, 624 F.2d 536, 538 (5th Cir. 1980).   A prescribing physician is in this "best position" to do a risk/benefit analysis because, as explained by the 11th Circuit:

> [a]s a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task

4

of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, and individualized medical judgment bottomed on a knowledge of both patient and palliative.

*Stone v. Smith, Kline & French Laboratories*, 731 F.2d 1575, 1579-580 (11th Cir. 1984); *see also Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1279 (11th Cir. 2002) (noting that the prescribing physician has "the task of weighing the benefits of any medication against its potential dangers") (internal citation and quotations omitted).

Dr. Heath is not an epidemiologist or biostatistician.  Rather, he is an experienced, well-credentialed anesthesiologist opining on whether, through a risk-benefit analysis, the utilization of a particular drug is appropriate.  As is set out more fully below, the scientific and clinical methodology employed by Dr. Heath is sound, through his reliance on peer-reviewed literature, the FDA, Bayer's own internal documents and other sources.

Even though Dr. Heath is not offering a causation opinion, throughout its motion, Bayer cites to cases dealing with the *Daubert* standards for general and specific medical causation opinions:

- *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996) (granting summary judgment for defendant after plaintiff's causation expert was excluded) [Bayer's Daubert Motion p. 5]

- *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F.Supp.2d 465, 472-73 (M.D.N.C. 2006) (rejecting expert's opinions "with respect to general causation") [Bayer's Daubert Motion p. 5]

- *Kilpatrick v. Breg, Inc.*, No. 08-10052, 2009 WL 2058384, at *7 (S.D. Fla. June 25, 2009) (expert opining on causation excluded) [Bayer's Daubert Motion p. 6- 7]

- *McClain v. Metabolife Int'l Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005) (expert's causation opinion excluded based upon reliance on adverse event reports) [Bayer's Daubert Motion p. 5-6]

Because Dr. Heath is opining about the risk/benefit analysis for use of antifibrinolytics in cardiac surgery and not medical causation, each of these cases is inapposite. Bayer would like this Court to hold Dr. Heath to the *Daubert* standard of an epidemiologist or other causation expert, despite the fact that that he is not opining on general or specific causation.

The disingenuousness of Bayer's attempt to impose the standard applicable to a causation expert is apparent when examining the opinions of one of Bayer's own experts. Bayer Expert Dr. Donald Williams is a cardiac surgeon retained by Bayer to give expert opinions regarding the some of the very same topics that are the subject of Bayer's Motion to Exclude Dr. Heath's testimony: the safety (or lack thereof) of aprotinin use and its risk/benefit profile. Bayer Expert Dr. Williams candidly admits that he:

- cannot offer an expert opinion on the causes of renal failure and dysfunction. [Williams Depo. 101:11-16 (Plaintiffs' Compendium of Exhibits at Exhibit "C")]

- is not a nephrologist. *Id.* at 97:1-3;

- is not an epidemiologist. *Id.* at 97:18-20;

- did not do a Bradford Hill analysis regarding causation. *Id.* at 100:21-24;

- would defer to other experts on whether or not aprotinin satisfied the Bradford Hill criteria in terms of its relationship or association with renal failure or death. *Id.* at 101:4-10; and

- has no understanding of how aprotinin affects the kidney from a pharmacokinetic standpoint. *Id.* at 141:2-7.

In fact, during his deposition, Dr. Williams was asked what he understood his role to be in this case, and he replied to provide "an opinion about aprotinin in sort of a broadbrush form relative to its use in cardiac surgery." *Id.* at 16:23-174. This is exactly the sort of opinion that Bayer is asking the Court to exclude in its Motion to Exclude Testimony of Dr. Heath. Almost half of Dr. Williams' report is dedicated to discussing the safety of Trasylol in a cardiac surgical setting and

the inferiority of the alternative drugs.  [*See* Williams Report p. 23-37 (Plaintiffs' Compendium of Exhibits at Exhibit "D")].  A cursory glance of his final conclusions reveals that Dr. Williams' opinions are the mirror image opposite to the opinions of Dr. Heath, even though Dr. Williams admits he would defer to other experts for a causal assessment of aprotinin and other risk factors. *Id.* at 37.

Plaintiffs will not move to exclude the testimony of Dr. Williams for the same reason that Dr. Heath is qualified to opine on the safety—or lack thereof—of aprotinin: both experts may testify about the benefits and risks of aprotinin, and their differing opinions should be resolved by the trier of fact and not the gatekeeper.  *Jones v. Otis Elevator Co.*, 81 F.3d 655, 663 (11th Cir. 1998) (holding that weaknesses in the underpinnings of the expert's opinion go to the opinion's weight rather than its admissibility).

      **3.**    **The Methodology Employed by Dr. Heath in Rendering His Expert Opinions on the Safety of Trasylol is Reliable.**

            **a.**    **Dr. Heath's Methodologies in Reaching Conclusions in this Case are the Exact Same He Employs in His Clinical Practice.**

The method employed by Dr. Heath in arriving at his ultimate conclusion about the safety profile of aprotinin is sound and reliable.  In point of fact, it is the exact same methodology he uses in assessing the risks and benefits of any drug that he administers to a patient.  As Dr. Heath states in his report:

> With every patient, we would balance, using our best judgment, experience, available knowledge, and where appropriate, cost considerations, the risks and benefits of each modality of reducing bleeding.  If a given preventative measure was felt likely to be more beneficial than harmful, we would deploy it.  Conversely, if our assessment based on our experience and knowledge and judgment was that the risks of a pharmaceutical agent or a preventative measure outweigh the benefit, we would not use it.

[Heath Report p. 7].

In an unsuccessful attempt to undermine what is clearly sound scientific methodology, Bayer inaccurately refers to Dr. Heath's literature review as a "haphazard," "intermittent and unsystematic." In fact, Dr. Heath examined the scientific literature, looking at documents both specific to Trasylol and those regarding renal failure and bleeding that were not specific to Trasylol. [Heath Depo. 36:12-37:2]. He did not restrict his search to literature that was favorable to Trasylol. *Id.* at 37:23-39:3. Instead, he testified that his searches were "open ended."[1] *Id.* at 37:23-38:4.

At the end of the day, Dr. Heath is merely opining on topics germane to and handled in the same manner that he handles risk-benefit issues in his clinical practice. Accordingly, Bayer's challenge to Dr. Heath's qualifications to opine as to the safety risks of aprotinin must fail.

### b. Dr. Heath's Safety Opinions are Not Contradicted by His Clinical Experience and Practice.

Contrary to Bayer's assertion, Dr. Heath did not develop his opinions on the safety of aprotinin for purposes of litigation. As detailed in Dr. Heath's report, his actual clinical practice changed over time with respect to usage of aprotinin due to concerns about safety. When Dr. Heath initially began to use the drug for patients in the course of his clinical practice, the decision was based on published literature and information available at the time. [Heath Report p. 8]. Subsequently, in 2006, when the published literature began to raise issues regarding the safety of the drug, Dr. Heath and his colleagues at Columbia University Medical Center "modified both [their] deliberative process and [their] practice in terms of deciding which patients would best be served by receiving aprotinin. The result was that many patients who, in

---

[1]     Interestingly, Bayer's expert cardiac surgeon Dr. Williams cited to and relied upon 45 different studies. [Williams Report p. 38-41]. Bayer undoubtedly would dispute that Dr. Williams' literature search was "haphazard," "intermittent and unsystematic."

the past, and in the information of this new information would have been given aprotinin, were now instead treated with Amicar." *Id.* at 9.  Ultimately, by 2007, Dr. Heath and his colleagues ceased using Trasylol due to the increasing formation regarding the risks and benefits.  *Id.* at 10.

When Bayer asserts that Dr. Heath's "clinical experience" is contrary to his opinions Bayer is ignoring the realities of the use of Trasylol in his clinical practice, which obviously changed over time.  They further disregard the nature of Dr. Heath's practice, anesthesiology, and assume that he was the treating physician following surgery.  In essence, Bayer is arguing that because Dr. Heath cannot point to specific case reports in his patients, he is unqualified to opine on the safety of aprotinin.[2]

It is true that Dr. Heath could not state with certainty whether in his practice he saw an increase in renal and cardiac injuries among patients administered the drug.  This testimony is not, as Bayer argues, evidence that his clinical experience with aprotinin was positive, and thus contradictive of his expert opinions here.  In his report, Dr. Heath explains the difference between drugs used in surgery with rapidly observable effects, like anesthetic drugs and drugs that are used in the operating room but for which the results are not so readily observable.

[Heath Report p. 11–12].  Dr. Heath explained:

> By contrast, other drugs that we use in the operating room do not have an immediately discernible effect.  For example, we give antibotics before the skin is incised, and we do this based on published literature from large clinical trials and other studies that show that this practice reduces the infection rate.  The same applied for our use of Trasylol and Amicar; the published literature led us to believe that these drugs reduced bleeding.  At the same time, we had no way of knowing whether Trasylol or Amicar were causing overall long-term harm to any individual patient.

---

[2]      Apparently without irony, Bayer later argues that case reports are insufficient to form a reliable opinion.  [Bayer's Daubert Motion p. 13].

The sound and reliable approach that Dr. Heath undertook in gathering pertinent literature, examining Bayer documents, paying head to the developing warnings and ultimate withdrawal of aprotinin by FDA, and evidence that his clinical practice changed validate the reliability of his opinions.

The candidness of the drug manufacturer in delineating both benefits and risks of its drugs is of paramount importance.  As is set out more fully in § I. of Eisenberg's Opposition, Bayer was less than candid.  In fact, Bayer actively withheld safety information about aprotinin, making it virtually impossible for the treating anesthesiologist to do an adequate risk/benefit analysis in determining whether to use aprotinin or an alternative drug.

Significantly, Dr. Heath's opinion that he cannot envision a patient population for which the benefits of Trasylol are outweighed by its risks is reinforced by the FDA, which in November of 2007, asked Bayer to discontinue the sale of Trasylol in the United States because it was not possible to "determine and identify a population of patients undergoing cardiac surgery for which the benefits of Trasylol outweigh the risks."  Food and Drug Administration (2007-11-05),"FDA Requests Market Suspension of Trasylol", Press Release.  Exhibit E.

In conclusion, Dr. Heath is (1) imminently qualified to opine anesthesiology, and (2) developed his safety opinions on the risk/benefit utility of aprotinin with sound and reliable methodology confirmed by FDA and his own clinical practice, as well as Bayer internal documents and a thorough search of available scientific literature regarding the risks and benefits of the aprotinin.  Accordingly, Bayer's motion to exclude Dr. Heath's safety opinions should be denied outright.

**B.     DR. HEATH'S OTHER OPINIONS ARE WELL WITHIN HIS EXPERTISE AND ARE ADMISSIBLE.**  [In Response to Bayer's Argument II. p. 9-17]

**1.     Dr. Heath's Opinions Regarding Bayer's Marketing Efforts.**

10

In his report, Dr. Heath has outlined the sources from which he personally received information regarding Trasylol.  These sources include heavy marketing efforts by Bayer, a constant stream of documents touting the benefits and safety of Trasylol, and a seminar sponsored by Bayer at which the benefits and safety of Trasylol were emphasized by a prominent member of the medical profession.  [Heath Report p. 13-14].

**2.      Dr. Heath's Opinions Regarding What Bayer Characterizes as "Knowledge, Motives, Intent, or State of Mind".**

As much as it wishes otherwise, Bayer cannot render Dr. Heath's reliable expert testimony inadmissible merely by characterizing it as opinions as to "knowledge, motives, intent or state of mind."  Dr. Heath does not refer to "ethical" or "unethical" behavior by Bayer in his report.  Dr. Heath, instead, states that he relied on Bayer to be forthcoming with information and opines that without the information withheld by Bayer, clinicians, such as himself, as discussed above, were unable to render an appropriate risk/benefit analysis.   [Heath Report p. 15]. Following his reliable review of literature, Bayer's internal documents, and other information, Dr. Heath now opines that had he been in possession of the information of which Bayer was aware, he would not have used Trasylol in his clinical practice.  This is far from an opinion as to Bayer's "knowledge, motives, intent or state of mind" and Bayer's motion to exclude on that basis is without merit.

**3.      Dr. Heath's Opinions About Bayer's Labeling of Trasylol.**

Bayer rightly notes that Dr. Heath is not an expert on labeling and has never participated in the drafting of a label.  However, Plaintiffs have not offered Dr. Heath as a labeling expert. Instead, Dr. Heath will testify at trial that had the label included warnings regarding renal dysfunction, renal failure, death, and cardiac adverse events, it would have altered his risk/benefit analysis and influenced his practice.  [Heath Report p. 15].  Such an opinion is

squarely within his province, as one who must weigh the risk-benefit of such medications in the course of his clinical practice.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court DENY Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark J.S. Heath, M.D.  Plaintiffs additionally request all other and further relief as the Court deems just and proper.

This the __25th__ day of January, 2010.

Respectfully submitted,

/s/_____
Theodore Babbitt (Florida Bar No. 91146)
Email: tedbabbitt@babbitt-johnson.com
Joseph Osborne (Florida Bar No. 880043)
Email: JAOsborne@babbitt-johnson.com
Babbitt, Johnson, Osborne
& LeClainche, P.A.
1641 Worthington Road Suite 100
West Palm Beach, FL 33409
Telephone: (561) 684-2500
Facsimile:  (561) 684-6308

*Liaison Counsel for Plaintiffs and Plaintiffs'*
*Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on January __25__, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel or records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/_____
Theodore Babbitt
Florida Bar No. 0091146

13