**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

**IN RE TRASYLOL PRODUCTS LIABILITY**
**LITIGATION – MDL-1928**

**This Document Relates to All Actions.**

**PLAINTIFFS' OPPOSITION TO BAYER'S MOTION TO EXCLUDE**
**TESTIMONY OF PLAINTIFFS' EXPERT LUCA VRICELLA, M.D.**
**AND BRIEF IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ...................................................................................................... ii

**TABLE OF AUTHORITIES** ............................................................................................... iv

**INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION**............................. 1

**INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS' CONCURRENTLY FILED OPPOSITION TO BAYER'S MOTION  TO EXCLUDE THE TESTIMONY OF DR. MARK J. EISENBERG**..................................................................... 2

**EVIDENCE** ........................................................................................................................... 2

**ARGUMENT AND AUTHORITIES**..................................................................................... 3

    A.   DR.  VRICELLA IS COMPETENT AND QUALIFIED TO OPINE ABOUT THE SAFETY RISKS POSED BY TRASYLOL. [In Response to Bayer's Argument I. p. 2-11]. ... 3

        1.   Bayer Does Not, and Cannot, Contest that Dr. Vricella is an Imminently Qualified Cardiac Surgeon.......................................................................................................... 3

        2.   Bayer Seeks to Exclude the Testimony of Dr. Vricella on an Issue Which he is not Offered. ................................................................................................................... 4

        3.   The Methodology Employed by Dr. Vricella in Rendering His Expert Opinions on the Safety of Trasylol is Reliable............................................................................... 8

           a.   Dr. Vricella's Methodology in Reaching Conclusions in this Case are the Exact Same He Employs in His Clinical Practice........................................................ 8

           b.   Dr. Vricella's Safety Opinions are Not Contradicted by His Clinical Experience and Practice.......................................................................................... 10

           c.   Dr. Vricella Did Not Rely on Preliminary Data Alone in Formulating his Opinions…………………………………………………………………………12

    B.   DR. VRICELLA'S OPINIONS REGARDING ALTERNATIVES TO TRASYLOL ARE ADMISSIBLE.  [In Response to Bayer's Argument II. p. 12-14] .......................................... 13

    C.   DR. VRICELLA'S OTHER OPINIONS ARE WELL WITHIN HIS EXPERTISE AND ARE ADMISSIBLE.  [In Response to Bayer's Argument III. p. 14-19] ................................ 14

        1.   Dr. Vricella's Opinions on the Lack of Warnings in the Aprotinin Label and the Impact this had on His Risk/Benefit Analysis are Admissible. ....................................... 14

2.    Dr. Vricella's Opinions on the Effect Information Withheld by Bayer from Clinicians Has on His Risk/Benefit Analysis are Admissible. ........................................................... 15

3.    Dr. Vricella's Opinions Regarding the Impact Studies, if Performed Earlier in Time, Would have had on his Risk/Benefit Analysis. .................................................... 15

**CONCLUSION** ........................................................................................................ 16

**CERTIFICATE OF SERVICE** .............................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allison v. McGhan Med. Corp.*,
   184 F.3d 1300 (11th Cir. 1999) ............................................................... 6

*Ambrosini v. Labarraque*,
   101 F.3d 129 (D.C.Cir. 1996) ................................................................... 4

*Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F.Supp.
   2d 465 (M.D.N.C. 2006)........................................................................... 6

*Ellis v. C.R. Bard, Inc.*,
   311 F.3d 1272 (11th Cir. 2002) ............................................................... 5

*In re Fosomax*,
   645 F.Supp.2d 164 (S.D.N.Y. 2009) ...................................................... 4

*Jones v. Otis Elevator Co.*,
   81 F.3d 655 (11th Cir. 1998) ................................................................... 8

*Kilpatrick v. Breg, Inc.*,
   No. 08-10052, 2009 WL 2058384 (S.D. Fla. June 25, 2009)................... 7

*Lust v. Merrell Dow Pharm., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ..................................................................... 6

*Magistrini v. One Hour Martinizing Dry Cleaning*,
   180 F.Supp.2d 584 (D.N.J. 2002) ........................................................... 6

*Malletier v. Dooney & Bourke, Inc.*,
   525 F.Supp.2d 558 (S.D.N.Y. 2007) ...................................................... 4

*McClain v. Metabolife Int'l Inc.*,
   401 F.3d 1233(11th Cir. 2005) ............................................................... 7

*Rider v. Sandoz Pharmaceuticals Corp.*,
   295 F.3d 1194  (11th Cir. 2002) ............................................................. 7

*Rimbert v. Eli Lilly & Co.*,
   No. 06-0874, 2009 WL 2208570 (D.N.M. July 21, 2009) ...................... 6

*Stone v. Smith, Kline & French Laboratories*,
   731 F.2d 1575 (11th Cir. 1984) ............................................................... 5

*Timm v. Upjohn Co.*,
   624 F.2d 536 (5th Cir. 1980) ................................................................... 5

*United States v. Downing*,
   753 F.2d 1224 (3d Cir. 1985) ................................................................. 4

COME NOW, Plaintiffs in the above styled cause ("Plaintiffs") and submit the following "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Luca Vricella, M.D. and Brief in Support Thereof" (hereinafter "Opposition"). Plaintiffs would respectfully show the Court that Dr. Vricella's proposed expert testimony is methodologically sound and would be of assistance to the jury.  Dr. Vricella's expert testimony should be admitted for the following reasons:

## I.

## INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION

Luca Vricella, M.D. is proffered as an expert on cardiac surgery, drugs utilized during cardiac surgery—specifically antifibrinolytics, and their risks and benefits in a clinical setting. In short, Dr. Vricella is a clinician who seeks to offer opinions regarding cardiac surgery, the use of certain drugs in that clinical setting, as well as the risks and benefits of doing so.  Bayer does not challenge the expertise of Dr. Vricella as a cardiac surgeon.  Instead, Bayer seeks to exclude certain opinions of Dr. Vricella by co-opting the nature of his opinions and shoehorning them into categories more suitable to its needs.

The bottom line is that Dr. Vricella is qualified to testify as to (1) cardiac procedures in general, and coronary artery bypass graft surgery (hereinafter referred to as "CABG surgery") in specific, (2) the utilization of medications in the clinical setting of cardiac surgery, including the use of aprotinin and its alternatives (both aminocaproic acid and tranexamic acid), (3) the risk/benefit analysis a cardiac surgeon employs in determining which, if any, blood sparing agent should be administered during surgery, and (4) the types of clinical information cardiac surgeons rely on in assessing the risks and benefits of medications used in surgery.

## II.

## INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS' CONCURRENTLY FILED OPPOSITION TO BAYER'S MOTION TO EXCLUDE THE TESTIMONY OF DR. MARK J. EISENBERG

In the interest of brevity and to avoid burdening the Court with duplicative briefing, Plaintiffs have set forth the following matters in their "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark J. Eisenberg and Brief in Support Thereof" (hereinafter "Eisenberg Opposition") which are fully incorporated herein by reference.

- Section "I" – BACKGROUND AND HISTORY OF MDL LITIGATION

- Section "IV.B" – THE PROPER DAUBERT STANDARDS

In order to further the Court's understanding of the history of this litigation, the scientific data that underlies the expert testimony in this case, and the separate and distinct areas of each expert's proffered testimony, Plaintiffs would respectfully encourage the Court to begin its review of Plaintiffs' Daubert briefing with Plaintiffs' Eisenberg Opposition.

## III.

## EVIDENCE

In support of this Opposition to Bayer's motion to exclude the expert testimony of Dr. Vricella, Plaintiffs specifically rely upon the following documents which are set forth in Plaintiffs' Compendium of Exhibits filed herewith:

A.   Expert Report of Luca Vricella, M.D. (hereinafter "Vricella Report") (Exhibit "A").

B.   Excerpts from the Deposition of Luca Vricella, M.D. (hereinafter "Vricella Depo.") (Exhibit "B").

C.   Excerpts from the Deposition of Donald Williams, M.D. (hereinafter "Williams Depo.") (Exhibit "C").

D.     Expert Report of Donald Williams, M.D.  (hereinafter "Williams Report") (Exhibit "D").

E.     Food and Drug Administration (2007-11-05), "FDA Requests Market Suspension of Trasylol", Press Release (Exhibit "E").

In addition, Plaintiffs rely upon all pleadings, discovery and evidence filed in this case and any admissions made by Bayer therein.

## IV.

## ARGUMENT AND AUTHORITIES

**A.     DR.  VRICELLA IS COMPETENT AND QUALIFIED TO OPINE ABOUT THE SAFETY RISKS POSED BY TRASYLOL. [In Response to Bayer's Argument I. p. 2-11].**

Bayer "does not dispute that Dr. Vricella is qualified to explain CABG surgery to a jury." [Bayer's Daubert Motion p. 1].  Defendants take no issue with Dr. Vricella's qualifications to opine on CABG procedures, yet are eager to preclude Dr. Vricella from opining on the safety of drugs commonly used during those same procedures.  Bayer's position is the equivalent of acknowledging the competence of a pilot to fly a plane, then later challenging that same pilot's ability to read the instrument panel and determine the steps necessary to fly the plane safely to its destination.  Despite the logical paradox of Defendants arguments, each is taken up in turn below.

### 1.     Bayer Does Not, and Cannot, Contest that Dr. Vricella is an Imminently Qualified Cardiac Surgeon.

Dr. Vricella is an Associate Professor of Surgery, Attending Adult and Pediatric Cardiac Surgeon and Director of the Johns Hopkins Pediatric Cardiac Surgical and Heart Transplantation Service.  [Vricella Report p. 1 (Plaintiffs' Compendium of Exhibits at Exhibit "A")].  He also serves as the co-Director of the Johns Hopkins Adult Congenital Heart Disease Unit.  *Id.*  He is well published, having:

- Published at least 52 peer-reviewed scientific articles;

- Authored or co-authored 16 book chapters and 3 textbooks; and

- Presented work in the field of heart disease as invited lecturer or presenter both nationally and internationally.

*Id.* at 2.  In addition to his clinical and scientific credentials, Dr. Vricella actively teaches other doctors how to perform CABG procedures, from the pre-operative phase through caring for CABG patients post-operatively. [Vricella Depo. 462:2-463:9 (Plaintiffs' Compendium of Exhibits at Exhibit "B")].

Dr. Vricella's qualifications and professional stature provide circumstantial evidence of the reliability of his methods.  *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C.Cir. 1996); *United States v. Downing*, 753 F.2d 1224, 1239 (3d Cir. 1985).  "[T]he more qualified the expert, the more likely that expert is using reliable methods in a reliable manner—highly qualified and respected experts don't get to be so by using unreliable methods or conducting research in an unreliable manner."  *Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp.2d 558, 616 (S.D.N.Y. 2007); *see also In re Fosomax*, 645 F.Supp.2d 164 (S.D.N.Y. 2009).

**2.   Bayer Seeks to Exclude the Testimony of Dr. Vricella on an Issue Which he is not Offered.**

As an initial matter, Bayer has conceded or failed to challenge Dr. Vricella's qualifications and/or the reliability of Dr. Vricella's opinions in the following areas:

- CABG and other cardiac procedures in the pre-operative setting;

- CABG and other cardiac procedures in the peri-operative setting;

- CABG and other cardiac procedures in the post-operative setting;

- Blood conservation strategies in a cardiac surgical setting; and

- Use of anti-fibrinolytic agents in cardiac surgery.

[*See* Vricella Report p. 1-11 (Plaintiffs' Compendium of Exhibits at Exhibit "A")]. In fact, it is not until § V. of Dr. Vricella's Report that Bayer takes issue with any of Dr. Vricella's opinions. Even at this point, Bayer's attack on Dr. Vricella is misplaced. Bayer begins its attack on Dr. Vricella by stating that he is unqualified to testify as to medical causation. [Bayer's Daubert Motion p. 2]. However, Dr. Vricilla is not offered to testify on medical causation.

Rather, he is being offered to discuss on the risk/benefit analysis of aprotinin *vis-à-vis* less expensive, safer and efficacious alternatives in the surgical setting. As Dr. Vricella expressly states, his opinions deal with "whether I would use [aprotinin] in a patient, knowing what I know today, and if I thought that my patient will be at increased risk of renal failure or dysfunction." [Vricella Depo. 46:24-47:3]. As the surgeon, Dr. Vricella is in a unique position to opine on the safety of a drug administered in cardiac surgery as he is the individual responsible for making the decision as to which medications are administered during surgery. Federal courts have consistently and repeatedly held that the prescribing physician "is in the best position to weigh the benefits against the risks of a particular drug therapy." *Timm v. Upjohn Co.*, 624 F.2d 536, 538 (5th Cir. 1980). As explained by the 11th Circuit, prescribing physicians are in this "best position" to do a risk/benefit analysis because,

> [a]s a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, and individualized medical judgment bottomed on a knowledge of both patient and palliative.

*Stone v. Smith, Kline & French Laboratories*, 731 F.2d 1575, 1579-580 (11th Cir. 1984); *see also Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1279 (11th Cir. 2002) (noting that the prescribing

physician has "the task of weighing the benefits of any medication against its potential dangers") (internal citation and quotations omitted).

Dr. Vricella is not an epidemiologist or biostatistician. Rather, he is an experienced, well-credentialed cardiac surgeon who must decide which medications are appropriate for his patients who undergo cardiac surgery. This decision making process is employed by cardiac surgeons all over the world on a daily basis. As is set out more fully in § IV.A.3 *infra*, the scientific and clinical methodology employed by Dr. Vricella is sound, reliable and consistent with the methodology utilized by cardiac surgeons around the globe, including Bayer's own expert surgeon.

Through sleight of hand, Bayer attempts to re-characterize Dr. Vricella's opinions as causation opinions. In doing so, Bayer crafts its arguments based upon inapplicable standards and repeatedly cites to cases dealing with the Daubert standards for general and specific medical causation opinions:

- *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996) (granting summary judgment for defendant after plaintiff's causation expert was excluded) (Bayer's Mot. at 8)

- *Doe v. Ortho-Clinical Diagnostics, Inc.*, 440 F.Supp.2d 465, 472-73 (M.D.N.C. 2006) (rejecting expert's opinions "with respect to general causation") (Bayer's Mot. at 8)

- *Rimbert v. Eli Lilly & Co.*, No. 06-0874, 2009 WL 2208570, at *14 (D.N.M. July 21, 2009) (expert's methodology unreliable with respect to medical causation) (Bayer's Mot. at 8)

- *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1313 (11th Cir. 1999) (expert excluded from giving causation opinion) (Bayer's Mot. at 9)

- *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 591-92 (D.N.J. 2002) (expert excluded from giving medical causation opinion) (Bayer's Mot. at 9)

- *Kilpatrick v. Breg, Inc.*, No. 08-10052, 2009 WL 2058384, at *7 (S.D. Fla. June 25, 2009) (expert opining on causation excluded) (Bayer's Mot. at 11)

- *McClain v. Metabolife Int'l Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005) (expert's causation opinion excluded based upon reliance on adverse event reports) (Bayer's Mot. at 11, 13)

- *Rider v. Sandoz Pharmaceuticals Corp.*, 295 F.3d 1194, 1199 (11th Cir. 2002) (expert excluded because "case reports did not by themselves provide reliable proof of causation") (Bayer's Mot. at 13)

However, Dr. Vricella is opining on a risk/benefit analysis of antifibrinolytics in cardiac surgery and not medical causation. Thus, each of the above cited cases is inapposite.  More specifically, Bayer would hold Dr. Vricella to the Daubert standard of an epidemiologist or other causation expert, despite his acknowledgment that he is not opining on general or specific causation in this case.

Ironically, Dr. Donald William, the cardiac surgeon retained by Bayer, proffers opinions regarding the very same topics that are the subject of their Motion to exclude Dr. Vricella's testimony: the safety (or lack thereof) of aprotinin use and its risk/benefit profile.  As with Dr. Vricella, Dr. Williams candidly admits that he:

- cannot offer an expert opinion on the causes of renal failure and dysfunction [Williams Depo. 101:11-16]

- is not a nephrologist [*Id.* at 97:1-3]

- is not an epidemiologist [*Id.* at 97:18-20]

- did not do a Bradford Hill analysis regarding causation [*Id.* at 100:21-24]

- would defer to other experts on whether or not aprotinin satisfied the Bradford Hill criteria in terms of its relationship or association with renal failure or death [*Id.* at 101:4-10]

- has no understanding of how aprotinin affects the kidney from a pharmacokinetic standpoint [*Id.* at 141:2-7]

7

In fact, during his deposition, Dr. Williams was asked what he understood his role to be in this case, and he replied to provide "an opinion about aprotinin in sort of a broadbrush form relative to its use in cardiac surgery." *Id.* at 16:23-174. This is exactly what Bayer is asking the Court to exclude Dr. Vricella from testifying about. Almost half of Dr. Williams' report is dedicated to discussing aprotinin, its safety in a cardiac surgical setting, and the inferiority of the alternative drugs. [*See* Williams Report p. 23-37 (Plaintiffs' Compendium of Exhibits at Exhibit "D")]. A cursory glance of his final conclusions reveals that Dr. Williams is offering opinions on the same topics as Dr. Vricella [Williams Report p. 37], even though he admits he would defer to other experts on the issue of medical causation. Plaintiffs will not move to exclude the testimony of Dr. Williams for the same reason Dr. Vricella should not be excluded from opining on the safety—or lack thereof—of aprotinin: both experts are qualified and competent to testify about the benefits and risks of aprotinin, and their differing opinions should be resolved by the trier of fact and not the gatekeeper. *Jones v. Otis Elevator Co.*, 81 F.3d 655, 663 (11th Cir. 1998) (holding that weaknesses in the underpinnings of the expert's opinion go to the opinion's weight rather than its admissibility).

   **3.    The Methodology Employed by Dr. Vricella in Rendering His Expert Opinions on the Safety of Trasylol is Reliable.**

   **a.    Dr. Vricella's Methodology in Reaching Conclusions in this Case are the Exact Same He Employs in His Clinical Practice.**

The method employed by Dr. Vricella in coming to his ultimate conclusions about the safety profile of aprotinin is sound and reliable. In point of fact, it is the exact same methodology he uses in assessing the risks and benefits of any medication he administers to patients. As Bayer appropriately points out, when asked how Dr. Vricella determined what literature to ultimately consider, Dr. Vricella stated that his methodology was similar to his

8

clinical practice: "If I have to change something or do something new on a patient or administer a new drug, I'm going to look at what it is."  [Bayer's Daubert Motion p. 7].  Thus, Dr. Vricella began with a literature search on aprotinin data from 2000 to the present, and pulled pertinent articles from peer-reviewed and other journals of import.  *Id.*  This point was developed in more detail later in Dr. Vricella's deposition.   After giving his opinion that the risks of aprotinin outweighed any potential benefits, the following questions and answers were made:

Q.   Now, what are you basing that opinion on?  Could you just describe generally what the basis of that is?

A.   I base this on the literature, I base this on documents, the FDA stand on this issue, some of the internal documents that I've reviewed that just raise grave concern about transparency.  And clinical practice.

Q.   Now, could you describe the methodology you used to come to this opinion?

A.   . . . Utilized a similar kind of methodology that would employ in any surgical decision-making that concerns the safety of my patients.  So I looked at the literature, looked at the—what the FDA says . . . .  And on a peer-reviewed authoritative journals, and then I had also the opportunity to look at some internal documents, which kind of strengthened my conclusions.

Q.   How does that compare to research you do in your clinical practice?

A.   It's exactly the same.

[Vricella Depo. 464:10-23; 465:17-466:10 (objections omitted)].

In an unsuccessful attempt to undermine what is clearly sound scientific methodology, Bayer glibly refers to Dr. Vricella's literature review as a "haphazard review of cherry-picked data."  [Bayer's Daubert Motion p. 6].  In fact, Dr. Vricella examined scientific literature dating back to 2000 and culled the list down to 41 important studies.[1]  In determining which studies

---

[1]   Interestingly, Bayer's expert cardiac surgeon Dr. Williams cited to and relied upon 45 different studies, merely 4 more than Dr. Vricella.  [Williams Report p. 38-41(Plaintiffs' Compendium of Exhibits at Exhibit "D")].

were most germane to his role in this case, Dr. Vricella reviewed the literature to take into account aprotinin's role in (1) blood loss reduction, (2) renal concerns, (3) death, (4) myocardial infarction or ischemia, and (5) cerebral vascular accidents such as stroke or neurological outcomes.  [Vricella Depo. 450-54].  At the end of the day, Dr. Vricella is merely opining on topics applicable to, and in fact identical to, his clinical practice:

> Well, I said I'm not an expert in causation.  But I have to administer the drug to my patient.  So at the end of the day I reviewed the literature that I thought was pertinent; I reviewed some of the Bayer documents.  And, you know, I have to render an opinion as a clinician as to whether I think the drug is safe or not.  Now, I'm not going to be an expert on causation, but I have to have an opinion, and -- whether I would use this drug or not.  Based on what I know.

[Vricella Depo. 48:7-18].   Accordingly, Bayer's challenge to Dr. Vricella's qualifications to opine on the safety risks of aprotinin must fail.

### b.    Dr. Vricella's Safety Opinions are Not Contradicted by His Clinical Experience and Practice.

Dr. Vricella did not develop his opinions on the safety of aprotinin for purposes of litigation.  As detailed in Dr. Vricella's report, his clinical practice changed over time with respect to usage of aprotinin.  As new information, including scientific literature and a label change, developed regarding the risks of aprotinin, Dr. Vricella and his colleagues used aprotinin less and less, ultimately stopping its administration in 2007.  [Vricella Depo. 276:13-277:11; 291:25-293:2].  When Bayer states that Dr. Vricella's "clinical experience" is contrary to his opinions, they are attempting to make a subtle shift from clinical practice, which obviously changed over time.  In essence, Bayer is arguing that because Dr. Vricella cannot point to specific case reports in his patients, he is unqualified to opine on the safety of aprotinin.[2]

---

Bayer undoubtedly would dispute that Dr. Williams' literature search was the result of a "haphazard review of cherry-picked data."

[2]    Apparently without irony, Bayer later argues that case reports are insufficient to form a reliable opinion.  [Bayer's  Daubert Motion p. 13].

It is true that Dr. Vricella could not state with certainty whether in his practice he saw an increase in renal and cardiac injuries among patients who were administered Trayslol.  This testimony is not, as Bayer argues, evidence that his clinical experience with aprotinin was positive, and thus contradictive of his expert opinions here.  As Dr. Vricella explained:

> As surgeons we can anecdotally observe particular beneficial or detrimental effects of a drug on patients treated in our clinical practice; it may appear to us that a drug has benefits or lacks any, but in patients who often have numerous comorbidities and without the benefit of large studies, it is hard for the individual surgeon to determine the existence of infrequent, severe adverse effects.  It is only with large randomized controlled trials and large observational studies published in authoritative, peer-reviewed journals that the individual prescribing physician (in this case, cardiothoracic surgeons and cardiac anesthesiologists) can make judgments on when and if a drug should be used.

[Vricella Report p. 15].  Thus, the sound and reliable approach Dr. Vricella undertook in gathering pertinent literature, as discussed above, examining Bayer documents, paying heed to the developing warnings and ultimate withdrawal of aprotinin by FDA, and evidence that his clinical practice changed further validates the reliability of his opinions.

Moreover, it is for this very reason that the candidness of the drug manufacturer in delineating both benefits and risks of its drugs is of paramount importance.  As is set out more fully in § I of Eisenberg's Opposition, Bayer was less than candid.  In fact, Bayer actively withheld safety information about aprotinin, making it virtually impossible for the treating cardiothoracic surgeon to do an adequate risk/benefit analysis in determining whether to use aprotinin or an alternative medication.  Dr. Vricella summed this up in his deposition:

> Q.   What happens when pharmaceutical companies are not forthcoming with the information about a drug, when you're doing your risk/benefit analysis?
>
> A.   Well, what happens is that I don't play with all the cards on the table.  So I have limited information, and the problem is that I'm the guy at the forefront who's prescribing the medication.  And I think I have all the

information, but I don't.  And if what I don't have hurts the patient, at the end of the day, that's what matters.

Q.    So, can a doctor such as yourself make an accurate risk/benefit determination without complete and accurate information from the pharmaceutical company?

A.    No.

[Vricella Depo. 469:2-25].

### c.    Dr. Vricella Did Not Rely on Preliminary Data Alone in Formulating his Opinions.

As a throwaway argument, Bayer contends that Dr. Vricella should be excluded because of his purported reliance on preliminary data only.  [Bayer's Daubert Motion p.10].  The only examples cited by Bayer are (1) the i3 study commissioned by Bayer and later hidden from the FDA, and (2) the BART study.  With respect to the i3 study, Bayer states that the doctor "fail[ed] to cite the final results that were later published in the *New England Journal of Medicine*."  *Id.* A cursory examination of Dr. Vricella's report reveals the falsity of this statement.  In fact, the study is clearly cited on page 3 of the references section to Dr. Vricella's report.  [Vricella Report  p. 3].  With respect to the BART study, Bayer concedes that Dr. Vricella reviewed and relied on the report.  They take issue with the fact that he was not aware of all of Bayer's criticisms of the BART study, as presented to Health Canada in closed proceedings.  Regardless, the BART study was published in *The New England Journal of Medicine*, and could not possibly be considered "preliminary data."

In conclusion, Dr. Vricella is (1) qualified to offer opinions on CABG and other cardiac procedures, and (2) developed his safety opinions on the risk/benefit utility of aprotinin with sound and reliable methodology confirmed by the FDA, his own clinical practice, and a thorough search of available scientific literature.  Accordingly, Bayer's motion to exclude Dr. Vricella's safety opinions should be denied outright.

**B.     DR. VRICELLA'S OPINIONS REGARDING ALTERNATIVES TO TRASYLOL ARE ADMISSIBLE.** [In Response to Bayer's Argument II. p. 12-14]

Bayer attempts to make much of the fact that Dr. Vricella did not conduct a literature search on the terms "aminocaproic acid" or "tranexamic acid."  But the fact that Dr. Vricella did not search the lysine analogues individually does not mean he did not consider and review literature dealing with those two drugs—particularly as they compared to aprotinin in head-to-head studies.   Indeed, Dr. Vricella's report expressly contemplates the literature review he conducted in comparing the safety of the lysine analogues to aprotinin:

> Several comparative studies have investigated the relative risks of and benefits of aprotinin, tranexamic acid and epsilon-aminocaproic acid, and some of the most relevant are reported in section V of this report.  Overall, my review of the literature reveals controversial results regarding the comparative efficacy of all three agents in reducing blood loss. . . .  What emerged on the contrary is the much higher comparative incidence of renal dysfunction (especially for high dosing) and even death in association with the use of aprotinin.

[Vricella Report p. 11].  Likewise, Bayer is critical of the fact that Dr. Vricella could not cite the names of randomized controlled trials or meta-analysis comparing the lysine analogues to placebos.  Even setting aside the false implication that the admissibility of expert testimony should hinge upon a memory test, Bayer's argument is misplaced. It is not methodologically unsound for Dr. Vricella to base his opinion comparing lysine analogues and aprotinin upon the many randomized controlled trials, meta-analysis and cohort studies directly comparing the two agents at issue: lysine analogues and aprotinin. It is simply unnecessary to resort to indirect comparisons drawn from studies of lysine analogues and placebos when direct scientific data exists from comparing the two agents at issue.

Moreover, it is well within Dr. Vricella's bailiwick to render a risk/benefit analysis of particular medications, because as a prescribing physician "[h]is is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one,

13

and individualized medical judgment bottomed on a knowledge of both patient and palliative."
*Stone*, 731 F.2d at 1579-580.  So, far from the mere *ipse dixit* of Dr. Vricella, head-to-head
studies comparing the safety and efficacy profiles of aprotinin versus the lysine analogues as
well as his qualifications to conduct a risk/benefit analysis support his expert opinions.  Bayer's
motion to exclude Dr. Vricella's opinions on the risks of aprotinin versus the lysine analogues
must fail.

**C.     DR. VRICELLA'S OTHER OPINIONS ARE WELL WITHIN HIS EXPERTISE
        AND ARE ADMISSIBLE.**  [In Response to Bayer's Argument III. p. 14-19]

        Finally, Bayer challenges the reliability of Dr. Vricella's opinions in the following areas:
(1) drug labeling for aprotinin, (2) withholding of information from FDA and the medical
community, and (3) the adequacy of Bayer's studies from a timing and design perspective.

        **1.     Dr. Vricella's Opinions on the Lack of Warnings in the Aprotinin Label and
                the Impact this had on His Risk/Benefit Analysis are Admissible.**

        As an initial matter, Bayer rightly notes that Dr. Vricella is not an expert on labeling and
has never participated in the drafting of a label. [Bayer's Daubert Motion p. 14].  Accordingly,
testimony about federal regulations pertaining to drug labels is outside the province of Dr.
Vricella's qualifications and expertise.  However, Dr. Vricella will testify at trial that had the
label included warnings regarding renal dysfunction, renal failure, death, and cardiac adverse
events, it would have altered his risk/benefit analysis and changed his prescribing practices with
respect to aprotinin.  [*See*, Vricella Depo. 175:11-13; 396:23-397:7; 409:11-20; 415-16].

        Such an opinion is squarely within the domain of his expertise and qualifications, as
discussed in more detail in § IV.A.1-3 *supra*.  It is also worth noting that Dr. Vricella's opinions
are reinforced by FDA, which in November of 2007, asked Bayer to discontinue the sale of
Trasylol in the United States because it was not possible to "determine and identify a population

of patients undergoing cardiac surgery for which the benefits of Trasylol outweigh the risks."
[Food and Drug Administration (2007-11-05), "FDA Requests Market Suspension of Trasylol",
Press Release (Plaintiffs' Compendium of Exhibits at Exhibit "E")].

    **2.**    **Dr. Vricella's Opinions on the Effect Information Withheld by Bayer from Clinicians Has on His Risk/Benefit Analysis are Admissible.**

Second, Bayer argues that Dr. Vricella's opinions with regard to the studies and other information withheld by Bayer from clinicians utilizing their drugs are based merely on his own "morals" and "ethics." As much as it wishes otherwise, Bayer cannot render Dr. Vricella's reliable expert testimony inadmissible merely by slapping it with an unwarranted "ethics opinion" label. Dr. Vricella does not refer to "ethical" or "unethical" behavior by Bayer in his report. Indeed, the only reference to ethics cited by Bayer occurred in the context of his deposition. After repeatedly being asked to identify rules, regulations or standards imposing a duty to disclose safety information—and after repeatedly indicating that those were questions better directed to an expert on FDA regulations, which he is not—Dr. Vricella referenced his own professional ethics and morals as a source of his opinions. Bayer cherry-picks the deposition testimony and conveniently omits the full source of his reliable opinions: "in this case, it's my opinion as a clinician, it's my opinion as a prescriber, and it is my opinion as the person taking care of the patient." [Vricella Depo. 169:25-170:3]. Concededly having no expertise in FDA regulation, Dr. Vricella will not offer opinions at trial on when and what data and other information should have been disclosed to FDA. However, Dr. Vricella is qualified to testify about what impact that information would have had on his risk/benefit analysis as a clinician. [Vricella Depo. 469:2-25].

    **3.**    **Dr. Vricella's Opinions Regarding the Impact Studies, if Performed Earlier in Time, Would have had on his Risk/Benefit Analysis.**

Lastly, Plaintiffs do not offer Dr. Vricella to opine on the design of studies. [Bayer's Daubert Motion p. 17]. In the interests of brevity, the full argument will not be set out again. Suffice it to say, however, that Bayer should not be allowed to use this fact later to preclude the expert testimony of Dr. Vricella on the impact such studies had on his risk/benefit analysis. More specifically, Dr. Vricella may testify from a factual standpoint how literature about the risks associated with aprotinin impacted his prescribing practice as a result of an altered risk/benefit analysis. Moreover, Dr. Vricella may testify about the role studies demonstrating increased risks of adverse events, had they been completed earlier in time, would have had on his prescribing practice and risk/benefit analysis.

## V.

## <u>CONCLUSION</u>

Based upon the foregoing, Plaintiffs respectfully request that the Court DENY Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Luca A. Vricella, M.D. Plaintiffs additionally request all other and further relief as the Court deems just and proper.

DATED: January __25__, 2010.

Respectfully submitted,

/s/_____
Theodore Babbitt (Florida Bar No. 91146)
Email: tedbabbitt@babbitt-johnson.com
Joseph Osborne (Florida Bar No. 880043)
Email: JAOsborne@babbitt-johnson.com
Babbitt, Johnson, Osborne
& LeClainche, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: (561) 684-2500
Facsimile: (561) 684-6308

*Liaison Counsel for Plaintiffs and Plaintiffs'*
*Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January  25 , 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel or records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/_____
Theodore Babbitt
Florida Bar No. 0091146

18