**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**


**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**


**IN RE TRASYLOL PRODUCTS LIABILITY**
**LITIGATION – MDL-1928**


**This Document Relates to All Actions.**


<u>**PLAINTIFFS' OPPOSITION TO BAYER'S MOTION TO EXCLUDE**</u>
<u>**TESTIMONY OF PLAINTIFFS' EXPERT SUZANNE PARISIAN**</u>
<u>**AND BRIEF IN SUPPORT THEREOF**</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS……………………..………………………………………………ii,iii

TABLE OF AUTHORITIES……………..……………………………………………iv,v

INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION............................ 1

INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS' CONCURRENTLY FILED OPPOSITION TO BAYER'S MOTION TO EXCLUDE THE TESTIMONY OF DR. MARK J. EISENBERG........................................................................ 2

EVIDENCE ..................................................................................................................... 3

ARGUMENT AND AUTHORITIES.................................................................................. 4

A.   VIRTUALLY *EVERY* COURT TO BE PROFFERED EXPERT OPINIONS BY DR. PARISIAN HAS ADMITTED HER TESTIMONY ON REGULATORY AND LABELING MATTERS................................................................................................. 4

   1. Courts Have Consistently Rejected Attempts by Pharmaceutical Companies and Medical Device Companies to Disqualify Dr. Parisian as a Regulatory and Labeling Expert……..4

   2. The Cases Relied Upon By Bayer Do Not Support Exclusion of the Regulatory Opinions Dr. Parisian Proffers in This Case...................................................................................... 5

   3. Dr. Parisian Has Been Admitted in Prior Cases to Offer Expert Opinions in Each of the Areas Where She Offers Opinions in This Case…………………………………………..8

B.   DR.   PARISIAN   IS   COMPETENT   AND   QUALIFIED   TO   OFFER   THE REGUALTORY OPINIONS SET FORTH IN HER EXPERT REPORT. [In Response to Bayer's Argument I. p. 4-9].............................................................................................. 9

   1. Dr. Parisian Is Qualified To Offer Opinions Regarding The FDA's Regulation Of Pharmaceutical Products Such As Trasylol. [In Response to Bayer's Argument I.C. p. 8-9]. ...................................................................................................................................... 9

   2. Bayer Improperly Mischaracterizes Dr. Parisian's Testimony By Suggesting That She Is Being Offered as an Expert on Causation or Foreign Regulatory Matters In Response to Bayer's Argument I.A. p. 5, and Argument I.B. p. 6-8] ………………………………..12

C.   DR. PARISIAN'S OPINIONS ARE WITHIN THE SCOPE OF PROPER AND PERMISSIBLE EXPERT TESTIMONY WHICH SHOULD BE ADMITTED TO AID THE  JURY  IN  THIS  CASE.  [In  Response  to  Bayer's  Argument  II.  p.  9-20]…………………………………………..………………..………..13

1. Dr. Parisian's Opinions Are Not Merely Factual Narrative. [In Response to Bayer's Argument II.A. p. 10-11]. .............................................................................. 14

2. Dr. Parisian's Opinions Are Not Merely Legal Conclusions. [In Response to Bayer's Argument II.B. p. 12-14]. ............................................................................. 15

    a.   Dr. Parisian's challenged opinions are admissible as they are based on her analysis of facts.................................................................................................... 15

    b.   Where specialized knowledge is necessary to understand the defendant's obligations, experts are permitted to opine as to whether the defendant's conduct violated the standard of care. .................................................................. 17

    c.   Dr. Parisian's testimony is not preempted. [In Response to Bayer's Argument  II.B.2 p. 14-15]................................................................................................... 19

3. Dr. Parisian's Passing References to Actions Taken by Foreign Regulatory Bodies Will Not Confuse the Jury. [In Response to Bayer's Argument II.C. p. 15-16]....................... 21

4. Dr. Parisian's Opinions Regarding Bayer's Conduct are Not Inadmissible Speculation. [In Response to Bayer's Argument II. p. 16-20] ............................................................ 22

    a.   Dr. Parisian does not offer testimony as to Bayer's knowledge or state of mind..... 22

    b.   Dr. Parisian is not offering personal opinions regarding pharmaceutical companies…………………………………………………………………..23

D.    DR. PARISIAN'S TESTIMONY IS METHODOLOGICALLY RELIABLE AND SHOULD BE ADMITTED. [In Response to Bayer's Argument III. p. 20-23].............. 25

**CERTIFICATE OF SERVICE** ............................................................................. 28

## TABLE OF AUTHORITIES

**Cases**

*Accord Linsley v. C.R. Bard, Inc.,*
  2000 WL 343358 (E.D.La. Mar. 30, 2000) ........................................................... 5
*Berry v. City of Detroit,*
  25 F.3d 1342 (6th Cir.1994) ............................................................................... 16
*Brasher v. Sandoz Pharms. Corp.,*
  160 F.Supp.2d 1291 (N.D. Ala. 2001) ................................................................ 20
*Buckman v. Plaintiffs' Legal Comm.,*
  531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) ................................ 19, 20
*Caraker v. Sandoz Pharms. Corp.,*
  172 F.Supp.2d 1018 (S.D. Ill. 2001) .................................................................. 20
*Daubert v. Merrell Dow. Pharms., Inc.*
  43 F.3d 1311, 1317 n. 5 (9th Cir. 1995)……………………………………………...5
*Eve v. Sandoz Pharms. Corp.,*
  2002 WL 181972 (S.D. Ind. 2002) ..................................................................... 20
*Globetti v. Sandoz Pharms. Corp.,*
  2001 WL 419160 (N.D. Ala. Mar. 5, 2001) ....................................................... 20
*Grossman v. Barke,*
  868 A.2d 561 (Pa.Super.Ct. 2005) ..................................................................... 17
*Highland v. Capital Management, L.P. v. Schneider,*
  *379* F.Supp.2d 461 (S.D.N.Y. 2005) .................................................................. 14
*Holbrook v. Woodham,*
  2007 WL 2071618 (W.D.Pa., July 13, 2007) ..................................................... 17
*In re Diet Drugs Prods. Liab. Litig.,*
  2000 WL 876900 (E.D.Pa. June 20, 2000) ......................................................... 18
*In re Fosamax Products Liab. Litig.,*
  645 F.Supp.2d 164, 191-92 (S.D.N.Y. 2009)……………………………………passim
*In re Guidant Corp. Implantable defibrillators Prods. Liab. Litig.,*
  2007 WL 1964337 (D. Minn. June 29, 2007) ....................................................... 6
*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,*
  2007 WL 1964337 (D.Minn. June 29, 2007) ............................................... 4, 8, 18
*In re Prempro Prods. Liab. Litig.,*
  554 F.Supp.2d 871 (E.D. Ark. 2008) ..................................................... 4, 6, 11, 23
*In re Prempro Prods. Liab. Litig.,*
  586 F.3d 547 (8th Cir. 2009) ................................................................... 6, 7, 15
*In re Rezulin,*
  309 F.Supp.2d 531 (S.D.N.Y. 2004) .................................................................. 14
*In re Seroquel Prods. Liab. Litig.,*
  601 F.Supp.2d 1313 (M.D.Fla. 2009) ................................................................ 21
*In re: Human Tissue Prods. Liab. Litig.,*
  582 F.Supp.2d 644 (D.N.J. 2008) .................................................................... 4, 5
*Jacob v. Caesars Entm't. Inc.,*
  2007 WL 594714 (E.D. La. Feb. 21, 2007), *aff'd*, 280 Fed.Appx. 424 (5th Cir. 2008) ............. 4

*KBryant v. Hoffman-La Roche, Inc.,*
585 S.E.2d 723 (Ga. App. 2003)................................................................ 20

*Lang v. Kohl's Food Stores, Inc.,*
217 F.3d 919 (7th Cir. 2000). ................................................................... 25

*Lillebo v. Zimmer,* Inc.
2005 WL 388598 (D. Minn. 2005) ............................................................... 7

*Lillebo v. Zimmer, Inc.,*
2005 WL 388598 (D. Minn. 2005) ............................................................... 4

*Linsley v. C.R. Bard, Inc.,*
2000 WL 343358 (E.D.La. Mar. 30, 2000) ................................................. 4

*McGowan v. Cooper Indus. Inc.,*
863 F.2d 1266 (6th Cir. 1988) ................................................................. 18

*Medtronic, Inc. v. Lohr,*
518 U.S. 470, 116 S.Ct. 2240 (1996)........................................................ 20

*Oakberg v. Zimmer Inc.,*
2004 WL 5503779 (D. Mont. 2004) ............................................................. 7

*Peck v. Horrocks Engineers, Inc.,*
106 F.3d 949 (10th Cir. 1997) ................................................................. 17

*Reece v. AstraZeneca Pharms., LP,*
500 F.Supp.2d 736 (S.D. Ohio 2007) ..................................................... 4, 6

*Sherry v. Massey-Ferguson, Inc.*
1997 WL 480893 (W.D. Mich. June 5, 1997) ........................................... 21

*Silkwood v. Kerr-McGee Corp.,*
464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984)............................... 20

*Stevens v. Novartis Pharma. Corp.*
Cause No. DV-08-100 (Montana 4th Jud. Dist. Missoula County Oct. 14, 2009) ...........4, 11

*Thorpson v. Ciba-Geigy Corp.,*
145 F.Supp.2d 565 (D.N.J. 2001) ............................................................ 20

*United States v. Barile,*
286 F.3d 749 (4th Cir. 2002) .................................................................. 16

*Wyeth v. Levine,*
129 S.Ct. 1187, 173 L.Ed.2d 51, 77 USLW 4165 (2009)........................... 19

**Rules**

FED. R. EVID.702 ..................................................................................... 5

FED. R. EVID. 704 ................................................................................... 15

COME NOW, Plaintiffs in the above styled cause ("Plaintiffs") and submit the following "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Suzanne Parisian and Brief in Support Thereof."   Plaintiffs would respectfully show the Court that Dr. Parisian's expert testimony is methodologically sound and would assist the jury in understanding the specialized FDA regulations and procedures that inform the standard of care in the pharmaceutical industry.  Dr. Parisian's testimony should be admitted for the following reasons:

## I.

### INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION

Suzanne Parisian, M.D. is proffered as an expert on FDA regulations, procedures, and labeling requirements.  In addition to being a medical doctor, Dr. Parisian is a former FDA Medical Officer, the author of a graduate level textbook on the FDA, and a consultant with twenty years of experience advising the FDA, pharmaceutical companies and individuals on FDA regulations.  As such, Dr. Parisian is abundantly qualified to share with the jury her expertise regarding FDA regulations and the standards of conduct in the pharmaceutical industry.

Unfortunately, Dr. Parisian's formidable expertise also makes her a target for unwarranted attacks.  Bayer is merely the latest in a long-line of drug companies that have tried to prevent Dr. Parisian's testimony from reaching the jury. Yet, despite vigorous challenges from defendants, the many courts where Dr. Parisian's regulatory opinions have been proffered have been nearly unanimous in their rulings that her testimony should be admitted.  [*See* Argument *supra* at IV.A.1].  Indeed, Dr. Parisian was *admitted* to provide expert regulatory opinions in all but one of the cases Bayer[1] cites as precedent for excluding her testimony.

---

[1] Defendants Bayer Healthcare Pharmaceuticals Inc. (as successor in interest to Bayer Pharmaceutical Corporation), Bayer HealthCare LLC, Bayer AG, and Bayer Schering Pharma AG (as successor in interest to Bayer HealthCare AG) are referenced collectively throughout this opposition as "Bayer."

1

It is because Bayer knows that Dr. Parisian's regulatory opinions have consistently been admitted that it strives so hard to characterize her testimony as being about something else.  But the mere fact that Bayer is able to extract from their proper context within Dr. Parisian's Report occasional references to a foreign regulatory action or an epidemiological study does not convert the subjects of Dr. Parisian's testimony to medical causation or foreign regulatory affairs. Likewise, Dr. Parisian's testimony is not an impermissible factual narrative merely because she sets forth in detail the facts and materials she considered in coming to her opinions.  Nor is Dr. Parisian's testimony a prohibited legal conclusion merely because she offers opinions on whether Bayer's conduct conformed to industry standards.

The bottom line is that Dr. Parisian is offered to testify as to: (1) the general nature of the approval and regulatory process, (2) the duties and obligations of drug manufacturers in relation to FDA regulations and industry standards, (3) Bayer's actions in relation to FDA regulations, industry standards and the FDA regulatory process generally, and (4) her opinion as to whether Bayer's actions were reasonable and appropriate.  Courts have admitted Dr. Parisian's opinions in these exact areas many times before. [*See* Argument *supra* at IV.A.2 and IV.B.3.  There is nothing in this case which would warrant a different outcome.

## II.

### INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS' CONCURRENTLY FILED OPPOSITION TO BAYER'S MOTION TO EXCLUDE THE TESTIMONY OF DR. MARK J. EISENBERG

In the interest of brevity and to avoid burdening the Court with duplicative briefing, Plaintiffs have set forth the following matters in their "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark J. Eisenberg and Brief in Support Thereof" (hereinafter "Eisenberg Opposition") which are fully incorporated herein by reference.

- Section "I" – BACKGROUND AND HISTORY OF MDL LITIGATION

2

- Section "IV.B" – THE PROPER DAUBERT STANDARDS

To further the Court's understanding of the history of this litigation, the scientific data that underlies the expert testimony in this case, and the separate and distinct areas of each expert's proffered testimony, Plaintiffs would respectfully encourage the Court to begin its review of Plaintiffs' Daubert briefing with Plaintiffs' Eisenberg Opposition.

## III.

## EVIDENCE

In support of this Opposition to Bayer's motion to exclude the expert testimony of Dr. Parisian, Plaintiffs specifically rely upon the following documents which are set forth in "Plaintiffs' Compendium of Exhibits in Support of Plaintiffs' Opposition to Exclude the Testimony of Expert Suzanne Parisian and Brief in Support Thereof " (hereinafter "Compendium of Exhibits") filed herewith:

    A.    Expert Report of Suzanne Parisian, M.D. (hereinafter "Parisian Report) (Exhibit "A")

    B.    Excerpts from the Deposition of Suzanne Parisian, M.D. (hereinafter "Parisian Depo.") (Exhibit "B").

    C.    Excerpts from the deposition of J. Paul Waymack, M.D. (hereinafter "Waymack Depo.") (Exhibit "C").

In addition, Plaintiffs rely upon all pleadings, discovery and evidence filed in this case and any admissions made by Bayer therein.

## IV.

## ARGUMENT AND AUTHORITIES

**A.   VIRTUALLY *EVERY* COURT TO BE PROFFERED EXPERT OPINIONS BY DR. PARISIAN HAS ADMITTED HER TESTIMONY ON REGULATORY AND LABELING MATTERS.**

**1.    Courts Have Consistently Rejected Attempts by Pharmaceutical Companies and Medical Device Companies to Disqualify Dr. Parisian as a Regulatory and Labeling Expert.**

Courts across the country have consistently rejected attempts to disqualify Dr. Parisian as a regulatory expert under Daubert. *In re Fosamax Products Liab. Litig.,* 645 F.Supp.2d 164 (S.D.N.Y. 2009) ("Dr. Parisian is qualified based upon her experience as a medical officer at the FDA to offer testimony about regulatory requirements relating to the development, testing, marketing, and surveillance of prescription drugs"); *Jacob v. Caesars Entm't. Inc.,* 2007 WL 594714, *4 (E.D. La. Feb. 21, 2007), *aff'd*, 280 Fed.Appx. 424 (5th Cir. 2008); *Lillebo v. Zimmer, Inc.,* 2005 WL 388598, *6 (D. Minn. 2005); *Linsley v. C.R. Bard, Inc.,* 2000 WL 343358, *4-5 (E.D.La. Mar. 30, 2000); *In re: Human Tissue Prods. Liab. Litig.,* 582 F.Supp.2d 644 (D.N.J. 2008); *Reece v. AstraZeneca Pharms., LP,* 500 F.Supp.2d 736, 744-46 (S.D. Ohio 2007); *In re Prempro Prods. Liab. Litig.,* 554 F.Supp.2d 871, 876 (E.D. Ark. 2008), *aff'd in part and rev'd in part,* 586 F.3d 547 (8th Cir. 2009); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.,* 2007 WL 1964337, *7-8 (D.Minn. June 29, 2007); *Stevens v. Novartis Pharma. Corp.,* Order on Motion to Exclude Testimony of Plaintiff's Expert Dr. Suzanne Parisian, Cause No. DV-08-100 (Montana 4th Jud. Dist. Missoula County, Oct. 14, 2009). These consistent court rulings, admitting the same types of regulatory opinions that Dr. Parisian intends to offer here, should guide the Court's ruling in this case.[2] [Parisian Depo. 108:21-24].

---

[2] Bayer implies that Dr. Parisian's testimony is somehow deficient because she has provided expertise in connection with roughly thirty trials and numerous depositions. The fact that Dr. Parisian has been consistently admitted to

**2.     The Cases Relied Upon By Bayer Do Not Support Exclusion of the Regulatory Opinions Dr. Parisian Proffers in This Case.**

Throughout its motion, Bayer repeatedly cites to a group of opinions that it claims support the exclusion of Dr. Parisian's testimony.  [Bayer's Daubert Motion p. 3, 6-7, 10-11, 12, 18, 19-20].  What Bayer neglects to tell the Court is that, in eight out of the nine cases it cites (as well as in others it does not cite), Dr. Parisian's testimony _was admitted_ on the very same regulatory issues for which Dr. Parisian is offered as an expert in this case,

A prime example of the disparity between what cases are cited for by Bayer and what they hold in relation to the present case is *In re: Human Tissue Prods. Liab. Litig.,* 582 F.Supp.2d 644 (D.N.J. 2008).  There, Dr. Parisian was proffered as an expert to give testimony on issues of medical causation including whether HIV and other viruses can be transmitted through frozen bone and tissue and the incubation period for such viruses.  The trial court limited Dr. Parisian's testimony on those issues of medical causation.  Bayer fails to mention, however, that in the very same case, Dr. Parisian was also proffered to testify on regulatory issues.  The court admitted Dr. Parisian's regulatory opinions pursuant to Rule 702.  *Id.* at 671, 684, 692.  In the present case, Dr. Parisian will not give opinion testimony on issues of medical causation, thus the only lesson to taken from *Human Tissue Products* and applied to this case is that Dr. Parisian's testimony is admissible.  *Accord Linsley v. C.R. Bard, Inc.,* 2000 WL 343358, *4-5 (E.D.La. Mar. 30, 2000) (excluding only testimony regarding medical causation and labeling under non-FDA state law standards but admitting Dr. Parisian's testimony as to whether product labeling is acceptable under FDA standards).

---

provide expert testimony in court does not, however, indicate that her qualifications are somehow unreliable.  To the contrary, the demand for Dr. Parisian's services is a reflection of the quality of her analysis and of the fact that FDA regulatory expertise is commonly deployed in a litigation setting. *Daubert v. Merrell Dow. Pharms., Inc.* 43 F.3d 1311, 1317 n. 5 (9th Cir. 1995), *cert denied,* 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (U.S. 1995) (observing that some disciplines "have the courtroom as a principal theatre of operations," and as to these disciplines, "the fact that the expert has developed an expertise principally for purposes of litigation will obviously not be a substantial consideration").

Bayer also relies upon *Reece v. AstraZeneca Pharms., LP*, 500 F.Supp.2d 736 (S.D. Ohio 2007). *Reece* is a pharmaceutical (not medical device) case. The court in *Reece* admitted Dr. Parisian's opinions on FDA processes and regulations and on the drug manufacturer's responsibility within the regulatory system. *Id.* at 743. Indeed, the *Reece* court's description of the testimony permitted from Dr. Parisian encompasses the very areas upon which she offers opinions in the present case: "The Court finds that Dr. Parisian's testimony is admissible insofar as she seeks to testify concerning the matters which plaintiff has identified as the subject of her testimony, *i.e.* regulations governing the approval, labeling, advertising and marketing of pharmaceutical and medical products; the processes by which the FDA determines the efficacy and safety of new drugs and new drug applications; the issues the FDA considers in the development of product labeling and marketing information; and a manufacturer's responsibility within this system." *Id.* at 744. Dr. Parisian's testimony was admitted on essentially the same regulatory issues in both *In re Guidant Corp. Implantable defibrillators Prods. Liab. Litig.,* 2007 WL 1964337, *708 (D. Minn. June 29, 2007) and *In re Fosamax Products Liab. Litig.,* 645 F.Supp.2d 164, 191, 192 (S.D.N.Y. 2009).

Perhaps the case most frequently relied upon by Bayer is *In re Prempro Prods. Liab. Litig.*, 586 F.3d 547 (8th Cir. 2009). [Bayer's Daubert Motion pp. 3, 7, 10, 11, 18, 19, 20, 22]. That case involved a bifurcated trial to a jury of compensatory and punitive damage claims arising from the plaintiff's use of the drug Prempro. Bayer wholly fails to mention that during the compensatory damage phase, Dr. Parisian was permitted to testify on regulatory matters (the only issue on which she seeks to offer opinions in this case). *In re Prempro Prods. Liab. Litig.,* 554 F.Supp.2d 871, 876 (E.D. Ark. 2008). During that first phase of the trial, the court held that Dr. Parisian's testimony "has met the Daubert threshold." *Id.* at 876. Specifically, the Court held that "Dr. Parisian can give her opinions on the reasonableness of a pharmaceutical company's

6

actions based on her observations over the years and her understanding of the regulations." *Id.*

It was only Dr. Parisian's testimony in connection with the punitive damage phase of the *Prempro* trial that was limited. Moreover, even in the punitive damage phase, it should be noted that Dr. Parisian was not precluded from offering her expert testimony based on any deficiency of qualifications or sustained Daubert challenge. Rather, Dr. Parisian's testimony was excluded by post-trial ruling because it was not sufficiently linked to the FDA regulations. *In re Prempro,* 586 F.3d at 570. It is significant that Dr. Parisian was not excluded for lack of qualifications or methodology but for failure to connect her opinions to FDA regulations; had plaintiffs' counsel in the *Prempro* case asked different questions of Dr. Parisian it is likely her opinions would not have been stricken. This Court can hardly strike Dr. Parisian's testimony *at the outset* on the basis that Plaintiffs' Counsel may fail to ask the correct questions of her at trial. Yet, the *Prempro* case is not precedent for excluding Dr. Parisian's testimony on any other basis.

The sole, isolated case known to Plaintiffs, or cited by Bayer, in which Dr. Parisian's regulatory testimony was prohibited is *Oakberg v. Zimmer Inc*., 2004 WL 5503779 (D. Mont. 2004). That the *Oakberg* opinion is an outlier is demonstrated by an order issued just eleven weeks after the *Oakberg* order. In a case involving the same defendant, the same medical device, the same plaintiff and defense attorneys, and the same federal regulatory expert (Dr. Parisian) the District Court for Minnesota admitted Dr. Parisian's regulatory testimony. *Lillebo v. Zimmer*, Inc. 2005 WL 388598, *6 (D. Minn. 2005). In direct contrast to the *Oakberg* decision, the court in *Lillebo* held that Dr. Parisian was "permitted to testify to the general nature of the approval and regulatory process, the FDA's general expectations with respect to testing

7

and marketing of new products, Zimmer's actions in that respect, and Parisian's opinions as to whether those actions were reasonable or appropriate."[3] *Id.* at *5.

### 3.   Dr. Parisian Has Been Admitted in Prior Cases to Offer Expert Opinions in Each of the Areas Where She Offers Opinions in This Case.

Dr. Parisian's Report sets forth twelve opinions in four general areas.  [Parisian Report p. 10-14].  In connection with each of her opinions, Dr. Parisian then sets forth a detailed description of the factual bases for the opinion.  [Parisian Report p. 25-250].  Bayer makes an assortment of arguments for excluding Dr. Parisian's testimony.   Yet, as the following chart summarizes, Dr. Parisian has been deemed qualified in previous cases to offer expert testimony in each of the areas where she offers opinions in this case:

| | |
|---|---|
| Area of Testimony No. 1 – The general role of the FDA and the duties and obligations of all prescription drug manufacturers. | "Dr. Parisian is allowed to testify as to the general nature of the approval and regulatory process." *In re Guidant Corp.*, 2007 WL 1964337 at *7-8.<br><br>"Dr. Parisian is allowed to testify as to the general nature of the approval and regulatory process. . . " *Lillebo*, 2004 WL 388589 at *6. |
| Area of Testimony No. 2 – Bayer's clinical testing in relation to the FDA's approval of Trasylol | "Dr. Parisian is allowed to testify as to . . . the FDA's general expectations with respect to testing and marketing of new products [and the defendant's] actions in that respect." *In re Guidant Corp.*, 2007 WL 1964337 at *7-8.<br><br>"Dr. Parisian is allowed to testify as to . . . the FDA's general expectations with respect to testing and marketing of new products [and the defendant's] actions in that respect." *Lillebo*, 2004 WL 388589 at *6. |
| Area of Testimony No. 3 – Bayer's dealings with the FDA regarding timely reporting and investigation of risks. | "Dr. Parisian is allowed to testify as to . . her opinion as to whether [the defendant's] actions were reasonable and appropriate." *In re Guidant Corp.*, 2007 WL 1964337 at *7-8.<br><br>"To the extent [the defendant] seeks to preclude Dr. Parisian from testifying about general FDA regulatory requirements and procedures or offering an opinion as to [the defendant's] |

---

[3] The remaining opinion cited by Bayer either did not involve, or did not address, regulatory opinions by Dr. Parisian.  *Jacob v. Caesars Entm't, Inc.,* 2007 WL 594714, *4 (E.D. La.  Feb. 21, 2007) (not addressing regulatory opinions by Dr. Parisian).  Hence, it supplies no precedent for the exclusion of Dr. Parisian's FDA-related opinions in this case.

| | compliance therewith, the motion is denied." *In re Fosamax,* 645 F.Supp.2d at 191. |
|---|---|
| Area of Testimony No. 4 – Bayer's communication of Trasylol's risks to healthcare providers | Noting Dr. Parisian is offering testimony on "Merck's communication of ONJ risks to health care professionals" and subsequently admitting her testimony on Merck's compliance with FDA requirements and procedures. *In re Fosamax,* 645 F.Supp.2d at 190, 191. |

In short, Dr. Parisian has been consistently admitted to testify on all of the subjects upon which she intends to offer expert testimony in this case. The overwhelming weight of opinions considering the admissibility of Dr. Parisian's regulatory testimony has ruled that it is admissible. This Court should do the same.

**B.    DR. PARISIAN IS COMPETENT AND QUALIFIED TO OFFER THE REGUALTORY OPINIONS SET FORTH IN HER EXPERT REPORT. [In Response to Bayer's Argument I. p. 4-9]**

**1.    Dr. Parisian Is Qualified To Offer Opinions Regarding The FDA's Regulation Of Pharmaceutical Products Such As Trasylol. [In Response to Bayer's Argument I.C. p. 8-9].**

Bayer argues that Dr. Parisian's is unqualified to discuss FDA regulations for Trasylol because her regulatory experience related primarily to medical devices.[4] [Bayer's Daubert Motion p. 8]. Bayer's argument ignores (1) Dr. Parisian's significant experience and knowledge regarding FDA regulations and procedures as they apply to pharmaceutical products, and (2) the fact that no court known to Plaintiffs, or cited by Bayer, has ever found Dr. Parisian unqualified to offer an opinion on FDA regulations in a pharmaceutical case. Upon review of her abundant qualifications, this Court should likewise find that Dr. Parisian is qualified by knowledge, skill,

---

[4] Although Bayer criticizes Dr. Parisian for not being a practicing physician [Bayer's Daubert Motion, p.1], Bayer's own regulatory expert, Dr. J. Paul Waymack, has not practiced medicine for thirteen years. [Waymack Depo. 13:7-8]. Likewise, Bayer complains that Dr. Parisian has not served as an expert for a pharmaceutical company [Bayer's Daubert Motion p. 2], yet Bayer has itself hired a regulatory expert that has never testified in favor of a plaintiff and has never testified that a pharmaceutical company failed to comply with a significant FDA regulation. [Waymack Depo. 13:25-14:3; 20:22-21:9]. Bayer does not actively press these characteristics, shared by *both* parties' proffered regulatory experts, as a basis for excluding Dr. Parisian's testimony.

experience and training to opine on the FDA's regulations and procedures with regard to pharmaceutical products.

Dr. Parisian has both experience with, and knowledge of, FDA regulations applying to prescription drugs. Bayer fixates on Dr. Parisian's assignment to the FDA's medical device division, yet, during her tenure at the FDA, Dr. Parisian worked on numerous projects involving devices, biologics, *and* drugs. [Parisian Report ¶ 4]. For example, Dr. Parisian was involved in reviewing investigational new drug applications. [Parisian Depo. 53:11-16]. As the sole medical officer tasked specifically with drug safety concerns regarding ACE inhibitors, she reviewed both the drug and device adverse event reports and medical literature. [Parisian Report ¶ 4]. In connection therewith, Dr. Parisian ultimately made a clinical application, clinical trial, and labeling evaluation. [Parisian Report ¶ 4]. As a medical officer, Dr. Parisian also supplied regulatory support and oversight to the FDA's Office of Compliance and the Office of Device Evaluation with responsibilities for FDA compliance as it pertains to both drugs and devices.[5] Dr. Parisian participated in the review of proposed clinical trials, pre-marketing applications, and review of animal toxicology and biocompatibility data. In addition, Dr. Parisian trained FDA reviewers in the design and evaluation of clinical data in investigational and pre-marketing applications. [Parisian Report ¶ 6]. She presided over health risk assessments. She was responsible for reviewing adverse event reports, participated in mandatory recalls, served as the FDA's own expert witness at hearings, and received numerous citations and honors for her service. It is understandable that Dr. Parisian would be assigned drug-related tasks by the FDA

---

[5] Bayer's attempt to discount Dr. Parisian's regulatory experience divorces several statements from their full context. For example, Bayer states that Dr. Parisian has "never had responsibility for labeling changes for drugs." However, Dr. Parisian clearly testified that she wrote and approved a warning which was added to change the label of ACE inhibitors. [Parisian Depo. 54:18-23]. Likewise, while Bayer is technically correct that Dr. Parisian never sat in an advisory committee meeting *for* a drug product; Bayer fails to include Dr. Parisian's elaboration that she has sat in *drug* advisory committee meetings in connection with a device product. [Parisian Depo. 57:16-21]. Had Bayer included the full statement, this Court could have seen that Dr. Parisian's has had experience with both the drug and device advisory committees.

because the regulations, procedures and compliance issues for medical devices and drugs are very similar and are both governed by the FDCA.  21 U.S.C. 301, et. seq.

On the basis of these and other credentials set out in Dr. Parisian's Report, courts have routinely concluded that Dr. Parisian is qualified to provide regulatory and labeling opinions.  In many instances, this holding was made in connection with a pharmaceutical drug product. *In re Prempro,* 554 F.Supp.2d at 876 (holding that Dr. Parisian had "met the Daubert threshold" to provide regulatory testimony regarding hormone replacement drug); *Reece,* 500 F.Supp.2d at 744-46 (permitting Dr. Parisian's opinions on FDA processes and regulations in connection with cholesterol drug).  The Southern District of New York recently considered, and rejected, the exact same argument that Dr. Parisian's expertise should be narrowly interpreted, saying:

> The Court finds that Dr. Parisian is qualified based upon her experience as a medical officer at the FDA to offer testimony about regulatory requirements relating to the development, testing, marketing, and surveillance *of prescription drugs***.**  As noted above, qualification is viewed liberally and may be based on a broad range of skills, knowledge, training, and experience. . . ***Dr. Parisian's time at the FDA, though primarily spent on medical devices, included sufficient experience with various aspects of the regulation of pharmaceutical drugs.***  Moreover, in her report and at the Daubert hearing, she demonstrated specialized knowledge about the standards applicable to drug manufacturers.

*In re Fosamax,* 645 F.Supp.2d at 190 (emphasis added)(internal citations omitted);  *Stevens v. Novartis Pharma. Corp.,* Order on Motion to Exclude Testimony of Plaintiff's Expert Dr. Suzanne Parisian, Cause No. DV-08-100 (Montana 4th Jud. Dist. Missoula County Oct. 14, 2009) (finding Dr. Parisian qualified to testify about regulatory requirements relating to prescription drug Zometa).

Bayer's regulatory expert, Dr. Waymack, has testified that there are "great similarities" between the FDA's drug and device regulations and that he believes that experience in one area would afford a person the ability to provide "valuable insights" in the other area. [Waymack

Depo. 7:21-25; 8:10-12]. Thus, the testimony of Bayer's own expert confirms that Dr. Parisian's extensive knowledge, training, and experience with the FDA is not specific to any one drug or device and qualifies her to offer expert opinions on either drug or device matters.

> **2.     Bayer Improperly Mischaracterizes Dr. Parisian's Testimony By Suggesting That She Is Being Offered as an Expert on Causation or Foreign Regulatory Matters. [In Response to Bayer's Argument I.A. p. 5, and Argument I.B. p. 6-8].**

Bayer attempts to exclude Dr. Parisian's testimony by arguing that she is unqualified to testify on subjects for which Plaintiffs are not offering her as an expert. To be clear, Dr. Parisian is not being offered as a causation expert or a foreign regulatory expert. To the extent that Dr. Parisian's opinions touch briefly on either of these issues it is only for the purpose of illuminating what Bayer should have been aware of with regard to Trasylol or what it should have been disclosing to the FDA under FDA requirements and industry standards.

Dr. Parisian is not a causation expert. The statement to which Bayer objects as a causation opinion is not that "Trasylol *leads to* renal failure" as Bayer characterizes it. It is that "Bayer *should . . . have been aware* that Trasylol carried an increased risk . . . of renal failure" based on the conclusions of the FDA's medical officer at the time of NDA approval. [*Compare* Bayer's Daubert Motion p. 6; Parisian Report ¶ 24]. The purpose of the statement is not to opine whether Trasylol causes renal failure. The purpose of the statement is to let the jury know that part of the FDA process includes identifying issues which merit further monitoring or investigation and that Bayer would have been aware of the need to monitor renal issues because they were expressed as a safety concern by the FDA's medical officer at the time of NDA approval. [Parisian Report ¶ 20, 22, 24]. Dr. Parisian does not need experience in nephrology, hematology or cardiology to examine and interpret FDA filings to determine what information was available at various points in the regulatory process. Her abundant regulatory experience is more than adequate to equip her to make that determination.

Likewise, Dr. Parisian has made clear that she intends to discuss medical literature or studies only "in the context of what a responsible manufacturer would have been able to have found or knew when they're in communications with the FDA and with other physicians." [Parisian Depo. 30:8-25]. She acknowledges that an epidemiologist would be better qualified to discuss the statistical significance of a study or whether the study was adequately powered. However, Dr. Parisian does claim expertise within the context of discussing the role of the studies in the FDA process and in a responsible manufacturer's pharmacovigilence. [Parisian Depo. 33:6-24]. Hence, studies are discussed only as they relate to a manufacturer's duty to test, study, monitor, and communicate with the FDA. [Parisian Depo. 30:20-25].

Following the same approach as its causation argument, Bayer also attempts to mischaracterize Dr. Parisian as an unqualified foreign regulatory expert. Dr. Parisian is no such thing. Dr. Parisian is an expert on FDA regulations who, in the process of comprehensively reviewing all of the information available to her, happened to consider information set forth in a foreign inspection report and on a foreign drug label (together with other information) when coming to her opinion that Bayer had means of awareness of risks associated with Trasylol and problems with its safety signal program. She is not planning to testify as to the standards for foreign inspections or the process for European label changes – as she admits to only a familiarity (not expertise) in those areas. But it is not necessary that Dr. Parisian be an expert on the regulatory requirements of the United Kingdom or the EMEA in order for her to reference events which made problems known to Bayer that were relevant to the drug company's interactions with the FDA. That is all Dr. Parisian purports to do in this case.

**C.    DR. PARISIAN'S OPINIONS ARE WITHIN THE SCOPE OF PROPER AND PERMISSIBLE EXPERT TESTIMONY WHICH SHOULD BE ADMITTED TO AID THE JURY IN THIS CASE. [In Response to Bayer's Argument II. p. 9-20].**

As previously described, Dr. Parisian's Report sets forth twelve opinions in four general areas. [Parisian Report p. 10-14]. In connection with each "area," Dr. Parisian then sets forth a detailed description of the factual bases for her opinions in that area. [Parisian Report p. 25-250]. Ignoring that Dr. Parisian's opinions and factual supports are linked, Bayer tries to categorize the former as improper legal conclusions and the latter as a prohibited factual narrative. Neither argument has merit for the reasons set forth herein.

**1.    Dr. Parisian's Opinions Are Not Merely Factual Narrative. [In Response to Bayer's Argument II.A. p. 10-11].**

Expert testimony excluded as a narrative generally falls into one of two categories. Either it is excluded as testimony presented to the jury solely for the purpose of constructing a factual narrative out of record evidence. *E.g. Highland v. Capital Management, L.P. v. Schneider, 379* F.Supp.2d 461, 469 (S.D.N.Y. 2005). Or it is factual testimony that a lay juror is equally capable of constructing. *E.g. In re Rezulin,* 309 F.Supp.2d 531, 551 (S.D.N.Y. 2004) (excluding testimony of expert specifically proposed to testify to a factual narrative reciting selected regulatory events). Neither of these categories describes the expert testimony of Dr. Parisian.

The factual materials considered by Dr. Parisian, while set forth in a narrative form in her Report, are not intended to be the subject of Dr. Parisian's testimony in and of themselves. Rather, the documents, evidence and factual matters referenced are relevant to explaining the regulatory context in which they were created, illustrating the considerations that are relevant at different stages of the regulatory process, and allowing Dr. Parisian to apply her expertise to draw inferences that would not otherwise be apparent. The use of factual materials in this way does not to violate the rule against factual narratives. *In re Fosamax,* 645 F.Supp.2d at 192.

Bayer cites the *Prempro* MDL court as excluding Dr. Parisian's testimony as a narrative. Yet, the distinguishable facts of the *Prempro* opinion do not support the exclusion of Dr. Parisian's testimony here. As previously stated, Dr. Parisian's testimony was only excluded by *post-trial* ruling in *Prempro* because it was not sufficiently linked to the FDA regulations. *In re Prempro,* 586 F.3d at 570. Had plaintiffs' counsel in the *Prempro* case asked different questions of Dr. Parisian it is likely her opinions would not have been stricken. Throughout her deposition in this case, Dr. Parisian easily connected her opinions to specific provisions of the Federal Drug and Consumer Act, applicable sections of the Code of Federal Regulations, industry practice, or her own experience. There is no reason to believe that Plaintiffs' counsel will be less motivated or competent to elicit the regulatory basis for Dr. Parisian's opinions when it comes to the trial.

## 2. Dr. Parisian's Opinions Are Not Merely Legal Conclusions. [In Response to Bayer's Argument II.B. p. 12-14].

Bayer's argument that Dr. Parisian's opinions as to whether Bayer violated FDA guidelines are improper legal conclusions miscomprehends both the nature of Dr. Parisian's testimony and the law as it applies to expert testimony on ultimate issues. Dr. Parisian is not offering a legal conclusion. Dr. Parisian is merely informing the jury of the FDA regulations that form the pharmaceutical industry's standard of care and applying her expertise to offer an opinion on where and whether Bayer complied with those standards. Numerous courts have permitted testimony from Dr. Parisian on precisely those issues.

### a. Dr. Parisian's challenged opinions are admissible as they are based on her analysis of facts.

The Federal Rules of Evidence make abundantly clear that an expert may offer testimony embracing an ultimate issue of fact that the jury will decide. FED. R. EVID. 704; *In re Fosamax*, 645 F.Supp.2d at 191. Most courts have interpreted the federal rule as meaning that an expert can render an opinion that is based on his analysis of facts but that an expert cannot offer an

opinion that is based solely on his interpretation of the law. The expert may even give an opinion on the ultimate issue in the case so long as the opinion is based upon the expert's analysis of the facts and not based on the expert's interpretation of the law. [6]

An expert's testimony goes too far only when it tells the jury what opinion is to be reached on the ultimate legal conclusion, for example, whether the defendant was negligent. *Berry v. City of Detroit,* 25 F.3d 1342, 1354 (6th Cir.1994). The distinction may be subtle; but it is significant. Experts may reasonably disagree about whether or not a party breached the standard of care (a fact), but there is only one answer to whether a defendant is negligent (the ultimate legal conclusion).[7] Thus, the question with regard to admissibility under Rule 704 is whether the expert's opinions assist the jury in understanding the evidence or determining a *factual* issue. The answer here is that they do.

The testimony which Bayer characterizes as impermissible legal conclusions consists of Dr. Parisian's opinions that Bayer failed to comply with FDA standards regarding: (1) testing, monitoring, and warning the FDA about Traylol risks, (2) off-label promotion of Trasylol, (3) adequate disclosure of safety information regarding Trasylol to the FDA, and (4) truthful and accurate marketing of Trasylol. [Bayer's Daubert Motion p. 12]. Dr. Parisian's testimony consists of fact-based opinions comparing Bayer's conduct to a specialized standard of care. Such fact-based conclusions are distinct from conclusory legal opinions and are proper under Rules 702 and 704. *See United States v. Barile,* 286 F.3d 749, 761 (4th Cir. 2002) (To be an

---

[6] While the drafters of the Federal Rules did not define an "ultimate issue," they did provide the following example: "Did T have the capacity to make a will?" would be excluded. While the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

[7] The cases Bayer cites as support for excluding Dr. Parisian's opinions as a legal conclusion, actually demonstrate by their contrasting facts why Dr. Parisian's opinions should be admitted. Two of Bayer's cited cases involve expert testimony on the meaning of a contract. That this testimony would be excluded as a legal conclusion is hardly shocking considering the broadly accepted principle that "the interpretation of a written contract is generally a matter of law." *Chick-Fil-A, Inc. v. CFT Develop.,* LLC, 2009 WL 1754058, *3 (M.D. Fla. June 18, 2009) (excluding expert testimony that terms in contract are ambiguous); *Montgomery v. Aetna Cas. & Surety Co.,* 898 F.2d 1537, 1541 (11th Cir. 1990) (excluding expert testimony that insurance contract obligated insurer to pay for tax counsel hired by its insured).

improper legal conclusion, the opinion must regurgitate the law with an opinion in one side's favor.  In contrast, an expert's factual determinations "give the jury insight into the bases of the expert's conclusion.").[8]

> ### b.    Where specialized knowledge is necessary to understand the defendant's obligations, experts are permitted to opine as to whether the defendant's conduct violated the standard of care.

Numerous cases hold that an expert may opine as to whether the defendants' violated the standard of care in fields where specialized knowledge is necessary to understand the defendant's particular obligations.[9]  *E.g. Peck v. Horrocks Engineers, Inc*., 106 F.3d 949 (10th Cir. 1997) (expert testimony is needed to establish a specialized standard of care and to answer the question of whether that standard has been breached);  *Grossman v. Barke,* 868 A.2d 561, 566 (Pa.Super.Ct. 2005) (when a claim "encompasses matters not within the ordinary knowledge and experience of laypersons ... [a] plaintiff must present expert testimony to establish the applicable standard of care [and] the deviation from that standard. . .");  *Holbrook v. Woodham,* 2007 WL 2071618 (W.D.Pa., July 13, 2007) (whether a defendant failed to comply with applicable safety regulations and industry codes are questions that will necessitate expert testimony because lay jurors do not commonly understand such professional obligations).

Understanding the FDA regulations that set the standards for the pharmaceutical industry, and determining the facts which are significant in identifying whether that standard was met, requires specialized knowledge and experience.  As was recently noted in the Fosamax MDL:

---

[8] In *Barile,* the district court had excluded an expert's proposed testimony as to whether the defendants' regulatory submissions in question were reasonable or correct or in compliance with the law.  *Barile,*  286 F.3d. at 757.  The Court of appeals reversed, permitting the expert to testify.  The Fourth Circuit reasoned that "[o]pinion testimony on whether the data submitted in a 510(k) submission was reasonable would not merely state a legal conclusion and therefore is not excludable on the ground that it invades the province of the jury. *Id.*

[9] Indeed, a "witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."  *Peckham v. Con'l Cas. Co.,* 895 F.2d 830, 837 (1st Cir. 1990); *First Nat'l State Bank of N.J. v. Reliance Elec. Co*., 668 F.2d 725, 731 (3rd Cir. 1981).

> A lay jury cannot be expected to understand the complex
> regulatory framework that informs the standard of care in the
> pharmaceutical industry. Dr. Parisian's assessment of the
> reasonableness of Merck's conduct in light of her experience and
> her understanding of FDA regulations will be helpful to the jury.

*In re Fosamax*, 645 F.Supp.2d at 191. Without Dr. Parisian's testimony, the jury would be left to determine whether Bayer acted as a reasonable pharmaceutical company without any guidance as to the governing regulations and industry standards or any assistance in determining which medical events or information was pertinent to that determination. For this reason, Dr. Parisian has routinely been permitted to offer opinions on whether a defendant's conduct violated the FDA. *E.g. Lillebo,* 2004 WL 388589 at *6 (permitting testimony regarding whether defendant's actions were reasonable in light of the FDA's device approval process and expectations); *In re Guidant,* 2007 WL 1964337 at*7-8 ("Dr. Parisian is allowed to testify as to. . . compliance with FDA regulations and guidelines."); *Reece,* 500 F.Supp.2d at 744-46 (permitting testimony regarding manufacturer's responsibility under FDA's drug and device approval system).

The fact that FDA regulations and procedures are not a matter of common knowledge sets this case apart from the cases Bayer cites as precedent for excluding Dr. Parisian's testimony as a legal conclusion. That is, the cases cited by Bayer involved testimony in areas where jurors were equally competent to determine if a violation had occurred. *E.g. McGowan v. Cooper Indus. Inc.,* 863 F.2d 1266, 1273 (6th Cir. 1988) (excluding testimony in personal injury action because it addressed matters "equally within the competence of jurors to understand and decide"); *In re Diet Drugs Prods. Liab. Litig.,* 2000 WL 876900 * 87 (E.D.Pa. June 20, 2000) (excluding testimony from medical ethics expert that admitted standards could be applied by anyone who "reads and understands the English language").[10] Such is not the case here.

---

[10] While Bayer cites the *Rezulin* case for rejecting the argument that one particular expert's testimony established a standard of conduct, it neglects to provide the context for that holding. The *Rezulin* holding at issue did not relate to the testimony FDA regulatory expert. *In re Rezulin,* 309 F.Supp.2d 531, 557-58 (S.D.N.Y. 2004) Quite the contrary,

Finally, Dr. Parisian's testimony does not usurp the role of the trial judge in instructing the jury as to the applicable law. As was pointed out by the *Fosamax* court in admitting Dr. Parisian's testimony, the ultimate legal outcome is not governed by the law contained in the C.F.R.s. *In re Fosamax*, 645 F.Supp.2d at 191, fn. 16. That is, even if the jury agrees with Dr. Parisian in finding a FDA violation, the cases in this MDL are not governed by federal regulations but by state law theories of negligence and strict liability. *Id*. Thus, Dr. Parisian's testimony is not telling the jury how to rule on the ultimate legal issues in this case.

### c.  Dr. Parisian's testimony is not preempted. [In Response to Bayer's Argument II.B.2 p. 14-15].

Bayer argues that plaintiffs cannot proffer testimony that Bayer was obligated to share safety information with the FDA because the introduction of such evidence is preempted by the Supreme Court's decision in *Buckman v. Plaintiffs' Legal Comm.,* 531 U.S. 341, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001). Bayer vastly overstates the limited holding of *Buckman,* which applies only to fraud-on-the FDA claims and imposes no limitations on Plaintiffs' personal injury claims. *Wyeth v. Levine,* 129 S.Ct. 1187, 173 L.Ed.2d 51, 77 USLW 4165 (2009) (holding state law failure to warn claims against manufacturer of antihistamine were not preempted by federal law).

*Buckman* is distinguishable from the present case because it was solely a "fraud-on-the-FDA" case.[11]  Plaintiffs in this case do not complain of fraud on the FDA.  Plaintiffs in this case are asserting state law-based tort claims. *Buckman* itself distinguishes cases bases on traditional

---

the issue was whether the expert's "basic rights of patients" was impermissible testimony because it imposed obligations not embodied in FDA regulations.  *Id*. at 557.  Thus, the Rezulin case neither contradicts the view that FDA regulations are an area of specialized knowledge nor that an expert may opine as to violations of obligations in specialized fields.

[11] The preemption analysis is also impacted by the fact that this case is a pharmaceutical case whereas *Buckman* was a medical device case. Preemption defenses have historically been more successful in medical device cases because the MDA contains a specific preemption provision. 21 U.S.C. §360k(a). No similar preemption provision exists for prescription drugs under the FDCA.

tort law principles as being outside of its holding. *Buckman,* 531 U.S. at 351-52, s*ee also Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (holding that state law tort claims are not preempted); *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 483, 116 S.Ct. 2240 (1996) (permitting personal injury claims even though they were proven, in part, through evidence of regulatory requirements and processes). In 2009, the Supreme Court confirmed that state law-based failure to warn claims (in the context of a claim against a drug manufacturer) remain viable in the post-*Buckman* era. *Wyeth,* 129 S.Ct. at 1204. Thus, Supreme Court precedent establishes that state law causes of action are not preempted and that plaintiffs may use evidence of the regulatory process – so long as they do not bring an independent claim for relief based on fraud-on-the-FDA.

Post-*Buckman,* courts considering preemption claims in pharmaceutical cases have agreed that traditional state law causes of action are not preempted. E.g. *Globetti v. Sandoz Pharms. Corp.,* 2001 WL 419160, *1 (N.D. Ala. Mar. 5, 2001) (holding that *Buckman* does not preclude common law claims concerning the drug Parlodel); *Dawson ex rel. Thorpson v. Ciba-Geigy Corp.,* 145 F.Supp.2d 565 (D.N.J. 2001) (rejecting pharmaceutical defendant's effort "to recharacterize Plaintiffs' [state law] misrepresentation claims as 'fraud on the FDA' claims" in reliance on *Buckman); Brasher v. Sandoz Pharms. Corp*., 160 F. Supp. 2d 1291 (N.D. Ala. 2001) (*Buckman* does not preempt common law claims); *Caraker v. Sandoz Pharms. Corp*., 172 F.Supp.2d 1018 (S.D. Ill. 2001*); Eve v. Sandoz Pharms. Corp.,* 2002 WL 181972 (S.D. Ind. 2002); *KBryant v. Hoffman-La Roche, Inc*., 585 S.E.2d 723, 725 (Ga. App. 2003) ("we do not construe *Buckman* as holding [state statutory and common law] claims are preempted."). This Court should join with the many courts that have found no basis in *Buckman* to impliedly preempt state-law-based personal injury claims.

### 3.    Dr. Parisian's Passing References to Actions Taken by Foreign Regulatory Bodies Will Not Confuse the Jury. [In Response to Bayer's Argument II.C. p. 15-16].

The rationale for excluding foreign regulatory actions is generally that it will confuse the jury as to the proper standards in a case applying domestic law.  *In re Seroquel Prods. Liab. Litig.*, 601 F.Supp.2d 1313 (M.D.Fla. 2009) (excluding foreign regulatory evidence to avoid jury confusion).  But here Dr. Parisian is not designated as an expert on, and is not offering opinions regarding, foreign regulatory standards. Dr. Parisian is not testifying about what steps are taken in a foreign pharmacovigilance inspection.   She has offered no opinion as to whether changes to Trasylol's label were warranted under the standards of the European Union.   The limited references in Dr. Parisian's report to foreign occurrences are made in the context of setting forth the facts that were considered in arriving at her opinions.  *Daubert* requires no less.   For example, one of Dr. Parisian's opinions in regard to Bayer's dealings with the FDA is that Bayer deviated from its standard operating procedure ("SOP") for Global Drug Safety by ignoring and dismissing certain safety signals.   [Parisian Report p. 12].   Dr. Parisian cites two foreign pharmacovigilance inspection reports as setting forth Bayer's SOP for detecting drug safety risks and as showing Bayer's awareness of pharmacovigilance deficiencies.   Likewise, the fact that Bayer had accepted a change to its European label adding warnings about renal dysfunction in May, 2006 is one piece of evidence Dr. Parisian was permitted to consider in coming to an opinion on whether Bayer provided full and timely disclosure of information to the FDA during the same year.   Again, neither of these references implicate any potential for confusing the jury as they do not turn upon the application of foreign law or the correctness of the foreign action. *E.g. Sherry v. Massey-Ferguson, Inc*. 1997 WL 480893, *2 (W.D. Mich. June 5, 1997) (finding that evidence of foreign evidence regarding tractor design was admissible as it related to

defendant's knowledge or alternative designs even where evidence of foreign legal standards were inadmissible).

    **4.**    **Dr. Parisian's Opinions Regarding Bayer's Conduct are Not Inadmissible Speculation. [In Response to Bayer's Argument II. p. 16-20]**

Dr. Parisian will offer testimony regarding (1) the standard of care of a pharmaceutical company in the position of Bayer with respect to the study, approval and post-market surveillance of Trasylol, and (2) Bayer's breach of that standard of care as reflected in the many documents upon which she bases her opinions.  However, Bayer attempts to distort this testimony, claiming it is really a judgment regarding the knowledge, state of mind and morals of Bayer.  In reality, Dr. Parisian's testimony draws no such conclusions. Dr. Parisian merely explains what information was available for Bayer to know, what information Bayer should have known in order to satisfy its standard of care, and what the company should have done upon learning such information under the regulatory scheme.  Like any expert, Dr. Parisian's role is to inform the jury about matters within her area of expertise.  This role includes telling the jury what a prudent pharmaceutical company would do and the ways in which Bayer's conduct met or fell short of the actions of a prudent company.

    **a.**    **Dr. Parisian does not offer testimony as to Bayer's knowledge or state of mind.**

Bayer has expressed concern that Dr. Parisian not be allowed to speculate about Bayer's intent during the FDA approval process.  It is not Dr. Parisian's plan to testify as to Bayer's intent.  However, that does not preclude Dr. Parisian from drawing reasonable inferences from the documentary evidence as to what information was available to a Bayer at a given time, and what the action (if any) the available information would provoke from a reasonable and prudent pharmaceutical company.

22

For instance, one of the issues in this case is whether Bayer complied with industry standards when promoting Trasylol as preventing systemic inflammatory response syndrome ("SIRS"). In order to decide that question, the jury will have to understand what scientific evidence existed in connection with Trasylol and SIRS. They will have to understand the process and significance of Bayer's rewriting the mechanism of action section of their product insert to describe anti-inflammatory effects. And they will need to understand the difference between an FDA indication for anti-inflammatory use and a description of anti-inflammatory properties in the mechanism of action. That the anti-inflammatory information's different possible uses and locations on the package insert each have different obligations and benefits to a drug company is an issue jurors would not likely know and that Dr. Parisian is qualified to explain. Dr. Parisian should be permitted to supply this sort of information to aid the jury.

### b. Dr. Parisian is not offering personal opinions regarding pharmaceutical companies.

Bayer's complaint that Dr. Parisian's is offering personal opinions would be more fairly couched in the inquiry used by the authorities it cites: are her opinions based on expertise, analysis or regulatory standards? *See In re Prempro,* 554 F.Supp.2d at 883; *In re Fosamax,* 645 F.Supp.2d at 191. It is only where an opinion is devoid of expertise or analysis that it may be excluded as an impermissible personal opinion. Dr. Parisian's opinions are not in that category.

Bayer cites four examples of testimony it characterizes as a "personal opinion." Examining each of these examples, in context, reveals that they are adequately tied to Dr. Parisian's regulatory expertise. First, Bayer cites a statement from Dr. Parisian's Report to the effect that underreporting of renal failure events by physicians heightened Bayer's responsibility to test and monitor Trasylol's safety. [Parisian Report ¶ 233]. That statement was made by Dr. Parisian in the context of a discussion of what factors a pharmaceutical company would be considering when looking at adverse event reports and how they would be interpreting the

information in adverse event reports.  [Parisian Depo. 309:22-310:2; 311:17-24].  Dr. Parisian explains that the possibility of underreporting was something she considered when looking at adverse event reports for the FDA.  Thus, Dr. Parisian's reference to giving consideration to possible underreporting of adverse events is in accordance with her experience and knowledge of FDA procedures and practices.

Also disingenuous is Bayer's objection to a single deposition response by Dr. Parisian in which she states Bayer was not being "reasonable" by marketing Trasylol with a label that could hurt people.   Dr. Parisian's statement was made solely in response to not fewer than three questions from defense counsel as to whether she thought Bayer or other drug companies were "reasonable." [Parisian Depo: 253:10-11; 253:20-21; 254:8-12].  A party ought not be permitted to badger an expert until it solicits the phrasing it desires and then use that phrasing as a basis for excluding the expert's testimony.   Up until that point, Dr. Parisian's use of the word "reasonable" related to what a reasonable manufacturer would do with regard to pursuing additional safety studies in connection with 21 USC 331(a) and 314.80.  [Parisian Depo. 251:5-252:24].  So once again, Dr. Parisian's challenged statement is adequately connected to her regulatory expertise.

Finally, Bayer objects to two statements by Dr. Parisian that it characterizes as personal "bad company" testimony.  While the jury may certainly draw the conclusion that Bayer was behaving badly from Dr. Parisian's testimony, that fact does not warrant the exclusion of her testimony.  One of the subjects Bayer seeks to exclude is Dr. Parisian's reference to an email in which Bayer executives looked to refute the Mangano study.  [Parisian Report ¶ 250].  Dr. Parisian references the report as one of many bases for her opinion that Bayer failed to comply with the disclosure and labeling requirements of 314.70 and 314.80.  [Parisian Depo. 273:24-274:7; 277:7-278:18].   It is Bayer, not Dr. Parisian, that characterizes the communication as a

"strategy" and sets forth a motive "to detract from the safety issues." [*See* Daubert Motion p. 20].[12]  Hence, when stated accurately and considered in context, it is apparent that Dr. Parisian's challenged testimony involves specialized analysis and expertise and is not merely a personal opinion.

**D.    DR. PARISIAN'S TESTIMONY IS METHODOLOGICALLY RELIABLE AND SHOULD BE ADMITTED. [In Response to Bayer's Argument III. p. 20-23].**

A District Court enjoys broad discretion when assessing the methodology of a proffered expert.  Where an expert's work is reasoned, uses the methods of the discipline, and is founded on data – it is admissible.  *Lang v. Kohl's Food Stores, Inc*., 217 F.3d 919, 924 (7th Cir. 2000).

Dr.  Parisian's opinions and methodology are founded on data. Oddly, Bayer has criticized Dr. Parisian both for including too much factual information in the Report of her opinions [Bayer's Daubert Motion p.10], and for considering too little [Bayer Daubert Motion p. 21.  The truth, is that Dr. Parisian considered extensive materials in coming to her opinions, including: the Federal Drug and Consumer Act, applicable sections of the Code of Federal Regulations, FDA Guidances, pertinent scientific literature,  deposition testimony from Bayer employees and other experts, publicly available documents such as Bayer's New Drug Application, patent office records, and records of FDA communications.  These are the tools of the trade of a regulatory expert and are the types of materials relied upon by experts in the field. Indeed, Bayer's regulatory expert, Dr. Waymack, bases his opinions on the same materials.

---

[12] Bayer's final example of personal opinion testimony from Dr. Parisian does not implicate Bayer at all.  That is, Dr. Parisian's testimony regarding the FDA's general procedures in connection with drug label negotiations at the time of approval makes no statement regarding Bayer in particular.  [Parisian Report p. 35-37].  In the context of explaining how the streamlined drug approval process and limited scope of pre-approval testing increases reliance on post-marketing surveillance, Dr. Parisian merely notes that drug side effects have been hidden from the FDA by burying data in large submissions, threatening authors into not reporting adverse events or employing ghost-writers to publish "independent" studies. [Parisian Report ¶ 5e].  Unlike the Fosamax opinion on which Bayer relies for the exclusion of "ghostwriter" evidence, Plaintiff is not offering testimony from Dr. Parisian that Bayer violated the FDA by employing a ghostwriter.

Dr. Parisian's opinions also derive from a sound methodology.  Dr. Parisian testifies that she employed the same methodology that she employed while at the FDA.  If this Court is persuaded by Bayer's argument that Dr. Parisian's methodology is unreliable, it should be prepared to implicate the FDA's drug review methodology as well because Dr. Parisian utilized the same exacting review standards in preparation of her expert testimony that she used while at the FDA.  Indeed, it is her ability to provide that level of meticulous review – based not only on her experience but upon the voluminous materials detailed in her report – that has lead other courts to conclude Dr. Parisian's methodology is sound, reasonable and reliable.[13]  If Bayer believes that the basis of her opinion is inadequate in any particular, its' counsel are free to cross-examine Dr. Parisian as trial.  But the argument that Dr. Parisian's testimony as a whole lacks a valid methodology is simply without merit.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court DENY Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Suzanne Parisian.  Plaintiffs additionally request all other and further relief as the Court deems just and proper.

This the  25th  day of January, 2010.

Respectfully submitted,

/s/
Theodore Babbitt (Florida Bar No. 91146)
Email: tedbabbitt@babbitt-johnson.com
Joseph Osborne (Florida Bar No. 880043)
Email: JAOsborne@babbitt-johnson.com
Babbitt, Johnson, Osborne

---

[13] Bayer cites *Reece v. AstraZeneca Pharmaceuticals, LP* for the proposition that other courts have found Dr. Parisian's testimony lacking in "valid scientific methodology." [Bayer's Daubert Motion p. 20].  The testimony that was excluded in Reece dealt with medical causation (not regulatory) issues where the Court held Dr. Parisian had not demonstrated the methodology used to arrive at her estimates of  plaintiff's statin levels or that CK testing would have prevented injury.  400 F.Supp.2d at 745.  Dr. Parisian is not testifying on causation issues in this case.  The Reece court admitted Dr. Parisian's regulatory testimony without reference to any deficiencies in Dr. Parisian's methodology.  *Id* at 744-45.

& LeClainche, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: (561) 684-2500
Facsimile:  (561) 684-6308

***Liaison Counsel for Plaintiffs and Plaintiffs'
Steering Committee***

**CERTIFICATE OF SERVICE**

I hereby certify that on January  25  , 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel or records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/

Theodore Babbitt
Florida Bar No. 0091146