**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

**IN RE TRASYLOL PRODUCTS LIABILITY**
**LITIGATION – MDL-1928**

**This Document Relates to All Actions.**

**PLAINTIFFS' OPPOSITION TO BAYER'S MOTION TO EXCLUDE**
**TESTIMONY OF PLAINTIFFS' EXPERT MARK DERSHWITZ, MD, Ph.D.**
**AND BRIEF IN SUPPORT THEREOF**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................................ ii

**TABLE OF AUTHORITIES** ................................................................................ iv

**INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION** ............................. 1

**INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS'
CONCURRENTLY FILED OPPOSITION TO BAYER'S MOTION  TO EXCLUDE THE
TESTIMONY OF DR. MARK J. EISENBERG** ....................................................... 2

**EVIDENCE** ......................................................................................................... 2

**ARGUMENT AND AUTHORITIES** ...................................................................... 3

  A.  BAYER DOES NOT DISPUTE THAT DR. DERSHWITZ IS COMPETENT AND
      QUALIFIED TO OFFER HIS EXPERT OPINIONS ON PHARMACOLOGY AND
      BIOLOGIC PLAUSIBILITY. .......................................................................... 3

  B.  DR. DERSHWITZ'S TESTIMONY REGARDING THE BIOLOGICAL
      MECHANISMS WHEREBY TRASYLOL AFFECTS THE KIDNEY DOES NOT
      HAVE TO BE KNOWN TO A CERTAINTY TO BE ADMISSIBLE ............................ 5

    1. Dr. Dershwitz's Challenged Opinions Do Not Require Absolute Proof of the Precise
      Mechanism of Action To Be Admissible ............................................................. 5

    2. Biological Plausibility May Exist Even Where The Precise Mechanism Of Action May
      Be Unknown. ..................................................................................................... 9

  C.  DR. DERSHWITZ'S TESTIMONY REGARDING THE NON-ESSENTIAL
      BIOLOGICAL PLAUSIBILITY CONSIDERATION IS RELIABLE AND
      ADMISSIBLE AS SUPPORT FOR THE CAUSATION OPINIONS OF PLAINTIFFS'
      OTHER EXPERTS. ................................................................................... 10

    1. Dr. Dershwitz's Testimony Regarding The Biologically Plausible Mechanisms Whereby
      Trasylol Causes Kidney Injuries Is Not Unreliable Because It Is Supported (In Part) By
      Animal Studies. ................................................................................................ 11

    2. Dr. Dershwitz's Testimony Regarding The Biologically Plausible Mechanisms Whereby
      Trasylol Causes Kidney Injuries Is Consistent With The Mechanism Of Action
      Testimony Provided By Bayer's Expert And Listed By Bayer On Its Product Insert...... 12

3. Dr. Dershwitz's Testimony Regarding The Biologically Plausible Mechanisms Whereby Trasylol Causes Kidney Injuries Is Not Unreliable Merely Because Bayer Contests The Quality Of The Studies Upon Which Dr. Dershwitz Relies. ........................................... 13

4. Dr. Dershwitz Has Applied A Reliable Methodology To Arrive At His Opinions Regarding Biological Plausibility. ..................................................................................... 14

D. THE CASES CITED BY BAYER DO NOT SUPPORT THE EXCLUSION OF DR. DERSHWITZ'S EXPERT TESTIMONY ON THE LIMITED ISSUES OF MECHANISM OF ACTION AND BIOLOGICAL PLAUSABILITY. .......................... 17

E. DR. DERSHWITZ WILL NOT BE OFFERED TO OPINE ON ISSUES OF GLOBAL GENERAL CAUSATION. ............................................................................................... 19

CONCLUSION ..................................................................................................................... 20

CERTIFICATE OF SERVICE ............................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Allison v. McGhan Med. Corp.,*
   184 F.3d 1300 (11th Cir.1999) ................................................. 10

*Ambrosini v. Labarraque,*
   101 F.3d 129 (D.C. 1996) ....................................................... 4

*Bourne v. Dupont De Nemours & Co., Inc.,*
   189 F.Supp.2d 482 (S.D.W.V. 2002)....................................... 11

*Capizzano v. Secretary of Dep't of Health & Human Servs.,*
   No. 00-759V (Fed. Cir. 2004) 2004 U.S. Claims LEXIS 149 ................. 7

*Carey v. General Motors Corporation,*
   377 Mass. 736 (1979) .......................................................... 7

*Daubert v. Merrell Dow Pharm. Inc.,*
   43 F. 3d 1311 (9th Cir. 1994) ...................................... 7, 10, 19

*Golod v. La Roche,*
   964 F.Supp. 841 (S.D.N.Y. 1997) ........................................... 6

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
   289 F.Supp.2d 1230 (W.D.Wash.2003)..................................... 10

*In re Seroquel Products Liability Litigation,*
   2009 WL 3806435 (M.D.Fla. 2009) ................................... passim

*In re Seroquel Products Liability Litigation,*
   2009 WL3806435 (M.D. Fla June 23, 2009)............................... 15

*In re: Fosamax,*
   645 F.Supp.2d 164 ............................................................. 4

*Jones v. Otis Elevator Co.,*
   81 F.3d 655 (11th Cir. 1988) .............................................. 14

*Kennedy v. Collagen Corp.,*
   161 F.3d 1226 (9th Cir. 1998) .............................................. 7

*Kilpatrick v. Breg, Inc.,*
   No. 08-10052, 2009 WL 2058383 ......................................... 17

*Lust v. Merrell Dow Pharmaceuticals, Inc.,*
   89 F.3d 594 (9th Cir. 1996) ............................................... 18

*Malletier v. Dooney & Bourke, Inc.,*
   525 F.Supp.2d 558 (S.D.N.Y. 2007)......................................... 4

*McCarrell v. Hoffman-La Roche, Inc.,*
   2009 WL 614484 (N.J.Super.A.D., March 12, 2009)...................... 12

*McClain v. Metabolife International, Inc.,*
   403 F.3d 1233 (11th Cir. 2005) .......................................... 7, 8

*Miller v. Pfizer, Inc.,*
   356 F.3d 1326 (10th Cir. 2004) .......................................... 18

*Perkins v. Origin Medsystems Inc.,*
   299 F.Supp.2d 45 (D. Conn. 2004)......................................... 6

*Quiet Technology DC-8, inc. v. Hurel-Dubois UK Ltd.,*
   326 F.3d  1333 (11th Cir. 2003) .......................................... 14

iv

*Rider v. Sandoz Pharmaceuticals Corp.,*
   295 F.3d 1194 (11th Cir. 2002) ........................................................................... 19

*Solimene v. B. Grauel & Co., KG, et al.,*
   399 Mass. 790 (1987) ........................................................................................... 7

*State v. Kliphouse,*
   771 So. 2d 16 (Ct. App. Fla., 2000) ..................................................................... 7

*Tivoli v. U.S.,*
   93 Civ.5817 (CLB) (MDF), 1997 U.S. Dist. LEXIS 23356 (S.D.N.Y., November 3, 1997) .... 7

*United States v. Downing,*
   753 F.2d 1224 (3rd Cir. 1985). .......................................................................... 4

*Woodley v. PFG-Lester Broadline, Inc.,*
   556 F.Supp.2d 1300 (M.D.Ala., 2008) ................................................................. 13

COME NOW, Plaintiffs in the above styled cause ("Plaintiffs") and submit the following "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark Dershwitz, and Brief in Support Thereof" (hereinafter "Opposition"). Plaintiffs would respectfully show the Court that Dr. Dershwitz's proposed expert testimony is methodologically sound and would be of assistance to the jury.   Dr. Dershwitz's expert testimony should be admitted for the following reasons:

## I.
## INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION

As an expert in pharmacology, Mark Dershwitz, M.D., Ph. D., has specialized knowledge, training and experience assessing the human body's reaction to drugs.  By applying his undisputed expertise, Dr. Dershwitz seeks to assist the jury in understanding how Trasylol works to reduce bleeding.    Dr. Dershwitz's pharmacological expertise is also offered on one particular aspect of the causation analysis: the biologically plausible mechanisms through which Trasylol causes renal injury and increases mortality.

Dr. Dershwitz is eminently qualified to offer opinions on the pharmacological properties of Trasylol and on the biological plausibility of Trasylol causing injury to patients.  In fact, Bayer does not challenge the admission of Dr. Dershwitz's opinions relating to the general pharmacology of Trasylol.  Thus, it is only Dr. Dershwitz's testimony regarding the biological plausibility of Trasylol causing kidney injuries through either vaso-constriction (narrowing of the blood vessels) or through the creation of blood clots that is at issue. [Expert Report of Mark Dershwitz, M.D., Ph.D. ¶ 38-48 (Plaintiffs' Compendium of Exhibits at Exhibit "A") (hereinafter "Dershwitz Report")].    Dr. Dershwitz's opinions, limited to the narrow area of biological plausibility, are derived from a reliable methodology and grounded in scientific

evidence.   As such they are admissible to supplement the testimony of Plaintiffs' general causation experts.

**II.**
**INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS'**
**CONCURRENTLY FILED OPPOSITION TO BAYER'S MOTION  TO EXCLUDE THE**
**TESTIMONY OF DR. MARK J. EISENBERG**

In the interest of brevity and to avoid burdening the Court with duplicative briefing, Plaintiffs have set forth the following matters in their "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark J. Eisenberg and Brief in Support Thereof" (hereinafter "Eisenberg Opposition") which are fully incorporated herein by reference.

- Section "I" – BACKGROUND AND HISTORY OF MDL LITIGATION

- Section "IV.B" – THE PROPER DAUBERT STANDARDS

In order to further the Court's understanding of the history of this litigation, the scientific data that underlies the expert testimony in this case, and the separate and distinct areas of each expert's proffered testimony, Plaintiffs would respectfully encourage the Court to begin its review of Plaintiffs' Daubert briefing with Plaintiffs' Eisenberg Opposition.

**III.**
**EVIDENCE**

In support of this Opposition to Bayer's motion to exclude the expert testimony of Dr. Dershwitz, Plaintiffs specifically rely upon the following documents which are set forth in Plaintiffs' Compendium of Exhibits filed herewith:

A.      Expert Report of Mark Dershwitz, M.D., Ph.D.  (Exhibit "A").

B.      Excerpts from the Deposition of Mark Dershwitz, M.D., Ph.D. (hereinafter "Dershwitz Depo.") (Exhibit "B").

2

C.      Expert Report of Dr. David Humes  (herinafter "Humes Report")(Exhibit "C").

D.      2006 Bayer HealthCare, Trasylol Label/Package Insert (Exhibit "D").

E.      Expert Report of Mark Eisenberg (hereinafter "Eisenberg Report")("Exhibit "E").

F.      Expert Report of Chirag Parikh (hereinafter "Parikh Report")(Exhibit "F").

In addition, Plaintiffs rely upon all pleadings, discovery and evidence filed in this case and any admissions made by Bayer therein.

## IV.
## ARGUMENT AND AUTHORITIES

### A.      BAYER DOES NOT DISPUTE THAT DR. DERSHWITZ IS COMPETENT AND QUALIFIED TO OFFER HIS EXPERT OPINIONS ON PHARMACOLOGY AND BIOLOGIC PLAUSIBILITY.

Bayer does not contest the fact that Dr. Dershwitz is qualified to offer the pharmacology opinions set forth in his report and deposition.[1]  Dr. Dershwitz's credentials are impressive and include over twenty-five  years of clinical practice as an anesthesiologist; practical experience as a  Ph. D.  in  pharmacology;  and  teaching  responsibilities  at  Harvard  Medical  School, Massachusetts Institute of Technology (MIT) and University of Massachusetts Medical School. [Dershwitz Report p. 1-2, 20-21 (Plaintiffs' Compendium of Exhibits at Exhibit "A")].  Dr. Dershwitz  has  published  extensively  in  peer-reviewed  medical  and  scientific  journals.

---

[1] In the face of Dr. Dershwitz's impressive credentials and qualifications, Bayer does not argue that he is unqualified to serve as an expert in this matter.  At most, Bayer levies two hollow criticisms: (1) that Dr. Deshwitz has not "worked with a bypass patient in 24 years," and (2) that Dr. Dershwitz lacks a catch-all basis for an overall general causation opinion. [See Bayer's Daubert Motion, generally].  Each of Bayer's arguments fails as an attack on Dr. Dershwitz credentials for the same fundamental reason: namely, Dr. Dershwitz is *not* offering general causation opinions as a cardio thoracic anesthesiologist.  He is offering opinions only regarding the biologic plausibility of the mechanisms through which Trasylol may cause particular renal injury and mortality *In re Fosamax Prods. Liab. Litig.*, 645 F.Supp.2d 164,  206 (S.D.N.Y. 2009)(that epidemiologist had not treated any patients with the drug at issue was irrelevant because expert was not testifying as to whether the drug was appropriate for any particular patient). Dr. Dershwitz is amply qualified to opine on issues relating to the pharmacology of Trasylol. Attacking Dr. Dershwitz's lack of experience as a cardio thoracic anesthesiologist is nothing more than an attempt to detract from the expert's abundant qualifications in the areas of pharmacology and biologic plausibility.

[Dershwitz Report p. 6-15**;** Dershwitz Depo. 319:24 -320:15; 322:16-21 (Plaintiffs' Compendium of Exhibits at Exhibit "B")]. Currently, Dr. Dershwitz is a Professor and Vice Chair of Anesthesiology and Professor of Biochemistry and Molecular Pharmacology at UMass Memorial Hospital/University of Massachusetts Medical School. [Dershwitz Report p. 2]. In his capacity as a professor, Dr. Dershwitz teaches Medical Pharmacology and Medical Biochemistry at UMass Medical School. [Dershwitz Report p. 5 – 6]; [Dershwitz Depo. 318:12 – 319:8]. Additionally, Dr. Dershwitz previously held the position of Associate Professor of Anesthesia at Harvard Medical School. [Dershwitz Report p. 2]; [Dershwitz Depo. 317:18-24]. And finally, Dr. Dershwitz has authored or contributed to twenty-three book chapters involving anesthesia, critical care medicine and pharmacology. [Dershwitz Report p. 10 – 12]; [Dershwitz Depo. 320:4 -15].

Dr. Dershwitz's abundant qualifications as an expert pharmacologist and anesthesiologist provide circumstantial evidence of the reliability of his methods. *Ambrosini v. Labarraque*, 101 F.3d 129, 140(D.C. 1996); *United States v. Downing,* 753 F.2d 1224, 1239 (3rd Cir. 1985). "[T]he more qualified the expert, the more likely that expert is using reliable methods in a reliable manner – highly qualified and respected experts don't get to be so by using unreliable methods or conducting research in an unreliable manner." *Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp.2d 558, 616 (S.D.N.Y. 2007); *see also, In re: Fosamax,* 645 F.Supp.2d 164. Indeed, Indeed, Dr. Dershwitz utilized the very same methodology in formulating his opinion in the present matter as he does when preparing to teach his students, author a professional journal submission or compile a book chapter. [Dershwitz Depo. p. 320 – 322 ("[t]he process of creating this report for me was very, very similar to writing a review article or writing a book chapter."

322:13-15.)].    Thus, Dr. Dershwitz's opinions in this case derive from the same reliable methodology that earned Dr. Dershwitz his uncontested professional stature and expertise.

**B.    DR. DERSHWITZ'S TESTIMONY REGARDING THE BIOLOGICAL MECHANISMS WHEREBY TRASYLOL EFFECTS THE KIDNEYDOES NOT HAVE TO BE KNOWN TO A CERTAINTY TO BE ADMISSIBLE** [In Response to Bayer's Argument I. p. 2-9]

Dr. Dershwitz offers the expert opinion that Trasylol alters kidney function in two ways. First, Dr. Dershwitz opines that kidney function is impacted because Trasylol reduces blood flow in the kidney through vaso-constriction (narrowing of the blood vessels). [Dershwitz Report ¶ 38-47].  Second, Dr. Dershwitz offers the opinion that Trasylol creates clots in the small vessels of the kidney thereby reducing blood flow to the kidney. [Dershwitz Report ¶ 48].  Bayer claims that these opinions regarding the biological plausibility of Trasylol-caused injuries are unreliable because: (1) they have not been proven to an absolute certainty, (2) they are supported, in part, by animal studies, and (3) Bayer disputes the significance of the human studies on which Dr. Dershwitz relies.    None of Bayer's criticisms threaten the reliability of Dr. Dershwitz's testimony.

**1.    Dr. Dershwitz's Challenged Opinions Do Not Require Absolute Proof of the Precise Mechanism of Action To Be Admissible.**

Bayer fails to appreciate the distinctions between a "mechanism of action," "biological plausibility" and "causation."  "Biological plausibility" is defined as the consideration of existing knowledge about human biology and disease pathology in order to provide a judgment as to whether it is *plausible* that an agent causes a disease. *Reference Manual on Scientific Evidence, supra*, at 388. Biological plausibility is one of the non-essential Bradford Hill factors for inferring causation.[2] Hill, A.B., The Environment and Disease: Association or Causation. (Proc.

---

[2] Under the "Hill Criteria," whether or not to draw a causal connection from a positive association in an epidemiological study should be determined by taking into account:  (1) the temporal relationship between exposure and disease, (2) the strength of the association, (3) the dose-response relationship between exposure and incidence or

R. Soc. Med. 1965).  Where a biologically plausible mechanism of action can be inferred, that inference supports a causal connection.  *Id.*  Much of the testimony by Dr. Dershwitz to which Bayer objects relates to biological  plausibility.

"Mechanism of action," on the other hand, explains *precisely* how an agent causes a disease.  Often the precise mechanism of action is uncertain even when there is substantial evidence of causation.  Thus, a known mechanism whereby the drug causes the injuries complained of is merely one of many non-essential criteria that have been identified as possible considerations when looking at causation. [3]  The lack of a known mechanism of injury, however, is not fatal to a causation opinion.

Courts across the country have made clear that a plaintiff does not have the burden to establish the precise mechanism of action involved in a plaintiff's injury.  *See, Perkins v. Origin Medsystems Inc.*, 299 F. Supp. 2d 45, 60 (D. Conn. 2004) (*quoting Golod v. La Roche*, 964 F. Supp. 841, 858 (S.D.N.Y. 1997) ("The fact that these physicians are unable to describe the

---

severity of disease, (4) replication of the findings, (5) biological plausibility, (6) consideration of alternative explanations, (7) effect of cessation of exposure, (8) specificity of the association, and (9) consistency of the theory with other knowledge.  Like the *Daubert* factors, the Hill Criteria are not a rigid formula for assessing a causal inference.  One or more factors may be absent even when a true causal relationship exists. Hill, A.B., The Environment and Disease: Association or Causation. (Proc. R. Soc. Med. 1965).

[3] When exercising their gate-keeping function to determine whether expert testimony satisfies the *Daubert* requirements, the United States Supreme Court encouraged courts to consider the following non-exclusive factors: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the theory or techniques degree of acceptance in the scientific community.  *Daubert*, 509 U.S. 593-94. Since the *Daubert* opinion issued, additional factors have been identified in the Advisory Committee Notes to the federal rules which relate to the admissibility of expert testimony.  These factors include: (1) whether the theory arose from litigation or from independent research, (2) whether the theory "fits" with the facts of the case, (3) whether the expert adequately considered alternative explanations, (4) whether the expert was as careful with his litigation consulting as he or she would have been in his regular professional work, and (5) whether the expert's field is known to reach reliable results for the type of opinion proffered.  Advisory Committee Notes to 2000 Amendment of Federal Rules.  A third-tier of non-essential factors which a trial court *may* consider when assessing the scientific reliability of expert testimony have been deduced by courts.  Mechanism of action is identified in some cases among factors such as: (1) whether the expert's opinion is based on complete or accurate dosage or duration data; (2) whether the expert has identified the specific mechanism by which the drug supposedly causes the alleged disease; (3) whether the expert has justifiably extrapolated from an accepted premise to a conclusion; (4) whether the expert has adequately accounted for alternative explanations; and (5) whether the expert proposes to testify about matters growing directly out or research he or she has conducted independent of the litigation.  *Black v. Food Lion, Inc.*, 171 F.3d 308, 313 (5th Cir. 1999).

mechanism by which Tegison caused its adverse effects is irrelevant. The mechanisms of both therapeutic and toxic effects of drugs are often unknown... Just as the mechanism of efficacy need not be known to support a claim that Tegison causes abatement of dermatological symptoms, so the mechanism of toxicity need not be known to support an inference of causation based on accepted clinical methods of diagnosis."); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1330 (9th Cir. 1998) ("Causation can be proved when we don't know precisely *how* the damage occurred."); *Capizzano v. Secretary of Dep't of Health & Human Servs.*, No. 00-759V (Fed. Cir. 2004) 2004 U.S. Claims LEXIS 149, *53; *Tivoli v. U.S.*, 93 Civ.5817 (CLB) (MDF), 1997 U.S. Dist. LEXIS 23356 (S.D.N.Y., November 3, 1997); *Solimene v. B. Grauel & Co., KG, et al.*, 399 Mass. 790, 798 (1987); *Carey v. General Motors Corporation*, 377 Mass. 736, 740-741 (1979); *State v. Kliphouse*, 771 So. 2d 16, 38 (Ct. App. Fla., 2000) ("A strong association or correlation can lead a scientist to infer *causation* even when the scientist cannot explain the precise mechanism of the effect -- as in the association between smoking and lung cancer."). Simply stated, "[c]ausation can be proved when we don't know precisely *how* the damage occurred, if there is sufficiently compelling proof that the agent must have caused the damage somehow.*" Daubert v. Merrell Dow Pharm. Inc.*, 43 F. 3d 1311, 1314 (9th Cir. 1994).

In opposition to the many cases refusing to require definitive evidence of a mechanism of action as a condition for admitting causation testimony, Bayer mistakenly relies upon *McClain v. Metabolife International, Inc.*, 403 F.3d 1233 (11th Cir. 2005).   Bayer erroneously posits that *McClain* stands for the proposition that a general causation opinion must be excluded if the expert has not offered a proven mechanism of action by which the drug causes the injury. [Bayer's Daubert Motion p. 3].   Not so.  Even setting aside the fact that the portion of the *McClain* opinion Bayer relies upon is mere dicta, *McClain* actually presents a highly unique and

distinguishable set of circumstances.[4] *In re Seroquel Products Liability Litigation*, 2009 WL 3806435 (M.D.Fla. 2009)(describing as "dicta," *McClain's* comment that lack of a physiological mechanism for injury was one reason for excluding expert's testimony).  In *McClain,* the issue was whether an expert could use a differential etiology methodology (essentially determining causation by process of elimination) where no showing had been made that the product at issue was physiologically capable of causing the injury. The Eleventh Circuit specifically noted that the expert had not offered epidemiological data, clinical trial data or animal studies in support of his opinion. *McClain*, 403 F.3d at 1251. In those particular circumstances, the Eleventh Circuit concluded that the absence of a biologically plausible mechanism of action precluded a reliable causation opinion.  It did not, however, hold that a mechanism of action must be known and proven to a certainty as an absolute requirement for causation.  That "ruling out" other causes of injury could not support a causation opinion when no showing had been made that the remaining cause was biologically capable of being "ruled in" as the cause of the injury is neither surprising nor controlling in the case at bar.

This case is nothing like *McClain.*  This Court is not being asked to determine whether causation opinion can stand absent epidemiological data, trial data, animal data or a mechanism of action (as the Court was in *McClain*).[5]  Dr. Dershwitz is not offering a causation opinion at

---

[4] It is worth noting that *McClain* is an unusual case from the outset as the trial court judge expressly abdicated its gatekeeping role saying it was unqualified to evaluate the methodology of the experts.  *Id.* at 1238, fn.3.  Consequently, the Eleventh Circuit had no course other than to find error in the trial court's *Daubert* ruling.

[5] It is illuminating to compare the *McClain* opinion, finding expert testimony that ephedrine products cause various cardiac injuries inadmissible, to the result of *Daubert* hearings in the Ephedra MDL, where the same substantive expert opinion was ruled admissible. *In re Ephedra Prods. Liability Litig.*, MDL 1598 (S.D.N.Y. 2005).  Notably the *McClain* opinion, although not issued until 2005, was looking at an evidentiary record compiled in 2002.  At that time, ephedra dietary substances had not been banned by the FDA, physicians groups had not advocated against the use of ephedrine products, and a considerable volume of the scientific data that would exist just three years later had not been generated.  The state of the evidence in this case is much more akin to what was presented to the Ephedra MDL than what was presented in *McClain*.  If the Eleventh Circuit had had the benefit of the data generated in the two years after the *McClain* verdict, it would likely have reached a different conclusion.

all.   Plaintiffs intend to offer other experts to opine about causation based upon their qualifications and the multiple, consistent, peer-reviewed epidemiological studies producing scientific evidence of an association between Trasylol and renal injury. [*See*, Eisenberg Opposition and "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Chirag Parikh and Brief in Support Thereof" (hereinafter "Parikh Opposition") filed herewith].   Thus, all this Court is asked to do in connection with Dr. Dershwitz is determine whether the pharmacologist's opinions as to the biological plausibility of the mechanisms whereby Trasylol affects kidney function is reliable.

> **2.** **Biological Plausibility May Exist Even Where The Precise Mechanism Of Action May Be Unknown.**

Nor is it necessary that the mechanism of injury be known with certainty in order for there to be biological plausibility.   Biological plausibility is just that, an explanation that makes sense or is credible based upon the known effects of the drug on the body.   For example, the World Health Organization's Global Advisory Committee on Vaccines defines "biological plausibility" with respect to a causation assessment of adverse events after vaccination as:

> **Biological plausibility.** The association should be coherent; that is, plausible and explicable biologically according to known facts in the natural history and biology of the disease.
>
> *The requirement for biological plausibility should not unduly influence negatively a consideration of causality. Biological plausibility is a less robust criterion than the others described.* If an adverse event does not fit into known facts and the preconceived understanding of the adverse event or the vaccine under consideration, it clearly does not necessarily follow that new or hitherto unexpected events are improbable.

[http://www.who.int/vaccine_safety/causality (emphasis added)].   Thus, the fact that biological plausibility opinions are always couched in terms of what "can" or "may" happen does not make

9

them unreliable. The Middle District of Florida has made clear that uncertainty regarding the mechanism by which a drug causes certain adverse effects does not render expert testimony unreliable. *In re Seroquel Products Liability Litigation*, 2009 WL 3806435 (M.D.Fla. 2009); *See Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1312 (11th Cir.1999) ("[T]he proponent of the testimony does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable."); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 289 F.Supp.2d 1230, 1247 (W.D.Wash.2003) ("The fact that the mechanism remains unclear does not call the reliability of the opinion into question.") (citing *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311 (9th Cir.1995)).  The better view is that biological plausibility works against causality only if the event is not plausible.

Any attempt by Bayer to blur the distinction between what is biologically plausible (that Trasylol "can" damage the kidney through the mechanisms of action identified by Dr. Dershwitz) and what is known with absolute certainty (which of the mechanisms actually causes the damage) simply is not a basis for excluding Dr. Dershwitz's testimony as mere speculation.

## C.   DR. DERSHWITZ'S TESTIMONY REGARDING THE NON-ESSENTIAL BIOLOGICAL PLAUSIBILITY CONSIDERATION IS RELIABLE AND ADMISSIBLE AS SUPPORT FOR THE CAUSATION OPINIONS OF PLAINTIFFS' OTHER EXPERTS.

Although not strictly necessary, Dr. Dershwitz has presented reliable,  relevant and admissible testimony regarding three theories whereby Trasylol adversely impacts kidney function. In fact, Dr. Dershwitz's report cites to twenty-nine separate studies to support the specific biologically plausible mechanisms he offers opinions upon. [*See* Dershwitz Report, generally].  That Dr. Dershwitz's opinions regarding the mechanisms whereby Trasylol causes kidney injury are supported by scientific data, consistent with positions taken by Bayer and its experts, and biologically plausible, lend compelling (but unrequired) support to Dr. Dershwitz's

opinions which, in turn, support the opinions Plaintiffs' general causation experts.

    **1.**    **Dr. Dershwitz's Testimony Regarding The Biologically Plausible Mechanisms Whereby Trasylol Causes Kidney Injuries Is Not Unreliable Because It Is Supported (In Part) By Animal Studies.**

Dr. Dershwitz's theories whereby Trasylol causes renal injury are derived (in part) from animal studies. Courts have long recognized the usefulness of animal studies. "There can be no dispute that properly designed and conducted animal testing can yield relevant and useful information in the field of human toxicology." *Bourne v. Dupont De Nemours & Co., Inc.,* 189 F.Supp.2d 482, 498 (S.D.W.V. 2002); *Turpon v. Merrell Dow Pharms.* Inc., 959 F.2d 1349, 1360-61 (6th Cir. 1992). "Animal studies often comprise the backbone of evidence indicating biological hazards and their legal value has been recognized by federal courts and agencies." *Id.* Indeed, courts have held that it is an abuse of discretion for a trial court to exclude expert testimony based on animal studies merely because of difficulty in extrapolation to humans. *See Metabolife International, Inc. v. Wornick,* 264 F.3d 832, 842 (9th Cir. 2001); *Hopkins v. Dow Corning Corp.*, 33 F.3d 116, 1124-25 (9th Cir. 1994)(admitting expert testimony based in part on general scientific knowledge established by animal studies); *In re Phenylpopanolamine* (PPA) Ligitagtion, 289 F.Supp.2d 1242, 1247 (expert testimony admissible based on animal studies and other nonepidemiological evidence).

Bayer cites several cases for the proposition that animal studies cannot prove causation. [Bayer's Daubert Motion, p. 6]. Unfortunately for Bayer, the cases do not support its assertion. As an initial matter, the cases Bayer cites were not focused specifically on the use of animal studies to demonstrate biological plausibility (as opposed to causation). Animal studies are particularly common and useful to determine the general physiological effects of a substance; even while animal studies are less favored for determining causation in humans. *McCarrell v.*

*Hoffman-La Roche, Inc.,* 2009 WL 614484 (N.J.Super.A.D., March 12, 2009)(noting animal studies are particularly useful for determining effects of a drug because animals are generally autopsied and their tissue studied).[6]

> **2.   Dr. Dershwitz's Testimony Regarding The Biologically Plausible Mechanisms Whereby Trasylol Causes Kidney Injuries Is Consistent With The Mechanism Of Action Testimony Provided By Bayer's Expert And Listed By Bayer On Its Product Insert.**

That Dr. Dershwitz's opinions regarding the mechanism by which Trasylol causes kidney injury is plausible and reliable is shown by the fact that it is consistent with the positions taken by Bayer and Bayer's expert nephrologist, Dr. David Humes.

For instance, Dr. Dershwitz opines that Trasylol leads to vasoconstriction which can also reduce blood flow to the kidneys.  The vasoconstrictive mechanism of action described by Dr. Dershwitz, has confirmed by Bayer's own nephrology expert, Dr. Humes.  Dr. Humes, when describing the effect of Trasylol on the kidneys, reported the following:

> Aprotinin administration has a variety of direct and indirect effects on the kidney …One renal effect of Aprotinin is most likely due to an inhibition of kallikrein production, which indirectly reduces the production with other renal vasoactive hormones, including prostaglandins and angiotensin II. . .  <u>Aprotinin related changes in renal blood flow and GFR *have been variable*</u> depending upon the experimental maneuvers, including intravascular volume state, presence of hemorrhagic hypotension, or the occurrence of ischemic/reperfusion injury.

[Humes Report p. 1 (Plaintiffs' Compendium of Exhibits at Exhibit "C")(emphasis added)].

Thus, experts for both parties agree that a relationship between Trasylol and reductions in renal

---

[6] Even within the more strenuous human causation context, the cases cited by Bayer do not support the view that animal studies have not been rejected outright.  Animal studies have merely been found insufficient to single-handedly overcome contrary epidemiological evidence.  For example, in *Allison v. McGhan,* the Eleventh Circuit held that animal studies on rats *directly injected* with silicone did not correlate sufficiently with the effects of *unruptured* silicone breast implants in women to overcome over twenty epidemiological studies finding no statistical correlation between silicone breast implants and systemic disease. 184 F.3d 1300, 1316 (11th Cir. 1999).  This case is completely different. The undeniable breadth of studies, both human and animal (which in fact led to the withdrawal of Trasylol from the market) more than adequately support a conclusion of causation whether or not the precise mechanism of action is established.

blood flow does exist. They simply disagree as to how often it occurs and under what circumstances. That experts might reasonably differ on the extent of injury resulting from an agreed mechanism hardly makes expert testimony regarding the biological plausibility of that mechanism so unreliable as to be inadmissible.  *Woodley v. PFG-Lester Broadline, Inc.,* 556 F.Supp.2d 1300, 1307 (M.D.Ala., 2008)(disagreement between experts  is not ground for excluding expert testimony.

Similarly, Bayer seeks to exclude Dr. Dershwitz's opinion on Trasylol's potential clot causing mechanism as unproven. This is disingenuous given the fact that Trasylol's association with thrombin generation is clearly stated in the package insert. Specifically, in the clinical pharmacology section of the 2006 package insert it is stated:

> "Mechanism of action: Aprotinin is broad spectrum prolease inhibitor which modulates the systemic inflammatory response (SIR) associated with cardiopulmonary bypass (CPB) surgery. . . SIR results in the interrelated activation of the hemostatic fibrinolytic, cellular and hormonal inflammatory responses, fibrinolysis, and <u>thrombin generation</u>.  (emphasis added)"

[2006 Bayer HealthCare, Trasylol Label/Package Insert ("Plaintiffs' Compendium of Exhibits at Exhibit "D")]. Having acknowledged on its product insert the same thrombotic characteristic of Trasylol, Bayer ought not be heard to claim that the characteristic when asserted by Dr. Dershwitz is so unreliable as to be prohibited as even a consideration in support of the *biological plausibility* of Dr. Dershwitz's causation opinion.

**3.      Dr. Dershwitz's Testimony Regarding The Biologically Plausible Mechanisms Whereby Trasylol Causes Kidney Injuries Is Not Unreliable Merely Because Bayer Contests The Quality Of The Studies Upon Which Dr. Dershwitz Relies.**

Dr. Dershwitz's Report cites to twenty-nine separate studies to support the specific biologically plausible mechanisms he offers opinions upon. [*See* Dershwitz Report, generally].

Of these, Bayer takes issue with two.  Allegations of inadequacies in a study, however, go to the weight of the expert's testimony, not its admissibility. *Quiet Technology DC-8, inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d  1333, 1345 (11th Cir. 2003); *Jones v. Otis Elevator Co.,* 81 F.3d 655, 663 (11th Cir. 1988). Dr. Dershwitz's opinions are not based upon speculation. They arise from the evidence and documents in the case, as well as his background, training and clinical experience. They are not proper considerations for exclusion under *Daubert*.   Hence, any deficiencies in the studies relied upon by Dr. Dershwitz may be vigorously examined by Bayer at trial, but they do not render Dr. Dershwitz's causation testimony inadmissible at the Daubert stage.

### 4.   Dr. Dershwitz Has Applied A Reliable Methodology To Arrive At His Opinions Regarding Biological Plausibility.

Bayer accuses Dr. Dershwitz of selectively choosing particularly helpful scientific literature, while ignoring counterbalancing articles that Bayer claims show no adverse outcomes. [*See* Bayer's Daubert Motion p. 12-13]. Bayer's representations are simply false.  Dr. Dershwitz conceded multiple times throughout his deposition that there were, in fact, numerous studies, mostly early in the product life cycle of Trasylol, that showed no increased risk of events akin to those raised in this litigation.  [*See* Dershwitz Depo. 21:23-22:12].  However, as Dr. Dershwitz repeatedly pointed out to counsel, he was not attempting to compile a full literature search of all studies available, but instead to elucidate biologically plausible explanations of how the known pharmacology of Trasylol could lead to the increased risk of various injuries.  [*See* Dershwitz Depo. 198:11-199:11; 203:6-15].  Unlike plaintiffs in *Lust, infra,  Miller, infra,* and *Kilpatrick, supra,*  Dr. Dershwitz is not being offered as a standalone expert to cover all aspects of general causation; he is offered by Plaintiffs along with a panel of experts of varying disciplines.   Dr.

Eisenberg, Plaintiffs' proffered epidemiologist, is being offered, and has opined in his report and deposition, as to the body of clinical and epidemiological studies concerning Trasylol.

The pharmacological studies cited in Dr. Dershwitz's Expert Report confirm the biologically plausible explanations for the causality evidence demonstrated in the studies explained more fully by Dr Eisenberg and Dr. Parikh. [*See* Eisenberg Opposition (Eisenberg Expert Report (Plaintiffs' Compendium of Exhibits at Exhibit "E")) and Parikh Opposition (Parikh Expert Report (Plaintiffs' Compendium of Exhibits at Exhibit "F")) filed herewith].  The known pharmacological properties of Trasylol, and its known mechanism for its purported benefit in sparing blood during primary and repeat coronary artery bypass graft surgery (CABG), are consistent with the biologically plausible opinions offered by Dr. Dershwitz.  Dr. Dershwitz explains this multiple times throughout his report and deposition. [Dershwitz Report ¶ 40-49]; [Dershwitz Depo. 198:11-199:11; 203:6-15].  Reliance on biologic plausibility and likely mechanisms for Trasylol to cause renal dysfunction and failure, and increased mortality, is sound methodology.  Dr. Dershwitz explains the methods employed to vet through hundreds of articles on the pharmacologic effects of Trasylol, his selection of relevant articles, and the support for his ultimate opinions of biologically plausible mechanisms.  [Dershwitz Depo. p. 71-74; 320:17-322:21].

The methodology utilized by Dr. Dershwitz in formulating his opinions is virtually identical to the methods utilized by Dr. Laura Plunkett, a pharmacologist like Dr. Dershwitz, and which were found to be adequate under a *Daubert* challenge.  *See In re Seroquel Products Liability Litigation*, 2009 WL3806435 (M.D. Fla June 23, 2009). In *In re: Seroquel* the defendant challenged Dr. Plunkett's testimony accusing the expert of selectively choosing which studies she would use to support her opinion, while rejecting others. This is identical to one of

Bayer's accusations against Dr. Dershwitz. *See Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark Dershwitz, M.D., Ph.D., § II. B.*[7]   The *Seroquel* court found that the methodology employed by Dr. Plunkett, which is virtually identical to that followed by Dr. Dershwitz in the present matter, was sound. *See In re: Seroquel,* 2009 WL 3806435 at p. 4, *5. Dr. Dershwitz conducted much of his research on-line, reviewing abstracts before reviewing full text articles; he winnowed down what articles he cited in support of his opinions, while recognizing that there were studies that came to a conclusion contrary to his opinions. [Dershwitz Depo. p. 56:10 – 57:8; 71:13 – 74:20; 99:8-23].   In addressing this very issue, the *Seroquel* court noted that such methodology was indeed sound, and found no basis to exclude Dr. Plunkett's testimony.  The fact that the end product (the expert report) only includes citations to study articles that support Dr. Dershwitz's opinions is not a sufficient ground to exclude his testimony.

Defendant Bayer's argument that Dr. Dershwitz's opinions concerning the mechanisms through which Trasylol may cause injury is speculation is simply wrong.  As the court held in *Seroquel*, "as the *Reference Manual on Scientific Evidence* recognizes, causation can be established even when the causal mechanism is unknown:

> [p]articularly in toxic tort cases, proving causation raises numerous complicated issues because mechanisms that cause certain diseases and defects are not fully understood. Consequently, the proof of causation may differ from that offered in the traditional tort case in which the plaintiff details and explains the chain of events that produced the injury in question. In toxic tort cases in which the causal mechanism is unknown, establishing causation means

---

[7]      It should be noted by the court that Defendant Bayer's *Motion to Exclude Testimony of Plaintiffs' Mark Dershwitz, M.D., Ph.D.* relates to arguments addressing global general causation.  As addressed in § IV, A, 4 of this Opposition,  Plaintiffs do not intend to offer Dr. Dershwitz as  a global general causation witness, and will limit his offered testimony to general pharmacology and the biologically plausible mechanisms through which Trasylol can cause particular injury and death.  Consequently, it is Plaintiffs' contention that any motion or argument made by Defendant Bayer concerning a one-sided methodology is moot.

> providing scientific evidence from which an inference of cause and effect may be drawn."

*In re: Seroquel,* 2009 WL 3806435 at 7, citing, Margaret Berger, *The Supreme Court's Trilogy on the Admissibility of Expert Testimony, in* REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 32 (Federal Judicial Center, 2d Ed.2000).

**D.    THE CASES CITED BY BAYER DO NOT SUPPORT THE EXCLUSION OF DR. DERSHWITZ'S EXPERT TESTIMONY ON THE LIMITED ISSUES OF MECHANISM OF ACTION AND BIOLOGICAL PLAUSABILITY.**

Throughout its motion, Bayer repeatedly cites to a group of opinions that it claims support the exclusion of Dr. Dershwitz's testimony.   [Bayer's Daubert Motion, generally]. Bayer's reliance on the cases offered – *McClain, Rider, Kilpatrick, Miller, and Lust-* is misplaced and provides no authority for excluding the testimony of Dr. Dershwitz.

The common thread running throughout the cases cited by Bayer is that the expert sought to be excluded was attempting to "cover the waterfront" on all aspects of general causation. That simply is not what is being offered through Dr. Dershwitz, or by Plaintiffs, in this case.  The testimony offered by Dr. Dershwitz relates to a very limited aspect of the evidence offered by Plaintiffs, which must be taken in compliment to the testimony of Drs. Eisenberg and Parikh. [8] This fact distinguishes the case at bar.

The plaintiff in *Kilpatrick*, like the plaintiffs in *McClain*, offered a single expert (an orthopedic surgeon) to offer opinions of how a particular drug, injected into a particular part of the shoulder joint, caused a degenerating shoulder condition. *Kilpatrick v. Breg, Inc.*, No. 08-10052, 2009 WL 2058383 (S.D. Fla. June 25, 2009).   There were no additional experts to establish general causation from an epidemiological standpoint.  The court in *Kilpatrick* found

---

[8] It is not Plaintiffs' position that any of the testimony of either Dr. Eisenberg or Dr. Parikh is in any way dependent upon the testimony of Dr. Dershwitz, however the biologic plausibility testimony offered through Dr. Dershwitz is considered part of a non-exclusive list of factors that the Court should consider in passing on the issue of general causation. *See, Manual on Scientific Evidence,  p. 374-378.*

that the proffered expert relied on only four pieces of potentially scientific data to support the entire breadth of opinions regarding general causation: a 152-patient study; a rabbit study; a two-patient case report; and a 228 word editorial to a journal that was co-authored by the testifying expert.[9] The factual context of the expert testimony in *Kilpatrick* renders it non-instructive in the present matter.

The cases of *Lust v. Merrell Dow Pharmaceuticals, Inc.,* 89 F.3d 594 (9th Cir. 1996) and *Miller v. Pfizer, Inc.,* 356 F.3d 1326 (10th Cir. 2004), offer no instruction either. In each of these cases the trial court was presented with a singular expert left to stand alone to opine as to both general and specific causation. For differing reasons the courts excluded the testimony of each "lone wolf" expert. In *Lust,* as in *McClain*, plaintiffs' expert offered no evidence of any of the accepted factors for evaluating causation. The expert also conceded that no peer reviewed articles concluded or demonstrated the link that the expert posited in the *Lust.* The expert instead simply stated he interpreted the works of others to reach his conclusion, without setting out what he reviewed or what the original authors concluded. *Lust,* 89 F.3d at 596. Dr. Dershwitz's opinion testimony is a far cry from what the district court excluded in *Lust.*

In *Miller v. Pfizer, Inc.,* 356 F.3d 1326 (10th Cir. 2004), the district court was again faced with a singular expert who was proffered to cover the full extent of general and specific causation, and as in *Lust* the expert's testimony was excluded. In *Miller*, however, the testimony of plaintiff's expert was excluded because it was based on evidence limited to the expert's own "healthy volunteer study and two challenge-dechallenge-rechallenge reports" and a meta-analysis that the expert himself performed on the defendant's data. *Id. at 1328.* Applying a consideration of the four factors set out in *Daubert v. Merrell Dow Pharmaceutical, Inc.,* 509

---

[9] The court's opinion does not provide any detail concerning the "152-patient study," concerning the design or type of study, nor does it provide great detail into the case reports mentioned in its opinion.

U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the court found that the plaintiff's sole expert simply lacked foundation, and found that he failed to demonstrate a proper methodology. *Miller,* 356 F.3d at 1331. Again, Dr. Dershwitz's opinion is not offered as a singular expert to cover the breadth of general causation, as was plaintiff's lone expert in *Miller,* but rather Dr. Dershwitz's testimony is based on solid scientific methodology undergirded by numerous scientific, peer-reviewed studies, published in a multitude of medical and scientific journals.

Finally, Bayer's reliance on *Rider v. Sandoz Pharmaceuticals Corp.,* 295 F.3d 1194 (11th Cir. 2002) is similarly misplaced. While *Rider* did not involve an overstretched expert, *Rider* appears to be a case of trying to drive a square peg into a round hole. Particularly the Court was concerned that evidence linking a drug to ischemic strokes did not apply when the injury suffered is a hemorrhagic stroke. *See Rider,* 295 F.3d at 1202. In *Rider,* the flaw in the evidence offered went to the totality of the evidence presented. That is not a concern implicated in relation to Dr. Dershwitz' testimony on the narrow issue of biological plausibility. *Rider* does not apply to the present matter.

**E.      DR. DERSHWITZ WILL NOT BE OFFERED TO OPINE ON ISSUES OF GLOBAL GENERAL CAUSATION.** [In Response to Bayer's Argument II. p. 10-15].

Plaintiffs do not intend to offer Dr. Dershwitz on issues of global general causation. Dr. Dershwitz's testimony will be limited to the pharmacology of Trasylol and biologically plausible mechanisms through which Trasylol may cause renal dysfunction, renal failure and an increased risk of mortality. Plaintiffs do not intend to offer Dr. Dershwitz to offer general causations opinions concerning "a significant link" between the use of Trasylol and renal dysfunction, renal failure or death. *See* Bayer's Motion to Exclude Plaintiffs' Expert Mark Dershwitz, M.D., Ph.D., p. 12. As a result, Bayer's motion to exclude any "significant link" testimony is moot.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court DENY Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark Dershwitz, M.D., Ph.D.   Plaintiffs additionally request all other and further relief as the Court deems just and proper.

This the ___26th___ day of January, 2010.


Respectfully submitted,



/s/_____
Theodore Babbitt (Florida Bar No. 91146)
Email: tedbabbitt@babbitt-johnson.com
Joseph Osborne (Florida Bar No. 880043)
Email: JAOsborne@babbitt-johnson.com
**Babbitt, Johnson, Osborne & LeClainche, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: (561) 684-2500
Facsimile:  (561) 684-6308

***Liaison Counsel for Plaintiffs and Plaintiffs'
Steering Committee***




## CERTIFICATE OF SERVICE

I hereby certify that on January __26__, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel or records or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic

Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/
Theodore Babbitt
Florida Bar No. 0091146