**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION — MDL-1928 | ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| *Anna Bryant* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80868 | ) ) ) |
| *Melissa Morrill* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80424 | ) ) ) |
| *Naguib Bechara, et al.* v. *Bayer Corp., et al.*, Case No. 9:08-cv-80776 | ) ) ) ) |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING THE TIMING OF BAYER'S DISCLOSURE OF THE i3 DRUG SAFETY STUDY AND PRELIMINARY RESULTS FROM THAT STUDY**

Defendants move *in limine* for an order excluding evidence, testimony, and argument concerning events in the summer and fall of 2006 related to the timing of the disclosure to the federal Food and Drug Administration ("FDA") of the commencement of and preliminary results from an observational study by i3 Drug Safety (the "i3 study"). The first cases set for trial in this MDL proceeding involve surgeries that occurred months and years prior to any of these i3-related events. As a result, Bayer's actions in the summer and fall of 2006 related to the i3 study could not possibly have impacted the decision to use Trasylol in these surgeries. Accordingly, evidence about these actions would be an irrelevant and time-consuming sideshow at trial.[1] Moreover, any marginal probative value of this evidence is substantially

---

[1] Bayer respectfully requests that the Court rule on this motion at an early date because the ruling will significantly impact the scope of the upcoming trials. Indeed, plaintiffs' initial

outweighed by the risks of unfair prejudice and confusion of the jury. For all of these reasons, evidence regarding Bayer's disclosure of the commencement of and preliminary results from the i3 study should be excluded.[2]

## BACKGROUND

**Anna Bryant's Surgery and Alleged Injuries.**

Plaintiff Anna Bryant underwent CABG surgery on March 9, 2006. *Bryant* Am. Compl. ¶¶ 23-24. She alleges that the administration of Trasylol in that surgery caused her to suffer kidney failure requiring dialysis. *Id*. ¶¶ 25-27. Ms. Bryant contends that Bayer failed to provide adequate warnings to her physicians and that, had her physicians known about "the true facts concerning the risks of the use of Trasylol," they would not have administered Trasylol during her surgery. *Id.* ¶¶ 45, 60-61. She claims that Bayer is liable for her alleged injuries on theories of strict liability (defective design), *id*. ¶¶ 28-40; negligence in designing, testing, manufacturing, and promoting Trasylol and in warning about its risks, *id*. ¶¶ 41-49; fraudulent misrepresentation and suppression concerning the safety and efficacy of Trasylol, *id*. ¶¶ 50-63; breach of warranties, *id*. ¶¶ 64-75; and unfair trade practices, *id*. ¶¶ 76-84.

**William Cyrus Morrill III's Surgery and Alleged Injuries.**

Plaintiff Melissa Morrill's decedent, William Cyrus Morrill, III, underwent open heart surgery on October 3, 2003. *Morrill* 2d Am. Compl. ¶ 31. Plaintiff Morrill alleges that the

---

deposition designations in the *Bryant* case include hours of testimony concerning the i3 study from multiple witnesses, including Allen Heller, Paul MacCarthy, Kemal Malik, Edwin Tucker, Alexander Walker, Ernst Weidmann, and Stephen Zaruby. In addition, at least one of plaintiffs' experts, Suzanne Parisian, is expected to offer opinion testimony about Bayer's conduct related to the i3 study. A ruling on this motion now will likely spare the parties hours of discussion regarding deposition designations and admissibility of exhibits, and it will relieve the Court of the need to resolve disputes about these issues.

[2] Bayer does not seek through this motion to bar all references to the i3 study. Assuming a proper foundation is laid, the results of that study may, for example, be relied upon by experts or may even be admissible for other purposes.

administration of Trasylol in that surgery caused her decedent to suffer heart attacks, heart failure, kidney failure, and death. *Id*. ¶¶ 32-36. Specifically, she alleges that no adequate warnings were given to the decedent's doctors, and that Trasylol would not have been administered had the surgeons known "the true facts concerning the risks" of Trasylol. *Id.* ¶¶ 93, 97, 107-09. Plaintiff Morrill claims that Bayer is liable for these alleged injuries on theories of negligence in designing, manufacturing, marketing, selling, and promoting Trasylol and in warning about its risks, *id*. ¶¶ 61-74; strict liability (defective design and failure to warn), *id*. ¶¶ 75-98; and negligent misrepresentation concerning the safety of Trasylol, *id*. ¶¶ 99-112.

**Naguib Bechara's Surgery and Alleged Injuries.**

Plaintiff Naguib Bechara was administered Trasylol on December 21, 2004. *Bechara* Compl. ¶ 4. He alleges that Trasylol caused him to suffer renal dysfunction and kidney failure that has required him to undergo painful and debilitating medical treatments, as well as emotional injury, financial loss, and loss of consortium. *Id.* Among other things, Mr. Bechara asserts that Bayer failed to provide adequate and timely warnings to his physicians and that, had such warnings been provided, his physicians never would have prescribed Trasylol. *Id.* (incorporating by reference allegations in plaintiffs' Master Complaint). Plaintiff Bechara claims that Bayer is liable for his alleged injuries on theories of strict liability (failure to warn and design defect), negligence, negligence *per se*, fraud, misrepresentation, and suppression, constructive fraud, breach of implied warranties, unfair and deceptive trade practices, unjust enrichment, and gross negligence. *Id.* at ¶ 5.

**The i3 Study.**

In January 2006, the *New England Journal of Medicine* published an article by Dr. Dennis Mangano and others reporting on an observational study that purported to find an

3

increased incidence of certain adverse outcomes, including an increased rate of kidney problems, among patients who received Trasylol during heart surgery. The same month, the journal *Transfusion* published an article by Dr. Keyvan Karkouti and others reporting an observational study which suggested that Trasylol may be associated with increased incidence of renal dysfunction. In the months following those publications, Bayer and FDA took a number of steps to reevaluate the safety of Trasylol. FDA called for a meeting of an Advisory Committee of experts to address Trasylol clinical data and invited Bayer, Dr. Mangano, Dr. Karkouti and others to participate. The Advisory Committee set September 21, 2006, as the date for its meeting.

In addition to preparing to present its clinical trial data and other information about Trasylol to the Advisory Committee, Bayer explored the possibility of commissioning an observational study that would examine the safety of Trasylol. *See* Deposition of Ernst Weidmann ("Weidmann Dep.") (Ex. A) at 490-92. The research firm i3 Drug Safety ("i3") was chosen to conduct the study, and it was approved in June 2006. *See id.* at 492. Dr. Ernst Weidmann, a Bayer Drug Safety employee in Germany, signed a contract with i3 on June 19, 2006. *See* Services Agreement between Bayer and i3 Drug Safety (Ex. B). Bayer did not tell FDA that Bayer had commissioned the study until after the September 21, 2006, Advisory Committee meeting. *See* Sept. 28, 2006, Contact Reports (Exs. C and D).

Dr. Weidmann and Dr. Kuno Sprenger, another Bayer Drug Safety employee located in Germany who reported to Dr. Weidmann, received a preliminary report from i3 on or about September 14, 2006, just one week before the Advisory Committee meeting. When they received the preliminary report, Drs. Weidmann and Sprenger had concerns about flaws in the study methodology, and asked i3 to address their concerns. Weidmann Dep. at 513; Deposition

4

of Kuno Sprenger ("Sprenger Dep.") (Ex. E) at 81-83.  Drs. Weidmann and Sprenger did not inform anyone else at Bayer that they had received the preliminary report.  Weidmann Dep. at 721; Sprenger Dep. at 82.

A week later, on September 21, 2006, the FDA Advisory Committee meeting convened.  Bayer did not inform FDA that a preliminary report of the i3 study had been received on September 14, 2006, because no one at the meeting from Bayer except for Drs. Weidmann and Sprenger (who had not yet received a response from i3 to their concerns about the study's validity) knew about its existence.  *See* Deposition of Michael Rozycki (Ex. F) at 776-77.  On September 27, 2006, six days after the Advisory Committee meeting and shortly after additional Bayer personnel learned that a preliminary report had been received, Bayer informed FDA about the preliminary i3 report and submitted the report and related information to the agency.

## ARGUMENT

**I.   EVIDENCE OR ARGUMENT ABOUT THE TIMING OF BAYER'S DISCLOSURE OF THE i3 STUDY AND ITS PRELIMINARY RESULTS IS IRRELEVANT TO THESE ACTIONS.**

The events surrounding the commencement of the i3 study and the disclosure by Bayer of its preliminary findings are irrelevant in the *Bryant*, *Morrill*, and *Bechara* cases.  The i3-related events took place *after* Ms. Bryant, Mr. Morrill, and Mr. Bechara had their heart surgeries.  Even assuming that Bayer had a legal duty to disclose the existence of the on-going study or the preliminary results (and it did not), that failure to disclose took place between June and September 2006, months and years after the surgeries of Ms. Bryant, Mr. Morrill, and Mr. Bechara.[3]  Disclosure or non-disclosure would have had no effect on their outcomes.

---

[3] Plaintiffs should also be precluded from offering evidence, testimony, or argument related to the independent investigation conducted by Zuckerman Spaeder of the circumstances surrounding the timing of the disclosure of the i3 study and preliminary report.  That investigation took place even later than the events surrounding the disclosure of the preliminary

5

Plaintiffs' core claim is that Bayer failed adequately to warn about the risks of Trasylol.  *See* Master Complaint ¶¶ 54-61, 82; *Bryant* Am. Compl. ¶¶ 45, 54, 80; *Morrill* 2d Am. Compl. ¶¶ 65, 70, 92-93; *Bechara* Compl. ¶ 5.  To support that claim (whether on a theory of negligence or strict liability), plaintiffs "must prove that [Bayer's] alleged failure to warn or inadequate warning was a 'substantial factor' in bringing about" their injuries.  *Motus* v. *Pfizer Inc.*, 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001) (applying California law); *accord Walls* v. *Armour Pharm. Co.*, 832 F. Supp. 1467, 1494-95 (M.D. Fla. 1993) (applying Florida law).[4] Under the learned intermediary doctrine, this inquiry focuses upon the adequacy of the warnings that were provided to the treating physician.  Plaintiffs must establish that their treating physicians relied on the allegedly inadequate warnings in making their treatment decisions and that a different warning would have made a difference to the treatment decision.  *See Carlin* v. *Superior Court*, 920 P.2d 1347, 1354 (Cal. 1996) ("in the case of prescription drugs, the duty to warn runs *to the physician*, not to the patient") (citations omitted) (emphasis in original); *Huntman* v. *Danek Med., Inc.*, No. 97-2155, 1998 WL 663362, *5 (S.D. Cal. July 24, 1998) (dismissing claims because liability in prescription drug cases depends on the treating doctor's reliance on representations by the defendant); *Upjohn Co.* v. *MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990) ("manufacturer's duty to warn of the drug's dangerous side effects is directed to the physician rather than the patient").[5]

---

i3 results.  Accordingly, this evidence is even more remote from plaintiffs' claims and is irrelevant for all the same reasons explained above.

[4]   California substantive law applies in the *Bryant* and *Bechara* cases.  *See* Bayer's Mot. for Summ. J. and Supporting Mem. at 3 & n.1, *Bryant* v. *Bayer Corp.*, No. 9:08-cv-80868 (S.D. Fla. Jan. 22, 2010) (D.E. 3822).  *Morrill* is controlled by Florida law.  On this issue the law is substantially the same.  *See* Bayer's Mot. for Summ. J. and Supporting Mem., *Morrill* v. *Bayer Corp.*, No. 9:08-cv-80424 (S.D. Fla. Jan. 22, 2010) (D.E. 3811).

[5]   *See also Bryant* Am. Compl. ¶¶ 60-62 (alleging that plaintiff's physician relied on misrepresentations and omissions by Bayer in making the decision to use Trasylol); *id.* ¶¶ 68, 74

6

The i3 study was commissioned in June 2006. The preliminary report of the study did not exist—and conduct related to the disclosure of the preliminary report did not occur—until September 2006. These i3-related events occurred months after Ms. Bryant's surgery in March 2006, nearly a year and a half after Mr. Bechara's surgery in December 2004, and more than two and a half years after Mr. Morrill's surgery in October 2003. When Ms. Bryant's, Mr. Morrill's, and Mr. Bechara's surgeons made their decisions to use Trasylol, *the i3 study had not even been approved or commenced*. Accordingly, plaintiffs' physicians could not possibly have relied on any alleged representation or concealment related to the i3 study in making decisions concerning the use of Trasylol during the surgeries in *Bryant*, *Morrill*, and *Bechara*. Nor could Bayer possibly have informed these doctors about the i3 study or its preliminary results. The study did not exist when these doctors decided to use Trasylol. Therefore, such evidence is irrelevant to plaintiffs' claims and is inadmissible in their cases. *See*, *e.g.*, *Skibniewski* v. *American Home Prods. Corp.*, No. 99-0842, 2004 WL 5628157, *4-5 (W.D. Mo. Apr. 1, 2004) (granting motion *in limine* to exclude evidence of drug's prior warning where plaintiff could not show that warning had any effect on doctor's decision to prescribe drug and was therefore irrelevant). *See generally Motus*, 196 F. Supp. 2d at 996 (granting summary judgment for the defendant in a prescription drug case where there was "no evidence that [the prescribing doctor] relied on statements from Pfizer in making his decision to prescribe Zoloft to" the plaintiff's decedent); *Baker* v. *Danek Med.*, 35 F. Supp. 2d 875, 878 (N.D. Fla. 1998)

---

(alleging that plaintiff and her physicians "relied to [their] detriment" on defendants' warranties); *id.* ¶ 79 (alleging that defendants' misrepresentations were "intended to and did affect the decisions of consumers and their heath care providers" to use Trasylol); *Morrill* 2d Am. Compl. ¶ 107 (alleging that decedent's surgeon "was induced to and did administer Aprotinin" in reliance on Bayer's "misrepresentations"); *Bechara* Compl. ¶ 5 (incorporating by reference allegations in plaintiffs' Master Complaint that physicians were induced to and did administer Trasylol in reliance upon defendants' misrepresentations).

(dismissing negligent misrepresentation/strict liability claim because physician "did not rely upon any representation, brochure or label in deciding to use" defendant's medical device).[6]

## II. EVIDENCE OR ARGUMENT REGARDING A DELAY IN DISCLOSING THE i3 STUDY AND PRELIMINARY RESULTS SHOULD BE EXCLUDED UNDER RULE 403.

Evidence about Bayer's timing in disclosing the i3 study and preliminary results also should be excluded because any marginal probative value (and there is none) is substantially outweighed by the risk of unfair prejudice and misleading and confusing the jury. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

---

[6] Likewise, evidence about the timing in disclosing the i3 study is not relevant to Plaintiff Bryant's fraud and breach of warranty claims, Plaintiff Morrill's negligent misrepresentation claim, or Plaintiff Bechara's fraud or breach of warranty claims, all of which require proof of reliance on purported representations or omissions. *See Huntman*, 1998 WL 663362 at *4-5; *Wiener* v. *Dannon Co.*, 255 F.R.D. 658, 668 (C.D. Cal. 2009) ("reliance is an element of Plaintiff's causes of action based on breach of warranty"); *Conrad* v. *Bank of Am.*, 45 Cal. App. 4th 133,156 (Cal. Ct. App. 1996) ("justifiable reliance" is an element of fraud claim); *Baker*, 35 F. Supp. 2d at 878 (reliance is an element of negligent misrepresentation). Such evidence is likewise irrelevant to plaintiffs' defective design claims, which require proof that the alleged design defect proximately caused the alleged injuries. *See Johnson* v. *Honeywell Int'l Inc.*, 101 Cal. Rptr. 3d 726, 734 (Cal. App. 2009); *Barrow* v. *Bristol-Myers Squibb*, No. 96-689-CIV, 1998 WL 812318, at *27 (M.D. Fla. Oct. 29, 1998). Moreover, any delay in disclosing preliminary results from an epidemiological study conducted after plaintiffs and plaintiff's decedent were administered the drug does not bear on the issue of the safety of Trasylol's design. Similarly, any potential claim under the Connecticut Unfair Trade Practices Act ("CUTPA") raised by Plaintiff Bryant—and there is none (*see* Bayer's Mot. For Summ. J. at 7-8)—would require proof of causation, *see Ramirez* v. *Health Net of Ne., Inc.*, 938 A.2d 576, 588-89 (Conn. 2008) (CUTPA reaches certain losses caused "as a result of" the prohibited conduct). Plaintiff Bechara's deceptive trade practices and unjust enrichment claims likewise require a showing that the alleged injuries are tied to defendants' conduct. *See, e.g.*, *Buckland* v. *Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809 (Cal. Ct. App. 2007) (causation is a necessary element of proof under California's Consumer Legal Remedies Act); *Peterson* v. *Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (Cal. Ct. App. 2008) (elements of unjust enrichment claim include receipt of a benefit and the unjust retention of the benefit *at the expense of another*). Plaintiff Bechara's constructive fraud claim has been dismissed pursuant to this Court's orders of April 1, 2009, and March 5, 2009.

evidence."). Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis." *Old Chief* v. *United States*, 519 U.S. 172, 180 (1997).

Matters relating to the delay in disclosing the existence of and preliminary results from the i3 study would do just that. Given its total lack of relevance to these cases, any argument that Bayer concealed information about the i3 study between June and September 2006 invites the jury improperly to determine liability on grounds other than the merits of plaintiffs' claims, which arose from surgeries that occurred months or years earlier. *See Kociemba* v. *G.D. Searle & Co.*, 683 F. Supp. 1582, 1583-84 (D. Minn. 1988) (excluding as irrelevant and highly prejudicial FDA task force report that generally criticized defendant's laboratory testing and data reporting procedures because exclusion "is the only way to ensure a fair trial based on the merits of the case"); *see also United States* v. *Rothenberg*, No. 08-20397, 2009 WL 742551, *2 (5th Cir. Mar. 23, 2009) (district court abused its discretion in admitting an article stating that unrelated individuals were harmed by a similar product two months after the defendant stopped using the product at issue).

Furthermore, explaining the circumstances surrounding the timing of the disclosure of the study and its preliminary results would devolve into a trial-within-a-trial and waste considerable Court and juror time on issues that are not even tangentially related to these plaintiffs' claims. In addition to hours of videotaped deposition testimony plaintiffs have designated, plaintiffs also intend to call one or more experts to discuss and opine on Bayer's conduct relating to the i3 study, applying their view of the legal and ethical requirements applicable to Bayer. *See*, *e.g.*, Expert Report of Suzanne Parisian, M.D. (excerpts at Ex. G) at 99 (Aug. 18, 2009) (speculating that if Bayer had fully disclosed the i3 Safety Study to FDA prior to the Advisory Committee meeting, "[t]he outcome of the meeting would have been different"); *id.*

9

¶¶ 305-317 (discussing disclosure of the i3 Drug Safety Study). This will likely require Bayer to counter-designate additional hours of video deposition testimony and call live fact witnesses and experts to rebut plaintiffs' evidence. All told, this would consume an extraordinary amount of time and would undermine the ability to complete these trials in a 2½- to 3-week timeframe. Considerable time and resources—both pre-trial and at trial—would be spent discussing events that happened long after the plaintiffs were administered Trasylol. This would not only be a waste of the jury's time; it would waste the jury's time on issues that should form no basis for their decision in this case. But spending time on these issues at trial will suggest otherwise to the jury and invite the jury to decide the case based upon events that had nothing to do with plaintiffs' surgeries or their doctors' decisions to use Trasylol.

Weighing the complete lack of probative value against the clear risks of prejudice and jury confusion, the balance decidedly favors excluding this evidence under Rule 403.

## CONCLUSION

For these reasons, Bayer respectfully requests that this Court exclude evidence, testimony, and argument related to Bayer's alleged delay in disclosing the existence of the i3 study and the preliminary results from that study.

## RULE 7.1(A)(3) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good

faith with counsel for all parties who may be affected by the relief sought in the motion, and has been advised that plaintiffs will contest this motion.

January 29, 2010            Respectfully submitted,

           */s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
E-mail: plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail: blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile: 561-655-1509

Philip S. Beck
Email: philip.beck@bartlit-beck.com
Steven E. Derringer
Email: steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL 60603
Telephone: 312-494-4400
Facsimile: 312-494-4440

Eugene A. Schoon
Email: eschoon@sidley.com
Susan A. Weber
Email: saweber@sidley.com
Catherine Valerio Barrad
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone: 312-853-7000
Facsimile: 312-853-73036

Rebecca K. Wood
Email:  rwood@sidley.com
Richard H. Menard, Jr.
Email:  rmenard@sidley.com
Amy L. Hanke
Email:  ahanke@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:  202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN &**
   **MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Schering Pharma AG*

**CERTIFICATE OF SERVICE**

      I hereby certify that on January 29, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                    */s/ Barbara Bolton Litten*
                                                    Barbara Bolton Litten

SERVICE LIST

In re Trasylol Products Liability Litigation – MDL-1928
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

**United States District Court
Southern District of Florida**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,
    FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
    & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN
    FRYE O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone: 813-223-7474
Facsimile:  813-229-6553
*Counsel for Plaintiff Melissa Morrill*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs
and Counsel for Plaintiff Anna Bryant*

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:  713-222-0066
*Counsel for Plaintiff Naguib Bechara*

| | |
|---|---|
| Tamara L. Banno<br>Email: tbanno@tlb-law.com<br>**TAMARA L BANNO PC**<br>3031 Allen Street, Suite 100<br>Dallas , TX 75204<br>Telephone:  214-761-6610<br>Facsimile:  214-761-6688<br>*Counsel for Plaintiff Naguib Bechara* | Tim K. Goss<br>Email: goss39587@aol.com<br>**FREESE &GOSS PLLC**<br>3031 Allen Street, Suite 100<br>Dallas , TX 75204<br>Telephone:  214-761-6610<br>Facsimile:  214-761-6688<br>*Counsel for Plaintiff Naguib Bechara* |

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*