UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION — MDL-1928<br><br>THIS DOCUMENT RELATES TO:<br><br>*Anna Bryant* v. *Bayer Corp. et al.*,<br>Case No. 9:08-cv-80868<br><br>*Melissa Morrill* v. *Bayer Corp. et al.*,<br>Case No. 9:08-cv-80424<br><br>*Naguib Bechara, et al.* v. *Bayer Corp., et al.*,<br>Case No. 9:08-cv-80776 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT ALLEGING THAT BAYER PROVIDED INADEQUATE OR INCOMPLETE DATA TO THE FEDERAL FOOD AND DRUG ADMINISTRATION**

Defendants move the Court *in limine* to preclude plaintiffs from offering evidence, testimony, or argument that Bayer allegedly failed to provide more timely or different information to the federal Food and Drug Administration ("FDA") in connection with the marketing and sale of its prescription drug Trasylol—or speculating about what FDA might have done with such information.

The United States Supreme Court has held that state-law claims based on a theory that a plaintiff's injuries are the result of a pharmaceutical defendant's failure to provide different information to FDA are preempted by federal law. *Buckman Co.* v. *Plaintiffs' Legal Comm.*, 531 U.S. 341, 350-51 (2001). *Buckman* makes clear that the adequacy of regulatory submissions to FDA is an issue that can be determined by FDA alone, and may not be considered by juries applying the divergent law of 50 States. Therefore, plaintiffs cannot attempt to prove their state-

law claims against Bayer by arguing that Bayer's submissions to FDA were insufficient—or speculating about what the agency might have done with different information. Any evidence, testimony or argument to this effect should be excluded.

## REGULATORY BACKGROUND

***FDA's Regulation of Prescription Drugs.*** The Federal Food, Drug & Cosmetics Act ("FDCA") charges FDA with the duty to ensure that "drugs are safe and effective." 21 U.S.C. § 393(b)(2)(B). FDA's determination that a drug "is 'safe' and 'effective' for its intended use" is "one of the [FDCA]'s core objectives." *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). In making such determinations, FDA has responsibility for "promptly and efficiently reviewing clinical research and taking appropriate action on the marketing of regulated products in a timely manner." 21 U.S.C. § 393(b)(1). FDA's review of scientific and clinical research with respect to a new drug begins long before a new drug is approved to be marketed to the public. Before a pharmaceutical company can market a new drug, it must submit to FDA a "new drug application" that includes (1) pharmacology and toxicology studies concerning the drug and its possible adverse side effects, (2) human pharmacokinetics and bioavailability studies concerning the drug, and (3) clinical studies concerning the safety and effectiveness of the drug in humans. 21 U.S.C. § 355(b); 21 C.F.R. §§ 314.50(d)(2), (3), (5).

FDA reviews these clinical and scientific data to determine if the drug meets the statutory standards of safety and effectiveness. 21 U.S.C. §§ 355, 393(b)(2)(B); 21 C.F.R. § 314.105(c). That review requires FDA "to exercise its scientific judgment to determine the kind and quantity of data and information an applicant is required to provide for a particular drug to meet the statutory standards." 21 C.F.R. § 314.105(c). Ultimately, FDA can approve a new drug for sale only after it is satisfied that the clinical and other scientific research provides

sufficient evidence of a drug's safety and effectiveness.  21 U.S.C. §§ 355(b), (d); 21 C.F.R. §§ 314.105, 314.125, 314.126.  FDA also exercises continuing oversight of drugs after they have been approved for sale in the United States.  Among other reporting requirements, drug sponsors must provide to FDA both contemporaneous reporting of serious and unexpected adverse drug experiences and periodic reporting of subsequent published clinical trials concerning the drug. 21 C.F.R. §§ 314.80, 314.81, 21 U.S.C. § 355(k).  FDA determines whether these data call into question the safety or effectiveness of the new drug and what response, if any, is warranted.  *See*, *e.g.*, 21 C.F.R. §§ 314.50, 314.150(a),(b),(d).  If FDA concludes that a drug is either unsafe or ineffective, FDA is required to withdraw its approval for marketing the drug after providing "notice and opportunity for hearing to the applicant."  21 U.S.C. § 355(e)(1)-(2), (4)-(5); *see Brown & Williamson*, 529 U.S. at 134.

The FDCA authorizes FDA alone to enforce compliance with its disclosure and other provisions.  *See* 21 U.S.C. § 337(a) ("all . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States").  In exercising its enforcement prerogatives, FDA may investigate suspected fraud or misrepresentations by the manufacturer.  *Id.* § 372.  Should FDA find a problem, it has a range of options, including *in rem* forfeiture, injunction, and criminal prosecution against the responsible party if a "misbranded" drug is distributed in the United States market.  See *id.* § 332(a) (injunctions); *id.* § 333 (criminal penalties); *id.* § 334(a) (seizure); and *id.* § 337(a) (enforcement proceedings); *Merrell Dow Pharms. Inc.* v. *Thompson*, 478 U.S. 804, 810-12 (1986); *id.* at 830 (Brennan, J., dissenting) ("Congress has provided the FDA with a wide-ranging arsenal of weapons to combat violations of the FDCA").  The FDCA provides for civil and criminal penalties for false or misleading

3

disclosures to the agency, *e.g.*, 21 U.S.C. §§ 332, 333(a) and (g)(1)(A).[1] FDA's regulations also provide a vehicle for citizens to report alleged violations, including fraud, to FDA and petition the agency to take regulatory or enforcement action. *See* 21 C.F.R. § 10.30 (allowing citizens to request that the agency "issue, amend, or revoke a regulation or order or take or refrain from taking any other form of administrative action"); *Buckman*, 531 U.S. at 349.

*FDA's Regulation of Trasylol.* Trasylol was approved by FDA before Bayer began marketing it in the United States. Specifically, in December 1993, FDA approved Bayer's application to market Trasylol for prophylactic use to reduce perioperative blood loss and the need for blood transfusion in patients undergoing cardiopulmonary bypass in the course of repeat coronary artery bypass graft ("CABG") surgery and for selected cases of primary CABG surgery where the risk of bleeding is especially high. After initial approval, the labeling for Trasylol was revised several times. For example, Trasylol's approved indication was modified in September 1998 to encompass all patients undergoing cardiopulmonary bypass in the course of CABG surgery. The indication was again revised in December 2006 to CABG patients found to be at an increased risk for blood loss or blood transfusion. As part of this regulatory process FDA approved all of the warnings and other information that accompanied Trasylol.

FDA has never determined that Bayer failed to comply with FDCA standards for disclosing information to the agency about Trasylol. At no time did FDA determine that Bayer

---

[1] Congress has provided FDA with express statutory discretion to impose less stringent measures where the agency deems it appropriate. *See* 21 U.S.C. § 336 ("Nothing in [FDCA] shall be construed as requiring [FDA] to report for prosecution, or for the institution of libel or injunction proceedings, minor violations of this chapter whenever [FDA] believes that the public interest will be adequately served by a suitable written notice or warning."); *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985) (holding that the "agency's decision *not* to prosecute or enforce . . . is a decision generally committed to an agency's absolute discretion") (emphasis added).

4

improperly withheld material information from the agency.[2]  Nor did FDA opine that any non-disclosure affected the agency's decisions about whether Trasylol should continue to be marketed.  Further, FDA has never withdrawn its approval for the marketing of Trasylol.

## ARGUMENT

**I.   EVIDENCE OR ARGUMENT THAT BAYER FAILED TO PROVIDE SUFFICIENT INFORMATION TO FDA IS IRRELEVANT BECAUSE STATE-LAW CLAIMS BASED UPON THAT THEORY OF RELIEF ARE PREEMPTED BY FEDERAL LAW.**

Bayer anticipates that plaintiffs may argue that Bayer did not disclose certain scientific data to FDA and also try to speculate that the agency would have made different decisions regarding approval, warnings, and labeling for Trasylol had Bayer provided FDA with this information earlier.  Specifically, plaintiffs have questioned several Bayer witnesses about the timing of Bayer's disclosure of three company-funded studies to FDA—the Kress study,[3] the

---

[2] Nor could plaintiffs gain any mileage by pointing to any informal comments by individual FDA reviewers, or advisory committee members, that they might have liked to see certain information sooner.  *See, e.g.*, Pls.' Opp. to Bayer's Mot. to Exclude Test. of Pls.' Expert Mark J. Eisenberg at 8 (quoting statement by Advisory Committee panel member speculating that he "believe[s] there could have been another outcome to the panel hearing" had Bayer disclosed the i3 preliminary report earlier) (D.E. 3840); *see also* Expert Report of Suzanne Parisian, M.D. ("Parisian Report") (excerpt at Ex. A) at 99 (Aug. 18, 2009) (opining that if Bayer had fully disclosed the i3 study to FDA prior to the Advisory Committee meeting, "[t]he outcome of the meeting would have been different . . .").  Informal communications from individual FDA reviewers do not constitute formal agency action and are not binding upon the agency or persons outside the agency.  *See* 21 C.F.R. § 10.85(k) ("A statement or advice given by an FDA employee orally, or given in writing but not under this section or §10.90, is an informal communication that represents the best judgment of that employee at that time but does not constitute an advisory opinion, does not necessarily represent the formal position of FDA, and does not bind or otherwise obligate or commit the agency to the views expressed."); *Schering-Plough Healthcare Prods. Inc.* v. *Schwarz Pharma, Inc.*, 547 F. Supp. 2d 939, 947 (E.D. Wis. 2008) (citing cases); *DePriest* v. *AstraZeneca Pharms. L.P.*, 2009 Ark. LEXIS 722, at *25 n.11 (Ark. Nov. 5, 2009) ("statements in a medical review do not reflect the conclusions of the FDA").

[3] The Kress study is a retrospective observational study conducted by Dr. David Kress at St. Luke's Medical Center with a primary endpoint of atrial fibrillation.  A draft report of the study was prepared in 2003, but a final report was never completed or published.

St. George's Hospital study,[4] and the preliminary results of the i3 study.[5] *See, e.g.*, Deposition of Jennifer Maurer ("Maurer Dep.") (Ex. B) at 301:6-313:4 (Kress); *id.* at 350:14-351:20 (St. George's Hospital); *id.* at 635:23-636:12 (i3). In addition, plaintiffs' putative FDA regulatory expert, Suzanne Parisian, opines in her expert report that Bayer disregarded its obligation and duties for providing FDA timely and accurate reports of risks associated with Trasylol, including the St. George's study, the Kress study, and the preliminary i3 report. *See* Parisian Report (excerpt at Ex. A) at 99 (Opinion 5).

Plaintiffs cannot attempt to prove their state-law causes of action by asserting that Bayer's submissions to FDA on these and similar matters were untimely, incomplete, or inadequate. In *Buckman*, the Supreme Court held that a state-law claim premised on allegations that a manufacturer provided deficient information to FDA that affected the approval decision for a medical device was preempted by the FDCA. 531 U.S. at 343; *id.* at 349 n.4 ("it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance" with the FDCA or its regulations); *accord* 21 U.S.C. § 337. The Supreme Court held that such "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's

---

[4] The St. George's Hospital study is a retrospective observational study conducted at the St. George's Hospital in London, England that focused on health-economics outcomes. The final study report is dated December 11, 2003. In response to a request for information from FDA, Bayer provided the study to FDA on November 10, 2006.

[5] *See* Defs.' Mot. to Exclude Evidence and Argument Regarding the Timing of Bayer's Disclosure of the i3 Drug Safety Study and Preliminary Results from that Study, *Bryant* v. *Bayer Corp.*, No. 9:08-cv-80868; *Morrill* v. *Bayer Corp.*, No. 9:08-cv-80424; *Bechara* v. *Bayer Corp.*, No. 9:08-cv-80776 (S.D. Fla. Jan. 29, 2010). As addressed in defendants' separate motion, the i3 study is an observational study involving Trasylol and aminocaproic acid conducted by Dr. Alexander Walker of i3 Drug Safety. Two employees of Bayer HealthCare AG received a preliminary report of the study results on September 14, 2006. Bayer provided the preliminary report and related information to FDA on September 27, 2006.

responsibility to police fraud consistently with the Administration's judgment and objectives."

*Id.* at 350.  The *Buckman* Court explained that:

> fraud-on-the-FDA claims would also cause applicants to fear that their disclosures to the FDA, although deemed appropriate by the Administration, will later be judged insufficient in state court.  Applicants would then have an incentive to submit a deluge of information that the Administration neither wants nor needs, resulting in additional burdens on the FDA's evaluation of an application.

*Id.* at 351.  The Court further concluded that "complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes w[ould] dramatically increase the burdens facing potential applicants—burdens not contemplated by Congress . . . ."  *Id.* at 350.  Therefore, the Court held that federal law preempted any state-law claims predicated on allegations that a manufacturer provided false or inadequate disclosures to FDA.  *Id.* at 353.

Numerous courts have held that plaintiffs may not evade § 337 and *Buckman* by claiming that a violation of the FDCA gives rise to their asserted state-law causes of action.  *See*, *e.g.*, *Riley* v. *Cordis Corp.*, 625 F. Supp. 2d 769, 776-77 (D. Minn. 2009) ("[A] private litigant cannot sue a defendant for violating the FDCA.  Similarly, a private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA . . . ."); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, No. 05-md-1699, 2006 WL 2374742, at *10 (N.D. Cal. Aug. 16, 2006) (citing *Buckman* and holding that "[t]he law is well established that a claim premised on a drug manufacturer's failure to provide data to the FDA is preempted").[6]

---

[6] *See*, *e.g.*, *Hughes* v. *Boston Sci. Corp.*, __ F. Supp. 2d __, 2009 WL 3817586, at *9-14 (S.D. Miss. Nov. 12, 2009) (applying *Buckman* and rejecting argument that alleged FDCA violation created state-law negligence *per se* claim); *Perez* v. *Nidek Co.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009) ("The Court will not permit Plaintiffs to privately enforce the FDCA and its regulations under the guise of state law claims."); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *10 (D.N.J. July 10, 2009) (dismissing consumer fraud claim because it was "plainly an impermissible attempt … to turn

7

Faced with similar circumstances, other federal courts have precluded plaintiffs from introducing such evidence in support of their state law claims.  *See*, *e.g.*, *In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, No. 05-md-1699, slip op. at 2 (granting motion *in limine* "to exclude evidence that Pfizer provided inadequate information to the FDA") (N.D. Cal. Apr. 30, 2008) (attached as Ex. C).  For example, in *Bouchard* v. *American Home Products Corp.*, 213 F. Supp. 2d 802 (N.D. Ohio 2002), the court relied on *Buckman* in granting the defendant's motion *in limine* to exclude "any evidence or argument that [the defendant] 'misled' [FDA] . . . or 'violated' the [FDCA] . . . .'"  *Id.* at 811 (citation omitted).  The *Bouchard* court held that "[e]vidence will be excluded outright when it is offered only to show that the FDA was misled, or that information was intentionally concealed from the FDA.  Exclusion of further evidence may be necessary to prevent confusion of the jury as to the nature of [plaintiff's] claims."  *Id*. at 812.  Similarly, in *Swank* v. *Zimmer*, No. 03-cv-60, 2004 WL 5254312 (D. Wyo. Apr. 20, 2004), the court granted the defendant's motion *in limine* to exclude evidence of alleged misrepresentations to the FDA.  *Id.* at *2.  Citing *Buckman*, the court concluded that plaintiff would not be permitted to "present evidence that Defendant misled the FDA . . . [or] that Defendant failed to inform the FDA of certain testing."  *Id.*; *see also Webster* v. *Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36-37 (D.D.C. 2003) (holding that, under *Buckman*, "what was told to the FDA cannot support a tort claim").

Because plaintiffs may not assert state-law claims based upon the alleged inadequacy of information provided to FDA, any evidence or argument that Bayer concealed

---

violations of the FDCA … into a private right of action"); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, No. MDL 1934, 2009 WL 1703285, at *5 (C.D. Cal. June 17, 2009) (dismissing claims that "attempt[ed] to shoehorn allegations that [defendant] ... violat[ed] the FDCA into ... state consumer fraud causes of action"); *see also Nathan Kimmel, Inc.* v. *DowElanco*, 275 F.3d 1199, 1204-06 (9th Cir. 2002) (applying *Buckman* and holding that claim

8

scientific data or provided insufficient submissions, or speculation about what the agency would have done with different information, is irrelevant and should be excluded. To be clear, Bayer does not contend that all correspondence between it and FDA is irrelevant. Rather, Bayer submits that under *Buckman*, any argument that Bayer's communications or submissions were not timely, not complete, or could have included different or "better" information—or speculation about how the agency would have responded to different information—is irrelevant and inadmissible because the sufficiency of submissions to FDA is to be judged solely by FDA, not juries addressing the law of fifty States.[7]

## II. EVIDENCE OF ANY ALLEGED INADEQUATE DISCLOSURES TO FDA SHOULD BE EXCLUDED UNDER RULE 403.

Even if evidence or arguments regarding alleged inadequacies in Bayer's communications and submissions to FDA were relevant and otherwise admissible—and they are not—any probative value would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

The only possible reason for plaintiffs to introduce such evidence would be to argue to the jury that FDA would have reached a different decision regarding warnings or labeling for Trasylol if Bayer had provided more timely or "better" information. But what FDA *may* have done, if anything, with different data and how that information *may* have ultimately affected Trasylol's regulatory status, if at all, is precisely the type of speculation *Buckman* and Rule 403 prohibit. To allow such evidence "would be nothing more than an invitation for the

---

for "fraud against the EPA" is preempted).

[7] These principles apply equally to and require the exclusion of any similar evidence that plaintiffs may seek to present on the issue of punitive damages and under state-law safe harbors. *See, e.g.*, *In re Aredia & Zometa Prods. Liab. Litig.*, MDL 1760, 2009 WL 2497229, at *1-2 (M.D. Tenn. Aug. 13, 2009) (granting summary judgment in favor of defendants by applying rebuttable presumption under Florida law that drug was non-defective based upon its FDA approval, and holding that under *Buckman* plaintiff could not overcome that presumption

jury to speculate about what both the FDA [and plaintiff's physician] might do if the facts were different." *Webster*, 259 F. Supp. 2d at 37.

Thus, there is a danger that the jury would improperly impose liability upon Bayer under state law based on nothing more than speculation about the possibility that FDA may have reached an endless range of different decisions if "better" information had been provided, instead of focusing its attention on whether Trasylol is capable of causing and did cause the specific injuries about which plaintiffs complain, and the adequacy of warnings given to each plaintiff's physician (which are the proper focus of these cases). Additionally, the introduction of such evidence would have the consequence of delaying and extending the trial, as Bayer would be forced to explain at length to the jury the FDA regulatory process (though it has no direct bearing on the case) and to defend Bayer's actions before FDA. *See*, *e.g.*, *Ellis* v. *Int'l Playtex, Inc.*, 745 F.2d 292, 304-05 (4th Cir. 1984) (recognizing that it may take "considerable time and effort to explain" regulatory proceedings to a jury).

## CONCLUSION

For these reasons, Defendants respectfully request that this Court grant its motion to exclude evidence, testimony or argument regarding any alleged failure by Bayer to provide information to FDA, including, but not limited to, any evidence or argument that Bayer failed timely to disclose the Kress study, the St. George's Hospital study, or the i3 study.

## RULE 7.1(A)(3) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good

---

through arguments that FDA approval was improperly obtained).

faith with counsel for all parties who may be affected by the relief sought in the motion, and has been advised that plaintiffs will contest this motion.

January 29, 2010                              Respectfully submitted,

                                                                    */s/ Barbara Bolton Litten*
                                                                    Patricia E. Lowry
                                                                    Florida Bar No. 332569
                                                                    E-mail:  plowry@ssd.com
                                                                    Barbara Bolton Litten
                                                                    Florida Bar No. 91642
                                                                    E-mail:  blitten@ssd.com
                                                                    **SQUIRE SANDERS & DEMPSEY L.L.P.**
                                                                    1900 Phillips Point West
                                                                    777 South Flagler Drive
                                                                    West Palm Beach, FL  33401-6198
                                                                    Telephone:  561-650-7200
                                                                    Facsimile:   561-655-1509

                                                                    Philip S. Beck
                                                                    Email:  philip.beck@bartlit-beck.com
                                                                    Steven E. Derringer
                                                                    Email:  steven.derringer@bartlit-beck.com
                                                                    **BARTLIT BECK HERMAN PALENCHAR**
                                                                         **& SCOTT LLP**
                                                                    54 W. Hubbard Street, Suite 300
                                                                    Chicago, IL  60603
                                                                    Telephone:  312-494-4400
                                                                    Facsimile:   312-494-4440

                                                                    Eugene A. Schoon
                                                                    Email:  eschoon@sidley.com
                                                                    Susan A. Weber
                                                                    Email:  saweber@sidley.com
                                                                    Catherine Valerio Barrad
                                                                    Email:  cbarrad@sidley.com
                                                                    **SIDLEY AUSTIN LLP**
                                                                    One South Dearborn Street
                                                                    Chicago, Illinois 60603
                                                                    Telephone:  312-853-7000
                                                                    Facsimile:   312-853-73036

Rebecca K. Wood
Email:  rwood@sidley.com
Richard H. Menard, Jr.
Email:  rmenard@sidley.com
Peter C. Pfaffenroth
Email:  ppfaffenroth@sidley.com
Amy L. Hanke
Email:  ahanke@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:   202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN &
    MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation,
Bayer HealthCare Pharmaceuticals Inc.,
and Bayer Schering Pharma AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 29, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                /s/ Barbara Bolton Litten
                Barbara Bolton Litten

SERVICE LIST

In re Trasylol Products Liability Litigation – MDL-1928
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

**United States District Court
Southern District of Florida**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,
 FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
 & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN
 FRYE O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone:  813-223-7474
Facsimile:  813-229-6553
*Counsel for Plaintiff Melissa Morrill*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs
and Counsel for Plaintiff Anna Bryant*

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:  713-222-0066
*Counsel for Plaintiff Naguib Bechara*

| | |
|---|---|
| Tamara L. Banno<br>Email: tbanno@tlb-law.com<br>**TAMARA L BANNO PC**<br>3031 Allen Street, Suite 100<br>Dallas , TX 75204<br>Telephone:  214-761-6610<br>Facsimile:  214-761-6688<br>*Counsel for Plaintiff Naguib Bechara* | Tim K. Goss<br>Email: goss39587@aol.com<br>**FREESE &GOSS PLLC**<br>3031 Allen Street, Suite 100<br>Dallas , TX 75204<br>Telephone:  214-761-6610<br>Facsimile:  214-761-6688<br>*Counsel for Plaintiff Naguib Bechara* |

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*