## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:

*Naguib Bechara, et al., v. Bayer Corp., et al.*,
Case No. 9:08-cv-80776
_____/

### BAYER'S MOTION FOR SUMMARY JUDGMENT
### AND SUPPORTING MEMORANDUM OF LAW

PLEASE TAKE NOTICE that defendants Bayer Corporation, Bayer HealthCare

Pharmaceuticals Inc. (as successor in interest to Bayer Pharmaceutical Corp.), and Bayer

Schering Pharma AG (as successor in interest to Bayer Healthcare AG) (collectively, "Bayer")

move, under Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all

counts in plaintiffs' complaint.

### MEMORANDUM OF LAW

Plaintiff Naguib Bechara sued Bayer in July 2008 for kidney failure that he

suffered after a quadruple bypass surgery in December 2004.  His personal injury claims are

time-barred under California's two-year statute of limitations.

Mr. Bechara has not pled any facts in his complaint to support application of the

discovery rule; nor could he.  The record establishes that he and his wife Nabila Saad (who is

asserting derivative claims) began investigating the cause of his kidney failure in 2005 (at which

time they had access to medical records that explicitly referred to the administration of Trasylol),

considered whether his kidney failure was caused by medication, and decided in 2005 to bring a

medical malpractice claim against Kaiser Foundation Hospitals and related entities ("Kaiser").

Thus, even if he had pled the required facts in his complaint (which he did not), Mr. Bechara

cannot carry his burden of proving that he could not have suspected that he had a claim against

Bayer within the two years provided by California law.  *Norgart v. Upjohn Co.*, 21 Cal. 4th 383,

397 (1999); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988).

At the very latest, the widely-publicized publication in January 2006 of a *New

England Journal of Medicine* article asserting that Trasylol doubled the risk of post-operative

renal failure ("the Mangano article") – published in the midst of Mr. Bechara's arbitration

proceedings against the hospital (which resulted in a $900,000 settlement) – should have put Mr.

Bechara on notice of his claim against Bayer.  But Mr. Bechara waited until July 2008 to file his

complaint against Bayer – more than three-and-a-half years after his surgery and onset of renal

impairment; more than two-and-a-half years after he investigated his claims, hired counsel, and

filed his arbitration demand; and more than two years after the Mangano article was published.

Mr. Bechara's personal injury claims are therefore barred by California's two-year statute of

limitations for personal injury claims and this Court should grant summary judgment in Bayer's

favor.[1]

---

[1] Mr. Bechara filed his case in this District.  Under Florida law, statute of limitations choice of
law questions are considered "the same as 'substantive' choice of law questions."  *Merkle v.
Robinson*, 737 So. 2d 540, 542 (Fla. 1999); Fla. Stat. § 95.10 ("no action shall be maintained" in
Florida where it is barred in the state in which it "arose").  A cause of action "arises" in the state
with the "most significant relationship" to the claim.  *Bates v. Cook, Inc.*, 509 So. 2d 1112, 1114-
15 (Fla. 1987); *Garcia v. Public Health Trust of Dade County*, 841 F.2d 1062, 1064-65 (11th
Cir. 1988).  "[U]nder most circumstances, the state where the injury occurred will be 'the
decisive consideration in determining the applicable choice of law.'"  *Connell v. Riggins*, 944 So.
2d 1174, 1177 (Fla. App. 1st Dist. 2006) (quoting *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d

The remainder of the claims asserted by plaintiffs in this action should be dismissed as well:

- Plaintiffs' fraud claims should be dismissed in accordance with the Court's orders of March 5, 2009, and April 2, 2009 (Docket Entries 809 and 916, respectively, in 1:08-md-1928). *See* Argument, Section II, *infra*.

- Plaintiff Nabila Saad's loss of consortium claims are derivative of Mr. Bechara's personal injury claims, and therefore fail. *See* Argument, Section III, *infra*.

- The loss of consortium claims that Ms. Saad brings on behalf of the Becharas' son, Justin Bechara, are not recognized under California law. *See* Argument, Section III, *infra*.

- Mr. Bechara's claim for restitution under California's unfair business and trade practice laws fails because Mr. Bechara admitted that he did not pay for Trasylol and therefore cannot prove the essential elements of his claim. *See* Argument, Section IV, *infra*.

- California law does not recognize plaintiffs' claim for gross negligence. Nor does it recognize independent, stand-alone claims for unjust enrichment or punitive damages. *See* Argument, Sections V and VI, *infra*.

For these reasons, as set forth more fully in the sections that follow, Bayer respectfully requests that this Court grant summary judgment in its favor on all of plaintiffs' claims.

## BACKGROUND

### I.    DECEMBER 2004:  MR. BECHARA HAS QUADRUPLE BYPASS SURGERY.

At 1:00 a.m. on December 21, 2004, Mr. Bechara was rushed to the emergency room at Kaiser Permanente Anaheim Medical Center with chest pain.  Kaiser Foundation

---

999, 1001 (Fla. 1980)).  Here, it is clear that California has the most significant relationship to this action.  The plaintiffs are California residents.  Mr. Bechara's surgery took place in California.  His physicians administered Trasylol to him in California.  His alleged injuries and treatment occurred in California.  Accordingly, California law – including its statutes of limitations – should govern plaintiffs' claims.

Hospital Sunset ("KFH-Sun-MD") Medical Records (Ex. A) at 892.  Mr. Bechara already had

several cardiac risk factors, including obesity, tobacco use, asthma, chronic obstructive

pulmonary disease (COPD), hyperlipidemia, a history of hypertension, and family history of

cardiac disease.  Southern California Permanente Medical Group ("SCPMG") Medical Records

(Ex. B) at 310-12, 391-93, 713-14; Kaiser Permanente Los Angeles Medical Center

("KPLAMC-MD") Medical Records (Ex. C) at 10-12; Sept. 9, 2009, Deposition of Naguib

Bechara ("2009 Bechara Dep.") (Ex. D) at 70:11-23, 175:5-15.  The attending physician

diagnosed Mr. Bechara with "GI [gastrointestinal] atypical chest pain, secondary to GI cause."

SCPMG Med. R. (Ex. B) at 391-93.

After hours of repeated ventricular tachycardia, *id.* at 310-12, 391-93, a

cardiology examination revealed that Mr. Bechara had suffered an acute myocardial infarction.

*Id.*  The cardiologist recommended an immediate cardiac catheterization, *id.*, which showed

evidence of high grade coronary disease.  *Id.* at 396-97, 419, 788.  An intra-aortic balloon pump

was placed during the catheterization procedure to try to stabilize his blood pressure.  *Id.* at 396.

Mr. Bechara was then transferred by ambulance to Kaiser Foundation Hospital Sunset in Los

Angeles for quadruple coronary artery bypass graft ("CABG") surgery.  *Id.* at 788; KPLAMC-

MD Med. R. (Ex. C) at 31-33.  Trasylol was administered during that procedure.  KFH-Sun-MD

Med. R. (Ex. A) at 132-33.

Mr. Bechara experienced a number of post-operative complications.  He required

aggressive support to assist his blood circulation and blood pressure.  *Id.* at 171, 598, 615, 623.

He also required anti-arrhythmia drugs and a ventilator.  *Id.* at 19, 175, 623, 649, 1121.  Post-

operative chest x-rays demonstrated congestive heart failure.  *Id.* at 623, 933.  On December 24,

2004 – three days after his surgery – amid concerns over elevated white blood cell counts and fever, Mr. Bechara was prescribed antibiotics to combat potential sepsis, pneumonia, and acute respiratory distress syndrome.  *Id.* at 59, 173.  On December 25, 2004, the intra-aortic balloon pump placed during the cardiac catheterization was removed and epinephrine was administered in addition to the other vasopressors Mr. Bechara was already receiving to support his blood pressure and heart function.  *Id.* at 46, 633.  In addition, Mr. Bechara experienced increasing pulmonary edema, for which diuretic therapy was instituted.  *Id.* at 47, 933, 936.

      Beyond these complications, Mr. Bechara developed increasing problems with his kidney function.  Mr. Bechara's serum creatinine levels had remained largely stable for almost four days after the surgery, but following the removal of the intra-aortic balloon pump on December 25, Mr. Bechara's creatinine levels rose from 1.4 to 1.9 mg/dL.  *Id.* at 288-91.  By December 27, his creatinine levels had risen to 3.2 mg/dL.  *Id.*  Mr. Bechara was diagnosed with acute renal failure and was placed on hemodialysis.  *Id.* at 587.  Over the next few weeks, Mr. Bechara's symptoms improved, and he was discharged from the hospital on January 18, 2005 with orders for dialysis three times per week.  KPLAMC-MD Med. R. (Ex. C) at 10-12.  By November 2005, Mr. Bechara's dialysis had been reduced to twice a week and then once a week, and it was discontinued altogether in December 2005, one year after his surgery.  SCPMG Med. R. (Ex. B) at 241; Fresenius Medical Care/North America Dialysis Center ("FMC-MD") Medical Records (Ex. E) at 128; 2009 Bechara Dep. (Ex. D) at 243:20-244:1.  He has not been on dialysis since December 2005.  *Id.*

## II.   2005:  THE BECHARAS INVESTIGATE AND FILE THEIR MEDICAL MALPRACTICE CLAIM.

      By at least May 2005, Mr. Bechara began investigating the cause of his renal failure.  Mr. Bechara inspected his medical records from Kaiser, and retained copies of some.

March 9, 2006, Deposition of N. Bechara ("2006 Bechara Dep.") (Ex. F) at 45:21-46:12.  In

particular, he was investigating whether "the kidneys collapsed . . . because of the heart

condition or the medication."  *Id.* at 39:25- 40:3.  On May 25, 2005, he interviewed his

cardiologist, Dr. Bartz, about the "conduct of the cardiac surgical procedure, which bypass grafts

were done, why his kidneys failed."  SCPMG Med. R. (Ex. B) at 380-381; 2009 Bechara Dep.

(Ex. D) at 225:1-226:22.  Mr. Bechara recorded the physician's responses in a notebook, which

he now claims to have lost.  *Id.*  Mr. Bechara also discussed the potential causes of his renal

failure with another one of his cardiologists, Dr. Whitaker.  2006 Bechara Dep. (Ex. F) at 39:13-

41:16.  In addition, Mr. Bechara talked to his nephrologist, Dr. Patel, about possible reasons why

his kidneys failed, 2009 Bechara Dep. (Ex. D) at 222:1-8, and also talked to his cardiologist, Dr.

Bartz, about whether medications damaged his kidneys.  2006 Bechara Dep. (Ex. F) at 41:9-16.

   In November 2005, Mr. Bechara and his wife filed a medical malpractice claim

against Kaiser.  November 9, 2005 Letter (Ex. G); Claimants' Arbitration Brief (Ex. H); 2009

Bechara Dep. (Ex. D) at 24:19-21.  Mr. Bechara asserted that his renal failure was the result of

Kaiser's negligence.  November 9, 2005 Ltr. (Ex. G); Claimant's Arbitration Brief (Ex. H) at 9.

In particular, Mr. Bechara alleged that Kaiser's "failure to timely diagnose and treat [his] heart

attack, the negligent interpretation of electrocardiograms, and the failure to obtain a timely

cardiology consultation" caused him permanent harm, including acute renal failure.  *Id.* at 9, 10.

At the time he filed his arbitration claim in 2005, he believed he had unduly suffered "kidney

issues" and "other issues" as a result of some wrongdoing in connection with his hospitalization

and surgery.  2009 Bechara Dep. (Ex. D) at 25:3-11.  Mr. Bechara retained experts who testified

that Mr. Bechara's physician's failure to meet the standard of care caused Mr. Bechara's renal

injures.  *E.g.*, October 12, 2006 Deposition of Peter C.D. Pelikan, M.D. (Ex. I) at 64:21-67:14,

86:12-16 ("Everywhere where care was delayed by an extra hour and a half or an extra hour allowed him to get to the point by that afternoon of significant hypotension such that he injured his kidneys and injured his lungs and had this terrible posteroperative result."); October 19, 2006 Deposition of Donald F. Nortman, M.D. (Ex. J) at 53:13-56:14 ("I would say that well over 50 percent of the acute injury, the substantial majority of it could have been prevented with reasonable ordinary December 2004 treatment of an acute cardiac ischemic event."); *see also id.* at 87:17-90:4.

Mr. Bechara's medical malpractice claim was settled in November 2006, with Mr. Bechara and Ms. Saad receiving a sum of $900,000 for Mr. Bechara's alleged kidney injuries. Release of All Claims (Ex. K).

## III.    JANUARY 2006:  TRASYLOL AND AN ALLEGED ASSOCIATION WITH POST-OPERATIVE RENAL FAILURE IS WIDELY REPORTED IN THE NEWS MEDIA.

On January 26, 2006, the *New England Journal of Medicine* published a widely-publicized article that asserted, in part, that the administration of Trasylol doubled the risk of post-operative renal failure.  Mangano, D. *et al.*, "The Risk Associated with Aprotinin in Cardiac Surgery," 354 NEW ENG. J. MED. 353-365 (2006) (Ex. L) ("Mangano article").  The article was widely reported in weekly medical professional journals and received prominent attention in the popular press.  Indeed, on January 26, 2006, the *Los Angeles Times*  – a newspaper to which Mr. Bechara subscribed, *see* 2009 Bechara Dep. (Ex. D) at 107:23-108:5 – published a story about the Mangano article on its front page.[2]  The AP and UPI newswires had already picked up the

---

[2] Thomas H. Maugh II, "Study: Heart Surgery Drug Raises Risk of Kidney Damage, Stroke," *Los Angeles Times* at A1, Jan. 26, 2006 (Ex. M).

story on the afternoon of January 25, 2006,[3] and the Mangano article received significant news

coverage in both national papers like *The Washington Post*, *The New York Times*, and *The Wall

Street Journal*,[4] as well as additional California papers.[5]  Additional news coverage appeared in

on television and online, *see e.g.,* CNN.com, "This Week in the Medical Journals:  Safety issue

for heart surgery drugs," Jan. 27, 2006 (Ex. Z).

## IV.    JULY 2008:  PLAINTIFFS SUE BAYER FOR THE SAME INJURIES FOR WHICH THEY ALREADY RECEIVED COMPENSATION IN THEIR MEDICAL MALPRACTICE CLAIM.

Almost three years after filing their claims against Kaiser on one causation theory,

Mr. Bechara and his wife Nabila Saad, both on behalf of herself and their son, Justin Bechara,

filed this action in July 2008, asserting twelve causes of action alleging that Mr. Bechara's

kidney ailments were caused by Trasylol:  strict liability – failure to warn (Count I); strict

liability – design defect (Count II); negligence (Count III); negligence *per se* (Count IV); fraud,

misrepresentation, and suppression (Count V); constructive fraud (Count VI); breach of implied

---

[3] *See, e.g.,* "AP Health News Brief," *Associated Press Newswires*, Jan. 25, 2006 (Ex. N); Steve Mitchell, "Bayer's Trasylol may cause kidney failure," *UPI*, Jan. 25, 2006 (Ex. O); Alicia Chang, "Study questions safety of heart surgery drug," *Associated Press, California*, Jan. 26, 2006 (Ex. P); "Heart surgery drug linked to strokes," *UPI*, Jan. 26, 2006 (Ex. Q).

[4] *See e.g.,* Mark Kaufman, "Study Finds Risk to Kidneys In Drug That Limits Bleeding," *The Washington Post* at A12, Jan. 26, 2006 (Ex. R); Denise Grady, "Study of Bypass Patients Urges Dropping Drug Used to Reduce Bleeding in Heart Surgery," *The New York Times* at A21, Jan. 26, 2006) (Ex. S); David Armstrong, "Serious Risks are Found in Heart Drug – Widely Used Medicine Increases Chance of Kidney Failure," *The Wall Street Journal* at D1, Jan. 26, 2006 (Ex. T); "National Briefing Science and Health: Doctors Urged to Limit Use of Heart Surgery Drug," *The New York Times* at A23, Feb. 9, 2006 (Ex. U); Jennifer Corbett Dooren, "Heart Doctors Are Warned Drug Boosts Kidney Risk in Bypasses," *The Wall Street Journal* at D3, Feb. 9, 2006 (Ex. V).

[5] *See, e.g.,* "Heart surgery drug said to be a risk to kidneys," *San Francisco Chronicle* at A7, Jan. 26, 2006 (Ex. W); Thomas H. Maugh, II, "Heart-surgery drug risk, researchers find," *San Jose Mercury News* at A6, Jan. 26, 2006 (Ex. X); "Heart bypass drug has serious side effects," *Long Beach Press-Telegram* at A7, February 9, 2006 (Ex. Y).

warranties (Count VII); unfair and deceptive trade practices (Count VIII); unjust enrichment (Count IX); loss of consortium (Count X); gross negligence/malice (Count XIII); and punitive damages (Count XIV). *See Bechara* Compl. (D.E. 1) ¶ 5.[6]  Plaintiffs did not plead any facts to support application of the "discovery rule" that would delay the accrual of the causes of action. As set forth below, even if properly pled, there are no facts that would prevent this case from being barred by the applicable two-year statute of limitations.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where there is no genuine issue of material fact for trial. *Celotex v. Catrett,* 477 U.S. 317, 330 (1986); *Zivojinovich v. Barner*, 525 F.3d 1059, 1066 (11th Cir. 2008).  To avoid summary judgment, the opposing party must point to specific facts in dispute that are material and of a substantial nature. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-586 (1986).  "Conclusory allegations, evidence that is not significantly probative, and personal opinions will not suffice to defeat a motion for summary judgment." *Haller v. Astrazeneca Pharms. LP*, 598 F. Supp. 2d 1271, 1274 (M.D. Fla. 2009); *Johnson v. Fleet Fin., Inc.*, 4 F.3d 946, 949 (11th Cir. 1993).  Put another way, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find" for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

While the resolution of the statute of limitations issue – and whether the limitation period for plaintiff's claims was tolled – may sometimes be a question of fact, where plaintiff has

---

[6] Mr. Bechara has adopted the pleading of these causes of action as set forth in the Master Complaint.  *See Bechara* Compl. (D.E. 1) ¶ 5 (adopting Master Complaint counts).  Mr. Bechara did not adopt Counts XI and XII of the Master Complaint, and therefore his complaint omits these counts.

offered no evidence from which a jury could find that the limitations period should be tolled, summary judgment is proper. *See, e.g., M.H.D. v. Westminster Schools*, 172 F.3d 797 (11th Cir. 1999) (affirming summary judgment for defendant in case in which plaintiff argued for application of discovery rule); *Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir. 1987) (same).

## ARGUMENT

## I.      PLAINTIFFS' PERSONAL INJURY CLAIMS ARE TIME-BARRED.

Mr. Bechara's personal injury claims are subject to a two-year statute of limitations. *See* Cal. Civ. Proc. Code § 335.1 (West 2009).[7]  The limitations period for a personal injury claim begins to run once the alleged injury or wrongful act occurs. *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).  Where the injury or wrongful act is not immediately apparent, however, the limitations period does not begin to run until the plaintiff discovers or has reason to discover the alleged wrong. *Id.* at 397-98, citing to *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103 (1988).  Because the discovery rule "is a nonstatutory exception to a limitation period, [plaintiff] has the burden of proof to bring [himself] within it."  *Glue-Fold, Inc. v. Slautterback Corp.,* 82 Cal. App. 4th 1018, 1030 (2000).  A plaintiff has the initial burden of pleading facts that establish a basis for establishing that the discovery rule excepts his claims from the two-year

---

[7] Mr. Bechara also asserts an unfair and deceptive trade practices claim.  *Bechara* Compl. (D.E. 1) ¶ 5 (adopting Count VIII of the Master Complaint).  That claim, however, is not for personal injury – rather, Mr. Bechara seeks only recovery for "the difference between the price paid for Trasylol and the cost of any of the substantially cheaper . . . drug alternatives."  Master Compl. (D.E. 103 in 1:08-md-01928-DMM) ¶ 126.  The claims brought by Mr. Bechara under California's consumer protection statutes are governed by a four-year statute of limitations.  *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178-79 (2000).

limitations period.  *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 297-300 (1978).

      Here, not only did the plaintiffs fail to allege application of the discovery rule (or any tolling doctrine, for that matter) in their complaint, *see Bechara* Compl. (D.E. 1), but the evidence in the record makes clear that the discovery rule does not save Mr. Bechara's claims.

### A.    Mr. Bechara Unquestionably "Discovered" His Cause of Action in 2005.

      The California Supreme Court has made clear that a plaintiff "discovers" his cause of action when "he at least *suspects* a factual basis, as opposed to a legal theory, for its elements . . ."  *Norgart*, 21 Cal. 4th at 397.  As the Court made clear in *Jolly*:

> Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . *A plaintiff need not be aware of the specific "facts" necessary to establish the claim*; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  *So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.*

*Jolly*, 44 Cal. 3d at 1110-11(emphasis added); *see also Rivas v. Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 229 (2002) (limitations period began when plaintiff "had a suspicion that someone had done something wrong to him") (internal citations omitted); *Goldrich v. Natural Y Surgical Specialties, Inc.*, 25 Cal. App. 4th 772, 779-81 (1994) (same).  This is true even if the plaintiff remains ignorant about "the specific facts necessary to establish [a] cause of action," the exact cause of an injury, or the identity of the defendants.  *Norgart*, 21 Cal. 4th at 397-398.

      In 2005, Mr. Bechara suspected that something went wrong in his December 2004 surgery, and began investigating the cause of his kidney failure:

> . . .  I have seen friends and relatives going into bypass surgery and coming out, and then a week later, they are living their normal life.
>
> They didn't have any kidney issues.  They didn't have other issues that – that was connected with the surgery.  So that's – that's why I needed to know what happened and why . . .

2009 Bechara Dep. (Ex. D) at 25:3-10.  Mr. Bechara examined his medical records from Kaiser, and brought copies of some home with him.  2006 Bechara Dep. (Ex. F) at 45:21-46:12.  He spoke to his cardiologists, Drs. Bartz and Whitaker, questioning them regarding potential causes of his kidney failure.  *Id*. at 39:13-41:16; SCPMG Med. R. (Ex. B) at 380-381; 2009 Bechara Dep. (Ex. D) at 225:1-226:22.  Mr. Bechara recounted his conversation about his kidney failure with Dr. Whitaker: "[W]hy the kidneys collapsed really nobody could give me a straight answer why, whether it's because of the heart condition or the medication or I don't know."  2006 Bechara Dep. (Ex. F) at 39:25-40:3.  Mr. Bechara also discussed the reasons for his postoperative renal failure with Dr. Patel, his nephrologist.  2009 Bechara Dep. (Ex. D) at 222:1-8.  After reviewing medical records and consulting with counsel and experts, he decided to sue Kaiser for medical malpractice.  2006 Bechara Dep. (Ex. F) at 45:21-46:3; 2009 Bechara Dep. (Ex. D) at 23:24-24:11.

Based on his own sworn testimony, Mr. Bechara knew about his injury (renal failure) and suspected that it had been caused by wrongdoing by 2005.  In fact, his medical malpractice claim was based on his investigation of that suspicion.  In *Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999), the California Supreme Court dealt with claims and facts quite similar to the ones in this case.  In *Norgart*, the plaintiffs' daughter committed suicide, and the plaintiffs suspected soon after that her suicide was caused by wrongdoing – either her husband's physical abuse, her psychiatrist, her general practitioner, or the defendant pharmaceutical company.  *Id.* at 392, 407.  The appellate court held that the plaintiffs did not "discover" their claim until they connected a "particular act of wrongdoing" to "a particular defendant."  *Id.* at 406.  The California Supreme Court, however, rejected this holding and held that plaintiffs' suspicion of wrongdoing by several possible culprits – by itself – was enough to start the running of the

statute of limitations.  *Id.* at 405-06.  Accordingly, his July 2008 Trasylol lawsuit is barred by the

two-year statute of limitations.

    **B.    Mr. Bechara Failed to Exercise Reasonable Diligence.**

        Even if Mr. Bechara were to argue – contrary to his depositions and the

arbitration proceedings themselves – that he did not suspect a basis for his claims in 2005, Mr.

Bechara must also establish that he could not have discovered his claims before July 2006 (two

years prior to when he filed his Trasylol lawsuit) even if he had "exercised reasonable diligence."

*April Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 832-33 (1983); *see also Haugh v. Depuy-*

*Motech, Inc.*, 14 Fed. Appx. 883, 885 (9th Cir. 2001) (applying California law, "[t]he discovery

rule applies when plaintiff shows the time and manner of discovery and the inability to have

made earlier discovery despite reasonable diligence").

        Mr. Bechara cannot meet that burden.  Information contained in Mr. Bechara's

medical records – available to Mr. Bechara, his counsel, and his experts in 2005 and actually

reviewed during the investigation and arbitration – should have put him on notice of the potential

for the claims he now asserts.  *See Rose v. Kingsley Fife*, 207 Cal. App. 3d 760, 768 (1989)

("[p]ossession of 'presumptive' . . . knowledge will commence the running of the statute").[8]

        The simple filing of a medical malpractice claim by itself may not always put

plaintiff on notice of a possible products liability claim, *see Fox v. Ethicon Endo-Surgery, Inc.*,

35 Cal. 4th 797 (Cal 2005), but the record here is replete with evidence showing that Mr.

Bechara was on notice or reasonably should have been on notice in 2005 and early 2006.  In *Fox*,

---

[8] Indeed, plaintiff had access to all of his medical records by virtue of the discovery process that
took place as part of the arbitration proceedings. *See, e.g.,* Claimants' Request for Production of
Documents of Respondents (Ex. AA) and responses thereto (Ex. BB).

the court refused to grant a motion to dismiss based on the statute of limitations and allowed

plaintiff to amend her complaint to allege that, even though she had filed a medical malpractice

claim previously related to her gastric bypass surgery, she had no notice that she had a possible

products liability claim related to a medical device (staples) used during her surgery. *Id.* The

*Fox* court was considering a motion to dismiss early in the case before discovery had begun, with

no evidence before it from which to determine whether the plaintiff was on reasonable notice of

a possible products liability claim. The court was focused solely on the allegations of the

complaint.

To the contrary, here, the pleadings are closed, discovery is complete, and we are

mere weeks away from the beginning of trial. Here, there is more than sufficient evidence that

the Becharas, even while pursuing their medical malpractice claim, had reason to suspect the

possibility that medication administered during his December 2004 surgery caused Mr.

Bechara's renal failure. 2006 Bechara Dep. (Ex. F) at 39:18-40:3. Mr. Bechara's medical

records – which he, his counsel, and his experts all reviewed during the medical malpractice

arbitration – reveal that Trasylol (aprotinin) had been administered during his surgery. KFH-

Sun-MD Med. R. (Ex. A) at 132-33 (perfusion report, identifying Trasylol); *id.* at 131 (cardiac

surgery operating room record, identifying aprotinin).[9] Had he exercised reasonable diligence

and investigated Trasylol, he would have discovered that the Trasylol labeling at the time of his

surgery identified abnormal kidney function, kidney failure, and acute kidney failure – the injury

plaintiff alleges in this action – among the reported adverse reactions that had been reported with

---

[9] The perfusion report identifying Trasylol was even marked as an exhibit during the September
2006 deposition of Dr. Thomas A. Pfeffer (the cardiac surgeon) that was taken as part of the
arbitration proceedings. *See* Sept. 6, 2006 Deposition of Dr. Pfeffer (Ex. CC) at 28:19-29:11 and
Ex. 5 thereto.

the use of Trasylol.  December 2003 Package Insert (Ex. DD) at 2.  *See Norgart*, 21 Cal. 4th at

404-10 (plaintiffs' suspicion of wrongdoing in suicide of daughter was sufficient to require

plaintiffs to investigate, and had they done so in a timely fashion they would have discovered

that the product labeling for one of the drugs their daughter had been prescribed identified a risk

of suicide); *accord Barker v. Brown & Williamson Tobacco Corp.*, 88 Cal. App. 4th 42, 51

(2001) (warnings on package made health risks "a matter of common knowledge").

Indeed, Mr. Bechara's own expert testified that "there was some – somewhat

anecdotal evidence that it [Trasylol] was – had a potential nephrotoxicity" before January of

2006.  Nov. 5, 2009 Deposition of Richard John Quigg, M.D. ("Quigg Dep.") (Ex. EE) at 26:3-

7.[10]  Such anecdotal evidence – coupled with his own review of his medical records and an

investigation into the cause of his renal injury – should have provided Mr. Bechara with notice of

a potential claim against Bayer.  He elected not to investigate Trasylol as a potential cause of his

alleged kidney injury.

---

[10] Indeed, the potential association between Trasylol use in heart surgery and kidney injury have
been reported in the medical literature for many years.  *See, e.g.,* Delos M. Cosgrove *et al.*,
"Aprotinin Therapy for Reoperative Myocardial Revascularization: A Placebo-Controlled
Study," 54 ANN. THORACIC SURG. 1033, 1031-1038 (1992) (Ex. FF) ("complications with the use
of aprotinin include…renal toxicity");  PEDIATRIC CRITICAL CARE: THE ESSENTIALS 343 (Joseph
D. Tobias ed., 1995) (Ex. GG) (asserting that aprotinin's adverse effects "include allergic
reactions and renal toxicity");  Joseph D. Tobias, "Strategies for Minimizing Blood Loss in
Orthopedic Surgery," 41.1 SEMINARS IN HEMATOLOGY, 151, 145-156 (2004) (Ex. HH) (same);
Michael N. D'Ambra *et al.,* "Aprotinin in Primary Valve Replacement and Reconstruction: A
Multicenter, Double-Blind, Placebo-Controlled Trial," J. THORACIC & CARDIOVASCULAR SURG.
1089, 1081-1089 (Oct. 1996) (Ex. II) ("the data suggest the aprotinin should be used cautiously
in patients with preoperative renal dysfunction or diabetes"); Edward Kincaid *et al.*, "Does the
Combination of Aprotinin and Angiotensin-Converting Enzyme Inhibitor Cause Renal Failure
After Cardiac Surgery?"  80 ANN. THORACIC SURG. 1393, 1388–93 (2005) (Ex. JJ)
("[c]ontroversy has surrounded the use of aprotinin in cardiac surgery since its adoption into
routine clinical practice" and concluding that in patients with preoperative use of ACE inhibitors,
"the potential benefits of aprotinin must be weighed against the potential negative effects on
renal function, especially in patients with other risk factors for perioperative renal failure").

Because Mr. Bechara suspected wrongdoing in 2005, and because any claim should have been reasonably discovered prior to July 2006 (two years before filing this lawsuit), his action was filed well beyond the two-year limitations period for his personal injury claims, and should be dismissed accordingly. *Jolly*, 44 Cal. 3d at 1110-11; *Norgart*, 21 Cal. 4th at 397-99.

      **C.**      **Even if Mr. Bechara's Medical Records and the Trasylol Product Labeling Were Not Enough To Put Him on Notice, Mr. Bechara's Claims Are Still Time-Barred.**

Mr. Bechara may contend that his medical records and the Trasylol product labeling were insufficient to put him on notice of the claims he now asserts, but this contention would not salvage his claims. At the latest, Mr. Bechara should have recognized a potential claim against Bayer for personal injury in January 2006, when the *New England Journal of Medicine* published "The Risk Associated with Aprotinin in Cardiac Surgery" (the "Mangano article") (Ex. L).

The Mangano article asserted that the use of Trasylol in coronary artery surgery doubles the risk of post-operative renal failure. *Id.* Plaintiff's expert, Dr. Richard John Quigg, characterized the Mangano article as "big news." Quigg Dep. (Ex. EE) at 26:3-8. The article and the alleged link between Trasylol and post-operative renal failure received significant media coverage. *See supra*, at 7-8. Indeed, the article appeared on the front page of the *Los Angeles Times*, to which Mr. Bechara subscribed. Thomas H. Maugh II, "Study: Heart Surgery Drug Raises Risk of Kidney Damage, Stroke," *Los Angeles Times*, Jan. 26, 2006 (Ex. M) at A1; 2009 Bechara Dep. (Ex. D) at 107:23-108:5. This media flurry was occurring at the very time that Mr. Bechara, with this counsel and experts, was investigating and litigating his medical malpractice claims. Yet Mr. Bechara failed to file his claim against Bayer until July 2008, three years after

Case 9:08-cv-80776-DMM   Document 73   Entered on FLSD Docket 02/01/2010   Page 17 of 26

discovering his alleged injury and perceiving that alleged wrongful conduct caused that injury,

and more than two years after publication of the Mangano article and the resulting news

coverage.  His personal injury claims are untimely and should be dismissed with prejudice

(Counts I-VII and XIII).  *See Jolly*, 44 Cal. 3d at 1110-11; *Norgart*, 21 Cal. 4th at 397-99.

## II.     PLAINTIFFS' FRAUD CLAIMS SHOULD BE DISMISSED.

As discussed above, plaintiffs' fraud claims (Counts V and VI) are barred by

California's two-year statute of limitations.  Even if they were not time-barred, however,  they

should be dismissed pursuant to this Court's orders of March 5, 2009 (D.E. 809) and April 2,

2009 (D. E. 916).  In the March 5, 2009 order, the Court dismissed Count VI of the Master

Complaint (constructive fraud) for failure to allege the fiduciary relationship required to prove

constructive fraud.  D.E. 809 at 21-22.  In its March 5, 2009 order, the Court also recognized that

"a broad claim that a Plaintiff or a Plaintiff's physician relied on fraudulent or misleading

statements made directly to them, absent some recitation of what oral or written statement a

particular drug representative made to a specific physician at what particular point in time, is an

insufficient basis for allowing Plaintiffs to proceed with a claim for fraud . . ."  *Id.* at 14-15.

Accordingly, the Court held that "Plaintiffs shall have thirty (30) days from the date of this Order

within which to amend Count V of the Master Complaint [fraud]. . .  to set forth any claim for

fraud premised on any oral or written statement, other than packaging or written marketing

materials, made to a Plaintiff or Plaintiff physician with the specificity required of Rule 9."  *Id.* at

12.  Thirty days later, in the April 2, 2009, Order, the Court held that, unless a plaintiff filed a

response to the Order or otherwise amended his complaint within the appropriate time frame,

"the common law fraud claims, if any, in the complaint will be dismissed in part in accordance

with the March order, and the constructive fraud claims, if any, in the complaint will be dismissed in their entirety." D.E. 916 ¶ 2. This order applied to all cases pending in the MDL, including the *Bechara* case. *Id.* ¶ 3.

Plaintiffs did not file any type of response to either of these orders and never attempted to amend their complaint. Moreover, when asked in discovery to identify each statement or alleged misrepresentation that he or his physicians relied upon, Mr. Bechara objected and refused to provide any information. Plaintiff Naguib Bechara's Answers to Interrogatories (Ex. KK) at Interr. No. 1. Accordingly, Counts V and VI should be dismissed.

## III.   PLAINTIFFS' LOSS OF CONSORTIUM CLAIMS SHOULD BE DISMISSED.

On behalf of herself and Mr. Bechara's son, Justin Bechara, Nabila Saad asserts claims for loss of consortium (Count X). Ms. Saad's claims are derivative of her husband's personal injury claims, and therefore do not survive the dismissal of her husband's time-barred claims. *See Brumley v. FDCC Cal., Inc.*, 156 Cal. App. 4th 312, 323 (2007) (a claim for loss of consortium is "derivative" of the personal injury action of the injured spouse); *Snyder v. Michael's Stores, Inc.*, 16 Cal. 4th 991, 999 (1997) (loss of consortium claim is "unquestionably dependent, legally as well as causally"). Because Mr. Bechara's personal injury claims are barred by the statute of limitations, the claims of Nabila Saad for loss of consortium must also be dismissed.[11]

_____

[11] Mr. Bechara also asserts a claim for unfair business practices. *Bechara* Compl. (D.E. 1) ¶ 5 (adopting Count VIII of the Master Complaint). For the reasons set forth in Section III *infra*, that claim should be dismissed. In any event, loss of consortium is not a proper derivative of that claim under California law. A claim for loss of consortium must be premised in an action for disabling bodily or psychological injuries of the principle plaintiff. *See Molien v. Kaiser Found. Hosps.*, 27 Cal. 3d 916, 932-33 (1980). Mr. Bechara's action for unfair business and trade practices seeks recovery only for economic loss – specifically, the difference in price paid for Trasylol and the cost of an allegedly cheaper drug alternative – not personal injury. *Bechara* Compl. (D.E. 1) ¶ 5 (adopting Count VIII of the Master Complaint); Master Compl. (D.E. 103 in 1:08-md-01928-DMM) ¶¶ 125-126.

The claim for loss of consortium asserted by Ms. Saad on behalf of Justin Bechara must also be dismissed.  Under California law, loss of consortium claims may only be brought by the spouse of an injured party.  *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 746 n.2 (2007) (setting forth the elements of a loss of consortium claim).  A child may not recover for loss of consortium for injuries to a parent.  *See Borer v. Amer. Airlines, Inc.*, 19 Cal. 3d 441, 451 (1977).  Accordingly, claims for Justin Bechara's alleged loss of consortium should be dismissed.

## IV. PLAINTIFF HAS NOT SUFFERED DAMAGES COMPENSABLE UNDER CALIFORNIA'S UNFAIR AND DECEPTIVE TRADE PRACTICE ACTS.

In addition to his personal injury claims, Mr. Bechara claims that he "incurred unnecessary expenses for a product [Trasylol] that was purchased only because of the unfair, unscrupulous, oppressive and/or deceptive practices of defendants."  Master Compl. (D.E. 103 in 1:08-md-01928-DMM) ¶ 125 (Count VIII); *Bechara* Compl. (D.E. 1) ¶ 5 (adopting Count VIII of Master Complaint).  He seeks recovery under California's unfair and deceptive trade practices laws for "the difference between the price paid for Trasylol" and "the cost of any of the substantially cheaper . . . drug alternatives."  Master Compl. (D.E. 103 in 1:08-md-01928-DMM) ¶ 126.  Mr. Bechara admits, however, that he did not purchase the Trasylol administered to him:

Q:      Did Kaiser pay for the Trasylol that you were given during your surgery?

A:      Yes.

2009 Bechara Dep. (Ex. D) at 255:10-13.  There are no facts in the record indicating the "price paid" by Mr. Bechara for Trasylol or that Mr. Bechara experienced any financial loss by his purchase of Trasylol.

California law is clear: "[O]nly plaintiffs who have suffered actual damage may pursue a private UCL action. A private plaintiff must make a twofold showing: he or she must

demonstrate injury in fact *and* a loss of money or property caused by" the alleged unfair trade

practice.  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1590 (2008) (emphasis in original).

Where there is no evidence that a plaintiff has lost money as a result of conduct proscribed under

California's unfair business and trade practice laws, such plaintiff cannot prove an essential

element of his claim and summary judgment in the defendant's favor is appropriate.  *See, e.g.,*

*Trujillo v. First Amer. Registry, Inc.*, 157 Cal. App. 4th 628, 639 (2007) (affirming summary

judgment where plaintiff had presented no evidence of a financial loss caused by practices

proscribed by California's unfair business practices laws); *Colgan v. Leatherman Tool Grp., Inc.*,

135 Cal. App. 4th 663, 697-700 (2006) (reversing restitution award under California unfair

business practices laws where there was no evidence establishing the dollar amount that would

make plaintiffs whole).  Because there is no evidence that Mr. Bechara lost any money as a result

of Bayer's alleged unfair or deceptive trade practices, he cannot prove an essential element of his

claim and this Court should therefore grant summary judgment on Mr. Bechara's claim under

California's unfair business and trade practices acts (Count VIII).[12]

## V.    CALIFORNIA LAW DOES NOT RECOGNIZE A CLAIM FOR GROSS NEGLIGENCE.

Mr. Bechara claims that Bayer should be liable for his alleged renal failure on

grounds that Bayer acted with gross negligence and/or malice.  *Bechara* Compl. (D.E. 1) ¶ 5

(adopting Count XIII of Master Complaint).  Aside from being untimely (*see* Section I *supra*),

California law does not recognize such a cause of action:  "[I]n light of the adoption of the

doctrine of comparative negligence in California, any attempt to categorize gross negligence

---

[12] Bayer denies that it committed any act proscribed by California's consumer protection laws, but the Court need not decide that issue on this Motion.

separately from ordinary negligence is unnecessary." *Continental Ins. Co. v. Amer. Prot. Indus.*, 197 Cal. App. 3d 322, 330 (1987) (cause of action for "gross negligence" not recognized in California); *Saenz v. Whitewater Voyages, Inc.*, 226 Cal. App. 3d 758, 766 & n.9 (1990) ("California does not recognize a distinct cause of action for 'gross negligence' independent of a statutory basis").  Accordingly, this Court should grant summary judgment on plaintiffs' gross negligence claim (Count XIII).

## VI.    CALIFORNIA LAW DOES NOT RECOGNIZE INDEPENDENT CAUSES OF ACTION FOR UNJUST ENRICHMENT AND PUNITIVE DAMAGES.

Finally, Mr. Bechara claims that Bayer was unjustly enriched in the sale of Trasylol, and that he is entitled to punitive damages.  *Bechara* Compl. (D.E. 1) ¶ 5 (adopting Counts IX and XIV of Master Complaint).  However, California courts do not recognize independent, stand-alone claims for unjust enrichment or punitive damages.  *See Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) ("there is no cause of action in California for unjust enrichment"); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) (same); *Coleman v. Gulf Ins. Grp.*, 41 Cal. 3d 782, 789 n.2 (1986) (no "separate or independent cause of action for punitive damages"); *Grieves v. Superior Court*, 157 Cal. App. 3d 159, 163-64 (1984) (same).  Accordingly, this Court should grant summary judgment on plaintiffs' stand-alone, independent causes of action for unjust enrichment and punitive damages (Counts IX and XIV).

## CONCLUSION

For the foregoing reasons, Bayer respectfully requests that the Court grant

summary judgment in favor of Bayer and against plaintiffs, and dismiss plaintiffs' Complaint in

its entirety and with prejudice.

Dated:  February 1, 2010                  Respectfully submitted,

                         */s/ Barbara Bolton Litten*
                         Patricia E. Lowry
                         Florida Bar No. 332569
                         E-mail:  plowry@ssd.com
                         Barbara Bolton Litten
                         Florida Bar No. 91642
                         E-mail:  blitten@ssd.com
                         **SQUIRE SANDERS & DEMPSEY L.L.P.**
                         1900 Phillips Point West
                         777 South Flagler Drive
                         West Palm Beach, FL  33401-6198
                         Telephone:  561-650-7200
                         Facsimile:  561-655-1509

                         Philip S. Beck
                         Email:  philip.beck@bartlit-beck.com
                         Steven E. Derringer
                         Email:  steven.derringer@bartlit-beck.com
                         **BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
                         54 W. Hubbard Street, Suite 300
                         Chicago, IL  60603
                         Telephone:  312-494-4400
                         Facsimile:  312-494-4440

                         Eugene A. Schoon
                         Email:  eschoon@sidley.com
                         Susan A. Weber
                         Email:  saweber@sidley.com
                         Kara L. McCall
                         Email:  kmccall@sidley.com
                         **SIDLEY AUSTIN LLP**
                         One South Dearborn Street
                         Chicago, Illinois 60603
                         Telephone:  312-853-7000
                         Facsimile:  312-853-73036

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN &
    MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation, Bayer HealthCare
Pharmaceuticals Inc., and Bayer Schering Pharma
AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*

Barbara Bolton Litten

**SERVICE LIST**

**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON**
**Case No. 9:08-cv-80776** *Bechara v. Bayer Corp.*

**United States District Court**
**Southern District of Florida**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,**
    **FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-790-4584
Facsimile: 215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
    **& LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile: 561-684-6308
*Liaison Counsel for Plaintiffs*

Michael T. Gallagher
Email: pamm@gld-law.com
**THE GALLAGHER LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Telephone: 713-222-8080
Facsimile: 713-222-0066
*Counsel for Plaintiffs Bechara & Saad*

Scott A. Love
Email: slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX 77002
Telephone: 713-757-1400
Facsimile: 713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: 203-610-6393
Facsimile: 203-610-6399
*Federal-State Liaison for Plaintiffs*

Tim K. Goss
Email: goss39587@aol.com
Tamara L. Banno
Email: tbanno@tlb-law.com
**FREESE & GOSS PLLC**
3031 Allen Street, Suite 100
Dallas, TX 75204
Telephone: 214-761-6610
Facsimile: 214-761-6688
*Counsel for Plaintiffs Bechara & Saad*

Joseph A. Osborne
Email:  jaosborne@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
    & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
***Counsel for Plaintiffs Bechara & Saad***

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
***Liaison Counsel for Defendants***