IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to: **ALL CASES**
_____/

### BAYER'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT SUZANNE PARISIAN, M.D.

#### INTRODUCTION

Bayer's Motion (Docket Entry 3065) ("Mot.") showed that Dr. Parisian is not qualified to give her proffered opinions, that her conclusions exceed the scope of permissible expert testimony, and that her opinions are unreliable. In response, plaintiffs purport to have narrowed the scope of the testimony Dr. Parisian seeks to give:

- Plaintiffs concede that "Dr. Parisian is not a causation expert," Plaintiffs' Opposition (D.E. 3841) ("Opp.") at 12, 26 n.13 – though they still seek to have her opine "that Trasylol carried an increased risk . . . of renal failure," Opp. at 12, which is a causation opinion;

- Plaintiffs acknowledge that Dr. Parisian has mere "familiarity (not expertise)," *id.* at 13, with foreign regulatory standards – yet they still seek to have her "reference" certain foreign regulatory matters "which made problems known to Bayer," *id.*; and

- Plaintiffs do not contest that testimony by Dr. Parisian related to Bayer's intent would be improper, *id.* at 22 – but still seek to have Dr. Parisian speculate about Bayer's supposed knowledge based on documents the jury can review for itself without any need for supposed "expert" testimony.

At bottom, Plaintiffs still maintain that Dr. Parisian should be permitted to offer virtually all of the sweeping opinions proffered in her 250-page expert report and during her deposition testimony. Plaintiffs claim that Dr. Parisian is only offering testimony on four general regulatory topics, Opp. at 8-9, and that mere "passing references" to improper subjects, such as

foreign regulatory matters, should be ignored, *id.* at 21.  This is not the law:  There is no *de minimis* exception to *Daubert* standards.  None of the cases cited in plaintiffs' opposition support the admissibility of Dr. Parisian's unfettered opinions.  Because plaintiffs have failed to meet their burden of demonstrating that Dr. Parisian's proffered testimony meets the admissibility requirements for expert testimony, her opinions should be excluded.  *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999).

I.  **THE COURT SHOULD NOT PERMIT DR. PARISIAN TO TESTIFY ON MATTERS FOR WHICH SHE IS NOT QUALIFIED.**

Although plaintiffs have conceded that Dr. Parisian is not qualified to opine on certain matters, because of critical holes in those concessions, the Court should exercise its gatekeeping role to ensure that Dr. Parisian does not testify beyond the scope of her expertise.

A.  **Dr. Parisian Should Not Be Permitted to "Touch Briefly" on Foreign Regulatory Matters or Causation Issues about Which Plaintiffs Concede She Lacks Expertise.**

Plaintiffs have conceded that Dr. Parisian is not qualified to offer expert testimony on issues of medical causation or foreign regulatory matters.  Opp. at 12-13.  They contend that she does not, in fact, offer testimony on these issues.  *Id.*  Rather, they assert that Dr. Parisian's opinions "touch briefly" on these matters for the purpose of showing what information Bayer should have been aware of or should have disclosed to FDA.  *Id.* at 12.  This is a distinction without a difference.

Plaintiffs should not be permitted to end run *Daubert*'s gatekeeping requirements by offering unqualified expert testimony framed as an opinion about what information Bayer should have known.  For example, the opinion identified by plaintiffs – that "Bayer *should* . . . *have been aware* that Trasylol carried an increased risk . . . of renal failure," *id.* (emphasis in

2

original)—necessarily requires Dr. Parisian to reach a causation opinion that Trasylol did carry an increased risk of renal failure. Dr. Parisian, by plaintiffs' own admission, is not qualified to make the causation finding embedded in this opinion. *Id.* Dr. Parisian's opinions regarding epidemiological studies suffer from the same flaws. In discussing the import of scientific studies as they relate to Bayer's duties, including its duty to communicate with FDA, Dr. Parisian has improperly reached opinions about the epidemiological significance of studies—opinions plaintiffs have conceded she is not qualified to give. *See, e.g.*, Parisian Rep. (Ex. A[1]) ¶ 31 (concluding, without analysis or explanation, that "[t]hese three studies above provide reasonable evidence of causal association of risk of Traylol as well as association of increased risk with increasing dose").

Similarly, Dr. Parisian should be precluded from offering testimony, even in passing, that implicates foreign regulatory action related to Trasylol because she is not qualified to render such opinions. Despite plaintiffs' protestations to the contrary, Dr. Parisian's report clearly opines on the findings of foreign regulatory bodies and what those findings mean in terms of Bayer's responsibilities in the United States regulatory system. *See, e.g.*, *id.* at 233 & ¶¶ 207-10 (offering opinion that "foreign pharmacovigilance inspections showed major deficiencies in Bayer's procedures for identification of safety issues"). Dr. Parisian cannot point to conclusions of a foreign regulatory body applying its own regulatory standards to bolster her opinions regarding Bayer's marketing of Trasylol in the United States because, by her own admission, she is not qualified to evaluate the foreign regulatory process. *See* Mot. at 5; Opp. at 13.

---

[1] Other than Exhibit E, which is attached hereto, all other references to exhibits refer to the exhibits attached to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Suzanne Parisian, M.D. (D.E. 3074).

Along the same lines, Dr. Parisian's attempt to invoke Bayer's own policies and standard operating procedures and address how Bayer supposedly deviated from them, *see* Parisian Dep. (Ex. E attached hereto) at 226:16-21, is beyond any possible expertise she may have.

To the extent plaintiffs argue that Dr. Parisian is not rendering her own opinions on these subjects, but is merely regurgitating for the jury what independent documents say about causation or foreign regulatory matters, this is not expert testimony at all and is properly excluded as unhelpful to the trier of fact. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 553 (S.D.N.Y. 2004) (excluding testimony related to foreign regulatory actions because "[n]one of it qualifies as 'scientific, technical or other specialized knowledge'").

### B.   Courts Have Not Uniformly Permitted Dr. Parisian to Offer *All* of the Regulatory Opinions Proffered in this Case.

Bayer does not dispute that some courts have permitted Dr. Parisian to offer some testimony on certain regulatory subjects in some pharmaceutical cases.[2] It is not true, however, that Dr. Parisian "has been consistently admitted to testify on *all* of the subjects upon which she intends to offer expert testimony in this case." Opp. at 9 (emphasis added). In an attempt to gloss over the problems with her opinions, plaintiffs characterize them at a high-level of generality that ignores the many aspects of her testimony that are improper. *Id.* at 8 (stating that

---

[2] Plaintiffs' claim that Bayer repeatedly cites a group of cases in support of the exclusion of Dr. Parisian's testimony that do not stand for the propositions for which they are cited is disingenuous and flatly wrong. Opp. at 5. Although Bayer argues that Dr. Parisian is not qualified to offer regulatory opinions, the cases plaintiffs point to, including *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644 (D.N.J. 2008), *Reece v. AstraZeneca Pharms., LP*, 500 F. Supp. 2d 736 (S.D. Ohio 2007), and *In re Prempro Prods. Liab. Litig.*, 586 F.3d 547 (8th Cir. 2009), are not cited in support of this argument in Bayer's Motion. Rather, these opinions are cited for the various limitations that courts have imposed on Dr. Parisian's testimony to demonstrate why her testimony should be similarly limited here. *See, e.g.*, Mot. at 3 n.1 (citing *In re Human Tissue Prods. Liab. Litig.* for the proposition that Dr. Parisian's testimony *on medical issues* should be excluded as beyond her qualifications and unreliable).

Dr. Parisian offers testimony in "four general areas"). As her 250-page expert report demonstrates, her testimony often crosses into areas that even the cases cited by plaintiffs have prohibited. *See, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 191-92 (S.D.N.Y. 2009) (excluding Dr. Parisian's conclusory opinions, testimony that merely quotes select exhibits, and opinions on defendants' knowledge, motivations, intent, state of mind, or purposes). Dr. Parisian's report is replete with this type of improper testimony.

In short, even where some courts have admitted *some* of Dr. Parisian's regulatory opinions, they have not permitted the type of sweeping opinions offered in her report and during her deposition in this case. While Bayer maintains that Dr. Parisian does not possess the requisite qualifications to opine on regulatory matters as they relate to prescription drugs such as Trasylol, *see* Mot. at 8-9,[3] even if the Court allows her to provide some regulatory testimony, that testimony should not be allowed in without proper limitation as more fully explained in Bayer's Motion and §§ II, III, *infra*.

## II. DR. PARISIAN'S OPINIONS SHOULD BE EXCLUDED BECAUSE THEY EXCEED THE SCOPE OF PERMISSIBLE EXPERT TESTIMONY UNDER *DAUBERT*.

### A. Dr. Parisian Should Not Be Permitted to Give a Narrative of Trasylol's Regulatory History.

Bayer argues in its Motion that Dr. Parisian's lengthy factual narrative should be excluded because it improperly invades the province of the jury and is unreliable. Mot. at 10-11.

---

[3] In their opposition, plaintiffs exaggerate the scope of Dr. Parisian's experience with the regulation of prescription drugs while she worked in the medical device division at FDA. For example, plaintiffs claim that Dr. Parisian was the "sole medical officer tasked specifically with drug safety concerns regarding ACE inhibitors." Opp. at 10. This is false. As her deposition makes clear, Dr. Parisian's only contribution to the ACE inhibitors labeling was drafting one of the warnings regarding anaphylactoid reactions, which amounted to one paragraph out of the five-page labeling. Parisian Dep. (Ex. E) at 55:8-57:9 and Ex. 6 (hand-marked by witness). Dr. Parisian admitted that responsibility for the remainder of the ACE inhibitors labeling rested with the medical reviewer from FDA's cardiovascular branch for hypertensive drugs and the sponsor. *Id.* at 56:21-57:9.

In response, plaintiffs do not dispute that factual narratives are not proper subjects of expert testimony. Instead, plaintiffs claim that the narrative of Trasylol's regulatory history set forth in Dr. Parisian's report is not itself the focus of her testimony, but that it is necessary to allow Dr. Parisian to apply her expertise to those factual materials "to draw inferences that would not otherwise be apparent." Opp. at 14-15. This argument deliberately confuses the issue.

As the *Rezulin* MDL court held, an expert may not get on the witness stand and present her gloss on documentary evidence, regardless of whether that evidence informs the basis of her expert opinions. 309 F. Supp. 2d at 551.[4] In that case, plaintiffs argued that "[the expert's] narrative merely forms the basis for his opinions and helps to explain his reasoning to the jury." *Id.* In excluding such opinions, the *Rezulin* court explained that the jury is "equally capable of constructing" this type of narrative from the evidence, and held that "[s]uch material, to the extent it is admissible, is properly presented through percipient witnesses and documentary evidence." *Id.*; *see also In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 191-92 (holding that Dr. Parisian may not "merely read, selectively quote from, or 'regurgitate' the evidence").[5]

As is evident from her expert report, there are many instances in which Dr. Parisian does not sufficiently connect the myriad factual assertions presented in her report to

---

[4] Plaintiffs' suggestion that *Rezulin* is different because the *Rezulin* expert was proffered merely to give a history of Rezulin and nothing more is simply inaccurate. Like Dr. Parisian, the expert in *Rezulin* was offered to testify on much more, such as "regulatory matters including comments on FDA requirements for drug studies and aspects of the FDA's approval process for Rezulin." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547 n.50.

[5] Plaintiffs seek to discount the *Prempro* decision because the court excluded Dr. Parisian's narrative testimony on post-trial motions. Opp. at 15. But where (as here) the problem is apparent pre-trial, a pre-trial ruling is necessary to fulfill *Daubert*'s gatekeeping standard, which requires that courts keep improper expert testimony from reaching the jury in the first place. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005) ("*Daubert* requires the trial court to act as a gatekeeper to insure that speculative and unreliable opinions do not reach the jury.").

expert analysis or opinion of any sort, but merely regurgitates factual evidence and documentary records. *See, e.g.*, Parisian Rep. (Ex. A) ¶¶ 81-131. There is no dispute that merely presenting this factual narrative to the jury would be improper. Moreover, to the extent Dr. Parisian did not adequately set forth the expert opinions that flow from this factual evidence in her report, she may not cure that deficiency by offering new opinions during her deposition or at trial.[6] Fed. R. Civ. P. 26(a)(2)(B)(i). To ensure proper judicial gatekeeping, the Court should preclude Dr. Parisian from presenting narrative testimony on Trasylol's regulatory history to the jury. *See United States v. Frazier*, 387 F.3d 1244, 1260, 1263 (11th Cir. 2004) (explaining that "the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it'").

> **B.     Dr. Parisian's Legal Conclusions That Bayer Violated the FDCA and Related Regulations Are Improper and Should Be Excluded.**
>
> > **1.     Dr. Parisian's legal conclusions go beyond the scope of proper expert testimony.**

In response to Bayer's argument that Dr. Parisian should not be permitted to offer legal conclusions, plaintiffs suggest that Dr. Parisian be allowed to give "fact-based opinions" about whether a party breached the standard of care, including, in this case, whether Bayer violated the Food, Drug and Cosmetic Act ("FDCA") and related regulations. Opp. at 15-16. But plaintiffs ignore the weight of authority that holds that testimony regarding whether a defendant breached its duties in tort actions is precisely the type of legal conclusion that usurps the role of the court and invades the province of the jury. *See McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1988) (jury was just as qualified as expert to determine whether defendant breached its duty); *Nicholson v. McCabe*, No. 02-1107, 2003 WL 25676474, at *1

---

[6] *See* Bayer's Mot. to Exclude Plaintiffs' Untimely Expert Disclosures and Mem. of Law in Support Thereof, No. 1:08-md-1928 (S.D. Fla. Jan. 29, 2010) (D.E. 3995).

7

(N.D. Ala. June 2, 2003) (holding expert's testimony "clearly contravenes the well-established principle that an expert may not testify to a legal conclusion" where "[t]he aim of his opinion is to tell the jury that defendant [] violated the federal regulation"); *Steele v. DePuy Orthopaedics, Inc.*, 295 F. Supp. 2d 439, 445-46 (D.N.J 2003) (excluding expert testimony on interpretation and application of FDA regulations to the facts of the case); *Moses v. Danek Med., Inc.*, No. CV-S-95-512, 1998 WL 34024164, at *3 (D. Nev. Nov. 30, 1998) (excluding as legal conclusions testimony on "whether or not Defendants acted 'illegally;' what is 'promotion' under the FDCA; and the interpretation of statutes and regulations").

    The *Rezulin* MDL court made clear that experts may not "communicate a legal standard – explicit or implicit – to the jury." 309 F. Supp. 2d at 541. Applying this rule, the court found that an expert's opinions on a pharmaceutical company's duties to warn patients participating in clinical trials were "not appropriate expert testimony because they embrace ultimate questions of law outside the province of an expert." *Id.* at 557. In so holding, the court rejected plaintiffs' argument that the expert was merely testifying about the "standard of conduct within the medical community," finding that improper testimony containing legal conclusions does not become admissible "simply because it is presented in terms of industry practice." *Id.* at 558. This is precisely what plaintiffs suggest Dr. Parisian ought to be able to do with respect to her testimony that Bayer violated the standard of care applicable to the pharmaceutical industry by violating the FDCA and related regulations. *E.g.*, Opp. at 22 (Dr. Parisian's "role includes telling the jury what a prudent pharmaceutical company would do and the ways in which Bayer's conduct met or fell short of the actions of a prudent company").

    Many of the legal conclusions identified in Bayer's Motion also should be excluded as unhelpful to the trier of fact. *See* Mot. at 12-13 & n.4 (addressing Dr. Parisian's

8

improper opinion that Bayer violated FDCA standards by promoting Trasylol for off-label uses).
In addition to stating impermissible legal conclusions, many of Dr. Parisian's legal opinions are
not relevant to any decision the jury must make in these cases, and should therefore be excluded
under Federal Rule of Evidence 402. This is especially true of Dr. Parisian's many marketing
opinions, such as her testimony that Trasylol was misbranded as a result of Bayer's promotion of
the drug for unapproved uses. Parisian Rep. (Ex. A) ¶ 35; *see also id.* at 24 (Opinion 2) ("Bayer
failed to adhere to the requirements of [FDCA] when it promoted Trasylol to physicians in the
United States for unapproved and off-label uses without first having obtained FDA's approval
. . . ."). To the extent Dr. Parisian is seeking to offer opinions about alleged off-label promotion
in cases such as *Bryant*, *Bechara*, and *Morrill* – all of which involve the administration of
Trasylol for its FDA-approved *on*-label indication at the time of the surgeries in those cases –
these opinions should be excluded both because they state improper legal conclusions and
because they are wholly irrelevant to those plaintiffs' claims. Allowing Dr. Parisian to address
such far-flung matters would confuse the jury and waste limited trial time.

### 2. Dr. Parisian's testimony that Bayer submitted inadequate information to FDA should be precluded under *Buckman*.

Plaintiffs' assertion that *Buckman* does not apply because "Plaintiffs in this case
do not complain of fraud on the FDA," Opp. at 19, is demonstrably false. In her report, Dr.
Parisian repeatedly opines that Bayer disregarded its obligation and duties for providing FDA
timely and accurate reports of risks associated with Trasylol, including the St. George's study,
the Kress study, and the preliminary report of the i3 study. *See* Parisian Rep. (Ex. A) at 24
(Opinion 1); *id.* at 99 (Opinions 5 and 6).[7] Dr. Parisian even speculates that the outcome of the

---

[7] *See* Defs.' Mot. *in Limine* to Exclude Evidence, Testimony, and Argument Alleging that Bayer Provided Inadequate or Incomplete Data to the Federal Food and Drug Administration, No. 1:08-md-1928 (D.E. 3994).

9

September 2006 Advisory Committee meeting "would have been different" if Bayer had provided FDA with the preliminary results of the i3 study prior to the meeting. *Id.* at 99 (Opinion 6). None of this testimony is admissible under *Buckman*.

Plaintiffs misrepresent both the nature of Bayer's preemption argument and the applicable law governing allegations of fraud-on-the-FDA. Plaintiffs need not raise a separate cause of action called "fraud-on-the-FDA" for *Buckman* to apply. As cases applying *Buckman* make clear, plaintiffs cannot attempt to prove their state-law causes of action through allegations or evidence that the company's submissions to FDA were untimely, incomplete, or inadequate. *See, e.g.*, *Bouchard v. American Home Prods. Corp.*, 213 F. Supp. 2d 802, 811 (N.D. Ohio 2002) (granting the defendant's motion *in limine* to exclude "any evidence or argument that [the defendant] 'misled' [FDA] . . . or 'violated' the [FDCA] . . . .'"); *Swank v. Zimmer*, No. 03-cv-60, 2004 WL 5254312, at *2 (D. Wyo. Apr. 20, 2004) (granting defendant's motion *in limine* to exclude evidence of alleged misrepresentations to the FDA). Thus, plaintiffs cannot bring a state-law claim against a defendant "when that claim is in substance (even if not in form) a claim for violating the FDCA—that is, when the state claim would not exist if the FDCA did not exist." *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 776-77 (D. Minn. 2009); *see In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, No. 05-md-1699, 2006 WL 2374742, at *10 (N.D. Cal. Aug. 16, 2006) (citing *Buckman* and holding that "[t]he law is well established that a claim premised on a drug manufacturer's failure to provide data to the FDA is preempted"); *see also* 21 U.S.C. § 337 (party may not bring a private cause of action to enforce FDCA).

Moreover, the Supreme Court's decisions in *Wyeth v. Levine*, *Silkwood v. Kerr-McGee Corp.*, and *Medtronic, Inc. v. Lohr* – all of which deal with preemption of state-law tort claims and do not address the separate issue of allegations of fraud-on-the-agency – are

inapposite to the disposition of this motion. Bayer does not argue here, as plaintiffs suggest, that implied preemption principles generally bar their state-law tort claims. Rather, Bayer asserts that plaintiffs' allegations and proffered evidence that Bayer engaged in fraud on the FDA in support of plaintiffs' state-law claims is preempted under *Buckman*. Numerous courts have recognized this distinction (even after *Levine*). *See*, *e.g.*, *Hughes v. Boston Sci. Corp.*, __ F. Supp. 2d __, 2009 WL 3817586, at *9-14 (S.D. Miss. Nov. 12, 2009) (applying *Buckman* and rejecting argument that alleged FDCA violation created state-law negligence *per se* claim); *Perez v. Nidek Co.*, 657 F. Supp. 2d 1156, 1166 (S.D. Cal. 2009) ("The Court will not permit Plaintiffs to privately enforce the FDCA and its regulations under the guise of state law claims."); *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at *10 (D.N.J. July 10, 2009) (dismissing consumer fraud claim because it was "plainly an impermissible attempt . . . to turn violations of the FDCA . . . into a private right of action"); *In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*, No. MDL 08-1934, 2009 WL 1703285, at *5 (C.D. Cal. June 17, 2009) (dismissing claims that "attempt[ed] to shoehorn allegations that [defendant] . . . violat[ed] the FDCA into . . . state consumer fraud causes of action").

Accordingly, Dr. Parisian's testimony that Bayer concealed scientific data or provided insufficient submissions to FDA, or speculation about what FDA would have done with different information, is preempted by federal law and must be excluded.

### C. Dr. Parisian's "Passing References" to Foreign Regulatory Actions Should Not be Put Before the Jury.

In response to Bayer's argument that expert testimony on foreign regulatory matters should be excluded as irrelevant and likely to cause jury confusion in a case governed by U.S. law, plaintiffs claim that "passing references" to actions taken by foreign regulatory bodies

11

will not confuse the jury because they do not turn on application of foreign law or the correctness of the foreign action. Opp. at 21. This argument ignores the many decisions that have excluded foreign regulatory standards, including binding Eleventh Circuit precedent. *See Deviner v. Electrolux Motor AB*, 844 F.2d 769, 773 (11th Cir. 1988) (upholding exclusion of "Swedish law and statistics" "to avoid confusing the jury").

Indeed, it is clear from the very example plaintiffs provide that the probative value of testimony regarding foreign regulatory standards is substantially outweighed by the danger of unfair prejudice to defendants and jury confusion. Fed. R. Evid. 403. Specifically, plaintiffs claim that Dr. Parisian will point to Bayer's acceptance of a European label change adding warnings about renal dysfunction in May 2006 as evidence that Bayer did not provide full and timely disclosure of information to FDA during that same year. Opp. at 21. But the very basis of this opinion requires an evaluation of the need for the European label change under foreign regulatory standards. As several other MDL courts have held, the danger of jury confusion in such circumstances warrants exclusion of such testimony. *See, e.g.*, *In re Seroquel Prods. Liab. Litig.*, 601 F. Supp. 2d 1313, 1318 (M.D. Fla. 2009) ("probative value [of foreign regulatory evidence] is greatly overmatched by the jury confusion, waste of time, and unfair prejudice that would result"); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) ("[T]he Court finds that allowing the admission of evidence of foreign regulatory actions, in a case that is governed by domestic law, would likely cause jury confusion").

> **D.    Dr. Parisian Should Not Be Permitted To Speculate About Bayer's Conduct.**
>
> **1.    Dr. Parisian's speculation about Bayer's knowledge, motives, or state of mind does not call for expert analysis and invades the province of the jury.**

Plaintiffs concede that opinions on the knowledge, intentions, motivations, or state of mind of Bayer are not proper subjects of expert testimony, and state that it is not Dr.

12

Parisian's "plan" to testify to such matters. Opp. at 22. And yet, throughout her report and during her deposition testimony, Dr. Parisian repeatedly violates this well-established rule. *See, e.g.*, Parisian Rep. (Ex. A) ¶ 34 (opining that Bayer's marketing plan was *intended* to promote unapproved and off-label uses); Parisian Dep. (Ex. E) at 21:8-11 (stating that her role in the case is to opine on what "the company knew before 1993 before they got NDA approval" and "[t]hen through the NDA approval process, what they knew"). Ignoring the blatant violations of the rule cited by Bayer in its Motion, *see* Mot. at 17, plaintiffs claim that it is within Dr. Parisian's expertise to draw "reasonable inferences" from documentary evidence regarding "what information was available to a [*sic*] Bayer at a given time." Opp. at 22.

This attempt at sleight of hand should not confuse the Court. Despite the many assurances from plaintiffs and Dr. Parisian that she "can't say what Bayer knew," Parisian Dep. (Ex. E) at 21:21, the reality is that Dr. Parisian repeatedly seeks to pontificate about what Bayer knew and why Bayer took certain actions with respect to Trasylol. *See* Mot. at 17 (citing examples from Dr. Parisian's report). The fact that Dr. Parisian purports to draw these conclusions based on documentary evidence does not make her opinions admissible. *See* Mot. at 18; *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000) (holding that question of intent that flows from other evidence is to be determined by the jury).

Regardless of how her opinions are phrased, the crux of her testimony is the same, and it is improper. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 545-47 & n.45 (finding plaintiffs' denial that expert opines on intent "untrue" and rejecting argument that expert may describe facts from which the jury could infer defendant's motivations).

### 2. Dr. Parisian offers personal and conclusory opinions that are properly excluded.

Plaintiffs also do not contest Bayer's argument that an expert may not offer personal opinion testimony or conclusory opinions about pharmaceutical companies. *See* Mot. at 19-20. Rather, they dispute whether Dr. Parisian offers such opinions in the first place. Opp. at 23-25. The four corners of Dr. Parisian's report make clear that, if permitted, she intends to offer impermissible personal opinion testimony. In addition to the examples cited by Bayer in its Motion at 19-20,[8] there are numerous other examples in her report. *See, e.g.*, Parisian Rep. (Ex. A) ¶ 392 (opining without analysis or explanation that "[a] reasonable pharmaceutical manufacturer with a concern for patient safety would have pursued studies regarding the renal effects long before March 2006"). Quite clearly, she intends to offer her personal beliefs on this issue to the jury in the guise of expert testimony.

Indeed, Dr. Parisian has attempted to give the same kind of personal opinion testimony in a number of prior cases and has been prohibited from putting these opinions before the jury. *See In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871, 882 (E.D. Ark. 2008) (excluding Dr. Parisian's opinions because they were not based on regulatory analysis), *aff'd in relevant part*, 586 F.3d 547, 571 (8th Cir. 2009); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d at 191 (excluding conclusory opinions in Dr. Parisian's report). In light of *Daubert*'s important gatekeeping function, the Court should make clear that the conclusory opinions offered in Dr. Parisian's report and at deposition may not be put before the jury in this case. *See In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial

---

[8] Plaintiffs cannot complain that Dr. Parisian's impermissible personal opinions were prompted by questions from opposing counsel during deposition. Opp. at 24. Defendants are entitled to fully question this expert to understand the scope of the opinions she intends to offer at trial and to object to those opinions that do not meet the requirements of expert testimony under Federal Rule of Evidence 702 and *Daubert*.

judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument").

### III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT DR. PARISIAN'S TESTIMONY IS SUFFICIENTLY RELIABLE.

In response to Bayer's challenge to the reliability of Dr. Parisian's opinions, plaintiffs claim that Dr. Parisian considered "extensive materials" such as the "Federal Drug and Consumer [*sic*] Act, applicable sections of the Code of Federal Regulations, FDA Guidances, pertinent scientific literature, deposition testimony from Bayer employees and other experts, publicly available documents such as Bayer's New Drug Application, patent office records, and records of FDA communications." Opp. at 25.

What plaintiffs fail to tell the Court, however, is that Dr. Parisian did not conduct a full, independent review of this information to reach her conclusions, as an FDA medical reviewer in the field would have done. Rather, she reviewed selected materials, most of which were hand-picked for her by plaintiffs in this litigation. *See* Parisian Dep. (Ex. E) at 36:19-37:4; 41:14-16. This type of opinion does not stem from reliable science and will not assist the trier of fact or fairly reflect the scrutiny that would be applied by a medical reviewer in the real world.

Plaintiffs bear the burden of demonstrating that Dr. Parisian's testimony is the product of sound methodology applied to the facts. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (proponent of witness has burden of proving admissibility by preponderance of evidence). In light of this burden, it is no answer to argue, as plaintiffs do, that Bayer may cross examine Dr. Parisian if it believes the bases for her opinions are inadequate. Opp. at 26. Rather, plaintiffs must prove to this Court that Dr. Parisian has met *Daubert*'s critical reliability requirement. They have failed to do so here. Accordingly, her testimony should be excluded.

## CONCLUSION

For these reasons and those in its Motion, Bayer respectfully submits that this Court should exclude Dr. Parisian's proposed testimony.

February 5, 2010                                    Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail:  blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-7036

Rebecca K. Wood
Email: rwood@sidley.com
Amy L. Hanke
Email: ahanke@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone: 202-736-8000
Facsimile: 202-736-8711

Susan Artinian
Email: sartinian@dykema.com
Daniel Stephenson
Email: dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI 48243
Telephone: 313-268-9788
Facsimile: 313-568-6658

Richard K. Dandrea
Email: rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
Telephone: 412-566-6000
Facsimile: 412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Schering Pharma AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                    */s/ Barbara Bolton Litten*
                                    Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*