IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:  **ALL ACTIONS**

### BAYER'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
### TESTIMONY OF PLAINTIFFS' EXPERT MARK DERSHWITZ, M.D., Ph.D.

Even though plaintiffs offered Dr. Dershwitz as a causation expert and even though a third of his expert report is devoted to reviewing the epidemiological literature on Trasylol, *see* Dershwitz Report (Ex. B[1]) at 6-11, plaintiffs now have abandoned any effort to establish the reliability of his causation testimony.  Rather, they assert that his "testimony will be limited to the pharmacology of Trasylol and *biologically plausible* mechanisms through which Trasylol *may cause* renal dysfunction, renal failure, and an increased risk of mortality." Plaintiffs' Opposition (Docket Entry 3889) ("Opp.") at 19 (emphasis added).

In other words, plaintiffs want Dr. Dershwitz to speculate for the jury about how Trasylol *might* cause the injuries that plaintiffs allege, in an attempt to shore up the causation testimony of other experts.  His proposed testimony is inadmissible under Eleventh Circuit law and is not, in any event, based on reliable scientific methodology.

As Bayer explained in its motion (D.E. 3064) ("Motion"), Dr. Dershwitz's mechanism theories are inadmissible because the Eleventh Circuit requires testimony about a mechanism of injury to be based on a proven biologic process.  Plaintiffs do not contest that Dr.

---

[1] Other than Exhibits I, J, and K, which are attached hereto, all other references to exhibits refer to the exhibits attached to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark Dershwitz, M.D., Ph.D. (D.E. 3064).

Dershwitz's theories are not based on a proven biologic process or that this is the applicable standard in the Eleventh Circuit. Instead, they rely on mischaracterizations of out-of-circuit authority to argue that Dr. Dershwitz should be allowed to present unproven but "plausible" mechanism theories to the jury.

Even if the Eleventh Circuit standard did not apply – and it does – Dr. Dershwitz's testimony about "plausible" mechanisms of injury would be inadmissible because his theories are the product of speculation, not reliable scientific methodology. Plaintiffs attempt to distract the Court by focusing on Dr. Dershwitz's credentials and by referencing material that Dr. Dershwitz did not consider or rely upon in developing his theories. But plaintiffs cannot prop up unreliable expert testimony by attempting retrospectively to fill gaps in the expert's methodology, and not even the best credentials can support admission of expert testimony based on scientifically unreliable methods.

**ARGUMENT**

**I.    DR. DERSHWITZ'S PROFFERED TESTIMONY IS INADMISSIBLE BECAUSE HIS MECHANISM THEORIES ARE NOT BIOLOGICALLY PROVEN.**

Plaintiffs assert that the "plausible" mechanisms proffered by Dr. Dershwitz need not be biologically proven because plaintiffs "intend to offer other experts to opine about causation." Opp. at 9. Although plaintiffs may have withdrawn Dr. Dershwitz's opinions on general causation, the opposition makes clear that plaintiffs still intend to offer Dr. Dershwitz's mechanism opinions to *prove* causation as a way of supporting plaintiffs' other experts. *See* Opp. at 6 ("Where a biologically plausible mechanism of action can be inferred, that inference supports a causal connection"); *id.* at 9 ("Plaintiffs intend to offer other experts to opine about causation based upon … scientific evidence of an association between Trasylol and renal injury"); *id.* at 15 ("The pharmacological studies cited [by Dr. Dershwitz] confirm the

2

biologically plausible explanations for the causality evidence … explained more fully by Dr. Eisenberg and Dr. Parikh"). Because Dr. Dershwitz's mechanism opinions will be used as part of plaintiffs' effort to establish causation, the mechanisms must be biologically proven. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005).

Plaintiffs assert that Dr. Dershwitz's proposed mechanisms need not be biologically proven, and that he can present his unproven mechanism theories to the jury if those theories are merely "biologically plausible." Opp. at 5-7. Plaintiffs' argument ignores controlling authority in the Eleventh Circuit, which requires a biologically proven mechanism to support a general causation opinion. *See McClain*, 401 F.3d at 1253 (holding that the trial court abused its discretion in admitting a general causation expert whose opinion lacked "a reliable explanation of the physiological process by which Metabolife causes heart attacks and ischemic strokes");[2] *see also Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *5 (S.D. Fla. June 25, 2009) (excluding a general causation expert where "none of [his cited] articles explains the mechanism by which bupivacaine damages cartilage"); *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 598-99 (N.D. Fla. 2009) (excluding an expert's causation opinion for "his failure to show how, by 'scientifically valid methodology,' traumatic brain injury could ever be a possible cause of autism"); *In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1296 (M.D. Fla. 2007) (excluding an expert's causation opinion because his biological theory "is merely plausible, not proven, and biological possibility is not proof of causation").

Moreover, the out-of-circuit cases cited by plaintiffs do not support the proposition that evidence of a biologically plausible mechanism is reliable evidence of general

---

[2] Plaintiffs' argument that this portion of *McClain* is dicta, Opp. at 7, is a result of a misreading of *McClain*. In *McClain*, the lack of "a reliable explanation of the physiological process" was part of the Court's reasoning that the trial court abused its discretion in admitting the expert testimony. 401 F.3d at 1253.

causation. Rather, each of the pharmaceutical cases relied on by plaintiffs involved a *specific causation* expert who undertook a differential diagnosis based upon a specific patient's medical history, and ruled out all other causes for the injury. *See, e.g., Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228-30 (9th Cir. 1998); *Perkins v. Origin Medsystems, Inc.*, 299 F. Supp. 2d 45, 57-60 (D. Conn. 2004); *Golod v. Hoffman LaRoche*, 964 F. Supp. 841, 858-61 (S.D.N.Y. 1997). Indeed, in *Golod*, the specific causation expert's testimony was excluded where he proposed a mechanism, following differential diagnosis, that was biologically plausible but speculative, *see* 964 F. Supp. at 860-61, which is precisely the holding in *McClain*.

Plaintiffs' reliance on *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769, 2009 WL 3806435 (M.D. Fla. June 23, 2009) also is misplaced. The expert there "review[ed] the totality of the literature on the association between Seroquel and diabetes, hyperglycemia and weight gain, including studies in which the authors found no evidence of a causal connection" and then applied the nine Bradford-Hill criteria before arriving at her general causation opinion.[3] *Id.* at *6. The court concluded that the expert's "acknowledgement that the mechanism by which Seroquel causes certain adverse metabolic effects is yet unknown" did not render her testimony unreliable because her application of the Bradford-Hill criteria "provided reliable scientific evidence supporting an inference of cause and effect." *Id.* at *10.

Here, Dr. Dershwitz's methodology cannot compensate for his lack of a proven mechanism. He did not apply the Bradford-Hill criteria, and (contrary to plaintiffs' assertions) there is no evidence that he reviewed or considered the totality of the scientific literature before forming his opinions. *See* Report (Ex. B) at ¶¶ 22, 39 (noting the existence of contrary studies,

---

[3] The nine Bradford-Hill "viewpoints" are: (1) strength of the association; (2) consistency; (3) specificity; (4) temporality; (5) biological gradient (whether there was a dose-response relationship); (6) plausibility; (7) coherence; (8) experiment; and (9) analogy. *In re Seroquel*, 2009 WL 3806435, at *5, n.5.

4

but failing to offer any discussion of such studies); Dershwitz Dep. (Ex. I) at 295:11-296:4 (deliberately omitting the identification of contrary studies from his report), 22:4-12 (stating that he omitted discussion of contrary studies because they were "less relevant").  Moreover, Dr. Dershwitz never examined the dose-response threshold, *see* Bayer's Motion to Exclude (D.E. 3064) ("Motion") at 6-7, 8-9, and failed to cite any of the published studies where his proffered mechanisms were tested in humans.  *See infra* II.B.1.  *Seroquel* thus cannot save his opinion.

This Court should follow *McClain*, *In re Accutane*, *Hendrix* and *Kilpatrick* and exclude Dr. Dershwitz's general causation opinion, because plaintiffs do not even attempt to argue that the mechanisms he offers are proven.

## II. DR. DERSHWITZ'S PROPOSED MECHANISMS ARE SCIENTIFICALLY UNRELIABLE AND THEREFORE INADMISSIBLE.

Plaintiffs assert that "Dr. Dershwitz has presented reliable, relevant, and admissible testimony regarding three [*sic*] theories whereby Trasylol adversely impacts kidney function."[4]  Motion at 2-9.  The record, however, establishes that Dr. Dershwitz has offered nothing more than speculation regarding how Trasylol purportedly results in injury.  Because plaintiffs cannot establish the reliability of his methodology, they cannot carry their burden of demonstrating that his testimony should be admitted into evidence.  *See Boca Raton Comm. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) ("The offering party must show that the opinion meets the *Daubert* criteria, including reliable methodology and helpfulness to the factfinder in understanding the evidence or determining a fact, by a preponderance of the evidence.").

---

[4] Plaintiffs mistakenly suggest that Dr. Dershwitz offered three biologically plausible mechanisms.  In fact, Dr. Dershwitz offered two theories, impaired regional blood flow in the kidney and microscopic blood clots.  *See* Report (Ex. B) at ¶¶ 43, 48; Dershwitz Dep. (Ex. I) at 158:21-159:4, 162:14-23.

### A. Dr. Dershwitz's Impaired Regional Renal Blood Flow Theory Is Not Based on Good Scientific Methodology.

Dr. Dershwitz relies solely on a single animal study (Kramer 1983) to support his impaired regional renal blood flow theory. Report (Ex. B) at 13; Motion at 5. Plaintiffs defend Dr. Dershwitz's sole reliance on Kramer by asserting that animal studies are "useful." Opp. at 11-12. Plaintiffs' position, once again, ignores the applicable standards for admissibility. It is well settled that, where an expert fails to explain why the result from an animal study may be extrapolated to humans, his opinion based on that study is unreliable. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1314 (11th Cir. 1999) (affirming trial court's decision to exclude a general causation expert who failed to correlate the animal study results to humans). Dr. Dershwitz has offered no explanation or basis for extrapolating the results of the Kramer study to humans. Failure to demonstrate this essential link is particularly problematic in light of the significant limitations of the Kramer study described at pages 5 to 7 of Bayer's motion.[5]

In an effort to dissuade the court from exercising its "gatekeeper" role with respect to expert testimony, plaintiffs assert that Bayer's arguments "go to the weight of the expert's testimony, not its admissibility."[6] Opp. at 14. The Supreme Court, however, has made clear that an expert's failure to account for a study's limitations demonstrates an improper methodology and warrants exclusion of his testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S.

---

[5] Although plaintiffs argue that *Allison* and the other authority cited by Bayer are inapposite because they address the use of animal studies to establish causation, plaintiffs ignore that they are offering Dr. Dershwitz's proposed mechanisms in order to *prove* causation. *See* Opp. at 19 (Dr. Dershwitz's testimony will be limited to … biologically plausible mechanisms through which Trasylol *may cause* renal dysfunction, renal failure, and an increased risk of mortality"). Plaintiffs cannot ignore controlling authority or cure unreliable testimony through the semantics of claiming that Dr. Dershwitz is not being offered as a causation expert.

[6] Plaintiffs claim Dr. Dershwitz cites twenty-nine separate studies to support his biologically plausible mechanism opinions. Opp. at 13. However, Dr. Dershwitz's Reference List contained only twenty-six references, *see* Report (Ex. B) at 35, and of those cited he limited himself to Kramer, *id*. ¶ 43, and Havel, *id.* ¶ 48, for his proposed biologically plausible mechanisms.

6

136, 145-146 (1997) (rejecting reliance on study reporting a statistically significant increased incidence of lung cancer deaths in a PCB-exposed group where the subjects "had been exposed to numerous potential carcinogens"); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 252-54 (6th Cir. 2001) (failure to account for confounding factors in cohort study of alleged PCB exposures rendered opinion unreliable); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL-1203, 2001 WL 454586, at *13 (E.D. Pa. Feb. 1, 2001) (putative expert's "failure to account for the presence of confounding factors ... casts doubt on the usefulness of his method in determining" causation).

Moreover, even if the limitations of the animal study Dr. Dershwitz relies upon went to the weight of the evidence, Dr. Dershwitz's failure to address and account for the studies that actually examined Trasylol's effects on renal blood flow in *humans* require exclusion of his proffered opinion.[7] *See Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996) (affirming exclusion of expert opinion as unreliable based on district court's finding that expert "has seen fit to 'pick and chose' [sic] from the scientific landscape and present the Court with what he believes the final picture looks like. This is hardly scientific.") (alteration in original); *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1331 (10th Cir. 2004) (affirming exclusion of plaintiffs' causation expert because "selective reliance" on certain evidence to the exclusion of other evidence is "not a generally accepted methodology").

---

[7] *See* A. Schweizer, "Aprotinin does not impair renal haemodynamics and function after cardiac surgery," British Journal of Anaesthesia, 2000; 80(1): 16-22 (Ex. J) (The authors concluding that "[d]espite inhibition of killikrein-kinin pathways, aprotinin pretreatment did not influence prostaglandin synthesis, glomerular filtration, renal plasma flow or tubular transport mechanisms."); *see also* Dershwitz Dep. (Ex. I) at 175:21-177:23 (Dr. Dershwitz offered no discussion on one of his cited study's results where the authors concluded that Trasylol had no effect on renal plasma flow in humans.).

7

Plaintiffs attempt to salvage Dr. Dershwitz's inadmissible theories on "plausible" mechanisms by referencing certain testimony from Bayer's expert nephrologist, Dr. David Humes. Opp. at 12.[8] Because there is no evidence that Dr. Dershwitz himself relied on that testimony, it is "irrelevant to the *Daubert* inquiry." *Kilpatrick*, 2009 WL 2058384 at *10. Moreover, Dr. Hume's opinions were developed as part of his clinical experience with the medications, which is far different from Dr. Dershwitz's opinions developed for the purpose of litigation. *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 615-16 (S.D.N.Y. 2007) (failure to publish in the field was "circumstantial evidence of the unreliability" of his opinion).

### B. Dr. Dershwitz's Microscopic Blood Clot Theory Is Not Based on Good Scientific Method.

Dr. Dershwitz's other proffered mechanism (microscopic renal blood clots) is based solely on one *in vitro* study (Havel 1992). Motion at 7. Plaintiffs assert that the mechanism is plausible because, in their view, it is consistent with the 2006 Trasylol label. Opp. at 13. Even if the label could be interpreted this way,[9] which Bayer denies, the argument provides no basis for admitting testimony from Dr. Dershwitz on this theorized mechanism because Dr. Dershwitz did not rely on the label in developing his theory. Thus, because there is no evidence that Dr. Dershwitz "relied on these documents in reaching his conclusions, ... they are therefore irrelevant to the *Daubert* inquiry." *Kilpatrick*, 2009 WL 2058383, at *10.

---

[8] Plaintiffs ignore the report of Bayer's expert on Trasylol's mechanism of action, Dr. Nicholas Flavahan.

[9] Plaintiffs claim that "Trasylol's association with thrombin generation is clearly stated in the package insert." Opp. at 13. The package insert, however, states that Trasylol "*modulates* the systemic inflammatory response (SIR) associated with cardiopulmonary bypass (CPB) surgery" and that "SIR results in … thrombin generation." 2006 Trasylol Package Insert (Ex. K) (emphasis added).

Moreover, as Bayer demonstrated in its opening brief, Dr. Dershwitz did not attempt to account for the inherent limitations in *in vitro* studies in general, and in the Havel study in particular. *See* Motion at 7-8 (Havel examined platelet aggregation *enzymes*, not actual platelet aggregation); *id*. at 8 (Dr. Dershwitz failed to explain why extrapolation from an *in vitro* study is appropriate); *id*. at 8-9 (Dr. Dershwitz failed to consider or explain any differences in dosing). Rather than trying to establish the reliability of Dr. Dershwitz's methodology, as is their burden, plaintiffs again assert that these arguments go to the weight of the testimony, not its admissibility. Opp. at 14. An expert's failure to account for a study's limitations, however, demonstrates an improper methodology and warrants exclusion of his testimony. *See Gen. Elec*, 522 U.S. at 145-146; *Nelson*, 243 F.3d at 252-54; *In re Diet Drugs*, 2001 WL 454586, at *13. Accordingly, Dr. Dershwitz's proposed microscopic blood clot mechanism is unreliable and must be excluded.

### C.  Dr. Dershwitz's Qualifications Do Not Make His Unreliable Opinions Admissible.

Plaintiffs assert that Dr. Dershwitz's qualifications "provide circumstantial evidence of the reliability of his methods." Opp. at 4. However, Dr. Dershwitz's qualifications cannot make up for the shortcomings in his methodology. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) ("A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable.") (citations omitted). If anything, Dr. Dershwitz is akin to the expert in *Malletier*, upon which plaintiffs rely, whose failure to publish in the field was "circumstantial evidence of the unreliability" of his opinion. 525 F. Supp. 2d at 615-16. Here, Dr. Dershwitz has not worked with a bypass patient in 24 years, Dershwitz Dep. (Ex. I) at 106:24-107:6, has not been involved in conducting an animal study in over 20 years, *id.* at 48:22-49:2, and has

9

never conducted research on Trasylol or either of the lysine analogues, *id.* at 102:21-25. Thus, Dr. Dershwitz's qualifications cannot fix his unreliable opinions.

## CONCLUSION

For the foregoing reasons and those presented in its motion, Bayer respectfully requests that Dr. Dershwitz's testimony be excluded.

February 8, 2010　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　*/s/ Barbara Bolton Litten*
　　　　　　　　　　　　　　　　　　Patricia E. Lowry
　　　　　　　　　　　　　　　　　　Florida Bar No. 332569
　　　　　　　　　　　　　　　　　　E-mail: plowry@ssd.com
　　　　　　　　　　　　　　　　　　Barbara Bolton Litten
　　　　　　　　　　　　　　　　　　Florida Bar No. 91642
　　　　　　　　　　　　　　　　　　E-mail: blitten@ssd.com
　　　　　　　　　　　　　　　　　　**SQUIRE SANDERS & DEMPSEY L.L.P.**
　　　　　　　　　　　　　　　　　　1900 Phillips Point West
　　　　　　　　　　　　　　　　　　777 South Flagler Drive
　　　　　　　　　　　　　　　　　　West Palm Beach, FL 33401-6198
　　　　　　　　　　　　　　　　　　Telephone: 561-650-7200
　　　　　　　　　　　　　　　　　　Facsimile: 561-655-1509

　　　　　　　　　　　　　　　　　　Philip S. Beck
　　　　　　　　　　　　　　　　　　Email: philip.beck@bartlit-beck.com
　　　　　　　　　　　　　　　　　　Steven E. Derringer
　　　　　　　　　　　　　　　　　　Email: steven.derringer@bartlit-beck.com
　　　　　　　　　　　　　　　　　　**BARTLIT BECK HERMAN PALENCHAR**
　　　　　　　　　　　　　　　　　　　　**& SCOTT LLP**
　　　　　　　　　　　　　　　　　　54 W. Hubbard Street, Suite 300
　　　　　　　　　　　　　　　　　　Chicago, IL 60603
　　　　　　　　　　　　　　　　　　Telephone: 312-494-4400
　　　　　　　　　　　　　　　　　　Facsimile: 312-494-4440

Eugene A. Schoon
Email: eschoon@sidley.com
Susan A. Weber
Email: saweber@sidley.com
Catherine Valerio Barrad
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036

Susan Artinian
Email: sartinian@dykema.com
Daniel Stephenson
Email: dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI 48243
Telephone: 313-268-9788
Facsimile: 313-568-6658

Richard K. Dandrea
Email: rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
Telephone: 412-566-6000
Facsimile: 412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Schering Pharma AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
Co-Lead Counsel for Plaintiffs

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
& LeClainche, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
Liaison Counsel for Plaintiffs

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
Liaison Counsel for Defendants

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
Co-Lead Counsel for Plaintiffs

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
Federal-State Liaison for Plaintiffs