IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to: **ALL ACTIONS**

### BAYER'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT F. GARY TOBACK

Plaintiffs' opposition brief (Docket Entry 3859) ("Opp.") confirms the core problem with Dr. Toback's expert opinions: they are nothing but a series of educated guesses. It is settled, however, that "the courtroom is not the place for scientific guesswork, even of the inspired sort. Law lags science, it does not lead it." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1247 (11th Cir. 2005); *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002).

As Bayer explained in its motion (D.E. 3063) ("Motion"), Dr. Toback's general causation opinion is inadmissible for two reasons. First, he has not explained (and cannot explain) the physiological process by which Trasylol allegedly causes renal dysfunction and renal failure. The theories he offers are speculation and not based on scientifically reliable evidence. Moreover, theories about kidney injury cannot support conclusions about renal dysfunction and renal failure because, as Dr. Toback concedes, the kidney is incredibly resilient such that not all kidney injuries lead to a loss in kidney function. Plaintiffs offer no response to this core flaw in Dr. Toback's opinion.

Second, Dr. Toback has failed to consider the key factor in assessing causality – whether a threshold dose exists. Plaintiffs do not contest this, but instead point to literature that

Dr. Toback did not rely upon to remedy his opinion. Lawyers, however, should not be permitted to help their experts overcome *Daubert* scrutiny by filling-in the gaps in their methodology.

The Court also should preclude Dr. Toback from opining that Bayer failed to adequately test Trasylol because it did not conduct head-to-head clinical trials comparing Trasylol with lysine analogs. Plaintiffs offer no response to Bayer's argument that Dr. Toback is unqualified to offer such testimony and that any such testimony would be, in any event, impermissible legal or moral opinion testimony.

Finally, the Court should hold plaintiffs to their word that Dr. Toback will not (a) opine on what should be included in Trasylol's label; (b) speculate regarding Bayer's and the FDA's state of mind; (c) offer his baseless opinion that Bayer withheld information from the FDA; or (d) provide an argumentative summary of Bayer's documents.

## ARGUMENT

## I.     DR. TOBACK'S GENERAL CAUSATION IS INADMISSIBLE.

The Court should exclude Dr. Toback's general causation opinion because he has not established a biological mechanism by which Trasylol causes renal dysfunction or renal failure. His general causation opinion is also methodologically-flawed because he did not determine whether there was a threshold dose of Trasylol that allegedly causes renal dysfunction and renal failure.

### A.     Dr. Toback's General Causation Opinion Should be Excluded Because He Cannot Point To A Proven Mechanism.

Dr. Toback's causation opinion fails because he has not provided a biological mechanism connecting Trasylol to renal failure or renal dysfunction – the two primary alleged injuries in this litigation. Although he posits three theories, none is proven, and plaintiffs offer no response to this fatal flaw.

1.      **The Test Is Not Merely Biological Plausibility.**

In *McClain*, the Eleventh Circuit held that a district court abused its discretion and abdicated its gatekeeping function by admitting causation testimony where the expert did not offer "a reliable explanation of the physiological process by which Metabolife causes heart attacks and ischemic strokes." 401 F.3d at 1253. "In the absence of such a foundation" even the widely used "differential diagnosis analysis" "may not serve as a reliable basis for an expert opinion on causation in a toxic tort case." *Id.*[1]

Although plaintiffs argue that *McClain* should be limited to differential diagnoses, Opp. at 8, district courts in the Eleventh Circuit have applied *McClain's* rationale to preclude general causation testimony where the expert could not point to a biologically proven mechanism. *See In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1296 (M.D. Fla. 2007) (excluding general causation expert whose postulated mechanisms had not "been tested or proven" because his "theory remains an educated guess"); *Kilpatrick v. Breg, Inc.*, No. 08-10052, 2009 WL 2058384, *5 (S.D. Fla. June 25, 2009) (excluding an expert who offered an unproven mechanism and where "none of the articles [upon which the expert relied] explains the mechanism by which bupivacaine damages cartilage"); *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 602-603 (N.D. Fla. 2009) (excluding expert opinion that a prenatal brain injury led to autism, where the expert could not explain precisely how traumatic brain injury causes autism).

Notably, *McClain* and its progeny are not outliers in this Circuit. In *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002), the Eleventh Circuit affirmed the

---

[1] Plaintiffs argue that this portion of *McClain* is merely dicta. *See* Opp. at 7. This is false. The Eleventh Circuit held that the trial court "abused its discretion both by abdicating its gatekeeper responsibilities and by admitting the expert testimony at trial." *McClain*, 401 F.3d at 1255. The expert's inability to provide "a reliable explanation of the physiological process" by which the drug caused the alleged injury was part of the reason why the court concluded that the district court abused its discretion in admitting the expert testimony.

3

exclusion of expert opinions in part because no mechanism of action was proven: "Plaintiffs have offered no reliable evidence that Parlodel increases blood pressure to such dangerous levels. Even if they had, they failed to offer proof of how ... an increase in blood pressure can precipitate a hemorrhagic stroke." *Id.* [2]

Plaintiffs ignore these cases and instead rely upon out-of-circuit authority for the proposition that causation testimony simply requires biological plausibility, not proof. Opp. at 6-7. These cases fly in the face of *McClain* and *Rider* and are not the law of this Circuit. Each of the pharmaceutical cases relied on by plaintiff involved a specific causation expert who undertook a differential diagnosis based upon a patient's medical history, and ruled out all other causes for the injury. *See, e.g., Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228-30 (9th Cir. 1998); *Perkins v. Origin Medsystems, Inc.*, 299 F. Supp. 2d 45, 57-60 (D. Conn. 2004); *Golod v. Hoffman LaRoche*, 964 F. Supp. 841, 858-61 (S.D.N.Y. 1997). Indeed, in *Golod*, a specific causation expert's testimony was excluded where he proposed a mechanism, following differential diagnosis, that was biologically plausible but speculative, *see* 964 F. Supp. at 860-61, which is precisely the holding in *McClain*. Within this Circuit, plaintiffs' argument that mere biological plausibility is sufficient to prove causation has been expressly and repeatedly rejected. *See In re Accutane*, 511 F. Supp. 2d at 1296 ("biological possibility is not proof of causation"); *Kilpatrick*, 2009 WL 2058384 at *9 (a hypothesis that is "merely plausible, not proven" is inadmissible) (quoting *In re Accutane*).

---

[2] Plaintiffs also question the validity of *McClain* because the Southern District of New York reached a different conclusion than did the Eleventh Circuit. *See* Opp. at 8, n. 6. This Court must follow *McClain* as binding precedent until and unless the Eleventh Circuit reconsiders its decision. That an out-of-circuit district court reached a contrary result on a different record has no bearing on the rationale or holding of *McClain*.

4

Nor can plaintiffs save Dr. Toback's methodologically-flawed opinion by relying on *In re Seroquel Prod. Liab. Litig.*, MDL 1769, 2009 WL 3806435 (M.D. Fla. June 23, 2009). The expert there "review[ed] the totality of the literature on the association between Seroquel and diabetes, hyperglycemia and weight gain, including studies in which the authors found no evidence of a causal connection" and then applied the nine Bradford-Hill criteria before arriving at her general causation opinion.[3] *Id*. at *6. The court concluded that the expert's "acknowledgement that the mechanism by which Seroquel causes certain adverse metabolic effects is yet unknown" did not render her testimony unreliable because her application of the Bradford-Hill criteria "provided reliable scientific evidence supporting an inference of cause and effect." *Id*. at *10.

Here, there is nothing to compensate for Dr. Toback's lack of a proven mechanism. He has not applied the Bradford-Hill criteria and there is no evidence that he has considered the totality of the scientific literature before forming his opinion. Moreover, Dr. Toback never considered the dose-response relationship, and did not take into account the limitations of the studies he relies upon. *Seroquel* thus does not save his opinion.

In short, the Court should follow *McClain*, *Rider*, *In re Accutane*, *Hendrix* and *Kilpatrick* and exclude Dr. Toback's general causation opinion, because plaintiffs do not even attempt to argue that the mechanisms he offers are proven.

### 2.     The Mechanisms Posited By Dr. Toback Are Unproven Hypotheses.

The three mechanisms offered by Dr. Toback also fail to pass muster under *Daubert* because they are based upon unreliable data. As Bayer explained in its motion, Dr.

---

[3] The nine Bradford-Hill "viewpoints" are: (1) strength of the association; (2) consistency; (3) specificity; (4) temporality; (5) biological gradient (whether there was a dose-response relationship); (6) plausibility; (7) coherence; (8) experiment; and (9) analogy. *In re Seroquel*, 2009 WL 3806435, at *5, n.5.

Toback's first proposed mechanism – that Trasylol causes a cascade of events that leads to vasoconstriction, which may reduce blood flow in the kidney – is based only on a single rat study.  While plaintiffs are correct that animal studies are useful in science, Opp. at 11-13, neither they nor Dr. Toback have explained why it is permissible to extrapolate from the rat study to causation in humans.  This is not the "good grounds" upon which causation testimony must be based.  *See Kilpatrick*, 2009 WL 2058384 at *3, *6.

More fundamentally, Dr. Toback ignores that a human study has disproven his belief that Trasylol injures the kidney through changes in blood flow.[4]  Dr. Toback's failure to acknowledge let alone consider this study is fatal to his opinion.  *See In re Rezulin Prods. Liab. Litig.,* 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005) ("if the relevant scientific literature contains evidence tending to refute the expert's theory and the expert does not acknowledge or account for that evidence, the expert's opinion is unreliable ... courts have excluded expert testimony where the expert selectively chose his support from the scientific landscape") (collecting cases); *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996) (affirming exclusion of expert who "has seen fit to 'pick and chose' [sic] from the scientific landscape and present the court with what he believes the final picture looks like.  This is hardly scientific."); *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1331, 1335 (10th Cir. 2004).

Dr. Toback's two other posited mechanisms also are infirm because they are based on flawed data and studies.  Motion at 6-7.  Plaintiffs do not dispute that these studies are flawed; instead, they argue that flaws in studies only go to the weight and not the admissibility of expert evidence.  *See* Opp. at 16.  Plaintiffs are wrong.

---

[4] *See* Schweizer, "Aprotinin does not impair renal haemodynamics and function after cardiac surgery," Brit. J. Anaesth., 2000; 80(1): 16-22 (Ex. D) at 21 ("Despite inhibition of the killikrein-kinin pathways, aprotinin pretreatment did not influence prostaglandin synthesis, glomerular filtration, renal plasma flow or tubular transport mechanisms").

An expert's failure to account for flaws in a study shows an improper methodology and warrants exclusion of his testimony. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (rejecting reliance on study reporting a statistically significant increased incidence of lung cancer deaths in a PCB-exposed group where the subjects "had been exposed to numerous potential carcinogens"); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 252-54 (6th Cir. 2001) (failure to account for confounding factors in cohort study of alleged PCB exposures rendered opinion unreliable); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *13 (E.D. Pa. Feb. 1, 2001) (putative expert's "failure to account for the presence of confounding factors ... casts doubt on the usefulness of his method in determining" causation).

### 3. Dr. Toback Has Not Even Presented A Biologically Plausible Mechanism For How Trasylol Causes Renal Failure.

Even if mere biological plausibility were sufficient (it is not) and even if Dr. Toback's proposed mechanisms were based on scientifically reliable evidence (they are not), Dr. Toback still would not have sufficient support for his opinion that Trasylol causes renal failure or renal dysfunction. His unproven theories point, at most, to a theoretical mechanism for purported "kidney injury," not to renal failure or renal dysfunction. *See* Motion at 5. Plaintiffs do not rebut this point.

This issue is not simply a matter of semantics. Dr. Toback conceded that not all kidney injuries lead to a change in renal function: "the loss of 50 percent of normal kidney function say by removing a kidney still allows the patient to have a normal serum creatinine." Toback Dep. (Ex. F[5]) at 39:19-22. He further conceded that even complete loss of blood flow to

---

[5] Other than Exhibit F, which is attached hereto, all other references to exhibits refer to the exhibits attached to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert F. Gary Toback (D.E. 3063).

7

the kidney may not cause renal failure or any loss in kidney function:

> ... We can take a kidney out of somebody as a donor, put it in an equivalent of a bucket of ice water, but it would be in a fancier solution than that, put it in an airplane and fly it somewhere around the world and two days later transplant it into somebody and it could do fine. That's really extraordinary that the tissue can do that without any additional blood flow. You can't do that with a heart or a brain or a liver, which all those other organs are much more sensitive to being removed from a source of oxygen and nutrients. ... And that's important because it means that patients – you often get away with a lot of renal injury that you don't know about because the kidney has this tremendous capacity to defend itself against injury and repair itself after injury.

Toback Dep. (Ex. F) at 33:7-34:18; *see also id*. at 184:24-185:8 (admitting that a reduction of 37% in filtration rate in rat study did not mean the rat developed "acute renal injury" because "if you took out one kidney, the fall would be 50 percent and that's not itself a terribly bad – so I would guess that they could do okay with that").

Dr. Toback thus has not provided the last step in his mechanism of injury. That omission is critical because Dr. Toback conceded that not all kidney injury causes a change in renal function. For this reason as well, the Court should exclude Dr. Toback's general causation testimony. *See Kilpatrick*, 2009 WL 2058384 at *3 ("if the court determines that any step in the expert's chain of logic is unreliable, his entire opinion must be excluded") (citing *McClain*, 401 F.3d at 1245); *Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1062, 1082 (D. Kan. 2002), *aff'd* 356 F.3d 1326 (10th Cir. 2004).

### 4. Plaintiffs Cannot Salvage Dr. Toback's Opinion By Citing Material That He Did Not Rely Upon.

Plaintiffs also try to rehabilitate Dr. Toback's general causation opinion by arguing that his postulated mechanisms are consistent with Trasylol's label and the testimony of Bayer's expert witnesses. Opp. at 13-15. Specifically, plaintiffs quote from the clinical

8

pharmacology where terms from Dr. Toback's proposed mechanisms of action ("reabsorbed by the proximal tubules," "thrombin generation") can be found.

Plaintiffs miss the point.  Nowhere in Dr. Toback's report or deposition does he point to Trasylol's label or Bayer's expert witnesses as support for his opinions.  Because there is no evidence that Dr. Toback "relied on these documents in reaching his conclusions, and they are therefore irrelevant to the *Daubert* inquiry." *Kilpatrick*, 2009 WL 2058384 at *10.  Moreover, Dr. Hume's opinions were developed as part of his clinical experience with the medications, which is far different from Dr. Toback's opinions developed for the purpose of litigation.  *See Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 615-16 (S.D.N.Y. 2007).  Nor may descriptions of clinical pharmacology in Trasylol's label – that on their face do not state a causal mechanism for kidney injury – alone support Dr. Toback's opinion that Trasylol somehow causes renal failure or renal dysfunction through that pathway.  *See Accutane*, 511 F. Supp. 2d at 1296 (if the defendant's documents alone were sufficient to admit causation "this Court could have saved a lot of time – this opinion would have been unnecessary").

> **B.    Dr. Toback's General Causation Opinion Should Be Excluded Because He Failed To Consider Threshold Dose.**

As Bayer explained in its motion, Dr. Toback's causation opinion should be excluded for the separate reason that he does not know whether there is a threshold dosage of Trasylol that causes injury.  *See* Toback Dep. (Ex. F) at 275:2-9.  That concession is fatal to Dr. Toback's general causation opinion.  *See McClain*, 401 F.3d at 1241; *In re Accutane*, 511 F. Supp. 2d at 1293-94 (excluding expert who had conducted no analysis to determine whether threshold dose existed).  Plaintiffs do not contest that Dr. Toback has not considered whether there is a threshold dosage.  Their only response is to argue that proof of a threshold dose is only required in toxic tort cases.  Plaintiffs cite no case in support of this proposition.

In *McClain*, a pharmaceutical case, the Eleventh Circuit explained that "the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse event" is to "demonstrate the levels of exposure that are hazardous to human beings generally." *McClain*, 401 F.3d at 1241-42. "The expert who avoids or neglects this principle ... without justification casts suspicion on the reliability of his methodology." *Id*. at 1242. Because Dr. Toback tries to "get around the problem" of whether there is a threshold dose, Toback Dep. (Ex. F) at 275:2-9, his opinion does not meet one of the key elements of proving causation.

Nor can plaintiffs save this by citing two studies that they claim establish a dose-response relationship. Those studies were not cited by Dr. Toback in his report or deposition and thus could not have undergirded his causation opinion. Because there is no evidence that Dr. Toback "relied on these documents in reaching his conclusions, and they are therefore irrelevant to the *Daubert* inquiry." *Kilpatrick*, 2009 WL 2058384 at *10. "[W]here an expert witness is 'unable to explain why these studies help inform her conclusion ... plaintiff's counsel cannot fill in the gaps.'" *Id*. (quoting *In re Human Tissue Prods. Liab. Litig.*, 583 F. Supp. 2d 664, 667 (D.N.J. 2008)).[6]

## II.   DR. TOBACK'S OPINION THAT BAYER SHOULD HAVE COMPARED TRASYLOL WITH AMICAR AND TRANEXAMIC ACID IS INADMISSIBLE.

Notwithstanding plaintiffs' representation to the contrary, Opp. at 17-18, Dr. Toback opines that he believes Bayer inadequately tested Trasylol because it did not test the drug in comparison with Amicar and tranexamic acid. For example, he characterizes Bayer's "placebo comparative trials" as "in a sense defective." Toback Dep. (Ex. F) 173:17-174:15.

---

[6] The new articles cited in plaintiffs' opposition do not point to a threshold dosage above which Trasylol causes renal failure or dysfunction. To the contrary, the Brown 2007 article (Ex. J to Opp.) concludes that "[i]n contrast to the recently published observational study by Mangano et al., aprotinin did not significantly increase the risks of motality, stroke, myocardial infarction, or renal failure requiring dialysis." Brown JR, "Meta-analysis comparing the effectiveness and adverse outcomes of antifibrinolytic agents in cardiac surgery," Circulation, 2007;115(22):2801-13.

As Bayer explained in its motion, Dr. Toback's opinion fails because he is not an FDA expert and has no expertise on how drugs are tested. Motion at 9-10. This testimony is also impermissible legal, moral or ethical testimony. *Id*. Plaintiffs offer no response to any of these arguments. The Court thus should preclude Dr. Toback from offering this opinion.

### III.     DR. TOBACK'S OTHER OPINIONS ARE INADMISSIBLE

Plaintiffs concede that they do not intend to use Dr. Toback to testify regarding (1) Trasylol's labeling; (2) Bayer or FDA's knowledge or state of mind; (3) whether Bayer withheld any information from FDA; and (4) what happened at the FDA advisory committee meeting. Opp. at 18. The Court should hold plaintiffs to their word and preclude any such testimony from Dr. Toback. *See* Motion at 11-14.

### CONCLUSION

For the foregoing reasons and those in Bayer's motion, defendants respectfully request that Dr. Toback's testimony be excluded.

February 8, 2010

Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail:  blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
     & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-73036

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation,
Bayer HealthCare Pharmaceuticals Inc.,
and Bayer Schering Pharma AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 8, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
Co-Lead Counsel for Plaintiffs

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
Liaison Counsel for Plaintiffs

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
Liaison Counsel for Defendants

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
Co-Lead Counsel for Plaintiffs

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
Federal-State Liaison for Plaintiffs