UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to **ALL ACTIONS**

**BAYER'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
TESTIMONY OF PLAINTIFFS' EXPERT LUCA A. VRICELLA**

The thrust of plaintiffs' opposition (Docket Entry 3828) ("Opp.") is that, because Dr. Luca Vricella is a cardiac surgeon, he can offer shoot-from-the-hip opinions on the safety of Trasylol in the guise of a true risk-benefit analysis and thereby evade the *Daubert* standards for the reliability of expert testimony. This is simply wrong.

Rule 702 and *Daubert* apply to all expert testimony and require that all expert opinions have a methodologically sound basis. *See Kumho Tire v. Carmichael,* 526 U.S. 137 (1999); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237-38 (11th Cir. 2005). Plaintiffs cite no case that holds that an expert witness can evade *Daubert's* requirements by asserting that he is not opining on general causation but merely testifying that a pharmaceutical product is so unsafe it should never be administered to any patient. Rather, plaintiffs' only support is a few cases in which treating physicians were allowed to testify about the risk-benefit analysis used to decide how to care for an *individual* patient whom they were treating. That is a far cry from a doctor purporting to offer a global risk-benefit calculation about a drug for an entire patient population, as Dr. Vricella does here.

When *Daubert* reliability standards are applied to Dr. Vricella's proffered opinions, it is clear that his opinions on 1) the safety of Trasylol, 2) alternatives to Trasylol, and 3) Bayer's conduct should not be presented to a jury.

## ARGUMENT

As a preliminary matter, plaintiffs suggest that Dr. Vricella's qualifications as a cardiac surgeon experienced with CABG surgery and antifibrinolytics are evidence of the reliability of his methods. Opp. at 3-4. As discussed more fully in Bayer's Reply in Support of its Motion to Exclude Testimony of Plaintiffs' Expert Mark J. Eisenberg (D.E. 4096), plaintiffs err in conflating qualifications and reliability because "[m]ost junk science is the work of people with Ph.D. degrees and academic positions." *United States v. Moore*, 521 F.3d 681, 685 (7th Cir. 2008) (Easterbrook, C.J.); *accord Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). Dr. Vricella's testimony must be excluded because plaintiffs cannot establish that it is based on scientific method and therefore is reliable.

I. **PLAINTIFFS CANNOT ESTABLISH THE RELIABILITY OF DR. VRICELLA'S TESTIMONY CONCERNING THE SAFETY OF TRASYLOL.**

   A. **Plaintiffs Cannot Evade *Daubert* By Asserting that Dr. Vricella Is Offering Risk-Benefit Opinions as a Clinician.**

Plaintiffs argue that Bayer's *Daubert* attack is misplaced because Dr. Vricella is being offered as a clinician to testify on risk-benefit, not causation. Plaintiffs are trying to redefine the scope of Bayer's *Daubert* motion (D.E. 3075) ("Motion"), which sought to exclude Dr. Vricella's opinion that "aprotonin (Trasylol) is unsafe for clinical use in all patients in all circumstances." Motion at 1. Plaintiffs' semantic game cannot get them around *Daubert* for at least four reasons:

*First*, the standards for admission of expert testimony under Daubert apply to *all* experts because "Rule 702 does not distinguish between 'scientific' knowledge and 'technical' or

2

'other specialized' knowledge, but makes clear that any such knowledge might become the subject of expert testimony." *See Kumho Tire,* 526 U.S. at 138. Thus, *all* expert testimony must be both the product of a scientifically reliable methodology and offered by a qualified witness. *McClain*, 401 F.3d at 1237-38 ("The proposed testimony must derive from the scientific method; good grounds and appropriate validation must support it."); *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1197 (11th Cir. 2002) ("The *Daubert* trilogy [*Daubert, Joiner, Kumho Tire*], in shifting the focus to the kind of empirically supported, rationally explained reasoning required in science, has greatly improved the quality of the evidence upon which juries base their verdicts."); *Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1373 (N.D. Ga. 2001) *aff'd* 295 F.3d 1194 (11th Cir. 2002) ("*Daubert* demands reliable and relevant scientific opinion based upon reliable scientific methodology rather than mere 'subjective belief or unsupported speculation.'") (citing *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1319 n.23 (11th Cir. 1999)); *see also Case of Canavan*, 733 N.E.2d 1042, 1049-50 (Mass. 2000) (relying on the reasoning of *Kumho* to find that a physician's observations and clinical experiences offered as expert opinion must be based on a reliable methodology to withstand *Daubert* scrutiny).

*Second*, the fact that Dr. Vricella is a clinician does not establish the reliability or admissibility of his opinions. *See Siharath*, 131 F. Supp. 2d at 1372-73. Unanalyzed clinical experience can too easily result in opinions based on personal considerations rather than scientific knowledge. *Id.* at 1372 ("[The doctor] obviously is an exceptionally qualified practitioner, and the Court found him to be a very credible witness in this regard. Unfortunately, his clinical impression is not the sort of scientific methodology that *Daubert* demands."). The reliability of such opinions is particularly difficult to establish here, where Dr. Vricella never tracked data from his clinical practice and never evaluated the results, much less the significance

3

of those results. *See* Vricella Dep. (Ex. F[1]) at 295:2-296:7, 296:16-21, 298:5-9 (admitting that he did not analyze his clinical results).

*Third*, calling Dr. Vricella's opinion a "risk-benefit" opinion does not get plaintiffs around normal *Daubert* standards because application of those standards does not depend on whether an expert opinion is expressed in terms of safety, causation, or risk-benefit. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 561-64 (S.D.N.Y. 2004) (applying *Daubert* to exclude the testimony of an expert who proposed to opine that the risks of a pharmaceutical outweighed its benefits); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1041 (D. Minn. 2007) (applying *Daubert* to exclude plaintiffs' experts' testimony on "comparative toxicity" – that one drug was more dangerous than the other drugs in the statin class); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL-1203, 2001 WL 454586, at *20-21 (E.D. Pa. Feb. 1, 2001) (applying Daubert standards to exclude expert testimony regarding efficacy of drug); *cf. United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (applying *Daubert* to exclude expert testimony regarding forensics issues in criminal case); *Thomas v. Evenflo Co., Inc.*, 205 Fed. Appx. 768, at 772-73 (11th Cir. 2006) (applying *Daubert* standards to exclude expert testimony of engineer regarding effectiveness of child restraint system and decedent's cause of death).

None of the cases cited by plaintiffs supports their claim that a treating physician can testify to a global risk/benefit analysis. Opp. at 5. Rather, the "treating physician" opining in each cited case – and recognized by courts as being best qualified to weigh treatment risks against benefits *for the plaintiff in question* – is the physician who actually treated the plaintiff,

---

[1] Other than Exhibits F and G, which are attached hereto, all other references to exhibits refer to the exhibits attached to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Luca A. Vricella (D.E. 3075).

not a hired generic expert. *See Timm v. Upjohn Co.* 624 F.2d 536, 538 (5th Cir. 1980) (noting that a plaintiff's prescribing physician weighs the risks and benefits of a treatment); *Stone v. Smith Kline & French Labs.*, 731 F.2d 1575, 1579-80 (11th Cir. 1984) (finding that a plaintiff's prescribing physician "take[s] into account the propensities of the drug as well as the susceptibilities of his patient"). In contrast, Dr. Vricella proposes to render his opinion without regard to any individual patient whom he has treated, perhaps because his own clinical experience with Trasylol does not support his risk-benefit analysis opinion. Vricella Dep. (Ex. F) at 295:25-296:7 ("I, you know, luckily we don't have a huge mortality, and it's hard to make an analysis. And I didn't do an analysis.").

*Fourth*, individual clinicians cannot offer risk-benefit testimony on behalf of other physicians because such testimony is speculative. *See Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 556-57 (concluding that it is "speculative" "as to whether physicians would have prescribed [a drug] if different information about [the drug] had been available"); *Diet Drugs Prods. Liab. Litig.*, 2001 WL 454586, at *18 ("surmising as to what physicians would do with different information is purely speculative and not based on scientific knowledge"). Thus, Dr. Vricella does not, and cannot, speak for all cardiac surgeons who prescribed Trasylol. In fact, Dr. Vricella admits as much:

> I've been called to render my opinion whether I would use this in a patient, knowing what I know today, and if I thought that my patient will be at increased risk of renal failure or dysfunction. So I would give you my clinical opinion, … .

Vricella Dep. (Ex. F) at 46:24-47:5.

Indeed, the entire premise for plaintiffs' argument is false because Dr. Vricella does not arrive at global risk-benefit determinations as part of his clinical practice. He treats patients one-by-one. *See* Vricella Dep. (Ex. F) at 90:20-25 ("I would go in the literature, look at

authoritative journals . . . , and *then apply that to the particular clinical scenario*, so that I can have, you know, enough information to make a decision.") (emphasis added).

Because Dr. Vricella's status as a practicing surgeon does not immunize his generic risk-benefit analysis from review for scientific reliability, plaintiffs must show that the remaining bases for Dr. Vricella's risk-benefit opinion – his clinical experience and review of the literature – are the "good grounds" required to admit an expert opinion. *Daubert v. Merrill Dow Pharma., Inc.*, 509 U.S. 579, 590 (1993).

### B. Plaintiffs Have Failed To Carry Their Burden of Showing that Dr. Vricella Used Scientifically Reliable Methodology in Concluding that Trasylol Is Unsafe in All Circumstances.

Plaintiffs have failed to carry their burden of showing the reliability of Dr. Vricella's opinion that Trasylol is unsafe or has a negative risk-benefit profile in all circumstances. *See Boca Raton Comm. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009) ("The offering party must show that the opinion meets the *Daubert* criteria, including reliable methodology and helpfulness to the factfinder in understanding the evidence or determining a fact, by a preponderance of the evidence."); *Cook ex rel. Tessier v. Sheriff*, 402 F.3d 1092, 1107 (11th Cir. 2005) (finding that proponent "carries a substantial burden under Rule 702"); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005) (holding that proponent of witness has burden of proving admissibility by preponderance of evidence).

In moving to exclude Dr. Vricella's testimony about the safety of Trasylol, Bayer showed that his opinions are not based on his clinical experience. Motion at 4-5 (quoting extensively from Dr. Vricella's deposition testimony). Dr. Vricella admitted that, in his practice, he saw no evidence that Trasylol was associated with increased risks of adverse events, including renal failure, renal dysfunction, heart attack, graft thrombosis or mortality. *Id.* Plaintiffs respond

6

by disavowing the clinical experience they trumpeted in an attempt to evade their burdens under *Daubert*. In this context, plaintiffs argue that, because Dr. Vricella's personal experience as a cardiac surgeon administering Trasylol had not adequately informed him, Dr. Vricella undertook "the sound and reliable approach in gathering pertinent literature" and "examining Bayer documents." *Id.* [2]

Bayer demonstrated in its motion that, to the extent Dr. Vricella considered the medical literature – 41 articles out of more than 7,000 – his safety opinion is based on a haphazard review of cherry-picked data. *Id.* at 6-9. Plaintiffs assert that Dr. Vricella used a sound methodology. Opp. at 8-10. Dr. Vricella's own testimony conflicts with plaintiffs' unsupported argument. *See* Vricella Dep. (Ex. F) at 298:9 ("I didn't do any analysis [of clinical outcomes]."), 91:18-19 ("I started from 2000, and went onward, and pulled a few articles along the way."); *id.* at 92:12-14 ("I kind of picked that point [the year 2000], you know, arbitrarily."). *Daubert* requires more than "assurances that [an expert] has utilized generally accepted scientific methodology." *See McClain,* 401 F.3d at 1244 (quoting *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998)).

Bayer also showed that Dr. Vricella failed to critically analyze the literature that he did review. Rather, Dr. Vricella testified that he simply "relied on the peer-review process." Vricella Dep. (Ex. F) at 153:18-19. But a proffered expert must do more than adopt the conclusions of others. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1313 (11th Cir.

---

[2] Plaintiffs try to deflect Bayer's argument that Dr. Vricella's opinions do not reflect his clinical experience with aprotinin by asserting that Bayer's expert cardiac surgeon, Donald Williams, offers opinions on the same issues as does Dr. Vricella and likewise relies on his clinical experience in forming his opinions. Opp. at 8. What plaintiffs fail to note, however, is that Dr. Williams's reliance on his clinical experience was not based on an undocumented impression of patient outcomes evaluated in hindsight. Rather, Dr. Williams's clinical experience was encapsulated in a database whose information Dr. Williams evaluated in his practice—not in the context of litigation. Williams Report (Ex. G) at 24-26.

7

1999) (holding reliance on peer review insufficient to assure reliability of expert opinion). Plaintiffs have offered no evidence that Dr. Vricella did anything more than selectively rely on articles that support his opinion. Indeed, plaintiffs admit that Dr. Vricella reviewed the literature with an eye toward articles that would be "most germane to his role *in this case*." Opp. at 10 (emphasis added). *But see Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1331, 1335 (10th Cir. 2004) (affirming exclusion of expert who cherry-picked evidence on which he relied as inconsistent with scientific method); *accord Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996).

Bayer also showed that Dr. Vricella relied on preliminary data in formulating his opinions. Motion at 10-11. In response, plaintiffs assert that Dr. Vricella cited the final i3 study in the catalogue of materials that he purportedly reviewed, but ignore that Dr. Vricella based his analysis on the preliminary report and conceded that he did not compare the preliminary and final results. Vricella Dep. (Ex. F) at 360:17-23. Further, plaintiffs do not contest Bayer's showing that Dr. Vricella drew conclusions based on the BART study without considering subsequent findings by Health Canada that called into question the findings of that study. Motion at 10. And plaintiffs do not respond to Bayer's arguments that Dr. Vricella failed to consider the background rates for the risks that he attributed to Trasylol or the possible impact of confounders on the studies upon which he based his opinion. Motion at 9-11.

In short, plaintiffs have failed to carry their burden of showing that Dr. Vricella's proposed testimony on the safety of Trasylol is based on good scientific method. *See Boca Raton*, 582 F.3d at 1232. Because plaintiffs have not shown that the testimony is reliable, it is inadmissible.

## C.  Plaintiffs Have Failed To Demonstrate that Dr. Vricella Used Scientifically Sound Methodology in Concluding that the Lysine Analogues Are Safer Alternatives to Trasylol.

The same problems require exclusion of Dr. Vricella's opinion that the lysine analogues are safer than Trasylol.  Bayer's Motion (at 12-13) showed that Dr. Vricella's opinion lacks a scientifically reliable foundation.  Again, plaintiffs rely on Dr. Vricella's experience as a prescribing physician to support his opinion.  Opp. at 13.  But they ignore Dr. Vricella's testimony that he had no experience at all with one of the lysine analogues, tranexamic acid.  Vricella Dep. (Ex. ) at 160:23-161:3.  They also ignore his concession that, although he has used the other lysine analogue, Amicar, he has never analyzed the clinical outcomes from procedures in which he used Amicar, saying: "I told you, I didn't feel the need to go and look at the statistical significance because there was really no changes from my perception, and for that of my colleagues."  *Id.* at 433:10-14.  As Bayer previously noted, an opinion based on unanalyzed clinical experience is unreliable and inadmissible.  *Siharath*, 131 F. Supp. 2d at 1373.

Thus, plaintiffs do not dispute that Dr. Vricella's opinion rests on his admittedly incomplete literature review, which did not even include the labels for the lysine analogues, Vricella Dep. (Ex. F) at 327:19-21, 331:22-332:3, and did not take into account the risks and benefits of these medicines, *id.* at 160:19-161:1, 323:17-324:3, 330:6-331:7, 335:6-336:6.  Rather than responding to these showings, plaintiffs resort to rhetoric, asserting that Dr. Vricella's review of "many randomized controlled trials, meta-analysis and cohort studies" provides a sufficient basis for his comparative opinion."  Opp. at 13.  They ignore Dr. Vricella's testimony that he did not review any randomized, placebo-controlled studies of the lysine analogues in CABG surgery.  Vricella Dep. (Ex. F) at 335:6-336:6.  And plaintiffs dismiss as a "memory test," Opp. at 13, Dr. Vricella's inability to identify *any* randomized controlled trials comparing aprotinin and the lysine analogues:

9

> Q. Can you identify one adequately powered placebo-controlled clinical trial of Amicar and CABG surgery using the bypass machine?
>
> A. Okay. I told you that I'm not a statistician, so I cannot really tell you how a study is adequately powered.
>
> \* \* \*
>
> (Perusing laptop monitor)
>
> Q. Can you identify one adequate – can you identify one placebo controlled randomized trial of tranexamic acid in CABG surgery using the bypass machine?
>
> A. Not in this – in this compiled review of the literature.

Vricella Dep. at 333:21-335:17.

Ultimately, plaintiffs' position is that an expert opinion based on an incomplete literature review is good enough. Opp. at 14. That is simply wrong. The burden is on plaintiffs to show that Dr. Vricella's reliance on some fraction of the 41 articles he reviewed, none of which described the results of placebo-controlled studies, reflects the kind of intellectual rigor a fellow scientist would employ in determining that particular medicines are better for all patients in all circumstances. *See McClain,* 401 F.3d at 1237 ("[T]he trial court must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'") (quoting *Kumho,* 526 U.S. at 152).

Plaintiff's one-page argument does not seriously attempt to meet their burden of showing that Dr. Vricella's opinion is based on reliable scientific methodology. Accordingly, Dr. Vricella's opinion that lysine analogues are superior to Trasylol should be excluded.

## II. DR. VRICELLA IS UNQUALIFIED TO OPINE ON LABELING, THE PUBLICATION OF SAFETY DATA, OR THE ADEQUACY OF TESTING.

Finally, plaintiffs contend that Dr. Vricella's opinions on Trayslol's labeling, publication of data, and adequacy of testing are admissible – though he is not qualified to opine on any of these issues, as plaintiffs admit. Opp. at 14-16. According to plaintiffs, Dr. Vricella should be permitted to testify on these issues as they relate to his purported risk-benefit opinion: *if* the labeling had been different,[3] *if* additional information had been distributed to the medical community, and *if* additional studies had been done, it would have altered his and other physicians' risk-benefit analysis and prescribing practices. *Id.* But this kind of speculative testimony by its nature cannot be based on scientific knowledge. *See In re Rezulin,* 309 F. Supp. 2d at 556-57 (concluding that it is "speculative" "as to whether physicians would have prescribed [a drug] if different information about [the drug] had been available"); *In re Diet Drugs*, 2001 WL 454586 *18 ("[S]urmising as to what physicians would do with different information is purely speculative and not based on scientific knowledge.").

Moreover, despite plaintiffs' arguments to the contrary, Dr. Vricella has pointed to nothing but cherry-picked "bad company" documents and his own moral code to support his opinions on what the label *should have* said, what information *should have* been conveyed to the medical community, and what and when additional testing *should have* been done. *See* Vricella Dep. (Ex. F) at 166:1-10, 172:2-8, 377:3-17, 396:10-17. The Court should not give Dr. Vricella a platform to air his personal beliefs about what Bayer should have done relating to labeling, disclosing information, and conducting additional testing on Trasylol, *see, e.g., id.* at 173:8-24,

---

[3] Plaintiffs cite Trasylol's removal from the market as evidence that the FDA supports Dr. Vricella's opinion. However, courts have noted that "[t]he methodology employed by a government agency 'results from the preventive perspective that the agencies adopt in order to reduce public exposure to harmful substances. The agencies' threshold of proof is reasonably lower than that appropriate in tort law. . . .'" *Siharath*, 131 F. Supp. 2d at 1366.

because those opinions lack a reliable foundation and because a jury is capable of drawing its own conclusions about these issues. *See In re Rezulin,* 309 F. Supp. 2d at 543-47 ("[O]pinions concerning purported ethical standards . . . do not meet the core requirement of Rule 702 that expert testimony rest on 'knowledge,' a term that 'connotes more than subjective belief or unsupported speculation.'").

## CONCLUSION

For all these reasons and those set forth in Bayer's motion, Bayer respectfully requests that the Court exclude Dr. Vricella's proposed testimony.

February 8, 2010  Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail:  blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
   & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

Eugene A. Schoon
Email: eschoon@sidley.com
Susan A. Weber
Email: saweber@sidley.com
Catherine Valerio Barrad
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-73036

Susan Artinian
Email: sartinian@dykema.com
Daniel Stephenson
Email: dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email: rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Schering Pharma AG*

13

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
Co-Lead Counsel for Plaintiffs

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
Liaison Counsel for Plaintiffs

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
Liaison Counsel for Defendants

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
Co-Lead Counsel for Plaintiffs

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
Federal-State Liaison for Plaintiffs