IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:  **ALL ACTIONS**

### BAYER'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE
### TESTIMONY OF PLAINTIFFS' EXPERT MARK J. S. HEATH

Bayer demonstrated in its Motion to Exclude (Docket Entry 3066) ("Motion") that Dr. Mark Heath did not use a reliable scientific methodology in arriving at his opinion that Trasylol is not safe for any patient. Plaintiffs' response (D.E. 3827) ("Opp.") is that Dr. Heath is not opining on causation, (*see* Opp. at 4; *but see* Heath Dep. (Ex. F[1]) at 247:3-8, 265:15-267:7), and that therefore he can testify to the risks and benefits based on the standards that he uses every day in treating his patients.

Many, perhaps most, physicians who testify on general safety issues are treating physicians. Nevertheless, their opinions are still subject to analysis under the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), to ensure their scientific reliability. Opinions that lack proper scientific foundation are excluded as *ipse dixit*.

Here, the record demonstrates that Dr. Heath's opinions are not founded on scientific methodology because those opinions conflict with Dr. Heath's actual clinical experience and instead are based on a haphazard review of some medical literature. Plaintiffs cannot demonstrate otherwise. Therefore, they cannot carry their burden of demonstrating the admissibility of Dr. Heath's testimony on the safety of Trasylol.

---

[1] Other than Exhibits F and G, which are attached hereto, all other references to exhibits refer to the exhibits attached to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark J. S. Heath (D.E. 3066).

Similarly, Dr. Heath does not have sufficient foundation to testify on Bayer's marketing, state of mind, and labeling simply because he claims some exposure to these matters in his medical practice. That testimony is not based on expertise and is therefore inadmissible.

## ARGUMENT

### I. DR. HEATH'S SAFETY OPINIONS SHOULD BE EXCLUDED.

#### A. Dr. Heath's Safety Opinions Must Satisfy *Daubert's* Requirements For Reliability.

Plaintiffs abandon Dr. Heath's opinions that Trasylol causes injury and instead limit his testimony to comparative "risk/benefit analysis of the administration of aprotinin *vis-à-vis* ... alternative [drugs]." *Compare* Opp. at 4 *with* Heath Dep. (Ex. F) at 247:3-8, 265:15-267:7 (Dr. Heath's express testimony that he believes "to a reasonable degree of medical certainty" that Trasylol causes renal failure and mortality).[2]

Regardless of how plaintiffs characterize Dr. Heath's opinions, he cannot opine on the medical safety of Trasylol or other drugs without a reliable scientific foundation. Under *Daubert*, trial courts must "ensure that *any and all scientific testimony* or evidence admitted is not only relevant, but *reliable*." 509 U.S. at 589 (emphasis added). The requirement of reliability applies to so-called pharmaceutical "risk/benefit" opinions. *See Meridia Prods. Liab. Litig. v. Abbott Labs.*, 447 F.3d 861, 868 (6th Cir. 2006) (affirming district court's exclusion of testimony that a drug's "health risks outweigh[ed] its benefits" under the *Daubert*). *See also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 561-64 (S.D.N.Y. 2004) (applying *Daubert* to exclude the testimony of an expert who proposed to opine that the risks of a pharmaceutical

---

[2] Plaintiffs also concede that that Dr. Heath does not intend to offer an opinion on the risks and benefits of using Trasylol versus placebo. *See* Motion at 7. The Court should therefore, at a minimum, order that Dr. Heath is prohibited from offering any "safety" opinions regarding Trasylol that are not specifically tailored to a comparison to Amicar or tranexamic acid.

2

outweighed its benefits); *In re Baycol Products Litig.*, 532 F. Supp. 2d 1029, 1012-13 (D. Minn. 2007) (applying *Daubert* to exclude plaintiffs' experts' testimony on "comparative toxicity" – that one statin was more dangerous than the others in the class).

Furthermore, plaintiffs are wrong in suggesting that Dr. Heath's experience as a practicing physician exempts his testimony from the distinct reliability requirements of *Daubert.* As one court explained: "A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999)). *Accord Siharath v. Sandoz Pharms. Corp.*, 131 F. Supp. 2d 1347, 1372 (N.D. Ga. 2001) ("[The doctor] obviously is an exceptionally qualified practitioner, and the Court found him to be a very credible witness in this regard. Unfortunately, his clinical impression is not the sort of scientific methodology that *Daubert* demands.").

Plaintiffs' authorities stand only for the unremarkable proposition that a "prescribing physician" knows his or her patients best.[3] Unlike the physician who has treated a particular patient and made the prescribing decision based upon that patient's medical history, however, Dr. Heath purports to make a generalized prescribing decision as to all CABG patients without regard to the individualized risk-benefit decisions inherent in those decisions. Therefore, plaintiffs must demonstrate that Dr. Heath employed a scientific methodology in forming the opinions he proffers in this litigation. *See Lewis*, 561 F.3d at 705; *see also Case of Canavan*, 733

---

[3] *See Ellis v. C.R. Bard, Inc.*, 311 F.3d 1272, 1279 (11th Cir. 2002) (recognizing that the expertise of "prescribing physician" is relevant only in the individualized context because it emanates from knowledge of the "susceptibilities of *his patient*") (emphasis added); *Stone v. Smith, Kline & French Labs.*, 731 F.2d 1575, 1579-80 (11th Cir. 1984) (noting that "prescribing physicians" are able to make "*individualized medical judgment[s]*") (emphasis added); *Timm v. Upjohn Co.*, 624 F.2d 536, 538 (5th Cir. 1980) (explaining that physicians are "learned intermediar[ies] between the manufacturer and the *consumer"*) (emphasis added).

N.E.2d 1042, 1049-50 (Mass. 2000) (relying on the reasoning of *Kumho Tire v. Carmichael*, 526 U.S. 137 (1999) to find that a physician's observations and clinical experiences offered as expert opinion must be based on a reliable methodology to withstand *Daubert* scrutiny). *See Lewis*, 561 F.3d at 705.[4]

### B. Dr. Heath Lacks a Reliable Scientific Foundation For His Opinions.

#### 1. Dr. Heath's clinical experiences cannot serve as the foundation for his comparative risk/benefit opinions.

Although the premise of plaintiffs' Opposition is that Dr. Heath's testimony should be admitted because he is a "prescribing physician," Opp. at 4-5, plaintiffs try to distance themselves from his actual clinical experience because that experience does not support his proffered opinions. Dr. Heath has "never used" tranexamic acid, *see* Heath Dep. (Ex. F) at 195:17-24, and therefore has no clinical experience on which to rely. With respect to Trasylol and Amicar, Dr. Heath's unequivocal testimony is that his experience as a "prescribing physician" was that Trasylol was a superior drug with a favorable safety profile. *Id*. at 201:5-202:8, 279:11-23, 364:10-365:1.

Plaintiffs do not contest any of this evidence. Instead, they ask the Court to ignore it, asserting that the nature of Dr. Heath's practice would not permit him to observe the risks and benefits of Trasylol. *See* Opp. at 9. Indeed, Dr. Heath testified that his clinical

---

[4] Plaintiffs cannot evade their burden of showing that Dr. Heath followed scientific method by invoking *Ambrosini v. Labarraque*, 101 F.3d 129, 140 (D.C. Cir. 1996) (physician's methodology in arriving at his causation opinions concerning birth defects was potentially reliable because the FDA "called upon ... [him] to testify on" the same subject of "causation of birth defects"). Dr. Heath has written no peer-reviewed articles on any topic tangentially related to this litigation, including none discussing Trasylol, Amicar or tranexamic acid. Heath Dep. (Ex. F) at 84:6-11, 104:12-105:11. Nor has he ever been called to testify on these topics (or any other) before the FDA. *See id.* at 97:24-98:11. Rather, this case is more similar to *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007), in which the expert's failure to "publish[] *in the field*" was "circumstantial evidence of the unreliability" of his opinion. *Id.* at 615-16 (emphasis added).

4

experiences were *not* sufficient to reliably inform him of the comparative risks and benefits of Trasylol, Amicar, and tranexamic acid.  *See* Heath Dep. (Ex. F) at 200:5-21 ("I wouldn't be able to assess [the benefits of Trasylol] in my practice ...  [T]hat notion that it prevents bleeding is a statistical conclusion.  It's not a notion that I have, [or] would be able to say [that] I can say that this individual patient ... bled or did not bleed because I did or did not use this drug."); *see also* Opp. at 9 ("It is true that Dr. Heath could not state with certainty whether in his practice he saw an increase in ... injuries among [his] patients").

Given that plaintiffs and Dr. Heath concede that Dr. Heath's clinical experience provides no support for his risk-benefit opinion, plaintiffs cannot rely on the fact that he is a "prescribing physician" to suggest that his present opinions are based on the methodology he uses in his medical practice.  Rather, Dr. Heath has generated litigation-driven opinions, subject to close scrutiny under *Daubert*.  *See Clarke v. Schofield*, 632 F. Supp. 2d 1350, 1362 (M.D. Ga. 2009) (considering "[w]hether the expert is proposing to testify about matters growing naturally and directly out of research he has conducted independent of the litigation, or whether he has developed his opinion expressly for purposes of testifying"); *Craig v. Orkin Exterminating Co.*, No. 99-8931-CIV, 2000 WL 35593214, at *6 (S.D. Fla. Nov. 22, 2000) ("Courts have discounted the reliability of ex parte opinions formed within the context of litigation and not the laboratory.").

**2.   Dr. Heath failed to perform a scientific risk/benefit analysis.**

Plaintiffs do not dispute that Dr. Heath's risk-benefit opinion rests entirely on his review of the medical literature.  Opp. at 7-8.  In order to establish a sufficient foundation for that opinion, Dr. Heath was required to identify, consider, and analyze the spectrum of the

5

medical literature addressing the risks and benefits of Trasylol, Amicar and tranexamic acid.  *See* Motion at 7-8; Heath Dep. (Ex. F) at 104:5-20, 206:2-5.

Plaintiffs assert that Dr. Heath's "open ended" searches of the literature meet this standard.  *See* Opp. at 8.  Plaintiffs' counsel cannot cure the inadequate and insufficient analysis undertaken by Dr. Heath simply by saying so; as Dr. Heath has admitted, his literature review was "intermittent" and could not be characterized as a "systematic process."  Heath Dep. (Ex. F) at 54:13-21.  Thus, far from conducting a systematic, thorough and careful review, Dr. Health admitted that he "wasn't keeping track of anything when [he] was reviewing it," *id*. at 39:4-12; and that he "forgot" to include certain articles in his report.  *See id*. at 264:5-19.  Plaintiffs ignore this inconvenient testimony.  *See Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1331, 1335 (10th Cir. 2004) (affirming exclusion of expert because "selective reliance" is "not a generally accepted methodology").

Indeed, the record demonstrates that Dr. Heath simply failed to consider the independent risks and benefits of Amicar and tranexamic acid.  Plaintiffs assert that Dr. Heath did review the risks, citing his testimony that "in [his] review, [he] looked at publications that were not specific to Trasylol."  Opp. at 8 (citing Heath Dep. (Ex. F) at 36:12-37:2).  This mischaracterizes Dr. Heath's testimony, as he was referring to his review of literature that provided him with a general background of CABG surgeries and kidney failure.  *See* Heath Dep. (Ex. F) at 32:1-37:2.  Indeed, later in the same sentence, Dr. Heath clarified that he did not include literature not specific to Trasylol on his list of references because they were not "important in forming [his] opinion about Trasylol."  *Id*. at 36:4-37:2.  Accordingly, Dr. Heath has never suggested that he performed any independent review of the risks and benefits of

6

Amicar and tranexamic acid – nor could he, as his reference list does not identify a single article or study independently dedicated to this issue.  *See* Heath Report (Ex. A) at Ex. C; Motion at 7-8.

Furthermore, to the extent Dr. Heath did consider the risks of Trasylol, his analysis was unreliable because it was based on an unexamined assumption that Trasylol causes renal failure and mortality.  Plaintiffs' attempt to divorce Dr. Heath's belief that Trasylol *causes* injury from his *comparative risk/benefit opinion*, *see* Opp. at 4-6, ignores that the latter is premised on the former.  *See, e.g.*, Heath Report (Ex. A) at 11-12 (noting that he is "concerned that aprotinin was *injurious* to kidneys and renal function and ... [a]t this point, we could not envision any patient population for which the benefits outweighed the risks especially when there was an alternative with comparable efficacy").  It is hard to reconcile plaintiffs' disavowal of Dr. Heath's causation opinion with their attempts to prop up his risk-benefit opinion.

Plaintiffs try to rehabilitate Dr. Heath's opinions by arguing that his methods are consistent with the testimony of Bayer's expert, Dr. Williams.  Opp. at 6-7.  Because there is no evidence that Dr. Heath himself relied on that testimony, it is "irrelevant to the *Daubert* inquiry." *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384 at *10 (S.D. Fla. June 25, 2009). Moreover, unlike Dr. Heath, Dr. Williams' opinions are consistent with his clinical experience and supported by a database reflecting that experience.  Williams Report (Ex. G) at 24-26.  This is far different from Dr. Heath's opinions developed for the purpose of litigation.

## II.     DR. HEATH'S OTHER OPINIONS ARE INADMISSIBLE.

Plaintiffs assert that Dr. Heath's status as a practicing physician is sufficient foundation for him to provide expert opinions on a pharmaceutical company's marketing efforts, knowledge and state of mind, and labeling.  As demonstrated in Bayer's opening brief, however, these are not the proper subjects for expert testimony, and, in any case, Dr. Heath has conceded

7

that he is not qualified to offer such opinions. *See* Motion at 9-17. Plaintiffs have not provided any reasoned basis for asserting otherwise.

***Opinions regarding Bayer's marketing practices.*** Plaintiffs assert that, because Dr. Heath "has outlined the sources from which he personally received information regarding Trasylol," he is qualified to provide opinions regarding Bayer's marketing efforts. Opp. at 11. This provides no foundation for an expert opinion regarding marketing practices; rather, at best, it may be offered as foundation for him to testify as a fact witness if his own personal experiences with Bayer's marketing were somehow relevant to this lawsuit, which they are not.

***Opinions regarding corporate knowledge, motives, intent or state of mind.*** Plaintiffs claim that Dr. Heath does not refer to 'ethical' or 'unethical' behavior by Bayer in his report; instead, they assert that any such opinions are part of Dr. Heath's risk-benefit calculus in the scope of his practice. *See* Opp. at 11 (asserting that Bayer's supposed withholding of information affected Dr. Heath's ability "to render an appropriate risk/benefit analysis"). Plaintiffs are wrong regarding the scope of Dr. Heath's opinions. *See, e.g.,* Heath Report (Ex. A) at 14 ("Bayer developed and executed a program for manipulating the clinical community's impressions"). In any case, Dr. Heath's ability to "render an appropriate risk/benefit analysis" in his own practice is irrelevant to any issue in this case, and is therefore inadmissible. *See* Fed. R. Evid. 403, 702.

***Opinions regarding the Trasylol label.*** Plaintiffs concede that they are not "offer[ing] Dr. Heath as a labeling expert," *see* Opp. at 11, but assert that Dr. Heath's mere exposure to product labeling in his practice makes his opinions about Trasylol's label as support for his risk-benefit opinion admissible. This personal experience, as discussed above, similarly neither provides an adequate foundation for an expert opinion nor is relevant to this litigation.

Accordingly, Dr. Heath's personal opinions about Bayer's labeling of Trasylol are inadmissible. *See* Motion at 15-17.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that Dr. Heath's testimony be excluded.

February 8, 2010                        Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
E-mail: plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail: blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile: 561-655-1509

Philip S. Beck
Email: philip.beck@bartlit-beck.com
Steven E. Derringer
Email: steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR**
   **& SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL 60603
Telephone: 312-494-4400
Facsimile: 312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-7036

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email: dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMENS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation,
Bayer HealthCare Pharmaceuticals Inc.,
and Bayer Schering Pharma AG*

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:   215-875-7701
Co-Lead Counsel for Plaintiffs

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:   561-684-6308
Liaison Counsel for Plaintiffs

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509
Liaison Counsel for Defendants

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:   713-759-1217
Co-Lead Counsel for Plaintiffs

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:   203-610-6399
Federal-State Liaison for Plaintiffs