UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-1928-MD-MIDDLEBROOKS/JOHNSON

SOUTHEAST LABORERS
HEALTH AND WELFARE FUND,
On behalf of itself and all others
similarly situated,

      Plaintiffs,

v.

BAYER CORPORATION, BAYER
HEALTHCARE PHARMACEUTICAL,
INC., BAYER HEALTHCARE, LLC,
BAYER HEALTHCARE, A.G.,

      Defendants.

      This Order relates to Case No.  08-80873
_____/

## ORDER GRANTING BAYER'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

THIS CAUSE comes before the Court upon the Defendants' (hereinafter, collectively, "Bayer's") Motion to Dismiss Plaintiff's Second Amended Class Action Complaint ("Motion") (DE 2687), filed on November 12, 2009, to which Plaintiff responded on January 13, 2010 (DE 3530). The Court has reviewed the Motion and is otherwise fully advised in the premises.

Plaintiff, Southeast Laborers Health and Welfare Fund ("Southeast Laborers"), brings this purported class action alleging violations of: (1) RICO, 18 U.S.C. § 1962(c); (2) New Jersey Consumer Fraud Act ("NJCFA"), N.J. STAT. ANN. §§ 56:8-1, *et seq.*; (3) breach of express warranty under New Jersey Law, N.J. STAT. ANN. § 12A:2-313; (4) breach of implied warranty under New

1

Jersey Law, N.J. STAT. ANN. § 12A:2-314; (5) common law fraud; (6) negligent misrepresentation; and (7) unjust enrichment. The class that Plaintiff purports to represent are all private, non-governmental entities in the United States that purchased, reimbursed and/or paid all or part of the cost for Trasylol for purposes other than resale from January 1, 1999 to November 2007.

## I.      Background

The Court will not repeat the general factual background of this Case, which was extensively discussed in its Order granting Bayer's Motion to Dismiss the First Amended Class Action Complaint (DE 1905). *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270 (2009). Instead, this section will focus on Plaintiff's First Amended Class Action Complaint ("First Complaint"), Bayer's first Motion to Dismiss, and this Court's Order granting that Motion (with leave to amend).

There is a slight difference between the First Complaint and the Second Amended Class Action Complaint ("Second Complaint"): the First Complaint did not allege breach of express warranty and breach of implied warranty.

In its first Motion to Dismiss, Bayer asserted that Plaintiff's First Complaint must be dismissed because: (1) it failed to allege a viable claim under the Federal RICO Statute; (2) the Plaintiff could not maintain a consumer fraud claim under the NJCFA; (3) Plaintiff failed to meets its burden of establishing proximate cause and reliance in support of its claims for fraud or negligent misrepresentation; and (4) the failure of Plaintiff's other claims precluded its recovery for unjust enrichment.

As to the RICO claim, Plaintiff alleged that Bayer and Key Opinion Leaders ("KOLs")

2

engaged in a pattern of racketeering activity, including numerous acts of mail and wire fraud, and Plaintiff and Members of the Class were injured in their business or property by such racketeering activity because they paid monies for the drug Trasylol, which they would not have done absent Bayer's wrongful misconduct.

Bayer argued that the RICO claim failed because Plainitff: (1) failed to adequately allege a "pattern" of racketeering activity; (2) failed to establish causation; and (3) failed to allege a cognizable RICO enterprise. Bayer also asserted that Plantiff's RICO claim must fail because it did not plead the circumstances constituting fraud with particularity as required by FED. R. CIV. P. 9(b).

This Court first found that Plaintiff failed to allege the requisite two predicate acts of racketeering activity. "The only sufficiently specific factual allegations relate to Bayer's responses and actions after the two Studies were published in early 2006." *Southeast Laborers*, 655 F. Supp. 2d at 1277. The Court found that even if Plaintiff had adequately pled a pattern of racketeering activity, the Complaint required dismissal because, under established RICO principles, the factual allegations did not sufficiently allege that the behavior complained of proximately caused the Plaintiff injury. *Southeast Laborers*, F. Supp. 2d at 1280. "Whether or not a plaintiff can establish proximate cause requires a court to consider the policy formulated by the Supreme Court cases requiring a direct injury . . . . Applying these policy factors to the case herein, I find that they weigh heavily against a finding of proximate cause." *Id.* This Court emphasized that calculation of Plaintiff's losses would be purely speculative, in large part because there are many factors that a doctor may consider in determining what medication to administer to a given patient. *Id.* at 1280-81.

Plaintiff argued that its injury was a direct and foreseeable result of Bayer's fraudulent marketing strategy: the injury was not that it paid more for medical claims by its beneficiaries

3

because patients were harmed by Trasylol, but rather, that it paid for Trasylol at all and at an exorbitant price because Bayer's concealment of the dangers and fraudulent touting of the benefits of the drug over other drugs on the market directly drove up the price and market share of Trasylol. *Id.* at 1282. The Court ruled that this argument did not affect its determination as to proximate cause: "There is no substantive difference between the question of whether Plaintiff would have paid for Trasylol at all instead of a lower-priced alternative versus whether Plaintiff paid too much for Trasylol because of the actual value of the drug." *Id.* The Court also determined that the fraud-on-the-market theory, which, in the mail or wire fraud context, serves to establish damage causation by determining a price impact on the market caused by a party's allegedly fraudulent activity, is limited strictly to securities cases: its application to a deceptive advertising claim would be contrary to the law of this Circuit. *Id.* at 1283.

Because this Court found that Plaintiff had failed to adequately allege with specificity the two predicate RICO acts and proximate cause, it did not address whether or not the Complaint satisfactorily alleged a RICO enterprise.[1] *Id.* at 1278 n.3. In an abundance of caution, the Court granted Plaintiff "leave to amend the Complaint in an attempt to establish a different premise of proximate causation in the unlikely event that can be accomplished." *Id.* at 1284.

Plaintiff alleged that Bayer violated the NJCFA with its acts and failures to act, including the false and misleading representations and omissions of material facts regarding the safety of Trasylol. According to Plaintiff, it suffered direct losses caused by Bayer's encouragement of the use of Trasylol over less expensive and safer treatment alternatives.

---

[1] The Court noted that *Boyle v. United States* appears to run contrary to Bayer's asserted arguments in this regard. 129 S. Ct. 2237 (2009). *Southeast Laborers*, 655 F. Supp. 2d at 1278 n.3.

4

Bayer argued that dismissal of Plaintiff's NJCFA claim was warranted because: (1) Plaintiff is not a consumer as contemplated by the NJCFA; and (2) Plaintiff's allegations fail to establish that Bayer's sales and marketing proximately caused it any ascertainable loss.

This Court declined to decide whether the Plaintiff is a consumer as contemplated by the NJCFA because it found that the claim failed for lack of causation.[2]  *Id.* at 1285.  In regards to the causation issue, the Court first determined that the NJCFA was subject to interpretation under the law of the State of New Jersey.  *Id.*  "This makes analysis of Bayer's Motion as to proximate causation more problematic, because most courts considering actions under NJCFA applied a less stringent definition of proximate cause than the one those same courts have applied in RICO claims for actions that were virtually identical to the one presented herein."  *Id.*  The Court found that Plaintiff's assertion that it had established an ascertainable loss due to Bayer's conduct relied on a fraud-on-the-market analysis, a theory rejected by New Jersey courts outside of the context of federal securities fraud litigation.  *Id.* at 1287-88.  Although the Court found it "unlikely that Plaintiff will be able to replead so as to cure the proximate cause deficiencies addressed herein," it granted leave "to amend the Complaint as to establish a different premise of proximate causation distinguishable from that addressed herein."  *Id.* at 1288.

As to the common law fraud and negligent misrepresentation claims, the Court determined that "[t]he key element, reliance, is the same for both."  *Id.* at 1289.  "The element of reasonable reliance is where Plaintiff's claims for fraud or negligent misrepresentation fail."  *Id.*  The element of reasonable reliance was not satisfied because

---

[2] The Court noted that several New Jersey cases presumed that insurance payers are consumers under the NJCFA, but that the issue has not been conclusively determined. *Southeast Laborers*, 655 F. Supp. 2d at 1285.

> The Complaint is devoid of any allegation relating to any statement made directly to Plaintiff, nor does it set forth any allegation of how Plaintiff reasonably relied upon any statement made to it. Thus the Plaintiff fails to set forth a claim for either fraud or misrepresentation. To the extent Plaintiff seeks to utilize a fraud-on-the-market theory as substitution for this required element of reliance, such avenue is foreclosed by the discussion *supra*.

*Id.* As with the other claims, the Court, in an abundance of caution, granted Plaintiff leave to amend its Complaint "to set forth any particular statements upon which it reasonably relied to its detriment and how such statement[s] proximately caused it the alleged harm." *Id.*

After the Court dismissed Plaintiff's other tort claims, it determined that the unjust enrichment claim should also be dismissed because "Courts generally have held that where all of the plaintiff's other tort claims have failed because of the remoteness of a plaintiff's injuries from a defendant's wrongdoing, an unjust enrichment claim should not be allowed to proceed." *Id.*

Accordingly, the Court granted Bayer's Motion to Dismiss the First Complaint. It dismissed the First Complaint with leave to amend either to cure the deficiencies as to predicate acts, common purpose, proximate cause, or reliance. *Id.* at 1290.

Pursuant to this Court's Order, Plaintiff filed the Second Complaint (DE 2224); Bayer, in response, filed its second Motion to Dismiss (DE 2687).

## II.    Legal Standard

It is a well-settled principle that in ruling on a motion to dismiss, a federal court must view the complaint in the light most favorable to the plaintiff and take its well-pled factual allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (citation omitted); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007);

6

*Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002). In considering a motion to dismiss, it is necessary to assess the sufficiency of the complaint against the legal standard set forth in Federal Rule of Civil Procedure 8: "a short and plain statement of the claim showing that the pleader is entitled to relief," but one must also keep in mind that such a short and plain statement "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted); *Watts*, 495 F.3d at 1295.

Under the *Twombly* standard, factual allegations in a complaint need not be overly detailed but "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555 (internal citations omitted). "The Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295 (quoting *Twombly*, 550 U.S. at 556). This does not mean to say that a plaintiff must establish a probability of prevailing on a particular claim, but rather, the standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of a required element. *Id.* at 1296 (quoting *Twombly*, 550 U.S. at 556). "It is sufficient if the complaint succeeds in 'identifying facts that are suggestive enough to render [an element] plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556).

Additionally, when a claim for fraud is raised, "a party must state with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge and other conditions of a

7

person's mind may be alleged generally." FED. R. CIV. P. 9(b).  However, Rule 9 "must not be read

to abrogate Rule 8," and a court, in "considering a motion to dismiss for failure to plead fraud with

particularity should always be careful to harmonize the directives of Rule 9(b) with the broader

policy of notice pleading." *Friedlander v. Nims,* 755 F.2d 810, 813 n.3 (11th Cir. 1985) (internal

citations omitted).  With these standards in mind, I turn to the instant Motion.


III.    **Analysis**

Bayer, in its Motion, asserts that the following defects in Plaintiff's claims independently

warrant dismissal: (1) per the Court's Order, Plaintiff has not cured the defect in its proximate

causation theory; (2) the RICO claim fails because Plaintiff has not pled, and cannot plead, a proper

association-in-fact enterprise; (3) the NJCFA claim fails because third-party payers, like plaintiff,

are not "consumers" entitled to bring suit under that statute; (4) all of the state law claims fail under

both New Jersey and Tennessee law; and (5) the new breach of express and implied warranty claims

fail because a third-party payer is not a "buyer" in a "sale," Plaintiff did not see any express

warranty, and Plaintiff does not allege that any plan member experienced any side effect it claims

should have more fully been disclosed.  (DE 2687 at 2-3.)


A.    **Count I: The RICO Claim**

Plaintiff, in Count I, alleges that it is entitled to relief under RICO, 18 U.S.C. § 1962(c),

because: (1) Bayer and KOLs engaged in a pattern of racketeering activity, including numerous acts

of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343; and (2) Plaintiff and Members

of the Class were injured, directly and proximately, in their business or property by such racketeering

activity because they paid monies for the drug Trasylol, which they would not have done absent Bayer's wrongful conduct. (DE 2224 at ¶¶ 285-87.)

In its Motion, Bayer asserts that Plaintiff's RICO claim fails because Plaintiff has failed to allege at least two of RICO's required elements: (1) proximate causation; and (2) the existence of a cognizable RICO enterprise. (DE 2687 at 5.) In regards to the proximate cause element, Bayer argues that "On amendment, plaintiff largely repeats its previously unsuccessful theory of proximate causation–that but for defendants' misrepresentations and concealment, plaintiff and other third-party payers would have refused to pay for Trasylol. . . . [P]laintiff has not alleged, and cannot allege, a direct relation between its injury and Bayer's conduct." (DE 2687 at 5-6, 10.) Bayer argues that Plaintiff has not properly alleged the existence of a RICO enterprise for two reasons: (1) Plaintiff has not alleged a common fraudulent or illegal purpose between the alleged members of the association-in-fact enterprise; and (2) a proper association-in-fact enterprise must be distinct from the RICO defendants.[3] (DE 2687 at 10-12.)

In its Response, Plaintiff asserts that its Second Complaint sufficiently pleads a RICO enterprise and causation, fully addressing the Court's concerns set forth in its Order granting Bayer's first Motion to Dismiss. (DE 3530 at 1.) In regards to causation, Plaintiff asserts that it has pled a direct relation between Bayer's fraudulent conduct and the injury Plaintiff sustained. (DE 3530 at

---

[3] In regards to the second reason, Bayer argues that the RICO enterprise generally cannot be merely an association of the corporation and its employees, and numerous courts have extended that logic to prohibit a claim that the enterprise consists of only a corporation, its employees, and its agents. (DE 2687 at 11.) "Plaintiff alleges an enterprise that lacks distinction between its members. In particular it alleges that the conduct of the KOLs on behalf of the defendants was at all times tightly controlled by the defendants. . . . Taking these allegations as true, the KOLs were not sufficiently distinct from the defendants to permit plaintiff to state a RICO claim premised upon an enterprise that is nothing more than an alleged association-in-fact of defendants, their employees, and the KOL's." (DE 2687 at 12.)

9

1.) Plaintiff cites to the Second Complaint:

> Plaintiff paid a premium in excess of $900 for every dose of Trasylol prescribed for a plan
> participant as compared to Trasylol's competitors, Amicar and TA, which are both safer
> and more efficacious than Trasylol. Plaintiff would never have incurred this expense had
> Bayer been honest about the safety and efficacy of Trasylol. . . . Plaintiffs have sufficiently
> alleged that Bayer's fraudulent scheme proximately caused substantial injury to the
> business and property of Plaintiff and other Class Members in that they paid enormous
> sums of money to Bayer that they would not have paid had they been aware that Trasylol
> was not safer, more efficacious or of greater value than available alternatives that were
> significantly cheaper.

(DE 3530 at 2.) According to Plaintiff, "ascertaining the amount of damages attributable to Bayer's

conduct will not be difficult given the clear differential between the exorbitant cost of Trasylol and

the price of competing products that ultimately proved to be both safer and more efficacious." (DE

3530 at 3.) Furthermore, "no independent factor accounts for Plaintiff's injury, there is no risk of

duplicative recoveries and there is no more immediate victim better situated to sue."[4] (DE 3530 at

3.)

     Plaintiff disputes Bayer's contention that the presence of prescribing physicians negates the

directness of the causal link between Bayer's fraudulent conduct and Plaintiff's injury. (DE 3530

at 4.) According to Plaintiff,

> Irrespective of the physician's decision to prescribe Trasylol, Plaintiff had an independent
> choice of whether or not to pay for Trasylol. . . . Plaintiff has alleged that it would not have
> paid for Trasylol had it known the truth that it was unsuitable for use by any patient,
> regardless of the decision of any prescribing physician and regardless of the existence of
> alternative drugs or therapies for preventing blood loss. . . . The fact that Bayer denied

---

[4] Plaintiff notes that while some patients may have paid for some portion of the cost of
Trasylol directly, such payments place the patients in a parallel position with Plaintiff rather than
as an intervening link between Bayer's fraudulent conduct and the Plaintiff's harm. (DE 3530 at
3.) Plaintiff also notes that while some of its Plan beneficiaries may have suffered physical
injuries as a result of ingesting Trasylol, there are no more directly injured victims with regard to
the economic injury Plaintiff has sustained that can be counted on to vindicate the law. (DE
3530 at 3-4.)

physicians the necessary information to make an informed decision regarding prescribing Trasylol does not negate the fact that Bayer also denied Plaintiff and Class Member the information necessary to determine whether or not to pay for Trasylol.

(DE 3530 at 4.)

In regards to a RICO enterprise, Plaintiff argues that it has sufficiently alleged each element of an association-in-fact RICO enterprise between the German Bayer parent corporations, the American subsidiaries, and the KOLs retained by Bayer. (DE 3530 at 5-6.) Plaintiff cites *Boyle v. United States,* 129 S. Ct. 2237, 2244 (2009), for the holding that an association-in-fact enterprise must have at least three structure features: (1) a common purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. (DE 3530 at 5.) According to Plaintiff, the alleged common purpose of the Key Opinion Leaders Enterprise ("KOLE") was to ensure continued payments for Trasylol from Plaintiff. (DE 3530 at 6.)

In response to Bayer's argument that Plaintiff has not identified a proper RICO enterprise because the alleged enterprise is not sufficiently distinct from Bayer (because the KOLs were acing as Bayer's agents), Plaintiff asserts that the distinctiveness argument cannot be resolved on a motion to dismiss. (DE 3530 at 7.) Furthermore, Plaintiff states that its allegations clearly establish a distinction between Bayer and the KOLE. (DE 3530 at 7.)

The Court finds that Plaintiff's RICO claim requires dismissal because, under established RICO principles, the factual allegations do not sufficiently allege that the behavior complained of proximately caused the Plaintiff injury.[5] In the Court's previous Order dismissing Plaintiff's RICO

---

[5] Because the Court finds that Plaintiff's RICO claim fails for lack of causation, it is unnecessary to address whether or not the Second Complaint satisfactorily alleges a RICO enterprise.

11

claim for lack of proximate cause, the Court stated:

> I note that my finding as to Plaintiff's proximate cause deficiency appears to be fatal to its RICO claim, and while I question its ability to remedy this deficiency, in an abundance of caution, I will grant leave to amend the Complaint in an attempt to establish a different premise of proximate causation in the unlikely event that can be accomplished.

*Southeast Laborers*, 655 F. Supp. 2d at 1284.  Plaintiff has not established a different premise of proximate causation.

In the Second Complaint, Plaintiff asserts that it has pled a direct relation between Bayer's fraudulent conduct and the injury Plaintiff sustained: Plaintiff would have never paid for Trasylol, irrespective of any physician's decision to prescribe Trasylol, had Bayer disclosed the truth about its safety and efficacy. (DE 3530 at 2-4.)  However, the Court considered and rejected this exact argument in its previous Order.  Accordingly,

> Plaintiff attempts to utilize *Zyprexa* by claiming that . . . its injury is a direct and foreseeable result of Bayer's fraudulent marketing strategy.  Specifically, it asserts that the injury is not that it paid more for medical claims by its beneficiaries because patients were harmed by Trasylol, but rather, that it paid for Trasylol at all and at an exorbitant price because Bayer's concealment of the dangers and fraudulent touting of the benefits of the drug over other drugs on the market directly drove up the price and market share of Trasylol. . . . I find that the *Zyprexa* court's reliance on this type of fraud on the market theory of damages and/or causation is simply misplaced. . . . The premise of *Zyprexa* necessarily applies the fraud-on-the-market doctrine to find that the injury claimed is direct, a premise which I find to be contrary to the law of this Circuit, and so, I decline to apply its reasoning to this case.

*Southeast Laborers*, 655 F. Supp. 2d at 1282-83. *See also In re Schering-Plough Corp. Intron*, 2009 WL 2043604, at *24 (D.N.J. July 10, 2009) ("Notwithstanding Plaintiffs' citation to *Desiano* and *Zyprexa*, the Court concludes that the Plaintiffs simply cannot prove causation through generalized proof in this case.  Judge Weinstein's conclusion in *Zyprexa* that RICO causation is susceptible to generalized proof relies heavily on *Desiano* and *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp.

2d 992 (E.D.N.Y. 2006). As the Court has already explained, *Schwab* was subsequently reversed in *McLaughlin*, with the Second Circuit holding that aggregate proof, in the form of increased demand, is not a viable theory for demonstrating RICO causation.").

Taking into account Plaintiff's argument that proximate causation is wholly independent of the decision of any doctor, the *Holmes* policy factors continue to weigh heavily against a finding of proximate cause. The first *Holmes* factor is the most problematic for Plaintiff: "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors." *Holmes v. Secs. Investor Prot. Corp*, 503 U.S. 258, 269-70 (1992). As in *Ironworkers Local Union No. 68 v. Astrazeneca Pharms. LP*, this case raises serious concerns regarding the ascertainment of damages caused by Bayer's alleged fraudulent conduct, as opposed to damages caused by other, independent, factors. 585 F. Supp. 2d 1339 (M.D. Fla. 2008).[6] Although Plaintiff argues that it had an independent choice of whether or not to pay for Trasylol, it does not explain how/why it made the choice to pay for Trasylol and how/why Bayer's alleged concealment of the dangers of Trasylol led Plaintiff to pay for Trasylol. Ultimately, Plaintiff has not established a different premise of proximate causation and still has not met the *Holmes* requirement that it demonstrate a direct relation between its payment for Trasylol and Bayer's alleged fraudulent concealment. Plaintiffs RICO claim is dismissed with prejudice.

---

[6] In *Astrazeneca*, Plaintiffs alleged that the pharmaceutical company misrepresented the comparative safety of Seroquel over other antipsychotics, and that as a result of such conduct, the union health and welfare benefit funds were financially injured. Plaintiffs maintained "that had they known of Defendants' fraudulent scheme, they would have taken steps to minimize the number of doses of Seroquel they purchased by, among other things, excluding Seroquel from approved schedules." 585 F. Supp. 2d at 1342. The Court found that "Plaintiffs' alleged harm is simply too remote from Defendants' alleged RICO violation to satisfy the proximate cause requirement." *Id.* at 1345. The case is currently on appeal in the Eleventh Circuit.

**B.     Count II: The New Jersey Consumer Fraud Act ("NJCFA")**

Plaintiff, in Count II, alleges that

> Bayer's actions and failures to act, including the false and misleading representations and omissions of material facts regarding the safety of Trasylol . . . constitute acts, uses, or employment by Bayer of unconscionable commercial practices, deception, fraud, false pretenses, misrepresentations, and the knowing concealment, suppression or omission of material facts about the safety of Trasylol with the intent that others rely upon such concealment, suppression or omission of material facts in connection with the sale of merchandise of Bayer in violation of the New Jersey Consumer Fraud Act.

(DE 2224 at ¶ 292.)  According to Plaintiff, these unfair and deceptive acts and practices have directly and proximately caused it damages.  (DE 2224 at ¶ 295.)

In its Motion, Bayer asserts that Plaintiff's NJCFA claim should be dismissed for two independent reasons: (1) Plaintiff has done nothing more in its Second Complaint than re-allege its original, unsuccessful theory of proximate causation; and (2) as a third-party payer, Plaintiff is not a "consumer" entitled to bring suit under the statute.  (DE 2687 at 13.)

In its Response, Plaintiff argues that it has established the requisite causal nexus between Bayer's unlawful conduct and Plaintiff's ascertainable loss. (DE 3530 at 10.) According to Plaintiff, the causal nexus requires allegations of a causal connection between the concealment of a material fact and the loss, not a connection between the material act and the parties or direct reliance. (DE 3530 at 10.) Furthermore, the causal nexus required under the NJCFA is less onerous than the one required under civil RICO: "the same allegations in the SAC [Second Complaint] demonstrating the direct causal link between Bayer's fraudulent misrepresentations about Trasylol's safety and efficacy and Plaintiff's damages which resulted in a valid claim under RICO are more than sufficient to satisfy the less-stringent 'causal nexus' standard required under the NJCFA." (DE 3530 at 11.)

14

Plaintiff asserts that its NJCFA claim does not rely on the fraud-on-the-market theory to prove loss causation (i.e., an ascertainable loss) for two reasons. (DE 3530 at 13.) First, while a claim relying on fraud-on-the-market alleges that the price charged was higher than it should have been, "Plaintiff does not allege that it and the class paid merely an 'inflated price' for Trasylol, but rather that nobody should have paid any amount for Trasylol at all." (DE 3530 at 13-14.) Second, Plaintiff alleges that it is entitled to a "complete rescission of all Trasylol transactions since they would not have occurred but for defendants' misrepresentations and omissions about the drug's safety," and that such a theory does not implicate fraud-on-the-market. (DE 3530 at 14.)

Finally, Plaintiff argues that it is a consumer under the NJCFA because "No New Jersey court has, to date, held that a third party payor was not a consumer protected under the Act." (DE 3530 at 16.)

The Court finds that Plaintiff's NJCFA claim requires dismissal because Plaintiff has not adequately pled a causal connection between Bayer's alleged fraudulent conduct and its ascertainable loss, as required by the NJCFA.[7] *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co, Inc.*, 929 A.2d 1076, 1086 (N.J. 2007). While applying a less stringent definition of proximate cause than the one used in RICO, the Court previously decided that Plaintiff's proximate cause theory relied on a fraud-on-the-market analysis, which New Jersey courts have held is only applicable to securities fraud litigation. *E.g., Merck*, 929 A.2d at 1088. This Court dismissed

---

[7] Because the Court finds that Plaintiff's NJCFA claim fails because Plaintiff has not adequately pled a causal connection between Bayer's alleged fraudulent conduct and its ascertainable loss, it is unnecessary to address whether or not Plaintiff is a "consumer" entitled to bring suit under the statute. The Court stated in its previous Order that some New Jersey cases have presumed that insurance payers are "consumers" under the NJCFA, but that this issue has been left to be determined at a later date. *Southeast Laborers*, 655 F. Supp. 2d at 1285.

Plaintiff's NJCFA claim with leave to amend the Complaint "to establish a different premise of proximate causation distinguishable from that addressed herein," finding it "unlikely that Plaintiff will be able to replead so as to cure the proximate cause deficiencies addressed herein." *Southeast Laborers*, 655 F. Supp. 2d at 1288.

Plaintiff has not alleged a premise of proximate causation that is distinguishable from one that relies on a fraud-on-the-market analysis. Although Plaintiff argues that its NJCFA claim does not rely on fraud-on-the-market, its argument is unavailing. According to Plaintiff, a claim relying on fraud- on-the-market alleges only that the price charged for the product at issue was higher than it should have been as a result of the fraud, whereas Plaintiff alleges that it would not have paid *any* amount for Trasylol had Bayer not misrepresented Trasylol's safety. (DE 3530 at 13.)  Plaintiff's theory of recovery is a complete rescission of all Trasylol transactions. (DE 3530 at 14.) The Court has previously considered and rejected this argument.  Accordingly, "There is no substantive difference between the question of whether Plaintiff would have paid for Trasylol at all instead of a lower-priced alternative versus whether Plaintiff paid too much for Trasylol because of the actual value of the drug." *Southeast Laborers*, 655 F. Supp. 2d at 1282.

Plaintiff has not established a different premise of proximate causation and has not adequately pled a causal connection between Bayer's alleged fraudulent conduct and its ascertainable loss, as required by the NJCFA.  Plaintiff's NJCFA claim is dismissed with prejudice.

### C.    Counts III & IV: Breach of Express and Implied Warranties

In Count III, Plaintiff alleges that Bayer's conduct amounted to a breach of an express warranty under New Jersey law. Specifically, "Bayer directly and through the Key Opinion Leaders,

16

made numerous statements about the risks associated with Trasylol which gave the false impression that Trasylol was medically necessary." (DE 2224 at ¶ 299.) According to Plaintiff, Bayer breached an express warranty because Trasylol was not medically necessary and did not have the qualities warranted. (DE 2224 at ¶ 300.) As a direct and proximate result, Plaintiff was injured: Plaintiff paid money for a product that it would not have paid for had it known that Bayer's warranties were false. (DE 2224 at ¶¶ 301-02.)

Similarly, in Count IV, Plaintiff alleges that Bayer's conduct amounted to a breach of an implied warranty under New Jersey law. Accordingly,

> Plaintiff and class members were injured when they purchased Trasylol because it was not merchantable, not medically necessary and in fact had no legitimate medical use. Because Plaintiff and class members lacked information to determine that Trasylol was not merchantable, they paid for a product which they would not have purchased had they been made aware of its side effects and known that it was not medically necessary.

(DE 2224 at ¶ 311.) Plaintiff alleges that it suffered damages–in the form of paying for a product that was not medically necessary and had no legitimate use–that were directly and proximately caused by the defect inherent in Trasylol. (DE 2224 at ¶ 312.)

In its Motion, Bayer asserts that Plaintiff's warranty claims fail as a matter of law for the following four reasons: (1) Plaintiff has failed to establish that the alleged breach was the proximate cause of the damages sustained, as is required for an allegation of express or implied warranty; (2) Plaintiff is not a "buyer" in a "sale," as is required to create an express or implied warranty under the relevant states' laws[8]; (3) the express warranty claim fails because plaintiff has not alleged a

---

[8] While Plaintiff brings the warranty claims under New Jersey law, Bayer cites to New Jersey and Tennessee law. According to Bayer, the transaction at issue here–reimbursing medical providers for Trasylol–is not a sale because plaintiff never takes title to Trasylol; third-party payers are not buyers because they merely reimburse others for the purchase. (DE 2687 at 17.)

cognizable warranty[9]; and (4) the implied warranty claim fails because plaintiff has not alleged that Trasylol did not work for any of its plan members or that Trasylol injured them. (DE 2687 at 16-18.)

In its Response, Plaintiff states that Bayer's arguments for dismissal of the warranty claims do not cite to any case addressing the facts presented here. (DE 3530 at 18.) According to Plaintiff, Bayer's suggestion that third party payors are not "purchasers" or "buyers" of the drugs is contradicted by a large body of authority. (DE 3530 at 18.)

New Jersey law dictates that a seller creates an express warranty by making "any affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain" or "any description of the goods which is made part of the basis of the bargain." N.J. STAT. ANN. § 12A:2-313. An affirmation of fact, promise, or description of the goods becomes the "basis of the bargain" when a plaintiff shows that he "has read, heard, saw, or knew of the advertisement containing the affirmation of fact or promise." *Cipollone v. Liggett Group, Inc.*, 893 F.2d 541, 567 (3d Cir. 1990), *aff'd in part, rev'd in part on other grounds*, 505 U.S. 504 (1992).

Plaintiff's express warranty claim fails because Plaintiff has not alleged a cognizable warranty: Plaintiff has not alleged any affirmation of fact, promise or description of Trasylol that became part of the basis of the bargain.[10] In other words, Plaintiff has not alleged that it read, heard,

---

[9] According to Bayer, "An express warranty is created only when the seller makes an affirmation of fact or promise relating to the goods that becomes part of the 'basis of the bargain.' Here, plaintiff alleges that Bayer, 'directly and through the Key Opinion Leaders,' made unspecified warranties through its label and sales and marketing materials to physicians and hospitals. These allegations do not constitute the 'basis of the bargain,' however, because plaintiff has not alleged and thus cannot establish that it 'read, heard, saw or knew of' any warranty made by Bayer." (DE 2687 at 17-18.) (internal citations omitted).

[10] The Court also finds that Plaintiff has not adequately alleged that the breach of express warranty proximately caused its economic damages. The Court will not determine whether Plaintiff is considered a "buyer" in a "sale."

saw, or knew of any such affirmation of fact, promise or description. In the Second Complaint, Plaintiff alleges:

> Bayer, directly and through the Key Opinion Leaders, made numerous statements about the risks associated with Trasylol which gave the false impression that Trasylol was medically necessary. Starting in 1998, for example, Trasylol's label warranted that 'Data pooled from all patients . . . showed no statistically or clinically significant increased in the incidence of post-operative renal dysfunction for patients treated with Trasylol.['] Similarly, a physician's brochure issued at least by 2002 that 'Trasylol is generally well tolerated; graft potency, MI, renal or hepatic dysfunction, and mortality similar to placebo.'

(DE 2224 at ¶ 299). Plaintiff does not address Bayer's argument that Plaintiff has not alleged a cognizable warranty and that "the Complaint does not identify a single communication between plaintiff and Bayer, or allege that plaintiff was aware of the terms of *any* alleged warranty made by Bayer to *anyone*." (DE 2687 at 18.) Instead, Plaintiff only repeats the inadequate allegations contained in the Second Complaint, namely that Bayer "warranted to members of the medical community, the FDA, and the public through its labels, sell-sheets, sales team, and KOL that Trasylol had low safety risk relative to efficacy and high cost efficiency, and that scientific data supported its assertions, when in fact none of those affirmations were true." (DE 3530 at 18 n.24.) Plaintiff has not alleged that Bayer made an express warranty directly to Plaintiff or that Plaintiff saw or read the referenced Trasylol label and physician's brochure, or heard the alleged numerous statements about the risks associated with Trasylol during the relevant period. Therefore, Plaintiff's express warranty claim is dismissed for failure to allege a cognizable warranty.

Under New Jersey law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. STAT. ANN. § 12A:2-314(1). "Goods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used." N.J. STAT. ANN. § 12A:2-314(2)(c). To prevail on a claim

19

for breach of implied warranty, a plaintiff must establish that "the product was not reasonably fit for the ordinary purposes for which it was sold and such defect proximately caused injury to the ultimate consumer." *See Hollinger v. Shoppers Paradise of New Jersey, Inc.*, 340 A.2d 687, 692 (N.J. Super. Ct. Law Div. 1975), *aff'd*, 361 A.2d 578 (N.J. Super. Ct. App. Div. 1976).

Plaintiff's implied warranty claim fails because Plaintiff has not alleged that Trasylol was not fit for its intended use in preventing perioperative bleeding.[11] *See Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364, 379 (D.N.J. 2004) ("Breach of implied warranty claims are not intended to address hypothetical economic loss; they are meant to compensate a buyer who has not gotten the benefit of her bargain because the product in question does not meet generally accepted standards or disappoints consumer expectations."). Additionally, Plaintiff has not adequately pled that Trasylol's defect proximately caused its economic damages.[12] Therefore, Plaintiff's implied warranty claim is dismissed.

### D. Counts V & VI: Common Law Fraud and Negligent Misrepresentation

In Count V, Plaintiff asserts a claim for common law fraud. According to Plaintiff, "Bayer made misrepresentations and omissions of facts material to Plaintiff . . . (a) concealing from Plaintiff and the Class information in Bayer's possession which indicated that unreasonable safety risks were associated with the use of Trasylol and (b) deliberately misrepresenting the safety of Trasylol to the medical community, payors, and the general public." (DE 2224 at ¶ 318.) Plaintiff further asserts

---

[11] The Court notes that Plaintiff also has not alleged that Trasylol caused its plan members any injury.

[12] As with the express warranty claim, it is unnecessary for the Court to determine whether Plaintiff is considered a "buyer" in a "sale."

that Bayer knew that the misrepresentations and omissions were false, intended that Plaintiff would rely on them, Plaintiff did reasonably rely on them, and such misrepresentations and omissions proximately caused Plaintiff damages. (DE 2224 at ¶¶ 319-323.)

The negligent misrepresentation claim, Count VI, is similar to the common law fraud claim. "Defendants negligently and recklessly made such representations and omitted to disclose material facts to the medical community, payors and the general public through uniform misrepresentations, non-disclosure and concealment through promotion, marketing, advertising, and other means or by omission by Defendants or at their direction." (DE 2224 at ¶ 326.)

In its Motion, Bayer asserts that Plaintiff's common law claims for fraud and negligent misrepresentation fail for the same reason that this Court dismissed them initially. (DE 2687 at 14.) "This Court granted plaintiff leave to amend to allege 'any [knowingly or recklessly false] statement made directly to Plaintiff [and] any allegation of how Plaintiff reasonably relied upon any statement made to it.' Plaintiff's complaint is still utterly devoid of any such allegations." (DE 2687 at 15.) (internal citations omitted).

In its Response, Plaintiff argues that it has pled a case for common law fraud based on the omission and concealment of important safety information by Bayer; Bayer's argument that the Second Complaint does not allege any statement made by Bayer directly to Plaintiff is not a valid ground to dismiss because "fraud may be actionable as a result of an omission or an affirmative concealment where a party has a duty to disclose particular information." (DE 3530 at 17.) According to Plaintiff, Bayer had a duty to disclose adverse safety information about Trasylol to Plaintiff and third party payors that Bayer knew would be paying for the drug, Plaintiff relied on Bayer to fulfill the duty of disclosure to its financial detriment by paying for a drug with no benefits,

21

and Bayer's omission and overt misrepresentation directly and proximately caused injuries to Plaintiff. (DE 3530 at 17.)

The Court previously dismissed Plaintiff's fraud and negligent misrepresentation claims for failure to allege, without utilizing the fraud-on-the-market theory, "how Plaintiff reasonably relied upon any statement made to it" and "how such statements proximately caused it the alleged harm." *Southeast Laborers*, 655 F. Supp. 2d at 1289. While Plaintiff argues that failure to allege a statement is not a valid ground for dismissal because fraud may be actionable as a result of an omission or an affirmative concealment, Plaintiff has not properly alleged reasonable reliance and proximate cause upon such an alleged omission or affirmative concealment.[13] The First and Second Complaint's allegations regarding reliance and proximate cause are identical. *Compare* First Complaint at ¶¶ 200- 02 (reasonable reliance and proximate cause allegations for the fraud claim), *and* First Complaint at ¶¶ 209, 212 (reliance and proximate cause allegations for the negligent misrepresentation claim), *with* Second Complaint at ¶¶ 321-23 (reasonable reliance and proximate cause allegations for the fraud claim), *and* Second Complaint at ¶¶ 329, 332 (reliance and proximate cause allegations for the negligent misrepresentation claim). Therefore, Plaintiff's common law fraud and negligent misrepresentation claims are dismissed with prejudice.

### E.    Count VII: Unjust Enrichment

---

[13] To state a cause of action for fraud under New Jersey, Pennsylvania and Indiana law, a plaintiff must allege (1) material misrepresentation of the presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely upon it; (4) reasonable reliance thereon by the other person; and (5) which proximately caused damage. *Southeast Laborers*, 655 F. Supp. 2d at 1288-1289 (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997)). "'Negligent misrepresentation is . . . a[n] incorrect statement, negligently made and justifiably relied on' which results in damages." *Id.* at 1289.

Lastly, in Count VII, Plaintiff alleges unjust enrichment. According to Plaintiff, it expected Trayslol to be safe in exchange for the payment it made for it. (DE 2224 at ¶ 337.) "By the improper and wrongful conduct described herein, Bayer was unjustly enriched at the expense of Plaintiff. . . . Plaintiff and the Class are entitled in equity to seek restitution of Bayer's wrongful profits." (DE 2224 at ¶ 339.)

In its Motion, Bayer asserts that Plaintiff's common law claim for unjust enrichment fails for two independent reasons: (1) as a tort-based claim, it is wholly derivative, and therefore cannot stand in the absence of a viable tort claim; and (2) even if the plaintiff had an independent claim for unjust enrichment, that claim would fail because plaintiff has not and cannot allege that it conferred any direct benefit or measurable value on defendants.[14] (DE 2687 at 15.)

As this Court stated in its previous Order, an unjust enrichment claim is generally not allowed to proceed where all of the plaintiff's other tort claims have failed because of the remoteness of a plaintiff's injuries from a defendant's wrongdoing. *Southeast Laborers*, 655 F. Supp. 2d at 1289. (internal citations omitted). As all other counts have been dismissed, Plaintiff's unjust enrichment claim is likewise dismissed with prejudice.

## IV.    Conclusion

Accordingly, for the reasons set forth above, it is hereby

---

[14] In regards to the second reason, Bayer states: "Plaintiff alleges that it and the class paid for Trasylol, and that defendants made a profit from the sale, but not that plaintiff had any contact with defendants, that defendants sold Trasylol to plaintiff, that plaintiff's payment was made to defendants, or that plaintiff was anything but a fund that simply reimbursed for healthcare services on behalf of its plan members. Any indirect benefit conferred on the defendants is thus too attenuated to give rise to a claim of 'measurable value' (under Tennessee law) or 'direct relationship between the parties' (under New Jersey law)." (DE 2687 at 15-16.)

**ORDERED AND ADJUDGED** that Bayer's Motion to Dismiss Plaintiff's Second Amended Class Action Complaint (DE 2687) be **GRANTED WITH PREJUDICE** as to Counts I, II, V, VI and VII; and **GRANTED WITHOUT PREJUDICE** as to Counts III and IV, with leave to amend the Second Complaint within thirty (30) days of the filing of this Order. Plaintiff may not make new claims absent leave of Court.[15]

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this ___ day of February, 2010.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:     Counsel of Record

---

[15] Plaintiff has had plenty of chances to bring its claims. The Court granted Bayer's first Motion to Dismiss Plaintiff's First Complaint on July 30, 2009. The Court granted Plaintiff an extension to file its Second Complaint until September 30, 2009.

24