**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to All Actions
_____/

**BAYER'S REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE**
**TESTIMONY OF PLAINTIFFS' EXPERT CURT D. FURBERG**

Bayer moved to exclude five subjects of Dr. Furberg's testimony: (1) his proposed narrative history recounting Trasylol's discovery, development, and regulation, (2) his opinion that Trasylol increases the risk of serious adverse events, (3) his opinion that Trasylol's risks outweigh its benefits, (4) his opinion that Bayer failed to warn of the risks associated with Trasylol, and (5) his various opinions regarding Bayer's compliance with FDA regulations and "industry standards." Bayer's Motion to Exclude (D.E. 3073) ("Motion") at 3-19.

Plaintiffs recast Dr. Furberg's testimony, claiming that he "is *not* offering opinions on FDA regulations, Trasylol sales and marketing or corporate ethics." Plaintiffs' Opposition to Bayer's Motion (D.E. 3985) ("Opp.") at 1-2 (original emphasis). Their claim is contrary to Dr. Furberg's report and deposition and does not, in any event, show that his opinions are the product of expertise applied in a reliable manner. *See infra* Part I.

With respect to Dr. Furberg's adverse event and risk-benefit opinions, plaintiffs ignore the record. Instead, counsel attempt to fill the gaps in Dr. Furberg's reasoning. These efforts fail because "the arguments and extrapolations of counsel alone are not sufficient to prove the reliability of the experts' conclusions." *In re Human Tissue Prods. Liab. Litig.*, 582 F. Supp. 2d 644, 667 (D.N.J. 2008). *See infra* Part II.

# ARGUMENT

## I. PLAINTIFFS CANNOT REPACKAGE DR. FURBERG'S TESTIMONY IN AN ATTEMPT TO AVOID EXCLUSION OF THAT TESTIMONY.

Plaintiffs attempt to repackage Dr. Furberg's testimony in an effort to distinguish prior decisions that have excluded Dr. Furberg's testimony on these same subjects. *E.g.*, *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 194-195 (S.D.N.Y. 2009); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 542-50 (S.D.N.Y. 2004). Because Dr. Furberg possesses no relevant expertise, and because he failed to employ a reliable methodology, his narrative history, failure to warn, and standard of care testimony is inadmissible.

### A. Dr. Furberg Does, In Fact, Offer a Narrative History, and His Testimony Is Inadmissible.

Bayer's motion demonstrated that Dr. Furberg should not be allowed to offer a "narrative history" of Trasylol because his proposed history strays into areas well-outside his expertise, is based on materials hand-picked by plaintiffs' counsel, and invades the province of the jury. Motion at 3-4. Plaintiffs counter that the "factual materials set forth in Dr. Furberg's report are not intended to be the subject of his testimony in and of themselves," Opp. at 7, but rather that his testimony about historic events merely provides a "connection between the factual events and the specialized standards of conduct required of pharmaceutical companies." *Id.* at 6.

Dr. Furberg's report, however, is replete with "facts," placed in chronological order, that have nothing to do with plaintiffs' present spin on Dr. Furberg's opinions (which plaintiffs claim to be "that the scientific data indicates Trasylol's risks outweigh its benefits" and "that Bayer failed to adequately respond to safety signals that emerged from drug studies," Opp. at 1). For example, Dr. Furberg refers to internal Bayer documents, Furberg Report (Ex. B)[1] at 15, 30, 36; foreign regulatory actions, *id.* at 25; communications between Bayer and the FDA or

---

[1] Exhibits A to Q were attached to Bayer's Motion. Exhibits R, S, and T are attached hereto.

2

physicians, *id.* at 19-20, 22, 23, 30, 31-32; and regulatory submissions and approvals, *id.* at 22, 23, 27-28, 34-35.  He also makes claims regarding Trasylol's marketing, labeling, and warnings, *id.* at 15, 26-27, 29-30, 35-36, and Bayer's compliance with the law and industry standards, *id.* at 19, 26, 32, 34, 35.  Dr. Furberg's frequent references to information other than "the scientific data" or "drug studies" show that he is doing more than what plaintiffs claim.  Rather, he is constructing a narrative history out of select "facts."

Even if plaintiffs' explanation for Dr. Furberg's narrative history were accepted, his testimony still would be inadmissible.  Plaintiffs assert that Dr. Furberg is needed to "connect" factual events to Bayer's "specialized standards of conduct."  Opp. at 6.  But Dr. Furberg is not competent to discuss a pharmaceutical company's "standard[] of conduct."  *See* Motion at 15-16.  He is not an expert on FDA regulations, Deposition of Curt D. Furberg ("Furberg Dep.") (Ex. A) at 7:8-18, 67:11-12, and his opinions on FDA regulations have been excluded by other courts, *Rezulin*, 309 F. Supp. 2d at 548-49 & n.56 (holding Dr. Furberg's opinion "inherently unreliable"); *see also Fosamax*, 645 F. Supp 2d at 194-195.  In addition, he has no relevant experience in the pharmaceutical industry.  Furberg Dep. (Ex. A) at 65:16-66:20; *Rezulin*, 309 F. Supp. 2d at 543 & n.32, 545 n.37, 557-58 (excluding Dr. Furberg's testimony concerning pharmaceutical industry standards).

### B. Dr. Furberg Does, In Fact, Opine that Bayer Failed to Warn of the Risks of Trasylol, and His Testimony Is Inadmissible.

Bayer showed that Dr. Furberg lacks the expertise in regulations and marketing needed to offer failure to warn opinions, and that Dr. Furberg failed to analyze relevant information (such as Trasylol's labels) before reaching his conclusions.  Motion at 12-13.  Plaintiffs again try to repackage the testimony in an effort to gain its admission despite Dr. Furberg's lack of expertise.  *See* Opp. at 16.

*Marketing and Labeling Opinions.* Bayer showed that Dr. Furberg lacks expertise in marketing and FDA regulations. Motion at 12-13. Without expertise, he cannot offer marketing or labeling opinions. *Fosamax*, 645 F. Supp. 2d at 195 (excluding Dr. Furberg). Plaintiffs claim that Dr. Furberg needs no expertise because he does not offer "an opinion on Bayer's compliance with FDA regulations." Opp. at 16; *accord id.* at 17. Yet one of Dr. Furberg's "assignments" was to "provide [his] opinions related to: . . . Bayer's adherence to accepted industry guidelines, standards and federal regulations with respect to the labeling, promotion and sale of TRASYLOL." Furberg Report (Ex. B) at 7. Dr. Furberg offered such opinions throughout his report. *Id.* at 8 (Bayer "violated . . . established regulations and guidelines"), 11 ("Bayer violated these [FDA] requirements"), 19 ("Bayer's failure to fully inform the FDA . . . violated . . . applicable federal regulations"), 26 ("Bayer continued to violate . . . federal regulations"), 34 ("Bayer misled the FDA"), 35 (Bayer committed "a serious violation of existing regulations"), 38 (Bayer "violated federal regulations"); *see generally id.* at 10-14 (discussing various FDA regulations).

Plaintiffs also suggest that Dr. Furberg should be allowed to discuss (1) "whether the information available from the studies . . . was consistent with what Bayer was stating in its promotional materials," Opp. at 17, and (2) whether "information included in the product label" properly reflected "the data available at the time the label was developed." *Id.* at 16. Even if plaintiffs were allowed to recast Dr. Furberg's opinions,[2] his testimony would be inadmissible.

*First*, Dr. Furberg did not review the relevant facts. For example, he could not tell how many versions of the Trasylol label he had read, and he did not study the extent to which

---

[2] Plaintiffs never show that Dr. Furberg offered the sort of comparisons that they now claim are the centerpiece of his testimony. *See* Furberg Report (Ex. B) at 7 (stating that his assignments were to evaluate the risk of serious adverse events, the overall risk/benefit balance, and Bayer's adherence to industry standards and federal regulations).

4

promotional materials were submitted to the FDA before they were used. Motion at 13 & n.7. Plaintiffs concede the point as to Dr. Furberg's labeling opinions, Opp. at 17 n.10, and do not address Dr. Furberg's failure to review the relevant facts before reaching his marketing opinions. *See id.* at 17. His opinions are inherently unreliable. Motion at 13.

*Second*, plaintiffs cannot avoid the fact that Dr. Furberg has no regulatory or marketing expertise. Motion at 12-13. Plaintiffs assert that Dr. Furberg's "expertise" in "drug safety" is sufficient for him to opine on whether Bayer's labeling and marketing materials were consistent with what Bayer should have known from the medical literature. Opp. at 17. But without regulatory or marketing expertise, Dr. Furberg cannot offer an "expert" opinion on what Bayer allegedly said (or was allowed to say under FDA regulations) in its marketing and labeling materials, much less an "expert" comparison between what Bayer said and what Bayer supposedly knew.

*Finally*, plaintiffs' suggested purpose for the expert testimony, opining as to whether Bayer's communications were "consistent" with the available information, invades the function of the jury, which is to draw conclusions from the facts. Motion at 18-19.

***Duty to Warn Patients.*** Plaintiffs agree that Bayer had no duty to warn patients, but claim that Dr. Furberg never opined that Bayer had such a duty. Opp. at 21-22; Motion at 13-14. Dr. Furberg's report says otherwise. Furberg Report (Ex. B) at 11, 26, 30; *accord id.* at 7 (explaining that his opinions "address the sponsor's action related to . . . obligations to inform and warn . . . research subjects and regular patients about safety concerns"), 14 (asserting that "[a]ll patients receiving medical care have the right to know the favorable and unfavorable effects of the marketed drugs they are prescribed"). In short, Dr. Furberg thinks that Bayer had a duty to warn patients. Plaintiffs do not dispute that such testimony is inadmissible. Opp. at 21.

***Duty to Warn Clinical Trial Participants and Investigators.*** Bayer showed that Dr. Furberg's opinion regarding Bayer's supposed failure to warn clinical trial participants and investigators should be excluded because he (1) never considers relevant facts, Motion at 14; (2) bases his opinions on the Declaration of Helsinki, a document with guidelines "so vague as to be unhelpful to a fact-finder," *Fosamax*, 645 F. Supp. 2d at 194 (excluding Dr. Furberg's testimony), Motion at 14; and (3) offers nothing but irrelevant and inadmissible "bad acts" evidence, Motion at 14-15; *Rezulin*, 309 F. Supp. 2d at 545 (excluding Dr. Furberg's testimony about clinical trial participants). Plaintiffs do not counter these arguments. Opp. at 20 n.13.

Rather, plaintiffs suggest that Dr. Furberg's testimony should be admitted as proof of another situation "where Bayer's response to drug safety signals fell short of reasonable conduct." Opp. at 20 n.13. Plaintiffs never suggest how Bayer's supposed failure to warn is relevant, since plaintiffs have not shown that they were injured as a result of participating in any clinical trials. And, although plaintiffs may want to use Dr. Furberg's opinion that Bayer failed to warn in the clinical trial context to imply that Bayer may have failed to warn plaintiffs' physicians, they have not (and cannot) satisfy the conditions for admitting "bad acts" evidence. Fed. R. Evid. 404(b). Finally, even if plaintiffs' explanation were accepted, plaintiffs still would not have overcome the methodological flaws in Dr. Furberg's testimony. Motion at 14-15.

C.  **Dr. Furberg Does, In Fact, Opine on Bayer's Compliance with FDA Regulations or "Industry Standards," and His Testimony Is Inadmissible.**

***State of Mind Opinions.*** Plaintiffs concede that Dr. Furberg should not be allowed to discuss states of mind, motive, or intent. Opp. at 17-18; *see also* Motion at 16-17; *Rezulin*, 309 F. Supp. 2d at 546 & n.40 (excluding Dr. Furberg's testimony regarding "the intent, motives or states of mind of corporations, regulatory agencies and others"). They suggest that Dr. Furberg has never offered these opinions, Opp. at 17-18, but the evidence, again,

6

demonstrates otherwise. He has attributed knowledge and states of mind to numerous actors. *E.g.*, Furberg Dep. (Ex. A) at 157:15-158:23 (claiming that Bayer knew of safety concerns since 1980), 221:19-222:1 (asserting that the FDA was "furious" about the i3 situation), 232:3-11 (claiming that the FDA Advisory Committee "voted to leave [Trasylol] on the market because they didn't have all the news about the i3 study"). He also claims that "Bayer misled the FDA . . . by suppressing critical safety information." Furberg Report (Ex. B) at 34.[3]

> ***Standard of Care Opinions.*** Bayer has shown that Dr. Furberg lacks the expertise needed to state a standard of care and that he strays into matters reserved for the judge and jury. Motion at 15-16, 17-19; *see supra* Part I.A. Plaintiffs again attempt to work around these fatal flaws, suggesting that Dr. Furberg should be allowed to provide "context for an opinion on the adequacy of Bayer's response to the available data." Opp. at 16. Indeed, plaintiffs go so far as to suggest that it is "immaterial" that "Dr. Furberg was unable to cite a federal regulation or FDA guideline supporting his opinion." Opp. at 20 n.12. Without having a basis for stating a standard of care, Dr. Furberg's opinion that Bayer violated its standard of care is *ipse dixit*. It must be excluded. *Grdinich v. Bradlees*, 187 F.R.D. 77, 82 (S.D.N.Y. 1999) ("Without 'industry standards' to rely upon, [the expert] seems to base his conclusions on his own authority").[4]

---

[3] Plaintiffs suggest that Bayer elicited these opinions from Dr. Furberg, Opp. at 19, but they cannot blame Bayer for asking Dr. Furberg to address opinions in his report. *Compare* Furberg Rep. (Ex. B) at 30 (blaming Bayer for "reject[ing] investigator-initiated proposals"), *with* Furberg Dep. (Ex. A) at 204:16-205:19 (questions exploring the basis of Dr. Furberg's opinion blaming Bayer for rejecting investigator-initiated proposals, cited in Opp. at 19).

[4] Moreover, without being able to state Bayer's standard of care, Dr. Furberg's opinions that Bayer violated its standards of care involve no "interpretation of the facts," and are nothing but impermissible "interpretation[s] of the law." *Contra* Opp. at 19-20.

Plaintiffs further contend that Dr. Furberg's standard of care opinion is adequately rooted in fact. Opp. at 20-21. This contention ignores the gaps in Dr. Furberg's analysis. For example, Dr. Furberg opines that Bayer violated a 1998 "agreement" to give the FDA a safety update even though he never asked to review Bayer's submissions to the FDA between 1998 and 2006. Motion at 19.[5] To obscure Dr. Furberg's failure to research the facts before condemning Bayer, plaintiffs attempt to shift their burden of establishing reliability by suggesting that "Bayer is welcome to produce evidence of timely safety updates." Opp. at 21. *Contra United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (proponent "always bears the burden" of demonstrating the reliability of expert's methodology).

\* \* \*

In sum, plaintiffs have not defended Dr. Furberg's lack of expertise or his speculative opinions. Plaintiffs' efforts to repackage Dr. Furberg's testimony are not persuasive in light of the record, and do not fill the fatal gaps in his methodology. Accordingly, this Court should exclude Dr. Furberg's narrative history, failure to warn, and standard of care testimony.

**II.  PLAINTIFFS HAVE NOT ESTABLISHED THAT DR. FURBERG'S TESTIMONY ABOUT TRASYLOL'S SUPPOSED ADVERSE EFFECTS AND TRASYLOL'S RISK-BENEFIT PROFILE IS ADMISSIBLE.**

Bayer also moved to exclude Dr. Furberg's opinions that Trasylol is associated with serious adverse events and that the risks of Trasylol outweigh the benefits. Bayer has shown that Dr. Furberg's opinions are unreliable because he relied exclusively on cherry-picked data provided by plaintiffs' counsel and failed to address (or learn of) criticisms of those studies. Motion at 4-12. His entire opinion must be excluded. *Kilpatrick v. Breg, Inc.*, No. 08-10052-

---

[5] In this regard, plaintiffs misstate Dr. Furberg's testimony. They suggest that Dr. Furberg here was commenting on a general delay in addressing safety signals. Opp. at 19. In actuality, what Dr. Furberg considered "long overdue" was a safety update that Bayer allegedly promised in 1998. Furberg Dep. (Ex. A) at 206:15-207:1 ("Well they agreed to do it in '98.").

8

CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) ("if the court determines that any step in the expert's chain of logic is unreliable, his entire opinion must be excluded").

In response, plaintiffs' counsel attempt to testify on Dr. Furberg's behalf. They seek to explain away his failure to search the medical literature, Opp. at 8-10, buttress his cherry-picking of data while barely citing to his report or deposition, Opp. at 10-12, and minimize the fact that he did not know about, much less consider, criticisms of the studies that he cited. Opp. at 12-13. Plaintiffs cannot carry their burden of establishing admissibility through this ploy. *See Rimbert v. Eli Lilly & Co.*, No. 06-0874, 2009 WL 2208570, at *17 (D.N.M. July 21, 2009) (rejecting similar efforts that "essentially ask[ed] the Court to find [expert's] methodology reliable because of the information used in counsel's attempt to supplement and bolster her report"); *In re Human Tissue Litig.*, 582 F. Supp. 2d at 667 (holding that "the arguments and extrapolations of counsel alone are not sufficient to prove . . . reliability," and prohibiting counsel from "fill[ing] in the gaps" in expert's testimony").[6]

   A.   **Plaintiffs Have Failed to Carry Their Burden of Showing that Dr. Furberg Used a Scientifically Reliable Methodology in Concluding that Trasylol Increases the Risk of Adverse Events.**

*Dr. Furberg did not employ a reliable research methodology.* Bayer has shown that Dr. Furberg's passive approach to researching Trasylol is in hopeless conflict with his belief that "we need the totality of the evidence" when evaluating the safety of a drug. Motion at 4-6. Plaintiffs do not contest the fact that Dr. Furberg (1) never searched the medical literature, and (2) only reviewed studies selected by plaintiffs' counsel. Opp. at 8; *see also* Furberg Dep.

---

[6] Plaintiffs also contend that Dr. Furberg's credentials provide "circumstantial evidence" of the reliability of his conclusions. Opp. at 4-5. This argument fails for the reasons set forth in Bayer's Reply in Support of Its Motion to Exclude Testimony of Plaintiffs' Expert Mark J. Eisenberg (D.E. 4096) at 3 & n.3. The argument is particularly weak here because Dr. Furberg has no credentials in cardiac surgery or nephrology, and only offers made-for-litigation opinions. Furberg Dep. (Ex. A) at 55:5-7, 56:5-8. 57:6-9, 60:14-18, 61:19-23; *see also Daubert v. Merrell Dow Pharms. Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995) (on remand).

(Ex. A) at 39:13-21 ("What I have here in my declaration was in the box."). Nevertheless, plaintiffs assert that Dr. Furberg's total reliance on counsel for the research underlying his opinions is immaterial because "the materials he was provided by Plaintiffs' counsel in this case proved to be 'fairly complete.'" Opp. at 8.

Plaintiffs recently demonstrated that the "fairly complete" materials they gave Dr. Furberg in a box were anything but fairly complete. On January 20, 2010, long after Bayer's opening *Daubert* brief was filed, plaintiffs produced a "Supplemental Appendix" to Dr. Furberg's report. *See* Letter from Scott A. Love to Steven Derringer at 1 (Jan. 20, 2010) (Ex. R). The supplement added 183 documents (not including attachments) to the materials that supposedly form the basis of Dr. Furberg's opinions. *See id.* at 2-4; *see also* Letter from Scott A. Love to Steven Derringer at 1 (Jan. 26, 2010) (Ex. S) (explaining that Dr. Furberg "will rely" on the added documents at trial). In addition to demonstrating that plaintiffs' counsel did not provide Dr. Furberg with the "totality of the evidence," plaintiffs' tardy attempt to support Dr. Furberg's opinions violates the tenet that an expert must consider the evidence before reaching a conclusion. *Perry v. United States*, 755 F.2d 888, 892 (11th Cir. 1985); *In re Bextra & Celebrex Mktg. Sales Practices & Prods. Liab. Litig.*, 524 F. Supp. 2d 1166, 1176 (N.D. Cal. 2007).

Plaintiffs also have failed to establish that Dr. Furberg had any foundation for his claim that he received a "fairly complete" set of materials from counsel. Opp. at 8. He never studied Trasylol before he was hired by plaintiffs' counsel, Motion at 2, and he never searched the medical literature after he was hired by plaintiffs' counsel. Motion at 5. Dr. Furberg's decision to confine himself to whatever materials counsel fed him renders the foundation of his

10

scientific opinions inherently unreliable. *Miller v. Pfizer, Inc.*, 356 F.3d 1326, 1331, 1335 (10th Cir. 2004); *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 596 (9th Cir. 1996).[7]

Plaintiffs try to excuse Dr. Furberg's failure to conduct any research by creating a straw man. Opp. at 9 (asserting that Bayer's "totality of the evidence" would require an "[e]xhaustive document review" of "every study ever conducted on Trasylol"). But Bayer has not suggested that an expert in this litigation must review every article and study concerning Trasylol. An expert must, however, employ a scientifically reliable methodology in determining what he reviews and he must use scientifically reliable criteria to explain decisions to rely on some studies but not others. *Miller*, 356 F.3d at 1331, 1335 (affirming exclusion of plaintiffs' causation expert because "selective reliance" on certain evidence to the exclusion of other evidence is "not a generally accepted methodology"). Here, Dr. Furberg testified that reliable safety opinions must be based on a "totality of the evidence," which means that "you try to look at as much as possible." Furberg Dep. (Ex. T) at 124:21-125:6, 126:4-9. Bayer has shown that Dr. Furberg did not employ any scientifically reliable method in deciding what to review and certainly did not "try to look at as much as possible." Motion at 3-5; *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 563 (expert must follow own methodology).

---

[7] Plaintiffs' citation to *In re Seroquel Products Liability Litigation*, No. 6:06-md-1769, 2009 WL 3806436, at *4 (M.D. Fla. July 20, 2009), is unavailing. In *Seroquel*, general causation experts whose opinions had otherwise been ruled admissible also were allowed to discuss internal company documents provided by plaintiffs' counsel to the extent necessary to explain the bases of their "specific and otherwise permissible opinions." *Id.* at *1, 4. Thus, the *Seroquel* court never indicated, and certainly did not allow, experts to totally rely on research by counsel.

Plaintiffs' efforts to distinguish Bayer's case citations, Opp. at 10, also are unpersuasive. Dr. Furberg's failure to examine the medical literature is akin to the expert in *Rimbert* who never addressed literature contrary to her conclusions. *Rimbert*, 2009 WL 2208570, at *14. Similarly, his reliance on plaintiffs' counsel for medical literature is akin to the expert in *MTX* who attempted to base his opinions on information provided by a lawyer and the party that hired him. *MTX Commc'ns Corp. v. LDDS/WorldCom, Inc.*, 132 F. Supp. 2d 289, 290 (S.D.N.Y. 2001).

Plaintiffs finally suggest that Dr. Furberg did consider positive and negative associations in the literature. *See* Opp. at 9. *Contra* Motion at 6. Their argument, however, includes no citations to Dr. Furberg's report or deposition. *See* Opp. at 9. Counsel cannot "ask[] the Court to find [Dr. Furberg's] methodology reliable because of the information used in counsel's attempt to supplement and bolster [his] report." *Rimbert*, 2009 WL 2208570, at *17.

*Dr. Furberg cherry-picked data from the studies that he reviewed.* Bayer has shown that Dr. Furberg picked information from the few studies plaintiffs gave him that supported his conclusions and ignored information from the same studies that did not support his conclusions. Motion at 6-8. In response, plaintiffs fault Bayer for focusing on two studies, and ignoring the lesser studies listed in Dr. Furberg's report. Opp. at 10. But Bayer focused on these studies (Karkouti and BART) because Dr. Furberg testified that he primarily relied on "the major" studies. Furberg Dep. (Ex. T) at 124:21-125:6; *see also id.* at 206:9-12 (calling Karkouti a "high profile publication"), *id.* at 155:6-11 (favoring studies with large patient populations (such as BART)), *id.* at 225:18-226:2 (emphasizing that he can rely on BART because it was published in the New England Journal of Medicine).

Plaintiffs' counsel also offer their own analysis of both studies and attempt to explain why Dr. Furberg might have decided to disregard the data that did not support his opinion. Opp. at 11 (suggesting that a "methodologically sounds reason exists for Dr. Furberg to cite Karkouti only for its" negative conclusion); Opp. at 11-12 (same for BART). But Dr. Furberg never suggested that he employed the same reasoning. Counsel cannot fill in the gaps for Dr. Furberg. *In re Human Tissue Litig.*, 582 F. Supp. 2d at 667.

*Dr. Furberg did not consider, much less evaluate, criticisms of the studies he primarily relies on.* Bayer has shown that Dr. Furberg was unaware of, and certainly did not

12

address, criticisms of the studies that form the backbone of his opinion. Motion at 8-9. Significantly, he did not know that regulatory bodies met for the express purpose of discussing three of these studies. *Id.* at 9.[8] Plaintiffs claim that Dr. Furberg "considered criticisms of the various studies," Opp. at 13, but they cite ambiguous testimony which does not show that Dr. Furberg "considered" criticisms:

- *Mangano (2006).* Plaintiffs muster one sentence from Dr. Furberg's deposition in support of their claim that Dr. Furberg knew about the criticisms of the Mangano study. Opp. at 13 (citing Furberg Dep. (Ex. A) at 234:4-7 (noting that "[t]here were articles in the public press about that and some disagreements" concerning the September 2006 Advisory Committee Meeting)). A hazy recollection of some "articles in the public press" does not show that Dr. Furberg was aware of, or considered, any criticisms of the Mangano study.

- *Mangano (2007) and i3 Drug Safety Observational Studies.* Plaintiffs provide no support for their claim that Dr. Furberg was aware of criticisms of either the Mangano (2007) or i3 studies. Plaintiffs cite the same passage that they cited concerning Mangano (2006) to suggest that Dr. Furberg was aware of criticisms of the i3 study. Opp. at 13. That testimony, however, concerns events in 2006 and has nothing to do with the i3 study. *See* Furberg Dep. (Ex. A) at 233:17-234:7 (cited by plaintiffs in Opp. at 13).

---

[8] Plaintiffs suggest that the "inadequacies" of Dr. Furberg's methodology "go to the weight of [his] testimony, not its admissibility." Opp. at 12. However, the cases cited by plaintiffs leave to cross examination criticisms of how an expert applied an otherwise reliable scientific methodology. *E.g.*, *Quiet Tech. DC-8, Inc. v. Hurel-Dubious UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (holding that where an expert "misused a method that, in the abstract is reliable," the defendant's criticisms of the application of the method went to the weight of the evidence). Here, in contrast, Bayer is arguing that Dr. Furberg's opinion should be excluded because he did not employ a reliable scientific methodology. *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 355 (S.D.N.Y. 2005) ("[A]n expert opinion inadequately informed about the factual grounding of the subject it is called to address, bears none of the hallmarks of reliability necessary for the opinion to be admissible").

- *BART clinical trial.* Here, too, plaintiffs attempt show that Dr. Furberg was aware of criticisms by relying on one piece of inconsequential deposition testimony. Opp. at 13. Plaintiffs selectively quote from the following exchange:

> Q: Have you read the published BART study authored by Dr. Ferguson and others?
>
> A: Yes.
>
> Q: What other materials have you read about the BART study besides the published study?
>
> A: I think that was it. Wasn't it a – maybe a document –
>
> MR. RASMUSSEN: Don't look at me. I have to look at all of these to refresh my memory. I don't know.
>
> A: I think that Bayer had some objection to the analyses and submitted a document to the FDA. And attached at the end were people they consulted with, and I don't reference that here unfortunately but it's in my ring book.

Furberg Dep. (Ex. T) at 223:23-224:14. A document that Dr. Furberg could not remember, and which was not included in Dr. Furberg's report, cannot be used to show that Dr. Furberg looked at or considered criticisms of the BART trial. Indeed, soon after this exchange, Dr. Furberg commented that he would have "love[d] to see" an advisory panel's review of the BART study. Furberg Dep. (Ex. A) at 226:10-227:5.

Plaintiffs distort Bayer's argument that Dr. Furberg never addressed the FDA Advisory Committee's conclusion that the Mangano (2006), Mangano (2007), and i3 studies were not sufficiently reliable to change the agency's positive risk-benefit assessment concerning Trasylol. Motion at 11-12; Opp. at 15. Bayer did not argue that FDA's conclusion foreclosed Dr. Furberg's risk-benefit opinion. Rather, Bayer showed that Dr. Furberg's failure to engage the AdComm's analysis is simply another instance where Dr. Furberg failed to consider the totality of the evidence before reaching a conclusion. Motion at 11-12.

14

### B. Plaintiffs Have Failed to Carry Their Burden of Showing that Dr. Furberg Used a Scientifically Reliable Methodology in Concluding that Trasylol's Risks Outweigh Its Benefits.

Bayer has shown that Dr. Furberg cannot reliably opine about Trasylol's risk-benefit balance because he did not study the benefits, only partially studied the risks,[9] and never considered criticisms of the studies upon which he relies. Motion at 10-12.

Plaintiffs do not even address Dr. Furberg's failure to study Trasylol's benefits, which made it impossible for him to weigh its risks and benefits. *See* Opp. at 13-15. Instead, plaintiffs suggest that that Dr. Furberg *could* have weighed the risks and benefits of Trasylol in specific populations, pointing out that one study included in his report (Mangano (2006)) provided data on outcomes for different patient populations. Opp. at 14. But plaintiffs never suggest that Dr. Furberg actually did this weighing. *See id.*; *see also* Furberg Report (Ex. B) at 30-31 (not referring to population-specific risks or benefits when citing Mangano (2006)).

Further, the fact that Dr. Furberg is not "competent to practice medicine today," and has no expertise in cardiac surgery, nephrology, hematology, pharmacology, or the diagnosis of renal failure, means that he should not be allowed to opine about the risks and benefits of a blood-sparing medicine used in cardiac surgery. Motion at 2, 10; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001); *In re Diet Drugs Prods. Liab. Litig.*, MDL No. 1203, 2001 WL 454586, at *7, 20-21 (E.D. Pa. Feb. 1, 2001) (excluding efficacy opinions offered by physicians with no specialized knowledge of obesity).[10]

---

[9] Of course, if Dr. Furberg's opinion regarding the risks of Trasylol is excluded, *see supra* Part II.A., then Dr. Furberg's risk-benefit analysis must also be excluded.

[10] Plaintiffs' reliance on *Smith v. Wyeth-Ayerst Laboratories Co.*, 278 F. Supp. 2d 684, 701 (W.D.N.C. 2003), is misplaced. Opp. at 13-14. The expert in *Smith* was a biostatistician, licensed to practice medicine in the United States, who also "reviewed testimony from the FDA Advisory Committee hearings . . . as well as the majority of the relevant medical literature." *Id.* at 700-01.

**CONCLUSION**

For the foregoing reasons and those in Bayer's motion, Bayer respectfully requests that the Court exclude Dr. Furberg's proposed testimony.

February 11, 2010                            Respectfully submitted,

/s/ Barbara Bolton Litten
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail:  blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:  312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:  312-853-73036

16

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone: 412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation,
Bayer HealthCare Pharmaceuticals Inc.,
and Bayer Schering Pharma AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 11, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                 */s/Barbara Bolton Litten*
                                                 Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*