**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

**RESPONSES AND OBJECTIONS OF DEFENDANTS BAYER
HEALTHCARE PHARMACEUTICALS, INC., BAYER CORPORATION,
AND BAYER SCHERING PHARMA AG TO PLAINTIFFS' SECOND SET OF
INTERROGATORIES, FIFTH SET OF REQUESTS FOR PRODUCTION OF
DOCUMENTS, AND FIRST REQUESTS FOR ADMISSION**

Pursuant to Fed. R. Civ. P. 33(b), 34(b), and 36(a), Defendants Bayer HealthCare

Pharmaceuticals Inc. ("BHCP"), Bayer Corporation, and Bayer Schering Pharma AG

("BSPAG") ("Responding Defendants") submit the following responses and objections to

Plaintiffs' Second Set of Interrogatories ("Second Interrogatories"), Fifth Set of Requests For

Production ("Fifth RFPs"), and First Requests for Admission (collectively hereinafter

"Combined Discovery Requests"), served on July 21, 2009.

<u>**General Objections**</u>

1.        Responding Defendants object generally to plaintiffs' Second Interrogatories on

the grounds that plaintiffs served the interrogatories in violation of Fed. R. Civ. P. 33(a)(1).

Plaintiffs previously served their First Set of Interrogatories on Responding Defendants on

December 3, 2008.  Plaintiffs' First Set of Interrogatories itself exceeded the number of

permissible requests under Rule 33(a)(1) ("no more than 25 written interrogatories, including all

discrete subparts.")  Forty-six interrogatories, including discrete subparts, were included in the

First Set of Interrogatories.  Plaintiffs have propounded in their Second Interrogatories an

additional 120 requests including discrete subparts.  Additionally, plaintiffs' onerous and

unreasonable instructions and definitions further multiply the number of propounded

{J1318432.1}                                                    1



interrogatories, including discrete subparts, grossly beyond the permissible number of interrogatories permitted by the Rules.

2.      Responding Defendants object generally to plaintiffs' Fifth RFPs and the Requests for Production included in the Second Interrogatories and Requests for Admission as violating Case Management and Scheduling Order No. 1 ("CMO") entered on May 22, 2008. Pursuant Section VIII.C of the CMO, BHCP (or its predecessor, BPC) and BSPAG (or its predecessor, BHCAG) have produced or will produce the non-privileged, discoverable Trasylol®-related documents to plaintiffs described in sections VIII.C.1-9 of the CMO.  To date, BHCP (or BPC) and BSPAG (or BHCAG) have produced 1,178,311 documents constituting 19,786,651 pages.  Section VIII.D of the CMO provides that due to the broad scope  and extraordinarily voluminous nature of the document production detailed in section VIII.C. of the CMO, any further requests for production by plaintiffs were to be focused and limited.  Since the entry of the CMO, plaintiffs served their First RFPs on December 3, 2008, their Second RFPs on April 2, 2009, their Third RFPs on May 7, 2009, and their Fourth RFPs on June 16, 2009. Considered in the context of these prior Requests for Production, Responding Defendants object to plaintiffs' Fifth RFPs as violating section VIII.D of the CMO.

3.      Responding Defendants object generally to plaintiffs' Combined Discovery Requests on the grounds that the Combined Discovery Requests are overly broad, including as to the referenced time periods, unduly burdensome, oppressive and unreasonable, and seek information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  For example, plaintiffs' Combined Discovery Requests purportedly apply not only to the defendants in these proceedings, but also to "every company affiliated with each such company by common ownership or control."  Complying literally with

{J1318432.1}                                    2

the terms of plaintiffs' Combined Discovery Requests would impose an enormous, unreasonable burden upon Responding Defendants. BHCP, Bayer Corporation, and BSPAG object to plaintiffs' Combined Discovery Requests to the extent that they seek to require BHCP, Bayer Corporation, or BSPAG to respond on behalf of any other affiliated entity.

BHCP is the entity that conducts Bayer's Trasylol®-related business in the United States. From 1994 to 1995, Miles Inc. marketed Trasylol®, and otherwise conducted Bayer's Trasylol® business in the United States. From 1995 to January, 2003, Bayer Corporation's Pharmaceutical Division performed these functions. From 2003 to 2008, Bayer Pharmaceuticals Corporation ("BPC") conducted Bayer's Trasylol® business in the United States. Effective January 1, 2008, BPC was merged with and into BHCP, and BHCP has conducted Bayer's Trasylol® business in the United States since that time. Bayer Corporation has functioned as a holding company since 2003, and not as an entity operating Bayer's pharmaceutical business.

BSPAG, a German entity, also has operational responsibilities for Trasylol®. In 2003, Bayer HealthCare AG ("BHCAG") assumed operational responsibility for Bayer's pharmaceutical business from Bayer AG. On December 30, 2008, BHCAG was merged into BSPAG and BSPAG undertook operational responsibilities for Bayer's pharmaceuticals business at that time.

4.     Responding Defendants object generally to plaintiffs' Combined Discovery Requests to the extent plaintiffs seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or restriction upon discovery. In making these responses to plaintiffs' Combined Discovery Requests, Responding Defendants reserve all claims of privilege or other immunity.

5.      Responding Defendants object generally to each and any instruction, definition, and inquiry contained in plaintiffs' Combined Discovery Requests that is inconsistent with or purports to impose any requirement or obligation upon the Responding Defendants other than as set forth in the Federal Rules of Civil Procedure, any applicable local rules of court, and the CMO.

6.      Responding Defendants object generally to plaintiffs' Combined Discovery Requests to the extent that plaintiffs seek information in the public domain since such information is equally accessible to plaintiffs as to Responding Defendants.

7.      Responding Defendants object generally to plaintiffs' Discovery Requests to the extent that the description of the information requested therein is vague and ambiguous.

8.      In furnishing these responses and/or in producing any documents in response to these Combined Discovery Requests, Responding Defendants do not admit or concede the relevance, materiality, authenticity or admissibility in evidence of any request, information included in response thereto, or document produced in response thereto.  All objections to the use, at trial and otherwise, of any information provided and/or document produced in response to these Combined Discovery Requests are hereby expressly reserved.

9.      BHCP and/or BSPAG have designated or will designate as confidential certain of the documents which it has produced or will produce to plaintiffs.  All documents designated as confidential may be used only in accordance with the provision of the Protective Order regarding confidential documents and information produced in discovery as entered by the Court on June 24, 208 and amended on January 28, 2009.

10.     Whenever, in response to one of the Confidential Discovery Requests, BHCP and/or BSPAG agrees to produce documents, this does not represent that such documents exist,

but only that such documents will be produced if they exist, can be located with reasonable diligence, and are not otherwise protected from disclosure.

11.     Responding Defendants object to each request in these Combined Discovery Requests that seeks information that the Responding Defendants are not permitted to disclose pursuant to confidentiality obligations to third parties.

12.     Responding Defendants object to interrogatories and/or request for production that are conditioned upon particular responses to requests for admission on the grounds that such interrogatories and/or requests for production are unduly burdensome, oppressive and unreasonable, particularly in light of plaintiffs' violation of Fed. R. Civ. P. 33(a)(1) and section VIII.D of the CMO as noted in General Objections 1 and 2.

13.     Responding Defendants hereby incorporate the objections set forth above into each of the following responses to the Combined Discovery Requests.

<u>INTERROGATORIES</u>

**INTERROGATORY 1**:  With respect to the special access program (or limited use program), please state the following:

    A.    The number of requests Defendants have received for aprotinin through the program for each month since it was created;

    B.    The identity of each health care provider, including institutions such as hospitals, that requested aprotinin through the program, including the date of the request; and

    C.    The amount of aprotinin supplied by Defendants under the program since the initiation of the program.

**RESPONSE**:  Responding Defendants object to Interrogatory No. 1 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No. 1 as being vague and ambiguous in the use of the phrases "the special access program," "the program" and "amount of aprotinin".  Subject to and without waiving their objections, Responding Defendants state that BHCP has produced documents that post-date October 1, 2007 that refer or relate to the Trasylol limited access programs from the personal file materials of Dr. Claudia Schoenig-Diesing, the information coordinator for the Trasylol limited access programs.  These materials contain some of the requested information.  For example, several documents already produced to plaintiffs, including those of Dr. Schoenig-Diesing, identify the number of patients treated with Trasylol in the limited access programs as of various points in time, examples of which can be found at BAY07168468, BAY07252369, BAY07241539, BAY07462540, and BAY07234674.

**INTERROGATORY 2**:  Please identify documents relating to Study D92-048, also known as

the IMAGE trial, including but not limited to protocols, proposals, and drafts of protocols and

proposals.

Please note that any response to this Interrogatory by referring generally to documents already
produced is insufficient.  Plaintiffs are unable to do what Defendants are in a unique position to:
determine which protocols, proposals, and drafts of protocols and proposals relate to IMAGE.

    **RESPONSE**:   Responding Defendants object to Interrogatory No. 2 as being overly

broad, unduly burdensome, oppressive and unreasonable.  Subject to and without waiving their

objections, Responding Defendants state that BHCP (or BPC) has produced approximately

27,400 documents and BSPAG (or BHCAG) has produced approximately 3,100 documents that

refer or relate to study D92-048.  Of these produced documents, approximately 740 refer or

relate to protocols and/or amendments thereto, draft protocols, proposals, and/or draft proposals

relating to study D92-048, examples of which can be found at BAY06504197, BAY00856041,

BAY00000788, BAY00000804, BAY00000810, BAY01943797, BAY01940976,

BAY01940980, and BAY00746832.

**INTERROGATORY 3**:  Please state the laboratory parameters captured for all patients in the IMAGE trial that relate to kidney function, including but not limited to measurements relating to serum creatinine, blood urine nitrogen (BUN), creatinine clearance, or glomerural filtration rate (GFR).

**RESPONSE**:   Responding Defendants object to Interrogatory No. 3 as being overly broad, unduly burdensome, oppressive and unreasonable, and as being vague and ambiguous in the use of the phrase "laboratory parameters captured".  Subject to and without waiving their objections, Responding Defendants state that copies of the clinical study reports and the publication of the IMAGE trial, including study reports MMRR 1355 and MMRR-1355A, have been produced to plaintiffs, copies of which can be found at BAY02013226 (MMRR 1355), BAY02437714 (MMRR -355A), and BAY00838909 (publication), and the burden of deriving or ascertaining the requested information therefrom is substantially the same for plaintiffs as for Responding Defendants.

**INTERROGATORY 4**: Please identify which, if any, randomized controlled trials conducted by Defendants for aprotinin in CABG surgery captured information on mortality more than seven days after surgery.

    **RESPONSE**:   Responding Defendants object to Interrogatory No. 4 as being overly

broad, unduly burdensome, oppressive and unreasonable.  Subject to and without waiving their

objections, Responding Defendants state that the available reports of Responding Defendants'

Trasylol clinical studies have been produced to plaintiffs at BAY00512909-BAY00641889,

BAY00000001-BAY00331865, BAY05869621-BAY05872140, and the burden of deriving or

ascertaining the requested information therefrom is substantially the same for plaintiffs as for

Responding Defendants.

**INTERROGATORY 5**: Please identify which, if any, randomized controlled trials conducted by Defendants for aprotinin in CABG surgery that captured information on renal function more than seven days after surgery.

      **RESPONSE**: Responding Defendants object to Interrogatory No. 5 as being overly broad, unduly burdensome, oppressive and unreasonable.  Subject to and without waiving their objections, Responding Defendants state that the available reports of Responding Defendants' Trasylol clinical studies have been produced to plaintiffs at BAY00512909-BAY00641889, BAY00000001-BAY00331865, BAY05869621-BAY05872140, and the burden of deriving or ascertaining the requested information therefrom is substantially the same for plaintiffs as for Responding Defendants.

**INTERROGATORY 6**: Please identify any consultant or independent contractor [includes anyone who was not a full time employee of defendants] who were hired, retained or engaged in any way, by any of the defendants or their affiliated companies, to give advice, perform studies, prepare analyses, attend meetings or conference calls or in any way perform work related to aprotinin, after January 20, 2006, in the following areas:

A.   Review, analysis, critique of, advice regarding or any other work related to the article by Mangano *et al* published in the New England Journal of Medicine, entitled "The Risk Associated with Aprotinin in Cardiac Surgery;"

B.   Review, analysis, critique of, advice regarding or any other work related to the article by Karkouti *et al* published in the Journal *Transfusion* and titled "A propensity score case-control comparison of aprotinin and tranexamic acid in high-transfusion-risk cardiac surgery;"

C.   Review, analysis, critique of, advice regarding or any other work related to the article by Mangano *et al*, published in the Journal of the American Medical Association and entitled "Mortality Associated with Aprotinin During 5 Years Following Coronary Artery Bypass Graft Surgery;"

D.   Review, analysis, critique of, advice regarding or any other work occurring after September 14, 2006 [amended beginning date for this subsection only] related to the study by i3 Drug Safety which ultimately resulted in a report entitled "Final Report; risks of Renal Failure and Death following Use of Aprotinin or Aminocaproic acid during CABG Surgery;"

E.   Review, analysis, critique of, advice regarding or any other work related to the BART study;

F.   Review, analysis, advice regarding or any other work in preparation for The FDA Advisory Committee Meeting regarding aprotinin which occurred on September 21, 2006;

G.   Review, analysis, advice regarding or any other work which assisted in any way the creation of documents for submission to the FDA or slides for presentation at the meeting for The FDA Advisory Committee Meeting regarding aprotinin which occurred on September 21, 2006;

H.   Review, analysis, advice regarding or any other work in preparation for The FDA Advisory Committee Meeting regarding aprotinin which occurred on September 12, 2007;

I.   Review, analysis, advice regarding or any other work which assisted in any way the creation of documents for submission to the FDA or slides for presentation at the meeting for The FDA Advisory Committee Meeting regarding aprotinin which occurred on September 12, 2007;

J.      Review, analysis, advice regarding or any other work in preparation for any submissions to, correspondence with, teleconferences with or meetings with HealthCanada;

K.      Review, analysis, advice regarding or any other work in preparation for any submissions to, correspondence with, teleconferences with or meetings with the FDA after September 12, 2007 [amended beginning date for this subsection only];

L.      Review, analysis, advice regarding or any other work in preparation for any submissions to, correspondence with, teleconferences with or meetings with EMEA; and

M.      Review, analysis, advice regarding or any other work in preparation for any submissions to, correspondence with, teleconferences with or meetings with BfArM.

Please answer separately for each Defendant, or confirm that each answer applies equally to all - Defendants. Please note that the phrase "any consultant or independent contractor [includes anyone who was not a full time employee of Defendants] hired, retained or engaged in any way, by any of the defendants or their affiliated companies" includes but is not limited to individuals, partnerships, corporations, and other entities, and includes any type of work including scientific research, expert advice and public or media relations.

**RESPONSE:** Responding Defendants object to Interrogatory No. 6 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Responding Defendants also object to Interrogatory No. 6 as being vague and ambiguous in the use of the phrases "or in any way perform work related to aprotinin" and "any type of work". Subject to and without waiving their objections, Responding Defendants state that BHCP has produced numerous documents that identify consultants engaged by Responding Defendants after January 20, 2006 to assist with Trasylol-related matters, examples of which can be found at BAY07008582, BAY06122961, BAY02958883, BAY05697881, BAY06800676, BAY06914920, BAY05711934, BAY07080701, and BAY06777283, and the burden of deriving or ascertaining the requested information therefrom is substantially the same

for plaintiffs as for Responding Defendants.  By way of further response, BHCP and/or BSPAG

have produced or will produce available documents regarding some of these consultants

including, but not limited to, Ralph B. D'Agostino, Jr., George Despotis, Wulf Dietrich, Victor

Ferraris, Steven Hill, John Lemmer, Jerrold Levy, Robert Makuch, Daniel Meldrum, David

Royston, Linda Shore Lesserson, Peter K. Smith, Bruce Spiess, and Samy Suissa, as stated in

Responding Defendants' Responses and Objections to plaintiffs' First and Second Requests for

Production.

**INTERROGATORY 7**: For each individual or entity listed in response to Interrogatory No. 6, please state the amount of compensation of any type paid for any review, analysis, critique, advice or any other work performed. Please answer separately for each Defendant and each individual or entity.

      **RESPONSE**: Responding Defendants object to Interrogatory No. 7 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Responding Defendants also object to Interrogatory No. 7 as being vague and ambiguous in the use of the phrase "any other work performed." Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Interrogatory No. 6.

**INTERROGATORY 8**:  Please state the total amount of compensation paid to i3 Drug Safety for any work associated with a study that resulted in a report entitled "Final Report; Risks of Renal Failure and Death following Use of Aprotinin or Aminocaproic Acid during CABG Surgery."

**RESPONSE**:

To the extent BHCP's or BSPAG's accounts payable database includes records of payments to i3 Drug Safety for i3 Drug Safety's work on the study recorded by the reports at BAY01234332-BAY01234376 (i3 Drug Safety Preliminary Report, dated 9/13/2006), BAY05823455 (i3 Drug Safety Final Report, Part A, dated 8/7/2007), BAY06150459 (i3 Drug Safety Addendum to the Final Report, Part A, dated 8/31/2007), and BAY06567688 (i3 Drug Safety Final Report, Part B, dated 10/12/2007), such records will be produced to plaintiffs. To the extent plaintiffs seek additional information in response Interrogatory No. 8, Responding Defendants object to Interrogatory No. 8 as being overly broad, unduly burdensome, oppressive and unreasonable.

**INTERROGATORY 9**: For each year from 1997 through 2007, please state the price of aprotinin per dose in the United States, the European Union, and the British Commonwealth (including Canada). If there was no standard price throughout the European Union and the British Commonwealth, please state the price for each year in each of the following countries: Germany, France, Italy, Spain, The Netherlands, Belgium, Austria, The United Kingdom, Sweden, Norway, Canada, and Australia.

**RESPONSE**: Responding Defendants object to Interrogatory No. 9 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving their objection, Responding Defendants state that BHCP (or BPC) and/or BSPAG (or BHCAG) have produced approximately 1250 documents that refer or relate to the price of Trasylol, examples of which can be found BAY03237966, BAYCS01236459, BHCAG02971774, BHCAG02967257, BHCAG03093754, BAY04731856, BHCAG02967265, BHCAG03100705, BHCAG09552174, BAY01567115, BAY03225713, and BAY04985790, and the burden of deriving or ascertaining the requested information therefrom is substantially the same for plaintiffs as for Responding Defendants.

**INTERROGATORY 10**:  Please identify any study initiated, funded or requested by Defendants from 1994 through 2006 investigating the potential association between the following agents, used to reduce bleeding during cardiac surgery, and renal failure and/or in-hospital death:

      A.     Aprotinin vs. aminocaproic acid;

      B.     Aprotinin vs. tranexamic acid; and

      C.     Aprotinin vs. aminocaproic acid and tranexamic acid.

**RESPONSE**:  Responding Defendants object to Interrogatory No. 10 as being vague and ambiguous in the use of the phrase "requested by Defendants".  Subject to and without waiving their objections, Responding Defendants state that in 2006, BHCAG commissioned a retrospective, observational database study by i3 Drug Safety to analyze the effects of aprotinin, aminocaproic acid and tranexamic acid in patients undergoing CABG surgery with CPB.  Copies of the reports of this study have been produced at BAY01234332-BAY01234376 (i3 Drug Safety Preliminary Report, dated 9/13/2009), BAY05823455 (i3 Drug Safety Final Report, Part A, dated 8/7/2007), BAY06150459 (i3 Drug Safety Addendum to the Final Report, Part A, dated 8/31/2007), and BAY06567688 (i3 Drug Safety Final Report, Part B, dated 10/12/2007).

**INTERROGATORY 11**: Please identify any study initiated, funded or requested by Defendants from 1994 through 2006 investigating the potential association between the following agents, used to reduce bleeding during CABG surgery, and renal failure and/or in-hospital death:

      A.     Aprotinin vs. aminocaproic acid;

      B.     Aprotinin vs. tranexamic acid; and

      C.     Aprotinin vs. aminocaproic acid and tranexamic acid.

**RESPONSE**: Responding Defendants object to Interrogatory No. 11 as being vague and ambiguous in the use of the phrase "requested by Defendants". Subject to and without waiving their objections, Responding Defendants state that in 2006, BHCAG commissioned a retrospective, observational database study by i3 Drug Safety to analyze the effects of aprotinin, aminocaproic acid and tranexamic acid in patients undergoing CABG surgery with CPB. Copies of the reports of this study have been produced at BAY01234332-BAY01234376 (i3 Drug Safety Preliminary Report, dated 9/13/2009), BAY05823455 (i3 Drug Safety Final Report, Part A, dated 8/7/2007), BAY06150459 (i3 Drug Safety Addendum to the Final Report, Part A, dated 8/31/2007), and BAY06567688 (i3 Drug Safety Final Report, Part B, dated 10/12/2007).

**INTERROGATORY 12**: For each of the spontaneous adverse event reports enumerated below, please explain why the report was not included among the approximately 745 adverse event reports examined by Defendants in their 2006 adverse event analysis:

|     |                  |
|-----|------------------|
| A.  | 200512963GDS;    |
| B.  | 2199701373;      |
| C.  | 2199701725;      |
| D.  | 2199844104;      |
| E.  | 200311313GDS; and|
| F.  | 200411145GDS.    |

**RESPONSE**: Responding Defendants object to Interrogatory No. 12 as being vague and

ambiguous, including in the use of the phrase "among the approximately 745 adverse event

reports examined by the Defendants in their 2006 adverse event analysis."

**INTERROGATORY 13**:  For each of the spontaneous adverse event reports enumerated below, please identify whether each was sent to FDA (and if so, on what date) and whether each was included in Defendants' 2006 adverse event analysis:

| | |
|---|---|
| A. | 1199411691; |
| B. | 1199511453; |
| C. | 1199511551; |
| D. | 1199612851; |
| E. | 1199905441; |
| F. | 1199713148; |
| G. | 1199910039; |
| H. | 200000157BFR; |
| I. | 200410290BFR; and |
| J. | 200512963GDS. |

**RESPONSE**: Responding Defendants object to Interrogatory No. 13 as being vague and

ambiguous, including in the use of the phrase "Defendants' 2006 adverse event analysis."

Subject to and without waiving their objections, Responding Defendants state that the

spontaneous adverse event reports enumerated in Interrogatory No. 13 were submitted to the

FDA as follows:

A.   1199411691 - Submitted to FDA on August 23, 2006 in PSUR 11.0 (BAY02168498 at BAY02169357);

B.   1199511453 - Submitted to FDA on August 23, 2006 in PSUR 11.0 (BAY02168498 at BAY02169407);

C.   1199511551 - Submitted to FDA on August 23, 2006 in PSUR 11.0 (BAY02168498 at BAY02169409);

D.   1199612851 - Submitted to FDA on August 23, 2006 in PSUR 11.0 (BAY02168498 at BAY02169429);

E.   1199905441 - Submitted to FDA on March 1, 2000 in Trasylol 1999 Periodic Adverse Drug Experience Report  (BAY00228465 at BAY00228497);

F.   1199713148 – Submitted to FDA on November 1, 2001 in Bayer Response to FDA Letter for Postmarketing Commitment #3 (BAY00230154 at BAY00230452);

{J1318432.1}                                   20

G.    1199910039 - Submitted to FDA on November 1, 2001 in Bayer Response to FDA Letter for Postmarketing Commitment #3 (BAY00230154 at BAY00230569);

H.    200000157BFR - Submitted to FDA on November 1, 2001 in Bayer Response to FDA Letter for Postmarketing Commitment #3 (BAY00230154 at BAY00230580);

I.    200410290BFR - Submitted to FDA on August 23, 2006 in PSUR 11.0 (BAY02168498 at BAY02170192); and

J.    200512963GDS - Submitted to FDA on August 23, 2006 in PSUR 11.0 (BAY02168498 at BAY02168744).

**INTERROGATORY 14**:  To the extent you contend an adverse event report listed in Interrogatory No. 13 was communicated to FDA and/or included in your 2006 adverse event analysis, please identify by Bates range documents supporting your contention.

**RESPONSE**: Responding Defendants object to Interrogatory No. 14 as being vague and ambiguous, including in the use of the phrase "your 2006 adverse event analysis" Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Interrogatory No. 13.

**INTERROGATORY 15**:  With respect to data from Bayer's pool of placebo-controlled studies available as of December 15, 2006, with the high-dose aprotinin group consisting of 2,047 patients and the placebo group consisting of 1,957, please indicate:

    A.    When the last study was completed whose subjects were included in the 2,047 patient aprotinin group or the 1,957 patient placebo group;

    B.    When (the earliest date) Defendants had complete data on safety for the 2,047 patient aprotinin group or the 1,957 patient placebo group.

    C.    When (the earliest date) Defendants had complete data on efficacy for the 2,047 patient aprotinin group or the 1,957 patient placebo group.

    D.    When (the earliest date) Defendants had complete data on adverse events for the 2,047 patient aprotinin group or the 1,957 patient placebo group.

    E.    When (the earliest date) Defendants had raw data on safety for the 2,047 patient aprotinin group or the 1,957 patient placebo group.

    F.    When (the earliest date) Defendants had raw data on efficacy for the 2,047 patient aprotinin group or the 1,957 patient placebo group.

    G.    When (the earliest date) Defendants had raw data on adverse events for the 2,047 patient aprotinin group or the 1,957 patient placebo group.

**RESPONSE**:  Responding Defendants object to Interrogatory No. 15 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No. 15 as being vague and ambiguous in the use of the phrases "complete data" and "raw data".  Subject to and without waiving their objections, Responding Defendants state that the full-dose aprotinin and placebo groups referred to in Interrogatory No. 15 relate to the serum creatinine data analysis undertaken as part of Bayer's analysis in 2006 of the randomized, double-blind, placebo-controlled clinical trials conducted by Bayer and which involved the administration of full-dose aprotinin to patients undergoing CABG surgery.  The studies germane to the serum creatinine analysis are identified in the Integrated Summary of Safety provided by Bayer to the FDA on July 28, 2006

(BAY02184429). Reports of the clinical trials germane to Bayer's safety analysis reported in its

July, 2006 Integrated Summary of Safety have been produced to plaintiffs at: BAY00608779 -

BAY00609040 (ISRN#406), BAY00052894 - BAY00054393 (ISRN#407), BAY00609041 -

BAY00609278 (ISRN#409), BAY00611461 - BAY00611821 (ISRN#410), BAY00607783 -

BAY00608115 (ISRN#412), BAY00052894 - BAY00054393 (ISRN#413), BAY00610724 -

BAY00611460 (ISRN#414), BAY00631927 - BAY00632249 (ISRN#415), BAY00011135 -

BAY00024549 (ISRN#418), BAY00073700 - BAY00076469 (ISRN#420), BAY00609792 -

BAY00610226 (ISRN#422), BAY00069404 - BAY00072096 (ISRN#423), BAY00587935 -

BAY00588333 (ISRN#427), BAY00637176 - BAY00637476 (ISRN#428), BAY00633929 -

BAY00634334 (ISRN#431), BAY00634335 - BAY00635012 (ISRN#432), BAY00581176 -

BAY00582443 (ISRN#434), BAY00615183 - BAY00615590 (ISRN#435), BAY00614033 -

BAY00614726, BAY00614727 - BAY00614736 (ISRN#438), BAY00577305 - BAY00578305

(ISRN#439), BAY00579071 - BAY00580545 (ISRN#440), BAY00576465 - BAY00576883

(ISRN#441), BAY00579071 - BAY00580545 (ISRN#445), BAY00619635 - BAY00622586

(ISRN#447), BAY00615591 - BAY00619634 (ISRN#448), BAY00009999 - BAY00010181

(ISRN#452), BAY00574772 - BAY00575349 (ISRN#453), BAY00188594 - BAY00189212

(ISRN#457), BAY00583749 - BAY00584656 (ISRN#461), BAY00584657 - BAY00585785

(ISRN#462), BAY00582966 - BAY00583748 (ISRN#463), BAY00598827 - BAY00600264,

BAY00600265 - BAY00601408, BAY00601409 - BAY00601414, BAY00601415 -

BAY00601418 (ISRN#465), BAY00002156 - BAY00004159, BAY00004160 - BAY00006160,

BAY00006161 - BAY00007609, BAY00007610 - BAY00009532, BAY00189658 -

BAY00189667 (ISRN#466), BAY00569634 - BAY00569863 (ISRN#469), BAY00208136 -

BAY00212135, BAY00212136 - BAY00216135, BAY00216136 - BAY00220135,

BAY00220136 - BAY00224626 (ISRN#471), BAY00190499 - BAY00191764, BAY00038365 - BAY00041116 (ISRN#472), BAY00593702 - BAY00594148 (ISRN#478), BAY00589733 - BAY00591519 (ISRN#485), BAY00597975 - BAY00597985, BAY00597986 - BAY00598307, BAY00598308 - BAY00598425, BAY00598426 - BAY00598429 (ISRN#486), BAY00036431 - BAY00038364 (ISRN#489), BAY00594512 - BAY00594520, BAY00594521 - BAY00594953, BAY00594954 - BAY00595361, BAY00595362 - BAY00595365, BAY00595366 - BAY00595369 (ISRN#490), BAY00043918 - BAY00044401 (ISRN#1477), BAY00636067 - BAY00636691 (ISRN#9967), BAY00612676 - BAY00613176 (ISRN#9969), BAY00601419 - BAY00601440, BAY00601441 - BAY00601756, BAY00601757 - BAY00602601, BAY00602602 - BAY00602605, BAY00602606 - BAY00602609 (ISRN#200046), and the burden of deriving or ascertaining study completion dates from these reports is substantially the same for plaintiffs as for Responding Defendants.

**INTERROGATORY 16**:  Please state the total number of patients in what was described as "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery" which was used to give additional safety data to the FDA in 2006 and which showed a statistically significant increase in serum creatinine in aprotinin patients.  Please also state for "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery", the following:

A.   When the last study was completed whose subjects were included in "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery"

B.   When (the earliest date) Defendants had complete data on safety for "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery"

C.   When (the earliest date) Defendants had complete data on efficacy for "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery"

D.   When (the earliest date) Defendants had complete data on adverse events for "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery"

E.   When (the earliest date) Defendants had raw data on safety for "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery"

F.   When (the earliest date) Defendants had raw data on efficacy for "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery"

G.   When (the earliest date) Defendants had raw data on adverse events for "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery"

**RESPONSE**:  Responding Defendants object to Interrogatory No. 16 as being overly

broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is

neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of

admissible evidence.  Responding Defendants also object to Interrogatory No. 16 as being vague

and ambiguous in the use of the phrases "total number of patients," "complete data," and "raw

data".  Subject to and without waiving their objections, Responding Defendants incorporate

herein by reference their response to the immediately preceding Interrogatory No. 15. The information requested in Interrogatory No. 16 is contained in the documents referenced in response to Interrogatory No. 15, and the burden of deriving or ascertaining the requested information therefrom is substantially the same for plaintiffs as for Responding Defendants.

**INTERROGATORY 17**: Please identify each serious adverse event report, if any, received by Defendants regarding aprotinin which relates to renal function (including but not limited to increases in serum creatinine, renal failure, acute renal failure, renal dysfunction, and the need for dialysis) and was not timely reported to FDA.

    **RESPONSE**: Responding Defendants object to Interrogatory No. 17 as being overly broad, unduly burdensome, oppressive and unreasonable. Responding Defendants also object to Interrogatory No. 17 as being vague and ambiguous, including in the use of the phrases "relates to renal function" and "serious adverse event report," as defined in plaintiffs' Definition No. 10. By their Definition No. 10, plaintiffs define "serious adverse event" as including ("also refer[ring]") "serious adverse drug experience" pursuant to 21 C.F.R. § 314.80, but plaintiffs fail to specify what other adverse events fall within their definition of "serious." Responding Defendants also object to Interrogatory No. 17 as calling for a legal conclusion. Subject to and without waiving their objections, Responding Defendants state that information responsive to this request is contained in the NDA Regulatory Affairs Files that have been produced to plaintiffs at BAY00111239-BAY00331865, and the burden of deriving or ascertaining the requested information therefrom is substantially the same for plaintiffs as for Responding Defendants. Responding Defendants incorporate their objection to plaintiffs' Definition No. 10 for "serious adverse event" into their responses to each and every request in plaintiffs' Second Interrogatories, Fifth RFPs and/or First Requests for Admission that contains the term "serious adverse event".

**INTERROGATORY 18**:  Please identify each serious adverse event report, if any, received by Defendants prior to February 1, 2006 regarding aprotinin which relates to renal function (including but not limited to increases in serum creatinine, renal failure, acute renal failure, renal dysfunction, and the need for dialysis) and was not reported to FDA as of February 1, 2006.

    **RESPONSE**:  Responding Defendants object to Interrogatory No. 18 as being overly broad, unduly burdensome, oppressive and unreasonable.  Responding Defendants also object to Interrogatory No. 18 as being vague and ambiguous, including in the use of the phrases "relates to renal function" and "serious adverse event report". Responding Defendants also object to Interrogatory No. 18 as calling for a legal conclusion.  Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Interrogatory No. 17.

**INTERROGATORY 19**:  Please identify each serious adverse event report, if any, received by Defendants prior to February 1, 2006 regarding aprotinin which relates to renal function (including but not limited to increases in serum creatinine, renal failure, acute renal failure, renal dysfunction, and the need for dialysis), but were not reported to FDA as related to renal function until after February 1, 2006.

**RESPONSE**:  Responding Defendants object to Interrogatory No. 19 as being overly broad, unduly burdensome, oppressive and unreasonable.  Responding Defendants also object to Interrogatory No. 19 as being vague and ambiguous, including in the use of the phrases "relates to renal function," "but were not reported to FDA as related to renal function until after February 1, 2006," and "serious adverse event report".  Responding Defendants also object to Interrogatory No. 19 as calling for a legal conclusion.  Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Interrogatory No. 17.

**INTERROGATORY 20**:  Please state the total amount of the financial assistance provided by Defendants to the following websites identified in your prior interrogatory responses (dated February 17, 2009):

        A.     Medscape's Surgical Blood Management Resource Center;

        B.     Society for the Advancement of Blood Management (SABM); and

        C.     Network for the Advancement of Transfusion Alternatives (NATA).

**RESPONSE**:  Responding Defendants object to Interrogatory No. 20 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

**INTERROGATORY 21**:  Please explain the relationship, if any, between Defendants and the following:

      A.      Medscape's Surgical Blood Management Resource Center;

      B.      Society for the Advancement of Blood Management (SABM); and

      C.      Network for the Advancement of Transfusion Alternatives (NATA).

**RESPONSE:**   Responding Defendants object to Interrogatory No. 21 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No. 21 as being vague and ambiguous in the use of the phrase "explain the relationship".

**INTERROGATORY 22**:  Please identify persons, including name and title, who participated or assisted in answering these Interrogatories.

      **RESPONSE**:  Responding Defendants object to Interrogatory No. 22 as seeking

information that is neither relevant to any issue in this litigation nor reasonably calculated to lead

to the discovery of admissible evidence.  Subject to and without waiving their objections,

Responding Defendants state that counsel for the Responding Defendants prepared the responses

to the Second Interrogatories.

**INTERROGATORY 23**:  Please identify persons, including name and title, that participated or assisted in answering these Requests for Production.

　　**RESPONSE**:  Responding Defendants object to Interrogatory No. 23 as seeking

information that is neither relevant to any issue in this litigation nor reasonably calculated to lead

to the discovery of admissible evidence.  Subject to and without waiving their objections,

Responding Defendants state that counsel for the Responding Defendants prepared the responses

to the Fifth RFPs.

**INTERROGATORY 24**:  Please identify persons, including name and title, that participated or assisted in answering these Requests for Admissions.

     **RESPONSE**:   Responding Defendants object to Interrogatory No. 24 as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving their objections, Responding Defendants state that counsel for the Responding Defendants prepared the responses to the First Requests for Admissions.

**INTERROGATORY 25**: Please identify any "vendor", as that term is used in various Trasylol marketing plans and budgets, (see for example document copied below Bates page number BAY04991318) retained, hired, contracted with or consulted with regarding Trasylol from 1993 through 2007.

| Vendor Expenses Exceed those of Internal Support | | |
|---|---|---|
| Scientific Editor, Consultant, and Vendor Cost Comparisons – Yearly Productivity and Expenses | | |
| | Consultant | Vendor | Bayer Scientific Editor |
| 14 Manuscripts | $140,000 | $350,000 | Salary + |
| 2 Review Articles | $30,000 | $60,000 | Benefits + |
| 3 Slide Kits (30 slides each) | $9,000 | $90,000 | Supplies |
| 15 Posters | $22,500 | $127,500 | |
| 100 Hours of Editing | $12,500 | $20,000 | |
| **TOTAL** | **$214,000** | **$647,500** | **$114,888** |
| *DOES NOT INCLUDE STRATEGIC INPUT & EVALUATION | | | |
| *QUALITY suffers at the hands of external vendors (ie, rewrites, revisions often required) | | | |

**RESPONSE**:  Responding Defendants object to Interrogatory No. 25 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No. 25 as being vague and ambiguous in the reference to unspecified "Trasylol marketing plans and budgets".

**INTERROGATORY 26:** In several deposition and documents one or more of the Bayer defendants have claimed that there are over 10,000 published articles regarding aprotinin. Two examples are given below. With respect to this claim please describe:

1.    The method by which this number was determined. If tare search was done on a database similar to Medline, please state the exact parameters of the search used to support this claim.

2.    Please describe the nature of the citations. For example, does the number include only full articles published in peer review journals,? Does the number include abstracts and articles.

3.    Of the 11,000 plus claims citations, how many were published after 1985?

4.    Of the 11,000 plus claims citations, how many were published after 1990?

5.    Of the 11,000 plus claims citations, how many were published after 2000?

6.    Of the citations published after 1985, how many were published in peer review scientific journals

7.    Of the citations published after 1990, how many were published in peer review scientific journals

8.    Of the citations published after 2000, how many were published in peer review scientific journals

9.    Of the citations published after 1985, how many citations relate to the study of aprotinin on human subjects

10.   Of the citations published after 1990, how many citations relate to the study of aprotinin on human subjects

11.   Of the citations published after 2000, how many citations relate to the study of aprotinin on human subjects.

**From BAY04991313**

## Managing & Using the Science of Trasylol

\*     Citation Numbers
- Pharmline Citations Total -          11042
- Pharmline Citations 2004 -           119
- Pharmline Citations 2003 -           146
- Completed Sci Comm Trasylol Projects    254
      (Manuscripts, Abstracts, Supplements, Slide Kits,
         Newsletters, Blood Updates, Training...June 98-present)

From page 81 of Jennifer Maurer deposition

|    | |
|----|--|
| 7  | Q. Okay. So see if you can think of any others that relate to renal? |
| 8  | A. There was the study out of |
| 9  | the Canadian group from -- from their |
| 10 | observational analysis that was published |
| 11 | in Transfusion at about the time that the |
| 12 | Mangano study was published. |
| 13 | Q. Anything else? |
| 14 | A. I'm sure there's -- there's |
| 15 | over 10,000 articles and that's not |
| 16 | counting abstracts on the product. I'm |
| 17 | sure there's others. There certainly was |
| 18 | a very much increased exercise of |
| 19 | practitioners doing their own |
| 20 | observational studies in the wake of the |
| 21 | Mangano paper, and looking at renal |
| 22 | function or, you know, global safety |
| 23 | endpoints, et cetera. And those were |
| 24 | many that occurred in the months after -- |

0082
1    the months and the year after the Mangano
2    article was initially published.

**RESPONSE**: Responding Defendants object to Interrogatory No. 26 -- which seeks to

impose upon Responding Defendants the obligation to review more than 10,000 publications - as

being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking

information that is neither relevant to any issue in this litigation nor reasonably calculated to lead

to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No.

26 as being vague and ambiguous in the reference to unspecified "deposition and documents,"

and in the use of the phrases "claimed," "claim," and "claims citations".

**INTERROGATORY 27**:  Has any of the defendants or their subsidiaries or predecessors ever hired, retained, contracted with or consulted with a physician licensed to practice medicine and certified as a specialist in nephrology? If so please identify any such physician and state for each:

    1.     When first hired?

    2.     The period of time the physician had any relationship with any of the defendants, their subsidiaries or their predecessors

    3.     The purpose for which defendants, their subsidiaries or predecessors established a relationship

    4.     Whether the physician participated in any studies, research or other scientific or medical work initiated, funded (full or partial), requested or participated in by Defendants, their subsidiaries or their predecessors

        **REQUEST FOR PRODUCTION**:  Please identify and produce any documents associated with such physicians in answer to this interrogatory.

**RESPONSE**:  Responding Defendants object to Interrogatory No. 27 and the associated Request for Production as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No. 27 as being vague and ambiguous in the use of the phrase "requested or participated in".

**INTERROGATORY 28**:  Has any of the defendants or their subsidiaries or predecessors ever hired, retained, contracted with or consulted with a physician licensed to practice medicine and certified as a specialist in nephrology for the purpose of reviewing, studying, investigating, or other work related to the effects of Trasylol on the kidneys?  If so please identify any such physician and state for each:

1. When first hired?

2. The period of time the physician had any relationship with any of the defendants, their subsidiaries or their predecessors

3. The purpose for which defendants, their subsidiaries or predecessors established a relationship

4. Whether the physician participated in any studies, research or other scientific or medical work initiated, funded (full or partial), requested or participated in by Defendants, their subsidiaries or their predecessors

**REQUEST FOR PRODUCTION**:  Please identify and produce any documents associated with such physicians in answer to this interrogatory.

**RESPONSE**:  Responding Defendants object to Interrogatory No. 28 and the associated Request for Production as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No. 28 as being vague and ambiguous in the use of the phrase "requested or participated in".

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION 1**:  Please produce a copy of the native or raw data which comprises Defendants' Global Clinical Trials Database.  The information requested has been described by Defendants' as "Bayer's global pool of placebo-controlled studies in patients undergoing coronary artery bypass graft (CABG) surgery." (See BHCAG03412117).

**RESPONSE**:  Responding Defendants object to the first sentence of Request for Production No. 1 – which is not limited to Trasylol data - as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No. 1 as being vague and ambiguous in the use of the phrase "native or raw data".  Subject to and without waiving its objections, BSPAG will produce the portion of its Global Integrated Analysis Database related to Trasylol placebo-controlled studies in patients undergoing CABG surgery.

**REQUEST FOR PRODUCTION 2**:  Please produce a copy of the native or raw data which comprises the basis for the Defendants' submission of "updated safety and efficacy information" to FDA and which comprises the basis for the Defendants' statements to FDA regarding "the sponsor's updated analyses of safety and efficacy findings from the controlled clinical trial experience." (See FDA Advisory Committee briefing document, Aug. 21, 2006, at pp. 33-34)

**RESPONSE**:   Responding Defendants object to Interrogatory No. 2 as being vague and ambiguous in the use of the phrase "native or raw data".  Subject to and without waiving their objections, Responding Defendants incorporate by reference their response to Request for Production No 1.

**REQUEST FOR PRODUCTION 3**:  Please produce a copy of page 17 of the "Aprotinin Safety Summary." (See BAY00733441 — BAY00733521, especially pages BAY00733459 - BAY00733460).  Please note that the pagination (in the top right-hand corner of document) goes from page 16 (BAY00733459) to page 18 (BAY00733460).

    **RESPONSE**:  Responding Defendants state that document BAY00733441-

BAY00733521 appears to be a draft of the Aprotinin Safety Summary which does not contain a

page numbered 17.  A final version of the Aprotinin U.S. Safety Summary has been produced to

plaintiffs at BAY01777100, and page number 17 is contained within BAY01777121-

BAY01777123.

**REQUEST FOR PRODUCTION 4**:  Please produce the cellular telephone records, including but not limited to, call logs, text messages, email, voice messages, documents or other forms of written communication received by or sent to cell phones used by the following individuals for the time period of January 1, 2005 through December 31, 2008 :

      A.      Dr. Kemal Malik;
      B.      Dr. Ernst Weidmann;
      C.      Dr. Kuno Sprenger;
      D.      Dr. Michael Scheeren; [sic]
      E.      Dr. Michael Rozycki; and
      F.      Dr. Gunnar Reimann.

**RESPONSE**:  Responding Defendants object to Request for Production No. 4 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Request for Production No. 4 as being vague and ambiguous in the use of the phrase "other forms of written communication".

**REQUEST FOR PRODUCTION 5**: Please produce all documents related to the U.S. Department of Justice (DOJ) investigation of Bayer pertaining to aprotinin, including but not limited to documents reflecting any interview or other communication between DOJ and Dr. Ernst Weidmann or any other employee(s) of Defendants. This request includes, but is not limited to, emails, memorandums, letters or other forms of written communication. This request also includes any and all documents, emails, memorandum letters or other forms of communication regarding interviews held between the United States Department of Justice and any executive, employ or agent from Bayer or Bayer AG, including Mr. Weidmann.

  **RESPONSE**:  Responding Defendants object to Request for Production No. 5 as being

overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that

is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery

of admissible evidence.  Responding Defendants also object to Request for Production No. 5 as

being vague and ambiguous in the use of the phrase "other forms of written communication" and

to the extent that plaintiffs seek information protected from disclosure by the attorney-client

privilege or the attorney work product doctrine.  Subject to and without waiving its objections,

BHCP will produce correspondence between the DOJ and Responding Defendants relative to the

Trasylol investigation, and the documents produced to the DOJ by BHCP and BSPAG, the vast

majority of which already have been produced to plaintiffs.

**REQUEST FOR PRODUCTION 6**:  Please produce documents reflecting communications
from January 1, 1993 to present between Defendants and World Class International, also known
as WCI, related to:

> A.      Drug safety; or
> B.      Aprotinin.

**RESPONSE:**   Responding Defendants object to Request for Production No. 6 – which is

not limited to Trasylol-related documents - as being overly broad, unduly burdensome,

oppressive and unreasonable, and as seeking information that is neither relevant to any issue in

this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Subject

to and without waiving their objections, Responding Defendants state that BHCP (or BPC)

and/or BSPAG (or BHCAG) have produced approximately 240 documents that refer or relate to

World Class International, examples of which can be found at BHCAG03746796,

BHCAG03748071, BHCAG00988572, BHCAG01029038, and BAY03494382.

**REQUEST FOR PRODUCTION 7**:  Please produce documents reflecting communications from January 1, 1993 to present between Defendants and Kekst and Company related to aprotinin.

      **RESPONSE**:  Responding Defendants object to Request for Production No. 7 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving their objections, Responding Defendants state that BHCP (or BPC) and/or BSPAG (or BHCAG) have produced approximately 2150 documents that refer or relate to Kekst and Company, examples of which can be found at BAY06757016, BAY06765728, BAY06460712, BAY06788080, and BAY06763096.

**REQUEST FOR PRODUCTION 8**:  Please produce documents reflecting communications from January I, 1993 to present between Defendants and Interactive Communications related to aprotinin.

RESPONSE:   Responding Defendants object to Request for Production No. 8 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving their objections, Responding Defendants state that BHCP (or BPC) and/or BSPAG (or BHCAG) have produced approximately 9500 documents that refer or relate to Interactive Communications, examples of which can be found at BAY03756084, BAY02045579, BAY03016452, BAY03016489, and BAY04848645.

**REQUEST FOR PRODUCTION 9**:  Please produce any and all documents that refer or relate to the BART study. This request includes, but is not limited to, emails, memorandums, letters or other forms of written communication

**RESPONSE**:  Responding Defendants object to Request for Production No. 9 as being overly broad, unduly burdensome, oppressive and unreasonable.  Responding Defendants also object to Request for Production No. 9 as being vague and ambiguous in the use of the phrase "other forms of written communication" and as being duplicative of prior discovery requests. Subject to and without waiving their objections, Responding Defendants state that, in response to Requests for Production Nos. 4, and 8-10 in plaintiffs' Third Request for Production to Defendants, BHCP and/or BSPAG have produced BART-related: (i) FDA contact reports post-dating February 26, 2007; (ii) Health Canada contact reports post-dating October 1, 2007; and, (iii) personal file materials post-dating October 1, 2007 from David Brueckner, Pamela Cyrus, Meredith Fischer, Margaret Foley, and Allen Heller.  By way of further response, Responding Defendants state that BHCP (or BPC) and/or BSPAG (or BHCAG) have also produced approximately 9800 documents pre-dating October 1, 2007 that refer or relate to the BART study.

**REQUEST FOR PRODUCTION 10**:  Please produce any and all documents that refer or relate to Alfredo Pequito. This request includes, but is not limited to, emails, memorandums, letters or other forms of written communication, including his custodial file.

RESPONSE:  Responding Defendants object to Request for Production No. 10 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Request for Production No. 10 as being vague and ambiguous in the use of the phrase "other forms of written communication".

**REQUEST FOR PRODUCTION 11**:  Please produce any and all documents that refer or relate to any type of investigation, sanction or reprimand issued or conducted by any domestic or foreign governmental or regulatory agency.

     **RESPONSE:**  Responding Defendants object to Request for Production No. 11 – which is unlimited in temporal and geographic scope and which is not limited to Trasylol-related matters - as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Request for Production No. 11 as being vague and ambiguous in the use of the phrases "any type of investigation," and "any domestic or foreign governmental or regulatory agency."  By way of further response, Responding Defendants incorporate herein by reference their response to Request for Production No. 5.

**REQUEST FOR PRODUCTION NO. 12**: Please provide all powerpoint slides used in preparation for or any meeting with Health Canada regarding BART including but not limited to any slides referred to in the document that begins with BAY0639047

      **RESPONSE:** Responding Defendants object to Request for Production No. 12 as being vague and ambiguous in the use of the phrase "used in preparation for or any meeting with Health Canada regarding BART". Subject to and without waiving their objections, Responding Defendants state that, in the BART-related document production referenced above in response to Request for Production No. 9, BHCP and/or BSPAG have produced approximately 650 powerpoint slides, examples of which can be found at BHCAG07082463, BAY07061748, BAY07005725, BAY07149833, and BAY06858858. By way of further response, Responding Defendants state that they are unable to identify any document that begins with or includes document number BAY0639047.

**REQUEST FOR PRODUCTION NO. 13**: Please provide all custodial files for Timothy Daniels.

    **RESPONSE:**   Responding Defendants object to Request for Production No. 13 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving their objections, Responding Defendants state that BHCP will produce the discoverable, Trasylol-related personal file materials of Timothy Daniels, if any.

**REQUEST FOR PRODUCTION NO. 14**:  Please provide all custodial files for James Peterson.

    **RESPONSE**:   Responding Defendants object to Request for Production No. 14 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving their objections, Responding Defendants state that BHCP will produce the discoverable, Trasylol-related personal file materials of James Peterson, if any.

**REQUEST FOR PRODUCTION NO. 15**:  Please provide all raw data for the IMAGE Study also known as study 048

RESPONSE:  Responding Defendants object to Request for Production No. 15 as being overly broad, unduly burdensome, oppressive and unreasonable.  Responding Defendants also object to Request for Production No. 15 as being vague and ambiguous in the use of the phrase "raw data".  Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Request for Production No. 1.

## REQUESTS FOR ADMISSIONS

### (with follow-up Requests for Production)

**REQUEST FOR ADMISSION 1:** Exhibit "A" contains a Microsoft Excel spreadsheet with the years listed in the first column, from 1994 through 2005. The second column is the number of serious adverse event reports received by Defendants regarding aprotinin. Column C is the total number of all serious adverse events relating to renal function received by the Defendants relating to aprotinin, and Column D is the percentage of renal events, as compared to total events, for each year. Please admit or deny each of the following for each year:

A.   The total of all serious adverse events related to aprotinin in column B is accurate;

B.   The number of renal serious adverse events related to aprotinin in Column C is accurate; and

C.   The percentage of renal adverse events as compared to total adverse events in Column D is accurate.

**RESPONSE:** Responding Defendants object to Request for Admission No. 1 as being overly broad, unduly burdensome, oppressive and unreasonable. Responding Defendants also object to Request for Admission No. 1 as being vague and ambiguous, including in the use of the phrase "serious adverse event reports," "relating to renal function," and in the conflicting description of the data in the second and third columns in Exhibit A. Subject to and without waiving their objections, Responding Defendants state that they cannot admit or deny Request for Admission No. 1, including subsections A-C, because Request for Admission No. 1 requests Responding Defendants to validate the data and calculations reflected in plaintiffs' Exhibit "A" and Responding Defendants cannot ascertain the accuracy of the data provided in Exhibit "A," or the calculations derived therefrom, because plaintiffs have failed to identify the sources on which they relied to obtain this data.

**REQUEST FOR ADMISSION 2**:  Please admit or deny that from 1994 through 1999, there were 38 serious adverse event reports for aprotinin related to renal function out of a total of 283 serious adverse events for aprotinin.

**RESPONSE**:  Responding Defendants object to Request for Admission No. 2 as being overly broad, unduly burdensome, oppressive and unreasonable and being neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence in its failure to focus only upon adverse event reports received by the Responding Defendants. Responding Defendants also object to Request for Admission No. 2 as being vague and ambiguous, including in the use of the phrases "serious adverse event reports," and "related to renal function."  Subject to and without waiving their objections, Responding Defendants state that, to the extent that Request for Admission No. 2 is based upon Exhibit "A" referred to in Request for Admission No. 1, they cannot admit or deny Request for Admission No. 2 because Request for Admission No. 2 requests Responding Defendants to validate the data and calculations reflected in plaintiffs' Exhibit "A" and Responding Defendants cannot ascertain the accuracy of the data provided in Exhibit "A," or the calculations derived therefrom, because plaintiffs have failed to identify the sources on which they relied to obtain this data.

**INTERROGATORY 24**:  If your answer to Request for Admission No. 2 was anything other than "ADMIT," please state what you contend is the correct number of serious adverse event reports for aprotinin related to renal function, as well as the total number of serious adverse events for aprotinin for the time period of 1994 through 1999.

**RESPONSE**:  Responding Defendants object to Interrogatory No. 24 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to

Interrogatory No. 24 as being vague and ambiguous, including in the use of the phrases

"serious adverse event reports," and "related to renal function."

**REQUEST FOR ADMISSION 3**: Please admit or deny that from 1994 through 1999, serious adverse events related to aprotinin and involving renal function were 13.4% of all serious adverse events for aprotinin.

**RESPONSE:** Responding Defendants object to Request for Admission No. 3 as being overly broad, unduly burdensome, oppressive and unreasonable and being neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence in its failure to focus only upon adverse event reports received by the Responding Defendants. Responding Defendants also object to Request for Admission No. 3 as being vague and ambiguous, including in the use of the phrases "serious adverse event," and "involving renal function". Subject to and without waiving their objections, Responding Defendants state that, to the extent that Request for Admission No. 2 is based upon Exhibit "A" referred to in Request for Admission No. 1, they cannot admit or deny Request for Admission No. 3 because Request for Admission No. 3 requests Responding Defendants to validate the data and calculations reflected in plaintiffs' Exhibit "A" and Responding Defendants cannot ascertain the accuracy of the data provided in Exhibit "A," or the calculations derived therefrom, because plaintiffs have failed to identify the sources on which they relied to obtain this data.

**INTERROGATORY 25**: If your answer to Request for Admission No. 3 was anything other than "ADMIT," please state what you contend is the correct number of serious adverse events related to aprotinin and involving renal function as a percentage of all serious adverse events for aprotinin for the time period of 1994 through 1999.

**RESPONSE:** Responding Defendants object to Interrogatory No. 25 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Responding Defendants also object to Interrogatory No. 25 as being vague and ambiguous, including in the use of the phrases "serious adverse events," and "involving renal function."

{J1318432.1}                                    59

**REQUEST FOR ADMISSION 4:** Please admit or deny that from January 1, 2000 through March 6, 2006, there were 56 serious adverse events relating to aprotinin involving renal function, and a total of 393 serious adverse events relating to aprotinin.

**RESPONSE:** Responding Defendants object to Request for Admission No. 4 as being overly broad, unduly burdensome, oppressive and unreasonable and being neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence in its failure to focus only upon adverse event reports received by the Responding Defendants. Responding Defendants also object to Request for Admission No. 4 as being vague and ambiguous, including in the use of the phrases "serious adverse events," and "involving renal function". Subject to and without waiving their objections, Responding Defendants state that, to the extent that Request for Admission No. 2 is based upon Exhibit "A" referred to in Request for Admission No. 1, they cannot admit or deny Request for Admission No. 4 because Request for Admission No. 4 requests Responding Defendants to validate the data and calculations reflected in plaintiffs' Exhibit "A" and Responding Defendants cannot ascertain the accuracy of the data provided in Exhibit "A," or the calculations derived therefrom, because plaintiffs have failed to identify the sources on which they relied to obtain this data.

**INTERROGATORY 26:** If your answer to Request for Admission No. 4 was anything other than "ADMIT," please state what you contend is the correct number of serious adverse events relating to aprotinin and involving renal function, as well as the total number of serious adverse events relating to aprotinin for the time period of January 1, 2000 through March 6, 2006.

**RESPONSE:** Responding Defendants object to Interrogatory No. 26 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Responding Defendants also object to Interrogatory No. 26 as being

vague and ambiguous, including in the use of the phrases "serious adverse events," and

"involving renal function."

**REQUEST FOR ADMISSION 5**:  Please admit or deny that from January 1, 2000 through March 6, 2006, serious adverse events involving renal function were 14.2% of all serious adverse events related to the drug aprotinin.

      **RESPONSE:**  Responding Defendants object to Request for Admission No. 5 as being overly broad, unduly burdensome, oppressive and unreasonable and being neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence in its failure to focus only upon adverse event reports received by the Responding Defendants. Responding Defendants also object to Request for Admission No. 5 as being vague and ambiguous, including in the use of the phrases "serious adverse events," and "involving renal function".  Subject to and without waiving their objections, Responding Defendants state that, to the extent that Request for Admission No. 2 is based upon Exhibit "A" referred to in Request for Admission No. 1, they cannot admit or deny Request for Admission No. 5 because Request for Admission No. 5 requests Responding Defendants to validate the data and calculations reflected in plaintiffs' Exhibit "A" and Responding Defendants cannot ascertain the accuracy of the data provided in Exhibit "A," or the calculations derived therefrom, because plaintiffs have failed to identify the sources on which they relied to obtain this data.

      **INTERROGATORY 27**:  If your answer to Request for Admission No. 5 was anything other than "ADMIT," please state what you contend is the correct number of serious adverse events related to aprotinin and involving renal function as a percentage of all serious adverse events for aprotinin for the time period of January 1, 2000 through March 6, 2006.

      **RESPONSE:**  Responding Defendants object to Interrogatory No. 27 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to

Interrogatory No. 27 as being vague and ambiguous, including in the use of the phrases

"serious adverse events," and "involving renal function."

**REQUEST FOR ADMISSION 6**:  Please admit or deny that data from Bayer's global pool of placebo-controlled studies of patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5mg/dL above 3-treatment levels was statistically higher in the high-dose aprotinin group, 9% (185/2047), compared with placebo 6.6% (129/1957).

**RESPONSE**:  Responding Defendants object to Request for Admission No. 6 as being vague and ambiguous in its failure to specify a temporal focus for the request or the particular group of studies upon which the assertion contained in Request for Admission No. 6 may be based.  Responding Defendants further object to Request for Admission No. 6 as being vague and ambiguous, including in the use of the phrases "incidents" and "above 3-treatment levels".  Subject to and without waiving their objections, Responding Defendants admit that Bayer's 2006 analysis of the randomized, double-blind, placebo-controlled clinical trials conducted by Bayer and which involved the administration of full-dose aprotinin to patients undergoing CABG surgery showed that the incidence of serum creatinine elevations >0.5 mg/dL above pre-treatment levels was statistically higher at 9.0% (185/2047) in the high-dose aprotinin group compared with 6.6% (129/1957) in the placebo group.

**REQUEST FOR ADMISSION 7**:  Please admit or deny that data from Bayer's global pool of placebo controlled studies of patients undergoing CABG surgery showed a statistically significant increase in renal dysfunction in the aprotinin group when compared to the placebo group.

     **RESPONSE**:  Responding Defendants object to Request for Admission No. 7 as being vague and ambiguous in its failure to specify a temporal focus for the request or the particular group of studies upon which the assertion contained in Request for Admission No. 7 may be based and in plaintiffs' failure to define the term "renal dysfunction".

**REQUEST FOR ADMISSION 8**:  Please admit or deny that data from Bayer's global pool of placebo-controlled studies on patients undergoing CABG surgery available as of December 15, 2006 showed a total number of patients in the high-dose aprotinin group was 2,047, and the total number in the placebo group was 1,957.

**RESPONSE:** Responding Defendants deny Request for Admission No. 8.

**INTERROGATORY 28**: If your answer to Request for Admission No. 8 was anything other than "ADMIT," please state what you contend is the correct total number of patients in the high-dose aprotinin group, as well as in the placebo group, based on the data from Bayer's global pool of placebo-controlled studies available as of December 15, 2006.

**RESPONSE**: Responding Defendants incorporate herein by reference their

response to Interrogatory No. 15.

**REQUEST FOR ADMISSION 9**:  Please admit or deny that dialysis was not a pre-defined end point that was collected prospectively in the clinical trials which provided the data for Defendants' global pool of placebo-controlled studies of patients undergoing CABG surgery.

    **RESPONSE**:  Responding Defendants object to Request for Admission No. 9 as being overly broad, unduly burdensome, oppressive and unreasonable and as being neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence in that this request is not limited to Trasylol studies.  Responding Defendants further object to Request for Admission No. 9 as being vague and ambiguous in the use of the phrase "pre-defined end point".

    **INTERROGATORY 29**:  If your answer to Request for Admission No. 9 was anything other than "ADMIT," please identify those clinical trials, which provided the data for Defendants' global pool of placebo-controlled studies, that utilized dialysis as a pre-defined end point that was collected prospectively.'

    **RESPONSE**:  Responding Defendants object to Interrogatory No. 29 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.  Responding Defendants also object to Interrogatory No. 29 as being vague and ambiguous in the use of the phrase "pre-defined end point".

**REQUEST FOR ADMISSION 10**: Please admit or deny that the STS National Adult Cardiac Surgery Database does not differentiate between patients receiving aprotinin, aminocaproic acid, tranexamic acid, or other blood-conserving drugs in the data collected from 1997 through December 2003.

**RESPONSE**: Responding Defendants object to Request for Admission No. 10 as being overly broad, unduly burdensome, oppressive and unreasonable in requiring Responding Defendants to ascertain practices and procedures regarding data collection, compilation, and analysis with respect to a third party's database over a number of years.  Responding Defendants further object to Request for Admission No. 10 as being neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence, and as being vague and ambiguous in the use of the phrase "does not differentiate between," and "other blood-conserving drugs".

**REQUEST FOR ADMISSION 11**: Please admit or deny that the data that forms the basis for the following statement existed on January 1, 2005: "Data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5mg/dL above pre-treatment levels was statistically higher in the high-dose aprotinin group, 9.0% (185/2047), compared with placebo, 6.6% (129/1957)." (See BAY06107700).

RESPONSE: Responding Defendants object to Request for Admission No. 11 as being vague and ambiguous in the use of the phrase "incidents". Subject to and without waiving their objections, Responding Defendants admit Request for Admission No. 11.

**REQUEST FOR ADMISSION 12**:  Please admit or deny that the data that forms the basis for the following statement existed on January 1, 2004 : "Data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5mg/dL above pre-treatment levels was statistically higher in the high-dose aprotinin group, 9.0% (185/2047), compared with placebo, 6.6% (129/1957)." (See BAY06107700).

RESPONSE:  Responding Defendants object to Request for Admission No. 12 as being vague and ambiguous in the use of the phrase "incidents".  Subject to and without waiving their objections, Responding Defendants admit Request for Admission No. 12.

**REQUEST FOR ADMISSION 13**: Please admit or deny that the data that forms the basis for the following statement existed on January 1, 2003: "Data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5mg/dL above pre-treatment levels was statistically higher in the high-dose aprotinin group, 9.0% (185/2047), compared with placebo, 6.6% (129/1957)." (See BAY06107700).

**RESPONSE**: Responding Defendants object to Request for Admission No. 13 as being vague and ambiguous in the use of the phrase "incidents". Subject to and without waiving their objections, Responding Defendants admit Request for Admission No. 13.

**REQUEST FOR ADMISSION 14**:  Please admit or deny that the data that forms the basis for the following statement existed on January 1, 2002:  "Data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5mg/dL above pre-treatment levels was statistically higher in the high-dose aprotinin group, 9.0% (185/2047), compared with placebo, 6.6% (129/1957)." (See BAY06107700).

RESPONSE:  Responding Defendants object to Request for Admission No. 14 as being vague and ambiguous in the use of the phrase "incidents".  Subject to and without waiving their objections, Responding Defendants admit Request for Admission No. 14.

**REQUEST FOR ADMISSION 15**: Please admit or deny that the data that forms the basis for the following statement existed on January 1, 2001: "Data from Bayer's global pool of placebo controlled studies in patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5mg/dL above pre-treatment levels was statistically higher in the high-dose aprotinin group, 9.0% (185/2047), compared with placebo, 6.6% (129/1957)." (See BAY06107700).

   **RESPONSE**: Responding Defendants object to Request for Admission No. 15 as being vague and ambiguous in the use of the phrase "incidents". Subject to and without waiving their objections, Responding Defendants deny Request for Admission No. 15.

**REQUEST FOR ADMISSION 16**: Please admit or deny that the data that forms the basis for the following statement existed on January 1, 2000: "Data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5 mg/dL above pre-treatment levels was statistically higher in the high-dose aprotinin group, 9.0% (185/2047), compared with placebo, 6.6% (129/1957)." (See BAY06107700).

  **RESPONSE**:  Responding Defendants object to Request for Admission No. 16 as being

vague and ambiguous in the use of the phrase "incidents".  Subject to and without waiving their

objections, Responding Defendants deny Request for Admission No. 16.

**REQUEST FOR ADMISSION 17**:  Please admit or deny that the data that forms the basis for the following statement existed on January 1, 1999:  "Data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5 mg/dL above pre-treatment levels was statistically higher in the high-dose aprotinin group, 9.0% (185/2047), compared with placebo, 6.6% (129/1957)." (See BAY06107700).

   **RESPONSE**:  Responding Defendants object to Request for Admission No. 17 as being

vague and ambiguous in the use of the phrase "incidents".  Subject to and without waiving their

objections, Responding Defendants deny Request for Admission No. 17.

**REQUEST FOR ADMISSION 18:**  Please admit or deny that the data that forms the basis for the following statement existed on January 1, 1998:  "Data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery showed the incidents of serum creatinine elevations greater than 0.5 mg/dL above pre-treatment levels was statistically higher in the high-dose aprotinin group, 9.0% (185/2047), compared with placebo, 6.6% (129/1957)." (See BAY06107700).

     **RESPONSE:**  Responding Defendants object to Request for Admission No. 18 as being

vague and ambiguous in the use of the phrase "incidents".  Subject to and without waiving their

objections, Responding Defendants deny Request for Admission No. 18.

**REQUEST FOR ADMISSION 19:**  Please admit or deny that based on the data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery, there was a statistically significant incidence of serum creatinine elevations greater than 0.5 mg/dL above pre-treatment levels in the high-dose aprotinin group compared with placebo.

  **RESPONSE:**  Responding Defendants object to Request for Admission No. 19 as being

vague and ambiguous in its failure to specify a temporal focus for the request or the particular

group of studies upon which the assertion contained in Request for Admission No. 19 may be

based.  Responding Defendants further object to Request for Admission No. 19 as being vague

and ambiguous, including in the use of the phrase "a statistically significant incidence of serum

creatinine elevations".

**REQUEST FOR ADMISSION 20**:  Please admit or deny that based on the data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery, the relative risk of serum creatinine elevations greater than 0.5mg/dL above pre-treatment levels was 1.36 in the high-dose aprotinin group when compared with the placebo patients.

   **RESPONSE**:  Responding Defendants object to Request for Admission No. 20 as being vague and ambiguous in its failure to specify a temporal focus for the request or the particular group of studies upon which the assertion contained in Request for Admission No. 20 may be based.

**REQUEST FOR ADMISSION 21**:  Please admit or deny that based upon data from Bayer's global pool of placebo-controlled studies in patients undergoing CABG surgery the risk of renal dysfunction may be increased in patients with pre-existing renal impairment.

**RESPONSE**:  Responding Defendants object to Request for Admission No. 21 as being overly broad, unduly burdensome, oppressive and unreasonable and as being neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence in that this request is not limited to Trasylol studies.  Responding Defendants also object to Request for Admission No. 21 as being vague and ambiguous, including in its failure to specify a temporal focus for the request or the particular group of studies upon which the assertion contained in Request for Admission No. 21 may be based and in plaintiffs' failure to define the term "renal dysfunction".

**REQUEST FOR ADMISSION 22**: Please admit or deny that the study, whose lead author is David C. Kress, M.D., entitled "What is the effect of Aprotinin (Trasylol) on the Incidence of Selected Outcomes after CABG?" was in Defendants' possession no later than August 26, 2004. (See, e.g., BAY05426839 — 46).

**RESPONSE**: Responding Defendants object to Request for Admission No. 22 as being vague and ambiguous, including in the use of the phrase "study … was in Defendants' possession". Subject to and without waiving their objections, Responding Defendants admit that a draft report dated November 20, 2003 and entitled "What is the Effect of Aprotinin (Trasylol) on the incidence of Selected Outcomes after CABG" (BAY05426839 — 46) was in the possession of BPC personnel by August 26, 2004.

**INTERROGATORY 30**: If your answer to Request for Admission No. 22 was anything other than "ADMIT," please identify the date that you contend Defendants first gained possession of the study, whose lead author is David C. Kress, M.D., entitled "What is the effect of Aprotinin (Trasylol) on the Incidence of Selected Outcomes after CABG?" (See, e.g., BAY05426839 — 46).

**RESPONSE**: Responding Defendants object to Interrogatory No. 30 as being vague and ambiguous, including in the use of the phrase "first gained possession of the study". Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Request for Admission No. 22.

**REQUEST FOR ADMISSION 23**:  Please admit or deny that the study, whose lead author is David C. Kress, M.D., entitled "What is the effect of Aprotinin (Trasylol) on the Incidence of Selected Outcomes after CABG?" was not provided to FDA by Defendants until after September 21, 2006.

    **RESPONSE:**  Responding Defendants object to Request for Admission No. 23 as being

vague and ambiguous, including in the use of the phrase "study … was not provided".  Subject to

and without waiving their objections, Responding Defendants admit that BPC first referenced

Dr. David C. Kress's research in an FDA submission in BPC's November 9, 2006 submission to

the FDA (BAY00710292).

    **INTERROGATORY 31**: If your answer to Request for Admission No. 23 was anything other than "ADMIT," please identify the date on which the study, whose lead author is David C. Kress, M.D., entitled "What is the effect of Aprotinin (Trasylol) on the Incidence of Selected Outcomes after CABG?" was first provided to FDA by Defendants.

    **RESPONSE:**   Responding Defendants object to Interrogatory No. 31 as being

vague and ambiguous, including in the use of the phrase "study … was first provided".

Subject to and without waiving their objections, Responding Defendants incorporate

herein by reference their response to Request for Admission No. 23.

    **REQUEST FOR PRODUCTION 8**:  If your answer to Request for Admission No. 23 was anything other than "ADMIT," please produce documents that substantiate your response to Interrogatory No. 31 regarding the date on which the study, whose lead author is David C. Kress, M.D., entitled "What is the effect of Aprotinin (Trasylol) on the Incidence of Selected Outcomes after CABG?" was first provided to FDA by Defendants.

    **RESPONSE:**  Responding Defendants object to Request for Production

No. 8 as being vague and ambiguous, including in the use of the phrase "study …

was first provided".  Subject to and without waiving their objections, Responding

Defendants incorporate herein by reference their response to Request for

Admission No. 23.

**REQUEST FOR ADMISSION 24**:  Please admit or deny that the study entitled "An Investigation into the Effect of Aprotinin on Usage of Blood Products and Lengths of Stay at St. George's Hospital London" was completed December 11, 2003. (See, e.g., BHCAG01830631).

RESPONSE:  Responding Defendants object to Request for Admission No. 24 as being vague and ambiguous, including in the use of the phrase "study … was completed".  Subject to and without waiving their objections, Responding Defendants admit that the report entitled "An Investigation Into The Effect Of Aprotinin On Usage Of Blood Products And Lengths Of Stay At St George's Hospital London," which was produced to plaintiffs at BAY00710320, is dated December 11, 2003.

**REQUEST FOR ADMISSION 25**: Please admit or deny that the study entitled "An Investigation into the Effect of Aprotinin on Usage of Blood Products and Lengths of Stay at St. George's Hospital London" was not provided to FDA by Defendants prior to September 21, 2006. (See, e.g., BHCAG01830631).

RESPONSE:  Responding Defendants object to Request for Admission No. 25 as being vague and ambiguous, including in the use of the phrase "study … was not provided".  Subject to and without waiving their objections, Responding Defendants admit that the report entitled "An Investigation Into The Effect Of Aprotinin On Usage Of Blood Products And Lengths Of Stay At St George's Hospital London" dated December 11, 2003 was not provided to the FDA by the Responding Defendants prior to September 21, 2006.

**INTERROGATORY 32**:  If your answer to Request for Admission No. 25 was anything other than "ADMIT," please identify the date on which the study entitled "An Investigation into the Effect of Aprotinin on Usage of Blood Products and Lengths of Stay at St. George's Hospital London" was first provided to FDA by Defendants. (See, e.g., BHCAG01830631).

RESPONSE:  Responding Defendants object to Interrogatory No. 32 as being vague and ambiguous, including in the use of the phrase "study … was first provided".  Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Request for Admission No. 25.

**REQUEST FOR PRODUCTION 9**:  If your answer to Request for Admission No. 25 was anything other than "ADMIT," please produce documents that substantiate your response to Interrogatory No. 32 regarding the date on which the study entitled "An Investigation into the Effect of Aprotinin on Usage of Blood Products and Lengths of Stay at St. George's Hospital London" was first provided to FDA by Defendants. (See, e.g., BHCAG01830631).

RESPONSE:  Responding Defendants object to Request for Production No. 9 as being vague and ambiguous, including in the use of the phrase "study … was first provided".  Subject to and without waiving their objections, Responding

Defendants incorporate herein by reference their response to Request for

Admission No. 25.

**REQUEST FOR ADMISSION 26**:  Please admit or deny that between January 1, 1994 and January 21, 2006, Defendants never initiated, contracted for, conducted, funded, or commissioned any study which had renal failure as a primary end point.

   **RESPONSE**:  Responding Defendants object to Request for Admission No. 26 as being

overly broad, unduly burdensome, oppressive and unreasonable and as being neither relevant to

any issue in this litigation nor reasonably calculated to lead to the discovery of admissible

evidence in that this request is not limited to Trasylol studies.

   **INTERROGATORY 33**:  If your answer to Request for Admission No. 26 was anything other than "ADMIT," please identify any study conducted, funded, or commissioned by Defendants with renal failure as a primary end point between January 1, 1994 and January 21, 2006.

   **RESPONSE**:  Responding Defendants object to Interrogatory No. 33 as being

overly broad, unduly burdensome, oppressive and unreasonable, and as seeking

information that is neither relevant to any issue in this litigation nor reasonably calculated

to lead to the discovery of admissible evidence.

   **REQUEST FOR PRODUCTION 10**:  If your answer to Request for Admission No. 26 was anything other than "ADMIT," please produce copies of each study identified in response to Interrogatory No. 33, as well as copies of protocols and/or proposals for those studies.

   **RESPONSE**: Responding Defendants object to Request for Production

No. 10 as being overly broad, unduly burdensome, oppressive and unreasonable,

and as seeking information that is neither relevant to any issue in this litigation

nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR ADMISSION 27**:  Please admit or deny that Between January 1, 1994 and January 21, 2006, defendants never initiated, contracted for, conducted, funded, or commissioned any study which had renal failure requiring dialysis as a primary end point.

      **RESPONSE:**  Responding Defendants object to Request for Admission No. 27 as being

overly broad, unduly burdensome, oppressive and unreasonable and as being neither relevant to

any issue in this litigation nor reasonably calculated to lead to the discovery of admissible

evidence in that this request is not limited to Trasylol studies.

      **INTERROGATORY 34**:  If your answer to Request for Admission No. 27 was anything other than "ADMIT," please identify any study conducted, funded, or commissioned by Defendants with renal failure requiring dialysis as a primary end point between January 1, 1994 and January 21, 2006.

      **RESPONSE:**  Responding Defendants object to Interrogatory No. 34 as being

overly broad, unduly burdensome, oppressive and unreasonable, and as seeking

information that is neither relevant to any issue in this litigation nor reasonably calculated

to lead to the discovery of admissible evidence.

      **REQUEST FOR PRODUCTION 11**:  If your answer to Request for Admission No. 27 was anything other than "ADMIT," please produce copies of each study identified in response to Interrogatory No. 34, as well as copies of protocols and/or proposals for those studies.

      **RESPONSE:** Responding Defendants object to Request for Production

No. 11 as being overly broad, unduly burdensome, oppressive and unreasonable,

and as seeking information that is neither relevant to any issue in this litigation

nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR ADMISSION 28**:  Please admit or deny that between January 1, 1994 and January 21, 2006, Defendants never conducted, funded, or commissioned any randomized controlled trial which had renal failure as a primary end point.

RESPONSE:  Responding Defendants object to Request for Admission No. 28 as being

overly broad, unduly burdensome, oppressive and unreasonable and as being neither relevant to

any issue in this litigation nor reasonably calculated to lead to the discovery of admissible

evidence in that this request is not limited to Trasylol studies.

**INTERROGATORY 35**:  If your answer to Request for Admission No. 28 was anything other than "ADMIT," please identify any randomized controlled trial conducted, funded, or commissioned by Defendants with renal failure as a primary end point between January 1, 1994 and January 21, 2006.

RESPONSE:  Responding Defendants object to Interrogatory No. 35 as being

overly broad, unduly burdensome, oppressive and unreasonable, and as seeking

information that is neither relevant to any issue in this litigation nor reasonably calculated

to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION 12**:  If your answer to Request for Admission No. 28 was anything other than "ADMIT," please produce copies of transcripts for each randomized controlled trial identified in response to Interrogatory No. 35, as well as copies of protocols and/or proposals for those randomized controlled trials.

RESPONSE: Responding Defendants object to Request for Production

No. 12 as being overly broad, unduly burdensome, oppressive and unreasonable,

and as seeking information that is neither relevant to any issue in this litigation

nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR ADMISSION 29**: Please admit or deny that the only study conducted, funded, or commissioned by Defendants between January 1, 1994 and September 21, 2006 which has renal failure as a primary end point was the study performed by i3 Drug Safety.'

    **RESPONSE:** Responding Defendants object to Request for Admission No. 29 as being overly broad, unduly burdensome, oppressive and unreasonable and as being neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence in that this request is not limited to Trasylol studies.

    **INTERROGATORY 36**: If your answer to Request for Admission No. 29 was anything other than "ADMIT," please identify any study conducted, funded, or commissioned by Defendants with renal failure as a primary end point between January 1, 1994 and September 21, 2006.

    **RESPONSE:** Responding Defendants object to Interrogatory No. 36 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

    **REQUEST FOR PRODUCTION 13**: If your answer to Request for Admission No. 29 was anything other than "ADMIT," please produce copies of each study identified in response to Interrogatory No. 36, as well as copies of protocols and/or proposals for those studies.

    **RESPONSE**: Responding Defendants object to Request for Production No. 13 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR ADMISSION 30**:  Please admit or deny that Defendants have produced all serious adverse event reports that refer or relate to aprotinin.

RESPONSE:  Responding Defendants object to Request for Admission No. 30 as being

overly broad, unduly burdensome, oppressive and unreasonable and being neither relevant to any

issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence

in its failure to focus only upon adverse event reports received by the Responding Defendants.

Responding Defendants also object to Request for Admission No. 30 as being vague and

ambiguous in the use of the phrase "all serious adverse event reports that refer or relate to

aprotinin."  Subject to and without waiving their objections, Responding Defendants admit that

BHCP has produced the Trasylol-related adverse event reports contained in its Clintrace database

through March 18, 2009 as well as the Trasylol-related adverse event reports contained in its

Q&A database.  Additionally, BHCP has produced Trasylol-related adverse event reports

relating to plaintiffs in pending Trasylol products liability cases.

**INTERROGATORY 37**:  If your answer to Request for Admission No. 30 was anything other than "ADMIT," please identify each serious adverse event reports that refer or relate to aprotinin that Defendants have not produced.

RESPONSE:   Responding Defendants object to Interrogatory No. 37 as being

overly broad, unduly burdensome, oppressive and unreasonable, and as seeking

information that is neither relevant to any issue in this litigation nor reasonably calculated

to lead to the discovery of admissible evidence.  Responding Defendants also object to

Interrogatory No. 37 as being vague and ambiguous in the use of the phrase "serious

adverse event reports that refer or relate to aprotinin".

**REQUEST FOR PRODUCTION 14**:  If your answer to Request for Admission No. 30 was anything other than "ADMIT," please produce copies of each serious adverse event report identified in response to Interrogatory No. 37.

**RESPONSE**:  Responding Defendants object to Request for Production No. 14 as being overly broad, unduly burdensome, oppressive and unreasonable, and as seeking information that is neither relevant to any issue in this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Responding Defendants also object to Request for Production No. 14 as being vague and ambiguous in its reference to Interrogatory No. 37.

**REQUEST FOR ADMISSION 31**:  Please admit or deny that aprotinin is no longer on the market in the United States.

RESPONSE:  Responding Defendants object to Request for Admission No. 31 as being vague and ambiguous, including in the use of the phrase "no longer on the market".  Subject to and without waiving their objections, Responding Defendants admit that following consultation with the FDA, BPC voluntarily suspended the marketing of Trasylol® on November 5, 2007 until final results from the Canadian BART trial could be compiled, received and evaluated.  The company took this action following requests from the FDA that BPC temporarily suspend Trasylol® marketing until final BART data were available and analyzed.  Following the marketing suspension in November 2007, BPC worked closely with the FDA to establish a special access program.  After the U.S. special access program was established, BPC, upon consultation with the FDA, removed residual quantities of Trasylol® that remained in the U.S. supply chain to achieve the goal that Trasylol® be used only within the approved requirements of the special access program.

**REQUEST FOR ADMISSION 32**:  Please admit or deny that the completed U.S. placebo-controlled trial regarding aprotinin, referred to as Study D89-005, demonstrates a statistically significant increased risk associated with aprotinin when comparing treatment-emergent events reflecting renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal or kidney tubular necrosis) in patients receiving high-dose aprotinin (8/71, 11%) and patients receiving placebo (0/71, 0%).

      **RESPONSE:**  Responding Defendants object to Request for Admission No. 32 as being

vague and ambiguous, including in the use of the phrase "demonstrates a statistically significant

increased risk".  Subject to and without waiving their objections, Responding Defendants deny

Request for Admission No. 32.

      **INTERROGATORY 38**: If your answer to Request for Admission No. 32 was anything other than "ADMIT," please answer the following regarding Study D89-005:

      A.     If you contend that the risk associated with aprotinin as compared to placebo is not statistically significant with respect to the incidence of treatment-emergent events reflecting renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal or kidney tubular necrosis), please state the basis for your contention, including but not limited to identifying what you contend the correct p value is;

      B.     If you contend that the incidence of treatment-emergent events reflecting renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal or kidney tubular necrosis) in patients receiving high-dose aprotinin is something other than 8/71, 11%, please state what you contend are the appropriate numbers and percentage; and

      C.     If you contend that the incidence of treatment-emergent events reflecting renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal or kidney tubular necrosis) in patients receiving placebo is something other than 0/71, 0%, please state what you contend are the appropriate numbers and percentage.

      **RESPONSE:**   Responding Defendants object to Interrogatory No. 38 as

being overly broad, unduly burdensome, oppressive and unreasonable.  Subject to and without

waiving their objections, Responding Defendants state Miles Inc's report of study D89-005

(BAY02416079), which involved valve surgery, states that there was a statistically significantly

greater incidence in the high-dose aprotinin group of certain treatment emergent events affecting

the urogenital system, as compared with the placebo and low-dose aprotinin groups.

Specifically, the report states that if only treatment emergent events reflecting post-operative

renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal, and kidney

tubular necrosis) are considered, the respective percentages are 8/71 (11%) in the high-dose

aprotinin group, 5/70 (7%) in the low-dose aprotinin group, and 0/71 (0%) in the placebo

aprotinin group (overall p-value = 0.008, 2).

> **REQUEST FOR PRODUCTION 15**:  If your answer to Request for Admission No. 32 was anything other than "ADMIT," please produce documents which substantiate your contentions in response to Interrogatory No. 38 and its subparts.

> **RESPONSE**:   Responding Defendants object to Request for Production

No. 15 as being overly broad, unduly burdensome, oppressive and unreasonable.

Subject to and without waiving their objections, Responding Defendants

incorporate herein by reference their response to Interrogatory No. 38.

**REQUEST FOR ADMISSION 33**:  Please admit or deny that the completed U.S. placebo-controlled trial regarding aprotinin, referred to as Study D89-005, demonstrates a statistically significant increased risk associated with aprotinin when comparing treatment-emergent events reflecting renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal or kidney tubular necrosis) in patients receiving low-dose aprotinin (5/70, 7%) and patients receiving placebo (0/71, 0%).

**RESPONSE**:  Responding Defendants object to Request for Admission No. 33 as being vague and ambiguous, including in the use of the phrase "demonstrates a statistically significant increased risk".  Subject to and without waiving their objections, Responding Defendants deny Request for Admission No. 33.

**INTERROGATORY 39**: If your answer to Request for Admission No. 33 was anything other than "ADMIT," please answer the following regarding Study D89-005:

A.     If you contend that the risk associated with aprotinin as compared to placebo is not statistically significant with respect to the incidence of treatment-emergent events reflecting renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal or kidney tubular necrosis), please state the basis for your contention, including but not limited to identifying what you contend the correct p value is;

B.     If you contend that the incidence of treatment-emergent events reflecting renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal or kidney tubular necrosis) in patients receiving low-dose aprotinin is something other than 5/70, 7%, please state what you contend are the appropriate numbers and percentage; and

C.     If you contend that the incidence of treatment-emergent events reflecting renal dysfunction (acute kidney failure, kidney failure, kidney function abnormal or kidney tubular necrosis) in patients receiving placebo is something other than 0/71, 0%, please state what you contend are the appropriate numbers and percentage.

**RESPONSE**:  Responding Defendants object to Interrogatory No. 39 as being overly broad, unduly burdensome, oppressive and unreasonable.  Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Interrogatory No. 38.

**REQUEST FOR PRODUCTION 16**:  If your answer to Request for Admission No. 33 was anything other than "ADMIT," please produce documents which substantiate your contentions in response to Interrogatory No. 39 and its subparts.

    **RESPONSE**:   Responding Defendants object to Request for Production

No. 16 as being overly broad, unduly burdensome, oppressive and unreasonable.

Subject to and without waiving their objections, Responding Defendants

incorporate herein by reference their response to Interrogatory No. 38.

**REQUEST FOR ADMISSION 34**: Please admit or deny that the completed U.S. placebo-controlled trial regarding aprotinin, referred to as Study D89-005, demonstrates a statistically significant increased risk associated with aprotinin when comparing increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL in patients receiving high-dose aprotinin (21/71, 30%) and patients receiving placebo (6/71, 8%), resulting in a relative risk greater than 3.5.

      **RESPONSE**:  Responding Defendants object to Request for Admission No. 34 as being

vague and ambiguous, including in the use of the phrase "demonstrates a statistically significant

increased risk".  Subject to and without waiving their objections, Responding Defendants deny

Request for Admission No. 34.

      **INTERROGATORY 40**:  If your answer to Request for Admission No. 34 was anything other than "ADMIT," please answer the following regarding Study D89-005:

    A.     If you contend that the risk associated with aprotinin as compared to placebo is not statistically significant with respect to the incidence of increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL, please state the basis for your contention, including but not limited to identifying what you contend is the correct p value;

    B.     If you contend that the incidence of increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL in patients receiving high-dose aprotinin is something other than 21/71, 30%, please state what you contend are the appropriate numbers and percentage;

    C.     If you contend that the incidence of increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL in patients receiving placebo is something other than 6/71, 8%, please state what you contend are the appropriate numbers and percentage; and

    D.     If you contend that the relative risk of increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL when comparing high-dose aprotinin to placebo is not greater than 3.5, please state what you contend is the correct relative risk.

      **RESPONSE**:  Responding Defendants object to Interrogatory No. 40 as

being overly broad, unduly burdensome, oppressive and unreasonable.  Subject to and

without waiving their objections, Responding Defendants state Miles Inc's report of

study D89-005 (BAY02416079), which involved valve surgery, states that patients

experiencing serum creatinine elevations above baseline of at least 0.5 mg/dl were 21/71

(30%) in the high-dose aprotinin group, 10/70 (14%) in the low-dose aprotinin group, and

6/71 (8%) in the placebo group (overall p = 0.003, 2).  In the majority of aprotinin-treated

patients these serum creatinine elevations were not severe and were reversible.

**REQUEST FOR PRODUCTION 17**:  If your answer to Request for Admission No. 34 was anything other than "ADMIT," please produce documents which substantiate your contentions in response to Interrogatory No. 40 and its subparts.

**RESPONSE**:   Responding Defendants object to Request for Production

No. 17 as being overly broad, unduly burdensome, oppressive and unreasonable.

Subject to and without waiving their objections, Responding Defendants

incorporate herein by reference their response to Interrogatory No. 40.

**REQUEST FOR ADMISSION 35**: Please admit or deny that the completed U.S. placebo-controlled trial regarding aprotinin, referred to as Study D89-005, demonstrates a statistically significant increased risk associated with aprotinin when comparing increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL in patients receiving low-dose aprotinin (10/70, 14%) and patients receiving placebo (6/71, 8%), resulting in a relative risk greater than 1.6.

**RESPONSE**: Responding Defendants object to Request for Admission No. 35 as being vague and ambiguous, including in the use of the phrase "demonstrates a statistically significant increased risk". Subject to and without waiving their objections, Responding Defendants deny Request for Admission No. 35.

**INTERROGATORY 41**: If your answer to Request for Admission No. 35 was anything other than "ADMIT," please answer the following regarding Study D89-005:

A. If you contend that the risk associated with aprotinin as compared to placebo is not statistically significant with respect to the incidence of increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL, please state the basis for your contention, including but not limited to identifying what you contend is the correct p value;

B. If you contend that the incidence of increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL in patients receiving low-dose aprotinin is something other than 10/70, 14%, please state what you contend are the appropriate numbers and percentage;

C. If you contend that the incidence of increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL in patients receiving placebo is something other than 6/71, 8%, please state what you contend are the appropriate numbers and percentage; and

D. If you contend that the relative risk of increases from pre-operative baseline in serum creatinine of greater than or equal to 0.5 mg/dL when comparing low-dose aprotinin to placebo is not greater than 1.6, please state what you contend is the correct relative risk.

**RESPONSE**: Responding Defendants object to Interrogatory No. 41 as being overly broad, unduly burdensome, oppressive and unreasonable. Subject to and without waiving their objections, Responding Defendants incorporate herein by reference their response to Interrogatory No. 40.

**REQUEST FOR PRODUCTION 18**:  If your answer to Request for Admission No. 35 was anything other than "ADMIT," please produce documents which substantiate your contentions in response to Interrogatory No. 41 and its subparts.

**RESPONSE**:  Responding Defendants object to Request for Production

No. 18 as being overly broad, unduly burdensome, oppressive and unreasonable.

Subject to and without waiving their objections, Responding Defendants

incorporate herein by reference their response to Interrogatory No. 40.


Richard K. Dandrea
ECKERT SEAMANS CHERIN & MELLOTT, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
(412) 566-6000
(412) 566-6099 (facsimile)
E-mail: rdandrea@eckertseamans.com

Steven E. Derringer
BARTLIT BECK HERMAN
PALENCHAR & SCOTT LLP
Courthouse Place
54 West Hubbard, Suite 300
Chicago, IL  60610
(312) 494-4415
(312) 494-4440 (facsimile)
E-mail: steven.derringer@bartlit-beck.com

*Attorneys for Defendants Bayer HealthCare Pharmaceuticals, Inc., Bayer Corporation and Bayer Schering Pharma AG*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the within RESPONSES AND

OBJECTIONS OF DEFENDANTS BAYER HEALTHCARE PHARMACEUTICALS, INC.,

BAYER CORPORATION AND BAYER SCHERING PHARMA AG TO PLAINTIFFS'

SECOND SET OF INTERROGATORIES, FIFTH SET OF REQUESTS FOR PRODUCTION

OF DOCUMENTS AND FIRST REQUESTS FOR ADMISSION was served this 24th day of

August, 2009, by e-mail and United States mail, postage pre-paid, on all Defense counsel

identified on the attached Service List.

Arun J. Thomas

## SERVICE LIST

In re: Trasylol Products Liability Litigation – MDL-1928
Case No.: 08-MD-1928-MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| James R. Ronca<br>Email: jronca@anapolschwartz.com<br>**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN**<br>    **& SMALLEY, P.C.**<br>1710 Spruce Street<br>Philadelphia, PA 19103<br>Telephone: 215-735-1130<br>Facsimile: 215-875-7758<br>*Plaintiffs' Steering Committee/Co-Lead Counsel* | Scott A. Love<br>Email: slove@triallawfirm.com<br>**CLARK, DEAN & BURNETT, G.P.**<br>Lyric Center<br>440 Louisiana Street, Suite 1600<br>Houston, TX 77002<br>Telephone: 713-759-1400<br>Facsimile: 713-759-1217<br>*Plaintiffs' Steering Committee/Co-Lead Counsel* |
| Theodore Babbitt<br>Email: tedbabbitt@babbitt-johnson.com<br>**BABBITT JOHNSON OSBORNE**<br>    **& LeCLAINCHE, P.A.**<br>1450 Centrepark Blvd., Suite 100<br>West Palm Beach, FL 33401<br>Telephone: 561-684-2500<br>Facsimile: 561-684-6308<br>*Plaintiffs' Steering Committee/Liaison Counsel* | Neal Moskow<br>Email: neal@urymoskow.com<br>**URY & MOSKOW, LLC**<br>883 Black Rock Turnpike<br>Fairfield, CT 06825<br>Telephone: 203-610-6393<br>Facsimile: 203-610-6399<br>*Plaintiffs' Steering Committee/ Federal-State Liaison* |
| Karen H. Beyea-Schroeder<br>Email: karen_beyea_schroeder@fleming-law.com<br>Wendy Caldwell<br>Email: wendy_caldwell@fleminglaw.com<br>**FLEMING & ASSOCIATES**<br>1330 Post Oak Boulevard, Suite 3030<br>Houston, TX 77056-3019<br>Telephone: 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<br>Facsimile: 713-621-9638 | Ernest Cory<br>Email: ecory@cwcd.com<br>Brian D. Turner<br>Email bturner@cwcd.com<br>Elizabeth Ellis Chambers<br>Email: bellis@cwcd.com<br>B. Kristian W. Rasmussen<br>krasmussen@cwcd.com<br>**CORY, WATSON, CROWDER & DeGARIS, P.C.**<br>2131 Magnolia Avenue, Suite 200<br>Birmingham, AL 35204<br>Telephone: 205-328-2200<br>Facsimile: 205-324-7896 |

| | |
|---|---|
| Philip S. Beck<br>Email: philip.beck@bartlit-beck.com<br>Steven E. Derringer<br>Email: steven.derringer@bartlit-beck.com<br>**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**<br>54 West Hubbard, Suite 300<br>Chicago, IL 60610<br>**Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer HealthCare Pharmaceuticals, Inc., Bayer HealthCare LLC, Bayer AG, and Bayer HealthCare AG** | Patricia E. Lowry<br>Email: plowry@ssd.com<br>Barbara Bolton Litten<br>Email: blitten@ssd.com<br>**SQUIRE, SANDERS & DEMPSEY L.L.P.**<br>Squire, Sanders & Dempsey, L.L.P.<br>1900 Phillips Point West<br>777 South Flagler Drive<br>West Palm Beach, FL 33401<br>**Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer HealthCare Pharmaceuticals, Inc., Bayer HealthCare LLC, Bayer AG, and Bayer HealthCare AG** |
| Leanne DeShong<br>Email: ldeshong@shb.com<br>**SHOOK HARDY & BACON LLP**<br>2555 Grand Boulevard<br>Kansas City, Missouri 64108 | Eugene A. Schoon<br>Email: eschoon@sidley.com<br>**SIDLEY AUSTIN LLP**<br>One South Dearborn<br>Chicago, IL 60603<br>**Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer HealthCare Pharmaceuticals, Inc., Bayer HealthCare LLC, Bayer AG, and Bayer HealthCare AG** |
| Daniel G. Wyllie<br>Email: dwyllie@dykema.com<br>Susan Artinian<br>Email: sartinian@dykema.com<br>**DYKEMA GOSSETT PLLC**<br>400 Renaissance Center<br>Detroit, MI 48243<br>**Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer HealthCare Pharmaceuticals, Inc., Bayer HealthCare LLC, Bayer AG, and Bayer HealthCare AG** | |