UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION – MDL-1928 | ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| ANNA E. BRYANT v. BAYER CORPORATION et al. Case No. 9:08-cv-80868-DMM | ) ) ) ) |

FEBRUARY 12, 2010

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT ALLEGING THAT BAYER PROVIDED INADEQUATE OR INCOMPLETE DATA TO THE FEDERAL FOOD AND DRUG ADMINISTRATION

Ms. Anna Elaine Bryant has filed state law claims against Bayer seeking compensation for injuries caused by its failure to warn, design defect and resulting from strict product liability for its role in putting a dangerous and/or defective product into commerce. In essence, Ms. Bryant alleges that Bayer failed to properly warn physicians about the dangers associated with Trasylol which have caused her debilitating injuries. Naturally, evidence concerning safety information Bayer hid from physicians, the public and the FDA will be relevant to establishing these claims, demonstrating Bayer's negligence, assessing the credibility of witnesses, determining whether Bayer complied with federal regulations relating to the reporting of safety information and adverse events, as well as refuting Bayer's assertions that it complied with all regulatory requirements. To put an even finer point on it: evidence regarding Defendants'

submissions to and interactions with the FDA is relevant to Plaintiff' traditional state law claims that Bayer should and could have warned about the renal toxicity of Trasylol and such evidence is necessary to rebut Defendants' claims of regulatory compliance. Bayer's suggestion to the contrary is not supported by legal precedent or the legal burden Ms. Bryant bears in establishing her claims in this case, and the subject evidence is appropriately utilized to carry that burden.

On the other hand, Bayer cannot carry *its burden* in demonstrating the need for an order baring the disclosure of this information at trial. Put another way: evidence will *not* be offered to show that had the FDA been properly advised, it they would have acted differently; rather **evidence will be offered to show that Bayer acted negligently in failing to properly disclose information to the FDA, the medical and scientific communities, and to the public.** Because the evidence to be proffered is relevant and probative on all of these issues, the instant Motion must be denied and this Objection sustained.

### I. BAYER'S RELIANCE ON *BUCKMAN* IS MISPLACED

Defendants' reliance on the Supreme Court's decision in *Buckman Co. v. Plaintiff' Legal Comm.*, 531 U.S. 341 (2001), is misplaced. The Court's decision in *Buckman* continues a line of cases which hold that there is no private cause of action under the FDCA. Yet Plaintiff has not asserted an impermissible cause of action for "fraud-on-the-FDA." Rather, Plaintiff assert traditional state product liability causes of action for failure to warn doctors and patients and fraud on and misrepresentation to doctors and patients, as well as design defect, breach of warranty, and negligence. Plaintiff assert that Defendants should have warned physicians and patients about Trasylol's renal toxicity, should have investigated data showing renal safety issues, and should not have made material misrepresentations about Trasylol's safety and

2

effectiveness to doctors and patients. Plaintiff intends to introduce evidence that these warnings and actions would have been appropriate and permissible.

This is a continuation of efforts by drug manufacturers and their attorneys to transform *Buckman*, which was a narrow case holding that a legal theory was preempted by federal law, into an evidentiary exclusion case. The argument got little traction in most courts, as discussed below. But two recent Supreme Court opinions affirmatively demonstrate that the argument simply misreads *Buckman* in the first instance. *Buckman* simply preempts the legal theory of fraud on the FDA. It does not preclude the admission of *evidence or testimony* regarding a defendant's misrepresentations to the FDA. Plaintiff has not alleged fraud on the FDA as a legal theory, and this case does not implicate *Buckman* whatsoever.

### A.   Buckman Was Limited to Cases Involving A "Fraud on the FDA" Claim, A Claim That Plaintiff Have Not Alleged In This Case.

In *Buckman*, the Supreme Court held that any state tort law claim based on a cause of action for "fraud on the FDA" is preempted by federal law. *Id.* at 531 U.S. at 348. The Plaintiff in *Buckman* sought damages resulting from the use of orthopedic pedicle screws, and sued the consulting firm that assisted the manufacturer in applying to the FDA for approval, claiming that it had fraudulently represented the use and effects of the device to the FDA. *Id.* at 345-348. The government, appearing as *amicus curiae* in support of the consulting firm, stressed the narrowness of the issue: "The fraud claim is preempted, but if there is negligent design, negligent manufacturing, failure to warn, common law malpractice, all of those claims are available." Transcript of Oral Argument at 19, *Buckman Co. v. Plaintiff' Legal Comm.*, 531 U.S. 341 (2001)(No. 98-1768). The Supreme Court found "fraud on the FDA" as a *legal theory* preempted, emphasizing that the Medical Device Act specifically empowers the FDA, not individual consumers, to punish and deter fraud against the agency. *Id.* at 348.

3

This was a very narrow holding. Nonetheless, drug manufacturers and their attorneys began to argue that *Buckman* did not merely preempt a legal theory, but in fact operated to exclude any *evidence* that they had withheld or manipulated submissions to the FDA. In perhaps the most notable victory on this issue, GSK convinced the Third Circuit to accept this argument with respect to its manipulation of Paxil evidence submitted to FDA in a suicide case. *Colacicco v. Apotex, Inc.*, 521 F.3d 253, 273 (3d Cir. 2008)("This contention [that GSK manipulated or withheld information from the FDA] borders on the charge that GSK defrauded the FDA by manipulating or withholding such information. *Cf. Buckman*, 531 U.S. at 346-47. Such a claim, if supported by sufficient evidence, should be brought before the FDA."). This holding was vacated by the Supreme Court in 2009.

The Supreme Court reaffirmed the narrowness of *Buckman* in *Wyeth v. Levine*, 129 S. Ct. 1187 (2009). There, the U.S. Supreme Court made it perfectly clear that mere compliance with the federal Food, Drug and Cosmetic Act ("FDCA") and FDA regulations does not preempt state law product liability claims as a matter of law. Id. at 1189. The three dissenting justices viewed *Buckman* as authority for the idea that state juries could not second-guess FDA's balancing of risks and benefits in its approval of the drug. *See id.* at 1220 (Alito, J., dissenting). But the majority found the dissent's reliance on *Buckman* "especially curious, as that case involved state-law fraud-on-the-agency claims, and the Court distinguished state regulation of health and safety as matters to which the presumption [against preemption] does apply." Id. at 1195 n.3.

Meanwhile, the Plaintiff in *Colacicco* petitioned for certiorari from the Third Circuit's decision and, after *Levine*, the Supreme Court granted the petition, vacated, and remanded for further proceedings in light of the Supreme Court's decision in *Levine*. *Colacicco v. Apotex, Inc.*, 129 S. Ct. 1578 (2009). On remand, the Third Circuit agreed that "the defendants ha[d] not

4

met the heavy burden imposed by the decision in *Wyeth* on manufacturers seeking to preempt failure-to-warn claims," vacated its judgment and remanded the cases to the district courts. *See Order, Colacicco v. Apotex, Inc.*, Nos. 06-3107 & 06-5148 (3d Cir. Apr. 28, 2009).

Accordingly, the argument that *Buckman* operated to exclude evidence rather than merely preempt a narrow legal theory, has no remaining credibility. It is therefore astounding that Defendants continue to assert regulatory compliance as a defense in fact. Plaintiff is entitled to introduce evidence which rebuts Defendants' assertions that they complied with the FDCA and FDA regulations, and the Court must deny the instant Motion.

vacated less than a year later.

    **B.**    **The Supreme Court Confirms that a Regulated Company Cannot Rely on Agency Action or Inaction When it has Failed to Disclose Accurate Information.**

In *Altria Group, Inc. v. Good*, 129 S.Ct. 538 (2008), the plaintiff cigarette smokers claimed that the defendant cigarette manufacturers had misrepresented that their cigarettes were "light" and had "lowered tar and nicotine" The defendants claimed that federal law preempted the misrepresentation claims, both expressly and impliedly, arguing that they, with approval by the Federal Trade Commission ("FTC"), had agreed to disclose the tar and nicotine content of their cigarettes determined by a methodology approved by FTC. What they had not disclosed to FTC, however, was that their own internal studies showed that this methodology did not accurately demonstrate tar and nicotine levels that consumers actually inhaled. "Whereas the FTC initially believed that, in most instances, the Cambridge Method results provided a meaningful basis for smokers to compare the amount of tar and nicotine . . . petitioner's undisclosed internal research showed otherwise."[1] The Supreme Court found that the

---

[1] Brief for the United States as *Amicus Curiae* Supporting Respondents at *8, *Altria Group, Inc. v. Good*, 129 S.Ct. 538 (2008)(No. 07-562), 2008 WL 2472389.

defendants' failure to disclose its internal study results to FTC was evidence undermining the validity of the agency action, holding that "[i]t seems particularly inappropriate to read a policy of authorization into the FTC's inaction when that inaction is in part the result of petitioners' failure to disclose study results showing that Cambridge Filter Method test results do not reflect the amount of tar and nicotine that consumers of 'light' cigarettes actually inhale." *Id.* at 551 n.14.

Likewise, here, Bayer has already acknowledged a failure to disclose the existence of certain studies to the FDA, including the Kress and St. George's studies in 2003 and 2004, and the i-3 Safety Study in 2006. Such evidence, when coupled with evidence of Bayer's sales and marketing practices, it data base maintenance, its failure to investigate and/or report adverse events, and similar conduct are relevant and probative on a host of issues identified, *supra*, as well as on the issue of regulatory compliance. These factors demonstrate the need to admit evidence of Bayer's FDA interaction.

### C. The *Buckman* Preemption Is Not Implicated When Drug Manufacturer Defrauds the Public and the Medical Community.

Bayer's improper expansion of the *Buckman* case would unjustifiably preclude Plaintiff from providing essential and relevant evidence that demonstrates Bayer's knowledge regarding the harms of Trasylol. Essentially, Bayer is arguing that because its fraud was not limited to physicians, the scientific community and the public, but included the FDA, Plaintiff should be precluded from making any reference to Bayer's fraud. Bayer's argument is not only absurd, but has been rejected by numerous courts.

Plaintiff alleges that Bayer did not meet its duty to warn doctors and patients about the renal toxicity of Trasylol. As part of the proof of their traditional state common law and statutory claims, Plaintiff intend to introduce evidence that Bayer knew that Trasylol could cause

damage to kidneys, that Bayer withheld material safety data from doctors, patients and the FDA and that, when FDA finally received these data, the agency requested and readily approved additional warnings in the Trasylol labeling. Defendants' argument that the introduction of such evidence is preempted by the Supreme Court's decision in *Buckman Co. v. Plaintiff Legal Comm.*, 531 U.S. 341 (2001), overstates the significance of *Buckman*, which has no effect on Plaintiff claims or the evidence which may be used to prove them.

It was well established, even prior to *Buckman*, that there is no private cause of action under the FDCA. E.g., *Bailey v. Johnson*, 48 F.3d 965, 968 (6th Cir. 1995); *PDK Labs., Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1139 (4th Cir. 1993). *Buckman* is best understood as confirming that simple principle. Plaintiff Bryant does not allege "fraud on the FDA" as a cause of action nor does she intend to introduce evidence to simply prove "fraud on the FDA." Rather, the Plaintiff alleges that Bayer misled doctors and patients and that Bayer should and would have been able to provide more rigorous warnings. Implicit in that argument is evidence as to why the FDA-approved labeling was inadequate, that safety data belatedly submitted to the FDA were material, and that the FDA proceeded to approve a new renal side effects warning for Trasylol based in part upon those belatedly submitted data.

Defendants admit that the FDA story is relevant – "Bayer does not contend that all correspondence between it and FDA is irrelevant." See Defendants MIL at 9. Defendants' supporting memorandum opens with a three page narrative about how Trasylol was approved and regulated by the FDA, to suggest that they should be held blameless for their fraud on and misrepresentations to doctors and patients. And, in their Answers, Defendants assert as an Affirmative Defense that "Trasylol complied with the applicable product safety regulations" and

7

"[c]ompliance with such regulations demonstrates that due care was exercised with respect to the design, manufacture, testing, distribution, marketing, and sale of Trasylol®, and that it was neither defective nor unreasonably dangerous." *E.g., Bayer Healthcare Pharmaceuticals Inc.'s Answer and Additional Defenses to Plaintiff's Amended Complaint*, at 21 (Case 1:08-md-01928-DMM Doc. 2936). Clearly, Plaintiff should be permitted to rebut those defenses. As the Second Circuit stated, in *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 96 (2d Cir. 2006), aff'd, 552 U.S. 440 (2008):

> Finding preemption of traditional common law claims where fraud is not even a required element – but may be submitted to neutralize a drugmaker's use of an affirmative defense available under state law – would result in preemption of a scope that would go far beyond anything that has been applied in the past. Until and unless Congress states explicitly that it intends invalidation of state law claims merely because issues of fraud may arise in the trial of such claims, we decline to read general statutes like the FDCA and the [Medical Device Amendments] as having that effect.

Apparently, Defendants only object to the introduction of evidence (or argument) that tends to show that they misled or withheld information from the FDA. To bar Plaintiff from telling their side of the FDA story, as well, would amount to preemption as a matter of law. Yet the U.S. Supreme Court confirmed in *Levine* that compliance with FDCA and FDA regulations does not preempt state law product liability claims as a matter of law:

> [I]t has remained a central premise of federal drug regulation that the manufacturer bears responsibility for the content of its label at all times. It is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market. See, e.g., 21 CFR §201.80(e) (requiring a manufacturer to revise its label "to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug"); §314.80(b) (placing responsibility for post-marketing surveillance on the manufacturer); 73 Fed. Reg. 49605 ("Manufacturers continue to have a responsibility under Federal law . . . to maintain their labeling and update the labeling with new safety information").

*Wyeth v. Levine*, 129 S. Ct. 1187, .

Plaintiff has not alleged a cause of action for "fraud on the FDA." Evidence relating to what Bayer knew and when, what went into the FDA-approved labeling, what was omitted, and what material data the FDA relied upon in approving a warning about the toxic effects of Trasylol, are all clearly relevant to the traditional state causes of action asserted by the Plaintiff. Defendants have opened this door, and Plaintiff is entitled to introduce evidence in response to Bayer's affirmative regulatory compliance defense.

### D. Evidence Regarding Bayer's Interactions With The FDA is Probative and Not Prejudicial

The Defendants disingenuously argue that allowing Plaintiff to introduce evidence about the FDA regulatory process involving Trasylol would be prejudicial: "Bayer would be forced to explain at length to the jury the FDA regulatory process (though it has no direct bearing on the case) and to defend Bayer's actions before FDA." Defendants' MIL at 10. As the Defendants' pleadings show, however, Bayer has every intention of discussing the FDA approval process and suggesting that FDA approval of Trasylol is exculpatory, at every possible turn.

Furthermore, evidence about what the FDA did and did not do is not speculative. Plaintiff agree that speculation about FDA actions would be inappropriate, but Plaintiff instead will offer evidence as to what the agency did or did not do based on what the agency did or did not know. The issue here is that Bayer did not comply with federal reporting requirements and this is evidence of their failure to act as a reasonable prudent company, something that bears on the Defendants' negligence. Plaintiff intends to offer expert opinion regarding standard regulatory practices: Such evidence is not speculative. In fact, Bayer's generic regulatory expert,

9

Dr. Fenichel, testified at his deposition that the regulations set standards and violations may be evidence that company did not act appropriately.[2]

Given all of the foregoing, Defendants have not met the high bar of showing that all such evidence will always be prejudicial. Federal Rule of Evidence 403 permits a court to exclude relevant evidence only when "it's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir. 1994). Rule 403 is "an extraordinary remedy" whose "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001). As mentioned above, evidence relating to what Bayer knew and when, what went into the FDA-approved labeling, what was omitted, and what material data the FDA relied upon in approving a warning about the toxic effects of Trasylol, are all clearly relevant to the causes of action asserted by the Plaintiff. Pursuant to the holding of *Bouchard* and *Globetti*, evidence

---

[2] Deposition of Robert Finichel, MD, December 18, 2009 at pages 78-81:

"Q. Next proposition: It's a central premise of federal drug regulation that the manufacturer bears responsibility for the contents of its label at all times. A. Yes. Q Okay. Manufacturer -- a manufacturer is charged both with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market? A. True. Q. You agree with the proposition that the FDA has limited resources to monitor the 11,000 drugs that are on the market? A. Every government organization has limited resources. Q. The manufacturer has superior access to information about their drugs than the FDA does? MS. COOK: Object to form. A. That is only -- that's not uniformly true -- BY MR. LOVE: Q. Okay. 13 A. -- because very often what's known about a drug is a surmise from similar drugs. And I can give you examples of that, where labeling was changed, new adverse effects were indicated in labeling because of experience with drugs other than the labeled drug. Q. Okay. You agree with the proposition that the federal labeling standards are minimal standards for drug labels? MS. COOK: Object to form. A. I think we've just recently had a very well known case in which that was very clearly laid out. BY MR. LOVE: Q. Okay. I mean, it's not your opinion that simply because Bayer complied with federal regulations that they somehow did and acted appropriately, true? MS. COOK: Object to form. A. It's not necessarily true that compliance with federal regulations is all that's required to act appropriately. BY MR. LOVE: Q. Okay. A. It may or may not be true that that is enough. Q. Okay. You said "not necessarily." Expound on that. A. Well, there can be, as we've recently learned, an overriding and more restrictive state requirement. Q. **And we agree that simply because a manufacturer complies with the federal regulations doesn't mean it acted appropriately or didn't act appropriately, true?** MS. COOK: Object to form. A. **That's correct.** BY MR. LOVE: Q. Okay. And, finally, you agree that a drug company should be proactive in monitoring, identifying, and reporting safety signals. A. Yes." Emphasis added.

10

regarding Bayer's failure to warn of the risks of Trasylol and its misrepresentations to the FDA (which were repeated by Bayer to the scientific and medical communities) are both relevant and admissible as it relates to Bayer's knowledge about the adequacy of its warnings and the truth of information that it represented to or concealed from Ms. Bryant and her physicians. The Plaintiff should be permitted to present this evidence at trial.

## II.  CONCLUSION

For the foregoing reasons, Defendants' *Motion in Limine to Exclude Evidence, Testimony, and Argument Alleging That Bayer Provided Inadequate or Incomplete Data to the Federal Food and Drug Administration* should be denied.

This the 8th day of February, 2010.

Respectfully submitted,

Neal L. Moskow, Esq.
URY & MOSKOW, LLC
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone (203) 226-8088
Facsimile  (203) 610-6399
Email: neal@urymoskow.com

Edward J. Parr, Jr., Esq.
URY & MOSKOW, PLLC
1250 Connecticut Ave., NW, Suite 200
Washington, DC 20036
Telephone  (202) 321-8982
Facsimile: (202) 318-3255
Email: tedparr@urymoskow.com

Dave P. Matthews, Esq.
Julie L. Rhoades, Esq.
The Matthews Law Firm
2509 Sackett Street
Houston, TX  77098
Phone: 713-522-5250
Email: dmatthews@thematthewslawfirm.com
Email: jrhoades@thematthewslawfirm.com

11

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2009, I filed the foregoing document via Federal Express with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel or records or pro se parties identified on the attached Service List in the manner specified, either via Electronic Mail or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

Neal L. Moskow
CT Bar # 04516

## SERVICE LIST

James R. Ronca
Email: jronca@anapolschwartz.com
ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN &
SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-735-1130
Facsimile: 215-875-7758
*Plaintiff' Steering Committee/Co-Lead Counsel*

Joseph A. Osborne
Email: JAOsborne@babbitt-johnson.com
BABBITT, JOHNSON, OSBORNE
& LECLAINCHE, P.A.
1641 Worthington Blvd., Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile: 561-684-6308
*Liaison Counsel for Plaintiff and Plaintiff'
Steering Committee*

Patricia E. Lowry
Email: plowry@ssd.com
Barbara Bolton Litten
Email: blitten@ssd.com
SQUIRE, SANDERS & DEMPSEY, L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile: 561-655-1509
*Liaison Counsel for Defendants and
Attorney for Defendants Bayer Corporation, Bayer
Healthcare Pharmaceuticals, Inc., Bayer
Healthcare LLC, Bayer AG, and Bayer Healthcare
AG*

Scott A. Love
Email: slove@triallawfirm.com
CLARK, DEAN & BURNETT, G.P.
440 Louisiana #1600
Houston, TX 77002
Telephone: 713-757-1400
Facsimile: 713-759-1217
*Plaintiff' Steering Committee/Co-Lead Counsel*

Richard K. Dandrea, Esq.
Email: rdandrea@eckertseamans.com
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone: 412-566-6000
Facsimile: 412-566-6099
*Defendants Co-Lead Counsel and
Attorney for Defendants Bayer Corporation, Bayer
Healthcare Pharmaceuticals, Inc., Bayer
Healthcare LLC, Bayer AG, and Bayer Healthcare
AG*

Alan G. Schwartz
Email: aschwartz@wiggin.com
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Telephone: 203-498-4400
Facsimile: 203-782-2889
*Defendants Co-Lead Counsel and
Attorney for Defendants Bayer Corporation, Bayer
Healthcare Pharmaceuticals, Inc., Bayer
Healthcare LLC, Bayer AG, and Bayer Healthcare
AG*

Eugene A. Schoon
Email: eschoon@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Catherine Barrad, Esq.
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, California 90013
Telephone: 213-896-6688
Facsimile: 213-896-6600
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Philip S. Beck
Email: philip.beck@bartlit-beck.com
Steven E. Derringer
Email: steven.derringer@bartlit-beck.com
Shayna Cook
Email: shayna.cook@bartlit-beck.com
**BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone: 312-494-4400
Facsimile: 312-494-4440
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*