UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION — MDL-1928 <br><br>This Document Relates to: <br><br>*Bryant v. Bayer Corp., et al.*, <br>Case No. 9:08-cv-80868 <br><br>*Morrill v. Bayer Corp., et al.*, <br>Case No. 9:08-cv-80424 <br><br>*Bechara, et al., v. Bayer Corp., et al.*, <br>Case No. 9:08-cv-80776 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**BAYER'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT THAT BAYER HAD A DUTY TO COMPARATIVELY TEST TRASYLOL**

PLEASE TAKE NOTICE THAT Defendants ("Bayer") respectfully submit this motion *in limine* to preclude evidence and argument that Bayer had a duty to comparatively test Trasylol by conducting head-to-head clinical trials comparing Trasylol with Amicar and tranexamic acid.  *See* Fed. R. Evid. 402, 403.

**MEMORANDUM OF LAW**

Plaintiffs allege that they developed renal failure due to Trasylol and that their injuries would not have occurred had they been adequately warned of Trasylol's alleged side effects.  These claims necessarily focus on the nature and extent of Trasylol warnings, their surgeon's knowledge of Trasylol's alleged side-effects, whether Trasylol can cause renal failure, whether Trasylol did proximately cause plaintiffs' renal failure, and whether a new or different warning would have prevented those injuries.

Plaintiffs (and their experts), however, seek to confuse the issues by arguing that Bayer inadequately studied Trasylol because it did not conduct head-to-head clinical trials comparing Trasylol with Amicar and tranexamic acid, drugs from a different class that are sometimes used by doctors in heart surgery but which are not approved for the same indication as Trasylol.  *See*, *e.g.*, Eisenberg Report (Ex. A) at 12 ("In my opinion, it was the responsibility of Bayer to conduct these types of head to head trials to demonstrate improved efficacy over cheaper alternatives and also to demonstrate safety").  Bayer's clinical trials of Trasylol all compared the medication to placebo.  Had Bayer conducted head-to-head trials, the argument goes, it would have found out that Trasylol causes acute renal failure and would have warned physicians that it did so in rates higher than Amicar and tranexamic acid.

This argument has no support in the law.  "[T]he law does not require a manufacturer to study and analyze the products of others."  *Powell v. Standard Brands Paint Co.*, 166 Cal. App. 3d 357, 364 (1985); *see also Ackley v. Wyeth Laboratories, Inc.*, 919 F.2d 397, 405 (6th Cir. 1990) (manufacturer is "obligated to make a reasonable disclosure of all the risks inherent in its own drug.  It is not obligated to provide a comparison of its drug with others") (internal citation omitted).  As a result, evidence or argument suggesting or implying that Bayer violated this non-existent duty should be excluded as irrelevant and misleading.  *See* Fed. R. Evid. 402, 403; *see also Whitfield v. Harris*, 474 F. Supp. 2d 822, 824 (N.D. Miss. 2007) (granting defendant's motion in *limine* to preclude "arguments or references ... 'which suggest jurors apply a standard of judgment beyond what the law requires'").

**ARGUMENT**

Evidence and argument that Bayer had a duty to conduct head-to-head clinical trials comparing Trasylol with Amicar and tranexamic acid should be excluded because there is no common-law, statutory or regulatory duty to conduct such studies. Nor should plaintiff be permitted to argue that Bayer had a "moral" or "ethical" duty to conduct such a clinical trial. The issues in this case turn on what is legal, not what is ethical.

**I.    BAYER HAD NO LEGAL DUTY TO COMPARATIVELY TEST TRASYLOL**

The Court should exclude any evidence or argument suggesting that Bayer had a duty to conduct comparative tests because no such duty exists.

As a preliminary matter, there is no separate cause of action for an alleged failure to test a prescription medication.[1] To the contrary, "the duty of testing and inspecting has no significance apart from the results of the product's design, and manufacture and the relevant warnings." *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1485 (1999); *Adams v. G.D. Searle & Co., Inc.*, 576 So.2d 728, 730-31 (Fla. 2d DCA 1991) ("a manufacturer's duty to inspect and test is not a separate cause of action"); *McClain v. Metabolife Intern., Inc.*, 193 F. Supp. 2d 1252, 1257 (N.D. Ala. 2002); *Kociemba v. G.D. Searle & Co., Inc.*, 707 F. Supp. 1517 (D. Minn. 1989). In so holding, the court rejected out-of-hand plaintiff's argument that had the defendant properly tested the implants, "it 'would have produced information that was not otherwise known or knowable in the scientific community at the time of manufacture and distribution.'" *Valentine*, 68 Cal. App. 4th at 1486. According to the *Valentine* court,

---

[1] The principles at issue in this motion are generally applicable and thus the Court, as an MDL court, need not reach choice of law to rule upon this motion. *See In re Meridia Prod. Liab. Litig.*, 328 F.Supp.2d 791, 820 n.26 (N.D. Ohio 2004) ("It is well-settled law that, when a particular issue raised by a motion for summary judgment depends upon generally applicable statements of law, the MDL court need not engage in a choice of law analysis to resolve" it).

3

"imposition of liability for breach of an independent duty to conduct long-term testing, where the causal link to the known harm to plaintiff is the *unknown outcome of testing that was not done*, would be beyond the pale of any California tort doctrine we can identify." *Id*.

Any alleged failure-to-test thus collapses into plaintiffs' strict liability and negligent failure-to-warn claims. Even so, evidence and argument about comparative testing still are irrelevant to plaintiffs' failure-to-warn claims. "[I]t is clear the manufacturer's duty [to warn] is restricted to warnings based on the characteristics of *the manufacturer's own product*." *Powell*, 166 Cal. App. 3d at 364 (emphasis in original).[2] "Understandably, *the law does not require* a manufacturer to *study and analyze the products of others* and to warn users of risks of those products." *Id*. (emphasis added).

This general principle has been applied by courts in the pharmaceutical context. In *Ackley v. Wyeth Laboratories, Inc.*, 919 F.2d 397 (6th Cir. 1990), for example, the plaintiff alleged that the defendant should have included in its label a comparison of its vaccine to other vaccines and possible treatments. *Id*. at 405. The Sixth Circuit categorically rejected plaintiff's argument as a matter of law, holding that a manufacturer is "obligated to make a reasonable disclosure of all the risks inherent in its own drug. It is not obligated to provide a comparison of its drug with others." *Id*.

Similarly, in *Pluto v. Searle Laboratories*, 690 N.E. 2d 619 (Ill. App. 1997), the plaintiff alleged "that Searle had a duty to warn about the alleged increased risk of contracting an STD or PID when using an IUD (a prescription drug) as compared to other forms of birth

---

[2] This is a standard principle of products liability law. *See* Am. L. Prod. Liab. 3d § 32:9 ("The manufacturer's duty to warn is restricted to warnings based on the characteristics of the manufacturer's own products. The law generally does not require a manufacturer to study and analyze the products of others and warn users of the risks of those products") (collecting cases).

4

control." *Id*. at 621. Following *Ackley*, the Illinois Court of Appeal expressly rejected plaintiff's argument. The court explained its reasoning as follows:

> Searle is under no duty to provide information on other products in the marketplace. Such a duty would require drug manufacturers to rely upon the representations made by competitor drug companies. This arrangement would only lead to greater liability on behalf of drug manufacturers that were required to vouch for the efficacy of a competitor's product.

*Id*.

These cases make clear that there is no common-law duty to test or warn about a medication in comparison with its competitors. Likewise, there is no statute or regulation that mandates comparative testing or warning. The Food Drug and Cosmetic Act, which governs testing of prescription drugs, is silent on whether manufacturers must compare their drugs to others that are not generic equivalents.

FDA regulations are also silent on this issue. FDA approval of a drug depends on the provision of "adequate and well-controlled studies" to demonstrate the safety and efficacy. *See* 21 C.F.R. § 314.126. The best study compares the tested drug with a placebo (an inactive preparation that looks like the test drug), or no treatment, where the "placebo effect is negligible." *Id.* Only where ethics prohibit the use of placebos (for example when testing therapies for bipolar or schizophrenic patients), do the regulations contemplate using an "active treatment concurrent control," which compares the test drug to a "known effective therapy" (a drug that is already approved for the indication that is being sought). *Id*. at § 314.126 (b) (2) (iv). Active control trials are dependent on "previous placebo-controlled studies of the active control drug." *Id*.

Those regulations do not mandate comparative tests for Trasylol because placebo-controlled trials of blood-sparing therapies for patients undergoing CABG surgeries were ethically permitted. In seeking FDA approval of Trasylol, Bayer conducted and submitted a

5

series of placebo-controlled trials, the design of which had been discussed with FDA and approved as ethical by the Institutional Review Boards of each of the medical centers that participated in the studies. Moreover, Amicar and tranexamic acid each are FDA-approved for a different indication than Trasylol and, at the time Trasylol clinical trials were underway and to this day, neither was FDA-approved as a prophylactic measure to prevent blood loss in CABG procedures.[3]

Indeed, even plaintiffs' own regulatory expert, Dr. Suzanne Parisian, does not support plaintiff's view that comparative clinical trials were mandatory; rather, she merely opines that Bayer *could* have done them. In other words, she did not testify that Bayer "should have" conducted head-to-head clinical trials comparing Trasylol with Amicar and tranexamic acid, only that it "could have" done so:

> Q. Okay. Now you point to several study proposals in your report. And are these proposals that you point to that were received by Bayer, *are these the proposals that you say that Bayer should have done*?
>
> A. No. The reason I say is that they *can do studies with Amicar*.

Parisian Dep. (Ex. B) at 242:16-21 (emphases added); *see also id*. at 164:6-16 (testifying that "you could do studies" comparing Trasylol and Amicar).[4]

---

[3] Amicar is "useful in enhancing hemostasis when fibrinolysis contributes to bleeding." *See* Amicar's Package Insert (Ex. C). "The drug should NOT be administered without a definite diagnosis and/or laboratory finding indicative of hyperfibrinolysis (hyperplasminemia)." *Id*. at 3 (emphasis in original). Tranexamic acid (Cyklokapron) "is indicated in patients with hemophilia for short-term use (two to eight days) to reduce or prevent hemorrhage and reduce the need for replacement therapy during and following tooth extraction." *See* Tranexamic Acid Package insert (Ex. D) at 2.

[4] Bayer disagrees with Dr. Parisian's conclusion that it could have done comparative clinical trials without overcoming multiple regulatory and ethical hurdles. Given that the proposed comparator drugs were not approved for the same indication, and that Trasylol was proved to be safe and effective as compared to placebo, a comparative study would have raised serious regulatory and ethical issues.

6

In short, there is no common-law, statutory or regulatory duty to comparatively test a medication. The Court thus should prevent plaintiff and her experts from trying to impose one. *Cf. Whitfield v. Harris*, 474 F. Supp. 2d 822, 824 (N.D. Miss. 2007) (granting defendant's motion in *limine* to preclude "arguments or references ... 'which suggest jurors apply a standard of judgment beyond what the law requires'").

## II.   EVIDENCE OR ARGUMENT THAT BAYER HAD A MORAL OR ETHICAL DUTY TO COMPARATIVELY TEST TRASYLOL SHOULD BE EXCLUDED

Plaintiffs' experts appear to concede that Bayer had no legal or regulatory obligation to conduct comparative tests. They nonetheless believe that an amorphous and unwritten moral or ethical duty compelled such tests, as shown by the following testimony from plaintiffs' expert Dr. Eisenberg based on his expert report:

> Q. You say: "In my opinion, it was the responsibility of Bayer to conduct these head to head trials in order to demonstrate improved efficacy of cheaper alternatives and also demonstrate safety." Do you see that?
>
> A. Yes.
>
> Q. When did that become Bayer's responsibility?
>
> A. Well, as I just said in the previous question, I don't know what the regulatory requirements are for pharmaceutical companies. I am not an expert in that area. I think though, that companies that put a drug on the market have a responsibility to show that they are efficacious and safe.
>
> Q. I am just asking for you to tell me when it became the responsibility of Bayer to conduct head to head trials against aminocaproic acid and tranexamic acid to demonstrate and prove efficacy and safety. When did that become Bayer's responsibility?
>
> A. You know, the sense as in my opinion. So I don't know that there is a regulatory standard to do that. In my opinion, they needed to do this right at the beginning of this whole story.

Eisenberg Dep. (Ex. E) at 204:23-205:25.

Any conceivable probative value of this testimony is outweighed by the prejudicial effect of questioning on the basis of amorphous moral or ethical responsibilities.  *See* Fed. R. Evid. 403.  Testimony directed to what the fair, moral, or ethical action would have been, especially when such testimony or argument bears the unmistakable implication that defendants failed the test, can have only one purpose: to create confusion, causing jurors to conflate "moral" or "ethical" standards with the *legal* standards about which they will be instructed.  This is archetypal "unfair prejudice" because it tends to "suggest decision on an improper basis," such as "an emotional one."  *See* Fed. R. Evid. 403 cmt.

This sort of testimony is especially misleading here because plaintiffs' experts concede that Trasylol was more thoroughly studied than either Amicar or tranexamic acid:

> Q.  Would you agree that the safety and efficacy of aprotinin in CABG surgery has been studied far more extensively than the safety and efficacy of lysine analogues in CABG surgery?
>
> A.  I would say that that's my impression.  Again, as I mentioned several times, I haven't looked at detail at the studies that looked at tranexamic acid versus placebo or aminocaproic acid versus placebo, but my impression is aprotinin has been explored much more in depth.

Eisenberg Dep. (Ex. E) at 192:7-17; *see also* Toback Dep. (Ex. F) at 301:2-5 ("Q.  As between the three drugs, aprotinin, tranexamic acid, and Amicar, which of those three drugs has been the most thoroughly studied?  A.  Aprotinin").

As a result, even were this evidence or argument otherwise marginally relevant, its probative value would be outweighed by its prejudicial effect, confusion of the issues, and misleading the jury.  Such evidence and argument should, therefore, be excluded.  *See* Fed. R. Evid. 403; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531,545 (S.D.N.Y. 2004) (excluding testimony regarding ethical obligations under Rule 403, where such testimony "would be likely unfairly to prejudice and confuse the trier by introducing the 'experts'' opinions and

8

rhetoric concerning ethics as alternative and improper grounds for decision on bases other than the pertinent legal standards.").

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court exclude any and all evidence and argument that Bayer had a duty to conduct head-to-head trials comparatively testing Trasylol with Amicar and tranexamic acid.

## RULE 7.1(A)(3)(a) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good faith with counsel for all parties who may be affected by the relief sought in the motion, and has been advised that plaintiffs will contest this motion.

Date:  February 16, 2010                     Respectfully submitted,

                                            */s/ Barbara Bolton Litten*
                                            Patricia E. Lowry
                                            Florida Bar No. 332569
                                            E-mail:  plowry@ssd.com
                                            Barbara Bolton Litten
                                            Florida Bar No. 91642
                                            E-mail:  blitten@ssd.com
                                            **SQUIRE SANDERS & DEMPSEY L.L.P.**
                                            1900 Phillips Point West
                                            777 South Flagler Drive
                                            West Palm Beach, FL  33401-6198
                                            Telephone:  561-650-7200
                                            Facsimile:   561-655-1509

9

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-7036

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation,
Bayer HealthCare Pharmaceuticals Inc.,
and Bayer Schering Pharma AG*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

SERVICE LIST

In re Trasylol Products Liability Litigation – MDL-1928
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

United States District Court
Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN
 & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
 & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Joseph A. Osborne
Email:  jaosborne@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
 & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Counsel for Plaintiffs Bechara & Saad*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs
and Counsel for Plaintiff Anna Bryant*

David Matthews
Email:  dmatthews@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:  713-535-7184
*Attorneys for Plaintiff Anna Bryant*

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN FRYE
    O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone:  813-223-7474
Facsimile:   813-229-6553
*Counsel for Plaintiff Melissa Morrill*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509
*Liaison Counsel for Defendants*

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:   713-222-0066
*Counsel for Plaintiff Naguib Bechara*

Tim K. Goss
Email: goss39587@aol.com
Tamara L. Banno
Email: tbanno@tlb-law.com
**FREESE &GOSS PLLC**
3031 Allen Street
Suite 100
Dallas, TX 75204
Telephone:  214-761-6610
Facsimile:   214-761-6688
*Counsel for Plaintiff Naguib Bechara*