# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION — MDL-1928 | ) ) ) |
|  | ) |
| THIS DOCUMENT RELATES TO: | ) |
|  | ) |
| *Anna Bryant* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80868 | ) ) |
|  | ) |
| *Melissa Morrill* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80424 | ) ) |
|  | ) |
| *Naguib Bechara, et al.,* v. *Bayer Corp., et al.,* Case No. 9:08-cv-80776 | ) ) |
|  | ) |

## DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ANIMAL-BASED <u>PHARMACOLOGICAL STUDIES TO PROVE CAUSATION</u>

Defendants move *in limine* to exclude evidence, testimony, and argument regarding animal-based pharmacological studies to prove causation in humans on the grounds that they are irrelevant to the issue of causation in humans, and any possible probative value stemming from their admission on the issue of causation is substantially exceeded by risks of undue prejudice, confusion of the issues, misleading the jury, and waste of time. *See* Fed. R. Evid. 401-403.

## INTRODUCTION AND SUMMARY

When new drugs are being developed, testing on animals is obligatory before Food and Drug Administration ("FDA") approval can be secured. *See*, *e.g.*, 21 C.F.R.

§ 312.23(a)(8) (requiring animal toxicology study results in new drug application); 21 C.F.R.

§ 314.50(d)(2) (requiring new drug applicant to describe all animal testing conducted with drug).

Animal studies of investigational new drugs are often designed to understand the levels at which

the dose becomes toxic and can provide useful information to the FDA and prescribing

physicians regarding the pharmacokinetics of a new drug.  But rarely will the FDA deem a drug

safe and effective based upon the results of animal studies alone; human clinical trials remain

essential.

Beginning in the 1960s and continuing into the early 1990s, Bayer performed

preclinical studies of Trasylol.  As is common in pharmaceutical development, these studies

included animal studies on dogs, rabbits, rats and mice involving high-dosage exposures over a

period of months.

Although animal studies play a role in the development of prescription

medications and can provide useful information, numerous Courts have recognized that these

studies are not scientifically reliable evidence of causation in humans and should not be admitted

for that purpose.  *See*, *e.g.*, *Rider* v. *Sandoz Pharms. Corp.*, 295 F.3d 1194, 1201 (11th Cir. 2002)

(upholding district court excluding evidence of causation based on animal studies); *Allison* v.

*McGhan Med. Corp*, 184 F.3d 1300, 1314 (11th Cir. 1999) (same, collecting cases); *In re Baycol*

*Prods. Litig.*, 532 F. Supp. 2d 1029, 1065 (D. Minn. 2007) (expert opinions based on animal

studies regarding the toxicity of Baycol in humans not "scientifically reliable" and thus

inadmissible); *see also*, *e.g.*, *Soldo* v. *Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 546 (W.D. Pa.

2003) ("studies of laboratory animals are routinely excluded as irrelevant and unreliable when

proffered as a basis for medical causation testimony").  Indeed, even some of plaintiffs' putative

experts acknowledged that the substantial differences between human and animal physiology render animal test results unable to prove medical causation in humans.[1]

Nevertheless, defendants anticipate that plaintiffs may attempt to introduce evidence and argument concerning such animal studies in an effort to support their claim that Trasylol causes kidney dysfunction in humans or for other improper purposes. *See*, *e.g.*, Deposition of Suzanne Parisian, M.D. (Ex. C) at 211:2-4; 304:10-13 ("the animal data's very strong in terms of the mechanism for action for destroying a kidney"); Deposition of John Lettieri, Ph.D. (Ex. D) at 69 (plaintiff's counsel asking whether, during animal studies, "there's harm to the animals, correct?").

Plaintiffs should not be permitted to introduce evidence or argument concerning animal studies to prove causation for two main reasons. First, due to obvious differences between species and the extraordinarily high doses given to animals during testing, these studies do not demonstrate medical causation in humans taking prescribed doses of a drug. *In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1291-92 (M.D. Fla. 2007) (noting the limitations of animal studies, and difficulties of extrapolating across species as well as the customary use of high doses in animal studies); *see also*, *e.g.*, *Brock* v. *Merrell Dow Pharms., Inc.*, 874 F.2d 307, 313-14 (5th Cir. 1989); *Lynch* v. *Merrell-Nat'l Labs.*, 830 F.2d 1190, 1194 (1st Cir. 1987); *Soldo*, 244 F. Supp. 2d at 547. Second, any discussion of adverse health effects in (and statements regarding the suffering of) animals would unduly prejudice Bayer and should be excluded under Federal Rule of Evidence 403.

---

[1] *See, e.g.*, Deposition of Gary Toback, M.D. ("Toback Dep.") (Ex. A) at 182 (explaining that results of animal studies "[don't] tell me that it's true in humans. I mean, rats and humans really are different"); Deposition of Mark Furberg, M.D. (Ex. B) at 163:14-19 (observing that he did not review animal studies related to Trasylol because "[t]hey're not relevant. We're talking about human beings here, the harm to humans and not harm to rats.").

**ARGUMENT**

**I.     ANIMAL STUDIES ARE IRRELEVANT TO PROVING CAUSATION IN HUMANS.**

Although animal studies can provide useful information to the FDA and prescribing physicians in some respects, animal studies are not relevant to show medical causation or injury, for two reasons:  chemical reactions in one species do not presumptively correspond to reactions in other species; and the extremely high doses of drugs generally given to animals in lab tests render the tests incompetent to prove medical causation at normal, prescribed doses.

**A.     Extrapolations From Chemical Reactions In Lab Animals Are Unreliable And Irrelevant To Prove Legal Causation In Humans.**

As numerous Courts have recognized, metabolic dissimilarities between humans and other mammals preclude extrapolation from lab test results to show causation in humans. *See, e.g.*, *In re Accutane*, 511 F. Supp. 2d at 1292; *Allison*, 184 F.3d at 1313-14 (holding that the trial court properly excluded an expert who "failed to explain the correlation of the results of Lightfoote's rat studies . . . to symptoms in a human patient"); *Kilpatrick* v. *Breg, Inc.*, No. 08-10052, 2009 WL 2058384, at *6 (S.D. Fla. June 25, 2009) (recognizing "the difficulty inherent in extrapolating conclusions about human disease from animal-based studies").

To be sure, in some instances, "properly designed and conducted animal testing can yield relevant and useful information in the field of human toxicology" and may provide useful information to the FDA and prescribing physicians.  *See, e.g.*, *Bourne ex rel. Bourne* v. *E.I. Dupont de Nemours & Co.*, 189 F. Supp. 2d 482, 496 (S.D. W. Va. 2002); *accord Turpin* v. *Merrell Dow Pharms., Inc.*, 959 F.2d 1349, 1360-61 (6th Cir. 1992).  But such data cannot be used to prove causation in humans.

4

**B.      The Extremely High Dosage Levels Administered In Animal Studies Render The Results Irrelevant To Causation.**

The second reason that animal testing data cannot prove causation is that lab animals are typically administered a drug at levels exponentially greater than doses prescribed to humans. *E.g.*, *Gen. Elec. Co.* v. *Joiner*, 522 U.S. 136, 144 (1997) (holding district court did not abuse its discretion in excluding animal studies evidence where mice had "massive doses of PCBs" injected into them, while the plaintiff's "exposure to PCBs was far less than the exposure in the animal studies"). For this reason, courts have found that "extrapolations . . . from high-dosage, single species *in vivo* testing" in animals to causation in humans are unreliable and irrelevant. *Bourne*, 189 F. Supp. 2d at 496 (excluding expert testimony that purported to draw conclusions about harmfulness of drug in humans from high-dose animal testing); *accord In re Baycol*, 532 F. Supp. 2d at 1065 ("Expert opinion testimony has been excluded when the expert fails to take into account the critical differences in animal data and human experiences, including but not limited to extrapolation in dosing."); *Soldo*, 244 F. Supp. 2d at 547-48 (holding evidence about animal studies inadmissible because, inter alia, "plaintiff's experts did not attempt to correlate the doses used in [animal] studies to the dose" used by humans); *Wade-Greaux* v. *Whitehall Labs., Inc.*, 874 F. Supp. 1441, 1454 (D.V.I. 1994) ("In addition to species specificity, the results of animal studies cannot be extrapolated to humans because such studies often employ quantities of the agent far in excess of the equivalent human therapeutic dose."); *Kilpatrick*, 2009 WL 2058384, at *7 (excluding expert's causation testimony in part due lack of explanation of "the possible differences in dose-response relationship between humans and rabbits").

Here, even plaintiffs' own putative generic experts acknowledge that, given the nature of animal testing, "massive overdoses" were given to animals in the studies on which they rely. *See*, *e.g.*, Toback Dep. (Ex. A) at 252:11-253:16. For these studies to be relevant to the

issue of causation, they must relate to dosages of Trasylol reasonably comparable to those administered to a plaintiff.  *See Brock*, 874 F.2d at 314 ("extrapolation of [animal test] findings to humans cannot be done without knowing the dosage level and the corresponding drug level in the bloodstream of" the patient); *In re Accutane*, 511 F. Supp. 2d at 1293 ("Dose is the single most important factor to consider in evaluating whether an alleged exposure caused a specific adverse event.") (quoting David Eaton, *Scientific Judgment and Toxic Torts – A Primer in Toxicology for Judges and Lawyers*, 12 J.L & Pol'y 1, 11 (2003)).  Animal testing data, which involve dosages wildly out of proportion to those administered to a plaintiff (or any patient), cannot provide meaningful evidence on the issue of causation.

For these reasons, animal studies involving Trasylol are irrelevant to show causation.  *See* Fed. R. Evid. 401-402.

**II.   CARE MUST BE TAKEN SO THAT ANY PROBATIVE VALUE ATTRIBUTED TO ANIMAL TESTING IS NOT SUBSTANTIALLY OUTWEIGHED BY THE RISKS OF UNDUE PREJUDICE, CONFUSION OF ISSUES, MISLEADING THE JURY, AND WASTE OF TIME.**

In any event, care must be taken so that any probative value animal studies might have is not outweighed by the dangers of undue prejudice, confusion of the issues, misleading the jury, and waste of time that the admission of such matters would create for these trials.  *See* Fed. R. Evid. 403.

Admission of this evidence on the issue of causation would carry a significant risk that the jury could misinterpret the data, inferring causation from the generalized results of the tests despite the absence of relevant proof.  In the same vein, admission of the evidence would create a "confusion of issues" by focusing the jury's attention on unrelated allegations of injury and causation reflected in the animal studies that necessarily would divert the focus from relevant testing in humans as well as each plaintiff's alleged medical conditions.

Admission of the animal test data to prove causation would also be a time-consuming and unnecessary distraction from the real issues at trial because it would require Bayer to adduce additional evidence to educate the jury about the differences between testing in animals and clinical trials in humans, and to try to correct the misimpressions created by the animal study data.  Such undue delay is specifically contemplated by Rule 403, and is an independent reason to exclude the evidence.

In addition, admission of these studies without proper limits also would unfairly prejudice Bayer by playing to jurors' natural sympathy toward animals.  Animal testing that led to morbidity and mortality in dogs or other animals could unfairly sway a juror, notwithstanding the fact that animal testing is a routine and well-accepted part of new drug development.  *See*, *e.g.*, 21 C.F.R. § 314.50(d)(2) (requiring new drug applicant to describe all animal testing conducted with drug).

## CONCLUSION

For these reasons, Bayer respectfully requests that this Court grant its motion and preclude the introduction of animal-based pharmacological studies regarding Trasylol to prove causation.

## RULE 7.1(A)(3) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good

faith with counsel for all parties who may be affected by the relief sought in the motion, and has

been advised that plaintiffs will contest this motion.


February 16, 2010                              Respectfully submitted,


                                               */s/ Barbara Bolton Litten*
                                               Patricia E. Lowry
                                               Florida Bar No. 332569
                                               E-mail:  plowry@ssd.com
                                               Barbara Bolton Litten
                                               Florida Bar No. 91642
                                               E-mail:  blitten@ssd.com
                                               **SQUIRE SANDERS & DEMPSEY L.L.P.**
                                               1900 Phillips Point West
                                               777 South Flagler Drive
                                               West Palm Beach, FL  33401-6198
                                               Telephone:  561-650-7200
                                               Facsimile:  561-655-1509

                                               Philip S. Beck
                                               Email:  philip.beck@bartlit-beck.com
                                               Steven E. Derringer
                                               Email:  steven.derringer@bartlit-beck.com
                                               **BARTLIT BECK HERMAN PALENCHAR**
                                                  **& SCOTT LLP**
                                               54 W. Hubbard Street, Suite 300
                                               Chicago, IL  60603
                                               Telephone:  312-494-4400
                                               Facsimile:  312-494-4440

                                               Eugene A. Schoon
                                               Email:  eschoon@sidley.com
                                               Susan A. Weber
                                               Email:  saweber@sidley.com
                                               Catherine Valerio Barrad
                                               Email:  cbarrad@sidley.com
                                               **SIDLEY AUSTIN LLP**
                                               One South Dearborn Street
                                               Chicago, Illinois 60603
                                               Telephone:  312-853-7000
                                               Facsimile:  312-853-7036

Rebecca K. Wood
Email:  rwood@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:  202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Schering Pharma AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

## SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN**
**& SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
**& LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Joseph A. Osborne
Email:  jaosborne@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
**& LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Counsel for Plaintiffs Bechara & Saad*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*
*and Counsel for Plaintiff Anna Bryant*

David Matthews
Email:  dmatthews@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:  713-535-7184
*Attorneys for Plaintiff Anna Bryant*

11

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN FRYE**
      **O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone:  813-223-7474
Facsimile:  813-229-6553
***Counsel for Plaintiff Melissa Morrill***

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
***Liaison Counsel for Defendants***

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:  713-222-0066
***Counsel for Plaintiff Naguib Bechara***

Tim K. Goss
Email: goss39587@aol.com
Tamara L. Banno
Email: tbanno@tlb-law.com
**FREESE &GOSS PLLC**
3031 Allen Street
Suite 100
Dallas, TX 75204
Telephone:  214-761-6610
Facsimile:  214-761-6688
***Counsel for Plaintiff Naguib Bechara***