UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION — MDL-1928 | ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| *Anna Bryant* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80868 | ) ) ) |
| *Melissa Morrill* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80424 | ) ) ) |
| *Naguib Bechara, et al.* v. *Bayer Corp., et al.*, Case No. 9:08-cv-80776 | ) ) ) ) |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT REGARDING ADVERSE EVENT REPORTS TO PROVE CAUSATION OR COMPARATIVE RISK**

Defendants move *in limine* to request that plaintiffs be precluded from offering evidence (including expert testimony) or argument related to adverse event reports or case studies involving Trasylol to prove causation or comparative risk. *See* Fed. R. Evid. 401-403, 702, 802.

**INTRODUCTION AND REGULATORY BACKGROUND**

Bayer anticipates that plaintiffs will attempt to present evidence and argument regarding adverse event reports ("AERs") at trial to try to prove that Trasylol causes certain adverse events or to attempt to compare the risk between Trasylol and other therapies. Indeed, plaintiffs have offered several AERs that they intend to use as exhibits at trial. *See*, *e.g.*, Anna

Bryant's Designation of Case-Specific Exhibits (D.E. 4150) Schedule B ("global" exhibits designated by the PSC and adopted by plaintiff Bryant), No. 646 (adverse event report involving a patient who suffered a myocardial infarction), No. 649 (same), No. 650 (AER involving ventricular fibrillation and cardiac arrest), No. 653 (AER involving cerebral apoplexy) (collected at Ex. A).  Plaintiffs should not be allowed to do so.

Federal law requires pharmaceutical companies to report "adverse drug experiences" ("ADEs") to the Food and Drug Administration ("FDA") at various times and frequencies depending on the circumstances.  *See* 21 C.F.R. § 314.80.  Pharmaceutical companies must report "[a]ny adverse event associated with the use of a drug in humans, *whether or not considered drug related*." *Id.* § 314.80(a) (emphasis added).  Further, not only pharmaceutical companies, but also others—including doctors, patients, relatives, lawyers, indeed anyone—can report ADEs to the FDA; as the FDA has explained, "physicians and consumers are encouraged to report all suspected ADEs, not just those that are already known to be caused by the drug."  Annual Adverse Drug Experience Report: 1996, Surveillance and Data Processing Branch, Division of Pharmacovigilance and Epidemiology, Office of Epidemiology and Biostatistics, Center for Drug Evaluation and Research, FDA at 2 (Oct. 30, 1997) ("1997 FDA Report") (Ex. B).

There are no requirements that there be a causal relationship between the adverse event and the use of the drug.  In fact, the FDA has noted that "[t]he adverse event may . . . have occurred by chance at the same time the suspect drug was administered."  *Id.*  Accordingly, an AER "does not necessarily reflect a conclusion . . . that the report or information . . . constitutes an admission that the drug caused or contributed to an adverse effect."  21 C.F.R. § 314.80(k).  For this reason, the FDA has cautioned that, with respect to a given AER, "there is no certainty

that the suspected drug caused the [AER]," and "[a]ccumulated [AERs] may not be used to calculate incidences or estimates of drug risk." 1997 FDA Report at 2; FDA AER System Description, http://www.fda.gov/Drugs/GuidanceComplianceRegulatory Information/Surveillance/AdverseDrugEffects/default.htm (last visited Feb. 2, 2010) (same).

Similarly, the FDA division responsible for collecting and monitoring AERs provides the following detailed cautions regarding AERs:

> CAVEATS:
>
> There are some important things to remember when reviewing or analyzing data from AERs.
>
> 1. Reports contain only those reactions voluntarily submitted either directly to the FDA or to the drug manufacturer by consumers and/or members of the health profession . . . .
>
> 2. The information contained in the reports *has not been scientifically or otherwise verified*.
>
> 3. For any given report, *there is no certainty that the suspected drug caused the reaction*. This is because physicians are encouraged to report suspected reactions. The event may have been related to the underlying disease for which the drug was given to concurrent drugs being taken or may have occurred by chance at the same time the suspected drug was taken.
>
> 4. Accumulated case reports *cannot be used to calculate incidence or estimates of drug risk*.
>
> 5. Numbers from these data must be carefully interpreted as reporting rates and not occurrence rates. *True incidence rates cannot be determined from this database*. Comparisons of drugs cannot be made from these data.

FDA, AER System, Office of Postmarketing Drug Risk Assessment, *Brief Description with Caveats of System* (July 18, 2005), at 4 ("AER Caveats") (Ex. C) (emphasis added).[1]

---

[1] Indeed, even plaintiffs' putative generic expert Suzanne Parisian admitted that for any given adverse event report, there is no certainty that the suspected drug caused the reaction (Q: "So for any given adverse event report, there's no certainty that the suspected drug caused the reaction,

3

**ARGUMENT**

**I.     ADVERSE EVENT REPORTS ARE INADMISSIBLE TO PROVE MEDICAL CAUSATION OR COMPARATIVE RISK.**

AERs are not relevant to show medical causation or comparative risk. As explained, governing federal regulations expressly state that an AER does *not* indicate "that the drug caused or contributed to an adverse effect." 21 C.F.R. § 314.80(k). The FDA has explained that the information in AERs "has not been scientifically or otherwise verified" and "there is no certainty that the suspected drug caused the reaction"; the "event . . . may have occurred by chance at the same time the suspected drug was taken." AER Caveats at 4 (Ex. C). Further, compilations of AERs "cannot be used to calculate incidence or estimates of drug risk" because "[t]rue incidence rates cannot be determined" and "[c]omparisons of drugs cannot be made" from AER data. *Id*.

For these reasons, the Eleventh Circuit and other courts have held that AERs are not acceptable bases for testimony about medical causation or comparative risk. It is reversible error to admit medical causation testimony based on AERs, because "such anecdotal reports do not prove causation." *McClain* v. *Metabolife Int'l, Inc.*, 401 F.3d 1233, 1250 (11th Cir. 2005). The Eleventh Circuit explained that "[u]ncontrolled anecdotal information offers one of the least reliable sources to justify opinions about both general and individual causation," and that AERs "lack[] the indicia of scientific reliability" required to support testimony on medical causation. *Id*. As a result, the court concluded it was "error to admit [an expert's AER-based] testimony to establish general causation at trial." *Id*. at 1252.

Numerous courts have applied this approach to exclude AER-based testimony on medical causation. *See, e.g.*, *In re Accutane Prods. Liab.*, 511 F. Supp. 2d 1288, 1298 (M.D. Fla.

---

right? A: For every given adverse event -- well, there's no certainty…"). Deposition of Suzanne

4

2007) (excluding expert causation testimony based on AERs, explaining that AERs "are unreliable as proof of causation because, in general, the events were not observed in such a way as to rule out coincidence or other potential causes"); *Leathers* v. *Pfizer, Inc.*, 233 F.R.D. 687, 694 (N.D. Ga. 2006) (excluding medical causation testimony based on AERs in prescription drug case because AERs "do not establish causation"); *see also Goldstein* v. *Centocor, Inc.*, 310 Fed. Appx. 331, 332 (11th Cir. 2009) (affirming exclusion of expert general causation testimony based on "case reports submitted by doctors who observed possible reactions to [a prescription drug] but made without medical controls or scientific assessment").[2]

       This conclusion follows because the FDA has explained that AERs do not establish a "causal link"; physicians are encouraged to generate reports for all "'suspected adverse drug events, not just those that are known to have been caused by the drug'" and therefore the "adverse event" reported in an AER "'may have occurred by chance at the same

---

Parisian, M.D. (Oct. 6, 2009) at 168 (Ex. D).

[2] *Accord Reynolds*, 896 S.W.2d at 828 (excluding AER evidence because it failed to "establish a causal link" between the drug and alleged injuries but instead "created a suspicion without any medical proof," and adding that "any probative value attributable to the documents was outweighed by the danger of undue prejudice"); *Soldo* v. *Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 542 (W.D. Pa. 2003) ("plaintiff's experts' reliance on anecdotal case reports to support their causation opinions is contrary to both good scientific practice and the *Daubert* case law"); *Cloud* v. *Pfizer Inc.*, 198 F. Supp. 2d 1118, 1133 (D. Ariz. 2001) (AERs "are merely compilations of occurrences, and have been rejected as reliable scientific evidence supporting an expert opinion"); *Brumbaugh* v. *Sandoz Pharm. Corp.*, 77 F. Supp. 2d 1153, 1156 (D. Mont. 1999) (rejecting expert testimony based on AERs because they lack "scientific analysis with the safeguards of a controlled experiment," but are merely "compilations of reported phenomena"); *Thomas* v. *Hoffman-La Roche, Inc.*, 731 F. Supp. 224 (N.D. Miss. 1989) (rejecting expert testimony based in part on AERs), *aff'd*, 949 F.2d 806 (5th Cir. 1992); *Merrell Dow Pharm., Inc.* v. *Havner*, 907 S.W. 2d 535, 547 (Tex. App. 1994), *rev'd en banc,* 907 S.W. 2d 548 (1995), *rev'd* 953 S.W. 2d 706 (Tex. 1997) (holding expert testimony based on AERs inadmissible on the grounds that the reports "are voluntary and 'unsubstantiated,' that they lack scientific methodology and controls, and that they do not suggest causation"); *Haggerty* v. *Upjohn Co.*, 950 F. Supp. 1160, 1164 (S.D. Fla. 1996) (AERs "contain raw information that has not been scientifically or otherwise verified as to cause and effect" and therefore cannot serve as basis for expert testimony (citation omitted)).

time the suspected drug was taken.'" *Reynolds* v. *Warthan*, 896 S.W.2d 823, 827-28 (Tex. App. 1995) (quoting FDA warnings); *see also Hagaman* v. *Merrell Dow Pharms., Inc.*, No. 84-2202, 1987 WL 342949, at *8 (D. Kan. June 26, 1987) (recognizing that the FDA "does not place much faith in the usefulness of the reports as an aid in determining causation"). AERs are also irrelevant with respect to comparative safety, because "'[c]omparisons of drug safety cannot be made from these data.'" *Reynolds*, 896 S.W.2d at 828 (quoting FDA warnings).

Apart from the inherent deficiencies associated with AER data, evidence of other incidents also is not admissible unless the party offering the evidence establishes that the prior incidents "were substantially similar to the occurrence in question." *Borden, Inc.* v. *Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985) (quoting *Jones & Laughlin Steel Corp.* v. *Matherne*, 348 F.2d 394, 400 (5th Cir. 1965)); *Hessen* v. *Jaguar Cars, Inc.*, 915 F.2d 641, 649-650 (11th Cir. 1990). Plaintiffs cannot make that showing. Because AERs are anecdotal and unverified, *see* AER Caveats at 4 (Ex. B), plaintiffs cannot show that the circumstances surrounding a given report are similar to the circumstances of plaintiffs' surgeries, their medical treatment, and their medical histories; plaintiffs also cannot show that the doctors mentioned in the reports had knowledge and experience similar to the doctors in these cases. For these additional reasons, AER evidence should be excluded to prove causation or comparative risk.

## II.   ADVERSE EVENT REPORTS ARE INADMISSIBLE HEARSAY.

AERs also are inadmissible for the truth of their content because they contain inherently unreliable hearsay. Fed. R. Evid. 802; *see Cosgrove* v. *Merrell Dow Pharms., Inc.*, 788 P.2d 1293, 1298-99 (Idaho 1989); *Muilenberg* v. *Upjohn Co.*, 320 N.W.2d 358 (Mich. Ct. App. 1982). In fact, a report may contain layers of hearsay, such as a statement by a patient describing symptoms to a doctor or other third party, as well as statements by the third party to the manufacturer incorporating or summarizing the patient's statement. No exception to the

hearsay rule would make such hearsay reports admissible. In *Muilenberg*, for example, the court of appeals rejected the plaintiff's contention that AERs were admissible under the business records exception to the hearsay rule. *See id.* at 364. The court explained that the reports did not qualify as business records because they were not compiled by the defendant in the normal course of its business, but rather by outsiders; additionally, the reports did not disclose the time lag between the reporting physicians' discovery of the symptoms and their memorializing the events in the report. *See id.* at 364-65; *accord Cosgrove*, 788 P.2d at 1298-99.

        Here, too, there has been no showing that adverse drug experiences were transmitted to Bayer by a person with knowledge of the facts (the declarant for purposes of the hearsay rule), that the report was made to Bayer in the course of a regularly conducted business activity, or that it was the regular practice of the person making the report to Bayer to make such reports in the normal course of business. Nor could there be any foundation that the signs, symptoms, and other information in the report to Bayer were memorialized soon after their alleged discovery by the treating doctors. *See* Fed. R. Evid. 803(6) (requiring that "diagnoses" be "made at or near the time" by "a person with knowledge, if kept in the course of a regularly conducted business"). Accordingly, the AERs constitute hearsay that is inadmissible under federal law. *See* Fed. R. Evid. 802; *see also Goldstein*, 310 Fed. Appx. at 332 n.1 (agreeing that AERs "are hearsay and do not fall within any of the exceptions to the hearsay rule"); *Richardson* v. *Richardson-Merrell, Inc.*, 649 F. Supp. 799, 801 n.5 (D.D.C. 1986). Moreover, because AERs often contain hearsay within hearsay, plaintiffs would be required to show that exceptions apply to each level of hearsay with respect to a given report. *See generally Commodity Futures Trading Comm'n* v. *Wilshire Inv. Mgmt. Corp.*, 407 F. Supp. 2d 1304, 1315 (S.D. Fla. 2005) ("the statements recounted in the audit report would still constitute hearsay within hearsay" and

"[p]lacing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statements admissible"), *aff'd in part and vacated in part on other grounds*, 531 F.3d 1339 (11th Cir. 2008).  Plaintiffs have not and cannot make that showing.

### III. ADVERSE EVENT REPORTS SHOULD BE EXCLUDED BECAUSE ANY PROBATIVE VALUE IS SUBSTANTIALLY OUTWEIGHED BY UNFAIR PREJUDICE.

AER evidence also should be excluded because its unfairly prejudicial impact far outweighs any possible probative value.  Rule 403 requires a balance of the "probative value" of evidence against "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  That balance tips decidedly against the admission of AERs.

Evidence of AERs could improperly "create[] a suspicion" of causation "without any medical proof."  *Reynolds*, 896 S.W.2d at 828.  AERs should be excluded because "any probative value attributable to [them is] outweighed by the danger of undue prejudice."  *Id.*; *see also In re Baycol*, 532 F. Supp. 2d 1029, 1041 (D. Minn. 2007) (holding that, "given the limitations inherent in AER data," such evidence is "'so fundamentally unsupported that it can offer no assistance to the jury'").  Likewise, admission of AERs would create a "confusion of issues" by diverting the jury's focus from the relevant facts concerning plaintiffs' medical condition and treatment to unrelated (and untested) assertions in AERs.

For related reasons, admission of AERs would cause "undue delay" and "waste of time" due to the need to educate the jury about the anecdotal nature of AERs and the FDA's caution that they are scientifically unreliable.  Furthermore, Bayer would be compelled to contest the relevance and admissibility of the AERs on a report-by-report basis, introducing contrary evidence regarding each report that negated the inference of any meaningful relevance, thereby substantially extending the length of the trial.  *See*, *e.g.*, *Ellis* v. *Int'l Playtex, Inc.*, 745 F.2d 292,

8

305 (4th Cir. 1984). In contrast, exclusion of AERs would expedite the trial, avoid satellite litigation and argument, and reduce the chance of confusing or misleading the jury. *See generally accord In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 80527, at *1 (E.D. Tex. Feb. 19, 1997) (excluding reports because they would confuse the jury and bog down the trial in satellite litigation on their significance).

AERs should be excluded from evidence because they are irrelevant and because their admission would result in undue prejudice that far outweighs any possible probative value of this evidence. *See generally Goldstein*, 310 Fed. Appx. at 332 n.1 ("we conclude the magistrate judge did not abuse his discretion in finding that the prejudicial effect of these [AERs] outweighs their probative value").

## CONCLUSION

Plaintiff should be precluded from offering evidence, testimony, or argument related to AERs involving Trasylol to show causation or comparative risk.

## RULE 7.1(A)(3) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good

faith with counsel for all parties who may be affected by the relief sought in the motion, and has been advised that plaintiffs will contest this motion.

February 16, 2010                          Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail: blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-7036

>Rebecca K. Wood
>Email:  rwood@sidley.com
>Richard H. Menard, Jr.
>Email:  rmenard@sidley.com
>Peter C. Pfaffenroth
>Email:  ppfaffenroth@sidley.com
>Adam C. Doverspike
>Email:  adoverspike@sidley.com
>**SIDLEY AUSTIN LLP**
>1501 K Street, NW
>Washington, DC 20005
>Telephone:  202-736-8000
>Facsimile:   202-736-8711
>
>Susan Artinian
>Email:  sartinian@dykema.com
>Daniel Stephenson
>Email: dstephenson@dykema.com
>**DYKEMA GOSSETT PLLC**
>400 Renaissance Center
>Detroit, MI  48243
>Telephone:  313-268-9788
>Facsimile:   313-568-6658
>
>Richard K. Dandrea
>Email:  rdandrea@eckertseamans.com
>**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
>USX Tower, 600 Grant St., 44th Floor
>Pittsburgh, PA.  15219
>Telephone:  412-566-6000
>Facsimile:   412-566-6099
>
>*Attorneys for Bayer Corporation,*
>*Bayer HealthCare Pharmaceuticals Inc.,*
>*and Bayer Schering Pharma AG*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

## SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Joseph A. Osborne
Email:  jaosborne@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Counsel for Plaintiffs Bechara & Saad*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs and Counsel for Plaintiff Anna Bryant*

David Matthews
Email:  dmatthews@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:  713-535-7184
*Attorneys for Plaintiff Anna Bryant*

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN FRYE
    O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone:  813-223-7474
Facsimile:   813-229-6553
*Counsel for Plaintiff Melissa Morrill*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509
*Liaison Counsel for Defendants*

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:   713-222-0066
*Counsel for Plaintiff Naguib Bechara*

Tim K. Goss
Email: goss39587@aol.com
Tamara L. Banno
Email: tbanno@tlb-law.com
**FREESE &GOSS PLLC**
3031 Allen Street
Suite 100
Dallas, TX 75204
Telephone:  214-761-6610
Facsimile:   214-761-6688
*Counsel for Plaintiff Naguib Bechara*