UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION — MDL-1928 THIS DOCUMENT RELATES TO: *Anna Bryant* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80868 *Melissa Morrill* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80424 *Naguib Bechara, et al.* v. *Bayer Corp., et al.*, Case No. 9:08-cv-80776 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE
OR ARGUMENT RELATING TO THE BART MORTALITY FINDING AND
SUBSEQUENT REMEDIAL MEASURES**

Defendants respectfully submit this motion *in limine* to exclude evidence, testimony or argument regarding the marketing suspension or limited availability of Trasylol and other remedial measures taken by Bayer subsequent to the events about which plaintiffs complain, "to prove negligence, culpable conduct, a defect in [the] product, a defect in [the] product's design, or a need for a warning or instruction." Fed. R. Evid. 407; *see Wood* v. *Morbark Indus., Inc.*, 70 F.3d 1201, 1207 n.3 (11th Cir. 1995) (exclusion of evidence of subsequent remedial measures is necessary to "to avoid unfairly prejudicing a defendant"); *see also* Fed. R. Evid. 401-403. Additionally, in the *Bryant* and *Bechara* cases in which plaintiffs allege that Trasylol caused them to develop kidney failure, the mortality finding from the BART clinical trial should be excluded pursuant to Fed. R. Evid. 401-403.

## ARGUMENT

On November 5, 2007, Bayer voluntarily suspended worldwide marketing of Trasylol after it was informed that the executive committee of a study conducted in Canada by the Ottawa Health Research Institute, entitled "Blood conservation using antifibrinolytics: A randomized trial in a cardiac surgery population" (the "BART" study), had halted patient enrollment in the aprotinin treatment group arm of that study. Bayer was informed that a planned periodic data analysis indicated reduced bleeding, but also an increase in all-cause mortality (that almost reached conventional statistical significance for 30-day mortality), for patients receiving Trasylol compared to patients who received either aminocaproic acid or tranexamic acid. Bayer made the decision to suspend marketing of Trasylol until final results from the BART study could be compiled, received, and evaluated. Bayer subsequently submitted a special access protocol to the Food and Drug Administration ("FDA") to allow certain surgical patients with an established medical need to have continued access to Trasylol. Approximately six months later, and following approval of the special access protocol, Bayer notified the FDA that it would begin voluntarily removing the remaining Trasylol stock from the United States market due to the fact that a special access program had been put in place by the FDA.

Since that time, Health Canada has continued to evaluate and analyze the data that has become available from the BART Study. Specifically, in December 2008, Health Canada convened an Expert Advisory Panel ("EAP") on Trasylol, which concluded that the risk-benefit profile for Trasylol remained positive when used within its approved indication. *See* Final Report, Expert Advisory Panel on Trasylol (Mar. 31, 2009) at 7 ("March 2009 EAP Report") (Ex. A). Further, the EAP concluded that due to departures from study protocol by the BART

2

clinical investigators (which, the EAP noted, were not "satisfactorily explained" to the EAP by the BART clinical investigators), "[i]t was . . . possible that the risk of death noted in the BART study was due to chance" and that it was "difficult to use the BART study in assessing the benefit/risk balance of Trasylol." *Id.* at 3.

Bayer anticipates that plaintiffs may improperly try to skew Bayer's decision to suspend marketing, and its subsequent decision to limit availability of Trasylol in the United States market, to argue that Bayer was negligent or culpable for plaintiffs' alleged injuries, that Trasylol was defectively designed, or as proof of the need for a particular warning. All of these subsequent remedial measures occasioned by BART should be excluded under Federal Rule of Evidence 407.

Under Federal Rule of Evidence 407, these kinds of arguments and evidence are improper and should not be permitted. That Rule provides:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction.

Fed. R. Evid. 407. As the Advisory Committee Note to Rule 407 explains, the primary rationale for this rule is "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." *Id.* The Eleventh Circuit also has explained that the rule "is necessary . . . to focus the jury's attention on the product's condition or design at the time of the accident," as opposed to at a later time. *Wood*, 70 F.3d at 1206-07 (holding that Rule 407 applies to strict liability claims).

This rule is directly implicated here. Plaintiffs each contend that they sustained physical injuries as a result of taking Trasylol at times prior to Bayer's voluntary suspension of

3

marketing.[1]  Plaintiffs' claims—defective design, negligence, failure to warn, fraud and misrepresentation, breach of warranties, unfair trade practices, negligent misrepresentation, negligence *per se*, constructive fraud, unjust enrichment, loss of consortium, and gross negligence/malice—are explicitly predicated on alleged negligence or culpable conduct by Bayer.[2]  Bayer anticipates that plaintiffs will contend that if Bayer had suspended marketing or limited the availability of Trasylol in the United States market earlier—*i.e.*, before each plaintiff used it—plaintiffs' injuries would have been less likely to occur.  *See generally* Pls.' Master Compl. ¶ 76 ("Defendants were entitled to withdraw Trasylol from the market at any time, but failed to do so in a timely and responsible manner.").  Bayer also anticipates the plaintiffs will point to the subsequent measures taken by Bayer to argue that Trasylol is defective and that warnings were deficient.  These arguments are improper.

Bayer's voluntary marketing suspension and decision to limit availability of Trasylol through the special access program are subsequent remedial measures, squarely within

---

[1] *See* Pls.' Master Compl. ¶¶ 51-52 (alleging that plaintiffs were exposed to Trasylol and subsequently suffered renal insufficiency, renal failure, and other injuries, including death); *Bryant* Am. Compl. ¶¶ 23-27 (alleging that Plaintiff Bryant was administered Trasylol on March 9, 2006, and Trasylol caused her to suffer kidney failure requiring dialysis); *Morrill* 2d Am. Compl. ¶¶ 31-36 (alleging plaintiff's decedent was administered Trasylol on October 3, 2003, and that Trasylol caused him to suffer heart attacks, heart failure, kidney failure, and death); *Bechara* Compl. ¶ 4 (alleging Plaintiff Bechara was administered Trasylol on December 21, 2004, and that Trasylol caused him to suffer renal dysfunction and kidney failure).

[2] *See, e.g.*, Pls.' Master Compl. ¶¶ 53-85 (alleging claims for strict liability and negligence); *Bryant* Am. Compl. ¶¶ 28-49 (same); *Morrill* 2d Am. Compl. ¶¶ 61-98 (same); *Bechara* Compl. ¶ 5 (same); *Bryant* Am. Compl. ¶ 33 (alleging that Trasylol "was defective in design or formulation in that, when it left the hands of the Defendants," it was "dangerous to the extent beyond that which could reasonably be contemplated by Ms. Bryant, or her physicians"); *id.* ¶ 45 (alleging that "Defendants negligently and carelessly breached" their duties to plaintiff); *id.* ¶ 52 (alleging that "Defendants fraudulently, intentionally and/or negligently made public misrepresentations of material facts to, and/or concealed material facts from" plaintiff regarding the safety of Trasylol); *id.* ¶¶ 67, 73 (alleging that defendants breached express and implied warranties); *id.* ¶ 79 (alleging that "Defendants deliberately misrepresented the safety of Trasylol and intentionally concealed the risks attendant to use of the drug").

4

the scope of Rule 407.  *See Wolf* v. *Procter & Gamble Co.*, 555 F. Supp. 613, 623 (D.N.J. 1982) (concluding that defendant's voluntary withdraw of its product from the market is a subsequent remedial measure under Rule 407); *accord In re Propulsid Prods. Liab. Litig.*, No. MDL 1355, 2003 WL 1090235, at *1-2 (E.D. La. Mar. 11, 2003) (granting motion *in limine* under Rule 407 to preclude evidence related to removal of prescription drug from the market and creation of limited access program for the drug); *Hagaman* v. *Merrell Dow Pharms., Inc.*, No. 84-2202, 1987 WL 342949, at *10 (D. Kan. June 26, 1987) (excluding evidence regarding defendant's ceasing the manufacturing of a prescription drug because such evidence would violate Rule 407, was irrelevant, and would unduly prejudice defendant); *Wolf*, 555 F. Supp. at 623-24 (D.N.J. 1982) (excluding evidence of defendant's product withdrawal under Rule 407).

Plaintiffs, therefore, should be precluded from offering evidence, testimony, or argument regarding Bayer's suspension or decision to limit availability of Trasylol in the United States market for the purpose of establishing Bayer's negligence or culpable conduct in connection with plaintiffs' alleged injuries, or to prove allegations that Trasylol was defectively designed or included inadequate warnings at the time of plaintiffs' surgeries.  *Wood*, 70 F.3d at 1206-07; *see also Rutledge* v. *Harley-Davidson Motor Co.*, No. 09-60533, 2010 WL 445498, at *2-3 (5th Cir. Feb. 3, 2010) (affirming grant of summary judgment in personal injury action because recall notices were subsequent remedial measures that could not be used as evidence that defendants' motorcycle suffered from a design or manufacturing defect); *Tucker* v. *PACCAR, Inc.*, No. 3:03-CV-1039, 2006 WL 1539778, at *3 (M.D. Fla. May 31, 2006) (concluding that evidence of defendant's decision to redesign truck's door latch after occurrence of accident at issue in the case is not admissible to prove negligence); *Miller* v. *Ford Motor Co.*, No. 2:01-CV-

545, 2004 WL 4054843, at *11-12 (M.D. Fla. July 22, 2004) (granting motion *in limine* to preclude evidence of subsequent change in the design of defendant's tire following accident).

Furthermore, in the *Bryant* and *Bechara* cases, evidence, testimony and argument related to the BART study—the study upon which the decision to suspend marketing was predicated—should be excluded. The BART study found an association between Trasylol and an increased risk of mortality when compared to aminocaproic acid and tranexamic acid. *See* D. Fergusson et al., *A Comparison of Aprotinin and Lysine Analogues in High-Risk Cardiac Surgery*, 358 N. Eng. J. Med. 2319, 2330 (May 29, 2008) (Ex. B). The study did not find any association between Trasylol and renal failure requiring dialysis, which is the injury alleged by the plaintiffs in *Bryant* and *Bechara. See*, *e.g.*, *id*. at 2329, Table 5. Nor did the BART study attribute the mortality finding to any alleged effect of Trasylol on the kidneys. *See*, *e.g.*, *id*. at 2329, Table 4. Therefore, the findings of the BART study are not relevant to plaintiffs' alleged injuries and should be excluded on that basis. *See* Fed. R. Evid. 401; *see also* Defendants' Motion *In Limine* To Exclude Evidence And Argument Regarding Injuries Not At Issue In A Given Case (filed herewith). Any argument that the BART findings are relevant because they formed the basis for the marketing suspension and limited availability of Trasylol is answered by the fact that, as explained above, evidence regarding those subsequent remedial measures should be excluded.

Exclusion of the BART findings is warranted for another reason: Discussion of those findings will create a sideshow that will require Bayer to spend a significant amount of time at trial discussing Bayer's analysis of the study and the findings of the Canadian EAP, which concluded that the risk-benefit profile for Trasylol remained positive when used within its approved indication. *See* March 2009 EAP Report at 7 (Ex. A). Discussion of BART

6

necessarily requires detailed explanations regarding technical aspects of the study, including departures from the study protocol and the appropriateness of using (or failing to use) certain statistical techniques. Lengthy presentations on highly technical issues regarding a study that has nothing to do with the claimed injuries threaten to confuse the issues and may mislead the jury on the central issue of medical causation. Rule 403 permits exclusion of evidence that will confuse the issues, mislead the jury, or lead to undue delay or waste of time. Introduction of the BART findings will lead to all of these outcomes, and should be excluded on that basis.

## CONCLUSION

For these reasons, Bayer respectfully requests that this Court grant its motion to preclude plaintiffs from introducing evidence, testimony or argument regarding the voluntary marketing suspension and subsequent limited availability of Trasylol in the United States market—or any other subsequent remedial measures—to show negligence, culpable conduct, or defective design or warnings. Additionally, Bayer respectfully requests that the Court exclude evidence, testimony or argument relative to the BART findings in the *Bryant* and *Bechara* cases.

## RULE 7.1(A)(3) CERTIFICATION

As required by this Court's Local Rule 7.1(A)(3)(a), counsel for defendants hereby certifies that counsel for the defendants has made reasonable efforts to confer in good

faith with counsel for all parties who may be affected by the relief sought in the motion, and has been advised that plaintiffs will contest this motion.

February 16, 2010               Respectfully submitted,

                                */s/ Barbara Bolton Litten*
                                Patricia E. Lowry
                                Florida Bar No. 332569
                                E-mail: plowry@ssd.com
                                Barbara Bolton Litten
                                Florida Bar No. 91642
                                E-mail: blitten@ssd.com
                                **SQUIRE SANDERS & DEMPSEY L.L.P.**
                                1900 Phillips Point West
                                777 South Flagler Drive
                                West Palm Beach, FL  33401-6198
                                Telephone:  561-650-7200
                                Facsimile:   561-655-1509

                                Philip S. Beck
                                Email:  philip.beck@bartlit-beck.com
                                Steven E. Derringer
                                Email:  steven.derringer@bartlit-beck.com
                                **BARTLIT BECK HERMAN PALENCHAR
                                    & SCOTT LLP**
                                54 W. Hubbard Street, Suite 300
                                Chicago, IL  60603
                                Telephone:  312-494-4400
                                Facsimile:   312-494-4440

                                Eugene A. Schoon
                                Email:  eschoon@sidley.com
                                Susan A. Weber
                                Email:  saweber@sidley.com
                                Catherine Valerio Barrad
                                Email:  cbarrad@sidley.com
                                **SIDLEY AUSTIN LLP**
                                One South Dearborn Street
                                Chicago, Illinois 60603
                                Telephone:  312-853-7000
                                Facsimile:   312-853-7036

Rebecca K. Wood
Email:  rwood@sidley.com
Richard H. Menard, Jr.
Email:  rmenard@sidley.com
Amy L. Hanke
Email:  ahanke@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:  202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Schering Pharma AG*

9


## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                      */s/ Barbara Bolton Litten*
                                      Barbara Bolton Litten

SERVICE LIST

In re Trasylol Products Liability Litigation – MDL-1928
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

**United States District Court
Southern District of Florida**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN
& SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
& LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs
and Counsel for Plaintiff Anna Bryant*

Joseph A. Osborne
Email:  jaosborne@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
& LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Counsel for Plaintiffs Bechara & Saad*

David Matthews
Email:  dmatthews@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:  713-535-7184
*Attorneys for Plaintiff Anna Bryant*

11

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN FRYE
    O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone:  813-223-7474
Facsimile:   813-229-6553
*Counsel for Plaintiff Melissa Morrill*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509
*Liaison Counsel for Defendants*

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:   713-222-0066
*Counsel for Plaintiff Naguib Bechara*

Tim K. Goss
Email: goss39587@aol.com
Tamara L. Banno
Email: tbanno@tlb-law.com
**FREESE &GOSS PLLC**
3031 Allen Street
Suite 100
Dallas, TX 75204
Telephone:  214-761-6610
Facsimile:   214-761-6688
*Counsel for Plaintiff Naguib Bechara*