UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION — MDL-1928<br><br>THIS DOCUMENT RELATES TO:<br><br>*Anna Bryant* v. *Bayer Corp. et al.*,<br>Case No. 9:08-cv-80868<br><br>*Melissa Morrill* v. *Bayer Corp. et al.*,<br>Case No. 9:08-cv-80424<br><br>*Naguib Bechara, et al.* v. *Bayer Corp., et al.*,<br>Case No. 9:08-cv-80776 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION *IN LIMINE*
TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT ALLEGING
THAT BAYER PROVIDED INADEQUATE OR INCOMPLETE DATA
TO THE FEDERAL FOOD AND DRUG ADMINISTRATION**

Defendants demonstrated in their Motion (D.E. 3994) that evidence, testimony, or argument that Bayer allegedly failed to provide more timely or different information to the federal Food and Drug Administration ("FDA") in connection with the marketing and sale of Trasylol—including speculation about what FDA might have done with such information—is preempted by federal law under *Buckman Co.* v. *Plaintiffs' Legal Committee*, 531 U.S. 341, 350-51 (2001).  Plaintiffs acknowledge that they may not offer evidence to show that FDA would have acted differently if Bayer had provided the information plaintiffs claim was withheld.  Pls' Opp. (D.E. 4240) ("Opp.") at 2; *see also id.* at 9 ("Plaintiff agree *[sic]* that speculation about

FDA actions would be inappropriate . . . .").[1]

Plaintiffs principally argue that evidence of Bayer's alleged misrepresentations to FDA is not asserted in support of a "fraud-on-the-FDA" cause of action. Opp. at 2-3. Instead, plaintiffs claim that Bayer's alleged misrepresentations to FDA are relevant to their failure to warn claims. This argument misstates Bayer's position, misunderstands the law on preemption, and ignores the many cases that have applied *Buckman* to bar plaintiffs from offering evidence of fraud on the FDA in support of state-law failure to warn tort claims. *See* Motion at 8 (citing cases). Plaintiffs "cannot bootstrap their arguments regarding alleged failure to report [certain adverse information] to the FDA into a defective warning case." *Webster* v. *Pacesetter, Inc.*, 259 F. Supp. 2d 27, 36 (D.D.C. 2003) (citing *Buckman*).

## ARGUMENT

**I.  EVIDENCE OR ARGUMENT THAT BAYER FAILED TO PROVIDE SUFFICIENT INFORMATION TO FDA IS PREEMPTED BY FEDERAL LAW.**

**A.  *Buckman* is Directly Applicable and Compels Exclusion of Evidence in Support of Allegations that Bayer Misled FDA.**

The preemptive effect of *Buckman* is not limited, as plaintiffs' suggest, to cases in which fraud-on-the FDA is asserted as a separate cause of action. Opp. at 3-5. *Buckman* compels the exclusion of evidence that Bayer concealed information from FDA or misrepresented facts to the agency regarding Trasylol. Plaintiffs' argument is contradictory: On the one hand, they argue that they may introduce evidence that Bayer misled FDA (so long as they do not have a separate cause of action called "fraud-on-the-FDA"), but at the same time

---

[1] Plaintiffs initially filed their opposition in *Bryant* only (D.E. 4240). They subsequently filed a Notice of Filing Opposition Papers, with no objection from defendants, stating that their papers "should have been responsive" in *Bechara* and *Morrill* as well (D.E. 4336). Although the Pretrial Order does not contemplate replies, plaintiffs' counsel do not object to Bayer filing this reply.

they concede that they cannot argue that FDA would have taken different action if Bayer disclosed the information they claim was withheld. Opp. at 2, 9. Speculation about what FDA may have done with different information is inadmissible under *Buckman* for the same reason that evidence that Bayer failed to provide information to FDA is inadmissible: it is solely the "FDA's responsibility to police fraud consistently with the Administration's judgment and objectives." *Buckman*, 531 U.S. at 350-51. To hold otherwise would upset "the delicate balance of statutory objectives" set by Congress and force manufacturers into "the burdensome dilemma of trying to comply with the FDA's detailed rules while 'in the shadow of 50 States' tort regimes.'" *Hughes* v. *Boston Scientific Corp.*, __ F. Supp. 2d __, 2009 WL 3817586, *10 (S.D. Miss. Nov. 12, 2009) (citing *Buckman*, 531 U.S. at 348, 350).

Moreover, contrary to plaintiffs' assertion that they do not seek to introduce speculation about actions FDA may have taken had Bayer provided different information, Opp. at 2, plaintiffs have indeed proffered such evidence. For example, Dr. Suzanne Parisian, one of plaintiffs' experts, expressly opines that the outcome of the September 2006 Advisory Committee meeting "would have been different" if Bayer had provided FDA with the preliminary results of the i3 study prior to the meeting. *See* Parisian Report (excerpt at Ex. D)[2] at 99 (Opinion 6); *see also* Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Suzanne Parisian at 15, (D.E. 3065) (S.D. Fla Dec. 17, 2009). As plaintiffs now acknowledge, such speculation is improper. *See* Opp. at 2, 9.

Also contrary to plaintiffs' assertion (Opp. at 11), Bayer has not argued here that plaintiffs should be barred from introducing evidence about the *conclusions* of the i3 study in an

---

[2] Exhibits D, E, and F are attached hereto; all other exhibits refer to those submitted with Bayer's Motion.

3

appropriate case. If the preliminary results of the i3 study are relevant and otherwise admissible, then plaintiffs or their experts may rely on those scientific conclusions in an attempt to support their state law tort claims. But, under *Buckman*, plaintiffs are not permitted to make the *separate* point that any delay in disclosing the preliminary results of that study to FDA constituted a fraud on the agency, or to speculate that the timing affected the agency's regulatory judgment.

Plaintiffs cannot avoid application of *Buckman* preemption by saying that the evidence they plan to introduce tends to support their claim that Bayer's warnings were inadequate. *See* Opp. at 3-5. Courts repeatedly have rejected similar sleights of hand. For example, in *Hughes*, the court concluded that "[t]he way the plaintiff characterizes her cause of action . . . does not change the outcome." 2009 WL 3817586, at *9-11 (rejecting plaintiffs' argument that negligence *per se* claim was not subject to *Buckman* preemption). The court held that "[s]tate tort claims alleging misrepresentation to the FDA are preempted under *Buckman*." *Id.* at *11. Other courts similarly have looked to the crux of the allegations rather than relying on plaintiffs' categorization of their claims in determining whether to apply *Buckman* preemption. *See, e.g.*, *Swank* v. *Zimmer*, No. 03-cv-60, 2004 WL 5254312, at *2 (D. Wyo. Apr. 20, 2004) ("regardless of the nature of the claim, evidence of communications with the FDA, used to show that Defendants made misrepresentations, must be excluded") (citing *Bouchard* v. *Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 812 (N.D. Ohio 2002)); *Webster*, 259 F. Supp. 2d at 36 (plaintiffs cannot "bootstrap" fraud-on-the-FDA to their state-law claim for defective warning).

Similarly, plaintiffs' assertion that the preemptive effect of *Buckman* has been restricted to cases that assert a separate count of "fraud-on-the-FDA" is false. As explained in Bayer's Motion (at 7-8), numerous courts have applied *Buckman* to hold that *evidence* of fraud on the FDA is inadmissible to prove plaintiffs' *state-law tort claims*, even where plaintiffs did

4

not plead "fraud-on-the-FDA" as a separate legal cause of action. *See*, *e.g.*, *Webster*, 259 F. Supp. 2d at 36-37 (under *Buckman*, "what was told to the FDA cannot support a tort claim"); *Swank*, 2004 WL 5254312 at *2 (granting defendant's motion *in limine* to exclude evidence of alleged misrepresentations to FDA); *Bouchard*, 213 F. Supp. 2d at 811 (relying on *Buckman* in granting the defendant's motion *in limine* to exclude evidence or argument that the defendant misled FDA); *In re Bextra & Celebrex Mktg., Sales Practices & Prod. Liab. Litig.*, No. 05-md-1699, slip op. at 2 (granting motion *in limine* "to exclude evidence that Pfizer provided inadequate information to the FDA") (N.D. Cal. Apr. 30, 2008) (Ex. C to Bayer's Motion).

Significantly, in each of these cases, the court excluded evidence that was proffered in support of state-law tort claims similar to those brought by plaintiffs in this litigation. Plaintiffs' opposition does not cite a single case that limits *Buckman*'s applicability to claims delineated "fraud-on-the-FDA," as plaintiffs suggest this Court should do. Indeed, plaintiffs baldly assert that Bayer's argument "has been rejected by numerous courts," but fail to cite even a single case in support of this claim.[3] Opp. at 6.

Nor does the presence of a defense in defendants' answers regarding compliance with federal product safety regulations change the fraud-on-the-FDA analysis. *See* Opp. at 7-8. FDA approval of a drug for marketing plainly is evidence that FDA determined the drug to be "safe and effective" under federal law. *See, e.g.*, 21 U.S.C. § 393(b)(2)(B) (charging FDA with determining whether "drugs are safe and effective" under federal law); *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (FDA's determination that a drug "is

---

[3] Nor is Bayer asserting, as plaintiffs suggest (Opp. at 6), that plaintiffs should be precluded from making *any* reference to alleged fraud outside of the FDA context. *Buckman* does not apply to any admissible evidence that Bayer made fraudulent statements to plaintiffs or the doctor who prescribed Trasylol. *Buckman* applies to any evidence or argument that Bayer misled FDA, or speculation about what FDA would have done with different information.

5

'safe' and 'effective' for its intended use" is "one of the [FDCA]'s core objectives"). Determining whether FDA has approved a drug requires no speculation by the factfinder. To the contrary, FDA approval is plain from objective, public regulatory documents in which the agency authorizes the drug for marketing.

In contrast, asking a jury to assess whether a regulated entity complied with its federal disclosure obligations to the agency or effected a fraud on the agency is a very different proposition. Not only would it trespass on FDA's enforcement prerogatives under Section 337, which plaintiffs acknowledge in part. *See* Opp. at 7 ("It was well established, even prior to *Buckman*, that there is no private cause of action under the FDCA"). But, in the absence of an FDA finding of non-compliance—and there is none here—it inevitably would require the jury to engage in the sort of rampant speculation about what the agency might have done differently with different information. Even plaintiffs acknowledge that is not allowed. *See, e.g.*, Opp. at 9 ("Plaintiff agree *[sic]* that speculation about FDA actions would be inappropriate . . . ."). Thus, the presence of a potential regulatory compliance defense in no way undermines the principle that a jury cannot be permitted to determine the separate issue whether a company failed to comply with FDA standards. *See, e.g.*, *Buckman*, 531 U.S. at 350 (FDA bears the "responsibility to police fraud consistently with [its] judgment and objectives" and attempts by a third-party to show that FDA had been defrauded would "inevitably conflict" and therefore be preempted); *see also Boyle* v. *United Techs. Corp.*, 487 U.S. 500, 505-06 (1988) (state law is preempted where it sought to oversee duties owed to the Federal Government).

In short, plaintiffs have failed to rebut the overwhelming authority presented by Bayer supporting the application of *Buckman* to all evidence or argument that a defendant misled FDA. Plaintiffs repeated attempts to limit the application of *Buckman* is not supported and fails.

6

> **B.** **The Supreme Court Cases Plaintiffs Cite are Inapposite to the Disposition of Defendants' Motion.**

Failing to cite any applicable caselaw in support of their argument, plaintiffs instead refer to two recent Supreme Court decisions concerning a different preemption argument. *See* Opp. at 4-6. Neither *Wyeth* v. *Levine*, 129 S. Ct. 1187 (2009), nor *Altria Group, Inc.* v. *Good*, 129 S. Ct. 538 (2008), is applicable. Both cases address implied preemption of state-law tort claims; they do not deal with the distinct issue of alleged fraud-on-the-agency. Bayer's motion does not seek a ruling here that plaintiffs' claims generally are preempted, only that their attempt to offer evidence of fraud on the agency in support of those claims is preempted. Because Bayer's argument is limited to the exclusion of evidence or argument that it failed to provide adequate or timely disclosures to FDA, these cases simply are irrelevant to the disposition of this motion.

In *Levine*, the Supreme Court held that plaintiffs' state-law failure to warn claim against the manufacturer of a prescription drug was not impliedly preempted by the Food, Drug and Cosmetic Act ("FDCA") and related regulations on the record presented. 129 S. Ct. at 1204. Notably, *Levine* did not involve any allegations that defendant concealed information or made misrepresentations to FDA. Accordingly, *Levine* says nothing about the type of fraud-on-the-FDA evidence that plaintiffs intend to offer in support of their state-law claims and cannot possibly bear on the outcome of defendants' motion.

Plaintiffs' citation to a footnote in the *Levine* majority opinion that references *Buckman* is taken out of context and, in any event, does not support the narrow reading of *Buckman* that plaintiffs advance here. Opp. at 4. If anything, when read properly, this footnote supports defendants' position because it highlights a key distinction between the issue presented in *Levine* and that decided in *Buckman*. *See Levine*, 129 S. Ct. at 1195 n.3 (stating that the

7

presumption against preemption was inapplicable in deciding whether allegations of fraud-on-the-FDA were preempted in *Buckman*, but applied to the different issue of implied preemption of state-law claims presented in *Levine*). The Supreme Court's distinguishing the issue in *Buckman* from the one decided in *Levine*, underscores that *Levine* says nothing about the scope of *Buckman*'s holding at issue here.

The fact that the Supreme Court vacated and remanded the Third Circuit's decision in *Colacicco* v. *Apotex, Inc.* in light of its decision in *Levine*, Opp. at 4-5, does not support plaintiffs' argument because, as just shown, *Levine* did not involve allegations that defendants provided insufficient information to FDA. Similarly, the Third Circuit's order remanding the cases to their respective district courts for consideration of the implied conflict preemption defense in the first instance in no way turned on whether allegations of fraud on the FDA were preempted and is therefore inapposite here. *See Colacicco* v. *Apotex, Inc.*, Nos. 06-3107 & 06-5148 (3d Cir. Apr. 28, 2009).

Even more inapposite to defendants' motion is the Supreme Court's decision in *Good*, which did not even involve an FDA-regulated product. Plaintiffs' reading of *Good* as standing for the broad proposition that a regulated company cannot rely on agency action when it has failed to disclose accurate information, Opp. at 5-6, is patently incorrect. In that case, the Supreme Court held that plaintiff's claim for violations of the Maine Unfair Trade Practices Act ("MUTPA") was not preempted by the Federal Cigarette Labeling and Advertising Act ("FCLAA") or the longstanding policy of the Federal Trade Commission ("FTC") regarding "light" cigarettes. 129 S. Ct. at 551. As in *Levine*, the plaintiffs in *Good* did not allege that defendants had committed fraud on the FTC itself; rather, the plaintiffs alleged that defendants violated the MUTPA by misleading the public about the health effects of light cigarettes through

their advertisements.  *Id.* at 541.  The Court held only that plaintiffs' state-law claim was not expressly preempted by the FCLAA or impliedly preempted by FTC policy.  *Id.* at 551.

Moreover, plaintiffs' reading of *Good* as limiting the holding of *Buckman* once again relies on a single quote from the opinion that has been taken wholly out of context.  Opp. at 6.  Contrary to plaintiffs' suggestion, the Supreme Court did not hold that evidence of defendants' alleged failure to disclose study results to the FTC was admissible to support plaintiffs' state-law claim.  Rather, it concluded that defendants had not established that FTC inaction was equivalent to FTC authorization regarding its representations to consumers about light cigarettes.  *Id.* at 550.  The Court merely mentioned in passing in a footnote that this conclusion was bolstered by the fact that defendants had not disclosed certain study results to FTC.  *Id.* at 550-51 & n.14.  Accordingly, plaintiffs' reliance on *Good* is misplaced.

In sum, Bayer does not argue in this motion that implied preemption principles generally bar plaintiffs' state-law tort claims.  Rather, Bayer asserts that plaintiffs' allegations and the proffered evidence that Bayer engaged in fraud on the FDA in support of those state-law claims are preempted under *Buckman*.  Numerous decisions following *Levine* have recognized this distinction and have applied *Buckman* to preempt allegations of fraud-on-the-FDA.  *See* Motion at 7 & n.6 (citing cases).  Accordingly, plaintiffs' efforts to confuse the issue with citation to inapposite Supreme Court caselaw should be rejected.

## II.  EVIDENCE AND ARGUMENT THAT BAYER PROVIDED INADEQUATE DISCLOSURES TO FDA PRESENT A REAL DANGER OF PREJUDICE AND JURY CONFUSION.

Although plaintiffs disavow any intention to present evidence or argument that FDA would have reached a different decision regarding warnings or labeling for Trasylol if Bayer had provided more timely or adequate information and concede that such speculation is inadmissible, they still say they are entitled to prove that "Bayer did not comply with federal

9

reporting requirements." Opp. at 9. Their proffered evidence demonstrates the need for a limiting Order from this Court.

For example, Dr. Curt Furberg, one of plaintiffs' proposed experts, intends to offer opinions that Bayer's regulatory submissions to FDA were in "violation of federal regulations." Report of Curt Daniel Furberg (Aug. 11, 2009) (excerpt at Ex. E) ¶ 44; *id.* ¶ 29(j) (same); *id.* ¶ 35 (stating the opinion that "Bayer continued to violate . . . federal regulations during the years following FDA approval" of Trasylol); *see also* Bayer's Motion To Exclude Testimony of Plaintiffs' Expert Curt D. Furberg and Memorandum of Law in Support at 4 (D.E. 4218) (Feb. 11, 2010); *id.* at 12-13, 15-19; Parisian Report (excerpt at Ex. D) at 99 (Opinion 5) ("Bayer disregarded its obligation and duties for providing FDA timely and accurate reports of risks being associated with Trasylol in both unpublished and published studies (21 CFR §§ 314.80 and 314.81)").

Plaintiffs also have designated testimony along these lines. *See, e.g.*, Deposition of Ernst Weidmann at 438 (asking "[a]nd Bayer didn't give [the draft Kress study report] to the FDA when it got it, right?"); Deposition of Dr. Jennifer Maurer at 301 (asking Bayer witness "whether Dr. Kress'[s] study was ever disclosed to the FDA"); *id.* at 350 (asking "when the Saint George's study . . . was actually disclosed to the FDA"); Deposition of Edwin Tucker at 286 ("Do you agree that [the St. George's Hospital] study should have been shared with the FDA?"); Deposition of Valentine Pascale at 863 ("Do you think that the United States FDA should have been provided a copy of the Kress study prior to that [FDA] meeting?") (excerpts collected at Ex. F). Further, as noted above, plaintiffs' putative expert witness, Dr. Parisian, seeks to offer precisely the type of speculation plaintiffs now concede is improper. *See supra* at 3.

Accordingly, notwithstanding plaintiffs' protestations to the contrary, the need for this Court to consider the prejudicial effect and the potential for jury confusion under Rule 403 is palpable. *See* Opp. at 9-10. Admission of this type of evidence "would be nothing more than an invitation for the jury to speculate about what both the FDA [and plaintiff's physician] might do if the facts were different." *Webster*, 259 F. Supp. 2d at 37. Conjecture about what FDA might have done with different information at a different time, rather than what the agency actually did, is just the kind of speculation *Buckman* forbids. Such evidence is certainly the type that is intended to be excluded under Rule 403.

## CONCLUSION

For these reasons and those presented in its Motion, Bayer respectfully requests that this Court grant its motion *in limine* to exclude evidence, testimony or argument regarding any alleged failure by Bayer to provide more timely or accurate information to FDA.

February 24, 2010	Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
E-mail: plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail: blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile: 561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
   & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:  312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:  312-853-7036

Rebecca K. Wood
Email:  rwood@sidley.com
Richard H. Menard, Jr.
Email:  rmenard@sidley.com
Peter C. Pfaffenroth
Email:  ppfaffenroth@sidley.com
Amy L. Hanke
Email:  ahanke@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:  202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Schering Pharma AG*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on February 24, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-790-4584
Facsimile: 215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile: 561-684-6308
*Liaison Counsel for Plaintiffs*

Joseph A. Osborne
Email: jaosborne@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile: 561-684-6308
*Counsel for Plaintiffs Bechara & Saad*

Scott A. Love
Email: slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX 77002
Telephone: 713-757-1400
Facsimile: 713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: 203-610-6393
Facsimile: 203-610-6399
*Federal-State Liaison for Plaintiffs and Counsel for Plaintiff Anna Bryant*

David Matthews
Email: dmatthews@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett Street
Houston, TX 77098
Telephone: 713-222-8080
Facsimile: 713-535-7184
*Attorneys for Plaintiff Anna Bryant*

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN FRYE
     O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone:  813-223-7474
Facsimile:   813-229-6553
*Counsel for Plaintiff Melissa Morrill*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509
*Liaison Counsel for Defendants*

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:   713-222-0066
*Counsel for Plaintiff Naguib Bechara*

Tim K. Goss
Email: goss39587@aol.com
Tamara L. Banno
Email: tbanno@tlb-law.com
**FREESE &GOSS PLLC**
3031 Allen Street
Suite 100
Dallas, TX 75204
Telephone:  214-761-6610
Facsimile:   214-761-6688
*Counsel for Plaintiff Naguib Bechara*