UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:

*Naguib Bechara, et al. v. Bayer Corp., et al.*
Case No. 9:08-cv-80776

*Anna E. Bryant v. Bayer Corp., et al.*,
Case No. 9:08-cv-80868
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
FOR CHARACTERIZATION OF CERTAIN DOCUMENTS AS BUSINESS RECORDS
UNDER FEDERAL RULE OF EVIDENCE 803(6)**

Plaintiffs argue that every document "produced by Bayer from Bayer's files" qualifies as a business record. Plaintiffs' Motion (D.E. 4308 in 1:08-cv-1928; D.E. 96 in 9:08-cv-80776; D.E. 141 in 9:08-cv-80868) ("Pls.' Motion") at 2. This is not the law, and none of the 15 documents truly in dispute qualifies under the business record exception to the hearsay rule. Accordingly, plaintiffs' motion should be denied.

**I.      INTRODUCTION**

Plaintiffs have asked this Court to rule that 25 documents fall within the hearsay exception for records of "regularly conducted business activity." Fed. R. Evid. 803(6). These documents are admissible, plaintiffs say, because they "pertain to" Bayer's development and marketing of Trasylol and they were "produced by Defendants from Defendants' files and contain Bates numbers provided by Defendants." Pls.' Motion at 3–4. Plaintiffs' extraordinarily broad view of the business record exception to the hearsay rule disregards the requirements of Rule 803(6).

1

At the Plaintiffs' Steering Committee's request, Bayer reviewed over 2,500 documents to determine whether it would agree that each document was authentic and qualified as a business record under Rule 803(6) for all the cases in the MDL.  Although plaintiffs' motion attaches 25 documents for the Court's consideration, in reality, only 15 are at issue.  First, Bayer already has stipulated that five of the documents on plaintiffs' list are business records.  These are plaintiffs' exhibits 1 (BAY00679867);  2 (BAY00734607);[1] 4 (BAY00749599); 22 (BAYCS00035742); 25 (BHCAG02690954).  Second, two documents on plaintiffs' list are duplicates.  *See* Pls.' Exs. 5 and 17 (both BAY00983471); Pls.' Exs. 6 and 18 (both BAY01035650).  Third, plaintiffs never asked Bayer to stipulate to three of the documents.  *See* Pls.' Exs. 7 (BAY01862928); 13 (no production numbers); 23 (BAYCS00889606).   For the reasons discussed below, none of the 15 documents at issue falls within the business record exception of Fed. R. Evid. 803(6).

## II.     THE RULE 803(6) STANDARD

### A.     Rule 803(6) Establishes a Rigorous Standard for Admitting Records of Regularly Conducted Business Activity

Rule 803(6) sets forth a five-part test for admitting "records of regularly conducted activity."  A document qualifies as a business record where it was "[1] made at or near the time by, or from information transmitted by, [2] a person with knowledge, [3] if kept in the course of a regularly conducted business activity, and [4] if it was the regular practice of that business activity to make the [documents], [5] all as shown by the testimony of the custodian or other qualified witness."  Fed. R. Evid. 803(6).

---

[1] Plaintiffs recently asked Bayer to stipulate that exhibit 2 (BAY00734607) is a business record, but Bayer had not responded to plaintiffs' request at the time plaintiffs' motion was filed.  Bayer stipulates that exhibit 2 is a business record.

The third and fourth requirements are the heart of Rule 803(6). The third requirement is that the record "must be kept in the course of the regularly conducted activity." A record is "kept" in this manner when it is "'made pursuant to established procedures for the routine and timely making and preserving of business records, and is relied upon by the business in the performance of its functions.'" *Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp. 2d 698, 704 (E.D. Va. 2004) (quoting *United States v. Wells*, 262 F.3d 455, 463 n.8 (5th Cir. 2001)); *accord United States v. Foster*, 711 F.2d 871, 882 (9th Cir. 1983).

The fourth requirement is that making the record is a "regularly conducted business activity." This means that the document must have been created as a regular practice of the *business*, rather than on the initiative of an individual employee. *Rambus*, 348 F. Supp. 2d at 705 (citing *Pierce v. Atchison T. & S.F. Ry.*, 110 F.3d 431, 444 (7th Cir. 1997); *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994); *O'Malley v. U.S. Fid. & Guar. Co.*, 776 F.2d 494, 500 (5th Cir. 1985)).

"The touchstone of admissibility under the business records exception to the hearsay rule is reliability." *Equity Lifestyles Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1243 (11th Cir. 2009). In contrast to other types of hearsay, records of "regularly conducted activity" are considered trustworthy in part because of the way in which such documents are made: "[R]outine and habitual patterns of creation lend reliability to business records." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 205 (4th Cir. 2000). Such records are also presumptively trustworthy because businesses rely on their accuracy. *See Palmer v. Hoffman*, 318 U.S. 109, 113 (1943). The "element of unusual reliability of business records" has also been attributed to an employee's "duty to make an accurate record as part of a continuing job or occupation." Fed. R. Evid. 803(6) advisory

committee's note; *see Certain Underwriters*, 232 F.3d at 205 ("[Businesses] depend on such records to conduct their own affairs; accordingly the employees who generate them have a strong motive to be accurate and none to be deceitful."). Documents are admissible under 803(6) only when "the circumstances surrounding the origination and compilation of the documents indicate reliability and trustworthiness." *United States v. Petrie*, 302 F.3d 1280, 1288 (11th Cir. 2002).

### B. Plaintiffs' Business Records Standard Does Not Satisfy the Requirements of Rule 803(6) and Conflicts with the Case Law

Plaintiffs advance a standard for Rule 803(6) admissibility unsupported by the law. According to plaintiffs, a document is a Bayer business record so long as it relates to the marketing or development of Trasylol and was produced from Bayer's files. Pls.' Motion at 3–4. Courts have consistently rejected this approach to the business records exception. In *Westfed Holdings, Inc. v. United States*, 55 Fed. Cl. 544, 566 (2003), *aff'd in part, rev'd in part on other grounds*, 407 F.3d 1352 (Fed. Cir. 2005), the court rejected a similar approach to Rule 803(6) because it would render "all e-mail on a business topic and kept in a business file" admissible, even though often email correspondence is created "on the fly" or is otherwise casual or lacks the rigor of formal records. *Id. Accord Rambus*, 348 F. Supp. 2d at 704 ("'[The] mere presence of a document . . . in the retained files of a business does not by itself qualify that document as a record of a regularly conducted activity.'" (quoting *White Indus., Inc. v. Cessna Aircraft Corp.*, 611 F. Supp. 1049, 1059 (W.D. Mo. 1985))).

Plaintiffs cite no decision setting the standard for admissibility as low as the one they advocate here. In fact, the documents at issue in the cases they cite stand in contrast to the documents at issue here. In *United States v. Ullrich*, 580 F.2d 765, 772 (5th Cir. 1978), Pls.' Motion at 3, the trial court admitted an inventory schedule and a Manufacturer's Statement of Origin created by Ford Motor Company as business records of a Ford dealership. These

documents, unlike the documents at issues here, are precisely the kind of regularly maintained business records that fall within the Rule 803(6) exception. The inventory schedule, for example, "was in the form of a computer printout [and] was prepared by Ford Motor Credit company." In the Fifth Circuit's words, this printout was

> integrated into the records of the dealership and were used by it. Ford Motor Company is the floor-plan financier for the automobiles on the dealership's lot. Large sums of money are borrowed by the dealership; the automobiles, identified by item and serial numbers, serve as collateral. A representative from Ford Motor Credit Company would use the inventory schedule periodically to confirm the presence of the collateral on the lot by inspecting the cars, by serial numbers. In this manner, differences in inventory could be resolved. The inventory schedule is used by the dealership to cross check the amount of interest paid to Ford Motor Credit Company. The schedule is also employed as a record disclosing whether particular automobiles have been sold, sent to another dealership, or remain in inventory. It is an accounting document in the dealership business. The inventory schedule admitted by the trial court demonstrated that the automobile in question became the property of the dealership on November 8, 1975.

*Id.* at 771-772 (record cites omitted).

> The "manufacturer's statement of origin" was similarly formal and regular:
>
> An MSO is a form of title to an automobile. It is itemized by a stock number, which is assigned by the dealership and is cross-referenced to the dealership's master log. It is filed in the dealership's safe until the automobile is transferred or sold. At that time, the MSO is signed on the reverse side by an agent of the dealership and submitted to the Ohio Title Bureau for an initial title to the automobile. The original MSO is retained by the title bureau for its records. A certified copy is filed in the dealership's records.

*Id.* at 772 (record cites omitted).

The Fifth Circuit did not approve the admission of these documents simply because they related to cars and were kept in the dealership's files. Rather, the court emphasized the formality of the documents and that the dealership kept them and utilized them "in the regular course of [its] business." *Id.* Only then did the court conclude that the documents evinced the trustworthiness necessary to qualify as business records.

5

Plaintiffs' reliance on *United States v. Parker*, 749 F.2d 628 (11th Cir. 1984), Pls.' Motion at 3, is equally misplaced. *Parker* considered the admissibility of a customs certificate for imported goods. *Id*. at 633. The certificate, entitled "Certificate for Spirits Exported to the United States of America," was made by the Scottish distiller of Dewar's Scotch and accompanied all shipments of Dewar's to the United States. *Id.* The document "was a customs certificate of the United Kingdom representing proof that the Scotch had been imported. . . ." *Id*. In contrast to the informal emails and third-party statements that comprise the bulk of plaintiffs' exhibits here, the customs certificate in *Parker* is a paradigmatic "record of regularly conducted activity" that the spirits importer routinely relied upon when conducting its affairs.

*Ullrich* and *Parker* both show that courts require proof that a company created the document in the regular course of its business and relied on its accuracy as a matter of company policy for the document to fit the Rule 803(6) exception. Inventory schedules and manufacturers statements of origins (*Ullrich*) and customs certificates that accompany an exporter's every shipment (*Parker*) are the kinds of documents covered by the business records exception. None of the 15 documents at issue is similarly formal and regular.[2] In short, none fit within Rule 803(6)'s exception.

## III.     NONE OF THE DOCUMENTS AT ISSUE IS ADMISSIBLE UNDER RULE 803(6)

Most of the 15 documents at issue are not business records because they were not created as part of Bayer's regularly conducted dealings. Others are not business records because they contain statements by third parties that are untrustworthy (hearsay within hearsay).

---

[2] *See also* the documents that plaintiffs included in their motion, evidently by mistake, which Bayer has stipulated fall within the 803(6) exception, exhibits 1, 4, 22 and 25.

### A. Exhibits That Were Not Created as Part of a Regularly Conducted Activity Are Not Admissible Under Rule 803(6)

For a document to be admissible as a business record, the proponent must "establish that it was the regular practice of that business activity to have the [document] made." *United States v. Robinson*, 700 F.2d 205, 209-10 (5th Cir. 1983). Rule 803(6) requires that the employee creating the record do so under a business duty imposed by the employer: "The fact that an employee 'routinely' takes meeting notes and keeps them, is quite different from whether a company policy directs the employee to do so." *Rambus*, 348 F. Supp. 2d at 705-06. Thus, in *City of Long Beach v. Standard Oil Co.*, 46 F.3d 929, 937 (9th Cir. 1995), an employee's notes were inadmissible, although "created in the normal course of business," where there was no showing that the "notes were made pursuant to company procedures and relied upon" by the company. Similarly, in *United States v. Ferber*, 966 F. Supp. 90, 98 (D. Mass. 1997), an email message was ruled inadmissible because "while it may have been [the employee's] routine business practice to make such records, there was no sufficient evidence that [the company] required such records to be maintained."

Most of the 15 documents at issue fail to meet the "regular practice of a regularly conducted business activity" requirement. For instance, plaintiffs' exhibits 6, 12, 20, 21, and 24 are all internal emails sent from one Bayer employee to another. The mere fact that Bayer uses email as a method of intra-company communication does not demonstrate that all internal emails qualify as business records. *United States v. Kim*, 595 F.2d 755, 762 (D.C. Cir. 1979) (ruling that a telex message was not a business record because even though "a regular business means of communication was used, . . . the message did not serve a regular business purpose"). Due to their irregular and often informal nature, emails are less likely to qualify as business records than the types of documents at issue in *Ullrich* and *Parker*. *Monotype*, 43 F.3d at 450 ("E-mail is far

7

less of a systematic business activity than a monthly inventory printout."). Emails that "contain the kind of chit-chat that would be expected to occur on the phone or during a visit to a colleague's office . . . do not have the formality of business purpose that appears to have been contemplated by Fed. R. Evid. 803(6)." *Westfed Holdings*, 55 Fed. Cl. at 566. Moreover, plaintiffs have offered no evidence that Bayer company policy dictated the writing of any of these emails, let alone that Bayer relied on the truth of any statements contained therein. Plaintiffs' exhibits 6, 12, 20, 21, and 24, therefore, are not business records.

Casual or otherwise unreliable statements expressed in non-electronic modes of communication likewise prevent a document from qualifying as a business record. *Monotype*, 43 F.3d at 450 (concluding that a report created by an employee did not satisfy Rule 803(6) because it expressed "some 'off-hand impression' that [the employee] put on paper for the review of a few people"). Plaintiffs' exhibit 14 consists of the handwritten notes of Stanley Horton, a Bayer employee, voicing his personal opinions about various matters.[3] Bayer company policy did not dictate the drafting of these notes, nor did Bayer rely on their veracity.

Plaintiffs' exhibits 3, 10, 15, and 19 suffer from similar deficiencies. All four of these documents are mere drafts or contain speculation akin to "hallway conversations" or "curbside opinions" and, thus, are "too informal to satisfy the business records exception to hearsay." *Westfed Holdings*, 55 Fed. Cl. at 566. Plaintiffs' exhibit 3 considers whether the "current data" support a change in dosing. Plaintiffs' exhibit 10 speculates about the motivations of an outside researcher. Plaintiffs' exhibit 15 brainstorms about possible strategic options for Trasylol and a potential successor compound. And, as shown by the transmitting email that

---

[3] Mr. Horton's testimony about the notes indicates that the notes reflected his personal opinion and were not relied on by Bayer. Deposition of Stanley Horton (Ex. A) at 1040-1045.

plaintiffs did not attach, plaintiffs' exhibit 19 is a draft.[4]  The informal tone and provisional nature of these exhibits means they lack reliability — the "touchstone of admissibility" under Rule 803(6).  *Equity Lifestyles Props*., 556 F.3d at 1243.  A document containing facially speculative content is not the type of record on which businesses "depend . . . to conduct their own affairs."  *Certain Underwriters*, 232 F.3d at 205.  Plaintiffs' exhibits 3, 10, 15, and 19 do not bear the indicia of "unusual reliability" that is the hallmark of a business record.  *See* Fed. R. Evid. 803(6) Advisory Committee's note.  They, therefore, should not be admitted as records of regularly conducted activity.

### B.  Exhibits That Contain Third Party Statements Do Not Qualify as Records of Regularly Conducted Activity

A document created outside of Bayer is a business record only if it satisfies the requirements of Rule 803(6) ***and*** Bayer relies upon its veracity in the regular conduct of its business.  Building on *Ullrich*, the Federal Circuit set forth a two-part test for determining whether a party has incorporated a third-party's document as its own business record: "The first factor is that the incorporating business rely upon the accuracy of the document incorporated and the second is that there are other circumstances indicating the trustworthiness of the document."  *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1343 (Fed. Cir. 1999).  Both of these requirements must be met for a document prepared outside of Bayer to be admissible as a business record.  Plaintiffs' exhibits 5, 9, and 11 were all created by third parties.  There is no evidence that Bayer relied upon the accuracy of these documents, or that the documents are otherwise trustworthy.  They are, therefore, inadmissible as business records.

---

[4] In the cover email to plaintiffs' exhibit 19, Valentine Pascale seeks comment on plaintiffs' exhibit 19 from Stephen Zaruby and Stanley Horton prior to submitting the document for review and to human resources.  Email dated September 23, 2005 (Ex. B).

9

Similarly, statements of third parties are not admissible as business records merely because they appear in Bayer documents. *New York v. Microsoft*, No. CIV A. 98-1233, 2002 WL 649951 (D.D.C. Apr. 12, 2002), considered the admissibility of several emails containing third-party statements. The court explained: "If the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have." *Id.* at *4 (quoting *United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982)). The court rejected plaintiffs' contention that the emails were business records. Not only had plaintiffs failed to establish that it was the regular practice of the business for its employees to write such emails, but the plaintiffs also failed to identify a hearsay exception that applied to the third-party statements. *Id.* at *2–6; *see also Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp.*, 407 F. Supp. 2d 1304, 1315 n.2 (S.D. Fla. 2005) (Middlebrooks, J.) (concluding that third-party statements in a report were inadmissible hearsay within hearsay), *aff'd in part*, *rev'd in part on other grounds*, 531 F.3d 1339 (11th Cir. 2008).

Plaintiffs' exhibits 8 and 16 are not business records because they contain inadmissible third-party hearsay. Plaintiffs' Exhibit 8 is an email from a Bayer employee that recounts conversations with third parties, again a multi-layered hearsay problem with no exception applicable to the hearsay statements within the memo. Plaintiffs' exhibit 16 is a document fragment ostensibly listing reports of adverse drug experiences.[5] Due to their

---

[5] Plaintiffs' exhibit 16 lacks any business record foundation. It provides no information about when these purported events took place, who made the assessment, what criteria they used to make the assessment, or how they came to Bayer's attention. Moreover, it provides no information about the kind of study or the type of surgery in which these events were observed. In short, in addition to being an apparent list of adverse drug experiences, it provides no

unreliable anecdotal nature, reports of conversations with others and adverse event reports are not admissible under Rule 803(6). *Commodity Futures Trading Comm'n*., 407 F. Supp. 2d at 1315 n.2; *see also Goldstein v. Centocor, Inc*., 310 F. App'x 331, 332 n.1 (11th Cir. 2009) (Food and Drug Administration MedWatch reports "are hearsay and do not fall within any of the exceptions to the hearsay rule" (citing FRE 803)); *McClain v. Metabolife Int'l, Inc*., 401 F.3d 1233, 1250 (11th Cir. 2005) (adverse event reports "reflect complaints called in by product consumers without any medical controls or scientific assessment"). Plaintiffs have not identified a hearsay exception that renders the third-party hearsay statements in plaintiffs' exhibits 8 and 16 admissible. *Equity Lifestyles Props*., 556 F.3d at 1244 ("For [the business records] exception to be available, all persons involved in the process must be acting in the regular course of business – otherwise an essential link in the trustworthiness chain is missing." (citing *T. Harris Young & Assocs., Inc. v. Marquette Elec. Inc*., 931 F.2d 816, 828 (11th Cir. 1991))). As a result, plaintiffs' exhibits 8 and 16 are not admissible under Rule 803(6).

---

information to confirm that this is the kind of document Bayer regularly created and regularly relied on. *Harrington v. Disney Regional Entertainment, Inc.*, 276 F. App'x 863, 870 (11th Cir. 2007) ("Appellants presented no evidence regarding the creation of the notes and so failed to meet the requirement of Rule 803(6) that a document be kept in the regular course of business.")

11

**IV.     CONCLUSION**

For the above reasons, the Court should deny plaintiffs' motion for an order that defendants' records meet the requirements of Rule 803(6) of the Federal Rules of Evidence.

February 24, 2010                                   Respectfully submitted,


/s/ Barbara Bolton Litten
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail:  blitten@ssd.com
**SQUIRE SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

  I hereby certify that on February 24, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                */s/ Barbara Bolton Litten*
                Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 9:08-cv-80710-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Joseph A. Osborne
Email:  jaosborne@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Counsel for Plaintiffs Bechara & Saad*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs and Counsel for Plaintiff Anna Bryant*

David Matthews
Email:  dmatthews@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:  713-535-7184
*Attorneys for Plaintiff Anna Bryant*

Tim K. Goss
Email: goss39587@aol.com
Tamara L. Banno
Email: tbanno@tlb-law.com
**FREESE &GOSS PLLC**
3031 Allen Street
Suite 100
Dallas, TX 75204
Telephone:  214-761-6610
Facsimile:   214-761-6688
*Counsel for Plaintiff Naguib Bechara*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509
*Liaison Counsel for Defendants*

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone:  713-222-8080
Facsimile:   713-222-0066
*Counsel for Plaintiff Naguib Bechara*