FILED by _____ D.C.

MAR 0 1 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – W.P.B.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-MD-1928-MIDDLEBROOKS/JOHNSON

IN RE: TRASYLOL PRODUCTS
LIABILITY LITIGATION - MDL-1928

This Document Relates To:

BRYANT V. BAYER
CORPORATION, ET AL.,
Case No. 08-80868

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Defendants' (hereinafter, collectively, "Bayer's") Motion for Summary Judgment ("Motion") (DE 3822), filed on December 8, 2009. Plaintiff filed a Response (DE 4295), to which Bayer replied (DE 4499). The Court held a hearing on the Motion on February 26, 2010. The Court has reviewed the pertinent parts of the record and is advised in the premises. For the reasons stated below I find that the Motion is due to be denied in part and granted in part.

I.  **Legal Standard**

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."[1] FED. R. CIV. P. 56(c). The purpose of

---

[1] According to the Supreme Court, "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that

1

summary judgment is to "isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). In considering a motion for summary judgment, the trial court "must consider all the evidence in the light most favorable to the non-moving party," and "resolve all reasonable doubts in favor of the non-moving party." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (internal citations omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (citing FED. R. CIV. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by pointing out to the district court that the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex*, 477 U.S. at 322-23.

Once the moving party has met its burden, the non-moving party bears the burden of coming forward with evidence of each essential element of its claim, such that a reasonable jury could find in its favor. *See Earley*, 907 F.2d at 1080 (11th Cir. 1990). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. 324. "The mere existence of a scintilla of evidence in support

---

are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

2

of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."[2] *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *Celotex*, 477 U.S. at 322-23.

## II.     Factual Background[3]

Anna Bryant is a 62 year old insulin-dependent diabetic who underwent four-vessel coronary artery bypass graft (CABG) surgery in March of 2006 at the age of 59. Ms. Bryant was administered the drug Trasylol during the surgical procedure. After the surgery, Ms. Bryant suffered renal failure and has required maintenance dialysis three times a week to sustain her life. Ms. Bryant asserts that Trasylol caused her renal failure requiring dialysis. She is on a kidney transplant list. On or about November of 2007, Bayer discontinued the sale of Trasylol in the United States.

Prior to her surgery, Ms. Bryant was diagnosed with diabetes in 1983. She has had a history of medical problems and complications relating to the disease. In 2002, Ms. Bryant was declared legally blind due to a diabetes-related condition, proliferative diabetic retinopathy. Ms. Bryant's surgeon, Dr. Bassam Omari, testified in his deposition that Ms. Bryant's pre-existing medical conditions created a higher than average risk of experiencing renal failure. (DEFEX A at 24, 33.)

---

[2] According to the *Anderson* court, "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[3] The following facts are either undisputed or established by evidence attached as Exhibits to either Bayer's Motion ("DEFEX") or Plaintiff's Response ("PLEX"). They shall be referred to DEFEX __ at__ or PLEX __ at __ accordingly.

At the time of her surgery, Ms. Bryant suffered from diabetes, chronic kidney disease and high blood pressure. (DEFEX A at 24, 33.)

### III. The Motion

Bayer moves for summary judgment on all of Plaintiff's claims asserting that each is due to be dismissed because Bryant has no competent evidence that Trasylol caused her kidney failure. Specifically, Bayer asserts that because: (1) proof of causation-in-fact is required for each of Bryant's claims; (2) Bryant had a variety of risk factors which could have contributed to her renal failure; (3) her expert's causation testimony is inadmissable due to his failure to consider key facts about Bryant's medical history, her substantially increased risk of serious renal disease, or the existence of other pre and post-operative alternative causation factors,[4] as a matter of law, Bryant cannot establish that her injuries were caused by the administration of Trasylol.

Bayer additionally asserts that Bryant's claim under the Connecticut Unfair Trade Practices Act (CUTPA), CONN. GEN. STAT. § 42-110a, *et seq.* is separately due to be dismissed because: (1) Bryant's injury occurred in California, not Connecticut, and so it is not properly brought under CUTPA, and (2) because she has not suffered an "ascertainable injury," she lacks standing to bring a claim under CUTPA. The Motion also asserts that Bryant's claim for punitive damages under Connecticut law is not an independent cause of action, and so summary judgment is appropriate as to that claim.

The essence of Plaintiff's response is that Dr. Chertow's testimony that Trasylol was a

---

[4] Bayer has filed a Motion to exclude Dr. Glenn Chertow's testimony. The Motion to exclude is premised on the same factors asserted in the instant Motion.

4

substantial contributing factor in causing Bryant's acute and permanent renal failure is admissible. Bryant further asserts that Dr. Chertow's testimony, taken along with Dr. Douglas Schuch's testimony that Bryant's CABG surgery was routine and without complications which would otherwise increase risks of renal damage, is sufficient to eliminate other causation factors, and so summary judgment is inappropriate.

I have previously considered and dismissed Bayer's objections to Dr. Chertow and determined that his opinion as to causation is admissible. I decline to find now, in this Order, that his causation opinion is not sufficient to create a triable issue of fact. Dr. Chertow reviewed all of the Plaintiff's relevant medical records. The record evidence demonstrates that he was aware of Bryant's pre-existing medical issues, including her diabetes, hypertension and renal insufficiency. In additional to his review of medical records, Dr. Chertow relied on the temporal association between the Plaintiff's injuries, her exposure to Trasylol and the lack of complications during surgery.

I am mindful that Bayer bears the burden of establishing that Plaintiff cannot, as a matter of law, establish that Trasylol was a proximate cause of her injury. To establish her case, Bryant must be able to demonstrate that it is more likely than not that Trasylol was a "substantial factor" in bringing about her injury. *See Christoper v. Cutter Labs.*, 53 F. 3d 1184 (11th Cir. 1995). Summary judgment might be appropriate if Bryant only could establish "a mere possibility of . . . causation," or presented a causation argument which was "mere speculation or conjecture," however, I find that neither is present in the instant action. Accordingly, Bayer's Motion, as it pertains to lack of causation, is due to be denied.

### A.   Connecticut Unfair Trade Practices Act ("CUTPA") (Count VI)

Bayer argues that Plaintiff's CUTPA claim fails for two independent reasons: (1) Plaintiff meets neither of the two standards for extraterritorial application of the statute[5]; and (2) Plaintiff lacks standing to bring a claim under the statute because she has not suffered an "ascertainable loss of money or property." (DE 3822 at 8. (citing CONN. GEN. STAT. § 42-110g(a)))

Plaintiff responds that she meets both standards for extraterritorial application of CUTPA: (1) Bayer's significant Connecticut contacts subject it to a CUTPA claim[6]; and (2) Connecticut choice of law principles dictate application of Connecticut law. (DE 4295 at 16.) Plaintiff also argues that she is "not required to allege or prove the amount of ascertainable loss under CUTPA, because CUTPA expressly contemplates plaintiffs' judgments which do not include an award of money damages." (DE 4295 at 21.) Nevertheless, Plaintiff notes that she has suffered an ascertainable monetary loss to the extent that she pays for transportation to doctors' appointments. (DE 4295 at 21 n.9.)

Under CUTPA, "No person shall engage in unfair methods of competition and unfair or

---

[5] Plaintiff is a California resident, the surgery and administration of Trasylol both occurred in California, and Plaintiff's physician practices in California. (Amended Complaint at ¶¶ 1, 23, 51.)

[6] According to Plaintiff, "[T]he unfair practices – in the form of false and misleading representations and omissions of material facts regarding Trasylol, the concealment and failure to publicize the risks and injuries associated with Trasylol in order to promote sales of the drug and maximize profits, and the advertising and promotion of Trasylol without conducting sufficient pre-clinical and clinical testing, and the lack of adequate post-marketing surveillance of Trasylol – are clearly 'tied to a form of trade or commerce intimately associated with Connecticut.' To be clear: these activities all took place in or from Connecticut (where at all times relevant to this action Bayer Pharmaceuticals Corporation, a wholly owned subsidiary of Defendant Bayer Corporation, had its principal place of business at 400 Morgan Lane in West Haven) and during the time in question Bayer directed all sales, marketing and scientific activities related to the US sale of Trasylol from Connecticut as well." (DE 4295 at 16. (internal citations omitted))

deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). "Trade" and "commerce" are defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." CONN. GEN. STAT. § 42-110a(4).

While the plain language of CUTPA is directed at unfair competition taking place in Connecticut, courts have held that CUTPA does not require that a violation actually occur in Connecticut if the violation "is tied to a form of trade or commerce intimately associated with Connecticut, or if, where Connecticut choice of law principles are applicable, those principles dictate the application of Connecticut law." *See, e.g., Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.* 206 F. Supp. 2d 175, 200 (D. Conn. 2005) (internal quotations and citations omitted). As discussed below, Plaintiff meets neither of the two standards for extraterritorial application of CUTPA. Therefore, summary judgment shall be granted in favor of Bayer on Count VI.[7]

### i. "Intimately Associated with Connecticut"

Various courts have held that CUTPA applies extraterritorially as long as the alleged violation is tied to trade or commerce intimately associated with Connecticut. *E.g., Titan Sports, Inc. v. Turner Broad. Sys., Inc.*, 981 F. Supp. 65, 71 (D. Conn. 1997); *Uniroyal Chemical Co. v. Drexel Chemical Co.*, 931 F. Supp 132, 140 (D. Conn. 1996).

---

[7] Because the Court finds that Plaintiff's CUTPA claim fails because she meets neither standard for its extraterritorial application, it is not necessary to address whether the claim also fails for lack of standing (the existence of an "ascertainable loss of money or property").

Where a CUTPA claim was premised on acts taking place and having an impact outside of Connecticut, but which indicated "a course of conduct emanating out of Connecticut" that constituted unfair and deceptive acts or practices in the conduct of trade or commerce, the claim withstood a motion to dismiss. *Jacobs Mfg. Co. v. Sam Brown Co.*, 1986 WL 7815, at *5 (W.D. Mo. June 30, 1986). Similarly, where plaintiffs alleged that the defendant had its principal place of business in Connecticut, a court reasonably inferred a "course of conduct emanating out of Connecticut" and found that "the defendant's conduct is tied to trade or commerce intimately associated with Connecticut." *Diesel Injection Serv. v. Jacobs Vehicle Equip.*, 1998 WL 950986, at *7 (Conn. Super. Ct. Dec. 4, 1998) ("While there may remain an issue as to the nature of the nexus between the alleged misconduct and this state, it cannot be resolved in the context of a motion to strike."). *But see State v. Liberty Mut. Holding Co.*, 2009 WL 943094, at *7 (Conn. Super. Ct. Mar. 20, 2009) (holding that the conduct of transacting and soliciting business in Connecticut is insufficient, by itself, to establish a sufficiently intimate association with Connecticut to apply CUTPA where the deceptive acts were not alleged to have been committed in Connecticut or to have had any adverse effect there) ("Otherwise, every corporation doing business here would be susceptible to the powerful weapons of [CUTPA]. . . . This would allow CUTPA to reach far beyond Connecticut's border. This court doubts that the legislature meant to protect the residents of other states from unfair and deceptive acts in the conduct of trade or commerce when it enacted CUTPA.").

In the Response to Bayer's Motion for Summary Judgment, Plaintiff did not provide any evidence to support the conclusory assertion that the alleged violation was tied to trade or commerce intimately associated with Connecticut, such that CUTPA should be applied extraterritorially.

At the hearing on this Motion, Plaintiff discussed a letter sent by Mr. Harrison, Bayer's assistant director of communications, from Connecticut directly to doctors in California, including the treating surgeon in this Case. According to Plaintiff, the letter was sent in 2001, about five years prior to the surgery at issue, discussing the renal safety and efficacy of Trasylol. Furthermore, Plaintiff mentioned a sales presentation from 2005, put together by Mr. Harrison and others, that ignored the imminent publication of the Mangano article, which Mr. Harrison had knowledge of at the time. Although Bayer no longer resides in Connecticut, Plaintiff argued that she will be able to demonstrate that a lot of conduct was purposefully directed out of Connecticut that played a role in Dr. Omari's continuing use of Trasylol and has a nexus to this specific litigation, such that CUTPA should be applied extraterritorially. Bayer responded that all interaction apart from the 2001 letter was California-related, and that a letter from 2001 did not have much bearing on a surgery that took place in California in March of 2006.[8] To this argument, Plaintiff stated that there is more at issue than just one letter: Bayer's entire U.S. Trasylol-related operations were based in Connecticut at the relevant time.

The Eleventh Circuit has held that "conclusory allegations without specific supporting facts have no probative value" in a response to a properly supported summary judgment motion. *E.g., Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). *See also Glenn v. Green Creations, Inc.*, 2010 WL 557858, at *3, n.2 (M.D. Fla. Feb. 12, 2010) (granting summary judgment where plaintiff presented no evidence to support his bold statement and noting that plaintiff cannot create a material issue of fact by making unsupported statements).

---

[8] Bayer also noted that the sales representative involved in this Case was a California resident.

9

Without deciding *whether* evidence of one letter from Connecticut, in addition to *evidence of* Bayer's Connecticut-based Trasylol-related operations, would be sufficient to warrant extraterritorial application of CUTPA under the intimate association standard, the Court finds that Plaintiff's unsupported assertions and conclusory allegations in this regard are insufficient to survive a motion for summary judgment. Plaintiff neither mentioned the letter in the Response to Bayer's Motion, nor provided the Court with the letter, or its location in the record, at the hearing on the Motion. Furthermore, Plaintiff has provided nothing but conclusory allegations regarding Connecticut being the base of all Trasylol-related operations. Therefore, the Court finds that Bayer is entitled to summary judgment on the CUTPA claim (Count VI).

### ii. Connecticut Choice of Law Principles

In a diversity action, a federal court must apply the choice of law rules of the forum state. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The Court will apply Connecticut's choice of law rules since this Case was originally filed in the District of Connecticut.

Under Connecticut choice of law rules for tort claims (including CUTPA), "we apply the law of the state in which the plaintiff was injured, unless to do so would produce an arbitrary or irrational result."[9] *Macomber v. Travelers Prop. & Cas. Corp.*, 894 A.2d 240, 256-57 (Conn. 2006) (citing *O'Connor v. O'Connor*, 519 A.2d 13 (Conn. 1986)). According to the *O'Connor* court,

> [T]his court has traditionally adhered to the doctrine that the substantive rights and obligations arising out of a tort controversy are determined by the law of the place of injury, or lex loci delicti. Recently, however, we have recognized that there are *circumstances* in

---

[9] In misrepresentation cases, the injury occurs where the "economic impact" is felt. *See Bailey Employment System, Inc. v. Hahn*, 655 F.2d 473, 476 (2d Cir. 1981); *Hamma v. Gradco Systems, Inc.*, 1994 WL 91857 (D. Conn. March 2, 1994).

10

> which strict application of the lex loci delicti rule frustrates the legitimate expectations of the parties and undermines an important policy of this state. In such *circumstances*, we have refused to apply the doctrine. . . . We need not decide today, however, whether to discard lex loci in all of its manifestations. It is sufficient for us to consider whether, *in the circumstances of the present case*, reason and justice require the relaxation of its stringent insistence on determining conflicts of laws solely by reference to the place where a tort occurred. . . . A majority of the courts that have abandoned lex loci have adopted the principles of the Restatement Second as representing the most comprehensive and equitably balanced approach to conflict of laws. It is therefore our conclusion that we too should incorporate the guidelines of the Restatement as the governing principles *for those cases* in which application of the doctrine of lex loci would produce an arbitrary, irrational result.

519 A.2d at 15, 21 (emphasis added) (internal citations omitted). Plaintiff does not dispute that the CUTPA injury occurred outside of Connecticut. (DE 4295 at 18.) Plaintiff does not argue how the application of the doctrine of lex loci delicti would produce an arbitrary or irrational result or frustrate the legitimate expectations of the parties; Plaintiff does not argue how the circumstances of this case favor an abandonment of the doctrine of lex loci delicti in favor of the principles of the Restatement Second. Therefore, Connecticut choice of law rules do not support the extraterritorial application of CUTPA.

### B.     Punitive Damages (Count VII)

Bayer argues that Plaintiff's separate cause of action for punitive damages fails because punitive damages are not an independent cause of action, but are merely a remedy incident to a cause of action. (DE 3822 at 9.)

Plaintiff responds that Bryant's action is brought under the Connecticut Products Liability Act ("CPLA"), which provides for punitive damages. (DE 4295 at 23. (citing CONN. GEN. STAT. § 52-572m; § 52-240b)) At the hearing, Plaintiff acknowledged that Connecticut does not recognize an independent claim for punitive damages in the product liability context.

Plaintiff's Amended Complaint contains a general request for relief "on all counts of this Complaint" that includes "Punitive and/or Treble Damages under Conn. Gen. Stat. § 52-572m, et seq. and Conn. Gen. Stat. § 42-110a, et seq," as well as a separate count for punitive damages (Count VII). (Amended Complaint at 21, 24.) The Court finds this pleading superfluous.

Plaintiff's request for punitive damages under the CPLA shall remain as part of its general request for relief; summary judgment shall be granted in favor of Bayer on Count VII.

### IV. Conclusion

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that Bayer's Motion for Summary Judgment (DE 3822) be **DENIED IN PART and GRANTED IN PART**. The Motion is **DENIED** as to each Count of the Amended Complaint save the CUTPA and Punitive Damages Claims (Counts VI and VII), but the Motion is **GRANTED** as to Plaintiff's claim under CUTPA (Count VI) and her independent claim for Punitive Damages (Count VII).

**DONE AND ORDERED,** in Chambers, at West Palm Beach, Florida this 1st day of March, 2010.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record