UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLBROOKS/JOHNSON

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION—MDL—1928 | ) ) ) ) |
| This Document Relates to: | ) ) |
| *Anna Bryant v. Bayer Corp. et al.,* Case No. 9:08-cv-80868 | ) ) ) |
| *Naguib Bechara, et al. v. Bayer Corp., et al.,* Case No. 9:08-cv-80776 | ) ) ) |
| *Melissa Morrill v. Bayer Corp., et al.,* Case No. 9:08 cv-80424 | ) ) ) ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING ANIMAL-BASED PHARMACOLOGICAL STUDIES TO PROVE CAUSATION**

**COME NOW** Plaintiffs and respond in opposition to Defendants' Motion in Limine to Exclude Evidence and Argument Regarding Animal-Based Pharmacological Studies to Prove Causation and show as follows:

**I.
INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS' CONCURRENTLY FILED OPPOSITION**

In the interest of brevity and to avoid burdening the Court with duplicative briefing, Plaintiffs hereby incorporate by reference Section I of "Plaintiffs' Opposition to Bayer's Motion to Exclude Evidence and Argument Regarding Irrelevant Marketing

1

Materials," setting forth the appropriate standards for a motion *in limine*, including the requirement that the motion state with specificity the evidence Bayer[1] seeks to exclude.

## II.
## SUMMARY OF RESPONSE

This Court should deny Defendants' Motion *in Limine* related to animal-based pharmacological studies for at least six separate and distinct reasons:

First, Defendants' motion is so vague and abstract that the purportedly objectionable "animal-based studies" Defendants seek to exclude are not even identified for the Court. Defendants have failed to identify by name a single "animal-based study" that it contends should be excluded. Thus, it is prohibitively difficult, if not impossible, for the Court to exclude prospectively such evidence.

Second, Defendants' motion is really a "second bite" at the *Daubert* challenge apple that is cumulative to its other motions challenging Plaintiffs' experts.

Third, pre-clinical pharmacological animal-based studies were used by Defendants to seek approval from the FDA for sale and use of Trasylol, and thus it should not be permitted to exclude any reference, evidence, or argument about those studies, when the safety and efficacy of Trasylol is now being challenged.

Fourth, differences between species and doses do not render the evidence irrelevant to proving adverse health risks to humans;

Fifth, Dr. Gary Toback's testimony and opinions demonstrate that animal-based pharmacological studies are relevant; and

Sixth, none of the cases cited by Defendants support the proposition that animal-based studies should be excluded at *in limine* stage.

---

[1] Defendants Bayer Healthcare Pharmaceuticals Inc. (as successor in interest to Bayer Pharmaceutical Corporation), Bayer HealthCare LLC, Bayer AG, and Bayer Schering Pharma AG (as successor in interest to Bayer HealthCare AG), are referenced collectively throughout this opposition as "Bayer."

### III.
### ARGUMENTS AND AUTHORITIES

1.  **Defendants' Motion is Too Vague and Overly Broad Because it Fails to Indentify the Objectionable Evidence.**

Defendants' request for the Court to exclude all "evidence, testimony, and argument regarding animal-based pharmacological studies to prove causation in humans" is too vague and overly broad to identify the allegedly objectionable evidence.

Such vague and overly broad exclusion would be difficult for the Court to enforce, and would prevent the Plaintiffs from presenting relevant and probative evidence. *See United States v. Rosenthal*, 793 F.2d 1214, 1237 (11th Cir. 1986) (upholding the trial court's denial of motion in limine that was too broad, where subject matter that the movant sought to exclude was undefined); *United States v. Hicherson*, 732 F.2d 611, 613 (7th Cir. 1984) (holding in limine motion that "was far too broad to pinpoint the objectionable evidence" did not preserve the objection for appeal). [2]

2.  **Defendants' Motion is really a "Second Bite" at the *Daubert* Challenge Apple.**

Defendants argue that the animal-based studies should be excluded based on answers given by Plaintiffs' experts in their depositions about animal testing, which

---

[2] *See also*, *Dahlgren v. Muldrow*, 2008 WL 186641, at *5 (N.D. Fla. Jan. 18, 2008) ('While the Court agrees with the general proposition stated by Plaintiff [that third-party hearsay statements in police reports must fall within a hearsay exception to be admissible], because no specific hearsay statement has been identified, Plaintiff's motion in limine must be denied."); *St. Cyr v. Flying J Inc.*, 2007 WL 2696791, at *2 (M.D. Fla. Sept. 12, 2007) (denying corporate defendants' motion in limine to prevent plaintiffs' reference to defendant's "size" at trial; "Defendant has cast its net too broad….. [A]n order barring reference to Defendants size would be difficult to enforce and would potentially bar Plaintiffs from presenting relevant and probative evidence."); *Bismark v. Lang,* 2006 WL 709521, at *2 (M.D. Fla. Mar. 17, 2006)( "The request to preclude plaintiff's testimony as to matters within boundaries of expert testimony is not specific enough for the Court to grant on an in limine basis.") *United States v. Posner*, 594 F. Supp. 923, 927-28 (S.D. Fla. 1984) (denying motion in limine as premature where court could not make a determination as to the admissibility of the evidence prior to knowing whether the witness would testify at trial; *United States v. Feola*, 651 F. Supp. 1068, 1129 (S.D.N.Y. 1987) ("It would be improper for this Court to speculate as to the circumstances that might surround the introduction of this evidence at trial, specifically, the adequacy of the foundation, ….. the probative value weighed against the potential prejudicial impact in light of the evidence presented, and the purpose for which such a statement will be introduced at the time."), *aff'd*, 875 F.2d 857 (2d Cir. 1989), *cert. denied*, 493 U.S. 834 (1989).

Defendants took out of context. For example, in Dr. Parisian's deposition, she opined that "the animal data's very strong in terms of mechanism for action for destroying a kidney." [Parisian Depo p. 211:3-4 (attached hereto as Exhibit "A")]. What Bayer did not quote from her deposition was the lead-up to that answer, which demonstrates that Dr. Parisian was actually stating that animal-based studies evidence was available to alert (i.e. put on notice) Bayer that Trasylol could be potentially injurious to patients who were administered the drug. In her deposition, Dr. Parisian stated:

> Q. **My next questions is, *with respect to your statement that Bayer was aware of potential negative postoperative death, what's the basis for that statement?***
>
> A. **I would look at their adverse event reports. They actually have adverse event reports about fatalities beginning before 1999.**
>
> Q. **Anything else?**
>
> A. **Oh, in terms of the potential for deaths, I would say the animal data's very strong in terms of the mechanism for action for destroying a kidney.**

**[Parisian Depo 210:19-211:4 (emphasis added) (Exhibit A)]**

Thus, it is clear that Dr. Parisian's testimony about animal studies was in the context of notice or knowledge of potential adverse effects in humans, not simply extrapolating that adverse kidney effects in animals automatically correlate to adverse health effects in humans.[3]

Moreover, Defendants have already moved and extensively briefed *Daubert* issues related to Dr's. Parisian, Toback and Furberg. This motion *in limine* on animal-based studies appears to be no more than a "second bite" at the *Daubert* apple. If the

---

[3] Moreover, the Defendants' other citation to Dr. Parisian's testimony again has nothing to do with using animal studies to prove causation in humans. That testimony deals primarily with Bayer's investigative duties once human adverse event reports of renal failure started to collect. [Parisian Depo. 302:6 -305:24 (Exhibit "A")]

4

Court holds that these experts' opinions are relevant and reliable (which includes reliance on animal studies for one or more of their opinions), then this motion *in limine* is moot. Animal studies, along with substantial other evidence, are part of what these experts relied upon. Moreover, Dr. Toback also put his testimony regarding animal studies in prospective:

> Q. Let me ask you that [sic] this: If *Kramer* found no reduction in renal blood flow in normovolemic rats and *Seto* did find a reduction in renal blood flow in normal normovolemic rats, would that suggest a possible inconsistency?
>                              ***
> A. And so the issue is here to take studies that were done on animals and ask, well, I know what happens in animals. Is that a possible explanation about what's happening in humans? And can that give me an awareness of what might be happening in patients who get aprotinin that I should keep in mind when I'm giving the drug?

**[Toback Depo 181:8-12; 182:7-13 (attached hereto as Exhibit "B")]**

**And Dr. Furberg's testimony was in a similar vein:**

> Q. Are you an expert in extrapolating the effects of animal studies to effects in humans
>
> A. I don't like the question, "effects on humans." May I expand on that? My view is that animal studies are done to get safety signals. And I'm an expert on that. I can see the signal when its there. And there should in my view and in people's views trigger further explanation.

**[Furberg Depo 164:10-18 (attached hereto as Exhibit "C")]**

The testimony of these experts was all consistent: animal studies are useful to alert the drug's sponsors to possible associations between the drug administration and adverse health effects. Further, they opine that the animal studies act as signals for safety issues in humans of which the drug sponsors such as Bayer must be aware. These animal

5

studies are relevant for the issues which Plaintiffs' experts have purported to use them: notice, knowledge, and signals.

3. **Pre-Clinical Pharmacological Animal-Based Studies Were Used by Bayer to Seek Approval for the Use of Trasylol.**

Defendants' Motion is curious in that Defendants apparently used the animal-based studies to seek approval of Trayslol from the FDA that Defendants now seeks to exclude. Defendants' motive seems obvious. Now that the drug is being critized, its efficiency challenged, and its safety being called into serious doubt, the Defendants' Motion seeks to exclude the very studies that it relied upon, claiming now that they are irrelevant and unreliable to prove causation in humans. As Dr. Toback testified, the animal studies play a significant role in determining what effects the drug may have in humans:

> Q. Is it fair to say what they found in rats may not be true in humans?
>
> A. You can always say that. The studies in animals point the way to studies in humans. But, again, the studies that were done in animals were also done by Bayer in their efforts to try to develop the drug. They did plenty of studies that I am aware of that where they infused aprotinin (Trasylol) into the animals and looked at the effects on renal tissue. I don't have any studies about renal function that I came upon. But the ones on renal structure are – I have. And those are disturbing …..

**[Toback Depo 184:6-19 (pertinent excerpts) (attached hereto as Exhibit "B")]**

This use of animal-based pharmacological studies is clearly relevant and Defendants should not be permitted to exclude such evidence.

4. **Differences Between Species and Doses Do Not Render the Evidence Irrelevant to Proving Adverse Health Risks to Humans.**

6

Defendants argue that extrapolation from chemical reactions in lab animals are unreliable and that high dose levels renders the results irrelevant to human causation. Defendants are wrong on both points.

In *Metabolife International, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) the Ninth Circuit was faced with a District Court ruling that animal studies were inadmissible "due to the uncertainties in extrapolating from the effects on mice and rats to humans." The Ninth Circuit made clear that "[t]he district court's ruling was incorrect." *Id.* The *Wornick* Court explained that:

> "First, *Daubert II* [4] itself recognized that animal studies are not per se inadmissible and should be subjected to substantive analysis, just like other scientific evidence."

*Id.* at 842 (citations omitted).

Moreover, *Turpin v. Merrell Dow Pharms. Inc.,* 959 F.2d 1349 (6th Cir. 1992), cited by Defendants, notes "no doubt there may be other animal experiments which, to cite an example, because of the extreme toxicity of the substance tested, would permit a reasonable jury to find that it is more probable than not that the substance causes a similar harm to humans." *Id.* at 1359. Plaintiffs' experts have explained in great detail in their reports and depositions the bases for animal-based studies being relevant and useful in determining effects on humans. An *in limine* motion is not the vehicle to challenge those opinions. That is the function of the *Daubert* motions currently pending before the Court.

**5.    Dr. Toback's Testimony and Opinions Demonstrate that Animal-Based Pharmacological Studies are Relevant.**

Dr. Toback's opinions that Trasylol causes renal injury are derived (in part) from animal studies. Courts have long recognized the usefulness of animal studies. "There can

---

[4] *Daubert v. Merrell Dow Pharms., Inc.,* 43 F. 3d 1311 (9th Cir. 1995)

7

be no dispute that properly designed and conducted animal testing can yield relevant and useful information in the field of human toxicology." *Bourne v. Dupont De Nemours & Co., Inc.,* 189 F.Supp.2d 482, 498 (S.D.W.VA. 2002); *Turpin v. Merrell Dow Pharms. Inc.,* 959 F.2d 1349, 1360-61 (6th Cir. 1992). "Animal studies often comprise the backbone of evidence indicating biological hazards and their legal value has been recognized by federal courts and agencies." *Id.* Indeed, courts have held that it is improper for a trial court to exclude expert testimony based on animal studies merely because of difficulty in extrapolation to humans. *Metabolife International, Inc. v. Wornick,* 264 F.3d 832, 842 (9th Cir. 2001); *Hopkins v. Dow Corning Corp.*, 33 F.3d 116, 1124-25 (9th Cir. 1994)(admitting expert testimony based in part on general scientific knowledge established by animal studies); *In re Phenylpopanolamine (PPA)* Litigation, 289 F.Supp.2d 1242, 1247 (W.D.Wash.2003) (expert testimony admissible based on animal studies and other non epidemiological evidence); *Lopez v. Wyeth-Ayerst,* 139 F.3d 905 (9th Cir. 1998) ("animal studies can contribute to an expert's scientific conclusions as to causation...") (citations omitted); *See also* Reference Manual on Scientific Evidence at 405 (2d ed. Federal Judicial Center 2000) ("toxicological research often involves exposing animals... to chemicals, monitoring the outcomes, and comparing the outcome with those from unexposed control groups"); *Cona v. Merck & Co.,* Inc., 2006 WL 4948951 *9 (N.J. Super. L. Div 2006) ( "animal studies are admissible along with other evidence to prove causation").

    Despite Bayer's protestation that animal studies cannot support a causation conclusion, Bayer's own nephrology expert has confirmed that the *Seto* rat study relied upon by Dr. Toback supports the view that Trasylol impacts renal blood flow. Specifically, Dr. Humes testified: "This particular study in the rat at this dose does

8

suggest that there is a renal hemodynamic effect of the agent" and **"I think there -- there were studies, both in dog, in mouse, and rat, that the -- that there was a renal effect."** [Humes Depo. 112:5-25 (attached hereto as Exhibit "D")]. Thus, experts for both parties agree that the *Seto* study reflects that Trasylol impacts renal blood flow; they merely disagree on whether that biological impact results in kidney injury for humans. Yet, having been acknowledged by Bayer's own expert, the biological mechanism by which Trasylol reduces blood flow can hardly be so unreliable as to be prohibited as even a consideration in support of the *biological plausibility* of Dr. Toback's causation opinion. Bayer muddies the argument regarding animal studies in the same way that it confuses the entirety of its challenge to Dr. Toback's testimony: by equating biological plausibility with causation itself. Again, biological plausibility is merely one consideration in determining whether a demonstrated association is causal. Thus, it is not necessary that an animal study alone demonstrate that Trasylol causes a particular injury in humans. Dr. Toback is not asserting the animal studies for that purpose. The animal studies are merely evidence of the mechanistic effect of Trasylol on biological systems – which supports (without having to single-handedly prove) his opinion that Trasylol causes kidney injuries.

  Bayer improperly cites several cases for the proposition that animal studies cannot prove *causation*. (Bayer's Daubert Motion to Exclude Testimony of Gary Toback, M.D., p. 4). The cases Bayer cites were not focused specifically on the use of animal studies to demonstrate *biological plausibility* (as opposed to causation). Animal studies are particularly common and useful to determine the general physiological effects of a substance. M*cCarrell v. Hoffman-La Roche, Inc.,* 2009 WL 614484 (N.J.Super.A.D.,

March 12, 2009)(noting animal studies are particularly useful for determining effects of a drug because animals are generally autopsied and their tissue studied).

Even within the more strenuous *causation* context, animal studies have merely been found insufficient to single-handedly overcome contrary epidemiological evidence. For example, in *Allison v. McGhan,* the Eleventh Circuit held that animal studies on rats *directly injected* with silicone did not correlate sufficiently with the effects of *unruptured* silicone breast implants in women to overcome over twenty epidemiological studies finding no statistical correlation between silicone breast implants and systemic disease. *Allison,* 184 F.3d 1300, 1316 (11th Cir. 1999). This case is completely different. The undeniable breadth of studies, both human and animal (which in fact led to the withdrawal of Trasylol from the market) more than adequately support a conclusion of causation. For these additional reasons, Defendants' motion *in limine* is due to be denied.

**6.    The Cases Relied on by Defendants Do Not Support the Exclusion of All Evidence, Testimony, and Argument Regarding Animal-Based Pharmacological Studies.**

Defendants cite to blurbs in approximately ten cases in support of their motion *in limine*. For one or more reasons, those cases do not dictate the outcome sought. Plaintiffs will not burden the Court with a dissection of each case. However, Plaintiffs list below the categories of each case and why it is inapposite to the matters relevant to this Court:

1.   *Rider v. Sandoz Pharms. Corp.*, 295 F. 3d 1194 (11th Cir. 2002) (Parlodel)

     (Court granted summary judgment; plaintiffs offered no animal studies that suggested Parlodel caused strokes, even though that was the injury allegedly caused to plaintiffs)

2.   *Allison v. McGhan*, 184 F.3d 1300 (11th Cir. 1999) (breast implants)

10

       (Court granted summary judgment; plaintiff relied on single animal study against the weight of twenty controlled epidemiological studies which found no valid increased risk of auto–immune disease)

3. *Baycol Products Litigation*, 532 F. Supp. 2d 1029 (D. Minn. 2007) (Baycol-statin drug)

       (Partial summary judgment granted; plaintiffs relied on an animal testing none of which involved the use of Baycol or other statin drugs)

4. *Soldo v. Sandoz Pharmaceuticals*, 244 F. Supp. 434 (W.D. Pa. 2003) (Parlodel)

       (Summary judgment; injuries to animals were "tail necrosis" and "ear necrosis"; injury to plaintiffs was hemoragghic stroke, thus no apparent similarity of injury)

5. *In Re: Accutane Products Liability*, 511 F. Supp. 2d 1289 (M.D. 2007) (Acne Drug)

       (Exclusion of experts under *Daubert* motion; Plaintiffs expert drew conclusions from animal studies not supported by the studies' authors)

6. *Brock v. Merrell Dow Pharmaceuticals*, 874 F. 2d 307 (5th Cir. 1989) (Bendectin)

       (Pre-*Daubert* case; Court found that animal studies used were inadmissible because they were "flawed" and not supported by other reliable epidemiological evidence)

7. *Lynch v. Merrell-National Laboratories*, 830 F. 2d 1190 (1st Cir. 1987) (Bendectin)

       (Pre-*Daubert* case; Court found that Plaintiff failed to properly bring forth confirmatory epidemiological evidence)

Not a single case cited by Defendants support the proposition that animal studies together with these epidemiological studies cannot be used as relevant evidence in a toxic tort case, and most importantly, in every case cited by Bayer, the defendants in those cases discussed each animal study individually and explained why that particular study was not admissible in that case. Bayer has attempted no such thing here, opting rather to

11

simply seek a wholesale exclusion of animal-based pharmacological studies. No case cited by Defendants supports such a broad prohibition of such evidence.

## IV.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion *in Limine* to Exclude Evidence and Argument Regarding Animal-Based Pharmacological Studies to Prove Causation should be DENIED.

DATED: March  2 , 2010

/s/ Michael T. Gallagher
Michael T. Gallagher
U.S. District Court Admission #5395
**THE GALLAGHER LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Telephone (713) 222-8080
Facsimile (713)222-0066
Email:PamM@gld-law.com

Tim K. Goss
Tamara L. Banno
**FREESE & GOSS, PLLC**
3031 Allen Street, suite 100
Dallas, Texas 75204
(214) 761-6610 telephone
(214) 761-6688 facsimile
Goss39587@aol.com
tbanno@tlb-law.com

Joseph A. Osborne
**BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Blvd., Suite 100
West Palm Beach, FL 33409
Telephone: (561) 684-2500
Facsimile: (561) 684-6308
Email: JAOsborne@babbitt-johnson.com

Neal L. Moskow, Esq.
**URY & MOSKOW, LLC**
883 Black Rock Turnpike

Fairfield, CT 06825
Telephone (203) 226-8088
Facsimile (203) 610-6399
Email: neal@urymoskow.com

Edward J. Parr, Jr., Esq.
**URY & MOSKOW, PLLC**
1250 Connecticut Ave., NW, Suite 200
Washington, DC 20036
Telephone (202) 321-8982
Facsimile: (202) 318-3255
Email: tedparr@urymoskow.com


David P. Matthews, Esq.
Julie L. Rhoades, Esq.
**MATTHEWS AND ASSOCIATES**
2509 Sackett Street
Houston, TX 77098
Phone: 713-522-5250
Email:
dmatthews@thematthewslawfirm.com
Email: jrhoades@thematthewslawfirm.com

*Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2010, I filed the foregoing document via Federal Express with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel or records or pro se parties identified on the attached Service List in the manner specified, either via Electronic Mail or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.


/s/*Michael T. Gallagher*
Michael T. Gallagher

**SERVICE LIST**
In re Trasylol Products Liability Litigation – MDL-1928
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON
United States District Court
Southern District of Florida

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Joseph A. Osborne
Email:  JAOsborne@babbitt-johnson.com
**BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Blvd., Suite 100
West Palm Beach, FL  33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs and Plaintiffs' Steering Committee*

Patricia E. Lowry
Email:  plowry@ssd.com
Barbara Bolton Litten
Email:  blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY, L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
440 Louisiana #1600
Houston, TX 77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Richard K. Dandrea, Esq.
Email:  rdandrea@eckertseamans.com
**ECKERT, SEAMANS, CHERIN & MELLOTT, LLC**
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone:  412-566-6000
Facsimile:  412-566-6099
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Alan G. Schwartz
Email: aschwartz@wiggin.com
**WIGGIN AND DANA LLP**
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Telephone:  203-498-4400
Facsimile:  203-782-2889
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Eugene A. Schoon
Email: eschoon@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Catherine Barrad, Esq.
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, California  90013
Telephone: 213-896-6688
Facsimile: 213-896-6600
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Philip S. Beck
Email: philip.beck@bartlit-beck.com
Steven E. Derringer
Email: steven.derringer@bartlit-beck.com
Shayna Cook
Email: shayna.cook@bartlit-beck.com
**BARTLIT, BECK, HERMAN, PALENCHAR**
       **& SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone: 312-494-4400
Facsimile: 312-494-4440
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*