UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928- MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION-MDL-1928 | ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| *Anna Bryant v. Bayer Corp., et al.,* Case No. 9:08-cv-80868 | ) ) ) |
| *Melissa Morrill v. Bayer Corp., et al*, Case No. 9:08-cv-80424 | ) ) ) |
| *Naguib Bechara, et al. v. Bayer Corp., et al.* Case No. 9:08-cv-80776 | ) ) ) |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING
OFF-LABEL PROMOTION OF TRASYLOL**

**COME NOW** Plaintiffs respectfully submit this response in opposition to Bayer's motion to exclude evidence and argument regarding alleged "off label" promotion of Trasylol for surgeries that allegedly have no bearing on *Bryant*, *Morrill* and *Bechara*.

**I.
INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS'
OPPOSITION TO BAYER'S MOTION TO EXCLUDE EVIDENCE AND
ARGUMENT REGARDING IRRELEVANT MARKETING MATERIALS**

In the interest of brevity and to avoid burdening the Court with duplicative briefing, Plaintiffs hereby incorporate by reference section I of "Plaintiffs' Opposition to Bayer's Motion to Exclude Evidence and Argument Regarding Irrelevant Marketing Materials," setting forth the appropriate standards for a motion *in limine*, including the requirement that the motion state with

1

specificity the evidence for which Defendants seek exclusion. Subject to this objection, Plaintiffs respond as follows:

## II.

## ARGUMENT AND AUTHORITIES.

"'Relevant evidence' means evidence having <u>any tendency</u> to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In applying Rule 403 to relevant evidence alleged to be unduly prejudicial, the Court should "'look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.'" *United States v. Jernigan*, 341 F.3d 1273, 1284 (11th Cir. 2003)(quoting *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002)(quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989)). A district court's decision not to exclude evidence pursuant to Rule 403 as unduly prejudicial is subject to review under an abuse of discretion standard. *Jernigan*, 341 F.3d at 1284.

In addition to being impermissibly vague, Defendants' motion fails because off-label "marketing" is relevant and admissible for three primary reasons: 1) Bayer's state of mind and motive regarding marketing and the need to expand the approved indications and market for its primary and most important money-making product, Trasylol, sometimes referred to by Bayer's employees as it's "cash cow;"[1] 2) for impeachment of Bayer's witnesses; and 3) punitive

---

[1] Trasylol is derived from bovine lung tissue, apparently leading Bayer employees to use the cow reference.

2

damages because regardless of renal risks, Bayer aggressively marketed, putting profits over patient safety.

With regard to any questions during depositions, Defendants disregard the scope of discovery and the responsibilities of those questioning Bayer's current and former employees and Key Opinion Leaders on behalf of the Plaintiffs' Steering Committee. As this Court is well aware, scope of discovery is not limited by admissibility. Further, although Defendants do not specify which deposition questions cause them such distress, when questioning non-case specific witnesses on behalf of the overall Trasylol docket, the PSC representatives were obligated to inquire into all areas: one of which is off-label uses which may be implicated in some of the specific cases. However, without the specific deposition questions and testimony, it is impossible for Plaintiffs to ascertain whether or not the questions and testimony fall within the categories of motive and marketing and/or punitive damages and thus, are relevant and admissible.

### A. Off Label Marketing is Unethical and Improper.

As acknowledged by Bayer's current head of a global division and former U.S. Marketing Director for Trasylol, Stan Horton, off label marketing of a pharmaceutical product is unethical and improper. Under oath, Dr. Horton testified as follows:

> Q. What is off-label marketing?
>
> A. The FDA grants a label based on the studies that's done for an indication. And that is what you are permitted to market the product for.
>
> Q. Okay. **Is it improper to market a product for uses for which it is not approved?**
>
> A. **Yes.**

> Q. **Is it unethical to market a product for uses for which it is not approved?**
>
> [objection omitted]
>
> THE WITNESS: **Yes.**

[Horton Depo. (April 14, 2009) 156:4 – 17 (Exhibit 1)].

Dissemination of information regarding off-label uses (as opposed to "marketing")[2] is permissible under the federal regulatory scheme but specific narrow requirements must be met. Although a manufacturer may disseminate written information concerning the "safety, effectiveness, or benefit of a use not described in the labeling for an approved drug," the information must not "pose a significant risk to the public health" or be "false or misleading" and may only be disseminated to specific recipients, such as health care practitioners. *See* 21 C.F.R. §§ 99.101, 99.105. The information regarding an off-label use, *inter alia*, must also be balanced and provide a prominent statement disclosing the fact that the "'information concerns a use that has not been approved by the Food and Drug Administration.'" *See Id*. at § 99.103. Sixty days before dissemination of off-label written information, the information must be submitted to the FDA for approval. *Id.* at § 99.102.

### B. Off-label use of Trasylol was financially significant for Bayer.

For Trasylol, a significant portion of the use/market was off label. According to Stan Horton, the U.S. Marketing Director for Trasylol, although the percentage changed over the

---

[2] The sales representative who called on Anna Bryant's cardiac surgeon testified that when Bayer provided her with a document labeled "disseminate only", she could "hand it out to customers, but you can't talk about it. Like, you can leave it behind." [Sheffield-Motika Depo. 124:11 – 25 (Exhibit 2)].

years, most of the time, about **fifty percent** of Trasylol sales were for off label uses. [Horton Depo (April 14, 2009) 158:20 – 159:14 (Exhibit 1)].

Although cleverly characterized as "studies" and not marketing, Bayer funded studies on off-label uses and hired consultants whose purpose was to help determine areas to "expand the market." *Id.* at 160:3 – 15; 163:21 – 166:2. The complicated involvement between marketing and market expansion for off-label indications is illustrated by the following exchange with Bayer's Marketing Director for Trasylol, Stan Horton, when discussing a document (BAY04923426) entitled "Trasylol Use in CABG Surgery Could Be Increased, percent of total CABG procedures; 2003." Page 2 of that document is entitled "Off-Label Trasylol Usage Could Also Be Increased."[3]

> Q.  Did Bayer ever conduct studies to expand the usage of -- the off-label usage of Trasylol?
>
> [objection omitted]
>
> A:  No, we would do studies -- our Phase IV committee would fund studies in other areas as pilots to give us basic information in which we might make decisions on sizing trials and doing different trials if the clinical group had deemed it important.
>
> Q:  Well, here's my question. Why is Bayer hiring consultants to advise them on how to increase off-label usage if they don't intend upon marketing off label?
>
> [objection omitted]
>
> A:  Well, Bayer would not have proceeded down a road of off label. **There may be from this you could identify certain areas and procedures that might be of marketed value to do additional studies to go after an indication.** I don't know what the full impact of this report is, but -- I mean, from what I would say

---

[3] Significantly, despite assertions that studies are not marketing, on page 3 of Exhibit 3 (BAY04923426 - 28), clinical studies are included in the graph of promotional spending. The document indicates that the source of the information is Bayer's brand plan.

5

        that they're trying – the presentation that they were trying to make was that **heart transplants were 2 percent, we were getting that, it's a small market. Valves was [sic] a larger market. And then liver transplant, orthopedic, vascular and other intra-abdominal and other areas in gynecology and urology, which were high blood loss areas, might be additional areas to conduct studies to see the effect in patients.**

Q.    Here's my concern: You've already testified and you told me that **off-label marketing is unethical. True?**

[Objection omitted]

**A:    True.**

Q.    And knowing that it's unethical, for some reason, according to you, Bayer is sending or hiring consultants to advise them on off-label marketing. Doesn't that seem unethical as well?

[objection omitted]

A.    I don't know what the whole form is, but **I think that they probably were -- sought to advise us on how to expand the overall market for Trasylol**. I mean, the first page here, which you have, is in CABG surgery. So at least there was on-label as well as off-label advice given, so... (ellipsis in original).

[Horton (April 14, 2009) 163:21 – 166:2 (emphasis added) (Exhibit 1)].

Dr. Horton apparently had no reasonable explanation for the second page of the document, where marketing to increase off-label sales was clearly the issue. [See BAY04923426 - 28 at 2 (Exhibit 3)].

        **C.    Off-label promotion by the Bayer sales representatives.**

Because Defendants have not specified additional documents or testimony, Plaintiffs can only respond with examples. Thus, for example, Plaintiff Anna Bryant's heart surgeon was called upon on Bayer's behalf by Sales Representative Katherine Sheffield-Motika. As part of her sales duties, Ms. Sheffield-Motika touted the purported "benefits of Trasylol" over Amicar, the competing much cheaper medication. Sheffield- Motika Depo 55:3 – 56:1 (Exhibit 2). In

6

that regard, she was trained to inform doctors regarding Trasylol's alleged affect on SIRS, systemic inflammatory response syndrome and that to achieve protection from SIRS, the full dose of Trasylol was necessary.[4] *Id*.; 114 – 118:13.

This sales representatives training, to discuss SIRS, particularly in relation to full dose, was in violation of the regulatory scheme.  In fact, in 1997, Bayer received a letter from the FDA, called a DDMAC letter, admonishing them for not having been approved for anti-inflammatory claims.  1997 DDMAC letter (Exhibit 4).  Regardless, those claims were still part of the training for sales representatives when Plaintiffs' surgeries occurred.  In fact, the label in effect in 2006 when full dose Trasylol was administered to Plaintiffs Bryant and Bechara did NOT include anti-inflammatory action as one of the indications for use.  Trasylol label (Exhibit 5).

Instead, as noted by Plaintiffs' expert, Dr. Suzanne Parisian,

> The promotion[5] falsely implies to physicians that Trasylol conveys a more beneficial dose-dependent effect o the kidney, i.e. the use of the full dose having greater anti-inflammatory benefits for a patient than the half-dose.  However, there is no adequate scientific support for that misleading marketing claim. The Bayer pieces also imply that beneficial effects of Trasylol are dose-dependent and a greater effect will be obtained by administration of the full-dose. (Harrison, 11/19/08, p. 529-531).  There is no scientific support that was provided to FDA to support the claim that a full-dose provides a more beneficial effect for a CABG patient than a half-dose.  In fact, there is information in Bayer's own clinical studies to support that just eh opposite is true, namely that the risk for a patient increases with a larger full dose (BAY00939855-4); (BAY032662230-31).

---

[4] Both Plaintiffs, Bryant and Bechara, received a full dose.
[5] Dr. Parisian is specifically referring to the Bayer promotional piece (attached hereto as Exhibit 7).  This promotional piece is only an example of the Bayer's off-label SIRS marketing. (another example attached hereto as Exhibit 8).

[Excerpt from report of Dr. Parisian (Exhibit 6)].

### D. Bayer's anticipated testimony regarding the company.

Plaintiffs anticipate that Bayer witnesses will repeatedly testify that Bayer values patient safety or that their primary purpose is patient health or safety. For example, despite having been trained to promote the off-label alleged inflammatory effect, particularly with full dose, and being provided promotional materials regarding SIRS, Katherine Sheffield-Motika, Bayer Sales Representative to Plaintiff Anna Bryant's treating heart surgeon testified that she believed in Bayer's mission statement that "patient safety is the first priority" and that she would not sell the product if she did not feel that way. [Sheffield-Motika Depo 106:23 - 107:5 (Exhibit 2)]. In fact, she testified that, believing in the information provided by Bayer, she sold Trasylol "as if her family members were going to use it." *Id.* at 107:6 - 8; 45:18 - 46:17.

Likewise, Edwin Tucker, Vice President of Pharmacovigilance for Bayer, the person responsible for processing safety information in the United States, testified that his "primary role is for patient safety and to ensure that we represent information with regards to safety to our prescribers and to our patients to maximize the patient safety." [Tucker Depo 13:4 – 8 (Exhibit 9)]. He further testified:

> Q. So, if I'm looking at your job, **the most important thing in your job is patient safety. Fair statement?**
>
> A. **I would regard that as my primary role, yes.**
>
> Q. Okay. At Bayer, what's more important, profits or patient safety?
>
> A. We don't differentiate between those. **Patient safety is our primary goal**.
>
> Q. So, when you say you don't differentiate between them, does that mean that profits are right up there with patient safety?

8

  A. No.  **Patient safety is our primary goal**.

[Tucker Depo. 35:13 – 36:5 (emphasis added) (Exhibit 9)].

Further, in 2004, in addressing the importance of reporting adverse events, Dr. Tucker issued an email, as Head of Drug Safety for Bayer Corporation U.S., describing the company "as an ethical company, we are dedicated to patient safety and ensuring compliance with all regulations relating to patient safety." [BAYCS00264891 – 92 (Exhibit 10)].  This email was sent to Katherine Sheffield-Motika, the Trasylol sales representative who called on Plaintiff Bryant's cardiac surgeon.

  Likewise, Pam Cyrus, former Bayer Director of Medical Science and current Bayer Vice President, U.S. Medical Affairs, testified:

  Q. Okay.  Bayer has an obligation to make sure that patient safety is its number one priority, correct?

  A. It has an obligation to patient safety, yes.

[Cyrus Depo (Vol. I) 87:25 – 88:4 (Exhibit 11)].

 These are but a few examples of the statements Plaintiffs anticipate that Bayer will make regarding Bayer's emphasis on patient safety.

  **E.** **Relevancy.**

   **1.** **Motive and state of mind.**

 Given the significant percentage of sales consistently attributable to off-label uses (fifty percent), Bayer's motive and state of mind regarding profits over safety and regulatory compliance is clear.  Plaintiffs should be able to introduce evidence of the off-label marketing efforts to demonstrate Bayer's profit based motives.

   **2.** **Impeachment.**

9

As demonstrated from the above examples of testimony of just three of Bayer's employees, including the sales representative from the Bryant case (and the e-mail sent to that sales representative), it is reasonable to expect that Bayer will elicit testimony or seek to introduce evidence that Bayer puts patient safety first or that patient safety is Bayer's priority. The evidence regarding improper off-label marketing for uses which are unapproved and for which safety and efficacy have not been demonstrated is necessary to rebut that evidence. To deny such impeachment to Plaintiffs would allow Bayer to mislead the jury and be manifestly unfair to Plaintiffs.

### 3.  Punitive damages.

Evidence regarding Defendants' disregard for safety by virtue of its off-label marketing is both relevant and admissible towards punitive damages. For brevity, Plaintiffs hereby incorporate by reference as if set forth in full Plaintiffs' Response to Defendants' Motion to exclude Evidence, Argument, and Testimony not Relevant to the Assessment of Punitive Damages. As discussed therein, evidence of Bayer's activities which harmed or with disregard for safety is both relevant and admissible.

### III.

### THE ONLY SPECIFIC DOCUMENTS REFERENCED BY DEFENDANTS

This motion is another example of the fundamental failure of most of Defendants' motions *in limine*. While Defendants do identify two documents from Plaintiff Anna Bryant's exhibit list, numbers 77 and 297, the remainder of Defendants' motion is vague and not specific, instead referring to documents in a general category that apparently encompasses all documents containing any reference to surgeries other than cardiopulmonary bypass graft surgery.

With regard to those two specific exhibits, in the three cases presently before the Court, Plaintiffs do not intend to offer number 77 regarding the Bayer sponsored Aprotinin in Liver Transplantation study in the Nederlands.

Exhibit 297, however, is a different matter. This exhibit is a series of emails exchanged in October 2004 between Bayer employees Andrea Nadel and Jennifer Mauer and Dr. Robert Posten regarding an article that Dr. Posten submitted to Bayer for review, comment, and approval prior to submission to a peer reviewed publication in the United States: Circulation. The article is regarding the off label use of Trasylol in OPCAB or off pump coronary bypass surgery. These 2004 communications indicate the extremes that Bayer went to, prior to Plaintiffs surgeries, to increase use and market for their cash cow, Trasylol. Such evidence is clearly relevant as discussed above and should not be excluded as unduly prejudicial. Instead, if necessary, a limiting instruction would cure any prejudice or confusion.

## IV.
## MORE PROBATIVE THAN PREJUDICIAL

Bayer's argument to exclude under Rule 403 is groundless. The language of Rule 403 is clear: "Relevant evidence will not be excluded unless its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The evidence regarding off-label marketing and promotion is necessary to demonstrate Bayer's financial incentive and motive for placing profits over patient safety. Clearly, these are not facts that could mislead or confuse anyone, but instead is the truth that shows Bayer's philosophy that the risk to their patient population is outweighed by the monetary gain from marketing and selling Trasylol off-label (which accounted for fifty percent of total

11

sales). Therefore, the probative value of such evidence far outweighs any the danger of misleading or confusing the jury.

While it should go without saying that all evidence is adverse to some party and thus prejudicial, evidence is only inadmissible if it creates "undue" prejudice so that it threatens an injustice. *See Bendi v. McNeil-P.P.C., Inc.,* 6 F.3d 1378, 1385 (4th Cir. 1995) (explaining how the probative values of certain reports was not outweighed by the danger of unfair prejudice, because the reports were highly probative on the issue of notice and defendant was free to offer testimony rebutting their significance). It would certainly be an injustice if the Plaintiffs were not allowed to offer evidence regarding Bayer's off-label marketing for the relevance discussed above. The danger of causing any unfair prejudice in this instance does not substantially outweigh the clear probative value of the (presumed) evidence challenged by Bayer. Thus, it should be admitted.

## V.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs ask that the Court deny Defendants' Motion and allow Plaintiffs to proceed to trial with all relevant evidence.

DATED: March 2, 2010.

Respectfully submitted,

/s/ *Michael T. Gallagher*
Michael T. Gallagher
U.S. District Court Admission #5395
**THE GALLAGHER LAW FIRM**
2905 Sackett Street
Houston, Texas 77098
Telephone: (713) 222-8080

Facsimile:  (713) 222-0066 (fax)
Email:  PamM@gld-law.com

Tim K. Goss
Tamara L. Banno
**FREESE & GOSS, PLLC**
3031 Allen Street, Suite 100
Dallas, Texas 75204
Telephone:  (214) 761-6610
Facsimile:  (214) 761-6688
Email:  Goss39587@aol.com
tbanno@tlb-law.com

David P. Matthews
Julie L. Rhoades
**MATTHEWS & ASSOCIATES**
Texas Bar No.:  16811710
2905 Sackett Street
Houston, Texas 77098
Telephone:  (713) 522-5250
Facsimile:  (713) 535-7184
Email:dmatthews@thematthewslawfirm.com
jrhoades@thematthewslawfirm.com

Joseph A. Osborne
**BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Blvd., Suite 100
West Palm Beach, FL  33409
Telephone:  (561) 684-2500
Facsimile:  (561) 684-6308
Email:  JAOsborne@babbitt-johnson.com

Neal L. Moskow, Esq.
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone (203) 226-8088
Facsimile  (203) 610-6399
Email:  neal@urymoskow.com

Edward J. Parr, Jr., Esq.
**URY & MOSKOW, PLLC**
1250 Connecticut Ave., NW, Suite 200

13

        Washington, DC 20036
        Telephone (202) 321-8982
        Facsimile: (202) 318-3255
        Email: tedparr@urymoskow.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2010, I filed the foregoing document via electronic filing with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via Electronic Mail or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

        /s/ *Michael T. Gallagher*
        Michael T. Gallagher

**SERVICE LIST**
In re Trasylol Products Liability Litigation – MDL-1928
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON
United States District Court
Southern District of Florida

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Joseph A. Osborne
Email:  JAOsborne@babbitt-johnson.com
**BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Blvd., Suite 100
West Palm Beach, FL  33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs and Plaintiffs' Steering Committee*

Patricia E. Lowry
Email:  plowry@ssd.com
Barbara Bolton Litten
Email:  blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY, L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
440 Louisiana #1600
Houston, TX 77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Richard K. Dandrea, Esq.
Email:  rdandrea@eckertseamans.com
**ECKERT, SEAMANS, CHERIN & MELLOTT, LLC**
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone:  412-566-6000
Facsimile:  412-566-6099
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Alan G. Schwartz
Email: aschwartz@wiggin.com
**WIGGIN AND DANA LLP**
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Telephone:  203-498-4400
Facsimile:  203-782-2889
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Eugene A. Schoon
Email:  eschoon@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone:  312-853-7000
Facsimile:  312-853-7036
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Catherine Barrad, Esq.
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, California  90013
Telephone: 213-896-6688
Facsimile: 213-896-6600
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
Shayna Cook
Email: shayna.cook@bartlit-beck.com
**BARTLIT, BECK, HERMAN, PALENCHAR**
    **& SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone:  312-494-4400
Facsimile:  312-494-4440
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*