UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION—MDL—1928 | ) ) ) ) |
| This Document Relates to: | ) ) |
| *Anna Bryant v. Bayer Corp. et al.*, Case No. 9:08-cv-80868 | ) ) ) |
| *Naguib Bechara, et al. v. Bayer Corp., et al.*, Case No. 9:08-cv-80776 | ) ) ) |
| *Melissa Morrill v. Bayer Corp., et al.*, Case No. 9:08 cv-80424 | ) ) ) ) |

**PLAINTIFFS' OPPOSITION TO BAYER'S
MOTION *IN LIMINE*, TO EXCLUDE EVIDENCE AND ARGUMENT
REGARDING INJURIES NOT AT ISSUE IN A GIVEN CASE
<u>AND MEMORANDUM OF LAW IN SUPPORT</u>**

Plaintiffs Anna Bryant, Naguib Bechara, et al, and Melissa Morrill submit the following Opposition to Bayer's Motion *In Limine* to Exclude Evidence and Argument regarding injuries not at issue in a given case and brief in support thereof and respectfully requests that said Motion *In Limine* be denied for the reasons set forth herein.

**I.**

<u>**PRELIMINARY ARGUMENT**</u>

  A.  Defendants' motion fails to satisfy the fundamental requirements for motions *in limine*.

1

This most recent flurry of motions by Defendants[1] demonstrates they intend to challenge every aspect of this litigation regardless of merit.  With respect to the two first trial group cases, *Bryant* and *Bechara,* Defendants have (1) filed Motions for Summary Judgment; (2) filed Daubert challenges for *all* eight general experts; and (3) challenged *all* case specific experts except one.

Now, Defendants have filed fifteen specific motions *in limine* – fourteen addressing separate "topics" and one addressing "additional" matters which has nine subparts.  The problem with most, if not all, of the motions is that they are fundamentally flawed.  Seldom do they identify a specific document.  When they do, they identify a couple of documents and then attempt to bootstrap arguments relating to the exclusion of those documents to sweep in a broad, vague, and/or general categories of evidence.

The motions ignore the most fundamental concepts of motions *in limine.* While motions *in limine* may "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, without lengthy argument at the trial,"[2] it is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there. *See Sperbera v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975), *cert. denied,* 423 U.S. 987, 96 S.Ct. 395.46 L.Ed.2d 303 (1975); *Hunter v. Blair.* 120 F.R.D. 667 (S.D. Ohio 1987).

A motion *in limine* should be denied where it is too sweeping in scope. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *Equity Lifestyle Props. v.*

---

[1] Defendants Bayer Healthcare Pharmaceuticals Inc. (as successor in interest to Bayer Pharmaceutical Corporation), Bayer Healthcare LLC, Bayer AG, and  Bayer Schering Pharma AG (as successor in interest to Bayer Healthcare AG), are referenced collectively throughout this motion as "Bayer" or "Defendants".

[2] *Palmieri v. Defaria* 88 F.3d 136, 141 (2d Cir.1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines. Inc.,* 652 F. Supp. 1400, 1401 (D.Md.1987)).

2

*Florida Mowing & Landscape Serv.*, 2006 U.S. Dist. LEXIS 22329 (M.D. Fla. Apr. 24, 2006)(motion *in limine* that did not specify evidence at issue denied as too vague for court to make a ruling); *Weiss v. La Suisse, Societe D' Assurances Sur La Vie,* 293 F. Supp. 2d 397, 407 (S.D.N.Y. 2003). Similarly, a motion *in limine* should be denied where the moving party fails to specify the evidence it seeks to exclude with any particularity.  *Wechsler v. Hunt Health Sys., Ltd.,* 381 F.Supp.2d 135, 150 (S.D.N.Y. 2003); *Starling v. Union Pac. R.R. Co.,* 203 F.R.D. 468, 482 (D.Kan. 2001).  Vague and overly broad exclusion would be difficult for the Court to enforce, and would prevent the party from presenting relevant and prohibitive evidence. *See United States v. Rosenthal*, 793 F.2d 1214, 1237 (11th Cir. 1986) (upholding trial court's denial of motion *in limine* that was too broad, where subject matter movant sought to exclude was undefined); *United States v. Hicherson*, 732 F.2d 611, 613 (7th Cir. 1984) (*in limine* motion that "was far too broad to pinpoint the objectionable evidence" did not preserve objection for appeal).

Further, a motion *in limine* is not a device by which the moving party may obtain summary judgment.  *Bowers v. NCAA*, 563 F. Supp.2d 508. 532 (D.N.J. 2008); *Galentine v. Estate of Stekervetz.* 273 F. Supp.2d 538, 543-44 (D. Del. 2003).  The purpose of a motion *in limine* is not to invade the province of the trier of fact and attempt to resolve issues of fact or weigh the evidence. *Goldman v. Healthcare Mgmt. Sys. Inc*., 559 F. Supp.2d 853, 871 (W.D. Mich. 2008); *C & E Servs. Inc. v. Ashland Inc.,* 539 F. Supp.2d 316, 323 (D.D.C. 2008). Where a motion *in limine* seeks to exclude categories of claims or damages, it is in actuality a motion for partial summary judgment. *Point Prods. A.G. v. Sony Music Entertainment,* 215 F. Supp.2d 336, 340 (S.D.N.Y. 2002). Under those circumstances, the opposing party has not been afforded the appurtenant procedural safeguards and the nominal motion *in limine* should be denied. *C & E Servs., Inc*., 539 F. Supp.2d at 323.

### B. Bayer's Motion *in limine*, to Exclude Evidence and Argument Regarding Injuries not at Issue in a Given Case, Should be Denied.

Bayer's argument in support of it's Motion *In Limine* is perplexing at best and is seemingly another "smoke and mirrors" attempt to mischaracterize Plaintiffs' evidence. In its' Motion, Bayer moves to preclude Plaintiffs from introducing "anecdotes" or "medical reports" about "others' alleged injuries" at trial because such evidence is not "substantially similar" to the Plaintiffs' injuries as alleged in their complaint and should be excluded pursuant to Federal Rules of Evidence 401-403. This is simply not true and Plaintiffs would like to set the record straight: Plaintiffs have never represented to Bayer that they intend on using "anecdotes" or "other persons' medical records" in their case in chief.[3] What the Plaintiffs do have and do anticipate introducing at trial is quoted by Bayer in its' Motion as "study findings." Presumably, such "study findings" Bayer refers to are the widely published and well received clinical trials and cohort studies that contain scientific data compiled from summaries of any number of patient populations. The scientific data is based on percentages, not specific patients nor their individual medical records or histories. Such studies in no way contain "medical reports" of other Trasylol victims as Bayer would have this court believe. Each of these studies offer scientific support for the opinion that acute renal failure leading to dialysis is caused by Trasylol, as is the increase risk of death, stroke and myocardial infarction. None of these studies, as discussed in detail below, can be considered irrelevant to the factual underpinnings of these cases. Such evidence will to

---

[3] Although Courts have permitted such admission of discussing other persons' individual injuries where such injuries are substantially similar, as they would be here if, in fact, Plaintiffs chose to introduce such evidence. *See Drabik v. Stanley-Bostitch, Inc.*, 997 F.2d 946 (8th Cir. 1993) (Plaintiff, who was injured when a pneumatic nailer discharged after coming in contact with his head, was able to cross examine defendants expert regarding the injuries sustained by 4 other persons involving the same nailer to prove that the manufacturer had notice.)

aid the jury concerning the relevant issues.  Plaintiffs therefore urge this Court to deny Bayer's Motion *In Limine* precluding such evidence.

## II.

## LAW AND ARGUMENT

### A.     Legal Standard.

Federal Rules of Evidence 402 provides the baseline for determining the admissibility of evidence in the Federal Courts.  *In re Nautilus Motor Tanker Co.,* 85 F.3d 105 (3d Cir. 1996) (citing *Daubert v. Merrell Dow Pharms,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). Rule 402 provides the following:  "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority."  *Id.* Rules 401 defines 'relevant' evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.*  "Relevant evidence will not be excluded unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  "The Federal Rules of Evidence embody a strong and undeniable preference for admitting any evidence having some potential for assisting the trial of fact."  *DeLuca v. Merrell Dow Pharms, Inc.,* 911 F.2d 941, 956 (3d Cir. 1990). Helpfulness to the trier of fact remains the ultimate touchstone of admissibility.  *Id*.

### B.     The Studies.

In 2002, Bayer arranged with Dr. David Kress of St. Luke's Medical Center in Milwaukee to conduct a full dose atrial fibrillation study. Dr. Kress was awarded a $48,000 grant

from Bayer to perform the study. In 2003, Dr. Kress determined that he was able to answer his proposal question based on the preliminary data which showed that there was a renal failure concern with Trasylol at doses higher than half dose and that there was no significant difference in Trasylol and non-Trasylol patients with regard to their rate of atrial fibrillation. Bayer, concerned that Dr. Kress' study would influence other physicians, voiced specific opinions that his findings should not be published. Thus, in 2003, Bayer made the decision not to publish Dr. Kress' study, not to release the results of this study, and not to reveal the adverse health and safety information contained in the study. It was not until November 9, 2006 that Bayer finally informed the FDA about the renal safety findings of Dr. Kress.

A similar course of action was pursued by Bayer in connection with the St. George's Hospital London study. In October 2001, Bayer approved a protocol for St. George's Hospital London to study the benefits of using Trasylol. Richardson Research prepared a report for Bayer analyzing the St. George's Hospital data and unexpected outcomes. The report, prepared in December of 2003, stated that the use of Trasylol was associated with longer stays, with increased use of blood products and with higher mortality. Bayer did not provide the St. George's Hospital report to the FDA until September 21, 2006.

Adept at burying its own adverse study data, other important studies were nevertheless published in the years following Trasylol's release that raised concerns that the drug was related to adverse health outcomes. For example, in early 2006, within a single week, two separate peer reviewed medical journals published articles on two separate observational studies which each concluded that Trasylol use was related to various increased health risks. *See* Mangano, *"The Risk Associated with Aprotinin in Cardiac Surgery",* (NEW ENGLAND JOURNAL OF MEDICINE, January 26, 2006). The Mangano (2006) study compared 4374 patients undergoing

6

revascularization who received Trasylol, aminocaproic acid, tranexamic acid (both alternatives to Trasylol) or no agent with regard to serious outcomes. The result of that study was that "use of aprotinin was associated with a doubling in the risk of renal failure requiring dialysis…." Mangano (2006) at 353. The Mangano (2006) study was closely analyzed by the FDA in 2007 and confirmed its' outcome, specifically that the risk ratio for patients as described above for a renal injury is 9.4% as opposed to 2.4% for those patients that did not receive Trasylol or a substitute. *See Mangano Study: FDA Analysis, et al.*

Shortly thereafter, another article, *See* Karkouti, *"A Propensity Score Case-Control Comparison of Aprotinin and Tranexamic Acid in High-Transfusion-Risk Cardiac Surgery,"* (TRANSFUSION January 20, 2006) (on-line edition), concluded that Trasylol was associated with an increased rate of renal dysfunction.

The Mangano (2006) study is particularly significant because it was an independently-funded study which included approximately 5000 patients. The Mangano study showed that Trasylol was associated with a doubling to tripling of the risk of renal failure requiring dialysis among patients undergoing complex coronary-artery surgery. The compelling results of the Mangano study were selected for publication in one of the most prestigious, peer-reviewed, medical journals in the world: the New England Journal of Medicine. Hence, the Managno findings carried significant weight and credibility. [4]

Due to the health concerns uncovered by these and other studies, the FDA issued a Public Health Advisory regarding Trasylol in February 2006 and set a meeting of the Cardiovascular and Renal Drugs Advisory Committee for September 21, 2006. The purpose of the Advisory Committee meeting was to seek input regarding Trasylol's safety profile.

---

[4] It should be noted that Bayer was aware of the Mangano study as early as 2003 but did nothing to evaluate whether Mangano's results showed increased risks for the patients being given Trasylol.

Unable to rely on its traditional strategy in the face of the large-scale Mangano (2006) study, Bayer commissioned its own cohort study of 78,000 patients to counter the Mangano results. Dr. Alex Walker, professor of Epidemiology at Harvard and past President of the International Society of Pharmaco-epidemiology was solicited to conduct the study. At the time, Dr. Walker worked with i3 Drug Safety which had access to the Premier Database, a compendium of information amounting to approximately 1/6 of all patients hospitalized in the United States. Unfortunately for Bayer, the i3 Study confirmed the findings of the Mangano study. In particular, the i3 Study found an increased risk of renal failure and death for patients receiving Trasylol as opposed to patients receiving aminocaproic acid. (Schneeweiss (2007)).

Bayer's answer to the problem raised by the i3 study was once again concealment. On July 17, 2006, Bayer met with the FDA to review the drug maker's data submissions relating to the Advisory Committee meeting. That Bayer had commissioned the i3 Study was not discussed at that time. On August 17, Bayer submitted a substantial briefing document to the FDA for purposes of the Advisory Committee meeting. The ongoing i3 Study was not mentioned in the August 17 briefing. On September 21, the Advisory Committee conducted a day long meeting on Trasylol. The preliminary results from the i3 Study were in Bayer's hands at the time of the 2006 FDA Advisory Committee meeting. Yet, Bayer during the entire day-long meeting, Bayer failed to mention either the existence of the i3 Study or its preliminary results.

Without the benefit of the i3 Study data confirming Mangano's findings, the FDA Advisory Committee ruled that Trasylol was acceptable for use in certain heart bypass patients without the need for additional warning language. The following day, the lead author of the i3 Study, Dr. Walker, instructed Bayer that it must turn over the preliminary results to the FDA. Only when Dr. Walker insisted upon disclosure did Bayer reveal the preliminary findings of the

8

i3 Study to the FDA. Had Bayer properly disclosed the i3 Study findings to the panel, Steven Findlay, a health-care analyst and member of the Advisory Committee panel, states that he "believe[s] there could have been another outcome to the panel hearing."

The publication of the Mangano and Karkhouti articles and the revelation of the i3 Study led the FDA to demand that Bayer take a closer look at its own data. Upon review of data that had been in Bayer's possession since November 2001, Bayer was forced to admit that its own global database of randomized clinical trials showed an increased risk of kidney failure (defined as a 50% increase in creatinine compared to baseline) for CABG patients receiving Trasylol as compared to patients receiving placebo (no agent). Previously, Bayer had told physicians and the FDA that there was no increased risk shown in their database. Bayer was also forced to admit that they had commissioned two studies, the results of which were never published or turned over to the FDA. Both showed increased risks with Trasylol. As a direct result, in December 2006 the FDA added a warning to the Trasylol label regarding kidney failure and restricted Trasylol's approved use to CABG patients at high risk for bleed.

Finally, Mangano reported yet a second study in early 2007, *See* Mangano, "*Mortality Associated With Aprotinin During 5 Years Following Coronary Artery Bypass Graft Sugery*",( JAMA, February 7, 2007). This study was conducted because acute safety concerns had been raised regarding certain hemorrhage-sparring medications commonly used in cardiac surgery, but no comprehensive data existed regarding their associations with long-term mortality. The results made it clear that aprotinin (Trasylol) was associated with significantly increased mortality following CABG surgery. The Mangano (2007) study concluded that the use of aprotinin among patients undergoing CABG surgery does not appear prudent because safer and less expensive alternatives are available.

In November of 2007, the FDA asked Bayer to discontinue the sale of Trasylol in the United States because it was not possible to "determine and identify a population of patients undergoing cardiac surgery for which the benefits of Trasylol outweigh the risks.

### C. The Scientific Data of the Effects of Trasylol is Relevant and Should be Admitted.

Evidence of other accidents is relevant if it shows the defendant's ability to correct known defects, the magnitude of the danger, the lack of safety for intended uses, or causation. *Kehm v. Procter & Gamble Mfg. Co.,* 724 F.2d 613, 625 (8th Cir. 1983). Such evidence can also prove notice of the existence of defects. *Lewy v. Remington Arms Co.,* 836 F.2d 1104, 1108 (8th Cir. 1988). The admissibility of [such] evidence is within the discretion of the trial court and its decision will not be disturbed unless there is clear and prejudicial abuse of discretion. *Roth v. Black & Decker, U.S., Inc.,* 737 F.2d 779, 783 (8th Cir. 1984).

In a case directly on point, *Novartis Pharmaceuticals Corp., et al v. Teva Pharmaceuticals USA, Inc.,* 2009 WL 3754170 (D.N.J. 2009) the defendant moved to preclude evidence regarding statistics of the difficulties in obtaining FDA approval for the drug Famvir on the basis of irrelevance and the likelihood of confusion and unfair prejudice to the jury. The defendant also moved to preclude evidence concerning how pharmaceutical companies typically identify lead compounds, how, after a lead compound is selected drugs are designed, how dugs are tested and subjected to clinical trials and how drugs obtain the FDA's approval. The Court denied the Motion *In Limine*, reasoning that "[n]either the common practice of pharmaceutical companies nor the procedure necessary for FDA approval can be considered irrelevant to the factual underpinnings" [of this case]. *Id.* at *13. "Such evidence is likely to aid the jury concerning the relevant issues and, therefore, is not precluded. *Id*. In another toxic tort case, *In re "AGENT ORANGE" Product Liability Litigation*, the Court held that epidemiologic studies

"assume a role of critical importance" in assisting the trier of fact. *In re "AGENT ORANGE" Product Liability Litigation*, 611 F.Supp. 1223, 1240 (E.D.N.Y. 1985). Courts have approved the growing judicial reliance and introduction of such "scientific evidence," noting that this is so based upon the supposition that scientists generally perform their duties accurately and faithfully. *Id*.

Evidence of "other injuries" or, as in this case, the "study findings" (as Bayer characterizes it), exposing the effects of Trasylol, including renal failure, renal failure requiring dialysis, stroke, myocardial infarction and death, is highly relevant to the issue of notice, a duty to investigate, a duty to warn and the unreasonableness of Bayer's conduct in marketing and selling Trasylol. The scientific data contained in the aforementioned studies impacts the risk-benefit profile of the drug and explains why it was unreasonably dangerous. Moreover, it is highly relevant because Bayer specifically promoted Trasylol by disseminating off-label benefit information claiming the Trasylol use reduced the risk of stroke, improved patient outcomes, modulated systemic inflammatory response and also denied that Trasylol caused myocardial infarctions.[5] The simple truth is: Bayer lied. Bayer lied to the public, lied to medical professionals, and lied to its own employees and consultants. The studies show that Bayer was able to prevent countless injuries to a statistically significant number of patient years before it was pulled from the market by the FDA. Bayer should not be allowed to continue the cover-up by keeping such compulsory studies from the jury.

Bayer's only argument that is echoed throughout its brief is that the "other injuries," specifically stroke, myocardial infarction and death, that may have been suffered by other victims of Trasylol not be allowed in evidence. Bayer's argument falls wide of the mark, as do

---

[5] See Plaintiffs' Exhibit H1, H2 and H3, Internal Bayer Sales Training Bulletins.

the cases it cites in support thereof.[6] It was never the intention of Plaintiffs to inflate their injuries and damages with individual *medical records* of other victims or evidence of any other accidents. However, it is crucial that Plaintiffs be permitted to introduce the fundamental, scientific truth that proves what Bayer knew about Trasylol and what effects it had on the population of cardiovascular patients as a whole, whether that be renal failure involving dialysis, stroke, myocardial infarction, or death. To be crystal clear, Plaintiffs only offer scientific data compiled from medical data of patient populations, not individuals.

Further, pursuant to the learned intermediary doctrine, it is the responsibility of the prescribing physician to weigh the risks and benefits of a drug for a particular patient. *See Latiolais v. Merck & Co.*, 302 Fed. Appx. 756, 757 (9th Cir. Cal. 2008). The information that Defendants seek to exclude is important to a physician's ability perform that analysis.

The scientific data contained in the studies surrounding Trasylol are clearly relevant. They are necessary to assist the jury in arriving at a verdict. It would be impossible for Plaintiffs to prove the essential elements of their claims without them.

### D. The Scientific Data of the Effects of Trasylol is More Probative Than Prejudicial.

Bayer's argument to exclude "irrelevant injuries" under Rule 403 is groundless. Bayer argues that such evidence would necessitate Bayer to "try to counter the improper inference by presenting and explaining to the jury the body of scientific evidence related to Trasylol's

---

[6] For example, one case involved the introduction of a videotape of *one other* throat cancer victim, *See Marsee v. United States Tobacco Company,* 866 F.2d 319 (10th Cir.1989)(Court denied admission of the videotape, reasoning that it was overly prejudicial), another had to do with whether the Court should grant "class certification" to a group of plaintiffs, *See In re Fosamax Products Liability Litigation*, 248 F.R.D. 389 (S.D.N.Y 2008)(Court denied class certification noting that plaintiffs failed to satisfy typicality requirement for class certification), and *Pinchinat v. Graco Children's Products, Inc.*, 2005 WL 59060928 (M.D.Fla)(Court denied the introduction of another stroller accident because it did not involve the same stroller at issue in that case).

purported association with other injuries not claimed" in this case and the "likelihood of confusion" would cause a "detour" in the trial. Bayer also claims that it would be "unfairly prejudicial" to make such a detour but fails to explain *why* this would be so. This does not provide adequate grounds for the exclusion of the scientific data reported in the studies. The language of Rule 403 is clear: "Relevant evidence will not be excluded unless its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The scientific data is essential to provide the jury with an overall picture of what Bayer knew about the effects on patients caused by Trasylol. Clearly, these are not facts that could mislead or confuse anyone, but instead is the truth that shows Bayer's philosophy that the risk to their patient population is outweighed by the monetary gain from marketing and selling Trasylol. Therefore, the probative value of such evidence far outweighs any the danger of misleading or confusing the jury.

Likewise, the injuries, including those suffered by the Plaintiffs here and by those who make up the patient population for the various studies, may very well invoke sympathy. While it should go without saying that all evidence is adverse to some party and thus prejudicial, evidence is only inadmissible if it creates "undue" prejudice so that it threatens an injustice. *See Bendi v. McNeil-P.P.C., Inc.,* 6 F.3d 1378, 1385 (4th Cir. 1995) (explaining how the probative values of certain reports was not outweighed by the danger of unfair prejudice, because the reports were highly probative on the issue of notice and defendant was free to offer testimony rebutting their significance). It would certainly be an injustice if the Plaintiffs were not allowed to offer evidence that is necessary to prove the elements of their case. The danger of causing any unfair

prejudice in this instance does not substantially outweigh the clear probative value of the (presumed) evidence challenged by Bayer. Thus, it should be admitted.

## CONCLUSION

A motion *in limine* should be denied where it is too sweeping in scope. *Sperberg, Id. at 712.* For the foregoing reasons, and since Bayer failed to specify any evidence it seeks to exclude with any particularity but instead leaves the Plaintiffs to their "best guess" as to what evidence they should defend, Plaintiffs respectfully request that the Court DENY Bayer's Motion.

This the 2nd day of March, 2010.

                              Respectfully Submitted,

                              /s/ *Michael T. Gallagher*
                              Michael T. Gallagher
                              U.S. District Court Admission #5395
                              **THE GALLAGHER LAW FIRM**
                              2905 Sackett Street
                              Houston, TX 77098
                              Telephone (713) 222-8080
                              Facsimile (713)222-0066
                              Email:PamM@gld-law.com

                              Tim K. Goss
                              Tamara L. Banno
                              **FREESE & GOSS, PLLC**
                              3031 Allen Street, suite 100
                              Dallas, Texas 75204
                              (214) 761-6610 telephone
                              (214) 761-6688 facsimile
                              Goss39587@aol.com
                              tbanno@tlb-law.com

                              Joseph A. Osborne
                              **BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A**.
                              1641 Worthington Blvd., Suite 100
                              West Palm Beach, FL 33409
                              Telephone: (561) 684-2500

Facsimile: (561) 684-6308
Email: JAOsborne@babbitt-johnson.com

Neal L. Moskow, Esq.
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone (203) 226-8088
Facsimile (203) 610-6399
Email: neal@urymoskow.com

Edward J. Parr, Jr., Esq.
**URY & MOSKOW, PLLC**
1250 Connecticut Ave., NW, Suite 200
Washington, DC 20036
Telephone (202) 321-8982
Facsimile: (202) 318-3255
Email: tedparr@urymoskow.com

David P. Matthews, Esq.
Julie L. Rhoades, Esq.
**MATTHEWS AND ASSOCIATES**
2509 Sackett Street
Houston, TX 77098
Phone: 713-522-5250
Email: dmatthews@thematthewslawfirm.com
Email: jrhoades@thematthewslawfirm.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2010, I filed the foregoing document via Federal Express with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel or records or pro se parties identified on the attached Service List in the manner specified, either via Electronic Mail or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

                                        /s/ *Michael T. Gallagher*
                                        Michael T. Gallagher

**SERVICE LIST**
In re Trasylol Products Liability Litigation – MDL-1928
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON
United States District Court
Southern District of Florida

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Joseph A. Osborne
Email:  JAOsborne@babbitt-johnson.com
**BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Blvd., Suite 100
West Palm Beach, FL  33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs and Plaintiffs' Steering Committee*

Patricia E. Lowry
Email:  plowry@ssd.com
Barbara Bolton Litten
Email:  blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY, L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
440 Louisiana #1600
Houston, TX 77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Richard K. Dandrea, Esq.
Email:  rdandrea@eckertseamans.com
**ECKERT, SEAMANS, CHERIN & MELLOTT, LLC**
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone:  412-566-6000
Facsimile:  412-566-6099
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Alan G. Schwartz
Email: aschwartz@wiggin.com
**WIGGIN AND DANA LLP**
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Telephone:  203-498-4400
Facsimile:  203-782-2889
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Eugene A. Schoon
Email: eschoon@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Catherine Barrad, Esq.
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, California 90013
Telephone: 213-896-6688
Facsimile: 213-896-6600
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Philip S. Beck
Email: philip.beck@bartlit-beck.com
Steven E. Derringer
Email: steven.derringer@bartlit-beck.com
Shayna Cook
Email: shayna.cook@bartlit-beck.com
**BARTLIT, BECK, HERMAN, PALENCHAR**
       **& SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone: 312-494-4400
Facsimile: 312-494-4440
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*