**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLBROOKS/JOHNSON**

| | |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION—MDL—1928 | ) ) ) ) |
| This Document Relates to: | ) ) |
| *Anna Bryant v. Bayer Corp. et al.,* Case No. 9:08-cv-80868 | ) ) ) ) |
| *Naguib Bechara, et al. v. Bayer Corp., et al. ,* Case No. 9:08-cv-80776 | ) ) ) ) |
| *Melissa Morrill v. Bayer Corp., et al.,* Case No. 9:08 cv-80424 | ) ) ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT RELATING**
**TO THE BART MORTALITY FINDING AND SUBSEQUENT REMEDIAL**
**MEASURES**

        **COME NOW** Plaintiffs and file this Plaintiffs' Opposition to Defendants'

Motion *in Limine* to Exclude Evidence or Argument Relating to the Bart Mortality

Finding and Subsequent Remedial Measures and would show the Court as follows:

**I.**

**INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN**
**PLAINTIFFS' CONCURRENTLY FILED OPPOSITION**

        In the interest of brevity and to avoid burdening the Court with duplicative

briefing, Plaintiffs hereby incorporate by reference Section I of "Plaintiffs' Opposition to

Bayer's Motion to Exclude Evidence and Argument Regarding Irrelevant Marketing

Materials," setting forth the appropriate standards for a motion *in limine*.

**II**.

## SUMMARY OF THE ARGUMENT

Bayer's[1] Motion *in limine* presents two questions:   (1) does Rule 407's "subsequent remedial measure" exclusion apply at all to a product recall which was *involuntarily* taken at the direction of a governing authority and when the manufacturer insists it was not done for remedial purpose?  And (2) if Bayer's withdrawal of Trasylol does come within the parameters of Rule 407 (which it does not), can it be excluded when it is offered for the undisputedly admissible purposes of impeachment and demonstrating feasibility?  The answer to both questions is "no."

Evidence of Trasylol's withdrawal from the marketplace is not a "subsequent remedial measure" subject to exclusion under Federal Rule of Evidence 407 ("Rule 407") for multiple reasons.   First, Bayer's decision to withdraw Trasylol was not a voluntary act inspired by concern for patients following the BART study.  Bayer had built a blockbuster drug by concealing, ignoring, and minimizing the adverse results of studies. Bayer did not suddenly change that financially successful strategy in November of 2007; rather, Bayer was *compelled* to withdraw the product.  As Bayer itself stated in its press release: "The company took this global action [withdrawing Trasylol from the market] *following direction* from the German BfArM and requests from the FDA and other regulators. . ." [Bayer Press Release: Bayer Temporarily Suspends Global Trasylol Marketing (Nov. 5, 2007) (emphasis added) (attached hereto as "Exhibit A")].   Because the Trasylol withdrawal was not a voluntary act by Bayer, it is not protected as a "subsequent remedial measure."  *See* Argument *supra* at III.A.1.  Second, Bayer stated at

---

[1] Defendants Bayer Healthcare Pharmaceuticals Inc. (as successor in interest to Bayer Pharmaceutical Corporation), Bayer HealthCare LLC, Bayer AG, and Bayer Schering Pharma AG (as successor in interest to Bayer HealthCare AG), are referenced collectively throughout this opposition as "Bayer."

the time Trasylol was withdrawn from the market that the product was not defective when used in accordance with its label.   That is a position Bayer has maintained throughout this litigation.   If it is Bayer's position that Trasylol was (and is) a safe pharmaceutical product that was adequate in its design and warnings – then its decision to withdraw the product was merely a business decision.   It was not a "remedial measure" at all.   Hence, Rule 407 does not apply.

Even if Rule 407 applied to preclude evidence of Bayer's non-voluntary and non-remedial withdrawal of Trasylol (which it does not), it would only limit use of such evidence for particular purposes.   Bayer's motion *in limine* is narrowly tailored to request exclusion of evidence regarding Trasylol's withdrawal from the market *only* when used to prove negligence, culpable conduct, or a product defect.[2]   By narrowly casting its motion, Bayer implicitly acknowledges what is abundantly clear under governing law: that the withdrawal of Trasylol from the market is admissible for purposes of impeachment and to show feasibility.   Plaintiffs offer evidence of Trasylol's withdrawal for these permitted (and unchallenged) purposes should be admitted.

## III.

## LEGAL ARGUMENT

### A.    THE WITHDRAWAL OF TRASYLOL FROM THE MARKETPLACE IS NOT A SUBSEQUENT REMEDIAL MEASURE GOVERNED BY RULE 407.

Rule 407 provides that evidence of subsequent remedial measures is not admissible to prove negligence, culpable conduct, or a defect in a product.   Fed. R. Evid.

---

[2] Throughout Bayer's motion *in limine* requests or references to the exclusion of evidence regarding withdrawal are consistently limited to the use of such evidence "to prove negligence, culpable conduct, [or] a defect in [the] product." [Bayer's Motion *in Limine* p. 1, 3, 5].   At no point, does Bayer request a blanket ruling that evidence of Trasylol's withdrawal be excluded for all purposes, or dispute the admissibility of such evidence for purposes other than showing negligence, culpable conduct or a product defect.

407.     The purpose of Rule 407 is to further the social policy of encouraging manufacturers to update and improve the safety features of their products by removing the fear that improvements would be used to prove defects in prior models.  *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1523 (1st Cir. 1991).   That social concern is not implicated by the facts of this case.  Here, (1) the withdrawal was an *involuntary* act required of Bayer by various health authorities, and (2) Bayer made no changes or improvements to Trasylol which it insists was safe and adequate in its warnings even at the time of withdrawal.   For each of these reasons, the withdrawal of Trasylol was not a subsequent remedial measure.  Rule 407 does not apply.

### 1.     Evidence of Involuntary Measures Are Not Excluded by Rule 407.

Bayer asks this Court to believe that after having (1) buried the adverse safety finding of the Kress and St. George's Hospital studies, (2) vehemently attacked the adverse safety findings of Mangano study, (3) concealed the adverse safety findings of the i3 Drug Safety Study from the FDA Advisory Committee, and (4) consistently downplayed, dismissed or denied any indication that Trasylol was unsafe, it suddenly changed its stripes in 2007 and decided to *voluntarily* pull Trasylol off the market in a good samaritan gesture due to the *preliminary* results of the lone BART study. [Bayer's Daubert Motion, p. 2].  That did not happen.   Bayer did not *voluntarily* recall Trasylol from the market.

Bayer neglects to mention that it was *directed* to withdraw Trasylol by the German Institute for Drugs and Medical Devices (BfarM). [Exhibit A].   The FDA, likewise, had requested and was pressuring Bayer to withdraw the drug. [Harris, Gardner, *Heart Surgery Drug Pulled From Market,* N.Y. Times (Nov. 6, 2007)(attached hereto as "Exhibit B"); Exhibit A].   In fact a leading FDA official, Dr. John K. Jenkins, stated at

the time that the "FDA could not identify a specific patient population where the benefits of using Trasylol could outweigh the risks." [Exhibit B]. Hence, Bayer's actions in withdrawing Trasylol were not voluntarily: they were directed by health authorities and required by applicable regulations.

Acts that are compelled are not voluntary. Courts have consistently held that evidence of involuntary acts is not precluded by Rule 407. That is because courts recognize that the anti-punishment rationale for excluding evidence of subsequent remedial measures has no application when the defendant has not voluntarily participated in the subsequent measure at issue. Where the measure at issue was involuntary, the admission of that measure into evidence does not 'punish' the defendant for his efforts to remedy his safety problems" and is therefore admissible. *See Millennium Partners, L.P. v. Colmar Storage,* LLC, 494 F.3d 1293 (11th Cir. 2007) (fact that subsequent lessee of warehouse required flood safeguards to be put in is not excludable under Rule 407 because the flood safeguards were put in without the defendant's voluntary participation); *Herndon v. Seven Bar Flying Serv., Inc.,* 716 F.2d 1322, 1331 (10th Cir. 1983) ("Where a superior authority requires a tortfeasor to make post-accident repairs, the policy of encouraging voluntary repairs which underlies Rule 407 has no force"); *State v Elementis Chemical, Inc*., 887 A.2d 1133 (N.H. 2005) (applying state rule of evidence identical to Federal Rule 407, holding that "for an act to constitute a subsequent remedial measure, it must be voluntarily undertaken by the defendant."); *Gilanian v. City of Boston,* 431 F. Supp. 2d 172, 177 (D.Mass. 2006) (holding that Rule 407 does not require exclusion of measures that were not made in response to a sense of social responsibility or a desire to remedy an injury, but rather in response to the dictates of a higher authority) *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1343 (5th Cir. 1978); *In re Aircrash in Bali,*

*Indonesia,* 871 F.2d 812, 817 (9th Cir. 1989). Because Bayer's decision to withdraw

Trasylol from the market was directed by health authorities, and not a voluntary decision,

evidence thereof is not precluded by Rule 407.

### 2.    Evidence of Non-Remedial Measures Is Not Excluded by Rule 407.

Even at the time that it was withdrawing Trasylol from the market, Bayer

continued to insist that Trasylol was beneficial when used as directed. [Exhibit B]. Bayer

cannot have it both ways. It cannot argue, in one breath, that there was no need for safety

improvements to Trasylol at the time the product was withdrawn and, in the next, allege

that its product withdrawal is a protected "subsequent remedial measure." If the

withdrawal was remedial, then Bayer must concede that there was a safety issue in the

product at the time of the withdrawal. If the withdrawal was not to address a safety issue,

then Bayer must concede that the withdrawal was not a "remedial" measure. It cannot be

both.

In *Peterson v. Ford Motor Co.,* 1999 WL 796215, at *2 (E.D.La. 1999), this

Court held that evidence of a subsequent design change is admissible where the

defendant contends that the product functioned adequately and as intended. The Court

reasoned that a change cannot be a subsequent remedial measure if the action was not

taken for a remedial purpose. *Id.* This rule prevents litigants from adopting a position at

trial that is inconsistent with their previous decision to take remedial measures after the

accident. *Minter v. Prime Equipment Co.*, 451 F.3d 1196, 1212 (10th Cir. 2006); *see also*

*Brazos River Authority v. GE Ionics, Inc.,* 469 F.3d 416, 429 (5th Cir. 2006) ("This court

has long recognized that subsequent remedial measures can be introduced on issues of

causation if that is in controversy").

If Bayer had taken the position that, at the time the BART study's preliminary

results were released, it first had knowledge that Trasylol was defective and that it withdrew the product to remedy that defect, then Rule 407 might possibly apply. As it is, Bayer stated that Trasylol was safe at the time it withdrew the product.  Even further, Bayer continues to this day to contest that the BART study indicates Trasylol is unsafe. [*See* Bayer's Motion *in Limine* p. 6-8].  If its actions were not taken to remedy a safety concern, then the withdrawal of Trasylol is merely a business decision[3] and evidence of that business decision is not precluded by Rule 407.

**B.      BAYER DOES NOT CONTEST THAT PLAINTIFFS ARE PERMITTED TO INTRODUCE EVIDENCE OF TRASYLOL'S WITHDRAWAL FROM THE MARKETPLACE FOR PURPOSES OF IMPEACHMENT AND TO SHOW FEASIBLITY, NOTICE, DUTY OR CONTROL.**

Under the express language or Rule 407, evidence of subsequent remedial measures is admissible when used to prove propositions other than negligence or culpable conduct by the defendant.

> *This rule does not require the exclusion of evidence of subsequent remedial measures <u>when offered for another purpose</u>, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.*

Fed. R. Evid. 407.  Thus, Rule 407 makes clear that evidence of subsequent remedial measures is admissible when offered for purposes other than proving negligence or product defects. Here, evidence of Trasylol's withdrawal from the marketplace is admissible (1) to impeach the testimony and credibility of Bayer's witnesses, and (2) to demonstrate that it was feasible for Bayer to prevent the Trasylol defect from harming Plaintiffs.  *Giglio v. Saab-Scania of America, Inc.,* 1992 WL 329557 (E.D.La. 1992).

---

[3] Remedial measures "typically modify the product to correct a defect."  Bayer's action makes no change to Trasylol; it simply withdraws the product from the market. Consequently, the withdrawal of a product is not a subsequent remedial measure. *Dine v. Western Exterminating Co*., 1988 WL 28241, *2 (D.C. March 16, 1988).  Rule 407 does not insulate non-safety-related business decisions from evidence at trial.

Bayer does not dispute that the evidence of Trasylol's withdrawal from the market is admissible for these purposes.

> **1.     The Withdrawal of Trasylol From the Market Is Admissible to Impeach Testimony By Bayer That Trasylol Was Safe, That FDA Approval Is The Measure of Safety, and that Bayer Was Doing Everything Possible To Insure Patient Safety.**

The second sentence of Rule 407 explicitly acknowledges impeachment as one of the permissible uses for which evidence of subsequent remedial measures may be introduced. Fed. R. Evid. 407; *see also Andres v. Roswell-Windsor Village Apartments,* 777 F.2d 670, 674 (11th Cir.1985) (per curiam) (noting Advisory Committee's suggestion of permissible uses of evidence of subsequent remedial measures, including impeachment).  Thus, Rule 407 expressly permits courts to admit evidence of subsequent remedial conduct when the evidence is being used for the purposes of impeachment.

The Eleventh Circuit considered the impeachment exception to Rule 407 in *Wood v. Morbark Industries, Inc.,* 70 F.3d 1201, 43 Fed. R. Evid. Serv. 269 (11th Cir. 1995). In *Wood,* the court was asked to consider the exclusion of evidence of post-accident changes to the design of a wood chipper.  *Id*. at 1208.  The court concluded that some evidence of remedial changes was appropriately in order to prevent the jury from "being misled" by statements from defense witnesses and counsel that the chipper's original design was safe.  *Id.*  The same reason exists for admitting evidence of Trasylol's withdrawal from the market in the case at bar.

Throughout this case, Bayer has sought to cloak itself in FDA approval as a shield against liability**.**  Bayer and its experts are anticipated to defend the drug manufacturer's conduct at trial by arguing that the FDA's ongoing approval of Trasylol and the Trasylol label are proof that the drug was safe and the warning was adequate.   Evidence that Bayer withdrew the drug from the market (while still FDA approved) is relevant to rebut

Bayer's position that it had acted reasonably in disregarding or downplaying earlier, similar adverse study findings because the FDA had not withdrawn approval. [4]

Along these same lines, Bayer intends to offer testimony from experts to the effect that:

- "Bayer conducted *all* the appropriate test, including clinical tests, during its development of Trasylol." [Waymack Report, p.32 (emphasis added)(attached hereto as "Exhibit C"].

- "Bayer appropriately responded to the data generated both prior to and subsequent to the filing of the initial Trasylol NDA. This includes adequately addressing the newly identified safety concerns." [Waymack Report, p. 32].

These sorts of categorical statements are precisely the kind Rule 407's impeachment exception intend to address. If Bayer is going to say that it *always* responded adequately in the face of identified safety concerns or that it conducted *all* the appropriate tests, Plaintiffs should be allowed to rebut those assertions with evidence of later-taken actions that should have been a part of the "appropriate response." *Kenny v. Southeastern Pennsylvania Transp. Auth.*, 581 F.2d 351, 356 (3d Cir.1978), cert. denied, 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979) ("when the defendant opens up the issue by claiming that all reasonable care was being exercised at the time, then the plaintiff may attack that contention by showing later repairs which are inconsistent with it").

Particularly noteworthy is Bayer's consistent and much-emphasized insistence that supposed methodological flaws in studies concluding that Trasylol presented health risks did not warrant additional warnings (let alone withdrawal of the product):

---

[4] If Bayer continues to portray its withdrawal of Trasylol was voluntary, then the fact of its so-called voluntary withdrawal of Trasylol is particularly relevant and compelling as a rebuttal to Bayer's position that similar data and conclusions in earlier studies did not require it to take any action because the drug was FDA approved.

- "Since [the Mangano studies and the i3 study] were severely flawed from a methodological standpoint, Bayer acted appropriately, and consistent with FDA and regulatory guidance, in not altering the Trasylol labeling based upon results from these studies." [Waymack Report, p. 32].

Yet, Bayer's withdrawal of Trasylol following the release of BART results that Bayer also characterizes as preliminary and flawed calls into the question the credibility of its position and the adequacy of its response to the earlier studies.   Evidence that Trasylol was withdrawn from the market is admissible for these impeachment purposes.

At the very least, it is impossible to say, at this juncture, that Bayer's withdrawal of Trasylol has no possible relevance to the testimony likely to be developed at trial. Unless it is clear that the evidence is inadmissible for any purpose, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. *See,* generally, 21 Charles A. Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE ¶ 5042 (1977 & Supp.1993). It is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there. *Bowden,* 2001 WL 617521 at *1; *Sperberg v. Goodyear Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir.1975).  If Bayer's motion *in limine* is not denied outright, a ruling should (at least) be deferred until trial when it can be determined whether use of such evidence by Plaintiffs is warranted to impeach the testimony of witnesses called by Bayer.

2.      **The Withdrawal of Trasylol From the Market Is Admissible to Show It Was Feasible For Bayer to Take Actions Which Would Have Prevented Plaintiffs' Injuries.**

The advisory committee's note to Rule 407 states evidence of subsequent remedial measures is admissible to prove the existence of a duty, or the feasibility of precautionary

10

measures. *Andres v. Rosewell-Windsor Village Apartments,* 777 F.2d 670 (11th Cir.

1991); *Wilkinson v. Carnival Cruise Lines,* Inc., 920 F.2d 1560 (11th Cir. 1991). Both of

those areas are at issue in the present case.

   Throughout this litigation Bayer has taken the position that the fact that Trasylol

maintained ongoing FDA approval demonstrated that there was no need for Bayer to

perform additional studies, issue additional warnings, or recall the product.   This position

is rebutted by the fact that Bayer withdrew the product in November of 2007.  The fact of

the withdrawal is relevant in that it makes it more probable than not that Bayer had a duty

to act in the interest of patient safety regardless of ongoing FDA approval.  In addition,

Bayer's withdrawal of Trasylol demonstrates that it was feasible for Bayer to take actions

which would have prevented Plaintiffs' injuries.  Unless Bayer stipulates to the feasibility

of precautionary measures which would have precluded Plaintiffs injuries, evidence of

the product withdrawal is admissible on the issues of duty and feasibility.

**D.     EVIDENCE RELATED TO THE BART STUDY IS ADMISSIBLE IN THE**
**        *BRYANT* AND *BECHARA* CASES.**

   Bayer closes out its motion *in limine* by arguing that all evidence of the BART

study should be excluded in the *Bryant* and *Bechara* cases because the BART study's

primary conclusion related to an increase risk of "mortality" and the *Bryant* and *Bechara*

plaintiffs did not die.  Bayer therefore claims that the BART study is irrelevant to their

claims for kidney injuries.  Bayer misses the point.  While medical causation of their

kidney injures is an issue in the *Bryant* and *Bechara* cases – it is not the only issue.

Plaintiffs will also be seeking to show that Trasylol was an unreasonable dangerous and

defective product (for many reasons), that Bayer failed to adequately investigate and

study the risks of Trasylol, and that, had Bayer undertaken adequately study Trasylol at

an earlier point it would have known what the BART study (and other studies) ultimately

11

demonstrated in time to have taken actions which would have prevented Plaintiffs' injuries.  The BART study is therefore relevant to issues of (1) notice, (2) the adequacy of Bayer's investigational efforts, and (3) what was knowable by Bayer had it conducted adequate and timely studies.

In addition, the BART study is relevant to the risk-benefit analysis.  Bayer's own Vice-President for pharmacovigilence, Edwin Tucker, has testified that the BART study was part of the risk-benefit analysis the drug maker conducted. [Tucker Depo. 86:1-87:12 (Excerpt attached as "Exhibit D")]. Thus, the BART study's conclusion that Trasylol use increased the risk of death is vital and compelling evidence that makes it more probable than not that the risks of Trasylol use outweighed any benefits of the drug.   Because the BART study is relevant to the risk-benefit analysis of Trasylol, it should be admitted in this case.

The Court should also reject Bayer's last-ditch argument that evidence of the BART Study should be excluded under Federal Rule of Evidence 403. A court's "discretion to exclude evidence under Rule 403 is narrowly circumscribed." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006).  Rule 403 permits a district court to exclude relevant evidence only when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Ross,* 33 F.3d 1507, 1524 (11th Cir.1994).  Thus, Rule 403 "favors admissibility of relevant evidence" and should be invoked "very sparingly" to bar admission of relevant evidence. *Hendrix v. Raybestos-Manhattan, Inc.,* 776 F.2d 1492, 1502 (11th Cir. 1985) (emphasis added); *United States v. Betancourt*, 734 F.2d 750, 757 (11th Cir. 1984) ("Rule 403 is an extraordinary remedy ...."). It is particularly difficult to

make a pretrial determination on Rule 403 evidentiary issues without a substantive background. As one court has observed: "Excluding evidence under Fed. R. Evid. 403 at the pretrial stage is an extreme measure." *Hines v. Consol. R.R. Corp.,* 926 F.2d 262, 274 (3d Cir. 1991).

Here, Bayer's only ground for claiming prejudice is that it would take time for it to present evidence challenging the methodology of the BART study.  This waste-of-time argument is premised on the mistaken belief that the BART Study is not relevant to any issue in the *Bryant* and *Bechara* cases.   Having demonstrated that the BART Study is relevant, it cannot be said that Plaintiffs are "wasting time" by presenting evidence relevant to their case.  That Bayer may choose to defend relevant evidence offered by its opponent at trial is hardly the substantial prejudice Rule 403 aims to prevent.

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion *In Limine* to Exclude Evidence, or Argument Relating to the BART Mortality Finding and Subsequent Remedial Measures should be DENIED.

DATED: March  4  , 2010

<div style="margin-left:45%">

/s/ *Michael T. Gallagher*
Michael T. Gallagher
U.S. District Court Admission #5395
**THE GALLAGHER LAW FIRM**
2905 Sackett Street
Houston, TX 77098
Telephone (713) 222-8080
Facsimile (713)222-0066
Email:PamM@gld-law.com

Tim K. Goss
Tamara L. Banno
**FREESE & GOSS, PLLC**

</div>

13

3031 Allen Street, suite 100
Dallas, Texas 75204
(214) 761-6610 telephone
(214) 761-6688 facsimile
Goss39587@aol.com
tbanno@tlb-law.com

Joseph A. Osborne
**BABBITT, JOHNSON, OSBORNE &
LECLAINCHE, P.A**.
1641 Worthington Blvd., Suite 100
West Palm Beach, FL  33409
Telephone:  (561) 684-2500
Facsimile:  (561) 684-6308
Email:  JAOsborne@babbitt-johnson.com

Neal L. Moskow, Esq.
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone (203) 226-8088
Facsimile  (203) 610-6399
Email:  neal@urymoskow.com

Edward J. Parr, Jr., Esq.
**URY & MOSKOW, PLLC**
1250 Connecticut Ave., NW, Suite 200
Washington, DC 20036
Telephone  (202) 321-8982
Facsimile: (202) 318-3255
Email:  tedparr@urymoskow.com

David P. Matthews, Esq.
Julie L. Rhoades, Esq.
**MATTHEWS AND ASSOCIATES**
2509 Sackett Street
Houston, TX  77098
Phone: 713-522-5250
Email:
dmatthews@thematthewslawfirm.com
Email: jrhoades@thematthewslawfirm.com

**COUNSEL FOR PLAINTIFFS**

14

15

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2010, I filed the foregoing document via Federal Express with the Clerk of the Court.  I also certify that the foregoing document is being served this day on all counsel or records or pro se parties identified on the attached Service List in the manner specified, either via Electronic Mail or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/*Michael T. Gallagher*
Michael T. Gallagher

**SERVICE LIST**
**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON**
**United States District Court**
**Southern District of Florida**

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Joseph A. Osborne
Email:  JAOsborne@babbitt-johnson.com
**BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Blvd., Suite 100
West Palm Beach, FL  33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs and Plaintiffs' Steering Committee*

Patricia E. Lowry
Email:  plowry@ssd.com
Barbara Bolton Litten
Email:  blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY, L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
440 Louisiana #1600
Houston, TX 77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Richard K. Dandrea, Esq.
Email:  rdandrea@eckertseamans.com
**ECKERT, SEAMANS, CHERIN & MELLOTT, LLC**
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone:  412-566-6000
Facsimile:  412-566-6099
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Alan G. Schwartz
Email: aschwartz@wiggin.com
**WIGGIN AND DANA LLP**
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Telephone:  203-498-4400
Facsimile:  203-782-2889
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

16

Eugene A. Schoon
Email:  eschoon@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone:  312-853-7000
Facsimile:  312-853-7036
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*


Catherine Barrad, Esq.
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, California  90013
Telephone: 213-896-6688
Facsimile: 213-896-6600
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
Shayna Cook
Email: shayna.cook@bartlit-beck.com
**BARTLIT, BECK, HERMAN, PALENCHAR**
        **& SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone:  312-494-4400
Facsimile:  312-494-4440
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*