UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

| | |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION — MDL-1928 | ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| *Anna Bryant* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80868 | ) ) ) |
| *Melissa Morrill* v. *Bayer Corp. et al.*, Case No. 9:08-cv-80424 | ) ) ) |
| *Naguib Bechara, et al.* v. *Bayer Corp., et al.*, Case No. 9:08-cv-80776 | ) ) ) ) |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION
*IN LIMINE* TO EXCLUDE EVIDENCE REGARDING ALLEGEDLY INADEQUATE
SUBMISSIONS TO THE FEDERAL FOOD AND DRUG ADMINISTRATION**

Bayer submits this supplemental brief in response to questions raised by the Court during the February 26, 2010 hearing regarding Bayer's motion *in limine* to exclude evidence of allegedly inadequate submissions to FDA ("Motion" or "Mot") (D.E. 3994).

**ARGUMENT**

While plaintiffs should not be permitted to argue that Bayer did not timely submit certain information to FDA, Bayer may present evidence of its regulatory submissions and FDA's responses, including FDA's approval of Trasylol for marketing. There are marked differences between evidence about what FDA actually determined in approving Trasylol for

marketing in the United States, and speculation about what different or additional information Bayer could or should have submitted to FDA and what FDA might have done with such information.  This is particularly true where (as here) FDA itself has not determined that Bayer failed to comply with FDA's reporting requirements.  With respect to the former, the evidence is inherently relevant, given that prescription drugs such as Trasylol may not be marketed in the United States without initial and ongoing FDA approval.  *See* Mot. at 2-3.  Further, because evidence of such regulatory determinations is based on what FDA actually did (as demonstrated, for example, in letters from FDA itself), it requires no speculation and is unlikely to cause jury confusion or to prejudice any party.  It requires no conjecture about what the agency might have done, but asks only what the agency actually did do.  *See* Hr'g Tr. at 58, *In re Trasylol Prods. Liab. Litig.*, MDL 1928 (S.D. Fla. Feb. 26, 2010) (hereafter, "Tr.") (excerpts collected at Exhibit A).  In contrast, the latter category of evidence is inherently speculative.  It invites the jury to postulate that FDA might not have approved the drug if certain information had been submitted, and risks the jury imposing liability because it believes that federal disclosure violations exist, not because plaintiffs have established the elements of their state law claims.  As such, it violates *Buckman Co. v. Plaintiffs Legal Committee*, 531 U.S. 341, 349 (2001), and is irrelevant and unduly prejudicial.

Thus, under this framework, Bayer may present and address knowable regulatory facts, including FDA's approval of Trasylol for marketing, and the fact that information actually was submitted to or considered by the agency.  Of course, Bayer does not intend to claim that FDA reviewed something it did not actually review.  But where, for example, the agency considered some piece of information prior to approving the Trasylol labeling, Bayer should be able to present that fact as relevant to (if not dispositive of) its response to plaintiffs' argument

2

that the labeling was inadequate as a matter of state law. To the extent Bayer did not disclose something to the agency, Bayer would not be able to make such an argument. In all events, plaintiffs remain free to argue that notwithstanding the agency's labeling determinations, state law required a stronger warning, including that any piece of information about which plaintiffs are aware should have been included in the labeling as a matter of state law. *Cf. Wyeth v. Levine*, 129 S. Ct. 1187, 1197-1203 (2009). But plaintiffs are not allowed to say that particular information was not submitted to FDA or violated FDA reporting requirements. That would improperly encourage the jury to speculate that "but for" this purported failure FDA would not have approved Trasylol as safe and effective, and effectively ask the jury to find Bayer liable simply because it allegedly violated reporting requirements created by federal law, owed to FDA alone, and for which no private right of action exists. *See* 21 U.S.C. § 337(a); *Buckman*, 531 U.S. at 347, 349 n.5, 353. FDA alone is authorized to determine the specific issue of whether a company has failed to comply with the disclosure obligations it owes to FDA under federal law. *See* Mot. 2-4; 21 U.S.C. § 337.

### A. FDA's Actual Regulatory Determinations, Including Approving Trasylol For Marketing, Are Relevant, Require No Speculation, And Present No Affront To *Buckman*.

Evidence that Trasylol met FDA's standards and was therefore approved for marketing in the United States can be determined on the basis of objective evidence; it requires no speculation by the jury, or examination of FDA's thought processes. *See*, *e.g.*, Tr. at 58, 77. Such evidence of FDA's actual regulatory determinations with respect to Trasylol therefore should be admitted without limitation.

FDA's actions are relevant in any prescription drug case. Indeed, without FDA approval, no plaintiff could have taken a particular prescription drug alleged to have caused

3

injury. *See* Mot. 2-4.[1]  Additionally, evidence of compliance with regulatory requirements frequently is relevant to state law defenses, providing some evidence that the defendant acted with due care, *see*, *e.g.*, § 768.1256(1), Fla. Stat.; *Carlin v. Superior Ct.*, 920 P.2d 1347, 1352-53 (Cal. 1996) (compliance with FDA regulations is relevant as a defense against failure to warn claims), or lacked the malice necessary for awarding punitive damages, *see Chrysler Corp. v. Wolmer*, 499 So. 2d 823, 826 (Fla. 1986) (holding that because defendant tested its product and met federal safety standards, "an award of punitive damages in this case not only is unjust, but also ignores the threshold requirements for such an award").

Moreover, introducing such evidence presents no tension with the Supreme Court's holding in *Buckman*. Because courts can take judicial notice of FDA documents, including approvals of drugs for market and their warnings, *see Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002) (taking judicial notice of FDA documents as "a matter of public record"),[2] the jury is not asked to second-guess FDA's actual decisions, speculate about its actions, or otherwise interfere with the agency's "judgment and objectives." *Buckman*, 531 U.S. at 350; *see id.* at 350-51; *see also* Plaintiffs' Opposition to Motion *in Limine* 2, 9 (D.E. 4240, 4336) ("Opp.") (acknowledging that the jury should not be permitted to speculate about FDA's actions).  There is therefore no hurdle to admitting evidence that FDA approved Trasylol as safe and effective, or considered certain information, or that the Trasylol

---

[1] For instance, the existence of FDA approval is intrinsic to the learned intermediary doctrine that governs the analysis of adequacy of the warnings and the determination of proximate causation in cases involving prescription drugs.

[2] *See also*, *e.g.*, *Warner-Lambert Co. v. FTC*, 562 F.2d 749, 754 n.15 (D.C. Cir. 1977) (Wright, J.) (granting request to take judicial notice of FDA study); *Matthews v. Donald*, 2007 WL 2593086, *1-2 (N.D. Ga. Sept. 4, 2007) (taking judicial notice of FDA press release); *In re Amylin Pharms., Inc. Secs. Litig.*, 2002 WL 31520051, *2 (S.D. Cal. Oct. 10, 2002) (judicial notice of FDA approvable letter); *Baylis v. Wilmington Med. Ctr., Inc.*, 477 A.2d 1051, 1058 n.9

dispensed and labeled in plaintiffs' cases contained no manufacturing flaw and therefore complied with the parameters of federal requirements for marketing Trasylol.

### B. Evidence Of Alleged Misrepresentations To FDA Or Purported Non-Compliance With The FDCA Should Be Excluded As Irrelevant And Unduly Prejudicial.

In contrast to evidence of FDA's approval of Trasylol and its labeling, plaintiffs seek to offer evidence that Bayer failed to comply with FDCA reporting requirements for two reasons, neither of which is permissible. First, the evidence might be introduced to show that absent the allegedly fraudulent disclosures, FDA might have taken action that would have prevented plaintiffs' alleged injuries by, for example, not approving the drug, requiring a different warning, or requiring additional study. But plaintiffs repeatedly have conceded that that they may not offer evidence to show that FDA would have acted differently in light of such information. Opp. 2; *id.* at 9 ("Plaintiff[s] agree that speculation about FDA actions would be inappropriate . . . ."); Tr. at 62 ("we're not saying if you had done this, the FDA would have done something else") (Mr. Moscow); *id.* at 73 ("The fact that the FDA may have done something different is irrelevant") (Mr. Love) (excerpts collected at Exhibit A).

Second, the evidence might be introduced—as plaintiffs' counsel argued on February 26—to show that Bayer's alleged violation of FDCA provisions is evidence of negligence under state law. But this is precisely what is prohibited by *Buckman*. *See* 531 U.S. at 349 & n.5 ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance [with the FDCA].") (citing 21 U.S.C. § 337(a)); *id.* at 353 (holding that plaintiffs cannot rely on "federal enactments [a]s a critical

---

(Del. 1984) ("We have taken judicial notice of the fact that the FDA approved thiabendazole for human use . . . .").

5

element in their case"); *accord In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 548-49 (S.D.N.Y. 2004) (precluding expert opinions that rested on "fraud-on-the-FDA evidence" defendant maintained was "inadmissible under *Buckman*").[3]  If offered for this purpose, then the jury is either invited to speculate about what FDA might have done or to punish Bayer for an alleged regulatory violation without any connection between the violation and the alleged injury.

       Numerous courts have applied this framework.  For example, an MDL court applying Florida state law recently recognized the difference between evidence of compliance and noncompliance with FDCA requirements in a tort action.  *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-0659, 2009 WL 2497229 (M.D. Tenn. Aug. 13, 2009).  There, the defendant introduced evidence of its compliance with FDA requirements in obtaining the approval of its prescription drugs in order to satisfy a Florida statutory presumption that a product is not defective when "it complied with federal codes, statutes, rules, regulations or standards."  *Id.* at *1 (quoting § 768.1256(1), Fla. Stat.).  Like the plaintiffs here, plaintiffs in that case claimed that they were entitled to rebut the presumption by showing that FDA approval was improperly obtained.  *Id.* at *1-2.  The court, however, squarely held that "improperly

---

[3] Plaintiffs argue that whether studies were submitted to FDA "relate[s] to the negligence claim or the punitive [damage] claim," Feb. 26, 2010 Hearing Tr. at 51; *see id.* at 63, and go so far as to suggest that the mere alleged violation of *federal* duties arising from the Code of Federal Regulations and the Federal Register establishes plaintiffs' claims under *state law*. *Id.* at 68-69. This cannot be squared with *Buckman* or its progeny. *See* Mot. 5-9. *Buckman* not only recognized that a private party cannot sue for violation of the FDCA, *see* 531 U.S. at 349 n.4 (discussing 21 U.S.C. § 337(a)), it held that a state law claim is preempted when it is founded on duties that would not exist if the FDCA did not exist, *see id.* at 352-53 (claims must "rely[] on traditional state tort law which had predated the federal enactments in questions," but are preempted where "the existence of these federal enactments is a critical element in their case"); *see Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) ("[A] state-law claim that the defendant made misrepresentations to the FDA is preempted because such a claim would not exist absent the federal regulatory scheme established by the FDCA.") (citing *Buckman*); *id.* at 777-79.

6

obtained FDA approvals are an issue that is preempted as a 'fraud-on-the-agency' claim, pursuant to *Buckman*." *Id.* at *2.

Likewise, in *Lofton*, 2010 WL 308754 (N.D. Tex.), the court held that defendants were entitled to a statutory presumption that the warnings concerning their drug were adequate as a matter of state law because the company complied with FDA requirements. *Id.* at *9 (discussing Tex. Civ. Prac. & Rem. Code § 82.007(a)(1)). Moreover, it held that a statutory exception to the presumption against liability was preempted because it required a showing that defendant "'withheld from or misrepresented to the [FDA] required information that was material and relevant to the performance of the product.'" *Id.* at *9-10 (quoting § 82.007(b)(1)). The court reasoned that "the concerns in *Buckman* hold true not only where a plaintiff brings a fraud-on-the-FDA claim but also where it seeks to show an exception to the presumption here," and it explained that for plaintiff to show the exception was met would "intru[de] upon the FDA's right to police fraud itself." *Id.* at *11; *accord Garcia v. Wyeth-Ayerst Labs.*, 385 F.3d 961, 965-66 (6th Cir. 2004) (holding that *Buckman* preempted similar statutory exception to defense against liability under Michigan law).[4]

Thus, such line drawing about FDA-related evidence and claims is common and proper.[5] These holdings demonstrate that because *Buckman* precludes plaintiffs from asserting

---

[4] *But see Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 98 (2d Cir. 2006) (concluding that the Michigan exception was not preempted), *judgment affirmed by an equally divided court*, 552 U.S. 440 (2008). "Judgment entered by an equally divided Court is not 'entitled to precedential weight[.]'" *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 73 n.8 (1977).

[5] *Accord Cupek v. Medtronic, Inc.*, 405 F.3d 421, 422-24 (6th Cir. 2005) (defendants were entitled to show FDA approval, but claims that they failed to "comply with FDA's conditions of approval" were precluded by *Buckman*); *Hughes v. Boston Sci. Corp.*, __ F. Supp. 2d __, 2009 WL 3817586, *1, 4-5, 8-11 (S.D. Miss. 2009) (permitting evidence of FDA approval relevant to defenses, but prohibiting plaintiffs from attempting to show negligence *per se* and fraud-on-the-FDA based on FDCA violations); *Covert v. Stryker Corp.*, No. 1:08CV447, 2009 WL 2424559,

7

state-law claims based on the alleged inadequacy of information provided to FDA, evidence that the defendants made insufficient submissions to the agency is irrelevant and should be excluded.[6] Unlike the clear and objective manner in which FDA approval can be shown, *see supra*, determining alleged noncompliance with the FDCA standards requires the jury to assume the role of the FDA. In that role, the jury is asked (whether expressly or not) to guess about what the agency would have done from among a range of possibilities. Even if not asked to speculate about agency action, the jury nonetheless may improperly use state law to enforce requirements Congress intended to be administered by federal officials in accordance with federal standards. *See Buckman*, 531 U.S. at 347 ("the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law"). Therefore, even if showings of non-compliance had some relevance, they would improperly invite the jury to speculate, and therefore are forbidden. Because that speculation invites the imposition of liability based on a perceived FDCA violation alone, not because plaintiffs have satisfied the elements of their state law claims, it is even more inappropriate.

---

\*1, 8 (M.D.N.C. Aug. 5, 2009) (discussing product's FDA-approved status as relevant to defense while holding that *Buckman* barred claims regarding breach of FDCA requirements).

[6] *See Covert*, 2009 WL 2424559, at *8 ("any claims which are based upon an alleged breach of an FDA disclosure requirement . . . are impliedly pre-empted by federal law"); *Demahy v. Wyeth Inc.*, 586 F. Supp. 2d 642, 645-46 (E.D. La. 2008) (dismissing claims "to the extent that they allege[d] fraud-on-the-FDA under state law with regard to [defendant's] alleged intentional concealment of medical research concerning the neurological effects of [the prescription drug at issue]"), *aff'd on other grounds*, 593 F.3d 428, 431 n.5 (5th Cir. 2010) (noting that plaintiff did not challenge on appeal the district court's holding that her "fraud-on-the-FDA claims were conflict preempted").

This is not a case where the Court is asked to decide whether evidence of noncompliance should be admitted when FDA itself has made a finding of fraud.[7] FDA has never taken action against Bayer with respect to its representations or disclosures concerning Trasylol. The likelihood therefore is that any evidence of alleged noncompliance would be used for improper and irrelevant purposes—*i.e.*, to speculate about what FDA might have done differently, or to punish Bayer for a perceived violation of the FDCA—and is likely to prejudice and confuse the jury.

Finally, *Buckman* does not leave patients without recourse. If a patient believes a company has not complied with FDA's requirements and this has affected FDA's regulatory determinations, the proper remedy is for the patient to raise the issue with FDA and allow the

---

[7] *See generally Buckman*, 531 U.S. at 354 (Stevens, J., concurring) ("a different case" exists "if, prior to . . . litigation, the FDA had determined that petitioner had committed fraud during the [FDCA] process and had then taken the necessary steps to remove the harm-causing product from the market."); *Garcia*, 385 F.3d at 966-67. In such a case, the jury arguably need not speculate about what FDA might have done. *See Buckman*, 531 U.S. at 354 (Stevens, J., concurring) ("[The] state-law fraud claim would not depend upon speculation as to the FDA's behavior in a counterfactual situation but would be grounded in the agency's explicit actions."). Yet, even in such cases involving unequivocal FDA findings of material noncompliance with the FDCA, many courts have not permitted plaintiffs to proceed with their fraud-on-the-FDA allegations because to do so would substitute an FDCA violation for the showings required under the causes of action asserted by plaintiffs, thus circumventing *Buckman* and 21 U.S.C. § 337(a). *See*, *e.g.*, *LeFaivre v. KV Pharm. Co.*, No. 4:09CV588SNLJ, 2010 WL 59125, *2-3 (E.D. Mo. Jan. 5, 2010) (although defendant had entered a consent decree with FDA and "stipulated that it had sold drugs that were 'adulterated' within the meaning of [the FDCA]," the court held that *Buckman* preempted plaintiffs' fraud-on-the-FDA claims because they were premised, not upon conduct that would give rise to liability "even if the FDCA had never been enacted," but upon "the FDCA violations listed in the consent decree"); *In re Schering-Plough*, 2009 WL 2043604, at *10 (rejecting such showings where "the Complaint was filed on the heels of FDA regulatory actions . . . which resulted in serious criminal and civil penalties being assessed," because the "violation of the FDCA simply does not give rise to fraud-based rights of action"); (internal quotation marks and citations omitted); *McGuan v. Endovascular Techs., Inc.*, Nos. H033287 et al., 2010 WL 445602, at *6-8 (Cal. Ct. App. Feb. 9, 2010) (unpublished) (rejecting plaintiffs' attempt to introduce allegations that defendant "'withheld [information] from the FDA" in order to prove their underlying state-law fraud claims, notwithstanding that defendants had been "prosecuted and entered into a plea agreement for fraudulent conduct" related to the device).

agency to decide whether a violation has occurred and the appropriate response. *See* Mot. 3-4 (addressing mechanisms for citizens to seek agency determinations); 21 C.F.R. § 10.30 (citizens may request that FDA "issue, amend, or revoke a regulation or order or take or refrain from taking any other form of administrative action"); *Buckman*, 531 U.S. at 349; *see also In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774 (SRC), 2009 WL 2043604, at *10 (D.N.J. July 10, 2009) (MDL court explaining that where patients have evidence of fraud-on-the-FDA, it "should be reviewed by the FDA for violations of the FDCA and accompanying regulations"). Indeed, FDA routinely responds to such requests, and solicits further evidence from the complaining citizen if warranted. *See Lofton v. McNeil Consumer & Specialty Pharms.*, __ F. Supp. 2d __, 2010 WL 308754, *9 (N.D. Tex. 2010) (detailing citizen's complaint to FDA that drug companies had defrauded the agency, as well as FDA's response concluding: "we have no evidence that there is additional undisclosed safety information that was withheld . . . . If you have any information to support this allegation, please provide it to us."). There is no such record here and plaintiffs should not be permitted to make an end-run around *Buckman.*

Moreover, plaintiffs still can attempt to show the jury that information allegedly known to Bayer triggered a state law duty to warn their prescribing physicians. Nothing in Bayer's motion bars plaintiffs from attempting to prove that Bayer's warnings were inadequate as a matter of state law based on information known to the company. *Cf. Levine*, 129 S. Ct. at 1197-1203. For instance, *Buckman* does not bar plaintiffs from trying to show that had Bayer disclosed certain information they claim was withheld (such as Kress or St. George's) to a plaintiff's prescribing doctor (as opposed to FDA), then the physician would not have prescribed

Trasylol to that plaintiff or would have used it differently and the plaintiff would not have been injured. Bayer, of course, then could demonstrate why the alleged non-disclosures were unnecessary, inappropriate, indistinguishable from information already known to physicians, or otherwise would not have changed the physicians' conduct.

These failure to warn showings do not turn on whether and when Bayer allegedly had a *federal* duty to disclose the information to FDA, much less whether those federal reporting duties were violated. Yet plaintiffs seek to make precisely such irrelevant and speculative showings about federal obligations, explicitly claiming that Bayer's alleged violations of federal reporting law *establish* Bayer's negligence under *state* law. *See* Tr. 51, 63, 69-70; *contra Buckman*, *supra*; *Riley*, 625 F. Supp. 2d at 777 (holding that unless defendant's conduct is the type "that would traditionally give rise to liability—and that would give rise to liability under state law even if the FDCA had never been enacted . . . . then the plaintiff is effectively suing for a violation of the FDCA" and therefore is preempted under *Buckman*). Plaintiffs' attempts to introduce evidence of alleged inadequate submissions to FDA or other alleged non-compliance with FDCA reporting requirements therefore should be rejected. They simply may not rely on Bayer's knowledge of particular data or information to argue that it had obligations to FDA, that it breached those obligations, that it failed to give information to FDA, and that the breach of federal duties establishes the requisite elements of plaintiffs' claims or is a ground for assessing punitive damages under state law.

## CONCLUSION

For these reasons and those previously briefed, Bayer respectfully requests that

11

this Court grant its motion *in limine* to exclude evidence, testimony or argument regarding any alleged failure by Bayer to provide more timely or accurate information to FDA.

March 8, 2010                                     Respectfully submitted,

/s/ Barbara Bolton Litten
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail:  blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR**
    **& SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
Catherine Valerio Barrad
Email:  cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-73036

12

Rebecca K. Wood
Email:  rwood@sidley.com
Eamon P. Joyce
Email:  ejoyce@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:   202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Schering Pharma AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN
 & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
Joseph A. Osborne
Email:  jaosborne@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
 & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, Florida 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs and Counsel for
Plaintiffs Naguib Bechara and Nabila Saad*

Tim K. Goss
Email: goss39587@aol.com
Tamara L. Banno
Email: tbanno@tlb-law.com
**FREESE & GOSS PLLC**
3031 Allen Street
Suite 100
Dallas, TX 75204
Telephone:  214-761-6610
Facsimile:  214-761-6688
*Counsel for Plaintiff Naguib Bechara
and Nabila Saad*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs
and Counsel for Plaintiff Anna Bryant*

Michael T. Gallagher
Email: rebeccam@gld-law.com
**THE GALLAGHER LAW FIRM**
2095 Sackett Street
Houston, TX 77098
Telephone: 713-222-8080
Facsimile:  713-222-0066
*Counsel for Plaintiff Naguib Bechara*

15

| | |
|---|---|
| Patricia E. Lowry<br>Florida Bar No. 332569<br>Email: plowry@ssd.com<br>**SQUIRE, SANDERS & DEMPSEY L.L.P.**<br>1900 Phillips Point West<br>777 South Flagler Drive<br>West Palm Beach, FL 33401-6198<br>Telephone:  561-650-7200<br>Facsimile:   561-655-1509<br>*Liaison Counsel for Defendants* | John D. Goldsmith<br>Email: jgoldsmith@trenam.com<br>Amy L. Drushal<br>Email: aldrushal@trenam.com<br>**TRENAM KEMKER SCHARF BARKIN**<br>      **FRYE O'NEILL & MULLIS PA**<br>101 E. Kennedy Blvd., Suite 2700<br>Tampa, FL 33602<br>Telephone: 813-223-7474<br>Facsimile:  813-229-6553<br>*Counsel for Plaintiff Melissa Morrill* |