UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:

*Morrill v. Bayer Pharm. Corp. et al.*
Case No. 9:08-cv-80424-DMM
_____/

**DEFENDANTS BAYER HEALTHCARE PHARMACEUTICALS INC.,
BAYER HEALTHCARE LLC, BAYER AG, AND BAYER SCHERING PHARMA, AG'S
MEMORANDUM IN SUPPORT OF OBJECTIONS TO PLAINTIFF'S DESIGNATIONS**

Pursuant to Pretrial Order No. 6 and Rule 26(a)(3)(A)(i) of the Federal Rules of Civil Procedure, defendants Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare LLC, Bayer AG, and Bayer Schering Pharma AG ("Bayer") have submitted their objections to plaintiff's designated deposition testimony (D.E. 5206 in 9:08-cv-80424). To assist the Court in its review of objections to plaintiff's questioning, Bayer has highlighted some areas of objectionable testimony that recur throughout plaintiff's designations. This memorandum is illustrative, not exhaustive, and is intended to aid the Court in its review of the attached objections, not to take the place of those objections.

**I.    Objections Pursuant to Bayer's Motions *in limine***

  A.  Testimony regarding Bayer's disclosure of i3 Drug Safety study

Plaintiff has designated large volumes of testimony relating to the i3 Drug Safety study (the "i3 study"), including questioning about when Bayer employees knew about the existence of

the study, received preliminary results, and reported these results to the FDA.[1] On February 26, 2010, this Court granted defendants' motion *in limine* to exclude evidence, testimony, and argument concerning events in the summer and fall of 2006 related to the Bayer's disclosure of the commencement of the i3 study and its preliminary findings.

Bayer has objected to all designations that seek to introduce testimony, documents, or any other evidence barred by this Court's i3 motion *in limine* Order. Bayer has denoted its objections to this irrelevant and excluded testimony with the tag "i3 Order."

B. Kress study

Plaintiff has designated testimony regarding the Kress study. Bayer anticipates that plaintiff will use this testimony to support the argument that Bayer failed to disclose the draft Kress study to the FDA and medical community in a timely manner. For example, plaintiff asked Ernst Weidmann whether "the failure to turn over the Kress Study to health authorities [was] a violation of any standard operating procedure at Bayer."[2] Plaintiff asked similar questions in other instances.[3] Bayer further anticipates that plaintiff will use designations to support the allegation that Bayer played a role in Dr. Kress's decision not to publish his study.

---

[1] *See, e.g.,* Sprenger Dep. 9:9 - 10:2, 16:11 – 22:7, 24:6 – 83:24, 94:12 – 99:18, 106:15 – 223:6, 247:4 – 432:12; Weidmann Dep. 10:5 – 11:20, 310:6 – 327:18, 330:5 – 369:13; Fescharek, 81:1 – 90:24, 91:1 – 118:24, 194:1 – 198:10, 218:1 – 225:24, 235:2 – 12, 285:1-289:24, 294:13 – 295:24, 300:1 – 337:24, 356:16 – 357:23, 368:1 – 369:24, 372:1 – 372:24 ; Tucker Dep. 76:24 – 81:11, 82:5 – 82:9, 82:13, 83:6, 83:8 – 85:3, 212:20 – 231:16, 294:19 – 298:6, 309:19 – 310:15; Zaruby Dep. 533:8-536:2, 536-40, 559-63; Pascale Dep. 342:1-21, 559:16-564:6, 889:13-25; Dyszynski Dep. 135:15 – 137:21, 143:17 – 178:21, 196:6 – 192:20, 216:18 – 220:17, 329:11 – 331:13, 346:22 – 350:1, 352:17 – 358:1, and 393:12-23 ; Malik Dep. 62:8 – 70:16, 302:22 – 308:7, 314:20 – 315:1, 325:23 – 467:14, 1002:5 – 1006:12; Heller Dep. 1094:11 – 1097:2; Tucker Dep. 76:24 – 81:11, 82:5 – 82:9, 82:13 – 83:6, 83:8 – 85:3, 212:20 – 231:16, 294:19 – 298:6, 309:19 – 310:15; Lettieri Dep. 468:11 – 468:14, 471:6 – 471:15, 478:12 – 20, and 482:2 – 483:4.

[2] *See* Weidmann Dep. 177:6 – 177:18.

[3] *See, e.g.,* Fescharek Dep. 340:1 – 340:23, 372:12 – 372:24.

2

Plaintiff's questions regarding the draft Kress reports are irrelevant and unfairly prejudicial, especially here, where the draft Kress study was not provided to Bayer until weeks after Mr. Morrill received Trasylol.  As such, Bayer has moved *in limine* to preclude such evidence and argument, and denoted its objections to related designations with the tags "R" (Relevancy) and "UP" (Unfairly Prejudicial).

      C.  <u>Irrelevant marketing materials</u>

Plaintiff has designated testimony about marketing materials that are irrelevant and otherwise inappropriate in this case.  Plaintiff has no evidence that any of the physicians in this case received or relied upon any particular marketing materials, including (but not limited to) the marketing materials referenced in DDMAC letters.  Plaintiff nevertheless asked witnesses questions about the content of specific promotional materials and how physicians would interpret them, and designated testimony about marketing pieces that were first introduced in 2006, three years after Mr. Morrill's surgery.[4]  Plaintiff also asked witnesses about the amount of money Bayer spent marketing Trasylol in various years, but she has no claim for punitive damages and provides no connection between Bayer's marketing budget and Mr. Morrill's surgery.[5]  Such marketing materials, and testimony about them, are irrelevant and therefore inadmissible.  *See* Fed. R. Evid. 402.  As such, Bayer has moved *in limine* to preclude such evidence and argument, and denoted its objections to such designations with tags "R" (Relevancy) and "UP" (Unfairly Prejudicial).

---

[4] *See* Shank Dep. 361:22 – 365:3; Maurer Dep. 1060:24-1078:13.

[5] *See, e.g.,* Horton Dep. 1354:20 – 1354:24, 1617:14 – 1619:11; Maurer Dep. 1352:22-1354:4, 1356:9 – 1357:4.

D. Attorney-client privilege issues

In depositions of Bayer witnesses, plaintiff has suggested that Bayer misused privilege assertions to shield non-privileged information. The documents upon which plaintiff relies (which are marked with the legend "attorney-client communication") demonstrate that the charge is baseless because these documents themselves have been produced by Bayer in this litigation. Argument by plaintiff to the contrary will lead to a sideshow about the privilege that should be addressed by the Court and not the jury.

Bayer has filed a motion *in limine* to preclude testimony, evidence and argument related to plaintiff's unsupported charge. That motion is incorporated herein by reference. Bayer has also denoted its objections to related designations with tags "P" (Privileged), "R" (Relevancy), and "UP" (Unfairly Prejudicial) as appropriate.

E. Additional objections tracking motions *in limine*

Bayer's objections to plaintiff's deposition designations are consistent with, but not limited to, its motions *in limine* filed in this matter. The following issues, also addressed by Bayer's motions *in limine*, are among those included in Bayer's designation objections:

> 1. Moral or ethical duties[6]—Bayer has objected to testimony designated by plaintiff regarding whether Bayer is an ethical company,[7] whether Bayer's

---

[6] Plaintiffs in the *Bechara* case agreed to Bayer's motion *in limine* to preclude this type of evidence. Bayer and plaintiff Morrill continue to meet and confer regarding this motion. Should plaintiff Morrill likewise agree to Bayer's motion *in limine* on this subject, Bayer will so inform the Court.

[7] *See, e.g.,* Cyrus Dep. 38:6 – 39:18, 45:18 – 45:20, 210:19 – 210:21; and Malik Dep. 234:19 – 234:21, 234:24 – 235: 1.

4

undertaking of certain actions is ethical,[8] and whether Bayer has ethical obligations to physicians, patients, its sales force, and the public at large.[9]

2. <u>Reference to animal studies</u>—Bayer has objected to testimony designated by plaintiff regarding animal-based pharmacological studies.[10] Bayer anticipates that plaintiff will rely on such testimony to support the claim that Trasylol causes kidney dysfunction in humans.

3. <u>Off-label use</u>—Bayer has objected to irrelevant testimony designated by plaintiff regarding off-label uses of Trasylol as well as Bayer's alleged promotion of Trasylol for off-label uses such as orthopedic and oncology procedures.[11]

## II. Testimony Regarding Documents without Foundation

Plaintiff designates testimony relating to documents that witnesses have never seen before, such as promotional material, studies, and emails exchanged between third parties. Such designations fall into two categories: 1) plaintiff's counsel reads documents into the record and then asks the witness, "Did I read that correctly?" or an equivalent question; or 2) plaintiff's counsel asks the witness argumentative questions about documents the witness has never seen. In both cases, plaintiff's counsel does not seek a substantive response from the witness that might aid the jury.

---

[8] *See, e.g.*, Horton Dep. 156:9 – 17, 307:13 – 307:19, 308:4 – 308:10, 311:2 – 211:12, 333:12 – 333:20.

[9] *See, e.g.,* Harrison Dep. 351:2 – 9.

[10] *See, e.g.,* Lettieri Dep. 72:19 – 73:2, 179-83; and Fescharek Dep. 429:1 – 431: 12.

[11] See, e.g. Tucker Dep. 184:16 – 208:2.

A. Reading from documents

Plaintiff frequently designates testimony where plaintiff's counsel reads documents into the record, and the witness is simply asked "Did I read that correctly?" or some equivalent question. For example, in the deposition of Valentine Pascale, plaintiff's counsel asks questions about a planning presentation draft, which Mr. Pascale explains "was not done during the period [he] was involved with the marketing of Trasylol."[12] Despite Mr. Pascale's lack of knowledge or connection to the document, plaintiff's counsel proceeds to read lengthy portions of the document into the record.[13] Given that Mr. Pascale has no foundation to give testimony regarding the document, plaintiff's counsel is unable to ask substantive questions. Instead, plaintiff's counsel simply reads documents or portions of documents into the record. In between reading documents into record, plaintiff's counsel asks non-substantive questions about the content of the document or simply asks for confirmation that he accurately read the document into the record.

Plaintiff's counsel pursues the same method of reading documents into the record with numerous other witnesses.[14] Such questioning lacks foundation, relevance, and in some cases constitutes hearsay. *See* Fed. R. Evid. 401-03, 801.

---

[12] *See Pascale* Dep. 485:1 – 485:6.

[13] *See generally,* Pascale Dep. 487:5 – 498:22.

[14] *See, e.g.,* Harrison Dep. 295:16 – 296:19, 300:3 – 300:14, 305:6 – 306:16, 338:13 – 338:20, 394:2 – 396:4); Pascale Dep. (346:5 – 346:21, 366:13 – 367:1, 367:11 – 368:21, 370:19 – 71:21, 487:5-492:10, 497:9 – 19, 762:14 – 763:25, 857:19 – 859:10, 867:16 – 868:24, 871:14 – 872:4, 875:25 – 877:11, 881:4 – 882:11); and Horton Dep. (641:22 – 642:8, 848:21 – 849:8, 1332:11 – 1334:18, 1335:9 – 1336:7, 1564:24 – 1566:12, 1568:21 – 1569:20, 1571:9 – 1572:1, 1599:20 – 1602:3, 1603:12 – 1603:19; and Zaruby 504-513.

B. <u>Documents a witness has never seen</u>

Plaintiff has also designated testimony about documents the witness had not seen prior to being presented with them at the deposition.[15] In such instances, the witness has no foundation to answer the question. For example, plaintiff's counsel asked Dr. Ed Tucker about a document authored by Stanley Horton relating to profitability of Trasylol. Dr. Tucker replied that "[I]t's not within [his] area to comment on other people's slides and data."[16] But plaintiff's counsel continued to question Tucker about the document.[17]

Similarly, plaintiff's counsel asked Robert Harrison about a document titled "Trasylol Global Clinical Development Team, Risk Management," authored by Thomas Chin. Harrison testified that he did not recall ever seeing the document and could not speak to the purpose or context of the document.[18] Nevertheless, plaintiff's counsel proceeded to ask a series of questions about the purpose and context of this document.[19]

In each of these scenarios, the witness has not seen the document before being presented with it at the deposition. Such questioning lacks foundation, relevance, and in some cases constitutes hearsay. This questioning is improper, and should not be admitted. *See* Fed. R. Evid. 401-403, 801.

---

[15] *See, e.g.,* Harrison Dep. 255:8 – 255:12, 255:14 – 255:16, 256:6 – 256:16; Shah Dep. 413:16 – 416:5, and Monteagudo Dep. 185:20 – 187:7, 188:16 – 189:11, 452:2 – 457:10.

[16] *See* Tucker Dep. 115:24 – 116:2.

[17] *See* Tucker Dep. 114:15 – 121:6.

[18] *See* Harrison Dep. 255:8 – 257:24.

[19] *Id.*

### III. Company Conduct After Mr. Morrill Received Trasylol

Plaintiff has designated testimony regarding actions and events taking place months and years after Mr. Morrill received Trasylol in October 2003. For example, plaintiff designated testimony relating to Bayer's revision of its Company Core Data Sheet for Trasylol in 2005[20] and Bayer's adverse event analysis that took place in 2006.[21]

Bayer's actions following Mr. Morrill's surgery could not possibly have impacted his surgeon's decision to use Trasylol in his surgery. Such questioning lacks relevance, and admission of such testimony would result in the type of sideshow that Federal Rule of Evidence 403(b) is designed to prevent.

Dated: April 2, 2010

Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry (Florida Bar No. 332569)
Email: plowry@ssd.com
Barbara Bolton Litten (Florida Bar No. 91642)
Email: blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7120
Facsimile: 561-655-1509

*Attorneys for Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare LLC, Bayer AG and Bayer Schering Pharma AG*

---

[20] *See, e.g.*, Dyszynski Dep. 298:18 – 305:15, 325:10-328:12, 332:4 – 332:24.

[21] *See, e.g.*, Chin Dep. 242:15 – 273:14 and Sprenger Dep. 559:11 – 638:2.

8

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 2, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se partied identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those parties who are not authorized to receive Notices of Filing electronically.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

# SERVICE LIST

## Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, Florida 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN FRYE O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone:  813-223-7474
Facsimile:  813-229-6553
*Counsel for Plaintiff Melissa Morrill*

Scott Love
Email: slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
440 Louisiana, Suite 1600
Houston, TX 77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*