UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928- MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS            )
LIABILITY LITIGATION-MDL-1928      )
                                   )
THIS DOCUMENT RELATES TO:          )
                                   )
*Melissa Morrill v. Bayer Corp., et al*,  )
Case No. 9:08-cv-80424             )
_____)

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE, TESTIMONY, AND
ARGUMENT RELATED TO THE KRESS STUDY**

Plaintiff respectfully submits this response in opposition to Bayer's Motion *In Limine* to Exclude, Testimony, Evidence or Argument Related to the Kress Study. Plaintiff would respectfully show the Court that the motion *in limine* sought by Bayer[1] is unwarranted for the following reasons:

**I.    INTRODUCTION**

Bayer's primary ground for excluding evidence and argument that reference to the Kress Study should be excluded is alleged lack of relevance.[2]  Bayer mistakenly

---

[1] Defendants Bayer Healthcare Pharmaceuticals Inc. (as successor in interest to Bayer Pharmaceutical Corporation), Bayer HealthCare LLC, Bayer AG, and Bayer Schering Pharma AG (as successor in interest to Bayer HealthCare AG) are referenced collectively throughout this opposition as "Bayer."

[2] Bayer also asserts that reference to the study would be unduly prejudicial pursuant to Rule 403. However, the only prejudice Bayer asserts is that of being subjected to evidence that is not relevant or

contends the Kress Study is irrelevant because it could not have substantially impacted the decision to prescribe Trasylol to Plaintiff Morrill because a final version of the study had not been published prior to Mr. Morrill's surgery.[3]

As an initial matter, this assertion is irrelevant because Bayer abandoned the study after several attempts to get Dr. Kress to change his finding.[4] What is undisputed is that Bayer had the Kress results well before Mr. Morrill's surgery and failed to disclose those findings to Mr. Morrill's surgeon, the FDA or any physician in the country.[5]

Further, even if Bayer is correct, the reason Plaintiff Morrill was prescribed Trasylol is *not the only issue* in this case. This case also involves: (1) false assertions by Bayer that it acted in accordance with the standard of care and its own internal operating procedures; (2) credibility of both individual witnesses and employee witnesses testifying on behalf of the corporation; and (3) a clear pattern and routine by Bayer of hiding adverse study findings. Bayer's knowledge of the Kress Study results long before Mr. Morrill's surgery and handling of those results is directly relevant to each of these areas.

---

probative. Consequently, it is the relevance of the Kress Study that determines Bayer's claims for exclusion under both Rule 402 and 403.

[3] Bayer also asserts that reference to the Kress study is precluded by *Buckman*. In response, Plaintiff hereby incorporates by reference all arguments and evidence from the previous filings related to this issue by the Plaintiffs in *Anna Bryant v. Bayer Corp., et al*, Case No. 9:08-cv-80868 and *Naguib Bechara v. Bayer Corp., et al*, Case No. 908-cv-80776.

[4] Ex. 11, BAY05253843 – 49.

[5] Bayer's Associate Director of Scientific Communications, Dr. Mauer testified that had a doctor called Bayer with questions or asked questions in the field in 2003, 2004 or 2005, that doctor would not have been about the Kress Study. Ex. 1, Mauer 414:14 – 415:3; 415:6 – 416:3.

Plaintiffs' Response to Defendants' Motion *in Limine*
Re: Evidence, Testimony, and Argument Re: Kress Study

At the very least, it is not so obvious that no set of facts will be presented at trial which would render the Kress Study relevant, that this Court should depart from the preferred practice of deferring evidentiary rulings until trial so that they may be resolved in the proper context of the facts and arguments that are developed there. 21 Charles A. Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE ¶ 5042 (1977 & Supp.1993).

If Bayer wishes to (1) withdraw all statements by its witnesses experts that Bayer had no knowledge of renal safety risks posed by Trasylol prior to withdrawal; (2) withdraw all statements by experts that Bayer acted properly with regard the standard of care; (3) withdraw all witnesses who had knowledge regarding the Kress Study prior to Mr. Morrill's surgery; and (4) stipulate that it will not assert the ongoing approval by the FDA of Trasylol's use and labeling as evidence that its product was safe and its responses were adequate based on what was known or knowable, -- then the present motion *in limine* would present a much closer question. As the case currently exists, however, it is impossible to conclude in advance of trial that the Kress Study is not, and will not be, relevant to any of these issues. Consequently, Bayer's motion must be denied.

## II.   ARGUMENT AND AUTHORITIES.

### A.   Factual Background.

In 2000, Dr. David Kress of St. Luke's Medical Center in Milwaukee submitted a proposal to Bayer to conduct a full dose atrial fibrillation study.[6] Dr. Kress was awarded a $48,000.00 grant from Bayer to perform the study. The study was intended, *inter alia*, to look into whether aprotinin had an effect on the kidneys.[7] As indicated by Dr. Rozycki when transmitting the Kress Study to the FDA following the September 2006 Advisory meeting, Bayer was aware of the Kress Study results as early as 2002.[8] Further, Bayer had circulated at least six drafts of the Kress manuscript within the company prior to Mr. Morrill's October 2003 surgery.[9] The results were not what Bayer wanted – that Trasylol is associated with a "3.1 times higher risk of the development of postoperative renal failure."[10]

---

[6] Ex. 1, Mauer 271:2 – 272:6, 278:21 – 279:16; Ex. 2, BAY05742583 – 85.

[7] *Id.* at 281:6 – 22, 290:22 – 291:8.

[8] Ex. 3, BHCAG 01625521 – 24, 016555543 – 45. The company's concerns regarding the renal failure issues identified by the Kress Study are exemplified by the April 2003 e-mails attached hereto as Exhibit 11.

[9] Ex. 4, BAY05426839 – 846, draft 7 of Kress Report.

[10] *Id.* at 4, BAY05426842.

---

Bayer's Associate Director of Scientific Communications, Dr. Mauer testified that had a doctor called Bayer with questions or asked questions in the field in 2003, that doctor would not have been about the Kress Study.[11]

**B.     Bayer Has Not Carried its Burden to Prove that the Kress Study is Irrelevant to Refute Testimony by Bayer and its Experts.**

Bayer and its experts have repeatedly professed that: (1) Bayer has acted properly in accordance with the standard of care with respect to its disclosure of safety information; and (2) that ongoing FDA approval of Trasylol and the Trasylol label are evidence that the product was safe and the warning was adequate. Evidence that Bayer withheld unfavorable results of the Kress Study from doctors, the public, and the FDA is relevant and necessary to refute each of these statements.

  1.  **Evidence regarding the Kress Study is relevant to refute testimony by Bayer that it acted properly with regard to its communications and disclosures of safety information.**

Title 21 part 318.80(b) of the Code of Federal Regulations provides that ...applicant....shall **promptly** review all adverse drug experience information...from any source....including....postmarketing epidemiological/ surveillance studies..." 21 C.F.R. 318.80 (b)(emphasis added).

In addition to the standard of care regarding disclosure of adverse safety information mandated by federal law, appropriate internal standard operating procedures

---

[11] Ex. 1, Mauer 414:14 – 415:3; 415:6 – 416:3.

Plaintiffs' Response to Defendants' Motion *in Limine*
Re: Evidence, Testimony, and Argument Re: Kress Study

(SOPs) would have also required the disclosure of the adverse renal information identified by the Kress Study. However, as the FDA investigators discovered in 2003 when inspecting Bayer's system for signal detection, Bayer did not have a formal system or SOP for signal detection or trend analysis for clinical trials and that some departments at Bayer did not even know about Bayer's pharmacovigilance responsibilities, including the legal department.[12]

Plaintiffs anticipate that Bayer witnesses will repeatedly testify that Bayer is a good company, follows the law, or that their primary purpose is patient health or safety. Edwin Tucker, Vice President of Pharmacovigilance for Bayer, the person responsible for processing safety information in the United States, testified that his "primary role is for patient safety and to ensure that we represent information with regards to safety to our prescribers and to our patients to maximize the patient safety."[13] He further testified:

> Q.  So, if I'm looking at your job, the most important thing in your job is patient safety. Fair statement?
>
> A.  I would regard that as my primary role, yes.
>
> Q.  Okay. At Bayer, what's more important, profits or patient safety?
>
> A.  We don't differentiate between those. **Patient safety is our primary goal.**
>
> Q.  So, when you say you don't differentiate between them, does that mean that profits are right up there with patient safety?

---

[12] Ex. 5, BHCAG01405375 – 378. As a result of the inspection, Bayer was required to implement a proactive warning system for identification of safety issues by March 2004. *Id.*
[13] Ex. 6, Tucker 13:4 – 8.

Plaintiffs' Response to Defendants' Motion *in Limine*
Re: Evidence, Testimony, and Argument Re: Kress Study

  A. No. **Patient safety is our primary goal.**[14]

Further, in 2004, in addressing the importance of reporting adverse events, Dr. Tucker issued an email, as Head of Drug Safety for Bayer Corporation U.S., describing the company "as an ethical company, we are dedicated to patient safety and ensuring compliance with all regulations relating to patient safety."[15] This email was sent to Bayer sales representatives who called on doctors to market and increase sales of Trasylol.

Likewise, Pam Cyrus, former Bayer Director of Medical Science and current Bayer Vice President, U.S. Medical Affairs, testified:

  Q. Okay. Bayer has an obligation to make sure that patient safety is its number one priority, correct?

  A. It has an obligation to patient safety, yes.[16]

These are but a few examples of the statements Plaintiffs anticipate that Bayer will make regarding Bayer's emphasis on patient safety or Bayer's compliance with legal requirements.

Likewise, Bayer and its experts have made numerous statements to the effect that Bayer acted properly in accordance with the standard of care applicable to safety-related

---

[14] Exhibit 3, Tucker 35:13 – 36:5 (emphasis added).

[15] Exhibit 7, BAYCS00264891 - 92.

[16] Exhibit 8, Cyrus (Vol. I) 87:25 – 88:4.

disclosures to the FDA.  For example, experts for Bayer have offered the following opinions and testimony:

- "After initial approval, the sponsor satisfactorily discharged its obligations for post-marketing surveillance and reporting." Expert Report of Dr. Robert R. Fenichel, p. 55, ¶ 121.

- "Bayer cooperated appropriately with the FDA during the months of preparation for the Advisory Committee meetings of 2006 and 2007." Expert Report of Dr. Robert R. Fenichel, p. 57, ¶ 125.

- "With respect to the ongoing i3 study, and its preliminary report, Bayer complied with FDA regulations." Expert Report of Paul Waymack p. 32, ¶ 173.

Evidence that Bayer did not even mention the Kress Study results when they were known to the drug maker is certainly relevant to rebut the opinions of Bayer's experts that Bayer always acted properly.

At the very least, it is impossible to say, at this juncture, that Kress Study has no possible relevance to the testimony likely to be developed at trial.  Unless it is clear that the evidence is inadmissible for any purpose, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. See generally 21 Charles A. Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE ¶ 5042 (1977 & Supp.1993).  It is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.1975).

### 2. Evidence of the Kress Study cover-up is relevant to refute testimony by Bayer that FDA approval demonstrates that Trasylol was safe and that the warnings were adequate.

Plaintiff anticipates that at trial, Bayer and its experts will defend the drug manufacturer's conduct by asserting a position that they have taken throughout the pretrial and discovery processes: namely, that the FDA's ongoing approval of Trasylol and the Trasylol label are proof that the drug was safe and the warning was adequate. Evidence that Bayer withheld relevant information that it had been aware of, in the case of the Kress Study since 2002, from the FDA until after the 2006 Advisory Committee had voted to permit continued Trasylol use is directly relevant to refute Bayer's assertion.

An analogous personal injury case involved a negligence claim against a laboratory when errors in typing the patient's blood resulted in injury to the patient. *Harms v. Laboratory Corp. of America*, 155 F.Supp.2d 891 (N.D.Ill. 2001). The laboratory moved to exclude evidence about an investigation it conducted (and its failure to file a report on the investigation which Plaintiff contended was required) on the ground that what occurred after the patient's injury was irrelevant because it did not cause the injury. *Id.* at 900. The court disagreed. Instead, the Court held that evidence about the investigation, and what that investigation revealed was relevant to the case at hand. *Id.*

The same holding is appropriate in the case at bar. Even though the cover-up occurred after Plaintiffs' respective injuries, it is relevant to Bayer's anticipated defense that ongoing FDA approvals demonstrate the adequacy of its conduct with regard to

Trasylol. Simply stated, evidence of regarding the Kress Study cannot be ruled irrelevant prior to determining the evidence and arguments presented by Bayer at trial.

### 3. Bayer Has Not Carried Its Burden to Prove That The Non-Disclosure of the Kress Drug Study is Irrelevant to the Credibility of Witnesses.

Once a witness testifies, the witness' credibility becomes a fact of consequence in issue under Rule 401, and an opponent might well attempt to impeach the witness' credibility. Under Federal Rule of Evidence 608(b), the witness may, in the discretion of the court, be cross-examined about specific instances of conduct probative of untruthfulness. In other words, the witness on the stand can be asked about "prior bad acts" related to untruthfulness such as lying, cheating, filing false application, and other such acts.

Dr. Kress initially submitted proposal for his Bayer-funded study to Bayer in 2000.[17] The study was intended to look into whether aprotinin had an effect on the kidneys.[18] As indicated by Dr. Rozycki when transmitting the Kress Study to the FDA following the September 2006 Advisory meeting, Bayer was aware of the Kress Study

---

[17] Ex. 1, Mauer 271:2 – 272:6, 278:21 – 279:16; Ex. 2, BAY05742583 – 85.

[18] *Id.* at 281:6 – 22, 290:22 – 291:8.

Plaintiffs' Response to Defendants' Motion *in Limine*
Re: Evidence, Testimony, and Argument Re: Kress Study

results as early as 2002.[19] Further, Bayer had circulated at least six drafts of the Kress manuscript within the company prior to Mr. Morrill's surgery.[20]

In fact the "renal failure concern" raised by the Kress Study results was quite a topic of discussion among Bayer employees prior to Mr. Morrill's surgery.[21] Bayer was quite aware of the results: "a dose dependant increase in what they [the Kress researchers] define as renal failure."[22]

The fact that Bayer witnesses were aware of the Kress Study, chose not to comply with the regulatory standard of care, understood that the purpose of the study was to look at Trasylol's relationship to kidney injuries, and were aware that the FDA Advisory committee meeting was called to examine Trasylol's impact on the kidneys – but did not even mention the existence of the Study - bears on their credibility and truthfulness as witnesses.

   4.   **Bayer Has Not Carried Its Burden to Prove that Its Cover-Up of the Kress Drug Study is Irrelevant to Demonstrate a Pattern of Non-Disclosure of Adverse Study Information by Bayer.**

Bayer had a routine practice of concealing the negative results of studies on Trasylol. This routine practice began with studies, such as Kress and St. George's

---

[19] Ex. 3, BHCAG 01625521 – 24, 016555543 – 45.

[20] Ex. 4, draft 7 of Kress Report.

[21] Ex. 11, BAY05253843 – 49.

[22] *Id.* at BAY05253846.

Hospital that were completed prior to Mr. Morrill's surgery. In analogous circumstances, acts occurring after the harm occurs have been held admissible as evidence of the wrongdoing. *United States v. Rubenstein*, 151 F.2d 915, 917-918 (2nd Cir. 1945) (finding acts that occurred after the conspiracy ended relevant to prove the conspiracy).

A similar course of action was pursued by Bayer in connection with the St. George's Hospital London study. In October 2001, Bayer approved a protocol for St. George's Hospital London to study the benefits of using Trasylol.[23] Richardson Research prepared a report for Bayer analyzing the St. George's Hospital data and unexpected outcomes.[24] The report stated that the use of Trasylol was associated with longer stays, with increased use of blood products and with higher mortality.[25] Bayer also did not provide the St. George's Hospital report to the FDA until September 21, 2006.[26]

Likewise, Bayer's conduct with the i3 Study is merely the last (and perhaps most egregious) in a line of adverse study results handled by Bayer in a consistent manner. Bayer commissioned the i3 Study as a response to the unfavorable Mangano study. Indeed, the original i3 study proposal was shortened from six months to three month in order to insure timely delivery of the preliminary results to the FDA in advance of the

---

[23] Ex. 9, BAY04213410-17.

[24] *Id.* at BHCAG01306584- 6637; BAY03446626-8; BAY03446626; BAY04213407-9.

[25] *Id.* at BHCAG01306586.

[26] Ex. 10 at 83, Responses and Objections of Defendants to Plaintiffs' Second Set of Interrogatories, Fifth Set of Requests for Production of Documents and First Requests for Admission.

Plaintiffs' Response to Defendants' Motion *in Limine*
Re: Evidence, Testimony, and Argument Re: Kress Study

Page 12

September 2006 Advisory Committee meeting. Yet, when the preliminary results of the i3 Study came in unfavorable, Bayer did just what it had done with the Kress and the St. George's Hospital studies: it hid the study results. If the lead author of the i3 Study, Dr. Walker, had not advised Bayer that it must turn the over the preliminary results to the FDA, it is unclear whether Bayer would have ever brought the study forward on its own.

Bayer's concealment of the Kress Study is relevant because it demonstrates a consistent pattern of response. In that way, this case is factually akin to *King v. Salazar*, 2009 WL 1311521 (D.N.M., March 16, 2009). In *King*, the defendant employer sought to exclude evidence of later-occurring events offered by the plaintiff in support of his hostile work-environment claim. *Id.* at 1. The plaintiff argued that later conduct is part of the same hostile work environment and therefore the jury should be allowed to consider the later-occurring evidence as part of the totality of the circumstances. The court agreed, stating "the Court believes that these subsequent events would have a tendency to make the existence of a hostile-work environment more probable than it would be without the evidence." *Id.* at 1. Such is the case here as well. That Bayer's non-disclosure of the Kress and St. George's Hospital studies (during the time period when disclosure may have affected Plaintiff's surgery) was at least negligent, and likely willful, is made more probable by the fact that Bayer followed the same pattern of non-disclosure on numerous occasions. Consequently, evidence of that pattern of behavior is relevant and should be admitted.

---

C.  **Evidence That Bayer Failed to Kress Disclose the Adverse Results of the Kress Study Until Compelled to Do So Should Not Be Excluded Under Rule 403.**

The Court should also reject Bayer's alternative argument that evidence of its delay in disclosing the Kress Study should be excluded under Federal Rule of Evidence 403. A court's "discretion to exclude evidence under Rule 403 is narrowly circumscribed." *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) (citations and internal quotations omitted). Rule 403 permits a district court to exclude relevant evidence only when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir.1994). Thus, Rule 403 "favors admissibility of relevant evidence" and should be invoked "very sparingly" to bar admission of relevant evidence. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1502 (11th Cir. 1985) (emphasis added); *United States v. Betancourt*, 734 F.2d 750, 757 (11th Cir. 1984) ("Rule 403 is an extraordinary remedy ...."). It is particularly difficult to make a pretrial determination on Rule 403 evidentiary issues without a substantive background. As one court has observed: "Excluding evidence under Fed. R. Evid. 403 at the pretrial stage is an extreme measure." *Hines v. Consol. R.R. Corp.*, 926 F.2d 262, 274 (3d Cir. 1991).

As set forth above, the Kress Study is relevant to Plaintiff's proof of a pattern of non-disclosure by Bayer. It is also relevant and necessary for Plaintiff to refute

anticipated testimony by Bayer that the FDA's ongoing approval of Trasylol is evidence of the drug's safety and efficacy and the adequacy of its warnings. Finally, Bayer's concealment of the Kress Study (and others) is relevant to the credibility of witnesses designated by both parties. "Unfair testimony ... is 'not to be equated with testimony simply adverse to the opposing party.' " *United States v. 0.161 Acres of Land in Birmingham, Ala.*, 837 F.2d 1036, 1041 (11th Cir. 1988). That relevant evidence regarding the Kress Study is potentially harmful to Bayer's defenses simply does not make it prejudicial.

Having demonstrated that the Kress Study is relevant to multiple issues in this litigation, it can hardly be said that Plaintiff would "wasting time" by presenting evidence relevant to refuting Bayer's assertions that Trasylol is safe based on its ongoing FDA approvals.

## III. PRAYER

Plaintiff asks that the Court deny Defendants' Motion and allow Plaintiffs to proceed to trial with all relevant evidence.

DATED: April 9, 2010.

Respectfully submitted,

/s/ _____
Joseph A. Osborne
**BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Blvd., Suite 100
West Palm Beach, FL 33409
Telephone: (561) 684-2500
Facsimile: (561) 684-6308
Email: JAOsborne@babbitt-johnson.com

David P. Matthews
Julie L. Rhoades
**MATTHEWS & ASSOCIATES**
Texas Bar No.: 16811710
2905 Sackett Street
Houston, Texas 77098
Phone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com
jrhoades@thematthewslawfirm.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2010, I filed the foregoing document via <u>electronic filing</u> with the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via Electronic Mail or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

/s/_____
Joseph A. Osborne

## SERVICE LIST
### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON
### United States District Court
### Southern District of Florida

James R. Ronca
Email: jronca@anapolschwartz.com
ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-735-1130
Facsimile: 215-875-7758
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Joseph A. Osborne
Email: JAOsborne@babbitt-johnson.com
BABBITT, JOHNSON, OSBORNE & LECLAINCHE, P.A.
1641 Worthington Blvd., Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile: 561-684-6308
*Liaison Counsel for Plaintiffs and Plaintiffs' Steering Committee*

Patricia E. Lowry
Email: plowry@ssd.com
Barbara Bolton Litten
Email: blitten@ssd.com
SQUIRE, SANDERS & DEMPSEY, L.L.P.
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile: 561-655-1509
*Liaison Counsel for Defendants and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Scott A. Love
Email: slove@triallawfirm.com
CLARK, DEAN & BURNETT, G.P.
440 Louisiana #1600
Houston, TX 77002
Telephone: 713-757-1400
Facsimile: 713-759-1217
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Richard K. Dandrea, Esq.
Email: rdandrea@eckertseamans.com
ECKERT, SEAMANS, CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone: 412-566-6000
Facsimile: 412-566-6099
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Alan G. Schwartz
Email: aschwartz@wiggin.com
WIGGIN AND DANA LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Telephone: 203-498-4400
Facsimile: 203-782-2889
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

---

Plaintiffs' Response to Defendants' Motion *in Limine*
Re: Evidence, Testimony, and Argument Re: Kress Study

Eugene A. Schoon
Email: eschoon@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Catherine Barrad, Esq.
Email: cbarrad@sidley.com
**SIDLEY AUSTIN LLP**
555 West Fifth Street
Los Angeles, California 90013
Telephone: 213-896-6688
Facsimile: 213-896-6600
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*

Philip S. Beck
Email: philip.beck@bartlit-beck.com
Steven E. Derringer
Email: steven.derringer@bartlit-beck.com
Shayna Cook
Email: shayna.cook@bartlit-beck.com
**BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone: 312-494-4400
Facsimile: 312-494-4440
*Defendants Co-Lead Counsel and*
*Attorney for Defendants Bayer Corporation,*
*Bayer Healthcare Pharmaceuticals, Inc., Bayer*
*Healthcare LLC, Bayer AG, and Bayer*
*Healthcare AG*