IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:

Southeast Laborers Health and Welfare Fund v. Bayer Corp., et al Case No. 9:08-cv-80873

**PLAINTIFF'S RESPONSE IN OPPOSITION TO BAYER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiff's Third Amended Complaint ("TAC") pleads factual allegations demonstrating that throughout the Relevant Period, Trasylol's risks outweighed its benefits, and thus the drug was incapable of preventing blood loss in a reliably safe and effective manner. The TAC also alleges that the dangerous nature of Trasylol was well known to the defendants at the time Plaintiff and other third-party payor consumers purchased and/or reimbursed for Trasylol.

As detailed below, the Bayer Defendants' ("Bayer" or "Defendants") arguments for dismissal of the breach of warranty claims in the TAC are meritless. The Complaint is replete with facts demonstrating that Trasylol is non-merchantable, not because it killed or otherwise injured any of Plaintiff's participants, but rather because as Plaintiffs allege in the TAC, at the time it was purchased Trasylol's usage carried a risk of harm so great that it substantially outweighed any of the drug's benefits, thus *fundamentally undermining its ordinary medical purpose*.

In addition, because Defendants warranted that Trasylol was efficacious, safe, cost-effective, superior to its competitors, and was fit for its intended medical use, Plaintiffs and all third-party payors have valid claims for breach of warranty under New Jersey law.

1

Finally, despite Defendants' argument to the contrary, New Jersey has long recognized third-party payors such as the Plaintiff have standing to sue sellers regarding their product purchases. For these and other reasons stated herein, the Court should deny defendant's motion to dismiss.

I. PLAINTIFF'S BREACH OF WARRANTY CLAIMS SHOULD NOT BE DISMISSED

The Third Amended Complaint sets forth detailed allegations demonstrating that Bayer sold a product, paid for by Plaintiff and other third-party payors, which was unfit for its fundamental medical purpose despite defendants' representations to the contrary, thus giving rise to valid claims for breach of express and implied warranties.[1]

Defendants move to dismiss Plaintiff's breach of implied warranty claim on the basis that the Third Amended Complaint fails to adequately plead proximate causation; *to wit* that "plaintiff has not alleged that Trasylol did not work for its plan members, or that Trasylol's 'increased risk' injured its plan members." Defs' Mot. at 10.[2] Defendants also argue that Plaintiffs are not "buyers" of Trasylol and thus lack standing to bring a claim for breach of

---

[1] Express warranties are created by a seller with "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or with "[a]ny description of the goods which is made part of the basis of the bargain." N.J. Stat. § 12A:2-313(1)(a)-(b)(2009). New Jersey also states that "A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. Stat. § 12A:2-314 (2009).

[2] Defendants do not argue that they are not merchants with respect to pharmaceutical goods such that they are subject to New Jersey's implied warranty of merchantability. Therefore, Defendant in the present case is subject to N.J. Stat. § 12A:2-314 requiring Trasylol as sold to be merchantable. However, Trasylol is not and was never merchantable, as its high health risks made it unfit fit for ordinary purposes, *i.e.*, use by any class of patient, it was not of the quality described, and defendant never disclosed its true efficacy and safety profile. N.J. Stat. § 12A:2-314.

warranty. *Id.* at 11. Plaintiffs explain below why these arguments have no basis under the established case law and should be denied.

    First, defendants' proximate causation argument is both atypical for an implied warranty claim[3] and, when applied to the facts surrounding Trasylol, lacks merit. The Court correctly noted in its prior Order that a claim for breach of implied warranty arises when the product in question "does not meet generally accepted standards" or "disappoints consumer expectations." Doc. No. 4209 at pg. 20 (citing *Heindel v. Pfizer Inc.*, 381 F. Supp. 2d 364, 379 (D.N.J. 2004)). A product fails to meet this standard if a plaintiff can show that it is not "fit for the ordinary purposes for which such good are used." N.J. Stat. Ann. §12A:2-314(2)(c). The TAC alleges specific factual details about Trasylol's medical efficacy and side-effects that were known to Bayer throughout the Relevant Period which demonstrate that Trasylol was never fit for its intended medical use: preventing perioperative bleeding in a reliably safe and effective manner. TAC at ¶¶54, 73-81, 85, 87, 94-99, 103-106, 177, 207-213, 318-328 (explaining the serious dangers and risks, such as renal failure, heart attacks, stroke, and increased mortality associated with the use of Trasylol since before the drug was first approved by the FDA in 1993). Significantly, the Complaint also cites to expert medical opinions stating expressly that Trasylol

---

[3] The issue of proximate causation in a warranty action typically turns on whether there is proof of intervening negligence on the part of the plaintiff/purchaser. *See, e.g., Napp Techs., L.L.C. v. Kiel Labs., Inc.*, 2008 U.S. Dist. LEXIS 100734 (D.N.J. Dec. 12, 2008) ("[T]he question of 'proximate' cause turns on whether it was reasonable for the buyer to use the goods without such inspection as would have revealed the defects."); *Hollinger v. Shoppers Paradise of New Jersey, Inc.*, 134 N.J. Super. 328, 338 (Law Div. 1975) (Plaintiffs' intervening act – undercooking the pork – broke the chain of causation with regard to the grocery store defendant.). Defendants here do not allege that Plaintiff was negligent in failing to uncover Trasylol's defects or any other intervening act which would defeat proximate causation.

3

was never safe for use in clinical practice.[4] These allegations more than satisfy Plaintiff's burden at the motion to dismiss phase.

As set forth throughout the Complaint, third party payors paid for Trasylol, a drug that is clinically unsafe to administer to patients. Defendants' argument that Trasylol is still "fit for its ordinary use" of reducing perioperative bleeding is not only contrary to Plaintiff's allegations, but it is also simply irrational. Trasylol's medical purpose is defined as much by its mechanism of action as it is by its safety. Following Defendants' line of reasoning, a drug that reduces perioperative bleeding, but nonetheless increases the likelihood of patient death thirty-fold verses non-use or an alternative drug would nonetheless be merchantable. Such argument defies both legal principles and common sense. A drug that is unsafe to the point that its risks are determined to outweigh its benefits is not fit for its intended purpose.

Second, whether or not Trasylol injured any of its plan participants is irrelevant in determining whether the drug failed its implied warranty, *i.e.* to "meet generally accepted standards" or meet "consumer expectations." *Pfizer Inc.*, 381 F. Supp. at 379. Defendants' argument attempts to meld injury and proximate causation in a purported tort claim, which Plaintiff has not set forth in the Third Amended Complaint, with a contract claim, which Plaintiff has alleged. *See Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (N.J. 2002)("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law."). Allegation of physical injury is only required in the tort context. *See Paramount Aviation Corp. v. Gruppo Augusta*, 2003 U.S. Dist. LEXIS 27396 (D.N.J. Dec. 1, 2003) (*citing Alloway v. General Marine Industries, L.P.*, 695

---

[4] See TAC at ¶¶207-209 (citing opinions from four medical doctors that, among other patient risks associated with its use, the scientific evidence known to Bayer demonstrated Trasylol's "strong potential for causing renal injury," which rendered the drug "unsafe for use in clinical practice.")

4


A.2d 264 (N.J. 1997))("[E]conomic loss allegedly proximately caused by a product defect is not subject to tort remedies absent 'physical injury.'"); *see also Flowers v. Viking Yacht Co.*, 840 A.2d 291 (N.J. 2003) ("Consumer may not bring an action in negligence and strict liability for economic loss arising from the purchase of a defective product, but must rely on breach of warranty remedies provided by the Uniform Commercial Code.").[5] The gravamen of Plaintiff's breach of implied warranty claim is that, because the facts alleged show that Trasylol cannot be safely administered to any class of patient, Plaintiff and other like purchasers did not receive the "benefit of their bargain." *Spring Motors Distribs. v. Ford Motor Co.*, 98 N.J. 555, 565 (N.J. 1985). This pleading is sufficient under New Jersey law to state a claim for breach of implied warranty.

Third, there is no statutory or common law requirement that the plaintiff in a breach of implied warranty have any specific status, as a consumer, buyer, or otherwise. N.J. Stat. § 12A:2-314.[6] While the statute does require that a "sale" have occurred, the Plaintiff is not required to take "title" in order to have a cause of action for breach of implied warranty. Because not all "sales" are direct consumer transactions, courts have looked to the policy of the statute – that one

---

[5] The Third Circuit in *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238 (3d Cir. N.J. 2010) expressly recognized that, by codifying breach of express and implied warranty claims under the U.C.C. into New Jersey law, "the [New Jersey] Legislature adopted a comprehensive system for compensating consumers for economic loss arising from the purchase of defective products." *Id.* at 246. Importantly, the Third Circuit observed that:

> New Jersey courts have consistently held that contract law is better suited to resolve disputes between parties where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities with equal bargaining power and that could have been the subject of their negotiations.

*Id.* at 248.

[6] Defendants attempt to gloss over this fact by grouping together the breach of warranty laws of Tennessee and New Jersey.

party is in a better position than the other to know and control the condition of the good transferred – and have allowed various, non-title parties to proceed as plaintiffs, *e.g.*, bailers, lessees, and other non-purchasers. *See Cintrone v. Hertz Truck Leasing*, 45 N.J. 434, 446-47, 212 A.2d 769 (N.J. 1965)("[T]he warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales or to the direct parties to such a contract."). This implied warranty runs to, and is enforceable by, those who subsequently acquire an interest less than fee title in the product. *See Paramount Aviation Corp. v. Gruppo Agusta*, 288 F.3d 67, 73-74 (3d Cir. N.J. 2002)("[W]hat is called 'vertical privity' is not a requirement of a warranty claim under New Jersey U.C.C. law."); *see also Cintrone*, 45 N.J. 434, 446-47; *Damin Aviation Corp. v. Sikorsky Aircraft*, 705 F. Supp. 170 (S.D.N.Y. 1989). In this way, New Jersey has made a policy decision to err on the side of finding standing to file breach of implied warranty cases where the seller/buyer relationship is not straight-forward:

> The theory of the courts of New Jersey is to place an enterprise liability upon a manufacturer; so that a manufacturer is liable for defective products which it has placed into the channels of trade, and **this irrespective of the relationship, if any, between the manufacturer and the aggrieved party.** The courts do not concern themselves with the destination of the goods in question, rather they tend to focus strictly upon the manufacturer who is responsible for the defective product.

*Fashion Novelty Corp. v. Cocker Machine & Foundry Co.*, 331 F. Supp. 960, 965-966 (D.N.J. 1971)(emphasis added). The transaction of purchasing pharmaceutical goods such as Trasylol is clearly a "sale" for warranty purposes, despite the presence of intermediary parties besides just the buyer and seller. Thus, Plaintiff and other third party payors have standing under New Jersey law to raise breach of implied warranty claims related to their prescription drug payments, even though title did not change hands. *See, e.g., Desiano v. Warner-Lambert Co.*, 326 F.3d 339, 350

(2d. Cir. 2003)("[A]lthough this court has not to date held that insurance companies are, in all instances, the 'purchasers' of the drugs for which they reimburse pharmacies, we, like several other courts, have indicated that in a variety of contexts they are the buyers.") (*citing, e.g.*, *Med. Arts Pharmacy of Stamford, Inc. v. Blue Cross & Blue Shield of Conn., Inc.*, 675 F.2d 502, 505 (2d Cir. 1982) and *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 214 (1979)).

The strength of Plaintiff's breach of implied warranty claim is even stronger considering that, in light of Bayer's monopoly on the information regarding their product and their misrepresentations as to its safety and efficacy, Plaintiff and other unwary third-party payors who paid for the drug could not have discovered Trasylol's latent defects even through their own diligent investigation. *See Napp Techs.*, 2008 U.S. Dist. LEXIS 100734. Indeed, the entire pharmaceutical drug industry is predicated on placing the burden of disclosure and transparency about product safety upon the manufacturers, not upon the buyers. New Jersey's implied warranty statute must be liberally construed so as "promote [its] underlying purposes and policies." *Travelers Indem. Co.*, 594 F.3d at 246. In this context, the Plaintiff's implied warranty claim is both appropriate and necessary as a matter of public policy.

Lastly, Plaintiff has also alleged that Bayer breached its express warranties. Under Section 12A:2-313, express warranties are created by "[a]ny affirmation of fact or promise by the seller." N.J.S.A. 12A: 2-313(1)(a). In fact, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.J.S.A. 12A: 2-313(1)(b). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he had a specific intention to make a warranty." N.J.S.A. 12A: 2-313(2). As set forth throughout the complaint, Bayer claimed that Trasylol, its "cash cow" drug product (TAC at ¶192) was

7

efficacious, safe, cost-effective, and superior to its competitors. TAC ¶¶ 72, 107, 110, 192, 193, 207, 259. Plaintiff has alleged that these representations formed part of the basis of the bargain in Plaintiff's paying for Trasylol. TAC ¶¶ 262, 314. Plaintiff has therefore sufficiently pled a claim for breach of express warranty.

## II.   CONCLUSION

Due to the serious risks associated with Trasylol, the drug failed to meet "generally acceptable" medical standards for blood sparing agents. Accordingly, Plaintiff has pled claims for breach of implied warranty. Plaintiff has also pled that Defendants' representations created an express warranty. Finally, Plaintiff has alleged injury: the defeated expectations of Plaintiff and other third-party payors who purchased Trasylol with the expectation that it was safe and effective for its ordinary clinical use, *i.e.* "medically necessary." Compl. at ¶¶27-32. These allegations are sufficient to state a claim for breach of warranty under New Jersey law. Therefore, for these and the reasons stated above, the defendants' motion to dismiss should be denied.

Dated: April 23, 2010

                                        Respectfully Submitted,

                                        /s/ William C. Wright
                                        William C. Wright
                                        Florida Bar No. 0138861
                                        Leopold Kuvin, P.A.
                                        2925 PGA Boulevard, Suite 200
                                        Palm Beach Gardens, FL 33410
                                        (561) 514-0904;
                                        wwright@leopoldkuvin.com

Joe R. Whatley, Jr.
Edith M. Kallas
WHATLEY DRAKE
  & KALLAS, LLC
1540 Broadway, 37th Floor
New York, New York 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

James G. Stranch III
J. Gerard Stranch, IV
Joe P. Leniski, Jr.
BRANSTETTER STRANCH
  & JENNINGS PLLC
227 Second Avenue North, 4th Floor
Nashville, Tennessee 37201-1631
Tel: (615) 254-8801
Fax: (615) 250-3937

W. Tucker Brown
WHATLEY DRAKE
  & KALLAS, LLC
1000 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Tel: (205) 328-9576
Fax: (205) 328-9669

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I caused true and correct copies of the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO BAYER DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CLASS ACTION COMPLAINT to be served upon the following counsel for the Defendants in this matter through the Court's Electronic Filing System or by mailing the same to the offices of said counsel by United States, postage prepaid, on this 23rd Day of April 2010 to: **Barbara Bolton Litten, Esquire**, Squire, Sanders & Dempsey, LLP, 1900 Phillips Point W., 777 South Flagler Dr., West Palm Beach, FL 33401-6198; **Philip S. Beck, Esquire** and **Steven Derringer, Esquire**, Bartlit, Beck, Herman, Palenchar & Scott, LLP, Courthouse Place, 54 West Hubbard Place, Suite 300, Chicago, IL 60610; **Eugene A. Schoon, Esquire**, Sidley Austin LLP, One South Dearborn, Chicago, IL 60603; **Richard K. Dandrea, Esquire**, Eckert Deamans Cherin & Mellott, LLC, 600 Grant Street, 44th Floor, Pittsburgh, PA 15219; **Susan Artinian, Esquire**, Dykema Gossett, PLLC, 400 Renaissance Center, Detroit, MI 48243; **Patricia E. Lowry, Esquire,** Squire, Sanders & Dempsey L.L.P, 1900 Philips Point West, 777 South Flagler Drive, West Palm Beach, FL 33401.

<div style="text-align:right">

/s/ William C. Wright
William C. Wright
Florida Bar No. 0138861
Leopold Kuvin, P.A.
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
(561) 514-0904
wwright@leopoldkuvin.com

</div>