UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

| | |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION – MDL-1928 | ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) |
| ALL CASES | ) ) ) |
| *Linda Mordecai* v. *Bayer Corp., et al.*, Case No. 9:08-cv-80781 | ) ) ) ) |
| *Melissa Morrill* v. *Bayer Corp., et al.*, Case No. 9:08-cv-80424-DMM | ) ) ) ) |

**BAYER'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF ON THE EFFECT OF FLORIDA'S PRODUCT LIABILITY STATUTE AND FURTHER BRIEFING REGARDING THE FDA *BUCKMAN* ISSUES**

Bayer respectfully submits this response to plaintiff's supplemental brief (D.E. 5355) ("Supplemental Brief") regarding plaintiffs' attempts to introduce evidence at trial of alleged violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), and other *Buckman* issues. Notwithstanding its title referencing the "Florida Product Liability Statute," the Supplemental Brief devoted most of its attention to the effect of *Wyeth* v. *Levine*, 129 S. Ct. 1187 (2009), and discussed the Florida government rules defense (section 768.1256, Florida Statutes) only briefly. Because the broader *Buckman* and preemption issues which are the focus of plaintiffs' Supplemental Brief have applicability to both Florida and non-Florida cases and the PSC has been taking the lead on *Buckman* issues for plaintiffs, this brief is submitted in the

*Mordecai* case (in which Bayer adopted its prior *Buckman* briefing (D.E. 5321)), and in all other cases. *See* n.8, *infra*, and the Appendix, hereto.[1]

With regard to the substance of plaintiffs' Supplemental Brief, nothing in it changes the outcome on the issue raised in Bayer's motion. First, regardless of the presence of a "government compliance defense" under Florida law, negligence *per se* law and *Buckman* prevent plaintiffs from using an alleged FDCA violation to establish their state-law claims.

Second, nothing in *Levine* affects the questions currently before the Court. *Levine* addresses whether FDA's initial approval of labeling preempts state tort failure to warn claims. *Levine* teaches that state law may require a defendant to provide warnings beyond those approved by FDA in certain circumstances, such as when there is a lack of a clear record that FDA would have rejected the warning advocated by plaintiffs. But *Levine* says nothing about whether an alleged violation of a federal reporting standard creates a state-law cause of action or a standard for product defect or negligence in a products liability action. *Levine* does not address the potential interference with FDA enforcement of its reporting and disclosure regulations which were at issue in *Buckman* or with the improper speculation that such claims are based upon. To the contrary, *Levine* addressed whether emerging scientific information would have permitted the defendant to strengthen its warnings without prior FDA approval or whether federal law preempted the enhanced warnings plaintiffs said were needed under state law. The

---

[1] Because *Morrill* has settled and *Mordecai* is governed by Alabama substantive law, the Court need not consider the effect of the Florida regulatory compliance statute. To the extent this issue arises in future cases involving Florida law, Bayer respectfully requests the opportunity to address it in a separate submission. In short, Bayer does not believe that section 768.1256(2) is applicable to the types of regulations on which plaintiffs rely here. Nor, by its terms, does it apply if the defendant does not rely on section 768.1256(1), and Bayer has stated that it was not relying on that defense in the *Morrill* action.

preemptive effect of FDA approval of drug warnings (or lack thereof) is not the subject of Bayer's *Buckman* motion.

## ARGUMENT

I. **REGARDLESS OF WHETHER A "GOVERNMENT RULES DEFENSE" IS ASSERTED, NEGLIGENCE *PER SE* LAW AND *BUCKMAN* PREVENT PLAINTIFFS FROM USING AN ALLEGED FDCA VIOLATION TO ESTABLISH STATE-LAW CLAIMS.**

Even if Bayer were to assert the Florida "government rules defense" at a future trial, plaintiffs still could not put on evidence of alleged non-compliance with the FDCA and FDA reporting and disclosure regulations upon which they base their state-law claims.

Irrespective of section 768.1256, plaintiffs' FDCA and FDA regulation-based claims violate fundamental canons of negligence *per se* law, rendering irrelevant any evidence of non-compliance with FDA reporting regulations. Under Florida law, for example, a negligence *per se* claim cannot be made unless a statute evidences "a legislative intent to create a private right of action." *Murthy* v. *N. Sinha Corp.*, 644 So. 2d 983, 985-86 (Fla. 1994) ("a statute that does not purport to establish a civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing civil liability"). Where the statutory regime (here, the FDCA) lacks a private right of action, its violation does not create civil liability. *Id.* at 985. Here, it is irrefutable that FDCA and FDA regulations create no express or implied right of action; to the contrary, they expressly foreclose private rights of action. 21 U.S.C. § 337(a); *see Buckman Co.* v. *Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 & n.5, 353 (2001).

Accordingly, before and after the enactment of section 768.1256, courts uniformly have held that plaintiffs may not establish Florida negligence *per se* claims on the alleged violation of the FDCA: "The FDCA expressly prohibits private claims for violations of

3

that statute . . . . Under Florida law, therefore, Plaintiff cannot use a negligence *per se* claim to create a private cause of action for Defendant's alleged violations of the FDCA." *Blinn* v. *Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999); *accord Pantages* v. *Cardinal Health 200, Inc.*, No. 5:08-cv-116, 2009 WL 2244539, *3 (M.D. Fla. July 27, 2009) (holding plaintiff's claim failed "because Florida law does not recognize a claim based upon a theory of negligence *per se* . . . for an alleged violation of this particular federal regulation," *i.e.*, an FDCA provision); *Stevens* v. *Danek Med., Inc.*, No. 95-14293-CIV, 1999 WL 33217282, at *6 (S.D. Fla. Apr. 16, 1999) (granting summary judgment on negligence *per se* claim "because the FDCA expressly precludes a private right of action"); *cf. Labzda* v. *Purdue Pharma, L.P.*, 292 F. Supp. 2d 1346, 1354-55 (S.D. Fla. 2003) (applying *Murthy* and holding that Controlled Substances Act-based negligence *per se* claim failed as a matter of law).[2]

Additionally, and more broadly, plaintiffs cannot establish that any violation of the FDCA or the FDA's reporting and disclosure regulations was the proximate cause of an injury. Under Florida law, "[t]o demonstrate actionable negligence, a party relying on violation of a statute or ordinance must establish that . . . the violation of the statute was the proximate cause of his injury." *Groh* v. *Hasencamp*, 407 So. 2d 949, 953 (Fla. 3d DCA 1981); *accord Blinn*, 55 F. Supp. 2d at 1361; *cf.* § 768.1256(2)(a), Fla. Stat. (requiring plaintiff show that the statutory violations "[w]ere relevant to the event causing the death or injury"). To prove that an

---

[2] In addition, under Florida law, negligence *per se* claims may not be based on alleged violation of federal *regulations*, as opposed to a statute. *See Murray* v. *Briggs*, 569 So. 2d 476, 480 (Fla. 5th DCA 1990) ("we are not satisfied that a federal regulation should necessarily control state law questions of negligence by enlarging common law duties or creating new duties"); *Jupiter Inlet Corp.* v. *Brocard*, 546 So. 2d 1, 2-3 (Fla. 4th DCA 1988) (holding that violation of OSHA regulation does not constitute negligence *per se* and explaining that "when a regulation is admitted into evidence, a limiting instruction should be given at the time the regulation is admitted cautioning the jury that *the regulation is not evidence* of negligence *per* se") (emphasis added). Plaintiffs' claims depend heavily on alleged regulatory violations. S*ee* Parisian Report at 20-24, 26-27, 31, 44, 47, 53, 61 (alleging violations of C.F.R.).

4

alleged FDCA or regulatory violation was the proximate cause of an injury would require impermissible speculation that, absent the alleged violation, FDA would not have approved Trasylol for marketing or FDA would have withdrawn its approval. That, however, is precisely the showing prohibited by *Buckman*, and plaintiffs already have conceded that they cannot demonstrate proximate causation in that fashion. *See*, *e.g.*, D.E. 4240 at 9 (conceding "speculation about FDA actions would be inappropriate"); Feb. 26, 2010 Hr'g Tr. at 62, 73. Any attempt to connect alleged regulatory violations with the alleged injuries would require the same kind of impermissible speculation about what the FDA might have done had Bayer acted differently. Plaintiffs have pointed to no other evidence indicating that the alleged FDCA and regulatory violations *caused* an injury. Of course, none of this precludes plaintiffs from trying to make the separate showing that a different or earlier warning was required by state law and would have kept a plaintiff's prescribing physician from using Trasylol.

Moreover, plaintiffs' theory of negligence conflicts with the exclusive power of FDA to enforce its regulations. Whether a drug manufacturer may continue selling its product notwithstanding violations of FDA reporting regulations is within the discretion of *FDA alone* (*i.e.*, "the Secretary"); FDA alone is empowered to determine whether the requisite showings exist to trigger either mandatory or discretionary withdrawal. *See*, *e.g.*, 21 U.S.C. § 355(e); 21 C.F.R. § 314.80(j); *see also* 21 U.S.C. § 336 (granting agency discretion to decline formal enforcement "whenever [it] believes that the public interest will be adequately served" by other actions); *Heckler* v. *Chaney*, 470 U.S. 821, 831 (1985) (holding that agency decisions to refuse enforcement generally are "unsuitable" for judicial review because they "often involve[] a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise"). Accordingly, even to show that the provisions requiring mandatory withdrawal have

5

been violated—*i.e.*, those which "[r]equire compliance as a condition for selling or distributing the product," § 768.1256(2)(c), Fla. Stat.—necessarily would require that plaintiffs make the very showings forbidden by *Buckman*. In other words, to satisfy subsection (2)(c), a plaintiff must show that the alleged violations would have caused FDA "not [to] have [given the drug continued] approv[al] . . . and plaintiffs would not have been injured"—a showing that *Buckman* forbids. *Buckman*, 531 U.S. at 344; *id.* at 348-50 (it is "critical" for FDA to have the "flexibility" to make these determinations); *see also id.* at 354 (Stevens, J., concurring) (explaining the very "different case" that is presented where "FDA . . . had [] taken the necessary steps to remove the harm-causing product from the market"); *accord* D.E. 4240 at 9 ("speculation about FDA actions would be inappropriate").[3]

Neither plaintiffs' newly heightened emphasis on the Second Circuit's decision in *Desiano* v. *Warner-Lambert & Co.*, 467 F.3d 85 (2d Cir. 2006), *see* D.E. 5355 at 10-13, nor their resort to New Jersey's regulatory compliance statute, *id.* at 13-17, lends any additional weight to their position. Throughout this briefing, Bayer has acknowledged that its position is in conflict

---

[3] *Buckman*, as well as 21 U.S.C. §§ 336 and 337(a), foreclose a plaintiff's ability to base a claim on statutory provisions similar to section 768.1256(2)(c), Fla. Stat. because that statute requires the plaintiff to show that "the manufacturer . . . did not comply with the federal . . . statutes . . . which . . . [r]equire compliance as a condition for selling or distributing the product." But compliance with the reporting and disclosure regulations on which plaintiffs rely, while important, are not "conditions" for continued sale of a drug. Once a drug is approved by FDA for marketing, few FDCA provisions *require* that approval be withdrawn on account of their violation. *Compare* 21 U.S.C. § 355(e) ("The Secretary *shall* . . . withdraw approval . . . if the Secretary finds," *inter alia*, "that [the] drug is *unsafe for use*," or "that there is a lack of substantial evidence that the drug will have the effect it purports . . . .") (emphasis added), *with id.* ("The Secretary *may* also . . . withdraw the approval of an application . . . if the Secretary finds . . . that . . . the labeling of such drug . . . is false or misleading in any particular"), 21 C.F.R. § 314.80(j) ("If an applicant fails to establish and maintain records required under this section, FDA *may* withdraw approval of the application and, thus prohibit continued marketing of the drug . . . .") (emphasis added), *and id.* § 314.150(b) (detailing circumstances under which FDA "may" withdraw approval). Thus, many of the disclosure requirements that plaintiffs put at issue in this litigation do not, in fact, "require compliance as a *condition*" for continuing to "sell[] or distribut[e] the product." § 768.1256(2)(c), Fla. Stat. (emphasis added).

6

with the Second Circuit's holding in *Desiano* that *Buckman* did not preempt the fraud-on-the-FDA exception to Michigan's product liability statute. *See* D.E. 4680 at 7 n.4 (noting *Desiano*). But, as Bayer has explained and as plaintiffs have failed to refute, *Desiano* represents the minority view as to whether *Buckman* preempts the type of statutory fraud-on-the-FDA provisions that plaintiffs seek to use to rebut statutes that shield manufacturers from punitive damages or substantive liability when a drug is FDA approved or complies with the FDCA. *See* D.E. 4680 at 6-9 & n.7. *Desiano* squarely conflicts with the Sixth Circuit's decision in *Garcia* v. *Wyeth-Ayerst Laboratories*, 385 F.3d 961 (6th Cir. 2004), over whether the Michigan fraud-on-the-FDA exception is preempted. 385 F.3d at 966 ("Doubtless, *Buckman* prohibits a plaintiff from invoking the exceptions on the basis of *state court* findings of fraud on the FDA. Such a state court proceeding would raise the same inter-branch-meddling concerns that animated *Buckman*.") (emphasis in original). A host of other courts hold likewise with respect to the Michigan statute and other state-law provisions inviting plaintiffs to show fraud-on-the-FDA or other alleged violations of the FDA regulations in contravention of *Buckman* and 21 U.S.C. § 337(a).[4]

---

[4] *See*, *e.g.*, *Lofton* v. *McNeil Consumer & Specialty Pharms.*, --- F. Supp. 2d ----, 2010 WL 308754, *10-11 (N.D. Tex. Jan. 27, 2010) (following *Garcia* and holding Texas law preempted because "the concerns in *Buckman* hold true not only where a plaintiff brings a fraud-on-the-FDA claim but also where it seeks to show an exception to the presumption here. To avoid any intrusion upon the FDA's right to police fraud itself, the court follows *Garcia* and finds th[e] [statute] is preempted"); *In re Aredia & Zometa Prods. Liab. Litig.*, 352 Fed. Appx. 994, 995 (6th Cir. 2009) (reaffirming *Garcia*); *Grange* v. *Mylan Labs.*, 1:07-cv-107, 2008 WL 4813311, *7 (D. Utah Oct. 31, 2008) ("The court . . . agrees with *Garcia* . . . to the extent that Utah Code Ann. § 78B-8-203(2) allows for an exception in cases where a plaintiff puts on his or her own independent evidence of information being withheld from the FDA, this statute is preempted."); *Kobar* v. *Novartis,* 378 F. Supp. 2d 1166, 1172-73 (D. Ariz. 2005) (following *Garcia* and holding Arizona law fraud-on-the-FDA exception preempted, explaining "[b]oth a common law fraud-on-the-FDA claim and an immunity statute that requires a plaintiff to prove fraud on the FDA in order to collect punitive damages place state courts, as finders of fact, in the uncomfortable and difficult position of having to answer the question of what role, if any, the

7

Several courts have rejected the supposed distinctions drawn by *Desiano* between (i) "fraud-on-the-FDA claims" and those purportedly "sounding in pre-existing common law" that still require showings of fraud-on-the-FDA, D.E. 5355 at 11, and (ii) a state's invocation of "its sovereign powers" to use a fraud-on-the-FDA showing to "'neutralize a drugmaker's use of an affirmative defense available under state law,'" *id.* at 12; *see supra* note 5 (discussing cases holding that these distinctions are without difference). As the Sixth Circuit recently explained:

> Plaintiffs argue that *Garcia* is distinguishable [because] . . . . they contend they have merely brought common-law claims that rely on fraud on the FDA to defeat an affirmative defense, rather than an affirmative claim based on such fraud. . . . Per *Garcia's* plain terms, however, *both distinctions are beside the point*: "[S]tate tort remedies requiring proof of fraud committed against the FDA are foreclosed since federal law preempts such claims."

*In re Aredia & Zometa Prods. Liab. Litig.*, 352 Fed. Appx. at 995 (emphasis added); *accord* D.E. 4680 at 5-11. Simply put, under *Buckman* and 21 U.S.C. § 337(a), "a private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA" because the forbidden speculation remains the same in either circumstance. *Riley* v. *Cordis Corp.*, 625 F. Supp. 2d 769, 776-77 (D. Minn. 2009).[5]

---

allegedly withheld information would have played in the FDA's complicated approval process"); *Duronio* v. *Merck & Co.*, Docket No. 267003, 2006 WL 1628516, at *5 (Mich. Ct. App. June 13, 2006) ("Although we are not bound to follow the decision in *Garcia*, . . . we agree with its holding that the fraud-on-the FDA exception is preempted by federal law unless the FDA itself determines that it was defrauded."); *Henderson* v. *Merck & Co.,* No. 04-cv-05987, 2005 WL 2600220, at *9-11 (E.D. Pa. Oct. 11, 2005) (following *Garcia* and holding Michigan statute was preempted).

[5] Additionally, plaintiffs make the baseless suggestion that claims that Bayer allegedly violated the FDCA would not be "'alone sufficient' to impose liability," but instead are akin to claims involving "parallel federal safety requirements [that] are not premised principally (let alone exclusively) on a drug maker's failure to comply with [the FDCA]." D.E. 5355 at 11 (internal quotation omitted). Plaintiff Morrill's proposed jury instruction expressly contradicts that claim, Pl.'s Proposed Jury Ins. No. 20 (D.E. 5260) at 29, and plaintiffs have argued in open court that Bayer's alleged violations of federal law *establishes* their claims under state law. Feb. 26 Hr'g Tr. 68-69; *contra* 21 U.S.C. § 337(a); *Buckman*, 531 U.S. at 352-53; *see* D.E. 4680 at 6 n.3.

8

Plaintiffs' appeal to New Jersey law addressing that state's FDA-approval defense as additional support for their *Desiano*-based arguments is even more strained. *See* D.E. 5355 at 13-15. Significantly, plaintiffs fail to mention that the case upon which they principally rely, *McDarby* v. *Merck & Co.*, 949 A.2d 223, 271-72 (N.J. Super. Ct. App. Div. 2008), held that *Buckman* preempted the plaintiff from introducing evidence that the "'manufacturer knowingly withheld or misrepresented information required to be submitted under the agency's regulations'" in order to rebut New Jersey's statutory presumption against punitive damages in cases involving FDA-approved prescription drugs. *McDarby*, *supra* at 271-72 ("On appeal, [defendant] claim[ed] error in the judge's failure to recognize on the basis of *Buckman* and other cases that [plaintiff's] punitive damages claim was preempted. . . . *We are persuaded by [defendant's] preemption argument*.") (emphasis added).

Instead, plaintiffs address only those aspects of *McDarby* touching on defendant's argument about what standard of proof was necessary to rebut a New Jersey regulatory compliance defense at the liability stage. *See* D.E. 5355 at 14-15; *McDarby*, 949 A.2d at 256-57 (rejecting defendant's argument that presumption against adequacy can be rebutted only in cases "of deliberate concealment or nondisclosure"). Regardless, plaintiffs' suggestion that *Buckman*'s prohibitions are somehow overcome by *McDarby*'s statements about the standard of proof to rebut New Jersey's adequacy presumption where post-marketing surveillance is implicated is wrong. *See* D.E. 5355 at 14. Indeed, the Sixth Circuit has flatly rejected the claim that *Buckman*, as interpreted by *Garcia*, "is inapplicable to claims arising from *post*-approval fraud. . . . Plaintiffs' claims undisputedly require proof of fraud committed against the FDA. Plaintiffs have no federal finding to that effect. . . . [T]herefore, Plaintiffs' claims are preempted." *In re Aredia and Zometa Prods. Liab. Litig.*, 352 Fed. Appx. at 995.

9

In all events, just as Bayer has maintained all along, nothing in Bayer's *Buckman* argument precludes plaintiffs from arguing to the jury as a matter of state law that Bayer could have made a labeling change earlier based on data about which it had knowledge, *see* D.E. 5355 at 15 (comparing this to situation in *McDarby*). Bayer agrees that plaintiffs may try to establish that Bayer had a duty under state law to do so. Plaintiffs cannot, however, assert that Bayer was compelled by federal law to disclose certain information to FDA or that it is liable under state law for its alleged failure to do so. *See* Pl.'s Proposed Jury Ins. No. 20.

## II.    *LEVINE* IS IRRELEVANT TO THE *BUCKMAN* ARGUMENT.

Plaintiffs' renewed effort to argue that the Supreme Court's holding in *Wyeth* v. *Levine*, 129 S. Ct. 1187 (2009), changes the analysis of 21 U.S.C. § 337(a) or *Buckman*, let alone the Florida statute, remains unavailing. D.E. 5355 at 3-9; *see* D.E. 4741 at 4-5, 8-9 (plaintiffs arguing *Levine* displaces the force of *Buckman* when plaintiffs attempt to show violations of the FDCA); D.E. 4741 at 5, 8-10 (same). Bayer repeatedly has shown that *Levine* has nothing to do with whether a plaintiff may establish a claim under state law based on defendant's violation of federal law regarding reporting or disclosure obligations. *See*, *e.g.*, D.E. 4793 at 2; D.E. 4680 at 3, 10-11. To the contrary, *Levine* "does not purport to affect the enduring precedent that there is no private stand-alone cause of action for violation of the FDCA." *Lefaivre* v. *KV Pharm. Co.*, No. 4:09-cv-00588, 2010 WL 59125, at *4 (E.D. Mo. Jan. 5, 2010) ("disagree[ing]" with plaintiff's argument that "the Supreme Court's rejection in [*Levine*] of *per se* conflict preemption of state lawsuits . . . is an implicit authorization of private causes of action to enforce the FDCA"). Rather, "[c]onsistent with *Buckman*, *Wyeth* should be read only for the proposition that a plaintiff may assert a cause of action against a drug manufacturer if he or she has an independent state-law theory of liability (*i.e.,* if the cause of action would exist independently of the FDCA)." *Id.*

10

*Levine* held only that FDA's initial approval of the manufacturer's prescription drug did not, a matter of federal preemption, preclude plaintiffs from bringing tort claims challenging the adequacy of the labeling under state law in the circumstances of that case. 129 S. Ct. at 1197-1203. Likewise, nothing in Bayer's *Buckman* motion undermines plaintiffs' ability to argue that state law required different warnings. That federal law generally serves only as a floor, not a ceiling, for the adequacy of warnings and the like, does not speak to the issue here: whether a plaintiff may recover under state law solely because the regulated entity allegedly failed to comply with *federal* obligations owed to the agency alone (such as the mechanism for disclosing emerging scientific data to FDA). That showing remains governed by 21 U.S.C. § 337(a), and may not form the basis for liability in these cases. *E.g.*, *Lefaivre*, *supra*.[6]

\* \* \* \* \*

None of plaintiffs' remaining arguments undermine the conclusion that Bayer's *Buckman* motion should be granted.

*First*, plaintiffs' suggestion that *Levine* holds that there is a presumption against preemption in drug cases (but not medical device cases) is wrong and misunderstands *Buckman*. Although a presumption against preemption may apply in some circumstances where federal law preempts a traditional state-law claim—such as in the *Levine* failure-to-warn context where a defendant is arguing that federal approval of a warning means state law cannot say the warning was inadequate as a matter of state law—there is no presumption against preemption in the

---

[6] *Accord In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-cv-5774, 2009 WL 2043604, at \*10 (D.N.J. July 10, 2009) (dismissing consumer fraud claim because it was "plainly an impermissible attempt . . . to turn violations of the FDCA . . . into a private right of action"); *id.* at \*5 n.5 (noting decision in *Levine*); *In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*, MDL 1934, 2009 WL 1703285, at \*5 (C.D. Cal. June 17, 2009) (dismissing claims that "attempt[ed] to shoehorn allegations that [defendant] . . . violat[ed] the FDCA into . . . state consumer fraud causes of action"); *id.* at \*7 n.5 ("The Supreme Court's decision in . . . *Levine* do[es] not effect this Court's holding.").

*Buckman* context which involves attempts by plaintiffs to prove that the defendant violated a regulatory reporting or disclosure requirement.

*Buckman* squarely holds that there are no such federalism considerations with respect to the quintessentially federal relationship between the federal agency and a regulated entity making disclosures to that agency. *See* 531 U.S. 347-48 (holding that no federalism concern was implicated, and therefore no presumption against preemption applies, where the regulated entity's "dealings with the FDA were prompted by [federal law], and the very subject matter of [the regulated entity's] statements were dictated by that [federal] statute's provisions").[7] This follows because the manufacturer's relationship with the agency under the federal scheme is "inherently federal in character" and "[p]olicing fraud against federal agencies is hardly 'a field which the States have traditionally occupied.'" *Buckman*, 531 U.S. at 347 (quoting *Rice* v. *Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Thus, contrary to plaintiffs' contention, the holding in *Buckman* turns not on whether a drug or device is at issue but on the federal nature of the question of whether a regulated entity complied with a federal regulatory disclosure requirement, an issue governed by federal, not state law. Thus, there is no possible role for a presumption against preemption in the *Buckman* context given its quintessentially federal nature.

*Second*, as already shown, and as *Garcia* makes clear, nothing in *Buckman* limits its holding to the initial approval process, as opposed to later agency approvals and disclosures. Plaintiffs again are conflating the very different issues at play in *Levine*, which addresses the

---

[7] Even if a presumption against preemption applied—and it does not—the uniquely federal circumstances at issue here still would overcome any such presumption and compel preemption. *See*, *e.g.*, *Ray* v. *Atlantic Richfield Co.*, 435 U.S. 151, 157, 160, 163-64 (1978) (holding that, notwithstanding the application of a presumption against preemption, state-law requirements for vessels were preempted by federal law given the federal character of the relationship at issue between the vessels and the Coast Guard).

12

circumstances in which state-law duties may be preempted by federal law, with the issue here: whether plaintiffs may privately enforce a regulated entity's supposed failure to make disclosures to the federal agency that are governed by federal law. Those duties owed to the government plainly span both the period leading up to approval as well as subsequent approvals and disclosures. Accordingly, plaintiffs' argument fails.

*Third*, plaintiffs urge that *Levine* requires companies to engage in pro-active post-marketing surveillance. Here, again, plaintiffs miss the critical distinction. Plaintiffs are free to try to show that under state law, defendants owed a duty to doctors to relay emerging science and pro-actively monitor post-approval developments. What plaintiffs cannot do, under *Buckman*, is argue that defendants breached a *duty owed to FDA* by failing to comply with federal disclosure obligations owed to the agency alone.

*Finally*, as already shown, the Court should not follow *Desiano*'s rationale that *Buckman* does not apply to post-marketing activities. The Sixth Circuit in *Garcia* has flatly rejected this argument. Similarly and more recently, the court in *Aredia and Zemeta* has rejected the claim that *Buckman* "is inapplicable to claims arising from *post*-approval fraud. . . . Plaintiffs' claims undisputedly require proof of fraud committed against the FDA. Plaintiffs have no federal finding to that effect. . . . [T]herefore, Plaintiffs' claims are preempted." *In re Aredia and Zometa Prods. Liab. Litig.*, 352 Fed. Appx. at 995.

## CONCLUSION

In short, nothing in the PSC's supplemental filing undermines the conclusion that Bayer's *Buckman* motion *in limine* should be granted. For the reasons set forth above and in

Bayer's earlier-filed briefing, Bayer respectfully requests that its motion be granted as to all cases.[8]

April 27, 2010                                   Respectfully submitted,

/s/ Barbara Bolton Litten
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail:  blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

---

[8] *Buckman* issues have been fully briefed and argued multiple times to this Court by lead counsel for the PSC in the context of generic expert discovery (with respect to plaintiffs' proposed regulatory expert, Dr. Suzanne Parisian) and in the context of Bayer's *Buckman* briefing.  *See generally* PTO 4 § III(C) at page 5 (PSC "will have the authority to bind and/or act on behalf of all Plaintiffs") (D.E. 60).  Lead counsel for the PSC has participated in every argument on this issue and, in fact, signed the Supplemental Brief.  Bayer's *Buckman* arguments raise generic issues pertinent to all cases and are ripe for this Court's resolution.  *See* Defendants' Response To Plaintiffs' April 15, 2010 Letter To The Court (filed herewith).  For the Court's convenience, a summary of the briefing and hearings on *Buckman* issues is attached as an Appendix hereto.

14

Eugene A. Schoon
Email: eschoon@sidley.com
Susan A. Weber
Email: saweber@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone: 312-853-7000
Facsimile: 312-853-7036

Rebecca K. Wood
rwood@sidley.com
Eamon P. Joyce
Email: ejoyce@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone: 202-736-8000
Facsimile: 202-736-8711

Susan Artinian
Email: sartinian@dykema.com
Daniel Stephenson
Email: dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI 48243
Telephone: 313-268-9788
Facsimile: 313-568-6658

Richard K. Dandrea
Email: rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA. 15219
Telephone: 412-566-6000
Facsimile: 412-566-6099

*Attorneys for Bayer Corporation, Bayer HealthCare Pharmaceuticals Inc., and Bayer Schering Pharma AG*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

# SERVICE LIST

**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON**
**Case No. 9:08-cv-80781** *Mordecai* **v.** *Bayer Corp.*
**Case No. 9:08-cv-80424** *Morrill* **v.** *Bayer Corp.*

**United States District Court**
**Southern District of Florida**

James R. Ronca
Email: jronca@anapolschwartz.com
**Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-790-4584
Facsimile: 215-875-7701
*Co-Lead Counsel for Plaintiffs*

Scott A. Love
Email: slove@triallawfirm.com
**Clark, Dean & Burnett, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX 77002
Telephone: 713-757-1400
Facsimile: 713-759-1217
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile: 561-684-6308
*Liaison Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: 203-610-6393
Facsimile: 203-610-6399
*Federal-State Liaison for Plaintiffs*

Leslie A. Caldwell
Email: lac@lusklaw.com
**LUSK CALDWELL & DEAN PC**
2101 Highland Ave., Suite 410
Birmingham, AL 35205
Telephone: 205-933-7090
Facsimile: 205-933-7099
*Counsel for Plaintiff Mordecai*

P. Gregory Haddad
Email: ghaddad@baileyglasser.com
Kerrie Wagoner Boyle
Email: kboyle@baileyglasser.com
Jonathan D. Boggs
Email: jboggs@baileyglasser.com
**BAILEY & GLASSER LLP**
209 Capitol Street
Charleston, WV 25301
Telephone: 304-345-6555
Facsimile: 304-342-1110
*Counsel for Plaintiff Mordecai*

David F. Miceli
Email:  dmiceli@simmonsfirm.com
**SIMMONS BROWDER GIANARIS ANGELIDES &**
   **BARNERD LLC**
119 Maple St., Suite 201
Carrollton, GA  30117
Telephone:  770-834-2122
Facsimile:   770-214-2622
*Counsel for Plaintiff Mordecai*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509
*Liaison Counsel for Defendants*

John D. Goldsmith
Email: jgoldsmith@trenam.com
Amy L. Drushal
Email: aldrushal@trenam.com
**TRENAM KEMKER SCHARF BARKIN**
   **FRYE O'NEILL & MULLIS PA**
101 E. Kennedy Blvd., Suite 2700
Tampa, FL 33602
Telephone:  813-223-7474
Facsimile:   813-229-6553
*Counsel for Plaintiff Morrill*