UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

THIS DOCUMENT RELATES TO:

ARGENTO, et. al. v. BAYER CORPORATION, et al.,
Case No. 9:10-cv-80482-DMM



FILED by _____ D.C.

MAY - 3 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

### MEMORANDUM IN SUPPORT
### OF MOTION TO REMAND

This Memorandum is submitted in support of the Motion of Plaintiffs to remand to state

court. On November 2, 2009, Plaintiffs filed this action in the Circuit Court of the City of St.

Louis, State of Missouri against Bayer Corporation, Bayer Healthcare, LLC, and Bayer

Healthcare HealthCare Pharmaceuticals, Inc. ("The Bayer Defendants" or "Defendants").  The

Plaintiffs have alleged that they sustained serious injuries as a result of being administered

Trasylol, Bayers' drug.  Plaintiffs assert liability based on Missouri state law claims of strict

liability, negligence, failure to warn, fraud, breach of warranty, and conspiracy.  On December

10, 2009, the Bayer Respondents wrongfully removed this case, asserting diversity subject

matter jurisdiction pursuant to 28 U.S.C. § 1332 even though complete diversity does not exist in

this action.  Nevertheless, Defendants assert that complete diversity of citizenship exists based

on their contention that some plaintiffs were "fraudulently misjoined."  From this contention of

"misjoinder" the Defendants contend the citizenship of the non-diverse parties may be

disregarded.

As demonstrated below, the Bayer Defendants have inappropriately removed this action,

relying upon a claim of fraudulent **mis**joinder and the often criticized *Tapscott v. MS Dealer*

*Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, *Cohen v. Office Depot*, 204 F.3d 1069 (11th Circ. 2000), decision of the 11th Circuit. Plaintiffs are real parties in interest and the claims of the plaintiffs are logically related to one another and involve common questions of law and fact. Diversity jurisdiction therefore is lacking, and this action should be remanded to state court. See, e.g. *Droessler v. Wyeth-Ayerst Laboratories*, 64 F.Supp.2d 1265 (S.D. Fla.1999); *Davila v. American Home Products Corp.*, 2004 WL 557176 (W.D. Tex. 2004); *Coleman v. Bayer Corp.*, 2002 WL 535465 (E.D. La. 2002); and *Jochim v. Wyeth-Ayerst Laboratories, Division of American Home Products Corporation*, 2001 WL 950785 (D. Kan. 2001);

On January 6, 2010, the Eighth Circuit Court of Appeals, without any ambiguity or reluctance, reversed an MDL district court's orders denying the plaintiffs' motions to remand in *In re Prempro Products Liability Litigation*, 591 F.3d 613 (8th Cir.2010). The Eighth Circuit Court declined to adopt the "fraudulent misjoinder" theory in this type of mass tort case, the only grounds upon which the Bayer Defendants seek federal jurisdiction. Moreover, *Prempro* held that even if the so-called "fraudulent misjoinder" doctrine were applied to the case before it, no "fraudulent misjoinder" occurred because there were common questions of law and fact sufficient to satisfy the joinder standards of FRCP 20. *Prempro.* This Court thus held that the MDL district court did not have subject matter jurisdiction and ordered the district court to set aside its prior rulings and grant plaintiffs' motions to remand. *Id.* at 618.

The *Prempro* litigation is factually and legally identical to the case before the Court, except that in *Prempro*, there were multiple manufacturers of multiple hormone replacement drugs that allegedly caused both diverse and non-diverse women to develop breast cancer. *Id.* at 618. The defendant manufacturers removed the cases to federal court, alleging "fraudulent

misjoinder." The *Prempro* district court adopted the so-called "fraudulent misjoinder" theory advanced by the Bayer Defendants here as their only grounds for seeking diversity jurisdiction and held that the plaintiffs' claims were misjoined in order to defeat diversity jurisdiction. The MDL district court dismissed the non-diverse plaintiffs' claims and denied all of the remaining motions to remand. *Id.* at 619.

In reversing the MDL district court, the Eighth Circuit discussed the controversial and "novel" so-called "fraudulent misjoinder" doctrine, but declared that the Court would "make no judgment of the propriety of the doctrine[.]" *Id.* at 619. Instead, the Court ruled that, "on the record in this case, we conclude that even if we adopted the doctrine, the plaintiffs' alleged misjoinder in this case is not so egregious as to constitute fraudulent misjoinder." *Id.* The Court simply looked to Rule 20 joinder standards, pointing out that these standards have been interpreted broadly by the Eighth Circuit and generally require only that the transactions in question be "logically related" and found that these standards were satisfied where the litigation was likely to contain common questions of law and fact. *Id.* Even though there were multiple defendant manufacturers and multiple hormone replacement drugs at issue in the *Prempro* case, the Eighth Circuit found the claims to present common questions of law and fact, and thus to be sufficiently "logically related" such that the joinder of plaintiffs in that action could not constitute egregious or fraudulent misjoinder as a matter of law. *Id.* "Based on the plaintiffs' complaints, we cannot say that their claims have "no real connection" to each other such that they are egregiously misjoined." *Id.* This Court therefore concluded that the MDL district court lacked subject matter jurisdiction, vacated the district court's orders dismissing certain plaintiffs' claims, and ordered the district court to remand the cases to state court. *Id.*

The exact same situation exists in this case except that, if anything, Plaintiffs' claims here are even more clearly "logically related" in that there are multiple diverse and non-diverse plaintiffs bringing suit against multiple but related manufacturers and sellers of the same drug. There are also common questions relating to Petitioners' damages and causation. Here, Plaintiffs' use of the Bayer Defendants' Trasylol drug resulted in renal toxicity and multiple system organ failure and death. These transactions are thus clearly "logically related" and manifestly satisfy the standard for "common questions of law and fact" as discussed in *Prempro.*

## I.      THIS ACTION WAS IMPROVIDENTLY REMOVED BY DEFENDANTS.

It is axiomatic that federal diversity jurisdiction requires complete diversity. On the face of the Complaint, however, diversity is clearly lacking. As the Bayer defendants mention in their removal papers, Bayer Corporation is a citizen of both Indiana and Pennsylvania;  Bayer HealthCare LLC is a partnership with only Bayer Corporation as its only member, thus is a likewise a citizen of Indiana and Pennsylvania;  and Bayer HealthCare Pharmaceuticals, Inc., is a citizen of both Delaware and New Jersey.  Accordingly, when ANY of the plaintiffs are citizens of any of the same states of citizen ship of any defendant, *i.e.* Indiana;  Pennsylvania;  Delaware; or New Jersey, diversity of citizenship cannot exist for the purposes of 28 U.S.C. § 1332.  Here, complete diversity does not exist as the instant petition includes four plaintiff citizens of Indiana (Compl. ¶¶ 44, 81, 95, 97) and four plaintiff citizens of Pennsylvania (*See Id.* ¶¶ 1, 31, 42, 93).

The Bayer Defendants nevertheless removed this action, contending that the claims of the various plaintiffs against the them are improperly or fraudulently misjoined, thereby allowing this Court to disregard the citizenship of some of the parties in deciding whether diversity jurisdiction exists. This is not a case of fraudulent joinder, and diversity is lacking. This Court lacks jurisdiction, and the case should be remanded to state court.

Plaintiffs are residents of various states, who are **DIVERSE** as to the Defendants. Stated simply, there is absolutely no basis for a claim that plaintiffs have fraudulently joined <u>defendants</u> for the purpose of defeating defendants' access to a federal forum, and the Bayer Defendants do not make that claim. Instead, Plaintiffs having similar claims arising out of the same series of transactions and occurrences and involving common questions of law and fact, have joined together to assert those claims against these defendants in an appropriate forum where all defendants are subject to jurisdiction. The joinder of the various defendants flows naturally and automatically from the joinder of the various plaintiffs' claims. The basic issue for resolution, therefore, is whether the claims of the plaintiffs are properly joined, and, if not, the impact of such "misjoinder" on the jurisdiction of this Court.

## II.   PLAINTIFFS' CLAIMS ARE PROPERLY JOINED UNDER BOTH MISSOURI AND FEDERAL RULES OF PROCEDURE.

A threshold issue is whether the propriety of joining the claims of these plaintiffs should be resolved by reference to the Missouri or Federal Rules of Civil Procedure. Courts are split on the issue, but plaintiffs submit the better approach, and the one most consistent with the premise that federal courts are courts of limited jurisdiction, is to look to state joinder rules. Fraudulent joinder of defendants is analyzed under state law; *i.e.* by asking whether plaintiffs have a reasonable possibility of succeeding under state law in a claim against the non-diverse defendant. The same should be true in analyzing claims that plaintiffs have been misjoined.

Any misjoinder upon which removal jurisdiction may be based must have existed at the time the complaint was filed. The complaint in this action was filed in state court and needed only to comply with state joinder rules at the time it was filed. Can joinder that was proper under state rules at the time the complaint was filed become improper and a basis for federal diversity jurisdiction thereafter? If so, how can that result be reconciled with Fed. R. Civ. P. 82, which

cautions that the Rules should not be construed in a way that would extend the jurisdiction of the federal courts? The 1937 Advisory Committee Note to Federal Rule 20 states, in relevant part, that the provisions of the permissive joinder rule "are subject to Rule 82." For an extensive discussion of this issue, and the reasons for applying the state joinder rule, see *Sweeney v. Sherwin Williams Co.*, 304 F.Supp.2d 868 (S.D. Miss. 2004) and the cases cited therein.

A.    **Plaintiffs are Properly Joined Under the Missouri Rules of Civil Procedure.**

The Missouri Rule on permissive joinder, Rule 52.05(a), is based on Federal Rule 20(a). Missouri recognizes the "logical relationship" test adopted by the 8th Circuit. *State ex rel. Allen v. Barker*, 581 S.W.2d 818, 827 (Mo. 1979) That test recognizes the "broad policy favoring permissive joinder," and allows "reasonably related claims for relief by or against different parties to be tried in a single proceeding." Id. at 827, quoting *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). In *Allen*, the Missouri Supreme Court recognized the admonition of the U.S. Supreme Court that:

> Under the (federal) Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.

*Allen*, 581 S.W.2d at 827 quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The Court in *Allen* further noted that the "[c]ement or unity justifying joinder" may be found in "the fact that all acts or conduct are more or less consciously directed toward or connected with some common core, common purpose, or common event." *Allen*, 581 S.W.2d at 827 quoting *Levey v. Roosevelt Saving & Loan Ass'n of St. Louis*, 504 S.W.2d 241, 247 (Mo.App. 1973).

The decision in *Allen* represented the logical extension of an earlier decision, *State, ex rel Farmers Insurance Co. v Murphy*, 518 S.W.2d 655 (Mo. 1975), where the court examined

extensively the joinder requirement that the claims arise from the same transaction or occurrence or series of transactions of occurrences. The issue presented in *Murphy* was whether a plaintiff injured in an automobile accident could sue in one action both the tortfeasor and plaintiff's own insurer which provided uninsured motorist coverage. Analyzing the history of both the State and Federal Rules, the court held that such joinder was proper and "in harmony with the philosophy of permissive joinder which is to promote judicial economy, expedite final disposition of litigation and prevent inconsistent results due to multiple separate lawsuits." *Id.* at 662. The court further recognized that situations where it would be unfair or unwise to try all of the claims at the same time could be handled under Rules 52.05(b) and 66.02, the state equivalent to Federal Rules 20(1) and 42(b), allowing the court to sever matters for trial or make such other orders as may be necessary to prevent delay or prejudice or to promote expedition and economy. *Id.*

    **B.**    **Plaintiffs are Properly Joined Under the Federal Rules of Civil Procedure.**

Before turning to federal cases from this Circuit, it is important to emphasize the policy and purpose behind the joinder rules in general. As stated by Professor Kaplan in analyzing the 1966 amendments to the Federal Rules of Civil Procedure:

> As to joinder of causes of action, the new rules introduce what might be said to be a novel principle. They proceed upon the theory that *no inconvenience can result from the joinder of any two or more matters* in the pleadings, but only from trying two or more matters together which have little or nothing in common. They therefore *permit the joinder of practically anything*, and the court is allowed in its discretion to make an order for separate trial of any matters which can be more conveniently tried that way.

Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (II)*, 1968, 81 Harv.L.Rev. 591, 595 (quoting Professor Sunderland) (emphasis added). *See also*, Wright, Modern Pleading and the Pennsylvania Rules, 1953, 101 U.Pa.L.Rev. 909, 938 ("The rules on joinder now in effect in the modern pleading systems are quite simple.

*Effectively unlimited joinder is allowed at the pleading stage*, with discretion given to the trial judge to order separate trials for particular claims and issues 'in furtherance of convenience or to avoid prejudice.' ") (emphasis added). While these references relate to joinder of causes of action under Rule 18(a), the same policies and purposes underlie Rule 20(a) involving joinder of parties, subject, however, to the additional requirement that the claims arise out of the same transactions or series of transactions and involve common questions of law or fact. For claims of plaintiffs meeting those commonality requirements, the basic philosophy behind the joinder rules must prevail.

In *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400 (8th Cir. 1977), the Eighth Circuit addressed the test to be applied where removal is based on the alleged ***misjoinder of plaintiffs***. The Court began by acknowledging that in a case with plural plaintiffs and plural defendants, a federal court does not have jurisdiction unless there is diversity between all plaintiffs and all defendants. *Id.* at 403-04. The Court then noted a distinction between this type of case (joined plaintiffs) and one in which it is alleged that a resident defendant was joined improperly. In the latter case, the citizenship of the non-diverse defendant may be disregarded if he or she is "fraudulently joined." *Id.* at 404, FN 4. For addressing the situation involving multiple plaintiffs, the Court adopted a real party in interest test. Under that test, the citizenship of a non-diverse plaintiff may be disregarded for diversity purposes ***only*** if that plaintiff is not a real party in interest. Stated differently, citizenship of a formal or nominal plaintiff may be disregarded, but the citizenship of plaintiffs with a real and legitimate interest in the outcome of the case may not. According to the Court, the real party in interest "is the person who, under governing substantive law, is entitled to enforce the right asserted." *Id.* at 404.

8

Because the test is an objective one, the motivations for joining the nondiverse plaintiff are irrelevant:

> [I]f the nondiverse plaintiff is a real party in interest, the fact that his joinder was motivated by a desire to defeat federal jurisdiction is not material.
>
> ***
>
> If under our dual court system a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of properly joining a nondiverse defendant or co-plaintiff, he is free to do so.

*Id.* at 404, 406. Similarly, and in contrast to the situation where a nondiverse defendant has been joined, the viability of the asserted causes of action is not determinative: "The fact that a plaintiff's claim may lack legal or factual merit does not necessarily mean that he lacks standing to assert the claim as a real party in interest." *Id.* at 405.

While *Medicine Bow* addressed the joinder of plaintiffs in the context of a remand motion, the case of *Mosley v. General Motors Corp.,* 497 F.2d 1330 (8th Cir. 1974), addressed the joinder of plaintiffs in reviewing a district court decision ordering that the joined claims be severed and filed as separate actions. Reversing the district court, the Court of Appeals analyzed the requirement that joined claims arise out of the same transaction or series of transactions, noting that "transaction" is a "word of flexible meaning," and "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* at 1333. The Court held that a proper interpretation of the term as it is used in the joinder rule "would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding," and that [a]bsolute identity of events is unnecessary." *Id.* Because each of the 10 plaintiffs alleged injury as a result of the same general policies and actions of the defendants, joinder was proper. It was this reasonable or logical

relationship test adopted by the Missouri Courts in *Allen*, 581 S.W.2d at 827. Missouri Courts have not yet addressed the real party in interest test articulated in *Medicine Bow*, although it is reasonable to assume that they would follow that approach. *Id.* ("in keeping with the broad policy favoring permissive joinder, we should follow the lead of the Eighth Circuit in applying [the logical relationship] test to permissive joinder under rule 52.05(a)").

Other federal courts also have followed a real party in interest analysis when analyzing the joinder of plaintiffs and the impact of that joinder on removal jurisdiction. *See, e.g., Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) ("Neither *§1332* nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the claims be real, that the parties not be nominal."); *Bridgestone/Firestone, Inc. v. Ford Motor Co.*, 260 F.Supp.2d 722 (S.D. Ind. 2003) (citing *Garbie* with approval); *Foslip Pharmaceuticals, Inc. v. Metabolife International, Inc.*, 92 F.Supp.2d 891 (N.D. Iowa 2000). Alternatively, some courts reverse the fraudulent joinder test and apply it as a variant of the real party in interest formulation. *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F.Supp. 1046, 1048 (S.D.N.Y. 1981) ("A party to an action is nominal or formal if no cause of action or claim for relief is or could be stated against him or on his behalf, as the case may be."). Of course, the burden of proving the nominal nature of a nondiverse plaintiff is on the party making that assertion. *Id.* See, also, *Fila v. Norfolk Southern Railway Co.*, 336 F.3d 806, 808 (8th Cir. 2003).

## III.   FRAUDULENT MISJOINDER IS NOT EQUIVALENT TO FRAUDULENT JOINDER.

The theme of Defendants' Removal is the claim that the fraudulent misjoinder doctrine is merely a logical extension of the fraudulent joinder doctrine. Despite the superficial similarity of labels, there are crucial differences of substance between these two theories of removal

jurisdiction. The fraudulent joinder doctrine is firmly rooted in the text of the Constitution and the diversity statute, as construed in over 160 years of Supreme Court jurisprudence. Further, Congress has ratified the fraudulent joinder doctrine by repeatedly reenacting the diversity statute without disapproving this longstanding judicial interpretation.

By contrast, the fraudulent misjoinder doctrine lacks a similar pedigree. It is a 1996 innovation of the Eleventh Circuit; it operates much differently from fraudulent joinder in actual practice. It does much more than simply allow federal courts to disregard a party's citizenship in determining diversity; it allows federal courts to sever a removed case and remand non-diverse parties to state court in order to achieve complete diversity. The splitting of a case to achieve complete diversity, a piecemeal remand, is nothing more than a defunct theory of removal jurisdiction which Congress abolished in 1990 when it amended 28 U.S.C. § 1441(c). For these and other reasons, the Court should follow the lead of the Eighth Circuit and the lower federal courts in refusing to apply the fraudulent misjoinder doctrine.[1]

The fraudulent joinder doctrine is a settled principle of diversity jurisdiction rooted in over 160 years of Supreme Court jurisprudence. The United States Constitution authorizes

---

[1] In addition to the Eighth Circuit's decision in *In re Prempro Products Liability Litigation*, No. 09-1205, 2010 WL 21090 (8th Cir. 2010), these lower federal courts carefully considered the reasons for and against the fraudulent misjoinder doctrine and rejected it on the merits. *See, e.g., Geffen v. General Electric Co.*, 575 F. Supp. 2d 865, 869-72 (N.D. Ohio 2008); *Robinson v. Ortho-McNeil Pharmaceutical, Inc.*, 533 F. Supp. 2d 838, 842 (S.D. Ill. 2008); *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006); *Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127-28 (E.D. Cal. 2004); *Palmer v. Davol, Inc.*, 2008 WL 5377991, at *2-4 (D.R.I. 2008); *Mack v. Bayer Corp.*, 2007 WL 4333815, at * (D. Conn. 2007); *Sabo v. Dennis Techs. LLC*, 2007 WL 1958591, at *8 (S.D. Ill. 2007); *Alegre v. Aguayo*, 2007 WL 141891, at *5-6 (N.D. Ill. 2007); *Bird v. Carteret Mortgage Corp.*, 2007 WL 43551, at *5 (S.D. Ohio 2007); *Hardaway v. Merck & Co.*, 2006 WL 2349965, at *3 (S.D. Ill. 2006); *A. Kraus & Son v. Benjamin Moore & Co.*, 2006 WL 1582193, at *5 (E.D.N.Y. 2006); *Bavone v. Eli Lilly & Co.*, 2006 WL 1096280, at *3 (S.D. Ill. 2006); *Rabe v. Merck & Co., Inc.*, 2005 WL 2094741, at 2 (S.D. Ill. 2005); *Black v. Merck & Co., Inc.*, 2004 WL 5392660, at *4 (C.D. Cal. 2004); and *Ballard v. Wyeth*, 2004 WL 5436353, at *2 (E.D. Mo. 2004).

Congress to confer federal court jurisdiction over controversies between "Citizens of different states." U.S. Const., Art. III, § 2. Commencing with the Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 78, Congress has authorized the federal courts to exercise jurisdiction based on the diverse citizenship of parties. *See* 28 U.S.C. § 1332. For over two centuries, the Supreme Court has interpreted the diversity statutes to require complete diversity of citizenship between all parties. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L. Ed. 435 (1806).

"Early in its history, the [Supreme] Court established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980)(citing *McNutt v. Bland*, 2 How. 9, 15, 11 L.Ed. 159 (1844); *Marshall v. Baltimore & Ohio R. Co.*, 16 How. 314, 328-39, 14 L.Ed. 953(1854), *Coal Co. v. Blatchford*, 11 Wall. 172, 177, 20 L.Ed. 179 (1871)). Thus, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n*, 446 U.S. at 461.

The fraudulent joinder doctrine is merely an application of this longstanding principle. A resident defendant who is fraudulently joined in the lawsuit solely to defeat diversity jurisdiction, and against whom the plaintiff has no viable claim, is not a real and substantial party to the action. The rationale for the fraudulent joinder doctrine is that the "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)(emphasis added). Under the fraudulent joinder doctrine, the existence of such a fraudulently joined defendant may be disregarded in determining diversity jurisdiction, like any other nominal party to the controversy. *Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 184-86 (1907).

When Congress enacted the current diversity statute in 1948 and used the Article III term "citizens of different States," 28 U.S.C. § 1332(a)(1), it was well aware that this phrase had long been construed by the Supreme Court to refer solely to the "real and substantial parties to the controversy," *Navarro Sav. Ass'n v. Lee*, 446 U.S. at 460. When Congress passes a statute using a phrase with an established legal meaning, it is presumed that Congress intended to incorporate that meaning. *NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 94 (1995).

Congress has also ratified the fraudulent joinder doctrine by reenacting the diversity statute without altering this longstanding judicial interpretation. "The doctrine of ratification states that 'Congress is presumed to be aware of [a] ... judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.'" *Department of Transportation v. Public Citizen*, 541 U.S. 752, 770 n. 4 (2004)(citation omitted). The Supreme Court has applied this doctrine to the diversity statute. *Ankenbrandt v. Richards,* 504 U.S. 689, 700-01 (1992) (holding that 1948 enactment of 28 U.S.C. § 1332 ratified "the Court's nearly century-long interpretation of the prior statutes" establishing an exception for certain domestic relations matters).

Since its enactment in 1948 and through its multiple amendments thereafter, Congress has never rejected or eradicated the doctrine of fraudulent joinder as adopted by the Supreme Court. *See* 28 U.S.C. § 1332 note. Thus, Congress has ratified this longstanding judicial interpretation of the diversity statute. *Ankenbrandt,* 504 U.S. at 700-01.

The fraudulent *misjoinder* doctrine does not share a similar history. This doctrine is not grounded in the text of the United States Constitution or any federal jurisdictional statute, and has never been recognized by the Supreme Court or ratified by Congress. Only the Eleventh Circuit has adopted the fraudulent misjoinder theory of removal jurisdiction as recently as 1996,

and since that time numerous lower federal courts have since refused to follow the Eleventh Circuit's lead.

Contrary to what Defendants' argument implies, no circuit court has adopted the *Tapscott* fraudulent misjoinder doctrine. Defendants cite two circuit court decisions incompletely to the extent that they imply that the *Tapscott* doctrine has been adopted by other Circuit Courts. *See In re Benjamin Moore*, 309 F. 3d 296, 298 (5th Cir. 2002); and *Prempro*, 2010 WL 21090.

The Fifth Circuit has merely stated in dictum - in a one-paragraph order summarily denying a petition for writ of mandamus without prejudice - that "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." *In re Benjamin Moore*, 309 F. 3d at 298; *see Bird*, 2007 WL 894841, at *3 ("the endorsement given to the doctrine by the Fifth Circuit is somewhat open to question"); *Alegre*, 2007 WL 2007 WL 141891, at *5 n. 1 ("It is not entirely clear that the Fifth Circuit has 'adopted' the *Tapscott* test."); *Geffen*, 575 F. Supp. 2d 869 (quoting *Bird* and *Alegre* on this point). Similarly, in *Prempro*, after analyzing the doctrine and the various decisions throughout the district courts, the Eighth Circuit "decline[d] to apply *Tapscott*" to the case before it. *Prempro*, at *8

Furthermore, the fraudulent misjoinder doctrine operates very differently in actual practice. Unlike fraudulent joinder, it does not merely allow a federal court to disregard the citizenship of a named party in determining its own diversity jurisdiction. Rather, it purports to allow a federal court to sever the removed claims of non-diverse parties, remand them to state court, and retain jurisdiction over the remaining diverse parties.

Thus, the fraudulent misjoinder doctrine permits a federal court to split a case in two and reshape the entire action to achieve complete diversity of citizenship. This is a far cry from merely ignoring the existence of a fraudulently joined party in determining diversity. In fact, as

14

explained below, Congress amended the federal removal statute in 1990 to *abolish* an equivalent form of removal jurisdiction that operated in exactly the same way as the fraudulent misjoinder doctrine.

### IV. Congress Abolished Removal Jurisdiction Equivalent to The Fraudulent Misjoinder Doctrine When It Amended 28 U.S.C. § 1441(c) in 1990.

In 1990, Congress amended 28 U.S.C. § 1441(c) to make it inapplicable to diversity cases. Prior to 1990, § 1441(c) established a right of removal that was functionally equivalent to the fraudulent misjoinder doctrine. By eliminating this right of removal in diversity cases, Congress clearly expressed its intention not to authorize this form of removal jurisdiction. Courts may not create removal jurisdiction where Congress has deliberately eliminated it.

In the 1990 amendment, Congress added language to § 1441(c) stating that it applied only to cases "within the jurisdiction conferred by 1331 of this title ...." 28 U.S.C. § 1441(c). Because § 1331 only authorizes federal question jurisdiction, section 1441(c) no longer applies to diversity actions. *Borough of West Miflin v. Lancaster*, 45 F.3d 780, 785 (3rd Cir. 1995); *Bady v. Estate of Woodrow*, 941 F. Supp. 71, 71-72 (N.D. Miss. 1996); *Kiefer v. State Farm Mutual Automobile Ins. Co.*, 918 F. Supp. 164, 167 (E.D. La. 1996).

The 1990 amendment "eliminated the use of diversity jurisdiction claims as the basis for removing claims under Section 1441(c)." 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3724 at 9 (3d ed. 1998).

"The 1990 amendments to § 1441(c) evince a Congressional intent to restrict the removal jurisdiction of the federal courts." *Battle v. Park Geriatric Village Nursing Facility,* 948 F. Supp. 33, 35 (E.D. Mich. 1996). "It was what the House Report cites as 'the confusing and conflicting results' of the application of subdivision (c) to diversity cases that prompted the 1990 amendment of subdivision (c)." David D. Siegel, "Commentary on 1988 and 1990 Revisions of Section

1441," in 28 U.S.C. § 1441. As explained in the House Report: "Courts have found the test very difficult to administer [in diversity cases] and have reached confusing and conflicting results. At the same time, the need to provide removal for diverse defendants is not great." H.R. Rep. No. 101-734 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6869.

Under the post-1990 version of § 1441, a defendant may no longer remove a case lacking complete diversity and invoke the federal court's diversity jurisdiction by requesting a partial remand of the non-diverse parties to state court. "The removal statutes generally deal with an entire case, making an entire case removable or not, rather than allowing separate removal of only a portion of a case." *Florida Dept. of Ins. ex rel. Western Star Ins. Co., Ltd. v. Chase Bank of Texas National Association,* 243 F. Supp. 2d 1293, 1297 (N.D. Fla. 2002). Under the current version of § 1441(c), if there are non-diverse parties on opposite sides of the action, the fact that a portion of the case involves separate and independent claims between diverse parties "will not support removal of the entire action." *Battle,* 948 F. Supp. at 35.

After the 1990 amendment, "authority for piecemeal or partial remand exists only when removal jurisdiction is based on existence of a federal question." *Bristol-Myers Squibb Co. v. Safety Nat'l Cas. Corp.,* 43 F. Supp. 2d 734, 743-44 (E.D. Texas 1999); *see also Wilson v. Lowe's Home Center, Inc.,* 401 F. Supp. 2d 186, 197 n. 12 (D. Conn. 2005) (stating that under current version of § 1441(c) "a partial remand [that] has the same splitting effect as piecemeal removal... can occur only in federal question cases"); *Crucible Materials Corp. v. Coltec Industries, Inc.,* 986 F. Supp. 130, 133 (N.D.N.Y. 1997) (holding there is "no authority, statutory or otherwise, which allows a defendant in an otherwise non-diverse state action to manufacture diversity jurisdiction by removing only part of an action ... nor is there authority to split an action under § 1441(c) absent a 'separate and independent' *federal question*").

"The change made by Congress [in 1990] deals with precisely the situation in the case at bar: a separate and independent claim filed in state court as part of a larger proceeding, that would be removable on grounds of diversity if sued upon alone, and that therefore would have been removable under the pre-1990 version of § 1441(c), but that is now nonremovable under that section as amended. **Congress has spoken.**" *Florida Dept. of Ins. ex rel. Western Star Ins. Co., Ltd. v. Chase Bank of Texas National Association,* 243 F. Supp. 2d 1293, 1297 (N.D. Fla. 2002) (emphasis added).

### A.     The Doctrine of "Egregious Misjoinder" has not been well received.

Some courts have attempted to apply the analysis first set forth in an 11th Circuit decision, *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir.1996), abrogated on other grounds, *Cohen v. Office Depot,* 204 F.3d 1069 (11th Cir.2000). The facts and holding of *Tapscott* were well summarized in *Jamison v. Purdue Pharma Co.*, 251 F.Supp.2d 1315, 1319 (S.D.Miss.2003).

The Court in *Tapscott* clearly held that "mere misjoinder" is not equivalent to fraudulent misjoinder. Cases from this Circuit also recognize that misjoinder is a *procedural defect* remediable in the state court and removal may not be premised solely on a claim that parties are improperly joined. *Couch v. White Motor Co.,* 290 F.Supp. 697, 700 (W.D. Mo. 1968) (recognizing the distinction between improper and fraudulent joinder and holding that an allegation of misjoinder "is insufficient to confer jurisdiction upon this Court."); *Viles v. Sharp*, 248 F.Supp. 271, 272 (W.D. MO. 1965) (noting that claims of fraudulent joinder must be plead with particularity and proven with certainty and removal may not be based on a claim that state law would not permit joinder on the facts of the case). *See also, Johnston Industries, Inc. v. Milliken & Co.*, 45 F.Supp.2d 1308, 1312 (M.D. Ala. 1999) (Holding that "application of the

doctrine of fraudulent joinder of a defendant does not extend to include the alleged fraudulent joinder of a plaintiff" and defendant should have sought relief for any misjoinder in state court.).

The "something more" beyond mere misjoinder that will rise to the level of fraudulent joinder has never been clearly defined and has been the source of some confusion. The qualification "injects a considerable degree of ambiguity into the [*Tapscott*] holding by intimating that there is some threshold above simple misjoinder that needs to be passed to create the new form of fraudulent joinder [the Eleventh Circuit] was recognizing" and, as a consequence, "numerous additional decisions will be needed to clarify the distinction." 14B Wright, Miller & Cooper, Federal Practice & Procedure 3d (hereinafter "Wright") § 3723, at 657- 58.

Courts applying the *Tapscott* rationale have recognized that something is required beyond mere misjoinder, and have emphasized that the joinder at issue in *Tapscott* was particularly egregious, and involved an attempt to join claims brought by one class of plaintiffs against one set of defendants with another group of factually unrelated claims brought by a second class of plaintiffs against a second group of defendants with no connection between the two groups. *See e.g., Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1289 (11th Cir. 1998) (distinguishing *Tapscott* because "the instant case does not involve two distinct classes that have 'no real connection' to each other"); *Glenn v. Purdue Pharma Co.*, 2003 WL 22243939, at *5 (N.D. Miss. Sept. 25, 2003) (declining to apply the "often-discredited" *Tapscott* decision because *Tapscott* involved claims against two separate groups of defendants by two separate groups of plaintiffs with "no real connection existing between the two groups"); *Jamison,* 251 F.Supp.2d at 1323 (noting that because "no plaintiff in the first group stated a claim against a defendant in the

second group and no plaintiff in the second group stated a claim against a defendant in the first group, there was no series of transactions or occurrences that connected these two groups").

## V. There Was No Egregious Misjoinder Under *Tapscott*.

Even if this Court were to adopt the fraudulent misjoinder doctrine, there has been no egregious misjoinder in this instance under *Tapscott.* According to *Tapscott,* "mere misjoinder" is not enough - it must be "so egregious as to constitute fraudulent joinder." *Tapscott*, 77 F.3d at 1360. As discussed in the Eighth Circuit's analysis in *Prempro*, "[p]laintiffs' claims arise from a series of transactions between [defendant] pharmaceutical manufacturers and individuals that have used [defendants'] drugs. *Id.* at *7. Here, the same is true. Plaintiffs-Appellees' claims arise from a series of transactions between the Defendants', pharmaceutical manufacturers, and the plaintiffs who were administered Defendants' drug. To say the least, this joinder was not "so egregious as to constitute fraudulent joinder." *Tapscott*, 77 F.3d at 1360.

## VI. <u>Any Doubts About Jurisdiction Must be Resolved in Favor of Remand.</u>

The approach to joinder in the context of removal and a pending remand motion raises federalism concerns. A common thread throughout the cases, whether addressing the "fraudulent joinder" of a defendant or the alleged improper joinder of plaintiffs, is that all doubts must be resolved in favor of remand. As stated in *Fila, supra*, 336 F.3d 806, "[t]he district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Id.* at 811. "In making such a prediction, the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." Id. at 811. The district court "has no responsibility to definitively settle the ambiguous question of state law," but instead should "simply determine whether there is a reasonable basis for predicting that the state's law might impose liability

against the defendant." Id. at 811. "[W]here the sufficiency of the complaint against the non-diverse defendant is questionable, 'the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide.' " Id. at 811, quoting *Medicine Bow*, at 406.

Remand is especially apt where joinder is at issue, as the defendants still have a remedy in state court if they believe joinder is improper or fraudulent. *See, Couch v. White Motor Co.*, 290 F.Supp. 697, 700 (W.D. Mo. 1968) ("The defendants have a remedy in the state courts if they feel that the joinder...was improper."); *Viles v. Sharp*, 248 F.Supp. 271, 272 (W.D. Mo. 1965) ("Defendant...has a remedy in state court if he feels that the joinder is 'improper.'"). Indeed, this is the approach proposed by Professor Wright:

> In many situations this confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal. Because removal is not possible until the misjoined party that destroys removal jurisdiction is dropped from the action, the thirty-day time limit for removal (but not the overall one-year limit for diversity cases) would not begin to run until that had occurred and thus a requirement that misjoinder be addressed in the state court would not impair the ability of an individual to remove an action following the elimination of the improperly joined party.

14B Wright, Miller & Cooper, Federal Practice & Procedure 3d § 3723, at 658.

## CONCLUSION

For the foregoing reasons, the Defendants' this matter should be remanded back to state court, City of St. Louis.

John J. Driscoll, EDMO 499782
211 N. Broadway, Ste. 2440
St. Louis, MO  63102
(314) 932-3232
(3140 932-3233 facsimile
john@thedriscollfirm.com

20

## **CERTIFICATE OF SERVICE**

        Comes now counsel for Plaintiffs, and hereby certifies that foregoing document was sent via Federal Express to be filed with this Honorable Court on the 30th day of April, 2010 to Plaintiffs' and Defendants' Lead and Liaison Counsel of record via United States Postal Service at their addresses listed below:

**Liaison Counsel to the District Court for the Southern District of Florida:**

Theodore Babbitt
Joseph Osborne
Babbitt, Johnson, Osborne & LeClainche, P.A.
1450 Centrepark Blvd., Suite 100
West Palm Beach, FL 33401

**Co-Lead Counsel for Plaintiffs:**

James R. Ronca
Anapol, Schwartz, Weiss, Cohan, Feldman & Smalley, PC
1710 Spruce Street
Philadelphia, PA 19103

Scott Love
Fleming & Associates, LLP
1330 Post Oak Blvd., Suite 3030
Houston, TX 77056

**Lead Counsel for Defendants:**

Philip S. Beck
Steven E. Derringer
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 West Hubbard Place Suite 300
Chicago, IL 60610

Eugene A. Schoon
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603

Richard K. Dandrea
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

Susan Artinian
Dykema Gossett PLLC
400 Renaissance Center
Detroit, MI 48243

John J. Driscoll EDMO 499782
211 N. Broadway, Ste. 2440
St. Louis, MO 63102
(314) 932-3232
(3140 932-3233 facsimile
john@thedriscollfirm.com