## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

**IN RE: TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928**

**This Document Relates To:**

**MORDECAI V. BAYER CORPORATION, ET AL.,
Case No. 9:08-cv-80781**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
### MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING
### OFF-LABEL PROMOTION OF TRASYLOL

**COMES NOW** Plaintiff and respectfully submits this response in opposition to Bayer's

motion to exclude evidence and argument regarding alleged "off-label" promotion of Trasylol

for surgeries that allegedly have no bearing on *Mordecai*.

### I.
### INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFF'S
### OPPOSITION TO BAYER'S MOTION TO EXCLUDE EVIDENCE AND
### ARGUMENT REGARDING IRRELEVANT MARKETING MATERIALS

In the interest of brevity and to avoid burdening the Court with duplicative briefing,

Plaintiff hereby incorporates by reference section I of "Plaintiff's Opposition to Bayer's Motion

to Exclude Evidence and Argument Regarding Irrelevant Marketing Materials," setting forth the

appropriate standards for a motion *in limine*, including the requirement that the motion state with

specificity the evidence for which Defendants seek exclusion. Subject to this objection, Plaintiff

responds as follows:

381730

## II.

## <u>ARGUMENT AND AUTHORITIES.</u>

"'Relevant evidence' means evidence having <u>any tendency</u> to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  In applying Rule 403 to relevant evidence alleged to be unduly prejudicial, the Court should "'look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.'" *United States v. Jernigan*, 341 F.3d 1273, 1284 (11th Cir. 2003)(quoting *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002)(quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th Cir. 1989)).  A district court's decision not to exclude evidence pursuant to Rule 403 as unduly prejudicial is subject to review under an abuse of discretion standard.  *Jernigan*, 341 F.3d at 1284.

In addition to being impermissibly vague, Defendants' motion fails because off-label "marketing" is relevant and admissible for three primary reasons:  1)  Bayer's state of mind and motive regarding marketing and the need to expand the approved indications and market for its primary and most important money-making product, Trasylol, sometimes referred to by Bayer's employees as it's "cash cow;"[1] 2)  for impeachment of Bayer's witnesses; and 3) punitive damages because regardless of renal risks, Bayer aggressively marketed, putting profits over patient safety.

With regard to any questions during depositions, Defendants disregard the scope of discovery and the responsibilities of those questioning Bayer's current and former employees and Key Opinion Leaders on behalf of the Plaintiffs' Steering Committee.  As this Court is well

---

[1] Trasylol is derived from bovine lung tissue, apparently leading Bayer employees to use the cow reference.

381730

aware, scope of discovery is not limited by admissibility.  Further, although Defendants do not specify which deposition questions cause them such distress, when questioning non-case specific witnesses on behalf of the overall Trasylol docket, the PSC representatives were obligated to inquire into all areas:  one of which is off-label uses which may be implicated in some of the specific cases.   However, without the specific deposition questions and testimony, it is impossible for Plaintiff to ascertain whether or not the questions and testimony fall within the categories of motive and marketing and/or punitive damages and thus, are relevant and admissible.

>        **A.        Off Label Marketing is Unethical and Improper.**

As acknowledged by Bayer's current head of a global division and former U.S. Marketing Director for Trasylol, Stan Horton, off-label marketing of a pharmaceutical product is unethical and improper.  Under oath, Dr. Horton testified as follows:

> Q.     What is off-label marketing?

> A.     The FDA grants a label based on the studies that's done for an indication.  And that is what you are permitted to market the product for.

> Q.     Okay.  **Is it improper to market a product for uses for which it is not approved?**

> A.     **Yes.**

> Q.     **Is it unethical to market a product for uses for which it is not approved?**

> [objection omitted]

> THE WITNESS:  **Yes.**

[Horton Depo. (April 14, 2009) 156:4 – 17 (Exhibit 1)].

381730

Dissemination of information regarding off-label uses (as opposed to "marketing")[2] is permissible under the federal regulatory scheme but specific narrow requirements must be met. Although a manufacturer may disseminate written information concerning the "safety, effectiveness, or benefit of a use not described in the labeling for an approved drug," the information must not "pose a significant risk to the public health" or be "false or misleading" and may only be disseminated to specific recipients, such as health care practitioners. *See* 21 C.F.R. §§ 99.101, 99.105. The information regarding an off-label use, *inter alia*, must also be balanced and provide a prominent statement disclosing the fact that the "'information concerns a use that has not been approved by the Food and Drug Administration.'" *See Id.* at § 99.103. Sixty days before dissemination of off-label written information, the information must be submitted to the FDA for approval. *Id.* at § 99.102.

**B.     Off-label use of Trasylol was financially significant for Bayer.**

For Trasylol, a significant portion of the use/market was off label. According to Stan Horton, the U.S. Marketing Director for Trasylol, although the percentage changed over the years, most of the time, about **fifty percent** of Trasylol sales were for off label uses. [Horton Depo (April 14, 2009) 158:20 – 159:14 (Exhibit 1)].

Although cleverly characterized as "studies" and not marketing, Bayer funded studies on off-label uses and hired consultants whose purpose was to help determine areas to "expand the market." *Id.* at 160:3 – 15; 163:21 – 166:2. The complicated involvement between marketing and market expansion for off-label indications is illustrated by the following exchange with Bayer's Marketing Director for Trasylol, Stan Horton, when discussing a document

---

[2] The sales representative who called on Anna Bryant's cardiac surgeon testified that when Bayer provided her with a document labeled "disseminate only", she could "hand it out to customers, but you can't talk about it. Like, you can leave it behind." [Sheffield-Motika Depo. 124:11 – 25 (Exhibit 2)].

(BAY04923426) entitled "Trasylol Use in CABG Surgery Could Be Increased, percent of total

CABG procedures; 2003." Page 2 of that document is entitled "Off-Label Trasylol Usage Could

Also Be Increased."[3]

Q.    Did Bayer ever conduct studies to expand the usage of -- the off-label usage of Trasylol?

[objection omitted]

A:    No, we would do studies -- our Phase IV committee would fund studies in other areas as pilots to give us basic information in which we might make decisions on sizing trials and doing different trials if the clinical group had deemed it important.

Q:    Well, here's my question. Why is Bayer hiring consultants to advise them on how to increase off-label usage if they don't intend upon marketing off label?

[objection omitted]

A:    Well, Bayer would not have proceeded down a road of off label.  **There may be from this you could identify certain areas and procedures that might be of marketed value to do additional studies to go after an indication.**  I don't know what the full impact of this report is, but -- I mean, from what I would say that they're trying – the presentation that they were trying to make was that **heart transplants were 2 percent, we were getting that, it's a small market.  Valves was [sic] a larger market.  And then liver transplant, orthopedic, vascular and other intra-abdominal and other areas in gynecology and urology, which were high blood loss areas, might be additional areas to conduct studies to see the effect in patients.**

Q.    Here's my concern:  You've already testified and you told me that **off-label marketing is unethical.  True?**

[Objection omitted]

**A:    True.**

Q.    And knowing that it's unethical, for some reason, according to you, Bayer is sending or hiring consultants to advise them on off-label marketing.  Doesn't that seem unethical as well?

---

[3] Significantly, despite assertions that studies are not marketing, on page 3 of Exhibit 3 (BAY04923426 - 28), clinical studies are included in the graph of promotional spending.  The document indicates that the source of the information is Bayer's brand plan.

[objection omitted]

A:      I don't know what the whole form is, but **I think that they probably were -- sought to advise us on how to expand the overall market for Trasylol**.  I mean, the first page here, which you have, is in CABG surgery.  So at least there was on-label as well as off-label advice given, so... (ellipsis in original).

[Horton (April 14, 2009) 163:21 – 166:2 (emphasis added) (Exhibit 1)].

Dr. Horton apparently had no reasonable explanation for the second page of the document, where marketing to increase off-label sales was clearly the issue.  [See BAY04923426 - 28 at 2 (Exhibit 3)].

**C.      Off-label promotion by the Bayer sales representatives.**

Because Defendants have not specified additional documents or testimony, Plaintiff can only respond with examples.  Thus, for example, Plaintiff Anna Bryant's heart surgeon was called upon on Bayer's behalf by Sales Representative Katherine Sheffield-Motika.  As part of her sales duties, Ms. Sheffield-Motika touted the purported "benefits of Trasylol" over Amicar, the competing much cheaper medication.  Sheffield- Motika Depo 55:3 – 56:1 (Exhibit 2).  In that regard, she was trained to inform doctors regarding Trasylol's alleged affect on SIRS, systemic inflammatory response syndrome and that to achieve protection from SIRS, the full dose of Trasylol was necessary.[4]  *Id.*; 114 – 118:13.

This sales representatives training, to discuss SIRS, particularly in relation to full dose, was in violation of the regulatory scheme.  In fact, in 1997, Bayer received a letter from the FDA, called a DDMAC letter, admonishing them for not having been approved for anti-inflammatory claims.  1997 DDMAC letter (Exhibit 4).  Regardless, those claims were still part of the training for sales representatives when Plaintiff's surgery occurred.  In fact, the label in

---

[4] Plaintiff received a full dose.

effect in 2006 when full dose Trasylol was administered to Plaintiff did NOT include anti-inflammatory action as one of the indications for use.  Trasylol label (Exhibit 5).

Instead, as noted by Plaintiffs' expert, Dr. Suzanne Parisian,

> The promotion[5] falsely implies to physicians that Trasylol conveys a more beneficial dose-dependent effect o the kidney, i.e. the use of the full dose having greater anti-inflammatory benefits for a patient than the half-dose.  However, there is no adequate scientific support for that misleading marketing claim. The Bayer pieces also imply that beneficial effects of Trasylol are dose-dependent and a greater effect will be obtained by administration of the full-dose. (Harrison, 11/19/08, p. 529-531).  There is no scientific support that was provided to FDA to support the claim that a full-dose provides a more beneficial effect for a CABG patient than a half-dose.  In fact, there is information in Bayer's own clinical studies to support that just eh opposite is true, namely that the risk for a patient increases with a larger full dose (BAY00939855-4); (BAY032662230-31).

[Excerpt from report of Dr. Parisian (Exhibit 6)].

### D.     Bayer's anticipated testimony regarding the company.

Plaintiff anticipates that Bayer witnesses will repeatedly testify that Bayer values patient safety or that their primary purpose is patient health or safety.  For example, despite having been trained to promote the off-label alleged inflammatory effect, particularly with full dose, and being provided promotional materials regarding SIRS, Katherine Sheffield-Motika, Bayer Sales Representative to Plaintiff Anna Bryant's treating heart surgeon testified that she believed in Bayer's mission statement that "patient safety is the first priority" and that she would not sell the product if she did not feel that way.  [Sheffield-Motika Depo 106:23 - 107:5 (Exhibit 2)].  In fact, she testified that, believing in the information provided by Bayer, she sold Trasylol "as if her family members were going to use it."  *Id.* at 107:6 - 8; 45:18 - 46:17.

---

[5] Dr. Parisian is specifically referring to the Bayer promotional piece (attached hereto as Exhibit 7).  This promotional piece is only an example of the Bayer's off-label SIRS marketing. (another example attached hereto as Exhibit 8).

Likewise, Edwin Tucker, Vice President of Pharmacovigilance for Bayer, the person responsible for processing safety information in the United States, testified that his "primary role is for patient safety and to ensure that we represent information with regards to safety to our prescribers and to our patients to maximize the patient safety." [Tucker Depo 13:4 – 8 (Exhibit 9)]. He further testified:

> Q.    So, if I'm looking at your job, **the most important thing in your job is patient safety.  Fair statement?**
>
> **A.    I would regard that as my primary role, yes.**
>
> Q.    Okay. At Bayer, what's more important, profits or patient safety?
>
> A.    We don't differentiate between those.  **Patient safety is our primary goal**.
>
> Q.    So, when you say you don't differentiate between them, does that mean that profits are right up there with patient safety?
>
> A.    No.  **Patient safety is our primary goal**.

[Tucker Depo. 35:13 – 36:5 (emphasis added) (Exhibit 9)].

Further, in 2004, in addressing the importance of reporting adverse events, Dr. Tucker issued an email, as Head of Drug Safety for Bayer Corporation U.S., describing the company "as an ethical company, we are dedicated to patient safety and ensuring compliance with all regulations relating to patient safety."  [BAYCS00264891 – 92 (Exhibit 10)].  This email was sent to Katherine Sheffield-Motika, the Trasylol sales representative who called on Plaintiff Bryant's cardiac surgeon.

Likewise, Pam Cyrus, former Bayer Director of Medical Science and current Bayer Vice President, U.S. Medical Affairs, testified:

> Q.    Okay.  Bayer has an obligation to make sure that patient safety is its number one priority, correct?
>
> A.    It has an obligation to patient safety, yes.

8

[Cyrus Depo (Vol. I) 87:25 – 88:4 (Exhibit 11)].

These are but a few examples of the statements Plaintiffs anticipate that Bayer will make regarding Bayer's emphasis on patient safety.

### E.    Relevancy.

#### 1.    Motive and state of mind.

Given the significant percentage of sales consistently attributable to off-label uses (fifty percent), Bayer's motive and state of mind regarding profits over safety and regulatory compliance is clear.  Plaintiff should be able to introduce evidence of the off-label marketing efforts to demonstrate Bayer's profit based motives.

#### 2.    Impeachment.

As demonstrated from the above examples of testimony of just three of Bayer's employees, including the sales representative from the Bryant case (and the e-mail sent to that sales representative), it is reasonable to expect that Bayer will elicit testimony or seek to introduce evidence that Bayer puts patient safety first or that patient safety is Bayer's priority. The evidence regarding improper off-label marketing for uses which are unapproved and for which safety and efficacy have not been demonstrated is necessary to rebut that evidence.  To deny such impeachment to Plaintiff would allow Bayer to mislead the jury and be manifestly unfair to Plaintiff.

#### 3.    Punitive damages.

Evidence regarding Defendants' disregard for safety by virtue of its off-label marketing is both relevant and admissible towards punitive damages.  For brevity, Plaintiff hereby incorporates by reference as if set forth in full Plaintiff's Response to Defendants' Motion to exclude Evidence, Argument, and Testimony not Relevant to the Assessment of Punitive

381730

Damages.  As discussed therein, evidence of Bayer's activities which harmed or with disregard for safety is both relevant and admissible.

## III.

### THE ONLY SPECIFIC DOCUMENTS REFERENCED BY DEFENDANTS

This motion is another example of the fundamental failure of most of Defendants' motions *in limine*.  While Defendants do identify two documents from Plaintiff Anna Bryant's exhibit list, numbers 77 and 297, the remainder of Defendants' motion is vague and not specific, instead referring to documents in a general category that apparently encompasses all documents containing any reference to surgeries other than cardiopulmonary bypass graft surgery.

With regard to those two specific exhibits, in the three cases presently before the Court, Plaintiff does not intend to offer number 77 regarding the Bayer sponsored Aprotinin in Liver Transplantation study in the Netherlands.

Exhibit 297, however, is a different matter.  This exhibit is a series of emails exchanged in October 2004 between Bayer employees Andrea Nadel and Jennifer Maurer and Dr. Robert Posten regarding an article that Dr. Posten submitted to Bayer for review, comment, and approval prior to submission to a peer reviewed publication in the United States:  Circulation. The article is regarding the off label use of Trasylol in OPCAB or off pump coronary bypass surgery.  These 2004 communications indicate the extremes that Bayer went to, prior to Plaintiff's surgery, to increase use and market for their cash cow, Trasylol.  Such evidence is clearly relevant as discussed above and should not be excluded as unduly prejudicial.  Instead, if necessary, a limiting instruction would cure any prejudice or confusion.

381730

## IV.
## MORE PROBATIVE THAN PREJUDICIAL

Bayer's argument to exclude under Rule 403 is groundless.  The language of Rule 403 is clear:  "Relevant evidence will not be excluded unless its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  The evidence regarding off-label marketing and promotion is necessary to demonstrate Bayer's financial incentive and motive for placing profits over patient safety.  Clearly, these are not facts that could mislead or confuse anyone, but instead is the truth that shows Bayer's philosophy that the risk to their patient population is outweighed by the monetary gain from marketing and selling Trasylol off-label (which accounted for fifty percent of total sales).  Therefore, the probative value of such evidence far outweighs any the danger of misleading or confusing the jury.

While it should go without saying that all evidence is adverse to some party and thus prejudicial, evidence is only inadmissible if it creates "undue" prejudice so that it threatens an injustice. *See Bendi v. McNeil-P.P.C., Inc.,* 6 F.3d 1378, 1385 (4th Cir. 1995) (explaining how the probative values of certain reports was not outweighed by the danger of unfair prejudice, because the reports were highly probative on the issue of notice and defendant was free to offer testimony rebutting their significance).  It would certainly be an injustice if Plaintiff was not allowed to offer evidence regarding Bayer's off-label marketing for the relevance discussed above.  The danger of causing any unfair prejudice in this instance does not substantially outweigh the clear probative value of the (presumed) evidence challenged by Bayer.  Thus, it should be admitted.

381730

## V.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff asks that the Court deny

Defendants' Motion and allow Plaintiff to proceed to trial with all relevant evidence.

**PLAINTIFF**

**By Counsel**


*/s/ Jonathan D. Boggs*
P. Gregory Haddad, Esq.
*ghaddad@baileyglasser.com*
Kerrie Wagoner Boyle, Esq.
*kboyle@baileyglasser.com*
Jonathan D. Boggs, Esq. (FL Bar #0106305)
*jboggs@baileyglasser.com*
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*

David F. Miceli
*dmiceli@simmonsfirm.com*
Simmons, Browder, Gianaris, Angelides & Barnerd, LLC
119 Maple Street, Suite 201
Carrollton, GA 30117
770-834-2122
770-214-2622

Leslie Ann Caldwell, Esq.
*lac@lusklaw.com*
LUSK, CALDWELL & DEAN P.C.
2101 Highland Avenue, Suite 410
Birmingham, Alabama 35205
(205) 933-7090 Telephone
(205) 933-7099 Facsimile

381730

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-1928-MIDDLEBROOKS/JOHNSON**

**IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928**

**This Document Relates to:
LINDA MORDECAI v. BAYER CORPORATION, et al.,
Case No. 9:08-civ-80781-DMM**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of May, 2010, the foregoing ***PLAINTIFF'S
RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE
EVIDENCE AND ARGUMENT REGARDING OFF-LABEL PROMOTION OF TRASYLOL***
was filed with the Clerk of the Court using the CM/ECF system which will send notification of
such filing to the following CM/ECF participants:

Brian A. Wahl
Bradley, Arant, Rose & White, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203

Phillip S. Beck
Bartlit Beck Herman Palenchar & Scott LLP
Courthouse Place
54 West Hubbard Place, Suite 300
Chicago, IL 60610

Patricia Elaine Lowry
Barbara Bolton Litten
Squire Sanders & Dempsey LLP
777 S Flagler Drive, Suite 1900
West Palm Beach, FL 33401-6198

Elizabeth C. Curtin
Sidley Austin LLP
1 S Dearborn Street
Chicago, IL 60603

381730

Richard K. Dandrea
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

Daniel G. Wyllie
Dykema Gossett
400 Renaissance Center, 35th Floor
Detroit, MI 48243

*/s/ Jonathan D. Boggs*
Jonathan D. Boggs, Esq. (FL Bar #0106305)
*jboggs@baileyglasser.com*

381730