## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

**IN RE: TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928**

**This Document Relates To:**

**MORDECAI V. BAYER CORPORATION, ET AL.,
Case No. 9:08-cv-80781**

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENT <u>REGARDING UNRELATED ALLEGED WRONGFUL ACTS</u>

Plaintiff respectfully submits this response in opposition to Bayer's Motion *In Limine* to

exclude Evidence or Argument regarding Unrelated Alleged Wrongful Acts.

### I.

### <u>ARGUMENT AND AUTHORITIES.</u>

**A.      Introduction.**

"'Relevant evidence' means evidence having <u>any tendency</u> to make the existence of any

fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence."  Fed. R. Evid. 401.  In applying Rule 403 to relevant evidence

alleged to be unduly prejudicial, the Court should "'look at the evidence in a light most favorable

to its admission, maximizing its probative value and minimizing its undue prejudicial impact.'"

*United States v. Jernigan*, 341 F.3d 1273, 1284 (11th Cir. 2003)(quoting *United States v. Tinoco*,

304 F.3d 1088, 1120 (11th Cir. 2002)(quoting *United States v. Elkins*, 885 F.2d 775, 784 (11th

Cir. 1989)).  A district court's decision not to exclude evidence pursuant to Rule 403 as unduly

1

prejudicial is subject to review under an abuse of discretion standard.  *Jernigan*, 341 F.3d at 1284.

Defendants' motion fails because the events Bayer characterizes as "unrelated" and "allegedly wrongful" is relevant and admissible for three primary reasons:  1)  for impeachment of Bayer's witnesses pursuant to Rule 609;  2) Bayer's state of mind and financial motive regarding marketing and the desire and need to profit from Trasylol, sometimes referred to by Bayer's employees as it's "cash cow;"[1]  3) to show Bayer's intent and common plan or scheme pursuant to Rule 404(b); 4) as evidence punitive damages because regardless of risks, as is its habit and custom, Bayer aggressively marketed its dangerous drug, putting profits over patient safety.

**B.     Defendants' Criminal History.**

Defendants are no strangers to criminal charges and convictions.  A sampling of these convictions includes the following:

In 2001, Bayer paid $14 million to end a Justice Department investigation of price manipulation and Medicaid fraud arising from its marketing and sales practices.[2]

In 2003, Bayer Corporation was charged with and pled guilty to 21 U.S.C. sections 331(p), 333(a)(2)(1), and 360(j), "failure to list drug with the FDA" in connection with the

---

[1] Trasylol is derived from bovine lung tissue, apparently leading Bayer employees to use the cow reference.
[2] In re Pharmaceutical Industry Wholesale Price Litigation; No. 01-cv-12257; In the United States District Court, District of Massachusetts.

marketing and sale of its prescription medication Cipro.[3]  The guilty plea included an assessment of $400 and a fine of $5,590,800 against Bayer Corporation.

In December 2004, Bayer Corporation and Bayer AG, along with two Bayer executives, pled guilty by voluntary agreement to conspiracy, the purpose of which was to suppress and eliminate competition through pricing of the companies' adipic-based polyester polyols sold in the United States and elsewhere.[4]   The sentence at to Bayer Corporation was a fine of $33,000,000.

2007 was a particularly busy year for Bayer's criminal counsel.  In 2007, Bayer Corporation was charged with violations (occurring from 2003 forward) of a 1991 cease and desist order[5] that prohibited certain misrepresentations and unsupported claims made in connection with marketing and sales of multivitamin and dietary supplement products.[6]   Bayer again agreed to an adverse judgment and this time, was assessed a penalty of $3,200,000.

Also in 2007, Bayer Corporation entered into an Agreed Final Judgment regarding improprieties in connection with the marketing and sale of its prescription medication Yaz.[7]

Again in 2007, Bayer entered into another Final Judgment and Agreed Permanent Injunction, this time in connection with marketing conduct from 1997 to 2001 involving the prescription medication Baycol.[8]

---

[3] United States of America v. Bayer Corporation; No. 03-cr-10118; In the United States District Court, District of Massachusetts.  Judgment was entered May 14, 2003.
[4] United States of America v. Bayer AG; No. CR 04-0331; In the United States District Court, Northern District of California, San Francisco Division.  Plea Agreements filed December 8 and 9, 2004 (Bayer AG) and May 24, 2005 (Bayer Corporation).
[5] The cease and desist order was against Miles Inc., Bayer Corporation's predecessor.
[6] United States of America v. Bayer Corporation; No. 07-01; United States District Court, District of New Jersey.  Consent Decree signed January 3, 2007.
[7] State of Tennessee v. Bayer Corporation; No. 07C227; In the Second Circuit Court for Davidson County, Tennessee, Twentieth Judicial District at Nashville.  [Exhibit 1].

Bayer also entered into a Consent Decree in 2007[9] regarding violations of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.  The allegations arose from EPA response actions that commenced in 1990 at the Himco Dump Superfund Site in Elkhart, Indiana.

In 2008, Bayer Healthcare LLC again reached another settlement with the Department of Justice.  This time, the allegations arose from Bayer's marketing efforts with Medicare between 1998 and 2002 for its diabetes care supplies.

**C.     Impeachment of Bayer's anticipated testimony regarding the company.**

Plaintiffs anticipate that Bayer witnesses will repeatedly testify that Bayer is a good company, follows the law, or that their primary purpose is patient health or safety.  Edwin Tucker, Vice President of Pharmacovigilance for Bayer, the person responsible for processing safety information in the United States, testified that his "primary role is for patient safety and to ensure that we represent information with regards to safety to our prescribers and to our patients to maximize the patient safety." [Exhibit A, Tucker Depo. At 13:4 – 8 (emphasis added)].  He further testified:

> Q.     So, if I'm looking at your job, the most important thing in your job is patient safety.  Fair statement?
>
> A.     I would regard that as my primary role, yes.
>
> Q.     Okay. At Bayer, what's more important, profits or patient safety?
>
> A.     We don't differentiate between those.  **Patient safety is our primary goal**.

---

[8] State of Texas v. Bayer Corporation; No DC-07-05554; In the District Court of Dallas County, Texas, 14th Judicial District.  [Exhibit 2].
[9] United States of America and State of Indiana v. Bayer Healthcare LLC, et al; No. 2:07-cv-304; In the United States District Court for the Northern District of Indiana, South Bend Division.

4

> Q.      So, when you say you don't differentiate between them, does that mean that profits are right up there with patient safety?
>
> A.      No.  **Patient safety is our primary goal**.

[*Id.* at 35:13 – 36:5 (emphasis added)].

Further, in 2004, in addressing the importance of reporting adverse events, Dr. Tucker issued an email, as Head of Drug Safety for Bayer Corporation U.S., describing the company "as an ethical company, we are dedicated to patient safety and ensuring compliance with all regulations relating to patient safety."  [Exhibit B (BAYCS00264891 - 92)].  This email was sent to Bayer sales representatives who called on doctors to market and increase sales of Trasylol.

Likewise, Pam Cyrus, former Bayer Director of Medical Science and current Bayer Vice President, U.S. Medical Affairs, testified:

> Q.      Okay.  Bayer has an obligation to make sure that patient safety is its number one priority, correct?
>
> A.      It has an obligation to patient safety, yes.

[Exhibit C, Cyrus (Vol. I) 87:25 – 88:4].

These are but a few examples of the statements Plaintiffs anticipate that Bayer will make regarding Bayer's emphasis on patient safety or Bayer's compliance with legal requirements.

Defendants citation to *Walden v. Georgia-Pacific Corp*., does not apply to prohibit impeachment of the type of testimony quoted above.  In Walden, an employment law case, the plaintiff sought to impeach corporate witnesses, generally, with their employer corporation's conviction for tax evasion.  The testimony by the employees was entirely unrelated to tax evasion.  In the instant case, the convictions are admissible to impeach corporate witnesses who testify that the company is a "good company" or "places patient safety over profits" or "does not

violate FDA safety mandates when marketing" or other testimony similar to that quoted above. See Fed. R. Evid. 405 (once a party "opens the door" to reputation or character evidence on direct examination, inquiry is allowed into "relevant specific instances of conduct" that rebut or impeach that evidence).

Additionally, "a corporation's vicarious representations, through a representative, can be impeached by evidence of a prior corporate conviction." *Stone v. C.R. Bard, Inc*., 2003 U.S. Dist. LEXIS 22035 (S.D.N.Y. Dec. 8, 2003). As observed by the Eastern District of Tennessee,

> Because a corporation speaks through its officers, employees, and other agents, however, it stands to reason a corporation can be a vicarious witness. The Court concludes, therefore, Rule 609 allows the use of a corporation's felony conviction to impeach the corporation's vicarious testimony.

*Hickson Corp. v. Norfolk S. Ry. Co*., 227 F. Supp. 2d 903, 907 (E.D. Tenn. 2002).

**D.      Criminal Convictions are Admissible under Rule 404(b).**

Extensive United States Supreme Court case law explicitly states that "corporations should be treated as natural persons for virtually all purposes of constitutional and statutory analysis." *See Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 667 (1979). Furthermore, unless the statute indicates otherwise, the word "person", "for purposes of statutory construction…is normally construed to include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." *Id.; City of Oklahoma City v. Tuttle,* 471 U.S. 808, 835 (1985); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 663, 98 S.Ct. 2018, 2021 (1978); *Owen v. City of Independence,* 100 S.Ct. 1398, 1410, 445 U.S. 622, 639 (1980). Moreover, there is no wording or phrase within Rule of Evidence 404(b) which would lead the average, reasonable person to believe that "person" cannot be construed to

include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.  Therefore, Rule of Evidence 404(b) applies to the Defendants in the instant action.

Defendants inaccurately cite to *Miller v. Ford Motor Co*. as mandating exclusion of the Bayer's wrongful acts in this case. See Defendants' Motion at 3. In *Miller*, plaintiffs sought admission of statistics arising from other, unrelated rollover accidents.  In the instant case, Bayer's prior wrongful acts arise from its sales and marketing conduct – the very conduct at issue in this case.  *See Estate of Miller v. Ford Motor Co*., 2004 U.S. Dist. LEXIS 29846 (M.D. Fla. July 22, 2004).  Thus, *Miller* is inapplicable.

### E.      Punitive damages.

Evidence regarding Defendants' disregard for safety, as evidenced by its criminal convictions arising from its sales and marketing activities, is both relevant and admissible towards punitive damages.  For brevity, Plaintiffs hereby incorporate by reference as if set forth in full Plaintiffs' Response to Defendants' Motion to exclude Evidence, Argument, and Testimony not Relevant to the Assessment of Punitive Damages.

### F.      More probative than prejudicial.

Bayer's argument to exclude under Rule 403 is groundless.  The language of Rule 403 is clear:  "Relevant evidence will not be excluded unless its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  The evidence regarding convictions for improprieties arising from Defendants' marketing and promotion is necessary to demonstrate Bayer's financial incentive and motive for

placing profits over patient safety and habit and practice of placing profits over patient safety. Clearly, these are not facts that could mislead or confuse anyone, but instead is the truth that shows Bayer's philosophy that the risk to their patient population is outweighed by the monetary gain and Bayer's habit and practice of acting pursuant to that philosophy. Therefore, the probative value of such evidence far outweighs any the danger of misleading or confusing the jury.

While it should go without saying that all evidence is adverse to some party and thus prejudicial, evidence is only inadmissible if it creates "undue" prejudice so that it threatens an injustice. *See Bendi v. McNeil-P.P.C., Inc.,* 6 F.3d 1378, 1385 (4th Cir. 1995) (explaining how the probative values of certain reports was not outweighed by the danger of unfair prejudice, because the reports were highly probative on the issue of notice and defendant was free to offer testimony rebutting their significance).  It would certainly be an injustice if the Plaintiffs were not allowed to offer evidence regarding Bayer's improper activities for the relevance discussed above.  The danger of causing any unfair prejudice in this instance does not substantially outweigh the clear probative value of the evidence challenged by Bayer.  Thus, it should be admitted.

## II.

## <u>PRAYER</u>

Plaintiffs ask that the Court deny Defendants' Motion and allow Plaintiffs to proceed to trial with all relevant evidence.

**PLAINTIFF**

**By Counsel**

*/s/ Jonathan D. Boggs*
P. Gregory Haddad, Esq.
*ghaddad@baileyglasser.com*
Kerrie Wagoner Boyle, Esq.
*kboyle@baileyglasser.com*
Jonathan D. Boggs, Esq. (FL Bar #0106305)
*jboggs@baileyglasser.com*
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*

David F. Miceli
*dmiceli@simmonsfirm.com*
Simmons, Browder, Gianaris, Angelides & Barnerd, LLC
119 Maple Street, Suite 201
Carrollton, GA 30117
770-834-2122
770-214-2622

Leslie Ann Caldwell, Esq.
*lac@lusklaw.com*
LUSK, CALDWELL & DEAN P.C.
2101 Highland Avenue, Suite 410
Birmingham, Alabama 35205
(205) 933-7090 Telephone
(205) 933-7099 Facsimile

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-1928-MIDDLEBROOKS/JOHNSON**

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:
LINDA MORDECAI v. BAYER CORPORATION, et al.,
Case No. 9:08-civ-80781-DMM

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of May, 2010, the foregoing *PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING UNRELATED ALLEGED WRONGFUL ACTS* was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

> Brian A. Wahl
> Bradley, Arant, Rose & White, LLP
> One Federal Place
> 1819 Fifth Avenue North
> Birmingham, Alabama 35203

> Phillip S. Beck
> Bartlit Beck Herman Palenchar & Scott LLP
> Courthouse Place
> 54 West Hubbard Place, Suite 300
> Chicago, IL 60610

> Patricia Elaine Lowry
> Barbara Bolton Litten
> Squire Sanders & Dempsey LLP
> 777 S Flagler Drive, Suite 1900
> West Palm Beach, FL 33401-6198

> Elizabeth C. Curtin
> Sidley Austin LLP
> 1 S Dearborn Street
> Chicago, IL 60603

Richard K. Dandrea
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

Daniel G. Wyllie
Dykema Gossett
400 Renaissance Center, 35th Floor
Detroit, MI 48243


*/s/ Jonathan D. Boggs*
Jonathan D. Boggs, Esq. (FL Bar #0106305)
*jboggs@baileyglasser.com*