UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE: TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates To:

MORDECAI V. BAYER CORPORATION, ET AL.,
Case No. 9:08-cv-80781

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT REGARDING
ADVERSE EVENT REPORTS TO PROVE CAUSATION OR COMPARATIVE RISK

**COMES NOW** Plaintiff and files this Plaintiff's Opposition to Defendants' Motion in Limine to Exclude Evidence, Testimony, and Argument Regarding Adverse Event Reports to Prove Causation or Comparative Risk and show the Court as follows:

I.

INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN
PLAINTIFF'S CONCURRENTLY FILED OPPOSITION

In the interest of brevity and to avoid burdening the Court with duplicative briefing, Plaintiff hereby incorporates by reference Section I of "Plaintiff's Opposition to Bayer's Motion to Exclude Evidence and Argument Regarding Irrelevant Marketing Materials," setting forth the appropriate standards for a motion *in limine*, including the requirement that the motion state with specificity the evidence Bayer[1] seeks to exclude.

---

[1] Defendants Bayer Healthcare Pharmaceuticals Inc. (as successor in interest to Bayer Pharmaceutical Corporation), Bayer HealthCare LLC, Bayer AG, and Bayer Schering Pharma AG (as successor in interest to Bayer HealthCare AG), are referenced collectively throughout this opposition as "Bayer."

## II.

## SUMMARY OF THE ARGUMENT

Bayer posits that adverse event reports (AERs) should be excluded on three grounds: (1) they are inadmissible to prove medical causation or comparative risk, (2) they are hearsay, and (3) their probative value is substantially outweighed by the risk of unfair prejudice. Each of these arguments fails.

Numerous courts have denied motions *in limine* seeking to exclude AERs. That is because, while AERs alone may not enjoy general acceptance as a *sole* support for causation, they are admissible when used together with epidemiological and scientific study evidence, as part of the picture on causation. That is how they are being used in this case. Moreover, even if AERs were not admissible on the issue of causation, AERs have been many-times admitted to demonstrate the drug maker's awareness of safety issues and as evidence relevant to the question of whether the drug manufacturer complied with its duties to evaluate, investigate, report and respond to safety signals. AERs, and the manner in which they were handled by Bayer, are also relevant on the issue of punitive damages. Bayer's motion *in limine* does not dispute that the AERs are relevant and admissible on the issues of (1) notice, (2) whether Bayer responded adequately to safety concerns, and (3) punitive damages. Because evidence and argument regarding AERs is undisputedly relevant on these issues, and is neither hearsay nor unduly prejudicial, Bayer's motion *in limine* to exclude evidence and arguments regarding AERs should be denied.

## III.

## LEGAL ARGUMENT

A.   **BAYERS' MOTION IN LIMINE FAILS FOR LACK OF SPECIFICITY.**

Bayer's motion fails at its outset for a lack of specificity.  Bayer identifies only four (4) AER's (and, even then, does not discuss any particulars of those four AERs).   Yet, Bayer requests wholesale exclusion of "adverse event reports or case studies involving Trasylol." Consequently, the motion should be denied for lack of specificity.  *In re Vioxx Prods. Liab. Litig.,* 2005 WL 3164254 (E.D. La. 2005)(denying motion for limine to exclude AERs as "too broad and vague").

B.   **NUMEROUS COURTS HAVE DENIED MOTIONS IN LIMINE SEEKING TO EXCLUDE ADVERSE EVENT REPORTS.**

Courts have routinely denied motions *in limine* seeking to exclude evidence of adverse event reports. *Crawford v. Muscletech Research & Development, Inc.,* 2002 WL 31852828, *1 (W.D. Okla., Oct. 10, 2002)(denying motion *in limine* to exclude "evidence, testimony, references to or reliance on adverse event reports, case studies and articles based thereon…"); *In re Vioxx Prods. Liab. Litig.,* 2005 WL 3164254 (E.D. La. 2005)(denying motion for limine to exclude AERs as "too broad and vague"); *Meyerson v. Walgreen Co.,* 2006 WL 5249740 (S.D.Fla.)(May 18, 2006) (denying motion in limine to preclude introduction of adverse event reports); *Cona v. Merck & Co.,* Inc., 2006 WL 4948951 *9 (N.J. Super. L. Div 2006); *Meyerson v. Walgreen Co.*, 2006 WL 5249740 (S.D.Fla.)(May 18, 2006) (denying motion *in limine* to exclude AERs while noting that the determination of whether particular uses of AERs are improper "may be addressed at trial);  *See also In re Fosamax Prods. Liab. Litig.,* 645 F. Supp. 2d 164, *200 (S.D.N.Y, July 27, 2009) (deferring determination on motion *in limine* until trial because issues of admissibility and weighing of prejudice "may depend on case specific

circumstances"). This Court should follow the lead of the many courts that have denied motions *in limine* seeking to exclude AERs.

C. **ADVERSE EVENT REPORTS ARE RELEVANT AND ADMISSIBLE TO SHOW CAUSATION, NOTICE, AND FAILURE TO PROPERLY ADDRESS SAFETY RISKS RELATED TO TRASYLOL.**

The real gravamen of Bayer's motion *in limine* is the question of whether or not AER's are probative of causation. The short answer is that they are. But even if they were not, that fact would not warrant the blanket exclusion of all AERs because the AERs are not offered solely for the purpose of proving causation. Plaintiffs offer AERs to show (1) Bayer's notice and awareness of safety signals regarding Trasylol, (2) Bayer's failure to properly warn, evaluate, investigate and resolve safety risks concerning Trasylol, (3) that Bayer is liable for punitive damages. Bayer does not contest the relevance or admissibility of the AERs when used for any of these purposes.

1. **AERs Are Admissible To Show That Bayer Had Notice Of "Safety Signals" Requiring Further Investigation And Action.**

Even if the AERs were not admissible to show causation (which they are), Plaintiffs intend to offer AERs to prove, among other things, notice and that Bayer failed to warn or properly investigate, evaluate, and resolve safety risks. Bayer's arguments for excluding AERs focus *solely* on the relevance of AERs on the issue of causation. Bayer misses the point. AERs are admissible for a variety of non-causation reasons; including notice and punitive damages. *Smith v. Wyeth-Ayerst Laboratories Company*, 278 F. Supp. 2d 684,701 (evidence relevant to standard of care); *Cona v. Merck & Co.,* Inc., 2006 WL 4948951 *9 (N.J. Super. L. Div 2006) (evidence relevant to prove notice and failure to warn or properly investigate, evaluate, and resolve risks); *Martinkovic,* 1987 WL 28400 *7 (evidence relevant to knowledge of adverse reaction); *O.L. Mauldin*, 697 F.2d. 644, 648 (evidence relevant to manufacturer's awareness of

4

problems associated with drug); S*ee also, Ramos v. Liberty Mutual Insurance Co.,* 615 F.2d 334, 398 similar accidents relevant to notice, magnitude of danger, and standard of care).

Bayer's treatment and handling of AERs is important in this case. Pharmaceutical companies conduct post-marketing surveillance as a part of their responsibility to maintain a safety profile for a specific drug. AERs fill a significant role in that process. [Guidance for Industry: Good Pharmacovigilance Practice and Pharmacoepidmiologic Assessment, U.S. Dept. of Health and Human Service, Food and Drug Administration, Center for Drug Evaluation and Research (CDER) and Center for Biologics Evaluation and Research (CBER)(March 2005) (attached hereto as Exhibit "A")]. Over four million AERs have been filed since the FDA began collecting the reports. [O'Connor, N., *FDA Boxed Warnings: How to Prescribe Drugs Safely*, American Family Physician, p. 2 (Feb. 1, 2010) (attached hereto as Exhibit "B")]. In fact, it is generally acknowledged that drug safety concerns are "typically identified through the adverse reporting system." *Id.*

Because AERs are reported by health professionals on the front lines of patient care, they are significant as a signal to drug companies about potential problems with drugs that may require further research, additional warnings or other action. In other words, AERs are the mechanisms by which drug companies learn of "signals" that there may be an issue with a drug and are part of the information on which safety decision are to be made.[2] Thus, AERs are a critical piece of Plaintiffs proof to show "what Defendants knew and when did they know it." The extent of Bayer's knowledge regarding the issues associated with Trasylol and whether Bayer acted in accordance with the applicable standards of care after learning of important AER information is one of the liability issues in this case. AERs are probative on this issue.

---

[2] AERs are to be reported by the manufacturer to the Secretary of Health and Human Services and/or FDA pursuant 21 C.F.R. §310.303(a); 21 C.F.R. §314.80(b); 21 C.F.R. §314.80(a); 21 C.F.R. §318.80(c)(1)(i); 21 C.F.R. §314.80(c)(ii); 21 C.F.R. §318.80(c)(2)(i) and 214.80(c)(2)(ii).

Simply stated, AER data is admissible to demonstrate that Bayer had "signals" upon which it should have acted. *In Re Baycol Products Liability Litigation*, 532 F. Supp. 2d 1029 (D.Minn. 2007) ("As Plaintiffs point out, the AER data relevant to this case presented a very strong signal concerning Baycol and its association with rhabdomyolysis, and such evidence may be relevant at trial. It thus follows that Plaintiff's experts may testify as to the existence of this signal"). The AERs in this case will demonstrate that there was a clear "signal" for decades that Trasylol was associated with renal issue, including renal failure. Plaintiff will show that the Defendants negligently failed to investigate and report AER's in a timely and proper manner. Indeed, Bayer acknowledges as early as 1999 and thereafter, receiving "signals" of kidney issues through receipt of AER's. [Ex. C, Monteagudo Depo 250:17-251:18, 319:5-328:13].

      **2.**    **AERs are Admissible to Show that Bayer Failed to Properly Evaluate, Investigate, Warn and Resolve Risks Regarding Trasylol.**

In addition to being probative on the issue of notice, AERs are relevant to whether Bayer acted in conformity with the standard of care. Primarily, the evidence will demonstrate that Bayer manipulated AERs, in particular, Bayer, upon receiving an AER from a physician, changed the described event before forwarding the information to the FDA as a Med. Watch form. For example, in June 2005, Bayer received an AER from a physician describing an event as the patient having increased creatnine and having received dialysis following CABG surgery. The report was later sent by Bayer to the FDA through a Med Watch form indicating "*decreased* creatnine" and which did not mention the patient requiring dialysis at all. [Ex. C, Deposition of Felix Monteagudo, M.D. 2008, ("Monteagudo Depo") 199:17-207:9]. This practice by Bayer is contrary to good reporting practices. [Guidance for Industry: Good Pharmacovigilance Practice and Pharmacoepidmiologic Assessment, U.S. Dept. of Health and Human Service, Food and Drug Administration, Center for Drug Evaluation and Research (CDER) and Center for

Biologics Evaluation and Research (CBER)(March 2005) (attached hereto as Exhibit "A")]. This behavior is highly probative of whether Bayer complied with the standard of care for evaluating, reporting, and responding to safety signals raised by the product it was selling. *Cona*, 2006 WL 4948951 at *9 (AER evidence is relevant to prove notice and failure to warn or properly investigate, evaluate, and resolve risks).[3]

### 3. AERs Are Admissible When Used In Connection With Other Scientific Evidence To Show Causation.

Bayer's blanket assertion that AER's cannot be relied upon to show causation is simply a misstatement of the applicable law. None of the cases urged by Bayer as support for excluding evidence regarding AERs on a motion *in limine*, presented a motion *in limine* context. Instead, the cases Bayer cites arise in a *Daubert* context and are concerned with the issue of whether AER's, *in the absence of other reliable scientific evidence*, can support an expert's causation theory. *E.g. McClain v. Metabolife Int'l Inc.,* 401 F.3d 1233, 1250 (11th Cir. 2005)(finding on Daubert inquiry that AERs were insufficient as the "significant" basis for expert's causation opinion); *In re Accutane Prods. Liab.,* 511 F. Supp. 2d 1288, 1298 (M.D.Fa. 2007)(finding on Daubert inquiry that "anectdotal consumer complaints" were inadequate as support for expert's causation opinion.").

The issue at bar is distinguishable from the cases Bayer cites. First, in the cases Bayer cites the sole issue was whether AERs were adequate to support a causation opinion in a Daubert context. Here, the issue is whether AERs have any relevance to a whole host of issues beyond merely causation (some of which Bayer does not even dispute) including notice, compliance with the standard of care, punitive damages. The cases Bayer cites have no bearing on these other

---

[3] These examples are mere a sampling of the evidence relating to improper investigation and reporting of AER's and of evidence relating to "signals," which Bayer should have properly investigated. Plaintiffs are entitled to bring these issues before the jury for the purpose of determining if Defendants violated the standard of care and properly warned Plaintiffs.

purposes for offering AER evidence. Moreover, even if the inquiry were limited to use of AERs for causation purposes, it must be noted that Courts have not taken issue with the consideration of AER's, *together* with other reliable studies or other data in support of causation theories. *See Giles v. Wyeth, Inc.,* 500 F. Supp. 2d 1048, 1061 (S.D. Illinois 2007).[4] Indeed, Courts have permitted experts to consider adverse event reports and case studies as *part* of the evidence considered when coming to their causation opinions and have admitted such evidence in connection with those opinions. *E.g. In re PPA,* 289 F.Supp.2d at 1242 (allowing expert testimony that was based in part on AER data and finding "significant the sheer volume of case reports, case series and spontaneous reports associating PPA with hemorrhagic stroke to women"). The issue of causation currently is under consideration by the Court with respect to Defendants' various *Daubert* challenges. Plaintiffs' oppositions to those challenges demonstrate that the evidence relied upon by Plaintiffs includes significantly more than AERs.

**4.     AERs are Admissible on the Issue of Punitive Damages.**

AERs are relevant to demonstrate the egregiousness of Bayer's course of conduct and to show that Bayer acted with a conscious disregard for the safety of the Plaintiffs and other consumers. This evidence is directly relevant to the issue of punitive damages.

**D.  EVIDENCE OF ADVERSE EVENT REPORTS IS NOT INADMISSIBLE HEARSAY.**

Bayer's back-up argument is that AERs are inadmissible for "the truth of their content" because they contain inadmissible hearsay. [Bayer's Motion *in Limine*, p. 6]. Bayer's argument fails at the most fundamental level because the AERs are not being offered to prove the truth of the matter asserted. As described above, Plaintiffs intend to offer AERs to prove, among other

---

[4] Defendants' suggestion that the FDA has cautioned about the reliability of AERs and other anecdotal reports does not negate the fact that Defendants had knowledge of such AERs, similar to the injury suffered by Plaintiffs, and failed to exercise its duty to investigate such claims.

things, notice and Defendants' failure to warn or properly investigate, evaluate, and resolve safety risks. *Cona,* 2006 WL 4948951 at *9. The AERs simply are not hearsay when offered for any of these purposes.

Moreover, even if the AERs were hearsay, they fall within recognized exceptions to the hearsay rule. First, AERs are maintained by Defendants as a part of their regular business and so are admissible under the business records exception to the hearsay rule. *See Martinkovic v. Bangash,* 1987 WL 28400 (explaining that receipt of adverse event reports and records maintained of them are admissible against defendants as either records of regularly conducted business under FED. R. EVID. 803(6) or as Defendants' admissions under FED. R. EVID. 801(d)(2); *Cona,* 2006 WL 4948951 at *10. Additionally, AERs are admissible under the exception to the hearsay rule for statements made for purposes of medical diagnosis or treatment because an important purpose of the AER program or clinical investigator reports is to identify whether the cause of adverse reaction is due to ingestion of a drug. FED. R. EVID. 803(4). *Heinzerling v. Goldfarb,* 818 A.2d 345 (N.J. Super. Ct. Law Div. 2002); *Cona,* 2006 WL 4948951 at *10.

**E.   ADVERSE EVENT REPORTS ARE MORE PROBATIVE THAN PREJUDICIAL.**

The AERs are admissible and are probative of issues of notice, knowledge, standard of care and punitive damages. As Defendants are free to offer testimony regarding any deficiencies in the underlying procedures and reliance upon AER's, their probative value is not *substantially* outweighed by undue prejudice. *See Benedi v. McNeil-P.P.C., Inc.,* 66 F.3d 1378, 1385 (4th Cir. 1995) (explaining how the probative value of these reports was not outweighed by the danger of unfair prejudice, because the reports were highly probative on the issue of notice and the Defendant was free to offer testimony rebutting their significance). Further, the time and

testimony that would be necessary for Defendants to deny the four challenged AER's would be minimal, at best, and does not satisfy the level of undue delay required by F<small>ED</small>. R. E<small>VID</small>. 403. *Crawford v. Muscletech Research & Development, Inc.,* 2002 WL 31852828, *1 (W.D. Okla., Oct. 10, 2002)("AERs and case studies challenged by Defendants are more probative than prejudicial in allowing the jury to weigh Plaintiffs' experts' opinions").

Case 9:08-cv-80781-DMM   Document 169   Entered on FLSD Docket 05/16/2010   Page 10 of 13

## IV.

## CONCLUSION

For the foregoing reasons, Defendants' Motion *In Limine* to Exclude Evidence, Testimony and Argument Regarding Adverse Event Reports to Prove Causation or Comparative Risk should be DENIED.

**PLAINTIFF**

**By Counsel**

*/s/ Jonathan D. Boggs*
P. Gregory Haddad, Esq.
*ghaddad@baileyglasser.com*
Kerrie Wagoner Boyle, Esq.
*kboyle@baileyglasser.com*
Jonathan D. Boggs, Esq. (FL Bar #0106305)
*jboggs@baileyglasser.com*
Bailey & Glasser, LLP
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
(304) 342-1110 *facsimile*

David F. Miceli
*dmiceli@simmonsfirm.com*
Simmons, Browder, Gianaris, Angelides & Barnerd, LLC
119 Maple Street, Suite 201
Carrollton, GA 30117
770-834-2122
770-214-2622

Leslie Ann Caldwell, Esq.
*lac@lusklaw.com*
LUSK, CALDWELL & DEAN P.C.
2101 Highland Avenue, Suite 410
Birmingham, Alabama 35205
(205) 933-7090 Telephone
(205) 933-7099 Facsimile

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-1928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:
LINDA MORDECAI v. BAYER CORPORATION, et al.,
Case No. 9:08-civ-80781-DMM

### CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of May, 2010, the foregoing ***PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT REGARDING ADVERSE EVENT REPORTS TO PROVE CAUSATION OR COMPARATIVE RISK*** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

> Brian A. Wahl
> Bradley, Arant, Rose & White, LLP
> One Federal Place
> 1819 Fifth Avenue North
> Birmingham, Alabama 35203
>
> Phillip S. Beck
> Bartlit Beck Herman Palenchar & Scott LLP
> Courthouse Place
> 54 West Hubbard Place, Suite 300
> Chicago, IL 60610
>
> Patricia Elaine Lowry
> Barbara Bolton Litten
> Squire Sanders & Dempsey LLP
> 777 S Flagler Drive, Suite 1900
> West Palm Beach, FL 33401-6198
>
> Elizabeth C. Curtin
> Sidley Austin LLP
> 1 S Dearborn Street
> Chicago, IL 60603

Richard K. Dandrea
Eckert Seamans Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

Daniel G. Wyllie
Dykema Gossett
400 Renaissance Center, 35th Floor
Detroit, MI 48243

                */s/ Jonathan D. Boggs*
                Jonathan D. Boggs, Esq. (FL Bar #0106305)
                *jboggs@baileyglasser.com*