UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to All Actions.

**<u>PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE IMPROPER OPINON
TESTIMMONY OF DEFENDANTS' EXPERT PAUL WAYMACK, M.D. AND BRIEF IN
SUPPORT THEREOF</u>**

Alexander Hamilton once said that the "[t]he interpretation of the laws is the proper and peculiar province of the courts . . . It must therefore belong to them to ascertain its meaning, as well as the meaning of any particular act proceeding from the legislative body." Alexander Hamilton – Federalist Paper No. 78.  According to Article III of the Constitution, "the judicial power of the United States shall be vested in one Supreme Court."  The Supreme Court's interpretation of the meaning of a law is the final judicial arbiter in the United States.  As will be shown in more detail below, Dr. Waymack should be precluded from testifying at trial because his opinions are, admittedly, contrary to the law and principles set forth by the United States Supreme Court in *Wyeth v. Levine*, 129 S.Ct. 1187 (2009). For that reason, Dr. Waymack's opinion testimony is misleading, unreliable and will not assist the trier of fact.  In short, it should be excluded in its entirety.

I.   INTRODUCTION.

By way of background, Dr. Waymack is a physician who was a medical officer at the Food and Drug Administration ("FDA") from 1993-1996.  Since leaving the FDA, he has made a career defending the actions (or non-action) of numerous pharmaceutical companies, both on a consulting basis through his business, Waymack, Inc., and through providing Big Pharma with

expert testimony in litigation. *See* Waymack Depo. (Ex. "A") at 13-14; *see also, e.g., In re Gadolinium-Based Contrast Agents Products Liability Litigation*, 2010 WL 1796334 (N.D. Ohio May 4, 2010); *McCarrell v. Hoffman-La Roche, Inc.*, 2009 WL 614484 (N.J. Super. A.D. March 12, 2009); *McKnight v. Purdue Pharma Co.*, 2006 WL 5105260 (E.D. Tex. Feb. 28, 2006). Like many other cases, Dr. Waymack was asked to testify on behalf of Bayer and defend the company's actions with respect to warning about the risks of aprotinin. In his report and deposition testimony, Dr. Waymack summarily concludes that Bayer did not fail to warn about the risks of aprotinin.

Unfortunately for Dr. Waymack, however, the basis for his conclusion that Bayer complied with its obligations is completely at odds with the Supreme Court's interpretation of the Food, Drug and Cosmetic Act ("FDCA") in *Wyeth*. For starters, he wrongly asserts that the FDA is the ultimate authority on the information in the label. He also wrongly opines that after reviewing the spontaneous adverse events, the FDA can require the manufacturer to change its label to reflect updated safety information, and that the drug manufacturer must follow the dictates of the FDA with respect to the content of labeling. In other words, Dr. Waymack would like to convince the jury that Bayer was somehow hamstrung to change its aprotinin label to reflect updated safety information, and that it was the FDA's responsibility to make any such changes. The problem with these opinions and conclusion is simple: all of them directly contradict and undermine the holding of *Wyeth v. Levine*.

In *Wyeth*, the Supreme Court soundly rejected these same incorrect conclusions made by the drug manufacturer, and held squarely that under the FDCA: (1) drug manufacturers have superior safety information about their products; (2) they are required to update their drugs' safety information when they perceive a new safety issue; and (3) they are not required

to obtain pre-approval from the FDA before updating their label to reflect new safety information. The Court need look no further than Dr. Waymack's own deposition testimony where he openly and explicitly disagreed with the Supreme Court:

> Q. Do you disagree with the United States Supreme Court in the way they've interpreted the regulations as reflected in the opinion *Wyeth v. Levine*?
>
> A. I—based on my experience working at the FDA and with the FDA, I find my experience is consistent not with the majority opinion but with the minority opinion of Alito.

Waymack Depo. at 149:2-9. The problem with this testimony cannot be ignored. In a court of law, experts are not allowed to disagree with the United States Supreme Court when it comes to establishing the duties and obligations of pharmaceutical companies. Yet, that is exactly what Dr. Waymack did in his report and deposition. Courts resoundingly exclude expert testimony that is contrary to the law on the grounds that such testimony lacks foundation, is inherently unreliable and does nothing to assist the jury. The Court should do the same here, and preclude Dr. Waymack from testifying because the basis of his opinions, explicitly or implicitly, contradict the legal principles set forth by the Supreme Court in *Wyeth*.

## II.     ARGUMENT AND AUTHORITY.

Less than two months ago, Dr. Waymack was excluded from providing any testimony whatsoever in the Gadolinium MDL for the same grounds raised in this brief. *See In re Gadolinium*, 2010 WL 1796334 (N.D. Ohio May 4, 2010) (Exhibit "B"). In that case, the court noted that "Dr. Waymack's opinions are misleading because they attempt to minimize the manufacturer's role in the labeling process and therefore should not be presented to the trier of fact." *Id.* at *30. In its analysis, the court identified the following criticisms Dr. Waymack had of the holdings in *Wyeth v. Levine*:

- When asked about the Supreme Court's statement that drug regulation is premised on the manufacturer being responsible for labeling, Dr. Waymack noted that "obviously, it's inaccurate" and "it's grossly a misstatement of the facts." *Id.* at *31.

- Upon being questioned about the *Wyeth* holding that a manufacturer does not need FDA preapproval to update a label, he concluded that "this was written by someone who is not very familiar obviously with FDA regulations" and that he disagreed with this holding. *Id.*

- The court concluded that "common sense dictates that the Court prohibit a witness from offering opinions in direct conflict with Supreme Court holdings or observations made by the Supreme Court that serve as a foundation for reaching a conclusion. . . . The expression of opinions contrary to law, while perhaps only part of the witness' probable testimony, are sufficient to characterize the witness as unreliable and therefore subject to exclusion." *Id.*

Dr. Waymack's opinions in this case are equally unreliable and misguided. Indeed, certain paragraphs of his report in this case were merely cut and paste from his report in the gadolinium litigation. For example, the court cites to ¶ 76 of his gadolinium report in saying "Dr. Waymack also notes that 'the FDA has ultimate authority over pharmaceutical development and marketing, including the labeling of such products.'" ¶ 76 of his aprotinin report is identical. At both ¶¶ 75 and 130, Dr. Waymack notes that Bayer could not have strengthened its aprotinin label without prior FDA approval *See* Waymack Report. (Ex. "C"). Dr. Waymack gave these same opinions in the gadolinium case, which were expressly excluded as contrary to law. *In re Gadolinium*, 2010 WL 1796334 at *31 (". . . the Court will not permit Dr. Waymack to testify that the FDA would have prevented any attempt by GEHC to unilaterally change Omniscan labeling."). Because Dr. Waymack's opinions rest on an unreliable foundation—one that is contrary to Supreme Court precedent—his opinions should be excluded in their entirety.

**A.    The Law is Clear that a Manufacturer, Not the FDA, is Primarily Responsible For Updating Its Drug Labels on Safety Issues**

In *Wyeth*, 129 S.Ct. 1187, the Supreme Court addressed a drug manufacturer's argument that federal regulatory law preempted state tort claims by patients who were injured by a pharmaceutical manufacturer's drug products. The Court held that the FDCA regulatory scheme did not preempt state tort claims, based on its interpretation of these regulations concerning changes to a drug product's labeling.

In reaching its decision, the Supreme Court enunciated four principles concerning a drug manufacturer's duties and the FDA's role in updating product safety information on its drug labels. These principles provide a binding interpretation of the FDCA and determine the scope of manufacturer and FDA responsibility under the law. They establish that, under the FDCA, the manufacturer has complete control over its label to add updated safety information at any time.

1. **The Drug Manufacturer Bears Responsibility for Updating Safety Information In The Label**

Throughout the history of the FDCA, the Supreme Court held, "it has remained a central premise of the federal drug regulation that the manufacturer bears responsibility for the content of its label at all times" and that it "is charged with both the crafting of an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market." The Court explicitly rejected the manufacturer's argument that "the FDA, rather than the manufacturer, bears primary responsibility for drug labeling," and noted that the manufacturer "misapprehends . . . the federal regulatory scheme." *Wyeth,* 129 S.Ct. at 1198.

2. **The Manufacturer Does Not Need FDA Pre-Approval to Add Safety Information to The Label**

The Supreme Court also held that FDA regulation "permits a manufacturer to make certain changes to its label before receiving the agency's approval," including using the CBE

("changes being effected") regulation process to "add or strengthen a contraindication, warning, precaution or adverse reaction," and that it may do so "upon filing its supplemental application with the FDA" and "need not wait for FDA approval." *Wyeth*, 129 S.Ct. at 1196 (citing 21 CFR §§314.70(c)(6)(iii)(A), (C)).

### 3. The Manufacturer Has Superior Access to Information About Its Drug

The Supreme Court recognized that "[t]he FDA has limited resources to monitor the 11,000 drugs on the market and manufacturers have superior access to information about their own drugs, especially in the post-marketing phase as new risks emerge." *Wyeth*, 129 S.Ct. at 1202 (citing numerous authorities dating from 1955 to the present confirming that the FDA has limited resources available to it to know everything it can about the drugs that are subject to regulation).

### 4. The FDA May Not Require A Post-Marketing Label Change

Construing the FDCA and applicable regulations, the Supreme Court held that [p]rior to 2007, the FDA lacked the authority to order manufacturers to revise their labels." *Wyeth*, 129 S.Ct. at 1198. The Court further noted that, when that law changed in 2007, Congress rejected a provision that would require pre-approval by the FDA of all label changes, thus "mak[ing] it clear that manufacturers remain responsible for updating their labels." *Id*. at 1196. The only control the FDA has over that decision is that it may later reject the change to add the safety information. *Id.* at 1198.

### B. Dr. Waymack's Proposed Testimony is Contrary to Law

Despite the fact that *Wyeth* makes clear that the FDCA regulatory scheme places primary responsibility on the manufacturer (which has superior information about its drug) to update its drug's label on safety information, Dr. Waymack's report appears to place that burden on the

FDA. Thus, contrary to the Supreme Court's holding in *Wyeth*, ¶ 59 of the report states that if "the FDA determines a change in the risk/benefit profile of a drug warrants it, they can require a labeling change to provide physicians with newly available important information." *See* Waymack Report (Ex. "C") at ¶ 57. This is directly contrary to the holdings in *Wyeth* that the manufacturer does not need pre-approval to make a labeling change and that the FDA lacks the authority to order a post-marketing labeling change. *Wyeth*, 129 S.Ct. at 1196 and 1198.

Dr. Waymack again contradicts the Supreme Court in ¶ 76, where he states that "the FDA has ultimate authority over . . . labeling of such products. Sponsors must follow the dictates of the FDA with respect to content and format of labeling . . . ." Waymack Report (Ex. "C") ¶ 76; *see also* ¶ 34 ("The FDA is the ultimate authority on the information included in the labeling . . . .). In *Wyeth*, the Court held that the manufacturer has ultimate responsibility for the drug label and that it need not obtain FDA pre-approval to make safety changes. *Wyeth*, 129 S.Ct. at 1196.

Other portions of the report, while not directly conflicting with *Wyeth*, have misleading omissions that render the opinions expressly at odds with the law of the land. Thus, ¶¶ 32 and 35 of Dr. Waymack's report correctly note that the FDA can make changes upon *initial* drug approval, but neglect to clarify that that the FDA lacks authority to make changes to the label *after* approval. *Wyeth*, 129 S.Ct. at 1198. Similarly, ¶¶ 73 to 75 discuss the processes used to make label changes, noting that that "minor" and "moderate" changes do not require pre-approval, while major changes do require FDA approval. Dr. Waymack goes on to say that "major" label changes require FDA approval and can never be done under the CBE process. This is squarely at odds with the Supreme Court's holding, which states that adding safety

information to the label falls under the CBE process and never requires pre-approval by the FDA. *Wyeth*, 129 S.Ct. at 1196.

At his deposition, Dr. Waymack confirmed his intention to offer the testimony described above, and indeed expanded on that testimony to create even greater conflicts with the Supreme Court's opinion in *Wyeth*. Thus, Dr. Waymack affirmed that he intended to testify at trial generally about the regulatory scheme of the FDCA, including all statutory law, administrative regulations and guidance documents associated with that Act, and specifically with regard to a drug manufacturer's standard of care with regard to product labeling. *See* Waymack Depo. (Ex. "A") at 34-36.

With respect to the first principle from *Wyeth*, establishing that the manufacturer is responsible for updating the label, Dr. Waymack goes on to disagree with the statement that "a drug manufacturer bears primary responsibility for drug labeling," arguing instead that it's a "co-primary" responsibility and that "FDA concurrence" is necessary. *Id.* at 129-30. With respect to the holding that a manufacturer does not need FDA pre-approval to update a label regarding safety, Dr. Waymack testified as follows:

> Q. Do the FDA regulations permit a manufacturer to make certain changes to its label before receiving the agency's approval.
>
> A. Yes.
>
> Q. And in what situations?
>
> A. You can correct any typographical errors. You can change contact information. You can add minor—make minor corrections to various sections such as the adverse event section.
>
> Q. Does it allow the manufacturer to add or strengthen a contraindication, warning, precaution or adverse reaction?

> A. The FDA position on that is that is only allowed in certain unique situations. Otherwise, the FDA does not like the CBE route being utilized to accomplish that goal.
>
> *   *   *
>
> Q. It says—it's talking about changes based upon clinical trials and studies and adverse events, correct?
>
> A. Yes.
>
> Q. You said, "The FDA's position is that such changes constitute major changes. To that end, such changes require FDA approval prior to being implemented rather than using the CBE process." Correct?
>
> A. That is correct.

Waymack Depo. (Ex. "A") at 79; 86-87. When pressed further on the issue of CBE changes, Dr. Waymack's true opinion became manifest: that he quite simply disagrees with the holdings in *Wyeth* and chooses to ignore them. This was demonstrated in the following exchange with Dr. Waymack at his deposition:

> Q. Have you seen what the United States Supreme Court has recently said about what types of changes can be made through the CBE?
>
> A. Yes, I have.
>
> Q. You understand that they actually interpret the laws and regulations in this country that the pharmaceutical companies live by and the FDA enforces?
>
> A. I'm not a lawyer, but that's my understanding.
>
> Q. What do they say about what types of changes can be made?
>
> A. My—I don't have the four—the opinion of the justices in front of me. But I am aware that they took the position that CBEs can be used with—in certain circumstances without the FDA's permission.
>
> *   *   *
>
> Q. Do you disagree with the United States Supreme Court in the way they've interpreted the regulations as reflected in the opinion *Wyeth v. Levine*?

> A. I—based on my experience working at the FDA and with the FDA, I find my experience is consistent not with the majority opinion but with the minority opinion of Alito.

Waymack Depo. (Ex. "A") at 146-149. This position is unsurprising, given that Dr. Waymack disagrees with the fundamental concept in *Wyeth*: that the FDA's standards set a floor for a drug company's conduct, not a ceiling. *Wyeth*, 129 S.Ct. at 1202.

> Q. Do you agree with me that the FDA's standards are minimum standards?
>
> A. No.

Waymack Depo. at 36:18-20. At the end of the day, Dr. Waymack should be precluded from testifying based solely on his opinions as expressed in *In re: Gadolinium*. However, his report and deposition testimony in this case serve only to crystallize his unwillingness, or inability, to follow the law as even he knows it to be true.

**C. Opinions Contrary to the Law, Like Dr. Waymack's, are Properly Excludable.**

Of utmost importance to this motion are the factors requiring that expert testimony be reliable and assist the trier of fact. With regard to the reliance factor, whether the matters relied upon by the expert in formulating his or her opinion are "reasonable" are foundational questions for the trial court to resolve. FED. R. EVID. 104(a); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3rd Cir. 1994). The court's "reasonableness" determination requires an assessment of whether there are "good grounds" for reliance on the particular facts and data. *Paoli*, 35 F.3d at 748. With regard to the factor requiring that the testimony assist the trier of fact, it is essential that the testimony "be useful to the finder of fact in deciding the ultimate issue of fact. . . . This is the basic rule of relevancy." *Lauzon v. Senco Products*, 270 F.3d 681, 686 (8th Cir. 2001).

Courts that have examined the issue as to whether an expert can testify as to a matter that is contrary to the law resoundingly conclude that they cannot. Such courts reason that testimony that is contrary to established law lacks foundation and thus is unreliable, and cannot possibly inform the jury. In the recent decision of *BNSF Railway Co. v. Lafarge Southwest, Inc.*, 2009 WL 4279771 (D.N.M. Feb. 12, 2009), the district court concluded that even if the expert was qualified to render opinions on a matter, "those opinions would nevertheless require exclusion because they are based on an erroneous understanding of the state of the law and, therefore, would not assist the jury." *Id*. at *5, *citing Loeffel Steel Products v. Delta Brands*, 387 F.Supp.2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible."); *Southard v. United Reg'l Health Care Sys*., 2008 WL 4489692, *2 (N.D. Tex., Aug. 5, 2008) ("[W]here . . . the expert's opinion is based on an erroneous legal premise, it is appropriate to exclude such testimony.").

Similarly, in *Federated Department Stores, Inc. v. Doe*, 454 So.2d 10, 12 (Fla. 3d DCA 1984), the court held that "[a]n expert's opinion, if based upon an erroneous concept of law, is . . . devoid of competency." (citing *Stubbs v. State Department of Transportation*, 332 So.2d 155 (Fla. 1st DCA 1976)); *see also Rodriguez v. Pino*, 634 So.2d 681, 686-87 & n. 7 (Fla. 3d DCA 1994) (determining that expert testimony should have been excluded where it was based on the legally erroneous conclusion that patient's extubation constituted a medical emergency allowing intubation without a competency assessment); *Estate of Jenkins v. Recchi America*, 658 So.2d 157 (Fla. 1st DCA 1995) (determining that an expert opinion founded on a factor not determinative of causation under Florida worker compensation law was incompetent evidence); *Tenbroeck v. Castor*, 640 So.2d 164, 168 (Fla. 1st DCA 1994) (concluding that expert opinion

that teacher was impaired due to the notoriety created by a lawful marriage was contrary to established law and did not constitute competent evidence supporting dismissal).

In this case, it is apparent from Dr. Waymack's written expert opinion, his deposition testimony (both in this case and in prior testimony) concerning the *Wyeth* principles that he intends to testify concerning matters that are contrary to the law. That is, the foundation of all of his opinions expressly contradicts the law rendering them unreliable. As set forth in detail above, his written opinion is misleading in that it makes it appear that the FDA—and not Bayer—has primary responsibility and ultimate authority over changes to the aprotinin label concerning patient safety. This intent is made explicit by Dr. Waymack's failure to agree with—and, indeed, his contradiction of—the bedrock legal principles set forth in the *Wyeth* decision, coupled with his explicit acknowledgment that his opinions are contrary to *Wyeth*. Accordingly, his improper opinion testimony must be excluded.

### III.  CONCLUSION AND PRAYER

Because of the inherent flaws in Dr. Waymack's opinions and the bases for those opinions, his testimony should be excluded under Rule 403. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403. Assuming that Dr. Waymack's testimony could be considered to be relevant in any way, despite its contradiction of prevailing law, its potential for prejudice and confusion substantially outweighs its probative value. First and foremost, expert testimony that intimates that the FDA has primary responsibility for aprotinin label changes concerning patient safety and that Bayer could not make such changes without pre-approval by the FDA would severely

confuse the issues on this topic, and would mislead the jury. Moreover, Plaintiffs will be required at trial to spend a great deal of time teasing out such misstatements and presenting witnesses to testify extensively as to the true state of the law with regard to such responsibilities. The testimony should be excluded to avoid this confusion and waste of time. Based on all of the foregoing, Plaintiffs respectfully request the Court GRANT Plaintiffs' motion and exclude the improper opinion testimony of Dr. Paul Waymack. Plaintiffs additionally request all other and further relief as the Court deems just and proper.

DATED: June 7, 2010.

                                            Respectfully submitted,

/s/
Theodore Babbitt (Florida Bar No. 91146)
Email: tedbabbitt@babbitt-johnson.com
Joseph Osborne (Florida Bar No. 880043)
Email: JAOsborne@babbitt-johnson.com
Babbitt, Johnson, Osborne
& LeClainche, P.A.
1450 Centerpark Blvd., Suite 100
West Palm Beach, FL 33401
Telephone: (561) 684-2500
Facsimile: (561) 684-6308

*Liaison Counsel for Plaintiffs and Plaintiffs' Steering Committee*

## CERTIFICATION OF RULE 7.1(A)(3)(a) CONFERENCE

As required by this Court's Local rule 7.1.(A)(3)(a), counsel for Plaintiffs hereby certifies that counsel for the Plaintiffs has made reasonable efforts to confer in good faith with counsel for all parties who may be affected by the relief sought in the motion, and has been advised that Defendants will contest this motion.

June 7, 2010

/s/ Scott A. Love
Scott A. Love

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2010, I electronically filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day on the following counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or by mailing the same to the offices of said counsel by United States mail, postage prepaid.

/s/
Theodore Babbitt

SERVICE LIST
In re Trasylol Products Liability Litigation – MDL-1928
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON
United States District Court
Southern District of Florida

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Scott Love
Email:  slove@triallawfirm.com
**Clark, Burnett, Love & Lee, G.P.**
440 Louisiana St., Ste. 1600
Houston, TX 77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Plaintiffs' Steering Committee/Co-Lead Counsel*

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone:  312-494-4400
Facsimile:  312-494-4440
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

Eugene A. Schoon
Email:  eschoon@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone:  312-853-7000
Facsimile:  312-853-7036
*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG*

| | |
|---|---|
| Patricia E. Lowry<br>Email: plowry@ssd.com<br>Barbara Bolton Litten<br>Email: blitten@ssd.com<br>**SQUIRE, SANDERS & DEMPSEY, L.L.P.**<br>1900 Phillips Point West<br>777 South Flagler Drive<br>West Palm Beach, FL 33401-6198<br>Telephone: 561-650-7200<br>Facsimile: 561-655-1509<br>*Liaison Counsel for Defendants and Attorney for Defendants Bayer Corporation, Bayer Healthecare Pharmaceuticals, Inc., Bayer Healthcare LLC, and Bayer Schering Pharma AG* | Richard K. Dandrea, Esq.<br>Email: rdandrea@eckertseamans.com<br>**ECKERT SEAMANS CHERIN & MELLOTT, LLC**<br>U.S. Steel Tower<br>600 Grant Street, 44th Floor<br>Pittsburgh, PA 15219<br>Telephone:  412-566-6000<br>Facsimile:   412-566-6099<br>*Defendants Co-Lead Counsel and Attorney for Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare LLC, Bayer AG, and Bayer Healthcare AG* |