UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:
*RoseAnn Caruso, et al. v. Bayer Corp., et al.*
No. 9:08-cv-80639
_____/

**BAYER'S OPPOSITION TO PLAINTIFF'S MOTION
FOR SUBSTITUTION OF ONE EXPERT WITNESS**

Defendants Bayer Corporation, Bayer HealthCare Pharmaceuticals Inc., and Bayer Schering Pharma AG (collectively, "defendants") hereby oppose plaintiff RoseAnn Caruso's Motion for Substitution of One Expert Witness (the "Motion").

**BACKGROUND**

On February 15, 2010, consistent with the Pretrial Order 16 ("PTO 16") deadlines for case-specific experts in Group 1 cases, plaintiff RoseAnn Caruso designated two expert witnesses[1] in support of her claims, including a nephrologist, Dr. Mitchell Rosner. *See* Plaintiff's Disclosure of Case-Specific Expert Witnesses (attached as Ex. 1 to Plaintiff's Motion). During Dr. Rosner's March 31, 2010 deposition, Dr. Rosner admitted that he had "fabricated data in a research study as a graduate student in biology in 1992." Motion at 1; Deposition of Mitchell Rosner, M.D. ("Rosner Dep.") (Ex. A) at 22-31.[2] Plaintiff knew or

---

[1] Plaintiff also designated a cardiothoracic surgeon, Dr. Coyness Ennis, pursuant to PTO 16. *See* Plaintiff's Disclosure of Case-Specific Expert Witnesses (attached as Ex. 1 to Plaintiff's Motion). The designation of Dr. Ennis is not at issue in this Motion.

[2] This is not the only damaging testimony that Dr. Rosner gave during his deposition. For example, Dr. Rosner also testified that patients with the same clinical picture as plaintiff's

should have known about this incident prior to designating Dr. Rosner as an expert witness in this case or, at a minimum, prior to producing him for deposition. Indeed, had plaintiff done as little as type "Mitchell Rosner"[3] into Google's free search engine, she would have discovered that Dr. Rosner was sanctioned by the National Institutes of Health in June 1993 for falsifying a research project while engaged in graduate study at the National Cancer Institute. *See* Final Findings of Scientific Misconduct, 22 NIH Guide 23, at 1 (June 25, 1993), available at http://grants.nih.gov/grants/guide/notice-files/not93-177.html (last accessed June 7, 2010) (Ex. B).

About a week after his deposition, Dr. Rosner withdrew as an expert witness, claiming that he was "upset and worried that the focus of his testimony in [this] case would be on him," rather than the plaintiff's claims. Motion at 2; April 5, 2010 Letter from Mitchell H. Rosner, M.D. (attached as Ex. 3 to Plaintiff's Motion). One week later, on April 13, plaintiff's counsel informed defendants of Dr. Rosner's withdrawal and requested an extension of the discovery deadlines to accommodate their identification and designation of a new case-specific nephrology expert. Motion at 2; April 13, 2010 Letter from Karen Beyea-Schroeder to Steven E. Derringer

---

decedent may experience the same clinical course in the absence of aprotinin. Rosner Dep. (Ex. A) at 239:11-241:15. Moreover, Dr. Rosner testified that plaintiff's decedent's death was due to the following course of events: she experienced anoxic brain injury, her pacing wires failed, she was pronounced brain dead, and her family withdrew life support—not because she experienced renal failure following surgery. *Id.* at 246:2-247:19.

[3] Typing "Mitchell Rosner" (without quotation marks) into Google's search engine reveals approximately 106,000 results. The third hyperlink result is entitled "NIH Guide: FINAL FINDINGS OF SCIENTIFIC MISCONDUCT" and "Mitchell H. Rosner, National Cancer Institute" is displayed in the text immediately below the link. Clicking on the link brings the viewer to http://grants.nih.gov/grants/guide/notice-files/not93-177.html, which is a reproduction of "FINAL FINDINGS OF SCIENTIFIC MISCONDUCT," 22 NIH Guide No. 23 (June 25, 1993) ("NIH Guide webpage"). Scrolling down, the viewer finds a description of Dr. Rosner's scientific misconduct in fabricating study data as a graduate student. (Last accessed in this manner on June 7, 2010.)

(attached as Ex. 4 to Plaintiff's Motion).  Having already expended significant time and resources to prepare for and take the deposition of Dr. Rosner, and concerned about the precedent such tardy "expert swapping" would set, defendants did not consent to the plaintiff's request.  *See* May 11, 2010 Letter from Richard K. Dandrea to Karen Beyea-Schroeder (attached as Ex. 5 to Plaintiff's Motion).

Plaintiff's Motion comes well after the case-specific expert discovery deadlines established in PTO 16.  Plaintiff filed this case on January 17, 2008, and it was designated as a Group 1 case.  Pursuant to PTO 16, plaintiff was required to designate case-specific experts and serve her experts' reports by February 15, 2010.  PTO 16 § I.B.  Although plaintiff initially designated Dr. Rosner within this deadline, her late attempt to find and name a replacement expert nearly two months later is not justified.  Plaintiff either knew about Dr. Rosner's checkered past before designating him as an expert witness, or plaintiff failed to adequately investigate Dr. Rosner.  In either circumstance, plaintiff should not be permitted to "test drive" an expert and then substitute a brand new expert after cross-examination elicits harmful testimony.  At the very least, if the Court determines that plaintiff may name a new expert, defendants should be reimbursed for the expenses they incurred preparing for and taking Dr. Rosner's deposition.

## ARGUMENT

Parties must disclose expert witnesses "at the times and in the sequence that the court orders."  FED. R. CIV. P. 26(a)(2)(C).  Here, PTO 16 required plaintiff to designate her case-specific experts by February 15, 2010.  PTO 16 § I.B.  Where a party fails to provide information or identify expert witnesses as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is

3

harmless." FED. R. CIV. P. 37(c)(1). The Court also may order the aberrant party to pay attorneys' fees or comply with other appropriate sanctions, including those set forth in Rule 37(b)(2)(A). *Id.* 37(c)(1)(A), 37(c)(1)(C).

Although plaintiff characterizes her attempt to designate a substitute nephrology expert as both justified and harmless, it is neither. First, plaintiff has no substantial justification for failing to comply with the discovery deadlines imposed by PTO 16. Dr. Rosner withdrew from this case based on his apparent conclusion that his research dishonesty would compromise his ability to serve as an expert witness.[4] Plaintiff either knew about Dr. Rosner's research dishonesty by the time she designated him as an expert, or easily could have discovered it had she conducted even a modicum of research and due diligence. Second, plaintiff's requested substitution at this stage is harmful, because (1) defendants already spent substantial time and resources preparing for and taking the deposition of Dr. Rosner, and (2) permitting substitution at this stage in the case invites prejudicial surprise and gamesmanship.

## I.   Plaintiff's Motion Is Not Substantially Justified.

Plaintiff claims that her requested substitution is necessary "to replace an expert who has withdrawn on his own accord and thereby made himself unavailable," and asserts that she "has no power or control to compel Rosner to testify as an expert." Motion at 3. Arguing that a court may allow substitution when an expert becomes unavailable, plaintiff cites cases from other jurisdictions in which substitution was permitted after the parties' witnesses became unavailable due to scheduling conflicts, illness or death, or the deterioration of the relationship between the party and the expert. *See, e.g., Sithon Mar. Co. v. Holiday Mansion*, No. Civ. A. 96-2262-EEO,

---

[4] Given the widespread availability of the news of Dr. Rosner's dishonesty, *see supra* at 1-2, it is incredible that Dr. Rosner would be so naïve as to believe that this episode of dishonesty would not impact his credibility as an expert witness.

4

1998 WL 433931, at *1 (D. Kan. July 30, 1998) (scheduling); *Torres v. Mactac Trading Corp.*, No. 93 CV 5320, 1998 WL 603103, at *2 (N.D. Ill. Sept. 4, 1998) (illness); *Petit v. City of Chicago*, No. 90 C 4984, 1999 WL 66539, at *1-2 (N.D. Ill. Feb. 8, 1999) (deterioration of relationship).

None of the cases that plaintiff cites is apposite. In each, the expert became unavailable due to events that were not foreseeable at the time the expert was designated. Here, by comparison, plaintiff easily could have uncovered Dr. Rosner's checkered past by conducting even rudimentary research on the Internet. Had plaintiff conducted this simple due diligence, she would have discovered Dr. Rosner's research dishonesty and discussed this past episode with him *before his designation*. Plaintiff's counsel also certainly would have anticipated that this subject would be an area of cross-examination and notified Dr. Rosner, who then could have assessed whether he would have any concerns about serving as an expert witness *before being designated*. Thus, plaintiff's predicament could have been avoided entirely had she done even minimal research on Dr. Rosner.[5]

In short, "plaintiff[] had a full and fair opportunity to develop and defend [her] choice of experts" in designating Dr. Rosner as a case-specific expert back in February. *Lippe v. Bairnco Corp.*, 99 Fed. App'x 274, 280 (2d Cir. 2004). Her failure either to conduct due diligence in the choice of that designation or to appreciate the import of Dr. Rosner's past until after his deposition "does not entitle [her] to begin anew." *Id.* (affirming district court's decision denying plaintiffs' motion to substitute experts after disclosure deadline); *see also Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 249 (6th Cir. 2001) (finding plaintiffs' assertion that "considerations of equity and fair play demand they have an opportunity to cure the deficiencies in their proofs"

---

[5] To date, plaintiff has not asserted that she or her counsel were unaware of the events that Dr. Rosner now puts forward (after his deposition) as the reason for his withdrawal from this case.

by designating a second expert after the deadline "without merit," because "[p]laintiffs had adequate opportunity to develop their expert testimony, test their theories, and respond to defendants' specific challenges to the testimony"). Because plaintiff has no substantial justification for failing to adequately investigate Dr. Rosner's background before designating him, her motion for substitution should be denied.[6]

## II. Substitution Would Subject Defendants to Unfair Prejudice.

Plaintiff further asserts that substitution is harmless, because (1) defendants had notice that Dr. Rosner might be substituted, (2) defendants will not be surprised by new subject matter or a new theory of liability, and (3) defendants have ample time to formulate a response and prepare for cross-examination. Motion at 7. These arguments do not undercut the harm that defendants will incur should the requested substitution be granted.

First, this Court can and should consider what substitution would portend for its docket. *See Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("the court has a right, independent of the parties, to conduct trial preparation in a manner that husbands appropriately the scarce judicial resource of that busy district"). Allowing substitution in a case such as this, where the plaintiff either discovered or easily could have discovered the basis for Dr. Rosner's withdrawal before his designation, invites gamesmanship under which a party may haphazardly designate an expert without investigation to meet court-imposed deadlines, have that expert deposed, and then move for substitution of that expert if the opponent casts doubt on the expert's credibility—the exact situation that occurred here—or if the expert provides testimony that the proponent simply does not like. Such a system would "implausib[ly] . . . [permit] parties [to]

---

[6] Again, this presumes that plaintiff did not know about Dr. Rosner's past until it was the subject of cross-examination at Dr. Rosner's deposition. If she knew about the episode upon which Dr. Rosner now bases his withdrawal, there is even less justification to allow plaintiff to substitute experts at this late date.

6

initially present less than their best expert evidence in the expectation of a second chance should their first try fail," thus rendering the expert discovery deadlines mere suggestions, rather than binding rules. *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000). The Court should not encourage such a result.

Second, defendants expended substantial time and resources preparing for and taking Dr. Rosner's deposition. *See* Affidavit from Kevin Zielke ("Zielke Affidavit") (Ex. C) at 1 (setting forth $15,702.58 in fees and expenses). Defendants should not be forced to shoulder the economic burden of having to prepare for and depose a new expert witness simply because plaintiff chose not to conduct the necessary due diligence prior to retaining her initial expert witness (or did not appreciate the significance of the information she uncovered during this process). *See*, *e.g.*, *Vincent v. Omniflight Helicopters Inc.*, No. 08-C-0572, 2009 WL 4262578, at *3 (E.D. Wis. Nov. 24, 2009) (conditioning substitution on reimbursement "for the expense of preparing for and conducting the examination of the replaced expert"); *Sithon*, 1998 WL 433931, at *1 (same).

Finally, although plaintiff "do[es] not expect any new, or distinct, theories of liability or subject matters through the new nephrology expert['s] opinions or testimony," Motion at 8, she stops short of guaranteeing that the putative substitute expert's opinions will be constrained to those matters expressed in Dr. Rosner's report. Absent such a guarantee, defendants are at risk of unfair prejudice arising from the surprise of "new theories of liability or new subject matter [asserted] after the deadlines for discovery have passed." *Morel v. Daimler-Chrysler Corp.*, 259 F.R.D. 17, 21 (D.P.R. 2009); *see also Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 10 (1st Cir. 2001) (finding no prejudice where substitute expert's opinions were within scope of opinions offered by original expert). Defendants timely disclosed their own case-

7

specific expert witnesses and produced their reports in reliance on the theories set forth in plaintiff's experts' reports, including Dr. Rosner's. It would be manifestly unfair to allow plaintiff to posit new theories at this stage of the litigation.

### III.     In the Alternative, Plaintiff's Substitution Should Be Subject to Conditions.

Should the Court grant plaintiff's Motion to designate a new case-specific nephrology expert, defendants request that the substitution be conditioned, as even the cases that plaintiff cites in support of her Motion suggest.

First, substitution should be conditioned on reimbursement for defendants' expenses incurred preparing for and taking the deposition of Dr. Rosner. *Vincent*, 2009 WL 4262578, at *3 (conditioning substitution reimbursement "for the expense of preparing for and conducting the examination of the replaced expert"); *Sithon*, 1998 WL 433931, at *1 (same). As noted, Bayer spent $15,702.58 preparing for and deposing Dr. Rosner. *See* Zielke Affidavit (Ex. C) at 1. Plaintiff, not Bayer, should bear the burden of these now-unnecessary expenses.

Second, the scope of the substitute nephrology expert's opinions[7] should be limited to and may not conflict with those set forth in Dr. Rosner's report and deposition.[8] *See Morel*, 259 F.R.D. at 21 (limiting opinions to those expressed by initial expert); *Ferrara & DiMercurio*, 240 F.3d at 10 (prejudice avoided where substitute expert's opinions were within scope of original expert's opinions). Similarly, the substitute expert should be limited to considering only that information that Dr. Rosner relied upon for his report. *See Morel*, 259 F.R.D. at 21; *see also*

---

[7] Plaintiff has not disclosed the identity of her proposed substitute expert, but her request is limited to replacing Dr. Rosner with a new *nephrologist*, not a medical expert from a different discipline. *See* Motion at 2, 11.

[8] For example, Dr. Rosner testified that his opinions were limited solely to assessment of the plaintiff's decedent's kidney failure, not her respiratory failure, liver failure, brain injury, or metabolic acidosis. Rosner Dep. (Ex. A) at 101:16-103:25.

*Poulis-Minott v. Smith*, 388 F.3d 354, 359 (1st Cir. 2004) (affirming district court's striking of information included in substitute expert's report that went beyond the scope of the original expert's report).

Defendants submitted their expert reports in reliance on the opinions and scope of Dr. Rosner's report and it would be unfair at this late date to allow expansion of plaintiff's expert disclosures. So limited, defendants will have greater assurance that plaintiff cannot introduce new theories of liability well after the discovery deadline has passed and after defendants' experts have submitted their reports. To further guard against this kind of potential prejudice, plaintiff should be required to produce the substitute case-specific nephrology expert report within fifteen (15) days of the Court's Order and produce the expert for deposition within a reasonable time thereafter, and defendants' experts should be allowed time to analyze the substitute expert's report and, if necessary, amend their reports before deposition.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court enter an Order denying plaintiff's Motion for Substitution of One Expert Witness. In the alternative, should the Court determine that substitution is appropriate, defendants respectfully request that the Court impose the following conditions on plaintiff's designation of a new case-specific nephrology expert: (1) plaintiff must reimburse defendants for the reasonable attorneys' fees and other costs expended preparing for and taking the March 31, 2010 deposition of Dr. Mitchell Rosner, as provided in Kevin Zielke's June 4, 2010 affidavit; (2) plaintiff's substitute case-specific nephrology expert may not offer opinions that were not previously disclosed in Dr. Rosner's case-specific expert report and deposition; (3) plaintiff's substitute case-specific nephrology expert may not offer opinions that contradict the opinions that Dr. Rosner expressed in his report

9

and deposition; (4) plaintiff's substitute case-specific nephrology expert may consider only that information that Dr. Rosner considered in rendering his case-specific expert report; (5) plaintiff must produce the substitute case-specific nephrology expert report within fifteen (15) days of the Court's Order and produce the expert for deposition within a reasonable time thereafter; and (6) defendants' experts must be given reasonable time to analyze the substitute expert's report and substitute their reports, if necessary.

Dated:  June 7, 2010                                        Respectfully Submitted,

*/s/  Barbara Bolton Litten*
Patricia E. Lowry (Florida Bar No. 332569)
plowry@ssd.com
Barbara Bolton Litten (Florida Bar No. 91642)
blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7120
Facsimile:   561-655-1509

Eugene A. Schoon
eschoon@sidley.com
Susan A. Weber
saweber@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois  60603
Telephone:  312-853-7279
Facsimile:   312-853-7036
***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I certify that on June 7, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

## SERVICE LIST

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON
### Case No. 9:08-cv-80395-DMM

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,
FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE &
LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

George M. Fleming
Email:  George_Fleming@fleming-law.com
Karen Beyea-Schroeder
Email:  karen_beyea-schroeder@fleming-law.com
Aaron Heckaman
Email:  aaron_heckaman@fleming-law.com
**FLEMING & ASSOCIATES LLP**
1330 Post Oak Blvd., Suite 3030
Houston, TX  77056
Telephone:  713-621-7944
Facsimile:  713-621-9638
*Counsel for Plaintiff RoseAnn Caruso*

Scott Love
Email: slove@triallawfirm.com
**CLARK, BURNETT, LOVE & LEE, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-759-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs and
Counsel for RoseAnn Caruso*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*