UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL – 1928

This Document Relates to All Actions

## ORDER

AND NOW, this _____ day of _____, 2010, it is hereby ORDERED and DECREED that Plaintiffs shall be permitted to file the report of an additional expert on liability issues. The report shall be served on the Defendants by September 1, 2010, along with dates during September, 2010, when the expert could be deposed. Defendants shall file any supplemental reports and response to this report by October 1, 2010. Plaintiffs shall not be permitted to take the depositions of the defense experts related to the supplement reports.

Because Dr. Furberg has withdrawn as an expert in the litigation, Defendants' motion to limit his testimony is DENIED as moot.

West Palm Beach, this _____ day of _____, 2010.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL – 1928

This Document Relates to All Actions

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL GENERIC EXPERT REPORT

AND NOW, comes the Plaintiffs' Steering Committee and respectfully requests the Court to modify its prior pre-trial orders and allow the Plaintiffs to submit a supplemental expert report based upon a substantial change in circumstances and resulting prejudice to the Plaintiffs. The Plaintiffs' Steering Committee, in support of the Motion, respectfully states as follows:

1. Under Pre-Trial Order No. 13, Plaintiffs provided generic expert witness reports on August 18, 2009.

2. Pursuant to that Order, Plaintiffs provided eight generic expert reports, including a report by Dr. Suzanne Parisian and a report by Dr. Curt Furberg.

3. After the reports were supplied, the experts were deposed by the Defendants, Dr. Parisian being deposed on October 6, 2009, and Dr. Furberg on September 29, 2009.

4. Subsequently, Defendants filed their generic expert reports which related to the opinions given in the reports by Drs. Parisian and Furberg on November 3, 2009. Defendants provided two reports, one by Dr. Waymack and the other by Dr. Fenichel. The depositions of these experts were taken.

5. Prior to receiving expert reports from Dr. Parisian and Dr. Furberg, the Plaintiffs' Steering Committee entered into agreements with those experts, that they would appear as

witnesses either at Daubert hearings, depositions, or trial, as needed, in order to support the Plaintiffs' claims in this litigation.

6. Specifically, the experts agreed to appear as live witnesses, if necessary, in the six selected Bellwether cases and the two earliest filed Florida cases, *Rodriguez* and *Roberts*. The six Bellwether cases were scheduled so that at least four would be tried in March through June, 2010.

7. In March, two of the Bellwether cases scheduled for trial resolved without trial, *Bryant* being settled and *Bechara* being dismissed on summary judgment.

8. In April, 2010, the two cases scheduled for April were *Morrill* and *Mordicai*. The *Morrill* case settled, and the *Mordicai* case was rescheduled to be tried on July 26, 2010. The *Mordicai* case subsequently settled.

9. The case scheduled by the Court for May was the *Rodriguez* case, which settled.

10. The case scheduled for June was the *Roberts* case, which the Court dismissed on summary judgment.

11. At present, no cases are scheduled for trial before the Court, and the Court will subsequently consider a plan for listing new cases for trial.

12. During the week of May 24, 2010, co-lead counsel for the Plaintiffs' Steering Committee learned that, because of a combination of over-commitment and health issues, Dr. Furberg advised that he was required to withdraw from his agreement to serve as an expert in the Trasylol lawsuits. On June 4, 2010, lead counsel received a copy of a letter from Dr. Furberg. A copy of that letter is attached as Exhibit A. The letter states as follows:

> As we discussed, I am facing a major dilemma which requires that I withdraw from my agreement to serve an expert in the Trasylol lawsuits. In 2009, I over-committed myself to serve as an expert witness in several litigation matters. As my obligations to earlier

> commitments have far surpassed my expectations, the time and effort required to meet all these commitments now well exceeds what I can fit into my schedule. More importantly, as Professor of Public Health Sciences at Wake Forest University School of Medicine, my first commitment must be to the University and my professional duties. My current effort level at the medical school is at 90%. To make matters worse, I was forced to spend a substantial amount of time recovering from a total hip replacement procedure last fall, and I expert to have surgery on both knees in the near future, which will require me to take additional time off. The projected demands for the Trasylol trials and the multiplicity of trials expected in the coming months exceed what I can handle. Thus, with deep requests, I have decided to withdraw my involvement. I apologize for making this decision so close to the first court case and do hope you can find a replacement.

13. It is clear from the letter from Dr. Furberg that a combination of his own misinterpretations as to how much time would be needed for the various litigations in which he had become involved, and the fact that a total hip replacement in the fall of 2009 put him hopelessly behind in doing his required work, required him to request that he be withdrawn as an expert in this case.

14. Prior to Dr. Furberg's advising the Plaintiffs' Steering Committee of his situation and need to withdraw as an expert, the Court, on April 27, 2010, entered an Order excluding the testimony of Plaintiffs' other liability expert, Dr. Suzanne Parisian, in its entirety.

15. The Court, in its Opinion, stated that testimony may be admissible as to the FDA regulatory scheme generally and a pharmaceutical manufacturers' obligation under that scheme (footnote 29).

16. Plaintiffs are now deprived of their generic liability expert testimony for reasons beyond the control of the Plaintiffs' Steering Committee and which could not have been anticipated. With respect to Dr. Parisian, Plaintiffs' Counsel is aware of no other court that has entirely excluded her from testifying. While some courts have excluded portions of her

testimony or expressed reservations about the scope of her testimony, the vast majority of courts have allowed her to testify with only moderate limitations. With respect to Dr. Furberg, Plaintiffs could not anticipate his personal health problems, nor the effect of his litigation commitment on his ability to testify on many cases. Because Dr. Parisian's testimony was excluded, it subsequently would become necessary for Dr. Furberg to testify more often, which he clearly is not able to do.

17.  Plaintiffs are substantially prejudiced by the inability to have a generic expert witness.

18.  At present, no trials are scheduled in the MDL.

19.  Since hearing from Dr. Furberg, Plaintiffs have been diligently seeking a substitute expert.

20.  Plaintiffs propose that, despite the vast amount of material an expert would have to review in order to give opinions which would be admissible under this Court's prior Orders, if given leave, Plaintiffs would identify an expert by July 1, 2010, provide a detailed expert report by September 1, 2010 and offer that expert for depositions during September, 2010.

21.  This court has broad discretion to allow changes in schedule. *Quiet Tech, DC-8 Inc. v. Hurel-Dubois UK Ltd.*, 326 F. 3d 1333, 1351 (11th Cir. 2003)

22.  There are four factors an appellate court may consider in reviewing a trial court's denial of a request for a scheduling change and these four factor are worthy of the court's consideration in deciding this motion.

    a.  The moving party's diligence in its efforts to ready its case prior to the date set for a hearing;

    b.  The likelihood the need for the continuance would have been remedied had the continuance been granted;

    c.    The extent to which granting the continuance would have inconvenienced the court and the opposing party; and,

    d.    The extent to which the moving party might have suffered harm as a result of the district court's denial.

23. On the first factor, the PSC submits there was no lack of diligence. In this case, the PSC carefully prepared their case in detail. The PSC took dozens of depositions of Bayer employees, most lasting several days, reviewed 23 million pages of documents, and submitted 8 generic expert reports, submitted exhibit lists for at least 2 cases, and prepared deposition designations for trial for a 30 hour plaintiffs presentation based upon hundreds of hours of video testimony. As part of this effort, the PSC submitted 2 expert reports on liability related to the Defendants responsibilities under the FDA act and industry standards. The PSC submitted these reports, at great expense, in good faith based upon their belief that the experts were both competent and available to testify. With respect to Dr. Parisian, the PSc belief was based upon a long list of cases where she was permitted to testify on issues similar to the issues in this case based upon a report similar in style to the report submitted in this case. With respect to Dr. Furberg, the PSC proceeded on the basis of representations by Dr. Furberg that he had both the time and physical capabilities to fulfill his duties.

24. On the second factor, the additional time to provide an expert report will likely remedy the dilemma faced by the PSC, as additional expert testimony would substitute for the experts no longer able to testify.

25. As to the third factor, first, the Defendants are not prejudiced by Plaintiffs' request for the following reasons:

    a.    No trials are presently scheduled and, therefore, Defendants could have access to the information prior to any trial date. Even if the court were to set trial dates for the Fall, hundreds of cases do not even have their case

     specific deadlines set, the next group (group 4) plaintiffs case specific expert reports are due July 22, 2010, and for group 5, October 22, 2010;

  b. Plaintiffs' substitute experts would give opinions on the same lines as those opinions already offered by Drs. Furberg and Parisian and, therefore, the opinions would not be a surprise to the Defendants;

  c. Defendants have two "FDA" or industry standard experts who are already knowledgeable of the case and well-positioned to quickly respond to anything Plaintiffs' additional expert would offer;

  d. The Court has substantially limited the role of such liability experts in this case and, therefore, the proffered expert opinions would be limited to a description of the regulatory scheme, industry standards regarding pharmacovigilance and response to safety signals in the post-marketing period, and the content of warnings consistent with this Court's opinions in the Parisian Order and the Buckman Order.

  e. Any additional costs can be remedied by charging the Plaintiffs. In fact, the lack of a generic expert report on these issues would actually cost the defendants more in that they would be required to review, respond to and depose experts in numerous individual cases, while it is likely that, if a new generic expert were allowed, many plaintiffs would adopt the report requiring the defendants to take the deposition only one time.

  26. As to the portion of factor three that involves the inconvenience to the court, this will be determined by the court but at present, no trials are currently scheduled and even if trials are scheduled for the Fall 2010, those cases could proceed without the report of any new expert, and therefore there would be no additional delay. While the report may be subject to an additional Daubert challenge, such challenges would be inevitable for the case specific liability expert in many cases. Handling these issues on a generic basis would actually save the court time and resources.

  27. The prejudice to the Plaintiffs would be substantial if they were forced to proceed without generic liability experts. (1) Case-specific experts would be required in each and every case, adding tremendous additional cost and expense; (2) if the Plaintiffs were to proceed without any liability experts at all, the jury would receive no explanation regarding the FDA

regulatory scheme, industry standards, the concepts of pharmacovigilance, or the obligations of a pharmaceutical manufacturer to respond to safety signals and update warnings in the post-marketing period. Many jurors have misconceptions about the FDA role in the post-marketing period, and it is Plaintiffs' believe that such information should be presented to the jury and cannot be adequately covered by the Court's instructions.

28.     The undersigned has discussed the substance of this motion with opposing counsel and Defendants oppose the relief requested by the Plaintiffs herein.

WHEREFORE, Plaintiffs respectfully request the Court allow a supplemental discovery schedule allowing the Plaintiffs to offer an additional generic liability expert.

Respectfully submitted,

**ANAPOL SCHWARTZ**


Date:  June 11, 2010            By:    /s/ James R. Ronca
                                       James R. Ronca, Esquire
                                       Supreme Ct. I.D. #25631
                                       1710 Spruce Street
                                       Philadelphia, PA  19103
                                       (215) 735-1130
                                       fax (215) 875-7758
                                       jronca@anapolschwartz.com
                                       ***Co-Lead Counsel for Plaintiffs***