## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS<br>LIABILITY LITIGATION — MDL-1928<br><br>This Document Relates to **ALL ACTIONS** | )<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE DEFENDANTS' EXPERT PAUL WAYMACK, M.D.

Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals Inc., and Bayer Schering Pharma AG respectfully submit this response in opposition to plaintiffs' "motion *in limine*" to exclude all testimony by defendants' generic expert, Paul Waymack, M.D. (D.E. 6112) ("Mot.").

### INTRODUCTION AND SUMMARY

Although plaintiffs never mention *Daubert v. Merrell Dow Pharms. Inc*., 509 U.S. 579 (1993), or Federal Rule of Evidence 702, their motion is nothing more than a belated—and meritless—*Daubert* challenge to testimony by one of Bayer's generic expert witnesses. Bayer submitted Dr. Waymack's generic expert report on November 3, 2009, and plaintiffs deposed him on January 6, 2010.  The deadline to file *Daubert* motions has come and gone.  *See* PTO 13 ¶ I.K at 4-5.  There is no good cause for plaintiffs' delay:  the premise of plaintiffs' motion is a supposed tension between Dr. Waymack's proffered testimony and the Supreme Court's preemption decision in *Wyeth v. Levine*, 129 S. Ct. 1187 (2009).  *Levine* was decided almost a year *before* Dr. Waymack's deposition and plaintiffs questioned Dr. Waymack about *Levine* at his deposition.  If plaintiffs truly believed that *Levine* provided a legitimate basis to challenge Dr. Waymack's testimony, they could and should have done so earlier.  Accordingly,

plaintiffs' motion should be denied as untimely.  *See, e.g., Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1349 (11th Cir. 2003) ("only in rare circumstances will such tardy [*Daubert*] motions . . . be warranted"); *Miro, LLC v. Ass'n Cas. Ins. Co.*, No. 6:05-cv-193-Orl-31KRS, 2006 WL 5111112, *1 (M.D. Fla. Mar. 15, 2006) (denying plaintiffs' motion because it "is plainly a *Daubert* Motion, [that ] was untimely filed" without good cause).

If the Court does reach the substance of plaintiffs' motion, the motion should be denied on the merits.  Although plaintiffs previously saw no credible basis for challenging *any* of Dr. Waymack's testimony, they now challenge the testimony "in its entirety" because they contend portions of it are contrary to *Levine*.  *See* Mot. at 1; *id.* at 3 (seeking to prevent Dr. Waymack from offering "any testimony whatsoever"); *id.* at 4 ("his opinions should be excluded in their entirety").  Plaintiffs rely heavily on a recent decision, *In re Gadolinium-Based Contrast Agents Products Liability Litigation*, No. 1:08-GD-50000, 2010 WL 1796334 (N.D. Ohio May 4, 2010), which took the extraordinary—and, as it acknowledged, novel—step of excluding expert testimony in its entirety in light of a mistaken view that a few answers Dr. Waymack gave at a deposition contravened *Levine*.  Even that court recently reversed itself on reconsideration, and "will modify its ruling and permit [Dr. Waymack] to testify on the rest of the regulatory process except for labeling obligations."  *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, No. 1:08 GD 50000, slip op. at 20 (N.D. Ohio June 18, 2010) (attached as Ex. A).

There is no basis to exclude any of Dr. Waymack's testimony in the circumstances of this case.  Defendants have no intention of offering legal opinions by Dr. Waymack that contravene *Levine* and, as detailed below, none of plaintiffs' arguments for supposed disagreement between Dr. Waymack's opinions and *Levine* survive analysis anyway. As the Court is well aware from prior briefing, *Levine* is a preemption case about the

circumstances in which FDA's approval of warnings provides a complete defense to a state-law claim that the warning is inadequate.  Defendants are not asserting, and Dr. Waymack's opinions do not support, that plaintiffs' warnings claims all are preempted by federal law, and *Levine* is therefore inapposite here.

What Dr. Waymack's report does do is offer a range of opinions about pharmaceutical development and the FDA regulatory scheme generally, as well as Trasylol's clinical and regulatory development.  *See* Expert Report of J. Paul Waymack, M.D., Sc.D. ("Waymack Report") at 1-32 (Ex. B).  Plaintiffs do not challenge Dr. Waymack's considerable expertise on these matters.  Nor could they, as he is a physician and surgeon who regulated pharmaceuticals as a Food and Drug Administration ("FDA") medical officer and, as a consultant, assists regulated entities in navigating the pharmaceutical development and FDA-approval process.  *See id.* at 1-2.  He therefore is well-qualified to testify regarding drug development, particularly as it intersects with FDA review and oversight, *id.* at 2-14, and can apply his expertise to draw conclusions about Trasylol's clinical and regulatory development, *id.* at 15-32.  As detailed below, this testimony is not contrary to the law established in *Levine* and is not unfairly prejudicial, confusing, or potentially misleading.

If the Court, however, were to find certain of Dr. Waymack's opinions contrary to *Levine*, at most, the remedy would be (as even the *Gadolinium* court now acknowledges) to preclude those specific opinions, not the entirety of his testimony.

## ARGUMENT

**I.      PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. WAYMACK SHOULD BE DENIED AS UNTIMELY.**

As a threshold matter, plaintiffs' motion to exclude Dr. Waymack's testimony should be denied because it is untimely.  *See, e.g.*, *Quiet Tech. DC-8*, 326 F.3d at 1349 (holding

that an untimely motion to exclude expert testimony is a basis for denying the motion); *Richter v. Home Depot, U.S.A., Inc.*, No. 8:05-cv-2153-T-TBM, 2009 WL 2914256, *3 (M.D. Fla. Aug. 4, 2009) ("Plaintiff's *Daubert* objection may be rejected as untimely."); *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, Nos. 2:05-cv-165-FTM-29SPC, 2:05-cv-187-FTM-29SPC, 2006 WL 1071997, *2 (M.D. Fla. April 24, 2006) (denying *Daubert* motion because it violated the deadlines imposed by the case management order).[1]  "[A] party that has not timely submitted its objections [must] show good cause for failing to comply with the timing requirements."  *Donihe v. Young*, No. 4:05-CV-052-RLV, 2006 WL 5249717, *5 (N.D. Ga. Dec. 6, 2006).  Where a party does "not make a timely motion . . . and [does] not offer[] any reason for her delay[,] [t]he district court [is] on firm ground in refusing her motion as untimely." *Feliciano-Hill v. Principi*, 439 F.3d 18, 24 (1st Cir. 2006); *see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2007 WL 1964337, at *14 ("The Court will not entertain untimely *Daubert* motions.").  Plaintiffs offer no excuse for their delay here, and there is none.

        This Court has set up a detailed schedule to ensure that general discovery, including generic expert discovery, was completed in a timely manner so that it could set the stage for the orderly and efficient progression, and resolution, of the case-specific issues in this litigation.  Particularly in the MDL setting, courts need to "establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion,

---

[1] *See, e.g.*, *Miro*, 2006 WL 5111112, at *1 (denying plaintiffs' motion because it is "is plainly a *Daubert* Motion, [that] was untimely filed" without good cause); *Shearrer v. Union Pac. R. Co.*, No. 09-cv-0122, 2010 WL 1540113, *3 (S.D. Ill. April 15, 2010) (denying attempt to file motion to exclude expert testimony more than one month after the deadline); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, MDL No. 05-1708 (DWF/AJB), 2007 WL 1964337, *14 (D. Minn. June 29, 2007) ("The Court will not entertain untimely *Daubert* motions.").

settlement, or trial." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229,

1232 (9th Cir. 2006).  Consistent with PTO 13, Bayer submitted Dr. Waymack's generic expert

report over seven months ago, on November 3, 2009, and plaintiffs deposed him on January 6,

2010.  *See* PTO 13 ¶ I.B, at 2.  Yet plaintiffs did not meet the deadline for filing *Daubert*

motions.  *See id.* ¶ I.K, at 4 ("Plaintiffs' *Daubert* motions shall be filed and served by January 22,

2010").  In apparent recognition of this problem, plaintiffs label their filing a "motion *in limine*,"

rather than a *Daubert* motion.  But the substance of their motion, and the cases they cite, plainly

address the propriety of admitting expert witness testimony under *Daubert* and Rule 702.  For

example, the *Gadolinium* opinion on which plaintiffs heavily rely was issued in response to

"omnibus Generic *Daubert* motions filed by the Plaintiffs Steering Committee" in which

plaintiffs argued that Rule 702 and *Daubert* provided the basis for exclusion.  2010 WL

1796334, at *1.  Plaintiffs' motion here, whatever it is called, is a *Daubert* motion and, as such,

was not timely.

       As noted, plaintiffs have made no attempt to excuse their delay, and there is none

because the premise of their motion is not a new and binding Supreme Court or Eleventh Circuit

decision just handed down, but a case that was available for their analysis nearly a year before

Dr. Waymack was deposed—and one they actually addressed with him with at deposition.  If

plaintiffs truly felt they had a legitimate basis to move to exclude Dr. Waymack's testimony

based on *Levine*, they could and should have moved to exclude his testimony in a timely *Daubert*

motion following that deposition.  They did not and should not receive a belated chance to try

again now.  Finally, although a showing of prejudice is not required, *see Donihe*, 2006 WL

5249717, at *5 (explaining that whether an untimely motion to exclude expert testimony will

cause undue delay or prejudice "is not the criteria"), plaintiffs' noncompliance does pose

significant prejudice to Bayer, whose strategy and trial preparations naturally have included the possibility of Dr. Waymack's testimony given that none of his opinions previously were challenged by plaintiffs.  As such, plaintiffs' untimely motion should be denied.

## II.     IN THE ALTERNATIVE, THE MOTION SHOULD BE DENIED BECAUSE DR. WAYMACK'S TESTIMONY IS NOT CONTRARY TO LAW OR OTHERWISE INADMISSIBLE.

Even if the Court reaches the substance of plaintiffs' motion, the motion still should be denied.  Plaintiffs argue that all of Dr. Waymack's testimony must be excluded because his experience-based views of one aspect of FDA's regulation of prescription drugs purportedly conflict with the Supreme Court's decision in *Levine*.  Their argument for exclusion is wrong on the facts and the law.  Moreover, even if plaintiffs were correct that the discrete opinions they identify are inadmissible, there is no basis for excluding *all* testimony by Dr. Waymack as a result.  Because Dr. Waymack is well-qualified, his opinions are the product of extensive expertise applied to the facts of this case, and his testimony is relevant and would not cause confusion or undue prejudice—points plaintiffs otherwise do not dispute—plaintiffs' motion should be denied.  *See* Fed. R. Evid. 702.

### A.     Plaintiffs Mischaracterize Dr. Waymack's Deposition Testimony To Try To Create The Appearance Of A Conflict With *Levine*.

Plaintiffs wrongly assert that Dr. Waymack's testimony should be excluded because some of his opinions are contrary to the Supreme Court's decision in *Levine*.  Mot. at 1.  But Dr. Waymack's testimony does not demonstrate "that he quite simply disagrees with the holdings in *Levine* and chooses to ignore them."  *Id.* at 9.  Dr. Waymack's report offers no opinions on *Levine*, much less the preemptive effect of federal law, and Bayer does not intend to elicit such testimony at trial.  As the Court is well aware from recent briefing, *Levine* holds that state law failure-to-warn claims were not preempted by federal law absent a record that FDA

would have precluded the manufacturer from giving the heightened warnings plaintiffs contended were required by state law.  *See* 129 S. Ct. at 1198.  Defendants do not claim that FDA regulation disposes of or provides a complete defense to plaintiffs' state-law claims.  In short, *Levine* is not relevant to the issues here and provides no basis for excluding Dr. Waymack's testimony.

Nonetheless, at Dr. Waymack's deposition, plaintiffs repeatedly sought to elicit legal opinions from him.  For instance, plaintiffs asked Dr. Waymack:  "Do you disagree with the United States Supreme Court in the way they've interpreted the regulations as reflected in the opinion *Wyeth* [*v.*] *Levine*?"  Deposition of Dr. J. Paul Waymack, M.D., Sc.D. (Jan. 6, 2010) ("Waymack Dep.") (Ex. C) at 149:2-5.  Dr. Waymack repeated several times during this line of questioning that he is not an attorney and would only comment on his experience at FDA of how drugs are regulated.  *Id.* at 146:16-148:10.[2]

Throughout the motion, however, plaintiffs misapply and over-read *Levine*. Plaintiffs highlight several statements by Dr. Waymack and seek to exclude the entirety of his opinions based on the allegation that those particular statements conflict with "four principles" plaintiffs cull from *Levine*.  Mot. at 5.  These principles are that drug manufacturers (1) bear responsibility for updating their labels, (2) do not need FDA pre-approval to add safety information to the label, (3) have superior access to information about their drugs than FDA, and that (4) FDA may not require post-marketing label changes.  *See id.* at 5-6.  Invoking these four general notions, plaintiffs claim that all of Dr. Waymack's testimony must be excluded because

---

[2] When asked, Dr. Waymack merely acknowledged that *his experience* working at FDA and with FDA is more consistent with the dissent in *Levine* than the majority opinion.  *See* Waymack Dep. at 149:6-9.  Plaintiffs offer no evidence that his experience is otherwise, and they did not question him further at his deposition about his relevant experience or ask him to clarify what aspects of the majority opinion or dissent he was referencing.

he supposedly erroneously asserts that:  (1) FDA is the ultimate authority on information contained in labeling; (2) FDA can require manufacturers to change labeling to reflect updated safety information; and (3) "major" labeling changes require FDA approval and cannot be done under the changes being effected ("CBE") process.  *Id.* at 2, 8-9.  Plaintiffs also contend that Dr. Waymack's testimony should be excluded because although it does "not directly conflict[] with *Wyeth*, [it] ha[s] misleading omissions that render the opinions expressly at odds with the law of the land."  *Id.* at 7.  As shown below, none of these issues actually is at odds with *Levine*.

> **1.**    **"FDA is the ultimate authority on the information in the label."**

Plaintiffs state that Dr. Waymack "wrongly asserts that the FDA is the ultimate authority on the information in the label" for a pharmaceutical.  Mot. at 2.  Plaintiffs' argument hinges on a mischaracterization of both Dr. Waymack's testimony and the Supreme Court's observations in *Levine*.

Unlike plaintiffs, the Supreme Court in *Levine* and Dr. Waymack both make clear that this is no either/or proposition:  a manufacturer has the "responsibility" for ensuring that its drug labeling is adequate at all times *and* the FDA has "ultimate authority" to approve or reject labeling changes.  The *Levine* court emphasized:  "Of course, the FDA retains authority to reject labeling changes made pursuant to the [changes-being effected] CBE regulation in its review of the manufacturer's supplemental application, just as it retains such authority in reviewing all supplemental applications."  129 S. Ct. at 1198.  Indeed, post-*Levine*, the Fifth Circuit has recognized:  "FDA is the *ultimate arbiter* for *all changes*" to a prescription drug's labeling and "[e]*very* submitted change requires FDA approval, even one that takes effect immediately through the CBE process."  *Demahy v. Actavis, Inc.*, 593 F.3d 428, 442 (5th Cir. 2010) (first emphasis added).

Dr. Waymack's report is in accord.  He notes that:  "FDA has ultimate authority over pharmaceutical development and marketing, including the labeling of such products. Sponsors must follow the dictates of the FDA with respect to the content and format of labeling, as well as all other areas of pharmaceutical development."  Waymack Report ¶ 76.  Contrary to plaintiffs' suggestions, Mot. at 5 § A.1; *id.* at 7 (quoting Waymack Report ¶ 76), this recognition does not conflict with *Levine*'s statement that the "manufacturer bears responsibility for the content of its label at all times."  129 S. Ct. at 1197-98.  In fact, Dr. Waymack's deposition testimony echoes *Levine*'s language:

> Q. Okay.  You believe and agree that it's a central premise of federal drug regulations that the manufacturer bears responsibility for the contents of its label at all times?
>
> [objection to form]
>
> A. *They are responsible for the content of their labeling with FDA concurrence.*

Waymack Dep. (Jan. 6, 2010) (Ex. C), at 130:7-14 (emphasis added).[3]  In addition, Dr. Waymack's statement in ¶ 34 of his expert report that "FDA is the ultimate authority on the information included in the labeling" was made in the context of FDA's review of a new drug application ("NDA"):

> The FDA is the ultimate authority on the information included in the labeling – this includes how the data are formatted, organized, and presented – and can require a sponsor include specific language as part of the labeling.

---

[3] In all events, Dr. Waymack's testimony about how the FDA-approval process operates was not an opinion about *Levine* or the preemptive effect of federal law generally, but was premised on his considerable real-world expertise as an FDA medical reviewer and as a consultant in the FDA review process.  *See, e.g.*, Waymack Dep. at 131:17-22 ("I've worked with many drugs as an FDA reviewer and as an industry person and I am not aware of a single occasion where someone proposed labeling and the FDA accepted it verbatim the first time.").

> *Following its review of the NDA*, *including the proposed labeling*, the FDA decides either to approve or not approve the drug for marketing in the United States.  The standard for approval of a new drug for marketing in the United States is whether the drug is "safe and effective" for use when administered according to the labeling.

Waymack Report (Ex. B) ¶¶ 34-35 (emphasis added).  The Supreme Court's observations in *Levine* are in accord, recognizing that "FDA's premarket approval of a new drug application includes the approval of the exact text in the proposed label."  *Levine*, 129 S. Ct. at 1196.[4]

Thus, plaintiffs have shown no basis for excluding Dr. Waymack's testimony regarding FDA's authority, let alone all of his testimony.

### 2. "FDA can require manufacturers to change labeling to reflect updated safety information."

Plaintiffs also try to manufacture a problem with Dr. Waymack's testimony based on a recent statutory change in FDA's authority that permits FDA to *directly* require labeling changes in addition to its prior authority to *indirectly* compel such changes (though exercise of its power to declare a product misbranded or withdraw underlying marketing approval).  This is a distinction without a difference for present purposes because Dr. Waymack does not dispute the point.

Plaintiffs argue that all of Dr. Waymack's testimony should be excluded because he "wrongly opines that after reviewing the spontaneous adverse events, the FDA can require the manufacturer to change its label to reflect updated safety information, and that the drug manufacturer must follow the dictates of the FDA with respect to the content of labeling."  Mot. at 2; *see also id*. at 6-7 (stating that Dr. Waymack's opinions are contrary to *Levine*'s observation

---

[4] Additionally, even plaintiffs' proposed regulatory expert Dr. Parisian accepted that:  "FDA *ultimately has the authority* to accept, reject, or request modifications of the proposed changes to the label in the CBE as the agency deems appropriate."  Expert Report of Suzanne Parisian, M.D. ("Parisian Report") (excerpt at Ex. D) ¶ 79 (emphasis added).

that FDA lacks the authority to order post-marketing labeling changes).  Plaintiffs again try to manufacture inconsistencies between *Levine* and Dr. Waymack's testimony where none exist.

*Levine* states that only in 2007 did Congress "grant[] the FDA *statutory authority* to require a manufacturer to change its drug label based on safety information that becomes available after a drug's initial approval."  129 S. Ct. at 1196 (emphasis added); *id.* at 1198.  Dr. Waymack never has disputed that point.  Had plaintiffs explored the point at the deposition, they would have learned that Dr. Waymack's position is that FDA could compel manufacturers to change drug labeling *indirectly* prior to 2007.

Plaintiffs do not and cannot challenge that prior to 2007 FDA could *indirectly* compel labeling changes.  *See*, *e.g.*, 21 U.S.C. § 355(e) (authority of FDA to withdraw drug approval for false and misleading labeling); *Bradley v. Weinberger*, 483 F.2d 410, 414 n.1 (1st Cir. 1973) ("Although the FDA has no direct statutory power to compel labeling changes, it may refuse or withdraw approval of an application, under § 355(d) or (e), if new information demonstrates that the labeling is 'false or misleading.'").  This authority both was meaningful and successfully utilized by FDA.  *See*, *e.g.*, *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967) ("The alternative to compliance [with FDCA] . . . may be even more costly.  That course would risk serious criminal and civil penalties for the unlawful distribution of 'misbranded' drugs."), *abrogated on other grounds by*, *Califano v. Sanders*, 430 U.S. 99 (1977); *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 277 (E.D.N.Y. 2007) (noting that "manufacturers of atypical antipsychotics[] were *compelled by the FDA* to include [certain warning] statements by the September 2003 labeling directive") (emphasis added).  Thus, what is misleading is not Dr. Waymack's testimony, but to pretend, as plaintiffs do, that FDA's far greater power to withdraw drugs from the market deprived it of a lesser power to affect labeling changes before 2007.

In sum, FDA's pre-2007 authority to indirectly compel labeling changes in accordance with 21 U.S.C. § 355(e) is not inconsistent with *Levine*'s statement that "prior to 2007, the FDA lacked the authority to order manufacturers to revise their labels." *Levine*, 129 S. Ct. at 1198. Thus, there is not an actual conflict between Dr. Waymack's testimony and *Levine*.

### 3. "Major" labeling changes require FDA approval and cannot be done under the CBE process.

Plaintiffs wrongly suggest that Dr. Waymack's opinions regarding what changes can be made under FDA's CBE regulations are at odds with *Levine*. *See* Mot. at 8-9. As plaintiffs acknowledge, Dr. Waymack actually testified that FDA does permit manufacturers to make "certain changes" to a drug's labeling prior to receiving FDA approval. *Id.* at 8 (citing Waymack Dep. (Jan. 6, 2010) (Ex. C), at 79:5-18). Dr. Waymack also testified that a manufacturer is permitted to add or strengthen a contraindication, warning, precaution, or adverse reaction through a CBE labeling change in "certain unique situations." *Id.* Again, this testimony is consistent with *Levine*'s comments on CBE labeling changes: "Generally speaking, a manufacturer may only change a drug label after the FDA approves a supplemental application. There is, however, an FDA regulation that permits a manufacturer to make *certain changes* to its label before receiving the agency's approval." *Levine*, 129 S. Ct. at 1196 (emphasis added); *see also Demahy*, 593 F.3d at 442 (recognizing that even changes that take effect immediately through the CBE process require FDA's approval thereafter); n.4, *supra*.

Plaintiffs further declare that Dr. Waymack's testimony that FDA considers certain changes to be "major changes" requiring prior approval is "squarely at odds with the Supreme Court's holding" in *Levine*. Mot. at 7. *Levine*, however, does not address FDA's classification in its regulations of certain changes as "major" ones. Thus, plaintiffs' contention that Dr. Waymack's testimony on the subject is contrary to *Levine* is mistaken. Dr. Waymack's

opinion is based on his experience as an FDA official reviewing drug regulation issues and his subsequent experience in dealing with the agency on behalf of pharmaceutical companies navigating the regulatory process. Furthermore, Dr. Waymack's opinion is supported not only by his expertise, but also by 21 C.F.R. § 314.70(b), which is titled "*Changes requiring supplement submission and approval prior to distribution of the product made using the change (major changes)*." *Id.*; *see also* 73 Fed. Reg. 49607 (August 22, 2008 Final Rule on 21 C.F.R. § 314 stating that "[u]nder existing regulations, changes to the Highlights are classified as a 'major change,' requiring a prior approval supplement"—rather than being ones a company can make without FDA prior approval). Although plaintiffs may disagree with Dr. Waymack's categorization of Trasylol's December 2006 labeling change as a "major" one requiring FDA prior approval, *compare* Waymack Report (Ex. B) ¶ 75, *with* Mot. at 9—a matter about which they can cross-examine him at trial—plaintiffs' disagreement does not establish that Dr. Waymack's opinion is contrary to *Levine*.

### 4. Dr. Waymack's purported "omissions" regarding FDA's approval process.

Plaintiffs also claim that all of Dr. Waymack's testimony should be excluded—even portions that, by plaintiffs' own admission, do "not directly conflict[] with *Wyeth*" v. *Levine*—because it supposedly has "omissions that render the opinions expressly at odds with the law of the land." Mot. at 7. Setting aside how something Dr. Waymack did *not* say could be "expressly" at odds with the law, at bottom, plaintiffs ask the Court to exclude portions of Dr. Waymack's testimony they admit are *not* in conflict with *Levine*.

For instance, plaintiffs admit the truth of Dr. Waymack's statement that FDA can make changes to labeling *before* initial drug approval, *see* Waymack Report ¶ 32, but seek to have Dr. Waymack's testimony excluded in its entirety because he allegedly does not "clarify

that the FDA lacks authority to make changes to the label *after* approval." Mot. at 7 (apparently referencing the pre-2007 FDA regime, *see also supra* § II.A.2). Setting aside the merits of this characterization (which we address above), if plaintiffs believe that Dr. Waymack has failed to include information pertinent to this case in his testimony, then they may question him about it on cross-examination. *See generally U.S. v. 0.161 Acres of Land in Birmingham, Ala.,* 837 F.2d 1036, 1040 (11th Cir. 1988) ("[W]here the expert's testimony has a reasonable factual basis, a court should not exclude it. Rather, it is for opposing counsel to inquire into the expert's factual basis"). There is no basis to exclude these opinions about the regulatory process.

> **B.     Even If The Court Found Certain Opinions Offered By Dr. Waymack To Be Contrary To Law, At Most, The Proper Remedy Would Be To Exclude Those Opinions, Not His Entire Testimony.**

As demonstrated above, Dr. Waymack's opinions are not contrary to the law. But even assuming that the Court found certain of his opinions to be inconsistent with *Levine*, the proper remedy would be to exclude those particular opinions, not to exclude him from testifying at all. Indeed, even the *Gadolinium* court recognized that it was adopting a novel approach when it took the extraordinary step of excluding testimony in its entirety based on a statement at a deposition that is in potential tension with the statement of a judicial body. *See* 2010 WL 1796334, at 57-58 ("[T]he Court was unable to find, nor did either party cite a Sixth Circuit case on this issue."). And, as noted above, that court recently corrected itself in part and "will modify its ruling and permit [Dr. Waymack] to testify on the rest of the regulatory process except for labeling obligations." *In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.*, slip op. at 20 (attached as Ex. A). None of the other cases cited by plaintiffs in support of their requested relief stand for the proposition that an expert who offers a single opinion contrary to the law should have *all* of his or her opinions excluded as unreliable. *See*, *e.g.*, *BNSF Ry. Co. v. LaFarge S.W., Inc.*, No. 06-1076 MCA/LFG, 2009 WL 4279771, *3, 6 (D.N.M. Feb. 12, 2009) (excluding

expert's opinions related to railroad operations, but not accident reconstruction); *Southard v. United Reg'l Health Care Sys., Inc.*, No. 7-06-CV-11-L, 2008 WL 4489692, *2 (N.D. Tex. Aug. 5, 2008) (excluding defendants' experts opinion only on "whether the requirements of the EMTALA were satisfied").

   In addition, to the extent an expert purports to offer a legal conclusion, that narrow piece of testimony can be excluded under the well-established rule that expert witnesses are not permitted to offer legal conclusions.  *See Chick-Fil-A, Inc. v. CFT Dev. LLC*, No. 5:07-cv-501-Oc-10GRJ, 2009 WL 1754058, *3 (M.D. Fla. June 18, 2009) ("[E]xpert testimony that expresses a legal conclusion is inadmissible."); *Dubiel v. Columbia Hosp. (Palm Beaches) Ltd. P'ship*, No. 04-80283-CIV, 2005 WL 5955691, *4 (S.D. Fla. Jan. 11, 2005) ("Generally, testimony that purports to offer legal opinions is properly excluded."); *Jackson v. Carnival Cruise Lines, Inc.*, 203 F. Supp. 2d 1367, 1379 (S.D. Fla. 2002) (excluding testimony that was "nothing more than a legal conclusion").

   Thus, even if the Court finds that certain of Dr. Waymack's opinions regarding labeling are contrary to the law (and, as shown above, they are not), at most, the proper remedy would be to exclude those specific opinions.  At a minimum, Dr. Waymack should be permitted to offer opinions that do not touch on issues addressed in *Levine*.  *See*, *e.g.*, Waymack Report (Ex. B) ¶¶ 8-174 (offering numerous opinions on pharmaceutical product development, FDA's approval of pharmaceuticals for marketing, and Trasylol's clinical and regulatory development apart from the CBE regulation at issue in *Levine*).

### C. Dr. Waymack's Testimony Should Not Be Excluded Under Rule 403.

   Finally, plaintiffs assert that Dr. Waymack's testimony should be excluded under Federal Rule of Evidence 403 as potentially misleading and confusing to the jury.  *See* Mot. at 13 (arguing that plaintiffs "will be required at trial to spend a great deal of time teasing out [Dr.

Waymack's] misstatements and presenting witnesses to testify extensively as to the true state of the law with regard to such responsibilities").  As detailed above, defendants have no intention of presenting legal conclusions by Dr. Waymack that contravene *Levine*, and the opinions plaintiffs challenge are fully reconcilable with *Levine*.  Accordingly, they are in no way misleading or confusing.  Moreover, although the plaintiffs complain that they will need to rebut Dr. Waymack's testimony regarding the appropriateness of Bayer's actions with respect to its labeling, such an argument goes only to the weight of the evidence, not its admissibility.  For example, as this Court has previously ruled, challenges to the factual premise of an expert's testimony is through "vigorous cross-examination and the presentation of contrary evidence."  *In re Trasylol Prods. Liab. Litig*., No. 08-1928, 2010 WL 1489725, *6 (S.D. Fla. Mar. 29, 2010).

Dr. Waymack indisputably is an expert in the areas of pharmaceutical development, pharmaceutical labeling, and FDA regulations and practices, and plaintiffs may cross-examine him to test his opinions or seek to elicit their own rebuttal testimony.  *See Daubert*, 509 U.S. at 596.  Plaintiffs' disagreement with Dr. Waymack's opinions does not establish the likelihood of jury "confusion," nor would plaintiffs' presentation of witnesses with opinions different from those of Dr. Waymack equate to a "waste of time."  Mot. at 12. Plaintiffs have made no showing of unfair prejudice, confusion of the issues, or of misleading the jury—let alone a showing sufficient to outweigh the probative value of Dr. Waymack's testimony.

## CONCLUSION

For these reasons, defendants respectfully request that the Court deny plaintiffs'

motion to exclude the testimony of defendants' expert Paul Waymack, M.D.

DATED:  June 21, 2010                    Respectfully submitted,


                                         */s/ Barbara Bolton Litten*

                                         Patricia E. Lowry
                                         Florida Bar No. 332569
                                         E-mail:  plowry@ssd.com
                                         Barbara Bolton Litten
                                         Florida Bar No. 91642
                                         E-mail:  blitten@ssd.com
                                         SQUIRE, SANDERS & DEMPSEY L.L.P.
                                         900 Phillips Point West
                                         777 South Flagler Drive
                                         West Palm Beach, FL 33401-6198
                                         Telephone:  561-650-7200
                                         Facsimile:  561-655-1509

                                         Philip S. Beck
                                         Email:  philip.beck@bartlit-beck.com
                                         Steven E. Derringer
                                         Email:  steven.derringer@bartlit-beck.com
                                         BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
                                         54 W. Hubbard Street, Suite 300
                                         Chicago, IL  60603
                                         Telephone:  312-494-4400
                                         Facsimile:  312-494-4440

                                         Eugene A. Schoon
                                         Email:  eschoon@sidley.com
                                         Susan A. Weber
                                         Email:  saweber@sidley.com
                                         SIDLEY AUSTIN LLP
                                         One South Dearborn Street
                                         Chicago, Illinois 60603
                                         Telephone:  312-853-7000
                                         Facsimile:   312-853-7036

Rebecca K. Wood
Email:  rwood@sidley.com
Eamon P. Joyce
Email:  ejoyce@sidley.com
Amy L. Hanke
Email:  ahanke@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:  202-736-8711

***Counsel for Defendants***

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


*/s/  Barbara Bolton Litten*
Barbara Bolton Litten

### SERVICE LIST

**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON**

**United States District Court**
**Southern District of Florida**

| | |
|---|---|
| James R. Ronca<br>Email:  jronca@anapolschwartz.com<br>**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN**<br>**& SMALLEY, P.C.**<br>1710 Spruce Street<br>Philadelphia, PA 19103<br>Telephone:  215-735-1130<br>Facsimile:  215-875-7758<br>*Plaintiffs' Steering Committee/Co-Lead Counsel* | Scott A. Love<br>Email:  slove@triallawfirm.com<br>**CLARK, BURNETT, LOVE & LEE, G.P.**<br>Lyric Center<br>440 Louisiana Street, Suite 1600<br>Houston, TX  77002<br>Telephone:  713-759-1400<br>Facsimile:  713-759-1217<br>*Plaintiffs' Steering Committee/Co-Lead Counsel* |
| Theodore Babbitt<br>Email:  tedbabbitt@babbitt-johnson.com<br>**BABBITT JOHNSON OSBORNE**<br>**& LeCLAINCHE, P.A.**<br>1641 Worthington Road, Suite 100<br>West Palm Beach, Florida 33409<br>Telephone: 561-684-2500<br>Facsimile:  561-684-6308<br>*Plaintiffs' Steering Committee/Liaison Counsel* | Joseph A. Osborne<br>Email:  JAOsborne@babbitt-johnson.com<br>**BABBITT JOHNSON OSBORNE**<br>**& LeCLAINCHE, P.A.**<br>1641 Worthington Road, Suite 100<br>West Palm Beach, Florida 33409<br>Telephone: 561-684-2500<br>Facsimile:  561-684-6308<br>*Plaintiff's Steering Committee/Liaison Counsel* |
| Doug Monsour<br>Email: doug@monsourlawfirm.com<br>**THE MONSOUR LAW FIRM**<br>P.O. Box 4209<br>Longview, TX 75606<br>Telephone: 903-758-5757<br>Facsimile:  903-230-5010<br>*Plaintiff Steering Committee* | Brian H. Barr<br>Email: bbarr@levinlaw.com<br>**LEVIN PAPANTONIO THOMAS MITCHELL**<br>**ECHSNER & PROCTOR PA**<br>316 S. Baylen St., Suite 600<br>Pensacola, FL  32502<br>Telephone:  850-435-7000<br>Facsimile:  850-435-7020<br>*Plaintiff Steering Committee* |

Ernest Cory
Email: ecory@cwcd.com
**CORY WATSON CROWDER & DEGARIS**
2131 Magnolia Ave.
Birmingham, AL  35205
Telephone: 205-328-2200
Facsimile: 205-324-7896
*Plaintiff's Steering Committee*

Marc Jay Bern
Email: mjbern@napolibern.com
**NAPOLI BERN & ASSOCIATES LLP**
3500 Sunrise Highway, Suite T-207
Great River, NY  11739
Telephone: 631-224-1133
Facsimile: 631-224-4774
*Plaintiff's Steering Committee*

Fred Thompson
Email: fthompson@motleyrice.com
**MOTLEY RICE LLC**
P.O. Box 1792
Mt. Pleasant, SC 29405
Telephone: 843-216-9000
Facsimile: 843-216-9440
*Plaintiff Steering Committee*

Neil D. Overholtz
Email: noverholtz@awkolaw.com
**ALYSTOCK, WITKIN, KREIS
    & OVERHOLTZ, PLLC**
803 North Palafox Street
Pensacola, FL 32501
Telephone: 850-916-7450
Facsimile: 850-916-7449
*Plaintiff Steering Committee*

Joseph P. Danis
Email: jdanis@careydanis.com
**CAREY AND DANIS, LLC**
8235 Forsyth Blvd., Suite 1100
St. Louis, MO 63105
Telephone: 314-678-3400
Facsimile: 314-678-3401
*Plaintiff Steering Committee*

David Matthews
Email: jrhoades@thematthewslawfirm.com
**MATTHEWS & ASSOCIATES**
2905 Sackett Street
Houston, TX 77098
Telephone: 713-522-5250
Facsimile: 713-535-7184
*Plaintiff Steering Committee*

Neal Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: 203-610-6393
Facsimile: 203-610-6399
*Plaintiff Steering Committee/
Federal-State Liaison*

Steven E. Derringer
Email: steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone: 312-494-4400
Facsimile: 312-494-4440
*Defendants Co-Lead Counsel and
Attorney for Defendants Bayer Corporation,
Bayer Healthcare Pharmaceuticals Inc., Bayer
Healthcare LLC, Bayer AG, and Bayer Schering
Pharma AG*

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
     & SCOTT LLP**
54 West Hubbard, Suite 300
Chicago, IL 60610
Telephone: 312-494-4400
Facsimile:  312-494-4440
*Defendants Co-Lead Counsel and
Attorney for Defendants Bayer Corporation,
Bayer Healthcare Pharmaceuticals Inc., Bayer
Healthcare LLC, Bayer AG, and Bayer Schering
Pharma AG*

Eugene A. Schoon
Email:  eschoon@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: 312-853-7000
Facsimile:  312-853-7036
*Defendants Co-Lead Counsel and
Attorney for Defendants Bayer Corporation,
Bayer Healthcare Pharmaceuticals Inc., Bayer
Healthcare LLC, Bayer AG, and Bayer Schering
Pharma AG*

Susan Artinian
Email:  sartinian@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI 48243
Telephone: 313-568-6800
Facsimile:  313-568-6658
*Defendants Co-Lead Counsel and
Attorney for Defendants Bayer Corporation,
Bayer Healthcare Pharmaceuticals Inc., Bayer
Healthcare LLC, Bayer AG, and Bayer Schering
Pharma AG*

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Telephone:  412-566-6000
Facsimile:  412-566-6099
*Defendants Co-Lead Counsel and
Attorney for Defendants Bayer Corporation,
Bayer Healthcare Pharmaceuticals Inc., Bayer
Healthcare LLC, Bayer AG, and Bayer Schering
Pharma AG*

Patricia E. Lowry
Florida Bar No. 332569
Email:  plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Defendants' Liaison Counsel and
Attorneys for Defendants Bayer Corporation,
Bayer Healthcare Pharmaceuticals Inc.,
Bayer Healthcare LLC, Bayer AG, and Bayer Schering
Pharma AG*