# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to All Actions

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL GENERIC EXPERT REPORT

Defendants Bayer Corporation, Bayer HealthCare Pharmaceuticals Inc., and Bayer Schering Pharma AG oppose plaintiffs' Motion for Leave to File Supplemental Generic Expert Report (D.E. 6172) and brief in support (D.E. 6173) ("Mot."). Plaintiffs seek leave "to substitute one [generic] expert witness due to Dr. [Curt D.] Furberg's notification that he will no longer act as an expert in this litigation." Mot. at 1. Allowing a substitution at this stage in the litigation—long after the parties' chosen generic experts have been named and subject to deposition and *Daubert* scrutiny; long after those choices have set the stage for the parties' strategy in addressing the extraordinary number of case-specific dispositive motions, *Daubert* motions, and trials coming due in the coming weeks and months; and long after those choices have informed the parties' perspectives on the overall litigation and their ongoing discussions about individual cases—undermines the orderly progression of this litigation. It also prejudices Bayer, which has developed its strategy in light of the prior generic expert disclosures. Because substitution at this stage of the proceedings is not substantially justified or harmless, plaintiffs' motion should be denied. *See* Fed. R. Civ. P. 26(a)(2)(C); 37(c)(1).

But even if the Court allows plaintiffs to substitute a new expert for Dr. Furberg, the outer limits of the substitute expert's testimony should be defined by the limits of Dr. Furberg's proposed testimony.  *See, e.g.*, *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 10 (1st Cir. 2001) (limiting substitute expert's opinions to scope of opinions offered by original expert).  What plaintiffs should not be permitted to do is leverage Dr. Furberg's withdrawal into a free-ranging license to bring in a new expert who will offer testimony and opinions on matters plaintiffs and Dr. Furberg previously conceded were beyond the bounds of his expertise.

At times, plaintiffs suggest that they will respect such a limitation:  "[T]he new expert will proffer substantially the same opinion on the same issues" as Dr. Furberg.  Mot. at 5. Elsewhere, however, plaintiffs seek leave to replace Dr. Furberg with a new generic expert who will testify broadly to "a description of the [FDA] regulatory scheme, industry standards regarding pharmacovigilance and response to safety signals in the post-marketing period, and the content of warnings consistent with this Court's opinions in the Parisian Order and the Buckman Order."  *Id.* at 6.  Not only is this proposed testimony well beyond the scope of Dr. Furberg's testimony, it goes beyond what plaintiffs have already agreed is Dr. Furberg's expertise.

Plaintiffs previously *conceded* that Dr. Furberg is not an FDA expert:

- "Dr. Furberg is not offering opinions on FDA regulatory compliance or FDA labeling requirements."  Pls.' Opp. to Bayer's Mot. to Exclude Testimony of Pls.' Expert Curt D. Furberg at 17 n.10 (filed Jan. 29, 2010) (D.E. 3985) ("Furberg *Daubert* Opp.").

- Dr. Furberg "is *not* offering opinions on FDA regulations, Trasylol sales and marketing or corporate ethics."  *Id.* at 1-2 (emphasis in original).

- Dr. Furberg's opinions relate solely to "drug safety and the design, implementation, interpretation and use of drug studies."  *Id.* at 2.

- "That Dr. Furberg was unable to cite a federal regulation or FDA guideline supporting his opinion as to what conduct was required of a reasonable drug company is immaterial.  Dr. Furberg is not offered as an opinion *[sic]* on FDA regulatory procedures."  *Id.* at 20 n.12.

Likewise, Dr. Furberg has acknowledged his lack of FDA expertise:

- "Q.  But you don't claim to be an expert in FDA regulations, do you?  A.  No, I don't claim that."  Deposition of Curt D. Furberg (Sept. 29, 2009) ("Furberg Dep.") at 7:15-18 (Ex. A).

- "Q.  You're not an expert in FDA regulations?  A.  I've stated that, yes.  I'm not an expert."  *Id.* at 67:11-12.

- "Q.  Are you an expert in the requirements for labeling in the United States?  A.  Technically, no."  *Id.* 67:19-22.

Plaintiffs ignore these concessions because their motion is not really about Dr. Furberg.  Instead, as became clear at the June 18, 2010 status conference, plaintiffs are using Dr. Furberg's unavailability as their excuse for replacing Dr. Parisian.  *See* Hr'g Tr. of Status Conference at 29-34 (June 18, 2010) ("June 18 Hr'g Tr.") (Ex. B); *id.* at 32 (stating that if their motion is granted, plaintiffs intend to substitute "a liability expert that would be a combination of what we believe Dr. Parisian and Dr. Furberg could do").

The late substitution of a generic FDA witness for Dr. Parisian—whose testimony has been excluded under *Daubert*—raises a different issue and is evaluated under a stricter standard.  The untimely substitution of an expert for one who already has been excluded on *Daubert* grounds generally is not permitted.  *See Weisgram v. Marley Co.*, 528 U.S. 440, 455-56 (2000) (upholding appellate court issuing a judgment as a matter of law after striking erroneously admitted expert testimony without providing the party an opportunity to substitute new expert testimony because, post-*Daubert*, parties cannot expect "a second chance should their first try fail"); *Lippe v. Bairnco Corp.*, No. 03-7360, 2004 WL 1109846, *5 (2d Cir. May 17, 2004) ("[P]laintiffs had a full and fair opportunity to develop and defend their choice of experts.  That

they failed in that endeavor does not entitle them to begin anew."); *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001) ("We likewise find that fairness does not require that a plaintiff, whose expert witness testimony has been found inadmissible under *Daubert*, be afforded a second chance to marshal other expert opinions and shore up his case."); *accord Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1296 (11th Cir. 2005) (affirming denial of motion for a continuance where expert was excluded because plaintiffs were on notice that opposing party challenged expert's admissibility and did not seek to substitute until after expert was excluded). Plaintiffs cannot—for the first time in the litigation—conflate the intended testimony of Drs. Furberg and Parisian, collectively refer to them as "liability experts," and use Dr. Furberg's unavailability to justify an untimely "second chance" to offer admissible FDA expert testimony. *Nelson*, 243 F. 3d at 250.

If this Court allows plaintiffs to substitute a witness for Dr. Furberg or Dr. Parisian, then, as set forth below, any substitution should be subjected to significant additional limits and conditions to reduce the harm to defendants. As plaintiffs acknowledge, for example, defendants should be given the right (1) to evaluate any new expert and his or her qualifications and analysis and to subject the expert to deposition and *Daubert* review; (2) to invite their experts to respond to the new expert; and (3) to be made whole for the additional costs this substitution imposes. Mot. at 6. Furthermore, and as also acknowledged by plaintiffs, the late identification of plaintiffs' new expert should not delay the Fall 2010 trial schedule. *See* Mot. at 6 ("those cases could proceed without the report of any new expert, and therefore there would be no additional delay"). Finally, the substantive opinions and testimony of any substitute expert should be limited by the concessions plaintiffs and Dr. Furberg already have made regarding Dr. Furberg's expertise and/or by the Court's rulings on the permissible role of plaintiffs' FDA

expert.  In other words, permission to file a substitute expert report should not provide plaintiffs with license to proffer opinions beyond Dr. Furberg's expertise or the limitations already imposed by this Court's rulings.  Likewise, if plaintiff's substitute expert is permitted to encompass the areas of Dr. Parisian's testimony, that witness also should be limited by Dr. Parisian's concessions and this Court's prior orders regarding that testimony.

## BACKGROUND

This Court's pretrial orders have established a detailed framework for generic expert discovery to facilitate the orderly and efficient progress of the MDL toward timely resolution of individual cases and the overall litigation.  The deadline for disclosure of plaintiffs' generic experts passed almost a year ago.  *See* Pretrial Order 13 §§ I.A., I.K.i. ("PTO 13") (setting August 18, 2009 deadline for service of plaintiffs' generic expert reports; October 20, 2009 deadline for completion of plaintiffs' generic expert depositions; and January 22, 2010 deadline for *Daubert* motions directed at plaintiffs' generic experts).

The parties and this Court have expended considerable time and effort addressing generic expert discovery under the framework established by these pretrial orders.  Ten months ago, in August 2009 as contemplated by PTO 13, plaintiffs identified Dr. Furberg as one of eight generic expert witnesses intended to support plaintiffs' claims in all cases in the Trasylol litigation and provided defendants with Dr. Furberg's 88-page expert report; defendants deposed Dr. Furberg in September 2009.  Also in August 2009, plaintiffs designated Dr. Parisian as a generic expert witness and provided a 250-page expert report to defendants; Dr. Parisian was deposed in October 2009.  Thereafter, defendants engaged their own experts to review, evaluate, and rebut the opinions of Drs. Furberg and Parisian.  Defendants' experts, Dr. Fenichel and Dr.

Waymack, produced expert reports in November 2009, and were deposed in December 2009 and January 2010.

Consistent with the Court's pre-trial order governing *Daubert* motions, defendants challenged the admissibility of Dr. Furberg's testimony; that motion is fully briefed.[1] Defendants also challenged the admissibility of Dr. Parisian's testimony. After a full round of briefing was completed in February 2010, the Court conducted a six-hour *Daubert* hearing, and subsequently issued a 41-page decision excluding Dr. Parisian's testimony.[2]

This MDL has progressed to a point where a large number of cases are fast approaching trial-ready dates. *See* PTO 16 (D.E. 2693) (setting case-specific deadlines for cases in Groups 1-3, including deadlines for dispositive and case-specific *Daubert* motions of July 5, 2010 for Group 1 cases, July 30, 2010 for Group 2 cases, and August 30, 2010 for Group 3 cases); PTO 21 (D.E. 6155-2; D.E. 6219) (setting case-specific deadlines for cases in Groups 4-7, with discovery deadlines beginning on July 2, 2010 for Group 4 cases). These groups of cases have increasing numbers, many well over 100. The Court recently signed Pretrial Order No. 22, which sets a schedule for three cases to be tried in October, November, and December 2010, and another 20 cases to be tried or trial-ready between January and April 2011. Presumably other cases, if not resolved by motion or settlement, will be set for trial in the following months.

---

[1] Defendants challenged the admissibility of Dr. Furberg's opinions on Rule 702 and *Daubert* grounds and maintain that Dr. Furberg's opinions are inadmissible. *See* Bayer's Mot. to Exclude Testimony of Pls.' Expert Curt D. Furberg (filed Dec. 18, 2009) (D.E. 4218) ("Furberg *Daubert* Mot.") (moving to exclude Dr. Furberg's testimony in its entirety). Given the strength of this motion, there is a substantial question whether any substitution would be futile anyway.

[2] *See* Order on Bayer's Mot. to Exclude Testimony of Pls.' Expert Suzanne Parisian (Apr. 27, 2010) (D.E. 5606) ("Parisian Order"). Plaintiffs filed a Motion to Certify Interlocutory Appeal of the Court's Order excluding Dr. Parisian on May 11, 2010 (D.E. 5792), which the Court denied on June 22, 2010 (D.E. 6274).

## ARGUMENT

Parties must disclose the identity of expert witnesses and provide expert witness reports "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(C). As detailed above, PTO 13 required plaintiffs to designate all generic expert witnesses and provide expert reports by August 18, 2009. PTO 13 § I.A. Where a party fails to comply with these requirements, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); Fed. R. Civ. P. 37 Advisory Committee Notes (noting the rule "provides a *self-executing* sanction for failure to make a disclosure required by Rule 26(a). Paragraph (1) prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1)."). [3] In addition, as a general matter, district courts in the Eleventh Circuit have considered several factors when deciding whether to permit plaintiffs' untimely evidence to be presented, including: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Vitola v. Paramount Automated Food Servs., Inc.*, No. 08-61849-CIV, 2009 WL 5067658, *1 (S.D. Fla. Dec. 17, 2009) (internal quotations omitted) (quoting *Int'l Truck and Engine Corp. v. Caterpillar, Inc.*,

---

[3] Plaintiffs fail to cite the applicable Federal Rules of Civil Procedure governing timely disclosure of expert witnesses. Instead, they cite an appellate court decision applying an abuse of discretion standard to the separate issue of a district court's denial of a motion for a *continuance* to substitute an expert witness. *See* Mot. at 4 (citing *Rink*). While the *Rink* factors on which plaintiffs rely are similar to factors district courts in the Eleventh Circuit have considered in deciding whether to exclude evidence under Rule 37, *Rink* does not set the standard for the relief plaintiffs seek here. Plaintiffs do not seek a continuance. Rather, plaintiffs have moved for leave to file an expert report beyond the time allowed by PTO 13. Thus, the standard of Rule 37(c)(1) governs, and defendants analyze plaintiffs' motion under that standard. Even under *Rink*, however, this substitution is not warranted as shown below.

No. 1:03-cv-265, 2004 WL 3217760, *1 (N.D. Ind. May 26, 2004)).  Plaintiffs' motion should be

denied because the requested substitution does not meet these standards.  In the alternative, if

substitution is permitted, the Court should impose limits and conditions, as addressed below.

**I.     PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE SUBSTITUTION AT THIS STAGE WILL BURDEN THE COURT, HARM DEFENDANTS, AND IS NOT SUBSTANTIALLY JUSTIFIED.**

The Court should not permit plaintiffs to substitute a new generic expert to

replace either Dr. Furberg or Dr. Parisian at this stage of the MDL proceedings because the

untimely disclosure would cause substantial burden to the Court's management of this MDL and

would harm defendants.  Having chosen specific generic experts to support their case, plaintiffs

cannot now complain that they have no control over the ability of those experts to testify.  *See*

Mot. at 5 ("Due to circumstances outside its control, the PSC is without a generic liability expert

in this litigation.").  Even assuming the Court permits some substitution, the Court should not

permit plaintiffs to use Dr. Furberg's recent unavailability to evade this Court's Order excluding

Dr. Parisian.  Dr. Furberg and Dr. Parisian were designated to provide expert testimony on

separate and distinct topics.  *Compare* Furberg *Daubert* Opp. at 2 (Dr. Furberg's opinions relate

solely to "drug safety and the design, implementation, interpretation and use of drug studies.")

*with* Pls.' Opp. to Bayer's Mot. to Exclude Testimony of Pls.' Expert Suzanne Parisian at 1 (D.E.

3841) ("Parisian *Daubert* Opp.") ("Suzanne Parisian, M.D. is proffered as an expert on FDA

regulations, procedures, and labeling requirements.").  Plaintiffs and Dr. Furberg repeatedly

conceded that he is not an FDA expert, *see supra* at 2, and his unavailability therefore does not

justify untimely substitution of a new FDA expert.

**A.     Plaintiffs Should Not Be Permitted To Replace Dr. Furberg.**

Plaintiffs assert that substitution for Dr. Furberg would not prejudice the Court or

defendants because (1) at the time of plaintiffs' motion no trials were scheduled, (2) the new

expert will offer "substantially the same opinion on the same issues," and (3) defendants have

"ample time" to take the new expert's deposition.  Mot. at 5-6.  These arguments do not solve the

case management problems that will result or the harm defendants will suffer if substitution of

Dr. Furberg is allowed.

    First, plaintiffs' request is not substantially justified.  Dr. Furberg explains in his

letter to the Plaintiffs' Steering Committee that he is withdrawing because "'I over-committed

myself to serve as an expert witness in several litigation matters.'"  Mot. at 2; *see id.* at 4

(referencing "time commitment problems and personal health issues").  Plaintiffs were aware, or

should have been aware, of the potential scope of this litigation and Dr. Furberg's other litigation

commitments when they designated him as a generic expert who would be called to testify in all

cases in the MDL.  In addition, although Dr. Furberg's letter indicates that he is not able to

continue in the Trasylol litigation, so far plaintiffs have withdrawn him as an expert only in the

MDL.  To date, plaintiffs have not withdrawn him in any other jurisdiction where he has been

named as a generic expert, including the consolidated litigation in Pennsylvania, Connecticut and

New Jersey, or in any other case.  Plaintiffs' actions do not constitute diligent preparation

justifying untimely substitution where an expert later becomes unavailable.  *See Rink*, 400 F.3d

at 1296 (holding that plaintiffs' "sole reliance" on a particular expert to prove an essential

element of their claim "did not represent the kind of diligence in trial preparation that merits a

continuance"); *Thompson v. Am. Home Prods. Corp.*, No. CV-01-287, 2003 WL 25631080, *2

(D. Idaho Feb. 27, 2003) (denying motion to substitute new generic expert witness beyond

deadline established by Rule 26 where original designee was unavailable to testify on trial date).

Second, an untimely substitution will disrupt this Court's case management and the progression of individual cases to trial.  *See Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003) (district court may consider "what the late disclosure portends for the court's docket"); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) ("[T]he court has a right, independent of the parties, to conduct trial preparation in a manner that husbands appropriately the scarce judicial resources of that busy district.").  Case management considerations are particularly important in this context because a change now affects hundreds of cases with upcoming case-specific deadlines.  These schedules and the orderly progression of the MDL were premised on the established landscape of generic experts.  *See generally In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1229, 1232 (9th Cir. 2006) (recognizing importance of MDL courts "establish[ing] schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial").

Plaintiffs' request comes more than ten months after the Court's deadline for disclosure of generic expert witnesses and after extensive efforts have been devoted to Dr. Furberg's proposed testimony, including the taking of Dr. Furberg's deposition and fully completed *Daubert* briefing challenging the admissibility of his opinions.  Halting this progress to allow another full round of expert discovery and briefing would burden and delay an already complex MDL schedule.  An additional round of generic expert discovery and *Daubert* briefing cannot be resolved before current PTO 22 deadlines, including scheduled trials this Fall and Winter.  PTO 22 calls for trials in three cases to begin between now and the end of this year, and another 20 cases to be tried or trial-ready between January and April 2011.  (D.E. 6176).  Indeed,

plaintiffs appear to acknowledge as much and concede that cases scheduled for Fall 2010 could proceed *without* the new expert given this "additional delay." Mot. at 6.

Third, untimely substitution should be denied because it will substantially harm defendants, who have relied on plaintiffs' generic expert witness disclosures for nearly a year in developing their trial strategies and defenses. *See Wilson v. Bradlees of N.E., Inc.*, 250 F.3d 10, 20 (1st Cir. 2001) (denying motion to substitute where untimely disclosed expert evidence "would have compromised [defendants'] pretrial preparations") (internal quotation and citation omitted) (alteration in original); *Browning v. City of Balch Springs*, No. 3:96-cv-1411, 1997 WL 361632, *5 (N.D. Tex. June 20, 1997) ("The Court finds that Defendants' preparation of the case would no doubt have suffered serious disruption, not to mention unnecessary expense, had the proposed substitution been allowed to go forward."). Indeed, plaintiffs acknowledge that this substitution would cause harm, but suggest that all harm could be remedied by charging additional costs back to plaintiffs. Mot. at 6. Plaintiffs overlook the substantial additional harm that substitution would have on defendants' preparation of their case. Defendants' overall strategy has been informed by the generic expert testimony that plaintiffs offered based on the required disclosures. This would be undermined by the wild card of the introduction of new expert testimony ten months after generic expert reports were due.

Accordingly, plaintiffs should not be permitted a substitute for Dr. Furberg.

**B.      Plaintiffs Should Not Be Permitted To Replace Dr. Parisian.**

Plaintiffs also should not be permitted to leverage Dr. Furberg's absence into a free-ranging license to substitute Dr. Parisian. As detailed above, plaintiffs now conflate the testimony of Drs. Furberg and Parisian and suggest that Dr. Furberg's withdrawal justifies naming a new FDA regulatory expert to replace Dr. Parisian. Even if plaintiffs' motion can be

11

construed as affirmatively seeking leave to replace Dr. Parisian with a substitute expert, *see* Mot. at 3 (arguing that Dr. Parisian is "unable to testify at trial for reasons beyond Plaintiffs' control"), her exclusion as a result of a valid *Daubert* challenge does not justify untimely substitution now. Rather, allowing substitution to remedy Dr. Parisian's "inability" to testify would countenance gamesmanship through which a party may test the strength of its evidence and move for substitution whenever its expert is excluded by an adverse *Daubert* ruling.[4]

Plaintiffs' failure to choose an FDA regulatory expert who satisfies federal standards for expert testimony—rather than an advocate for their theory of the case—does not substantially justify untimely substitution now. *See generally Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 897 (1990) ("[A] litigant's failure to buttress its position because of confidence in the strength of that position is always indulged in at the litigant's own risk."); *Rink*, 400 F.3d at 1296 (noting that the Supreme Court "fault[ed] a litigant for not taking steps to supplement its evidence with another expert when the opposing party was challenging a crucial expert").

The Supreme Court's decision in *Weisgram* is instructive. In *Weisgram*, the court of appeals reversed the district court's admission of expert testimony, holding that the expert should have been excluded under *Daubert*. Because plaintiffs could not prove their case without the expert testimony, the court entered judgment as a matter of law for defendant. Plaintiffs argued, in the Supreme Court, that the appellate court should have remanded the case for

---

[4] In its Order excluding Dr. Parisian's testimony, the Court stated: "While there is a proper place for expert testimony with respect to FDA regulations in this Case, Dr. Parisian is not an appropriate witness for this testimony." Parisian Order at 32. That a reliable FDA regulatory expert may have been permitted to testify in this case had that expert been timely disclosed and designated prior to the Court's *Daubert* ruling does not justify untimely replacement where plaintiffs were aware of the challenges to Dr. Parisian's testimony and chose to defend her rather than seek replacement. Allowing parties to "test drive" an expert without consequence would provide an unfair tactical advantage and "implausib[ly] . . . [allow] parties [to] initially present less than their best expert evidence in the expectation of a second chance should their first try fail." *Weisgram*, 528 U.S. at 455.

consideration of whether a new trial was warranted rather than entering judgment for defendant.

The Supreme Court upheld the appellate court's decision, stating:

> It is implausible to suggest, post-*Daubert*, that parties will initially present less than their best expert evidence in the expectation of a second chance should their first try fail. We therefore find unconvincing [plaintiff's] fears that allowing courts of appeals to direct the entry of judgment for defendants will punish plaintiffs who could have shored up their cases by other means had they known their expert testimony would be found inadmissible. . . . In this case, for example, although [plaintiff] was on notice every step of the way that [defendant] was challenging his experts, he made no attempt to add or substitute other evidence. [*Id.* at 455-56.]

Courts regularly deny requests for untimely substitution of expert witnesses or requests for continuances to procure new expert testimony when a party loses a *Daubert* challenge. *See Rink*, 400 F.3d at 1296 (upholding district court denial of a continuance to produce expert testimony after losing *Daubert* challenge, in part, because plaintiffs' "sole reliance" on one expert "did not represent the kind of diligence in trial preparation that merits a continuance"); *Pride v. BIC Corp.*, 218 F.3d 566, 579 (6th Cir. 2000) (upholding district court denial of untimely expert witness as "a transparent attempt to reopen the *Daubert* hearing now that the weaknesses in [plaintiff's] expert testimony have been pointed out") (internal quotations omitted); *Nelson*, 243 F.3d at 249 (upholding magistrate judge decision denying plaintiffs' motion to obtain additional expert testimony after losing a *Daubert* challenge because plaintiffs "had adequate opportunity to develop their expert testimony, test their theories, and respond to defendants' specific challenges to the testimony"); *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1068-69 (7th Cir. 1998) (upholding district court denial of opportunity to present second expert witness after losing *Daubert* challenge).

In fact, another judge of this Court recently denied a similar effort to replace an expert witnesses who was excluded under *Daubert* in a mass tort action, finding that substitution would disrupt the pretrial process and would not otherwise be justified or fair. *Gastaldi v.*

13

*Sunvest Resort Cmtys.*, No. 08-62076-CIV, 2010 WL 1049255, *6-12 (S.D. Fla. Mar. 22, 2010) (Altonaga, J.) ("Granting a continuance to allow the Plaintiffs another opportunity to produce admissible evidence of damages as to the first trial group . . . strikes the Court as extraordinarily unfair."). *Gastaldi*, which involved more than 200 plaintiffs divided into several trial groups, excluded plaintiffs' damages expert under *Daubert.* In denying plaintiffs' motion for a continuance to allow designation of a new expert, the court found that "placing sole reliance on one's expert's position is not the kind of diligence meriting a continuance." *Id.* at *7. Because plaintiffs had known for "at least four months" that their expert testimony could be stricken and did not take steps to find alternative experts, substitution was not permitted. *Id.* at *8.

Plaintiffs chose to designate only Dr. Parisian as an expert on the FDA regulatory scheme, pharmaceutical industry standards, and Trasylol labeling.[5] They were on notice from at least December 2009, when defendants filed their *Daubert* motion, that her testimony was subject to being excluded as unreliable. The Court excluded her testimony on April 27, 2010, over two months before this motion was filed. Plaintiffs cannot now disclaim responsibility for their strategic decision to designate an expert with a proven track record as an advocate rather than an independent expert—the failure to "buttress [their] position because of confidence in the strength of that position is always indulged in at the litigant's own risk." *Lujan*, 497 U.S. at 897. Having lost their gamble, plaintiffs should not be allowed to try again months after the generic expert deadlines have passed.

---

[5] *See* Parisian *Daubert* Opp. at 1 ("Suzanne Parisian, M.D. is proffered as an expert on FDA regulations, procedures, and labeling requirements."); *id.* (offering testimony "regarding FDA regulations and the standards of conduct in the pharmaceutical industry"). *id.* at 2 ("The bottom line is that Dr. Parisian is offered to testify as to: (1) the general nature of the approval and regulatory process, (2) the duties and obligations of drug manufacturers in relation to FDA regulations and industry standards, (3) Bayer's actions in relation to FDA regulations, industry standards and the FDA regulatory process generally, and (4) her opinion as to whether Bayer's actions were reasonable and appropriate.").

14

## II.     IF SUBSTITUTION IS ALLOWED, THE COURT SHOULD IMPOSE CONDITIONS TO REDUCE THE HARM TO DEFENDANTS.

If the Court does permit plaintiffs to substitute a new generic expert for Dr. Furberg or Dr. Parisian, defendants request that any substitution be subject to limits and conditions to mitigate the resulting prejudice.  Where substitution is permitted, numerous courts have held that limiting conditions are necessary to diminish the resulting harm to the non-moving party.  Most significantly, as already briefed above, having clearly delineated the scope of their experts' opinions in defending the admissibility of that testimony, plaintiffs cannot now tactically recast those opinions.  If substitution of either Dr. Furberg or Dr. Parisian is allowed, the new expert's opinions should be limited to and not expand upon or conflict with the scope of the original expert's documented opinions and plaintiffs' concessions regarding those opinions. *See, e.g.*, *Ferrara*, 240 F.3d at 10 (limiting substitute expert's opinions to scope of opinions offered by original expert).

If untimely substitution of Dr. Furberg is permitted, the scope of the new expert's testimony should be limited as described above. *See supra* at 2-3.  Specifically, the new expert should be permitted to offer opinions only on the areas of "drug safety and the design, implementation, interpretation and use of drug studies."  Furberg *Daubert* Opp. at 2.  A substitute expert should not be allowed to offer testimony on the FDA regulatory scheme or FDA labeling requirements because plaintiffs and Dr. Furberg have conceded that he lacks expertise on these topics. *See id.* at 1-2, 17 n.10, 20 n.12; Furberg Dep. at 7:15-18; 67:11-12, 19:9-22:19.

If the replacement expert also is permitted to address matters for which Dr. Parisian previously was designated, several limits should be imposed.  The substitute expert should be restricted to offering testimony and opinions on Dr. Parisian's proposed area of expertise:  "the FDA regulatory scheme."  Order on Bayer's Mot. To Exclude Testimony of Pls.'

Expert Suzanne Parisian (Apr. 27, 2010) (D.E. 5606) ("Parisian Order") at 31-33; *see id.* at 1 n.1 (Dr. Parisian is proffered as "an expert on FDA regulations, procedures, and labeling requirements."). Of course, any such testimony and opinions would be subject to challenge under *Daubert* and other limitations, a challenge defendants cannot make until a report is received and the witness is deposed. Even though the Court has indicated that it may be appropriate for a qualified expert to testify in this general area, *see* n.4, *supra*, the Court already has categorically excluded certain testimony, such as fraud-on-the FDA, and these limits should be applied to any new FDA expert. *See* Order on Bayer's Mot. *In Limine* To Exclude Evidence, Testimony, And Argument Alleging That Bayer Provided Inadequate Or Incomplete Data To The Federal Food And Drug Administration (May 10, 2010) (D.E. 5763) ("*Buckman* Order").

Indeed, plaintiffs acknowledge that a substitute expert's testimony should be limited by this Court's prior orders, including "this Court's opinions in the Parisian Order and the Buckman Order." Mot. at 6. In those orders, this Court already has excluded, and therefore a substitute expert should not be permitted to testify to, the following matters: (1) "evidence or testimony that Bayer failed to adequately or timely provide information to the FDA pursuant to FDA reporting obligations that run to the FDA, such as § 314.80," *Buckman* Order at 27; (2) narrative testimony created from a review of "Bayer's internal documents" detached from "regulatory analysis," Parisian Order at 27-29; (3) testimony "regarding Bayer's and the FDA's state of mind and knowledge," *id.* at 33; (4) "purely speculative" opinions, *id.* at 39-40; (5) mere advocacy, rather than regulatory analysis, *see id.* at 40-41 (critiquing "a Report . . . broad enough to . . . stack inference upon inference in order to offer" the expert's "'take home message' with

respect to intent, knowledge or causation."); and (6) any testimony not "confine[d]" to the expert's "area of expertise:  the FDA regulatory scheme," *id.* at 31, 33.[6]

In addition, if any substitution is permitted for either Dr. Furberg or Dr. Parisian, plaintiffs should be held to their concessions that:  (1) the new expert will proffer substantially the same opinions on the same issues as the replaced expert, Mot. at 5; (2) the financial harm to defendants may be remedied by charging the costs to plaintiffs, *id.* at 6; (3) cases scheduled for trial in Fall 2010 may proceed *without* the substituted expert's testimony, *id.*; and (4) defendants may challenge the admissibility of the new expert's testimony under *Daubert*, *id.*  If permitted at all, substitution should be conditioned on reimbursement of defendants' reasonable attorney's fees and costs incurred in taking the prior depositions and challenging the admissibility of prior expert testimony under *Daubert*.  *See generally Sithon Maritime Co. v. Holiday Mansion*, No. Civ. A. 96-2262, 1998 WL 433931, *1 (D. Kan. July 30, 1998) (requiring plaintiff to reimburse defendant for reasonable amount of expense in reviewing and critiquing expert testimony where substitution was allowed); *Vincent v. Omniflight Helicopters Inc.*, No. 08-C-0572, 2009 WL 4262578, *5 (E.D. Wis. Nov. 24, 2009) (same).[7]

Finally, if substitution is permitted, defendants respectfully request that the Court order plaintiffs to timely provide the substitute generic expert's report and produce the expert for deposition; allow defendants a reasonable time to analyze the substitute generic expert's report

---

[6] As to the latter, among other things, any new expert should not be allowed to opine in areas in which Dr. Parisian admitted she lacked expertise, including foreign regulatory matters, medical causation, Trasylol, and epidemiology.  *See* Bayer's Mot. to Exclude Testimony of Pls.' Expert Suzanne Parisian at 5-7 (D.E. 3065).

[7] Defendants request leave to establish the specific damages they have and will incur if substitution of a new generic expert is allowed.

and supplement defendants' generic expert reports, if necessary; and provide a briefing schedule

for a *Daubert* motion directed at the substitute generic expert.

## CONCLUSION

For these reasons, plaintiffs' motion should be denied.  In the alternative, if

plaintiffs are permitted to file a supplemental generic expert report to replace the testimony by

Dr. Furberg or Dr. Parisian, the following limitations and conditions should apply:

(1)    If substitution of either Dr. Furberg or Dr. Parisian is allowed, the new expert's opinions should be limited to and not expand upon or conflict with the scope of the original expert's documented opinions and plaintiffs' concessions regarding those opinions;

(2)    If the replacement expert is permitted to address matters for which Dr. Parisian previously was designated, the substitute expert should be restricted to offering testimony and opinions on the FDA regulatory scheme, as limited by the Court's prior Parisian and *Buckman* Orders;

(3)    Plaintiffs must reimburse defendants for the reasonable attorney's fees and costs associated with preparing for and taking the deposition of Drs. Furberg and Parisian, the *Daubert* briefing challenging the admissibility of Dr. Furberg and Dr. Parisian's opinions, as well as future additional costs addressing the new witness, all of which will be determined separately;

(4)    Plaintiffs must provide the substitute generic expert's report and produce the expert for deposition within a reasonable time after the Court's Order;

(5)    Defendants will be allowed a reasonable time to analyze the substitute generic expert's report and decide whether to supplement defendants' generic expert reports, including designating new rebuttal expert testimony should they choose; and

(6)    Defendants will be allowed a reasonable amount of time to challenge the admissibility of the substitute generic expert's testimony under the Federal Rule of Evidence and *Daubert*, on a schedule to be determined.

Dated:  June 28, 2010                Respectfully submitted,

*/s/ Patricia E. Lowry*
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:  312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:  312-853-7036

Rebecca K. Wood
Email:  rwood@sidley.com
Amy L. Hanke
Email:  ahanke@sidley.com
Adam C. Doverspike
Email:  adoverspike@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, N.W.
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:  202-736-8711

**Counsel for Defendants**

19

**CERTIFICATE OF SERVICE**

I certify that on June 28, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/  Barbara Bolton Litten*
Barbara Bolton Litten

**SERVICE LIST**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,
FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-735-1130
Facsimile: 215-875-7758
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
& LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile: 561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile: 561-655-1509
*Liaison Counsel for Defendants*

Scott Love
Email: slove@triallawfirm.com
**CLARK, BURNETT, LOVE & LEE, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX 77002
Telephone: 713-759-1400
Facsimile: 713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: 203-610-6393
Facsimile: 203-610-6399
*Federal-State Liaison for Plaintiffs*