# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

|  |  |
|---|---|
| IN RE TRASYLOL PRODUCTS LIABILITY LITIGATION – MDL-1928 | ) ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| *Robert Michaud v. Bayer Corporation et al.*, Case No. 9:10-cv-81242 | ) ) ) ) |

## DEFENDANT BAYER CORPORATION'S ANSWER AND ADDITIONAL DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Bayer Corporation, for its Answer to Plaintiff's Complaint (the "Complaint"), states as follows:

1.      Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first paragraph numbered 1 of the Complaint.

2.      Bayer Corporation admits that it is an Indiana corporation with its principal place of business in Pittsburgh, Pennsylvania.  Bayer Corporation is without knowledge or information sufficient to form a belief as to the time frame to which the allegations in the second sentence of the first paragraph numbered 2 of the Complaint refer but denies that it was promoting, marketing, distributing, testing, or selling Trasylol® at the times of the procedures alleged in the Complaint and denies that it has developed, manufactured, or licensed Trasylol®.  Because of the vagueness of the allegation in the first paragraph numbered 2 of the Complaint that Bayer Corporation was "warranting" Trasylol®, Bayer Corporation is without knowledge or

information sufficient to form a belief as to the truth of that allegation.  Bayer Corporation denies the remaining allegations in the first paragraph numbered 2 of the Complaint.

3.        Bayer Corporation admits that Bayer HealthCare Pharmaceuticals Inc. is a Delaware corporation with its principal place of business in Wayne, New Jersey; that Bayer HealthCare Pharmaceuticals Inc. is indirectly wholly owned by Bayer Corporation; and that Bayer HealthCare Pharmaceuticals Inc. is successor in interest to Bayer Pharmaceuticals Corporation.  Bayer Corporation further admits that at the times of the procedures alleged in the Complaint, Bayer Pharmaceuticals Corporation was a wholly owned subsidiary of Bayer Corporation and had its principal place of business in West Haven, Connecticut.  Bayer Corporation is without knowledge or information sufficient to form a belief as to the time frame to which the allegations in the fourth sentence of the first paragraph numbered 3 of the Complaint refer but admits that at certain times prior to the times of the procedures alleged in the Complaint, Bayer Pharmaceuticals Corporation maintained certain records relating to Trasylol®, sponsored clinical studies of Trasylol®, was promoting and labeling Trasylol®, and from time to time submitted to the United States Food and Drug Administration ("FDA") New Drug Application supplements for Trasylol®.  Bayer Corporation further admits that Bayer Pharmaceuticals Corporation issued a press release on November 5, 2007, announcing that it had elected temporarily to suspend marketing of Trasylol®.  Bayer Corporation denies that Bayer Pharmaceuticals Corporation developed Trasylol®.  Because of the vagueness of the phrase "other actions central to the allegations of this lawsuit," Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of those allegations.  Bayer Corporation denies the remaining allegations in the first paragraph numbered 3 of the Complaint.

4.      Bayer Corporation admits that Trasylol® is the proprietary name for aprotinin injection.  Bayer Corporation is without knowledge or information sufficient to form a belief as to the time frame to which the allegations in the first two sentences of the first paragraph numbered 4 of the Complaint refer, but admits that at certain times prior to the times of the procedures alleged in the Complaint Bayer Pharmaceuticals Corporation maintained certain records relating to Trasylol®, sponsored clinical studies of Trasylol®, and was promoting, labeling, marketing, distributing, testing, and/or selling Trasylol® in interstate commerce in the United States, including in Connecticut.  Bayer Corporation admits that Bayer Pharmaceuticals Corporation from time to time submitted to the United States Food and Drug Administration ("FDA") New Drug Application supplements for Trasylol®, and admits that Bayer Pharmaceuticals Corporation issued a press release on November 5, 2007, announcing that it had elected temporarily to suspend marketing of Trasylol®.  Bayer Corporation denies that Bayer Pharmaceuticals Corporation developed, manufactured, or licensed Trasylol®.  Because of the vagueness of the term "warranting" and the phrase "other actions central to the allegations of this lawsuit," Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of those allegations in the first paragraph numbered 4 of the Complaint.  Bayer Corporation denies the remaining allegations in the first paragraph numbered 4 of the Complaint.

5.      Bayer Corporation admits that Trasylol® is the proprietary name for aprotinin injection.  Bayer Corporation is without knowledge or information sufficient to form a belief as to the time frame to which the allegations in the first sentence of the first paragraph numbered 5 of the Complaint refer, but admits that Bayer HealthCare AG, the predecessor in interest of Bayer Schering Pharma AG, was manufacturing, testing, and/or selling Trasylol® at the times of the procedures alleged in the Complaint.  Because of the vagueness of the allegation in the first

paragraph numbered 5 that Bayer HealthCare AG was "warranting" Trasylol®, Bayer

Corporation is without knowledge or information sufficient to form a belief as to the truth of that

allegation.  The second sentence of the first paragraph numbered 5 of the Complaint states legal

conclusions to which no answer is required.  To the extent a response may be required, Bayer

Corporation admits that this Court entered Pretrial Order No. 4 (Case Management and

Scheduling Order No. 1) on May 22, 2008 and further states that this Court, on February 4, 2009,

entered Pretrial Order No. 11, which amends Section VI.A of Case Management and Scheduling

Order No. 1.  Those Orders speak for themselves and Bayer Corporation denies the allegations in

the second sentence of the first paragraph numbered 5 of the Complaint to the extent they are

inconsistent with the contents of those Orders or subsequent orders of this Court relating to case

management.  Bayer Corporation denies the remaining allegations in the first paragraph

numbered 5 of the Complaint.

   6. The first paragraph numbered 6 of the Complaint states legal conclusions to

which no answer is required.  To the extent a response may be required, Bayer Corporation states

that, on the face of the Complaint, this United States District Court has subject matter

jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that this is an action between

citizens of different states and in which a citizen of a foreign state is an additional party, with an

amount in controversy exceeding $75,000, exclusive of interest and costs.  Bayer Corporation

further admits that this action was transferred to the Southern District of Florida for coordinated

or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  Bayer Corporation denies the

remaining or inconsistent allegations in the first paragraph numbered 6 of the Complaint.

7.      Paragraph 7 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies the allegations in paragraph 7 of the Complaint.

8.      Bayer Corporation admits that Trasylol® is a prescription pharmaceutical, that Trasylol® is the proprietary name for aprotinin injection, and that since 1993 Trasylol® has been indicated for prophylactic use to reduce perioperative blood loss and the need for blood transfusion in certain coronary artery bypass graft surgical settings specified in its FDA-approved labeling.  Bayer Corporation admits that antifibrinolytics may be used to reduce or prevent bleeding when fibrinolysis contributes to bleeding.  Bayer Corporation admits that Trasylol® is a proteinase inhibitor which, through inhibition of various hemostatic factors and processes, results in the attenuation of inflammatory responses, fibrinolysis, and thrombin generation, and that Trasylol®'s effects include inhibition of fibrinolysis.  Bayer Corporation further admits that Trasylol® from time to time is referred to as an "antifibrinolytic," although its mechanism of action is different from those of other drugs referred to as "antifibrinolytics." Bayer Corporation denies the remaining or inconsistent allegations in paragraph 8 of the Complaint.

9.      Bayer Corporation admits that aprotinin is the active ingredient in Trasylol®, that Trasylol® is a natural proteinase inhibitor obtained from bovine lung, that Trasylol® consists of 58 amino acid residues that are arranged in a single polypeptide chain, cross-linked by three disulfide bridges, that it has a molecular weight of 6512 daltons, that the active center of the aprotinin molecule is located on the lysine 15 and alanine 16 amino acid residues, and that aprotinin forms reversible stoichiometric enzyme-inhibitor complexes.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 9 of the Complaint.

10.     Bayer Corporation admits that, in or around 1930 in Germany, Dr. Kraut and others isolated a kallikrein inhibitor from bovine lung; that aprotinin was first marketed as "Trasylol" in Germany in 1959 for treatment of pancreatitis; and that aprotinin from time to time has been sold outside the United States.  The allegation in paragraph 10 of the Complaint that Trasylol was sold "for several other indications" is vague and ambiguous, and therefore Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of that allegation.  Bayer Corporation admits that at the times of the procedures alleged in the Complaint Bayer HealthCare AG, the predecessor in interest of Bayer Schering Pharma AG, manufactured Trasylol® in Germany.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 10 of the Complaint.

11.     Bayer Corporation admits that the FDA-approved labeling for Trasylol® stated that Trasylol® was supplied in 100 and 200 milliliter vials and should be administered by a health care professional intravenously through a central line during surgery.  Bayer Corporation is without knowledge or information sufficient to form a belief as to the state of mind of individuals who may have been administered Trasylol®.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 11 of the Complaint.

12.     Bayer Corporation admits that aminocaproic acid and tranexamic acid are antifibrinolytic agents and admits upon information and belief that the FDA approved the sale and distribution in the United States of aminocaproic acid in 1964 and of tranexamic acid in 1986.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 12 of the Complaint.

13.     Bayer Corporation admits that an article authored by Dr. David Royston et al. was published in *The Lancet* on or about December 5, 1987.  That article speaks for itself, and Bayer

Corporation denies the allegations in paragraph 13 of the Complaint to the extent they are inconsistent with the contents of that article.  Bayer Corporation denies the remaining allegations in paragraph 13 of the Complaint.

14.     Bayer Corporation admits that the FDA approved the sale and distribution of Trasylol® in the United States in December 1993 and approved labeling, including a package insert, for Trasylol® at that time; admits that the FDA regulates prescription drugs pursuant to, *inter alia*, the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. ("the FDCA") and conducts its regulatory activities, including review and approval of labeling for prescription drugs, pursuant to the FDCA and regulations promulgated under the FDCA; and admits the remaining allegations in the first sentence of paragraph 14 of the Complaint.  Bayer Corporation further admits that, at the time it was approved by the FDA for sale and distribution in the United States, Trasylol® was indicated for prophylactic use to reduce perioperative blood loss and the need for blood transfusion in patients undergoing cardiopulmonary bypass graft surgery in the course of repeat coronary artery bypass graft surgery, and for selected cases of primary coronary artery bypass graft surgery where the risk of bleeding is especially high (impaired hemostasis, e.g., presence of aspirin or other coagulopathy) or where transfusion is unavailable or unacceptable.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 14 of the Complaint.

15.     Bayer Corporation admits that potential renal effects of Trasylol® were discussed with the FDA in connection with the preclinical and clinical studies of Trasylol®.  Bayer Corporation further admits that the "Indications and Usage" section of the FDA-approved labeling for Trasylol® in January 1994 stated that "selected use of Trasylol® in primary CABG patients is based on the risk of renal dysfunction and on the risk of anaphylaxis (should a second

procedure be needed)" and discussed laboratory findings and data regarding renal dysfunction, kidney failure, and serum creatinine elevations in the "Adverse Reactions" section. Because of the vagueness of the allegations, Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 of the Complaint.

16. Bayer Corporation admits that the Trasylol® package insert approved by the FDA in October 1994 states under the heading "DOSAGE AND ADMINISTRATION" that Trasylol is given "in both dose Regimen A and Regimen B (half dose Regimen A)." Bayer Corporation denies the remaining or inconsistent allegations in paragraph 16 of the Complaint.

17. Bayer Corporation admits that on August 8, 1997, the FDA approved a supplemental New Drug Application for Trasylol® that provided for new and revised statements in the Trasylol® package insert regarding the risk of anaphylactic reactions to Trasylol® as well as new data regarding other potential adverse reactions. Bayer Corporation denies the remaining or inconsistent allegations in paragraph 17 of the Complaint.

18. Bayer Corporation admits that the Trasylol® package insert approved by the FDA in August 1998 states under the heading "INDICATIONS AND USAGE" that "Trasylol is indicated for prophylactic use to reduce perioperative blood loss and the need for blood transfusion in patients undergoing cardiopulmonary bypass in the course of coronary artery bypass graft surgery." Bayer Corporation denies the remaining or inconsistent allegations in paragraph 18 of the Complaint.

19. Bayer Corporation denies the allegations in paragraph 19 of the Complaint.

20. Bayer Corporation admits that it agreed to provide the FDA with post-marketing evaluations and analysis of reported adverse drug events in connection with the Supplemental

New Drug Application approved by the FDA on August 28, 1998.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 20 of the Complaint.

21.     Because of the vagueness of the allegations, Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22.     Bayer Corporation denies the allegations in paragraph 22 of the Complaint.

23.     Bayer Corporation denies the allegations in paragraph 23 of the Complaint.

24.     Bayer Corporation admits that from January 1, 1985, through March 31, 2006, there had been an estimated cumulative 4.38 million patient exposures worldwide to Trasylol®; that it was reported in the 2005 Annual Report of Bayer AG that in 2005 Trasylol® generated sales of €230 million and was listed as eleventh among "Best-Selling Bayer HealthCare Products"; and that in late 2005 it was estimated that the sales potential of Trasylol® could exceed €500 million.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 24 of the Complaint.

25.     Bayer Corporation admits that an article authored by Mangano et al. was published in *The New England Journal of Medicine* on or about January 26, 2006.  That article speaks for itself, and Bayer Corporation denies the allegations in paragraph 25 of the Complaint to the extent they are inconsistent with the contents of that article.  Bayer Corporation denies the remaining allegations in paragraph 25 of the Complaint.

26.     The article authored by Mangano et al. speaks for itself, and Bayer Corporation denies the allegations in paragraph 26 of the Complaint to the extent they are inconsistent with the contents of that article.  Bayer Corporation denies the remaining allegations in paragraph 26 of the Complaint.

27.     Bayer Corporation admits that an article authored by Karkouti et al. titled "A propensity score case-control comparison of aprotinin and tranexamic acid in high-transfusion-risk cardiac surgery" was published in the online edition of *Transfusion* on or about January 20, 2006.  That article speaks for itself, and Bayer Corporation denies the allegations in paragraph 27 of the Complaint to the extent they are inconsistent with the contents of that article.  Bayer Corporation denies the remaining allegations in paragraph 27 of the Complaint.

28.     Bayer Corporation admits, upon information and belief, that on February 1, 2006, an employee of Bayer HealthCare AG contacted Dr. Alexander Walker of i3 Drug Safety to discuss the possibility of conducting an observational study involving Trasylol®, aminocaproic acid, and tranexamic acid.  Upon information and belief, Bayer Corporation admits that Dr. Alexander Walker is a physician and pharmacoepidemiologist, is a graduate of the Harvard School of Public Health, and was senior vice president for epidemiology at i3 Drug Safety. Bayer Corporation denies the remaining or inconsistent allegations in paragraph 28 of the Complaint.

29.     Bayer Corporation admits that the FDA announced in July 2006 that it would convene a public meeting of the Cardiovascular and Renal Drugs Advisory Committee on September 21, 2006, to discuss Trasylol®.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 29 of the Complaint.

30.     Bayer Corporation admits, upon information and belief, that two employees of Bayer HealthCare AG received a preliminary report concerning the ongoing observational study by i3 Drug Safety on or about September 14, 2006.  Bayer Corporation admits that the ongoing observational study by i3 Drug Safety and the preliminary report from that study were not discussed at the September 21, 2006, meeting of the Cardiovascular and Renal Drugs Advisory

Committee convened by the FDA and admits, upon information and belief, that Bayer

Pharmaceuticals Corporation submitted information regarding the i3 Drug Safety study,

including the preliminary report, to the FDA on September 27, 2006.  Bayer Corporation denies

the remaining or inconsistent allegations in paragraph 30 of the Complaint.

      31.     Bayer Corporation admits that in a report dated August 2007 and prepared after

an independent investigation, Zuckerman Spaeder LLP, in answering the question, "Why was the

existence of the i3 study not communicated to FDA in advance of the Advisory Committee

meeting on September 21, 2006?" identified the following factors:  "First, BPC's regulatory

affairs leaders responsible for the FDA relationship believed erroneously that the i3 study's

preliminary results would not be available until months after the Advisory Committee meeting.

Second, BPC's scientific leaders opposed contracting for the i3 study because they were

skeptical about its potential scientific value.  This negative view colored the approach to

disclosure.  Third, the study did not undergo BPC's formal review procedures.  Fourth, Bayer

management handled the study in a way that diminished its visibility and importance to the BPC

leaders.  Management assigned responsibility for the i3 study to Dr. Weidmann and Dr. Sprenger

in Germany without establishing clear lines of communication to the BPC leaders coordinating

Bayer's preparation for the Advisory Committee meeting; thus, the i3 study was a secondary

priority in the minds of these BPC leaders."  Bayer Corporation denies the remaining or

inconsistent allegations in paragraph 31 of the Complaint.

      32.     Bayer Corporation admits that the FDA receives and reviews various sources of

information regarding approved pharmaceuticals and that a revised Trasylol® package insert was

approved by the FDA on December 15, 2006.  The package insert speaks for itself, and Bayer

Corporation denies the allegations in paragraph 32 of the Complaint to the extent they are

inconsistent with the contents of the FDA-approved labeling.  Bayer Corporation denies the remaining allegations in paragraph 32 of the Complaint.

33.     Bayer Corporation admits that on or about December 15, 2006, the FDA issued an "FDA Alert" portions of which are quoted in the indented portions of paragraph 33 of the Complaint.  Bayer Corporation denies the allegations in paragraph 33 of the Complaint to the extent they are inconsistent with the contents of the Alert and denies the remaining allegations in paragraph 33 of the Complaint.

34.     Bayer Corporation admits that in October 2007, Bayer Pharmaceuticals Corporation was informed that the executive committee of a study conducted in Canada by the Ottawa Health Research Institute, titled "Blood conservation using antifibrinolytics: A randomized trial in a cardiac surgery population" (the "BART" study), had halted patient enrollment in the aprotinin treatment group arm of the study.  Bayer Corporation further admits that Bayer Pharmaceuticals Corporation was informed that a planned periodic data analysis indicated reduced bleeding but also an increase in all-cause mortality (that almost reached conventional statistical significance for 30-day mortality) for patients receiving Trasylol® compared to patients who received either aminocaproic acid or tranexamic acid.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 34 of the Complaint.

35.     Bayer Corporation admits that, on or about November 5, 2007, Bayer Pharmaceuticals Corporation elected to temporarily suspend marketing of Trasylol® until final results from the BART study could be compiled, received and evaluated, and that the FDA announced the marketing suspension on November 5, 2007.  The November 5, 2007, FDA press release speaks for itself, and Bayer Corporation denies the allegations in paragraph 35 of the

Complaint to the extent they are inconsistent with the contents of that press release.  Bayer Corporation denies the remaining allegations in paragraph 35 of the Complaint.

36.    Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 36 of the Complaint.  The second sentence of paragraph 36 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies that it promoted, distributed, or sold Trasylol® at the time of the procedure alleged in paragraph 36 of the Complaint, and denies that it has designed or manufactured Trasylol®.  Bayer Corporation is without knowledge or information sufficient to form a belief as to whether or when Trasylol® was administered to Plaintiff.  Bayer Corporation denies the remaining allegations in paragraph 36 of the Complaint.

37.    Bayer Corporation denies the allegations in paragraph 37 of the Complaint.

38.    Bayer Corporation denies the allegations in paragraph 38 of the Complaint.

39.    Bayer Corporation denies the allegations in paragraph 39 of the Complaint.

40.    Bayer Corporation denies the allegations in paragraph 40 of the Complaint.

41.    Bayer Corporation denies the allegations in paragraph 41 of the Complaint.

42.    Paragraph 42 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies that its duties are accurately stated, denies that it had any duty to provide warnings directly to Plaintiff, denies that it breached any applicable duty of care relating to Plaintiff's claims, denies liability for any injury alleged in the Complaint, and denies the remaining allegations in paragraph 42 of the Complaint.

43.     Paragraph 43 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies the allegations in paragraph 43 of the Complaint.

44.     Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

45.     Bayer Corporation denies the allegations in paragraph 45 of the Complaint.

46.     Paragraph 46 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies the allegations in paragraph 46 of the Complaint.

47.     Bayer Corporation denies that the warnings regarding Trasylol® were inadequate and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 of the Complaint.

48.     Paragraph 48 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies that its duties are accurately stated, denies that it had any duty to provide warnings directly to Plaintiff, denies that it breached any applicable duty of care relating to Plaintiff's claims, denies liability for any injury alleged in the Complaint, and denies the remaining allegations in paragraph 48 of the Complaint.

49.     Bayer Corporation denies the allegations in paragraph 49 of the Complaint.

50.     Bayer Corporation denies the allegations in paragraph 50 of the Complaint.

51.     Bayer Corporation denies the allegations in paragraph 51 of the Complaint.

52.     Bayer Corporation denies the allegations in paragraph 52 of the Complaint, including all subparts thereof.

53.     Paragraph 53 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies that the warnings regarding Trasylol® were inadequate.  Because of the vagueness of the remaining allegations in paragraph 53 of the Complaint, Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of those allegations.

54.     Bayer Corporation denies the allegations in paragraph 54 of the Complaint.

55.     Bayer Corporation denies the allegations in paragraph 55 of the Complaint.

56.     Bayer Corporation denies the allegations in paragraph 56 of the Complaint.

57.     Bayer Corporation denies the allegations in paragraph 57 of the Complaint.

58.     Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

59.     Bayer Corporation denies the allegations in paragraph 59 of the Complaint.

60.     Bayer Corporation is without knowledge or information sufficient to form a belief as to the time frame to which the allegations in paragraph 60 of the Complaint refer, but denies that it distributed or sold Trasylol® at the times of the procedures alleged in the Complaint and denies that it has manufactured Trasylol®.  Bayer Corporation is without knowledge or information sufficient to form a belief as to whether or when Trasylol® was administered to Plaintiff.  Bayer Corporation denies the remaining allegations in paragraph 60 of the Complaint.

61.     Paragraph 61 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies that it manufactured Trasylol® and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 61 of the Complaint because of the vagueness of those allegations.

62.     Bayer Corporation denies the allegations in paragraph 62 of the Complaint, including all subparts thereof.

63.     Bayer Corporation denies the allegations in paragraph 63 of the Complaint.

64.     Bayer Corporation admits that Trasylol® is intended to be administered to patients by physicians in accordance with FDA-approved labeling and without substantial change from the condition in which it was sold.  Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 64 of the Complaint, including as to whether Trasylol® was administered to Plaintiff and, if so, whether it reached Plaintiff without substantial change from the condition in which it was sold.

65.     Bayer Corporation is without knowledge or information sufficient to form a belief as to whether Trasylol® was administered to Plaintiff and, if so, whether it reached Plaintiff without substantial change from the condition in which it was sold.

66.     Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the Complaint.

67.     Paragraph 67 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation states that because of the vagueness of the terms "entitled" and "withdraw," it is without knowledge or information sufficient to form a belief as to the truth of those allegations.  Bayer Corporation denies the remaining allegations in paragraph 67 of the Complaint.

68.     Bayer Corporation denies the allegations in paragraph 68 of the Complaint.

69.     Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

70.     Bayer Corporation denies the allegations in paragraph 70 of the Complaint.

71.     Paragraph 71 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies liability for any injury alleged in the Complaint, denies that its duties are accurately stated, denies that it breached any applicable duty of care relating to Plaintiff's claims, and denies the remaining allegations in paragraph 71 of the Complaint.

72.     Paragraph 72 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies liability for any injury alleged in the Complaint, denies that its duties are accurately stated, denies that the warnings for Trasylol® were inadequate, denies that it breached any applicable duty of care relating to Plaintiff's claims, and denies the remaining allegations in paragraph 72 of the Complaint.

73.     Bayer Corporation denies the allegations in paragraph 73 of the Complaint, including all subparts thereof.

74.     Bayer Corporation denies the allegations in paragraph 74 of the Complaint.

75.     Bayer Corporation denies the allegations in the first sentence of paragraph 75 of the Complaint.  The second sentence of paragraph 75 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies that it manufactured Trasylol® and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the second sentence of paragraph 75 of the Complaint because of the vagueness of those allegations.

76.     Bayer Corporation denies the allegations in paragraph 76 of the Complaint.

77.     Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

78.    Bayer Corporation denies the allegations in paragraph 78 of the Complaint.

79.    Bayer Corporation denies the allegations in paragraph 79 of the Complaint.

80.    Paragraph 80 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation states that because of the vagueness of various terms including "entitled," "bona fide scientific data," and "withdrawn," Bayer Corporation is without knowledge or information sufficient to form a belief as to the truth of those allegations in paragraph 80 of the Complaint.  Bayer Corporation denies the remaining allegations in paragraph 80 of the Complaint.

81.    Bayer Corporation denies the allegations in paragraph 81 of the Complaint, including all subparts thereof.

82.    Bayer Corporation denies the allegations in paragraph 82 of the Complaint.

83.    Bayer Corporation denies the allegations in paragraph 83 of the Complaint.

84.    Bayer Corporation denies the allegations in paragraph 84 of the Complaint.

85.    Bayer Corporation denies the allegations in paragraph 85 of the Complaint.

86.    Paragraph 86 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies that it breached any applicable legal duty relating to Plaintiff's claims and denies the remaining allegations in paragraph 86 of the Complaint.

87.    Bayer Corporation denies the allegations in paragraph 87 of the Complaint.

88.    Bayer Corporation denies the allegations in paragraph 88 of the Complaint.

89.    Bayer Corporation denies the allegations in paragraph 89 of the Complaint.

90.    Bayer Corporation denies the allegations in paragraph 90 of the Complaint.

91.     Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

92.     Bayer Corporation denies the allegations in paragraph 92 of the Complaint.

93.     Bayer Corporation is without knowledge or information sufficient to form a belief as to the time frame to which the allegations in paragraph 93 of the Complaint refer, but denies that it tested, distributed, promoted, or sold Trasylol® at the times of the procedures alleged in the Complaint and denies that it has designed or manufactured Trasylol®.  Bayer Corporation admits that Trasylol® is intended to be administered to patients by physicians in accordance with FDA-approved labeling and without substantial change from the condition in which it was sold. Bayer Corporation is without knowledge or information sufficient to form a belief as to whether Trasylol® was administered to Plaintiff and, if so, whether it reached Plaintiff without substantial change from the condition in which it was sold.  Bayer Corporation denies the remaining allegations in paragraph 93 of the Complaint.

94.     Paragraph 94 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation admits that at the times of the procedures alleged in the Complaint Trasylol® was intended to be administered to patients by physicians in accordance with FDA-approved labeling and was safe and effective when used in accordance with FDA-approved labeling.  Bayer Corporation denies the remaining or inconsistent allegations in paragraph 94 of the Complaint.

95.     Bayer Corporation denies the allegations in paragraph 95 of the Complaint.

96.     Bayer Corporation denies the allegations in paragraph 96 of the Complaint.

97.     Bayer Corporation denies the allegations in paragraph 97 of the Complaint.

98.     Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

99.     Bayer Corporation denies the allegations in paragraph 99 of the Complaint.

100.    Bayer Corporation denies the allegations in paragraph 100 of the Complaint.

101.    Bayer Corporation denies the allegations in paragraph 101 of the Complaint.

102.    Bayer Corporation denies the allegations in paragraph 102 of the Complaint.

103.    Bayer Corporation denies the allegations in paragraph 103 of the Complaint.

104.    Bayer Corporation denies the allegations in paragraph 104 of the Complaint.

105.    Bayer Corporation denies the allegations in paragraph 105 of the Complaint.

106.    Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

107.    Bayer Corporation denies the allegations in paragraph 107 of the Complaint.

108.    Paragraph 108 of the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation denies that it breached any applicable legal duty relating to Plaintiff's claims and denies the remaining allegations in paragraph 108 of the Complaint.

109.    Bayer Corporation denies the allegations in paragraph 109 of the Complaint.

110.    Bayer Corporation denies the allegations in paragraph 110 of the Complaint.

111.    Bayer Corporation denies the allegations in paragraph 111 of the Complaint, including all subparts thereof.

112.    Bayer Corporation denies the allegations in paragraph 112 of the Complaint.

113.    Bayer Corporation denies the allegations in paragraph 113 of the Complaint.

114.    Bayer Corporation denies the allegations in paragraph 114 of the Complaint.

115.    Bayer Corporation denies the allegations in paragraph 115 of the Complaint.

116.    Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

117.    Bayer Corporation denies the allegations in paragraph 117 of the Complaint.

118.    Bayer Corporation denies the allegations in paragraph 118 of the Complaint.

119.    Bayer Corporation denies the allegations in paragraph 119 of the Complaint.

1.    Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

2.    Bayer Corporation denies the allegations in the second paragraph numbered 2 in the Complaint.

3.    Bayer Corporation denies the allegations in the second paragraph numbered 3 in the Complaint.

4.    Bayer Corporation denies liability for any injury alleged in the second paragraph numbered 4 in the Complaint, denies that Plaintiff is entitled to the relief requested in the second paragraph numbered 4 in the Complaint, and denies the remaining allegations in the second paragraph numbered 4 in the Complaint.

5.    Bayer Corporation incorporates by reference its responses to each and every paragraph of the Complaint.

6.    The second paragraph numbered 6 in the Complaint states legal conclusions to which no answer is required.  To the extent a response may be required, Bayer Corporation is without knowledge or information sufficient to form a belief as to whether or to what extent any medical expenses incurred by Plaintiff have been paid by Medicare.  Bayer Corporation admits that the Complaint purports to assert a claim under the Medicare Secondary Payer Act, but

denies liability for any injuries or damages alleged in the Complaint, denies that Plaintiff is entitled to the relief requested in the second paragraph numbered 6 in the Complaint, and denies the remaining allegations in the second paragraph numbered 6 in the Complaint.

120.    Bayer Corporation denies liability for any injury alleged in the Complaint and denies that Plaintiff is entitled to the relief requested in the "Wherefore" clause following the second paragraph numbered 6 in the Complaint, including all subparts thereof.

121.    Wherever Plaintiff has incorporated by reference prior allegations in the Complaint, Bayer Corporation incorporates by reference its responses to such allegations.

122.    Bayer Corporation denies each and every allegation in the Complaint that relates to or is directed to Bayer Corporation unless such allegations are expressly responded to in this Answer.

## ADDITIONAL DEFENSES

Discovery and investigation may reveal that one or more of the following additional defenses should be available to Bayer Corporation in this matter.  Bayer Corporation accordingly reserves the right to assert these separate and additional defenses.  Upon completion of discovery, if the facts warrant, Bayer Corporation may withdraw any of these additional defenses as may be appropriate.  Bayer Corporation further reserves the right to amend its answer and defenses, and to assert additional defenses and other claims, as discovery proceeds.  Further answering, and by way of additional defense, Bayer Corporation states as follows:

**Defense No. 1.**    Plaintiff's Complaint and each and every count contained therein fail to state a cause of action or claim upon which relief can be granted against Bayer Corporation.

**Defense No. 2.**    Some or all of Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation and/or statutes of repose.

**Defense No. 3.**    Plaintiff's claims are barred, in whole or in part, by laches, waiver, and/or estoppel.

**Defense No. 4.**    Plaintiff's claims may be barred, in whole or in part, because Plaintiff failed to give timely notice pursuant to Minn. Stat. §§604.04 and 336.2-607.

**Defense No. 5.**    Plaintiff's Complaint fails to join indispensable parties necessary for the just adjudication of this matter.

**Defense No. 6.**    The alleged damages and injuries, if any, were the result of unavoidable circumstances that could not have been prevented by any person or entity, including Bayer Corporation.

**Defense No. 7.**    Plaintiff has not suffered any actual injury, loss, or damages because of the alleged use of Trasylol®.

**Defense No. 8.**    The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and no act or omission on the part of Bayer Corporation was a proximate or competent producing cause of such alleged injuries or damages.

**Defense No. 9.**    The injuries sustained by Plaintiff, if any, were caused, in whole or in part, by pre-existing or subsequent physical, medical, and/or physiological conditions, for which Bayer Corporation has no legal responsibility.

**Defense No. 10.**   The acts and omissions of Plaintiff and/or other persons or entities, over whom Bayer Corporation had no supervision or control and for whose actions and omissions Bayer Corporation has no legal responsibility, caused or contributed to the alleged damages, thereby barring or reducing the amount of recovery under the doctrine of contributory and/or comparative negligence.  Plaintiff's recovery, if any, therefore is barred or should be reduced and/or apportioned in accordance with applicable law.

**Defense No. 11.**   Upon information and belief, each item of economic loss alleged in the Complaint was, or with reasonable certainty will be, replaced or indemnified in whole or in part from collateral sources.  To the extent Plaintiff is seeking recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action under Minnesota law or any other applicable law.

**Defense No. 12.**   To the extent Plaintiff has settled or will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, the liability of Bayer Corporation, if any, should be reduced accordingly.

**Defense No. 13.**   Plaintiff's Complaint fails to state a claim for unlawful conduct under consumer protection, consumer fraud or false advertising statutes because Bayer Corporation completely complied with the applicable law in connection with the marketing and sale of Trasylol®.

**Defense No. 14.**   Plaintiff's claims are barred because Trasylol® was neither defective nor unreasonably dangerous in its design, manufacture, or marketing and was reasonably safe and reasonably fit for its intended use.  The warnings and instructions accompanying Trasylol® at the time of the occurrence or injuries alleged by Plaintiff were legally adequate warnings and instructions.

**Defense No. 15.**   The claims in the Complaint are barred in whole or in part by the learned intermediary doctrine.

**Defense No. 16.**   Plaintiff did not detrimentally rely on any labeling, warnings, or information concerning Trasylol®.

**Defense No. 17.**   Plaintiff's Complaint fails to state a claim upon which relief can be granted in that the methods, standards, and techniques utilized with respect to the design, manufacture,

testing, distribution, marketing, and sale of Trasylol®, including but not limited to adequate warnings and instructions with respect to the product's use included in the product's package insert and other literature, conformed to the applicable state of the art.  Trasylol®, including its labeling approved by the United States Food and Drug Administration, complied with the state of scientific and medical knowledge at the time of its design, testing, manufacture, distribution, marketing, and sale.  Plaintiff's recovery accordingly is barred.

**Defense No. 18.**  Trasylol® complied with the applicable product safety regulations promulgated by the United States Food and Drug Administration.  Compliance with such regulations demonstrates that due care was exercised with respect to the design, manufacture, testing, distribution, marketing, and sale of Trasylol®, and that it was neither defective nor unreasonably dangerous.

**Defense No. 19.**  If Plaintiff sustained the injuries or incurred the expenses as alleged, which is expressly denied, said injuries or expenses were caused by the unforeseeable alteration, improper handling, or other unforeseeable misuse of Trasylol®.  Plaintiff's recovery accordingly is barred.

**Defense No. 20.**  Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution by reason of the federal government's regulation of the manufacturing, testing, marketing, sale, and labeling of prescription drugs.

**Defense No. 21.**  Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the United States Food and Drug Administration is charged under law with determining the content of warnings and labeling for prescription drugs.

**Defense No. 22.**  Plaintiff cannot state a claim with regard to the warnings and labeling for prescription drugs because the remedy sought by Plaintiff is subject to the exclusive regulation of the United States Food and Drug Administration.

**Defense No. 23.**  This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the United States Food and Drug Administration.

**Defense No. 24.**  Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First and Fourteenth Amendment rights to petition the government.

**Defense No. 25.**  Plaintiff's claims are barred in whole or in part because the commercial speech relating to Trasylol® was not false or misleading and is protected under the First Amendment of the United States Constitution and by applicable state constitutional provisions.

**Defense No. 26.**  Plaintiff's Complaint fails to state a claim for misleading or unfair advertising or for deceptive business practices under consumer protection, consumer fraud or false advertising statutes because the advertising and labeling of Trasylol® was not misleading, unfair or deceptive.

**Defense No. 27.**  Plaintiff's claims for unlawful conduct under consumer protection, consumer fraud and false advertising statutes are barred in whole or in part because said statutes are insufficiently definite to provide adequate or fair notice of the conduct proscribed, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the due process protections of the applicable state constitution.

**Defense No. 28.**  Plaintiff's claims for unlawful conduct under consumer protection, consumer fraud and false advertising statutes are barred in whole or in part because said statutes

unconstitutionally burden interstate business practices relating to prescription drugs, which are heavily regulated by the FDA.

**Defense No. 29.**  Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate the alleged damages.

**Defense No. 30.**  Plaintiff's Complaint fails to state a claim on which relief can be granted as to costs and disbursements, attorney fees, expert fees, expenses, pre-judgment interest, post-judgment interest, refund, unjust enrichment, disgorgement, restitution, or treble damages.

**Defense No. 31.**  Plaintiff's Complaint fails to state a claim upon which relief can be granted against Bayer Corporation under any applicable state product liability law.

**Defense No. 32.**  Bayer Corporation asserts all available defenses under any applicable state product liability law.

**Defense No. 33.**  Plaintiff's claims are barred pursuant to Restatement (Second) of Torts § 402A, comment k.

**Defense No. 34.**  Plaintiff's claims are barred because Trasylol® provides net benefits for a class of patients.

**Defense No. 35.**  Bayer Corporation did not sell or distribute Trasylol® directly to Plaintiff and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims for breach of warranty are barred by lack of privity between Plaintiff and Bayer Corporation.

**Defense No. 36.**  Plaintiff's claims of breach of warranty are barred because Plaintiff failed to give timely notice of any alleged breach of warranty.

**Defense No. 37.**  Plaintiff's claims for breach of warranty are barred by the applicable provisions of the applicable state's Uniform Commercial Code or other applicable law.

**Defense No. 38.**  Plaintiff's Complaint fails to state a claim for fraud, misrepresentation, deceit, concealment, suppression and/or omission, and fails to allege the circumstances constituting fraud with the required particularity.

**Defense No. 39.**  Plaintiff's Complaint fails to state a claim against Bayer Corporation upon which relief can be granted for punitive or exemplary damages.

**Defense No. 40.**  Bayer Corporation denies any conduct for which punitive or exemplary damages could or should be awarded and denies that Plaintiff has produced evidence sufficient to support or sustain the imposition of punitive damages against Bayer Corporation pursuant to the applicable standards of proof.

**Defense No. 41.**  Permitting recovery of punitive or exemplary damages in this case would be unconstitutionally vague and/or overbroad, would violate Bayer Corporation's constitutional rights as secured by the Fifth, Seventh, and Fourteenth Amendments to the United States Constitution, and would contravene the prohibition of excessive fines and other provisions of the United States Constitution, the Minnesota Constitution, and any other applicable state constitution.

**Defense No. 42.**  Plaintiff cannot recover punitive or exemplary damages against Bayer Corporation because such an award, which is penal in nature, would violate Bayer Corporation's rights under the United States Constitution and any other applicable state constitution, unless Bayer Corporation is afforded the same procedural safeguards as are criminal defendants.

**Defense No. 43.**  Any imposition of punitive or exemplary damages in this case against Bayer Corporation would contravene the Commerce Clause of the United States Constitution, in that such an award would constitute an undue and unreasonable burden on interstate commerce.

**<u>Defense No. 44.</u>**  With respect to Plaintiff's demand for punitive or exemplary damages, Bayer Corporation incorporates by reference any and all standards or limitations regarding the determination and enforceability of punitive or exemplary damages awards under applicable state law.

**<u>Defense No. 45.</u>**  No act or omission of Bayer Corporation was intentional, reckless, willful misconduct, wanton, reckless, and/or with actual malice, oppression, and/or fraud or with conscious disregard and indifference to the rights, safety and welfare of Plaintiff, or evidencing that entire want of care which would raise the presumption of conscious indifference to the consequences, and therefore any award of punitive or exemplary damages is barred.  Bayer Corporation asserts all statutory or judicial protections from punitive or exemplary damages that are available under applicable law, and any award of punitive or exemplary damages is barred.

**<u>Defense No. 46.</u>**  The claim for punitive or exemplary damages against Bayer Corporation cannot be sustained because, in all respects pertinent to this action, Bayer Corporation complied with applicable industry standards and did not engage in a deliberate course of conduct which knowingly endangered those using Trasylol®.

**<u>Defense No. 47.</u>**  Plaintiff's Complaint fails to state a claim against Bayer Corporation upon which relief can be granted as to punitive damages because Plaintiff has failed to comply with Minn. Stat. § 549.191 or other applicable law requiring leave of court to amend a Complaint to plead a claim for punitive damages.

**<u>Defense No. 48.</u>**  Plaintiff's claims of injury and claims for damages are speculative.

**<u>Defense No. 49.</u>**  Plaintiff's Complaint fails to state a claim upon which relief can be granted for joint and several liability.

**<u>Defense No. 50.</u>**  Bayer Corporation preserves all objections and defenses relating to personal

jurisdiction and venue.

**Defense No. 51.**   Plaintiff's Complaint fails to state a claim against Bayer Corporation upon which relief can be granted under the Medicare Secondary Payer Act.

**Defense No. 52.**   Bayer Corporation adopts and incorporates by reference all defenses pleaded by other defendants except to the extent that they are inconsistent with Bayer Corporation's defenses pleaded in this Answer.

**WHEREFORE**, Bayer Corporation denies any and all liability with regard to Plaintiff's claims and respectfully requests that Plaintiff's claims against it be dismissed with prejudice and that Bayer Corporation be awarded such general, further relief as justice may require.

## JURY DEMAND

Bayer Corporation respectfully requests that a jury try the issues in this matter.

DATED:  November 22, 2010                              Respectfully submitted,

*/s/  Barbara Bolton Litten*
Patricia E. Lowry (Florida Bar No. 332569)
Email: plowry@ssd.com
Barbara Bolton Litten (Florida Bar No. 91642)
Email: blitten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7120
Facsimile:  561-655-1509

*Attorneys for Defendant Bayer Corporation*

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on November 22, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                            */s/  Barbara Bolton Litten*
                                            Barbara Bolton Litten

**SERVICE LIST**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**
**Case No. 9:10-CV-81242**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,**
**FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
**& LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott Love
Email: slove@triallawfirm.com
**CLARK, BURNETT, LOVE & LEE, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-759-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*

Daniel J. Thornburgh
Email: dthornburgh@awkolaw.com
**AYLSTOCK, WITKIN, KREIS**
**& OVERHOLTZ, PLLC**
803 North Palafox Street
Pensacola, FL  32501
Telephone:  850-916-7450
Facsimile:  850-916-7449
*Counsel for Plaintiff Robert A. Michaud*