# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:

*Royce Hood and Frankie Hood,*
*v. Bayer Corporation, et al.,*
Case No. 9:08-cv-81231-DMM

_____/

**STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 7.5(c)**
**IN SUPPORT OF BAYER'S MOTION FOR SUMMARY JUDGMENT AND**
**TO EXCLUDE TESTIMONY BY PLAINTIFFS' CASE-SPECIFIC EXPERTS**

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the

amount in controversy exceeds $75,000, exclusive of interest and costs, and is between a citizen

of one state and citizens of different states and a foreign state.  *See* Compl. [D.E. 2, attachment 1

in 9:08-cv-81231] ¶¶ 2-9, 14-16; *see also* Bayer Corporation's Answer and Additional Defenses

("Bayer Corp. Answer") [D.E. 20 in 9:08-cv-81231], Bayer HealthCare Pharmaceuticals Inc.

Answer and Additional Defenses ("BHCP Answer") [D.E. 21 in 9:08-cv-81231], and Bayer

Schering Pharma AG Answer and Additional Defenses ("BSP AG Answer") [D.E. 22 in

9:08-cv-81231] ¶¶ 4, 7, 9, 14, 16.

2.      Plaintiffs were residents and citizens of Texas when Royce Hood was

administered Trasylol while undergoing coronary artery bypass graft ("CABG") surgery on

August 1, 2006, when he was diagnosed with renal failure on or before August 3, 2006, and at

the time they filed this complaint on August 5, 2008.  Compl. ¶¶ 2, 38; Deposition of Royce

Hood ("Royce Hood Dep.") (Ex. C) at 14:1-15:4; Plaintiff's Fact Sheet ("Fact Sheet") (Ex. G),

at 2, § II.B.

3.       Defendant Bayer Corporation is, and was at the complaint was filed, an Indiana Corporation with its principal place of business in Pennsylvania, and thus is a citizen of Indiana and Pennsylvania.  *See* 28 U.S.C. § 1332(c)(1).  Defendant Bayer Healthcare Pharmaceuticals Inc. is, and was at the time the complaint was filed, a Delaware corporation with its principal place of business in New Jersey, and thus is a citizen of Delaware and New Jersey.  *See* 28 U.S.C. § 1332(c)(1).  Defendant Bayer HealthCare AG is the predecessor in interest of Bayer Schering Pharma AG, is, and at the time the Complaint was filed in this action was, a German corporation with its principal place of business in Germany, and thus a citizen of Germany.  *See generally* Bayer Corporation's Master Answer and Additional Defenses to Pls.' Master Compl. (D.E. 1021 in 1:08-md-01928), Bayer HealthCare Pharmaceuticals Inc.'s Master Answer and Additional Defenses to Pls.' Master Compl. (D.E. 1023 in 1:08-md-01928), and Bayer Schering Pharma AG's Master Answer and Additional Defenses to Pls.' Master Compl. (D.E. 1025 in 1:08-md-01928) ¶¶ 4, 5, and 7.

4.       Mr. Hood had a history of cardiac issues, including congestive heart failure, angina, a stroke in 1993, and a heart attack in 2000.  Med. Rec. (Ex. B) at ShannonMC-MD-9, 218; Fact Sheet (Ex. G) at 8, § IV.F.9-15.  This history increased his risk of having kidney disease and kidney failure.  Deposition of Dr. Jason Felger, M.D. ("Felger Dep.") (Ex. A) at 64:15-65:1; Deposition of Dr. Richard J. Quigg, M.D. (plaintiffs' expert) ("Quigg Dep.") (Ex. E) at 78:23-25.

5.       Doctors diagnosed Mr. Hood's longstanding high blood pressure (hypertension) for the first time in 1993.  Med. Rec. (Ex. B) at ShannonMC-MD-9, 218; Quigg Dep. (Ex. E) at 78:23-25 (Mr. Hood had hypertension prior to surgery).  "Hypertension can injure the kidneys." Felger Dep. (Ex. A) at 40:11-14; 64:15; Deposition of Dr. Douglas R. Schuch (plaintiffs' expert)

("Schuch Dep.") (Ex. F) at 83:20-22 (risk of acute renal failure is "increased when the patient has longstanding hypertension requiring treatment with multiple medications"); Quigg Dep. (Ex. E) at 47:7-11 ("chronic hypertension [can] affect the kidneys' ability to regulate their own blood flow").

6.      Prior to his 2000 heart attack, Mr. Hood was diagnosed with chronic obstructive pulmonary disease ("COPD") due to an intense smoking habit (about 40 cigarettes a day for 20). Med. Rec. (Ex. B) at SASO-39 (COPD "due to long-term cigarette abuse"); Fact Sheet (Ex. G) at 7, § IV.C.2 (40 cigarettes a-day for 20 years).  Smoking and COPD increase the risk of renal injury.  *See* Schuch Dep. (Ex. F) at 86:5-87:7.

7.      On July 28, 2006, 62-year-old Mr. Hood reported feeling "tightness" when walking uphill and a stress echocardiogram "provoked chest pain," consistent with induced septal ischemia.  Med. Rec. (Ex. B) at ShannonMC-MD-5, 9-10.  After a stress test provoked chest pain, Dr. Harvey recommended a cardiac catheterization to inspect Mr. Hood's heart.  *Id.* On August 1, 2006, Mr. Hood was admitted to the hospital for a cardiac catheterization.  *Id.* (Ex. B) at ShannonMC-MD-4-6.  The catheterization identified a totally occluded right coronary artery, 50% blockage of the diagonal, and 80% lesion of the left obtuse marginal vessel.  *Id.* (Ex. B) at ShannonMC-MD-5-6, 218.

8.      During the catheterization procedure, Dr. Harvey dissected "one of the three major vessels that feeds [the] heart."  Felger Dep. (Ex. A) at 31:19-32:3.  In subsequent malpractice litigation, Dr. Harvey acknowledged that the dissection was a "catastrophe." Deposition of David B. Harvey, M.D. ("Harvey Dep.") (Ex. D) at 85:1-2 in *Royce Hood and Ruby Hood v. David B. Harvey, M.D.*, No. A-08-1183-C (Tom Green County, Tex. July 14, 2009).  The torn artery led to unstable cardiac output, a heartbeat of less than 60 beats per

minute, and a severe drop in blood pressure, necessitating immediate surgical attention.  Med.

Rec. (Ex. B) at ShannonMC-MD-5, 12, 218, 225; Quigg Dep. (Ex. E) at 79:11-12; Felger Dep.

(Ex. A) at 5:12-22, 40:11-21.  After Dr. Harvey placed a temporary pacemaker and intra-aortic

balloon pump ("IABP"), Dr. Felger was summoned to perform emergency three-vessel coronary

artery bypass graft ("CABG") surgery to save Mr. Hood's life.  Med. Rec. (Ex. B) at

ShannonMC-MD-5, 18, 218-19, 224-26.  Dr. Felger described the dissection as a "disaster" and

"severe complication" creating "a high likelihood of not sustaining life."  Felger Dep. (Ex. A) at

45:15-23, 47:4-48:1, 49:1-6 (situation "was dire").

        9.      Dr. Felger administered Trasylol because he believed Mr. Hood faced a "high risk

of bleeding," and Trasylol reduced the need for blood transfusions.  Felger Dep. (Ex. A) at

79:4-21, 80:23-81:19 (explaining why he chose Trasylol over Amicar), 80:8-81:15 (listing Mr.

Hood's six risk factors for a "high risk of bleeding":  1) the emergency nature of the operation;

2) a "double dose of Integrilin," a medication used to reduce the risk of acute cardiac ischemic

events with a known side effect of bleeding; 3) the inability to give Mr. Hood "time to allow the

Integrilin to wear off because he would have died"; 4) use of "heparin," a blood thinner used in

surgeries to prevent clotting; 5) the placement of "an intra-aortic balloon pump ("IABP"), which

increases [the] risk of bleeding in and of itself by destroying platelets"; and 6) that Mr. Hood was

on "chronic aspirin," which carries a risk of stomach bleeding).

        10.     Dr. Felger was aware of "a concern about renal failure" with Trasylol.  *Id.* (Ex. A)

at 82:7-11 ("there has always been a debate on Trasylol having a problem with the kidneys"),

148:21-23 ("We know that there was a concern about renal failure.  That's a known entity of the

drug."), 149:3-4 ("even noncomparative studies say[] that there is a risk of renal failure for

Trasylol"); *see also id.* at 124:18-23 (indicating awareness that the Mangano study found "an increased risk of renal failure in the Trasylol group compared to Amicar").

11.    Dr. Felger warned his patients that Trasylol "may cause renal failure . . . . Is it okay to use that drug?"  *Id.*(Ex. A) at 120:23-121:2.

12.    Dr. Felger testified that "[d]espite that debate [about renal risks], given Mr. Hood's multiple risk factors for bleeding and postoperative complications and the significant risk to his kidneys that those factors posed," "the benefits of Trasylol outweighed the risks for Mr. Hood."  Felger Dep. (Ex. A) at 82:12-17.  Dr. Felger even considered using another drug (Amicar) instead of Trasylol, but ultimately decided that Trasylol would be more effective for Mr. Hood.  *Id.* at 80:8-81:15 (listing reasons for choosing Trasylol over Amicar), 81:16-19 (finding Trasylol was more effective than alternative drugs); *see also id.* at 147:25-148:4.

13.    Dr. Felger testified that he relies heavily on his own clinical experience and his colleagues rather than on just the package insert for drugs.  Felger Dep. (Ex. A) at 149:20-21 ("my knowledge about a drug is not just from the drug label"), 113:10-16 ("I don't just read a package insert and say, 'Oh I'm not going to or I am going to use this drug.'  It's based on a lot of clinical experience because that's what I am.  I'm a clinician, not a scientist."), 81:24-82:3 (describing reliance on colleagues' experiences).

14.    Dr. Felger testified that even the enhanced warnings regarding renal failure in the December 2006 Trasylol labeling would not have changed his prescribing decision here because he already "knew about that information [in the new label] by reading articles, not by reading a package insert."  *Id.* at 141:3-143:1.  Moreover, the Mangano January 2006 draft report, which had been published months *before* Mr. Hood's surgery, did not change Dr. Felger's prescribing decisions.  He testified that the study addressed "concerns that I think were already there with

Trasylol for most physicians.  I don't think it brought up any new concerns whatsoever."  *Id.* at 120:3-7; *see also id.* at 122:15-17 (Mangano study "didn't bring to light anything different than we already knew.").

15.     The CABG surgery itself posed a risk of renal failure.  Felger Dep. (Ex. A) at 59:17-60:8 (explaining such risks); Schuch Dep. (Ex. F) at 76:13-15 (open heart surgery itself increases risk of renal failure); *id.* at 76:16-19 (bypass surgery increases risk of renal failure).

16.     Mr. Hood's surgery involved many circumstances that independently can cause renal failure.  Mr. Hood "was at a higher risk of having kidney failure because of his emergent state, his state of distress."  Felger Dep. (Ex. A) at 62:6-8; *see also* Schuch Dep. (Ex. F) at 76:24-77:18.  Mr. Hood required an IABP.  *See* Med. Rec. (Ex. B) at ShannonMC-MD-218, 5, 224-26; Felger Dep. (Ex. A) at 63:11-15 (explaining that an IABP causes "an increased risk of renal or other organ failure"); Schuch Dep. (Ex. F) at 81:17-23 (same); Quigg Dep. (Ex. E) at 69:11-14, 72:21-73:3 (same).  Mr. Hood developed "persistent hypotension."  Felger Dep. (Ex. A) at 94:23-95:17 (discussing nephrologist's assessment that hypotension caused acute renal failure); Quigg Dep. (Ex. E) at 98:8-14 (persistent postoperative hypotension can cause acute kidney injury); *id.* at 100:9-11 (hypotension can worsen acute renal failure); *id.* at 100:21-25 (hypotension can increase the severity of acute kidney injury leading to acute renal failure); *id.* at 101:9-14 (acknowledging Mr. Hood had persistent hypotension postoperatively).  Mr. Hood Received 471 ml of IV contrast dye during the cardiac catheterization less than 24 hours before his CAGB surgery.  *See* Med. Rec. (Ex. B) at ShannonMC-MD 246; Felger Dep.(Ex. A) at 41:21-23, 42:4-43:6 (contrast agent "has a risk factor" of renal dysfunction that "can take up to three to five days to have full effect"); *see also* Schuch Dep. (Ex. F) at 83:4-7.  Contrast agent was used again during a post-surgery catheterization on August 4, 2006.  Felger Dep. (Ex. A) at

97:21-25 (the "decision to use contrast, obviously, was with concern of the kidneys"); Schuch

Dep. (Ex. F) at 108:8-15 (contrast is a risk factor for acute renal failure); Quigg Dep. (Ex. E) at

75:17-20 (contrast agents can have an "adverse effect on the kidneys"); *id* at 150:3-5, 153:5-8

(cannot "rule out contrast-induced nephropathy as a contributing factor to Mr. Hood's acute renal

failure" but elsewhere denying Mr. Hood suffered contrast-induced nephropathy).  Mr. Hood

took epinephrine during and after surgery.  *See* Felger Dep. (Ex. A) at 84:14-85:1 (Mr. Hood

"required epinephrine . . . longer than I would have anticipated"); 77:21-78:1 (explaining that

epinephrine can be hard on the kidneys).  Mr. Hood took inotropes and vasopressors to "help his

heart function and increase his blood pressure." *See id.* at 100:2-16 (these medications increase

the risk of renal failure).

      17.     At his deposition, Dr. Quigg acknowledged at least *10* possible "substantial

contributing factors" to Mr. Hood's renal injury, including:

> The risks of acute kidney injury in [Mr. Hood] were present [1] just from having CABG surgery and that the risks were increased to a slight extent by virtue of some—actually, we've covered them in detail, but including [2] hypertension, [3] peripheral vascular disease, [4] cerebrovascular disease, [5] the necessity to have a balloon pump placed, you know, [6] even mild COPD, or even moderate COPD, if you really wanted to be—you know, *those all increase the risks of having acute kidney injury* . . . .

Quigg Dep. (Ex. E) at 134:11-20 (emphasis added); *see also id.* at 57:24-58:23 (emergency

CABG surgery); *id.* at 77:17-78:2 (cerebrovascular accident and disease); *id.* at 78:3-6

(longstanding hypertension).  Dr. Quigg also acknowledged that [7] the use of radioiodinated

contrast agent, *id.* at 135:6-7, 75:17-20,153:5-8; [8] prolonged periods of hypotension during and

after surgery, *id.* at 98:8-14, 135:15-16; [9] periods of hemodynamic instability, *id.* at 136:18-19;

and [10] placement of an IABP, *id.* at 69:11-14; 72:21-73:3, can increase the risk of renal injury.

Dr. Quigg testified that he "can't say that—that there were not risk factors involved in this man."

*Id.* at 134:23-24.

18.     Mr. Hood experienced several maladies post-surgery, complicated by a prolonged period of severely low blood pressure (hypotension), that impacted several organs and required ongoing treatment. *See*, *e.g.*, Med. Rec. (Ex. B) at ShannonMC-MD-18 (acute renal failure "secondary to persistent hypotension"); Felger Dep. (Ex. A) at 90:4-6 (shock liver due to his "persistent hypotensive state"); Med. Rec. (Ex. B) at ShannonMC-MD-15-16 ("hypotension requiring large amounts of antihypotensive medication, which has resulted in ischemic necrosis of right index and long finger and right great toe" that "require[d] amputation"). During August 2006, Mr. Hood required "large amounts" of medication to combat ongoing low blood pressure. *Id.* at ShannonMC-MD-15.

19.     Mr. Hood went into acute renal failure on or before August 3, 2006. Compl. ¶ 39; Med. Rec. (Ex. B) at ShannonMC-MD-17-18 (diagnosing acute renal failure as occurring on or before August 3, 2006). Plaintiffs' expert, Dr. Quigg, claims that renal failure occurred between "noon to midnight" on August 1, 2006, the date of CABG surgery. Quigg Dep (Ex. E) at 119:21-22; Expert Report of Richard J. Quigg, M.D. ("Quigg Rep.") (Ex. H) at 3 (renal failure occurred on August 1, 2006). The CABG surgery at which Trasylol was administered occurred between 2:10 and about 5:15 p.m. Med. Rec. (Ex.B) at ShannonMC-MD-212, 235 (on pump from 3:01-4:18 p.m.); Quigg Rep. (Ex. H) at 3. Mr. Hood's renal injury was discovered immediately and treated. Med. Rec. (Ex. B) at ShannonMC-MD-17-18; Deposition of Ruby Hood ("Ruby Hood Dep.") (Ex. J) at 110:14-25 (immediately after surgery, Mrs. Hood thought "something went wrong").

20.     Mr. Hood's medical records state that he had "acute renal failure due to a hypotensive and asystole after his catheterization." Med. Rec. (Ex. B) at ShannonMC-MD-215. Mr. Hood's treating nephrologist, Dr. Rick E. Hiller, concluded that Mr. Hood's renal failure

was caused by "persistent hypotension following the cardiac catheterization and the [CABG] surgery." *Id.* at ShannonMC-MD-18.  Dr. Felger testified that renal failure could have occurred "whether we used Amicar or whether we used Trasylol.  I think this could have happened with either drug onboard or no drug onboard."  Felger Dep. (Ex. A) at 166:3-5.  No treating physician has ever told Mr. Hood that Trasylol caused his renal failure.  Royce Hood Dep. (Ex. C) at 237:4-16.

21.     One of plaintiffs' two hired experts, Dr. Schuch, conceded at his deposition that he is not providing a specific causation opinion as to "the relationship, if any, between Trasylol and Mr. Hood's renal failure."  Schuch Dep. (Ex. F) at 123:11-15.

22.     Following dialysis, by the time of discharge on September 8, 2006, Mr. Hood was "alert and oriented" and his renal failure had "resolved."  Med. Rec. (Ex. B) at ShannonMC-MD-6-7 (creatinine of 1.4 and BUN of 18).

23.     Plaintiffs sued and settled a medical malpractice claim against Dr. Harvey with respect to the dissected artery that led to the CABG surgery.  *See* Royce Hood Dep. (Ex. C) at 156:6-162:9; Compl., *Royce Hood and Ruby Hood v. David B. Harvey, M.D.* (Tom Green County, Tex. Sept. 18, 2008) (Ex. K).  After learning about a Trasylol attorney advertisement, plaintiffs also sued Bayer, claiming that Trasylol caused Mr. Hood to sustain acute renal failure. Compl. ¶ 39; Royce Hood Dep. (Ex. C) at 242:15-22.

24.     There is no evidence that plaintiffs received or relied on any oral or written communication from Bayer about Trasylol.  Mr. Hood testified that he never spoke to anyone from Bayer about Trasylol, Royce Hood Dep. (Ex. C) at 241:10-12; never read any materials from Bayer about Trasylol, *id.* at 241:13-16; never discussed Trasylol with any representative of any drug company, *id.* at 241:17-20; and never saw a warranty about Trasylol, *id.* at

9

241:11-242:2; *see also* Fact Sheet (Ex. G) at 10, §§ V.B., V.C. (no recollection of receiving oral or written materials about Trasylol before or during hospitalization).  Mrs. Hood also testified that she never discussed Trasylol with anyone from Bayer, Ruby Hood Dep. (Ex. J) at 66:2-6; never received written information about Trasylol, *id.* at 65:21-66:1, 66:13-15; never received an oral guarantee that Trasylol would work, *id.* at 66:8-12; and conceded that plaintiffs' claims do not rely on anything Bayer told them, *id.* at 66:16-21.

25.     There is no evidence that Dr. Felger chose to prescribe Trasylol to Mr. Hood in reliance on any misrepresentations by Bayer or its pharmaceutical representatives.  Dr. Felger testified that he does not "recall any conversation [with a pharmaceutical representative] . . . I don't even recall who the representative was that comes out here or that came out here," Felger Dep. (Ex. A) at 127:4-7; had "very little contact with [sales] representatives," *id.* at 134:21-22; and does not permit interactions with pharmaceutical representatives to displace his "independent medical judgment," *id.* at 12:5-8.

26.     Plaintiffs did not amend their complaint to plead fraud and negligent misrepresentation with specificity in light of this Court's Orders of March 5, 2009 [D.E. 809 in 1:08-md-1928] and April 2, 2009 [D.E. 916 in 1:08-md-1928].

27.     Plaintiffs have no evidence that a safer alternative design existed for Trasylol. Plaintiffs have no evidence that there was a manufacturing flaw in the dose of Trasylol that Mr. Hood received or that any such flaw produced his injury.

February 25, 2011                      Respectfully submitted,

                                       */s/ Barbara Bolton Litten*
                                       Patricia E. Lowry (Florida Bar No. 332569)
                                       Email:  patricia.lowry@ssd.com
                                       Barbara Bolton Litten (Florida Bar No. 91642)
                                       Email:  barbara.litten@ssd.com
                                       **SQUIRE, SANDERS & DEMPSEY (US) LLP**
                                       1900 Phillips Point West
                                       777 South Flagler Drive
                                       West Palm Beach, FL  33401-6198
                                       Telephone:  561-650-7120
                                       Facsimile:  561-655-1509

                                       Philip S. Beck
                                       Email:  philip.beck@bartlit-beck.com
                                       Steven E. Derringer
                                       Email:  steven.derringer@bartlit-beck.com
                                       **BARTLIT BECK HERMAN PALENCHAR**
                                           **& SCOTT LLP**
                                       54 W. Hubbard Street, Suite 300
                                       Chicago, IL  60603
                                       Telephone:  312-494-4400
                                       Facsimile:  312-494-4440

                                       Eugene A. Schoon
                                       Email:  eschoon@sidley.com
                                       Susan A. Weber
                                       Email:  saweber@sidley.com
                                       **SIDLEY AUSTIN LLP**
                                       One South Dearborn Street
                                       Chicago, Illinois  60603
                                       Telephone:  312-853-7000
                                       Facsimile:  312-853-7036

                                       Rebecca K. Wood
                                       Email:  rwood@sidley.com
                                       Adam C. Doverspike
                                       Email:  adoverspike@sidley.com
                                       **SIDLEY AUSTIN LLP**
                                       1501 K Street NW
                                       Washington, DC  20005
                                       Telephone:  202-736-8000
                                       Facsimile:  202-736-8711

11

Susan Artinian
Email:  sartinian@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation, Bayer HealthCare*
*Pharmaceuticals Inc., and Bayer Schering*
*Pharma AG*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 25, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

**SERVICE LIST**

**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN**
     **& SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email:  tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE**
     **& LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL  33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email:  patricia.lowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY (US) LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Lee B. Balefsky
Email:  Lee.Balefsky@klinespecter.com
**KLINE & SPECTOR PC**
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
Telephone:  800-597-9585
Facsimile:  215-735-0960
*Counsel for Plaintiffs Royce and Frankie Hood*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, BURNETT, LOVE & LEE, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-759-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal Moskow
Email:  neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*

David Kuttles
Email:  dxk@lanierlawfirm.com
Richard D. Meadow
Email:  RDM@lanierlawfirm
W. Mark Lanier
Email:  wml@lanierlawfirm
**LANIER LAW FIRM PLLC**
126 E 56th Street, 6th Floor
New York, NY 10022
Telephone:  212-421-2800
Facsimile:  212-421-2878
*Counsel for Plaintiffs Royce and Frankie Hood*

Jay Winckler
**WINCKLER & HARVEY, LLP**
4407 Bee Cave Road, Building 2, Suite 222
Austin, TX 78746
Telephone:  512-306-1800
Facsimile:  512-306-9442
*Counsel for Plaintiffs Royce and Frankie Hood*