UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to:

*Johnny Ward Putnam v. Bayer Corporation, et al.,*
Case No. 9:08-cv-81432-DMM
_____/

### STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 7.5(c) IN SUPPORT OF BAYER'S MOTION FOR SUMMARY JUDGMENT AND TO EXCLUDE TESTIMONY BY PLAINTIFF'S CASE-SPECIFIC EXPERTS

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between a citizen of one state and citizens of different states and a foreign state.  *See* Complaint ("Compl.") [D.E. 1-1 in 9:08-cv-81432] ¶¶ 2-9, 14-16; *see also* Answer and Additional Defenses of Bayer Corporation ("Bayer Answer") [D.E. 3 in 9:08-cv-81432] ¶ 4.

2.      At the time he was administered Trasylol while undergoing coronary artery bypass graft ("CABG") surgery on August 24, 2004, at the time he filed this complaint on September 10, 2008, and at the time the case was removed to federal court, plaintiff was a resident and citizen of Mississippi.  Compl. ¶¶ 1, 5; Plaintiff Fact Sheet (Ex. K) at 2, § II.B.

3.      Defendant Bayer Corporation is, and was at the time of the filing of the complaint and removal to federal court, an Indiana Corporation with its principal place of business in Pennsylvania, and thus is a citizen of Indiana and Pennsylvania.  *See* 28 U.S.C. § 1332(c)(1).

4. Defendant Bayer AG is, and was at the time of the filing of the complaint and removal to federal court, a German corporation with its principal place of business in Germany. See Compl. ¶ 7. Accordingly, Bayer AG is a citizen of Germany. See 28 U.S.C. § 1332(c).[1]

5. On August 21, 2004, Mr. Putnam experienced tightness in his chest that progressed into a myocardial infarction. Deposition of Shirley Putnam ("Mrs. Putnam Dep.") (Ex. A) at 30:1-18; Deposition of Carl Blond (plaintiff's expert) ("Blond Dep.") (Ex. B) at 65:14-17. A cardiac catheterization showed extensive coronary artery disease. Medical Records of Johnny Ward Putnam ("Med. Recs.") (Ex. C) at IntMedG-6, 21-23. On August 23, 2004, Dr. Gerhard Mundinger positioned an intra aortic balloon pump ("IABP"), which "improves the blood flow to the organs" for a "sick patient." Deposition of Alexander Marmureanu (plaintiff's expert) ("Marmureanu Dep.") (Ex. D) at 119:21-120:11; see also Med. Recs. (Ex. C) at IntMedG-16.

6. On August 24, 2004, Mr. Putnam underwent CABG surgery involving five bypasses. Med. Recs. (Ex. C) at IntMedG-17-20. Mr. Putnam had "very dense" adhesions "along the side and inferior to the left ventricle"—"horrific" scarring from a prior heart surgery to correct a defect. *Id.* at IntMedG-17-19; *see also id.* at IntMedG-8 (Mr. Putnam "underwent the repair of an atrial septal defect when he was about 29 years of age"). These adhesions made the surgery difficult and high-risk, Marmureanu Dep. (Ex. D) at 124:19-24, and resulted in a "relatively long perfusion time." Med. Recs. (Ex. C) at IntMedG-17. During the surgery, Mr. Putnam was on cardiopulmonary bypass for two hours and 40 minutes, Marmureanu Dep.

---

[1] There is no such entity as "Bayer Pharmaceutical Division-North America." In any case, the Complaint does not allege that this putative defendant is a citizen of Mississippi. *See* Compl. ¶ 9 (alleging that "Bayer Pharmaceutical Division-North America" is "a division of Bayer Corporation" and has its headquarters in Connecticut).

2

(Ex. D) at 125:11-21; Blond Dep. (Ex. B) at 157:1-4, and a cross-clamp time of a little over an hour, Med. Recs. (Ex. C) at IntMedG-17.

7. Several medications were administered during CABG surgery, including Trasylol, which was given to reduce blood loss and the need for transfusions. *See*, *e.g.*, *id.* at StDH-BD-15.

8. Mr. Putnam's recovery from surgery was "slow and deliberate," and he experienced several complications. Med. Recs. (Ex. C) at StDCS-17, StDCS-10-11 (October 11, 2004 letter from Dr. William Harper noting the "post operative course was stormy, but he made a nice recovery"). Mr. Putnam gained thirty pounds of fluid weight from surgery; was on vasopressors for several days; developed respiratory insufficiency and was put on a ventilator; developed thrombocytopenia (decreased blood platelets); developed postoperative pneumonia for which he received a heavy dose of antibiotics; and developed atrial fibrillation for which he was given medication. *Id.* at StDCS-17. Plaintiff does not allege that Trasylol caused these injuries.

9. Mr. Putnam's creatinine level was at 1.2 at the time he was admitted to the hospital on August 21, 2004. *Id.* at IntMedG-8. His serum creatinine was at the following level on the following dates: August 25, 2004 (1.6); August 26, 2004 (1.7); August 27, 2004 (1.5); August 28, 2004 (1.6); August 29, 2004 (1.8); August 30, 2004 (1.9); August 31, 2004 (1.2). *Id.* at StDH-MD-193–212; Expert Report of Dr. Alexander Marmureanu ("Marmureanu Report") (Ex. M) at 6-7. Since August 31, 2004, Mr. Putnam's serum creatinine levels have at no time been tested at a level outside the expected or normal range. *See*, *e.g.*, Med. Recs. (Ex. C) at StDH-MD-38 (November 2004 lab reporting Mr. Putnam's creatinine level as 0.9); *id.* at MEAMCAHC-70 (January 9, 2006 test result showing Mr. Putnam's creatinine level at 1.0).

3

10. Dr. Francis Phillippi, who was consulted to provide nephrology guidance after plaintiff's CABG surgery, testified that "it is not that unusual for people to have a rise in their serum creatinine after [open-heart] surgery" and that it is "pretty common" for the nephrology unit "to get a consult in the Cardiovascular Recovery Unit." Deposition of Dr. Francis Phillippi ("Phillippi Dep.") (Ex. E) at 11:11-23.

11. By September 1, 2004, Mr. Putnam's "[r]enal problems resolved," Med. Recs. (Ex. C) at StDH-MD-225, and he had no further issues with his kidneys, Phillippi Dep. (Ex. E) at 41:15-24 (after September 1, 2004, care could "be managed without a nephrologist"; no "active issues . . . from a kidney standpoint"). Dr. Phillippi testified that Mr. Putnam's "kidneys worked throughout. He just had a rise in the serum creatinine." *Id.* at 44:19-20; 42:11-14 ("He did well. His urine output never dropped."). Mr. Putnam "never came very close to dialysis." *Id.* at 42:17-20. Plaintiff's expert Dr. Blond testified that Mr. Putnam's rise in creatinine levels in August 2004 was "relatively small," Blond Dep. (Ex. B) at 54:1-3, and evidenced only "mild" acute kidney injury, *id.* at 52:9-20; Marmureanu Dep. (Ex. D) at 185:2-187:14 (no "impression or diagnosis" of renal failure in plaintiff's medical records).

12. Mr. Putnam had multiple risk factors for renal injury going into his complex CABG surgery, including: a history of myocardial infarction; hypertension; hyperglycemia; hyperlipidemia; obesity; smoking; and IABP placement prior to CABG surgery. Med. Recs. (Ex. C) at IntMedG-4-9; Deposition of Johnny Ward Putnam ("Putnam Dep.") (Ex. G) at 46:18-25; *see also* Marmureanu Dep. (Ex. D) at 98:16-25, 102:19-109:19, 121:6-122:6 (acknowledging these risk factors); *id.* at 118:23-119:1 (agreeing that Mr. Putnam's surgery presented a "very difficult situation").

13. During and following CABG surgery, Mr. Putnam experienced several other risk factors for kidney injury, including: hemodynamic instability and hypertension, *see* Phillippi Dep. (Ex. E) at 23:9-25 (noting that they could not maintain plaintiff's blood pressure after surgery without medication, which is "never an easy environment for your kidneys"); low-grade fever; diuretic dose and diuresis; time on cardiopulmonary bypass, *see* Marmureanu Dep. (Ex. D) at 125:11-21 (acknowledging that being on bypass for 2 hours 40 minutes can impact post-operative renal function); Blond Dep. (Ex. B) at 157:1-4 ("certainly" a "risk factor" given that it was over two hours); severity of the surgery (five bypasses); atrial fibrillation; and pneumonia. *See* Phillippi Dep. (Ex. E) at 50:17-51:2; Med. Recs. (Ex. C) at IntMedG-6; Marmureanu Dep. (Ex. D) at 65:18-20, 67:19-68:9, 102:13-104:1, 125:11-21, 151:24-152:7; Blond Dep. (Ex. B) at 68:4-18, 71:8-19, 87:16-25, 157:1-4, 165:1-5.

14. During Mr. Putnam's hospital recovery, Dr. Mundinger told Mrs. Putnam that Mr. Putnam had experienced renal problems. *See* Mrs. Putnam Dep. (Ex. A) at 51:19-21 ("Q: Did Dr. Mundinger tell you that Mr. Putnam had suffered from renal failure? A: Yes, he did."); Putnam Dep. (Ex. G) at 17:9-12; *see also* Deposition of Christi Hardy (Ex. H) at 19:10-20 (daughter testifying that a doctor told her about Mr. Putnam's kidney problems at the hospital). Mrs. Putnam, in turn, relayed this information to her husband. Putnam Dep. (Ex. G) at 80:9-17 ("A: I was told that I had kidney failure. Q: Okay. Who told you that? A: My wife.").

15. About two days after returning home from the hospital on September 11, 2004, plaintiff began wondering what caused the "many problems" he faced after surgery, but did not investigate at that time. Putnam Dep. (Ex. G) at 14:2-9; Med. Recs. (Ex. C) at IntMedG-4-6.

16. After recovering from CABG surgery, Mr. Putnam's physicians have characterized his health as generally good. Med. Recs. (Ex. C) at StDCS-10-11 (October 2004

5

letter from Dr. Harper noting that Mr. Putnam is "presently doing very well"), StDCS-12 (October 2004 letter from Dr. Mundinger noting Mr. Putnam's generally good health and that "[h]is main complaint is difficulty sleeping at night"), MEAMCAHC-89 (March 2005 letter from Dr. Hutcheson noting that "overall [Mr. Putnam] is doing quite well").

17. Two years after CABG surgery, Mr. Putnam wrote a note to Dr. Mundinger thanking him for performing the CABG surgery and stating that he is "alive and doing well." *Id.* at StDCS-2. In a 2007 follow-up visit at the Madison Heart Clinic, the doctor noted Mr. Putnam's "most significant problem" was "recent weight gain." *Id.* at MEAMCAHC-53. None of Mr. Putnam's follow-up appointments with treating physicians have noted any kidney issues. *See* Deposition of Dr. Gene Hutcheson (Ex. I) at 9:15-51:1 (cardiologist testifying that Mr. Putnam's kidney function was normal from March 2005 to October 2010); Deposition of Dr. Joe Terry (Ex. J) at 12:22-25, 22:4-22 (family doctor (1994-2010) testifying that Mr. Putnam did not have any symptoms related to kidney injury).

18. Years after CABG surgery, Mr. Putnam saw a *60 Minutes* television program discussing Trasylol, which aired on February 17, 2008. *See* Putnam Dep. (Ex. G) at 14:10-15:5. Although Mr. Putnam knew after his CABG surgery in August 2004, that he had experienced renal problems, he testified that it was only after seeing this program that he decided to investigate his injury. *Id.* at 14:2-15:15, 30:17-25. Mr. Putnam hired an attorney, and on September 10, 2008, filed this suit against Bayer. The Complaint alleges that "[p]laintiff suffered renal failure on August 28, 2004." Compl. ¶¶ 46, 48.

19. No treating physician has ever told Mr. Putnam that Trasylol caused him any injury. *See* Putnam Dep. (Ex. G) 22:3-7 (plaintiff acknowledging that no one, "other than [his]

attorney, ever told [him] that any problems [he] had in the hospital following [his] heart surgery were related to use of Trasylol").

20. Plaintiff's nephrologist testified that even knowing what he does today about the potential kidney risks of Trasylol, he does not implicate Trasylol in plaintiff's injury:

> Q: . . . [D]o you have an understanding as to what it was that led to the rise in serum creatinine that he did experience?
>
> A: I would *still* think his hemodynamic instability and a low-grade fever probably are the most prominent factors in his rise in serum creatinine, combined with the diuretic dose and the diuresis . . . were the main factors.

Phillippi Dep. (Ex. E) at 50:17-51:2 (following questioning by plaintiff's counsel about emerging literature suggesting a possible link between Trasylol and renal failure) (emphasis added); *see also id.* at 44:3-7 ("Q: Was there any question in your mind, at the time you were treating Mr. Putnam, as to whether Trasylol may be playing a role in his rise in serum creatinine?  A: It didn't enter my thinking at the time.").

21. Plaintiff designated three hired experts:  Dr. Gary Toback, Dr. Blond, and Dr. Marmureanu.  *See* Pl. Johnny Ward Putnam's Rule 26(a)(2) Expert Discl. [D.E. 6855 in 1:08-md-1928] at 2; Expert Reports of Toback, Blond, and Marmureanu (Exs. L, F, M).

22. Dr. Toback's opinion addresses only general causation; he offers no opinions about Mr. Putnam or whether Trasylol injured him.  *See* Toback Rep (Ex. L).

23. Dr. Marmureanu testified that he did not understand questions about differential diagnosis and that his specific causation opinion in this case was based on his view of "the monumental amount of data published in the literature" supporting general causation. Marmureanu Dep. (Ex. D) at 194:22-197:15.

24. Dr. Marmureanu did not rule out other risk factors as the cause of plaintiff's kidney injury.  *See*, *e.g.*, Marmureanu Dep. (Ex. D) at 98:16-106:2, 164:11-170:1; *id.* at

7

103:17-20 (asserting that he considered "every single factor"); *see also id.* at 213:7-14 (agreeing that a person experiencing several factors experienced by plaintiff "would be at risk of developing renal failure"). Dr. Marmureanu testified that he could not rule out other risk factors: "They're all factors. And I don't rule them out. I rule them in." *Id.* at 167:22-23; *see also id.* at 163:15-24 ("I cannot rule them out, because they are factors. . . . [T]hey're real factors, and those real factors could influence . . . the renal function."). Dr. Marmureanu testified that he could not "say with a reasonable degree of medical certainty that Mr. Putnam would not have had an increase in creatinine post-operatively had he not received Trasylol." *Id.* at 214:1-5; *see also id.* at 213:19-25 (acknowledging plaintiff could have had "same post-operative course even without Trayslol").

      25.    Dr. Blond testified that his differential diagnosis did not consider several factors that he acknowledged at his deposition can increase serum creatinine levels: (1) the administration to plaintiff of several antibiotics, including Levaquin, Vancomycin, and Merrem; (2) plaintiff's history of tobacco use, (3) plaintiff's history of alcohol use, (4) plaintiff's being on a ventilator and intubated for a period of six days, or (5) plaintiff's obesity. Blond Dep. (Ex. B) at 152:4-165:4; *see also id.* at 116:4-12 (stating that Vancomycin, Levaquin, and Merrem can affect serum creatinine). Dr. Blond testified that "even without the administration of Trasylol" Mr. Putnam was at risk of developing kidney injury given his other risk factors and "[i]t's possible" he would have had the same post-operative course without Trasylol. *Id.* at 183:18-184:2.

      26.    Plaintiff has no evidence that Trasylol caused him renal injury or any other injury.

8

27. Plaintiff filed no response and did not amend his complaint to plead fraud and negligent misrepresentation with specificity in light of this Court's Orders of March 5, 2009 [D.E. 809 in 1:08-md-1928] and April 2, 2009 [D.E. 916 in 1:08-md-1928].

28. There is no evidence that plaintiff or his prescribing physician, Dr. Mundinger, read or relied upon any warranty from Bayer. Prior to his 2004 surgery, Mr. Putnam did not know what Trasylol was, had not seen anything about Trasylol, and had not read anything about Trasylol. Putnam Dep. (Ex. ) at 107:1-16. Mr. Putnam has at no time had any discussions with any Bayer employee regarding Trasylol. *Id.* at 106:17-25.

29. Plaintiff did provide Bayer with pre-litigation notice about any alleged breach of warranty related to Trasylol. *See id.* (plaintiff did not at any time reach out to an employee of Bayer).

30. Mr. Putnam did not at any time pay Bayer (or anyone else) any money for the Trasylol that was administered to him during his 2004 CABG surgery. *Id.* at 99:6-10 (stating that his insurance paid for everything associated with CABG surgery after he satisfied his deductible).

Dated:  March 1, 2011                                    Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry (Florida Bar No. 332569)
Email:  patricia.lowry@ssd.com
Barbara Bolton Litten (Florida Bar No. 91642)
Email:  barbara.litten@ssd.com
**SQUIRE, SANDERS & DEMPSEY (US) LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7120
Facsimile:  561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
Susan A. Weber
Email:  saweber@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-7036

Rebecca K. Wood
Email:  rwood@sidley.com
Bryson Bachman
Email:  blbachman@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street NW
Washington, DC  20005
Telephone:  202-736-8000
Facsimile:   202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

        Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation*

## **CERTIFICATE OF SERVICE**

I certify that on March 1, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                          */s/ Barbara Bolton Litten*
                                          Barbara Bolton Litten

# SERVICE LIST

### In re Trasylol Products Liability Litigation – MDL-1928
### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

James R. Ronca
Email:  jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN,
FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-735-1130
Facsimile:  215-875-7758
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email:  tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
        & LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL  33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email:  patricia.lowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY (US) LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.com
**CLARK, BURNETT, LOVE & LEE, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-759-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal Moskow
Email:  neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*

John T. Givens
Email: Johnny@portermalouf.com
Timothy W. Porter
Email: tim@portermalouf.com
**PORTER & MALOUF, P.A.**
825 Ridgewood Road
Post Office Box 12768
Ridgeland, MS 39157
Telephone: 601-957-1173
Facsimile:  601-957-7366
*Counsel for Plaintiff Johnny Ward Putnam*