UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

THIS DOCUMENT RELATES TO:

*Jon Whitney Phipps, Individually and as
Representative of the Estate of Joseph L.
Stevens, deceased v. Bayer Corporation, et al.*
Case No. 9:08-cv-81230-DMM
_____/

**BAYER'S OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE
EXPERT TESTIMONY OF DR. SCOTT SILVESTRY**

Plaintiff's motion to preclude Dr. Scott Silvestry from testifying about case-specific causation in the *Phipps* case should be denied. Plaintiff's Motion to Exclude the Expert Testimony of Dr. Scott Silvestry [D.E. 8857 in 1:08-md-1928; D.E. 47 in 9:08-cv-81230] ("Motion") at 1. Dr. Silvestry is a board-certified cardiothoracic surgeon who has extensive experience with the performance of cardiothoracic surgery and the diagnosis and treatment of kidney disease in the setting of cardiovascular surgery. *See* Case-Specific Expert Report of Scott C. Silvestry, M.D. ("Silvestry Report") (Ex. A) at 1, Curriculum Vitae; Deposition of Scott C. Silvestry, M.D. in *Puckett v. Bayer Corp.*, No. 9:08-cv-80920 ("*Puckett* Silvestry Dep.") (Ex. B) at 10:15-11:13; Generic Expert Report of Scott C. Silvestry, M.D. ("Generic Report") (Ex. C) at 1-2. He submitted a comprehensive, heavily referenced report in which he offers the following expert opinions to a reasonable degree of medical and scientific certainty:

1. "Mr. Joseph Stevens' death from multisystem organ failure was directly attributable to the combined effects of his preoperative myocardial infarction, cardiogenic shock, preoperative renal dysfunction and multiple gastrointestinal complications including shock liver and intestinal ischemia superimposed on an

    emergency cardiac operation with postoperative low cardiac output, disproportionate metabolic acidosis, use of multiple pressors, prolonged IABP [intra-aortic balloon pump] support and ultimately sepsis." Silvestry Report (Ex. A) at 10.

2.  Several of Mr. Stevens's pre-existing health conditions contributed to his high risk of postoperative morbidity and mortality, including his chronic kidney disease, complicated acute inferior myocardial infarction, the presence of preoperative leukocytosis, chronic untreated hypertension (as evidenced by the presence of severe left ventricular hypertrophy), pulmonary disease, history of substantial tobacco use, preoperative IABP, and need for an emergency cardiac operation. *Id.* at 8.

3.  Mr. Stevens's complicated and lengthy surgery, which included "prolonged aortic cross clamp and cardiopulmonary bypass duration and transfusion requirements," elevated his risk of postoperative kidney failure requiring dialysis. *Id.* at 9.

4.  "Immediately after surgery, Mr. Stevens had low cardiac output (Cardiac Index <2.0 L/min/m2), borderline arterial blood pressures with IABP support, elevated central venous pressure, and low urine output. During that same interval, Mr. Stevens bled over one liter into his chest tubes and received several doses of protamine and transfusions of platelets, fresh frozen plasma, and cell saver and packed red blood cells. . . . This period of low cardiac output during Mr. Stevens' immediate postoperative period was accompanied by a profound metabolic acidosis . . . and indicated the occurrence of a global ischemic insult around the time of surgery." *Id.*

5.  Post-operatively, Mr. Stevens's ischemia and low perfusion resulted in shock liver, renal insufficiency, gastrointestinal ischemia, neurological dysfunction, and gangrene of the extremities. *Id.* at 9-10

6.  Aprotinin "played no role in Mr. Stevens' cardiogenic shock, multiorgan dysfunction including liver dysfunction, and renal failure requiring dialysis, sepsis and subsequent death." *Id.* at 11.

  Plaintiff contends that Dr. Silvestry's testimony should be excluded in its entirety not due to a faulty differential diagnosis, but because his *generic* opinions regarding the renal effects of Trasylol are unsupported by peer-reviewed medical literature, are not generally accepted by the scientific community, and are the result of an unreliable methodology. Motion at 4-12. As shown below, Dr. Silvestry's opinions are well within his area of expertise and are based on his extensive clinical experience and review of the relevant medical and scientific

2

literature and Mr. Stevens's medical records. Because Dr. Silvestry's opinions are well-founded and reliable, plaintiff's motion to exclude his testimony should be denied.

## ARGUMENT

I. **PLAINTIFF'S ATTACKS ON DR. SILVESTRY'S GENERIC CAUSATION OPINION ARE UNTIMELY AND UNFOUNDED.**

    A. **Plaintiff's Generic *Daubert* Challenge Is Many Months Late.**

In his generic report, Dr. Silvestry opines that Trasylol does not cause permanent kidney injury but, at most, has been associated with "renal dysfunction, defined as a mild, short-term rise in serum creatinine, in a small percentage of patients." Generic Report (Ex. C) at 26 (disclosed November 3, 2009). Plaintiff now seeks exclusion of this generic causation opinion, arguing that Dr. Silvestry did not employ reliable scientific methodology to reach it. *See* Motion at 5-8. But if plaintiff intended to challenge the methodology underlying Dr. Silvestry's generic causation opinions, he should have done so by January 22, 2010. Pretrial Order No. 13 [D.E. 1738 in 1:08-md-1928] § I.K.i at 4 (setting January 22, 2010 as date by which plaintiffs' *Daubert* motions for first two cases selected for trial were to have been filed and served). Plaintiff admits that neither he nor the PSC filed a *Daubert* motion to exclude any portion of Dr. Silvestry's generic opinions. Motion at 4. Plaintiff's belated attempts to do so now should be denied.

    B. **Plaintiff's Generic *Daubert* Challenge Is Without Merit.**

        1. <u>**Plaintiff Fails to Identify Any Flaw in Dr. Silvestry's Methodology.**</u>

Even if plaintiff's attack on Dr. Silvestry's generic opinion were timely, his arguments do not warrant exclusion of Dr. Silvestry's testimony. To reach the conclusion that Trasylol does not cause permanent kidney injury, Dr. Silvestry employed his knowledge, education, and clinical experience as a cardiothoracic surgeon, and he thoroughly reviewed the

3

medical and scientific literature regarding Trasylol, including the Brown and D'Ambra studies that plaintiff believes Dr. Silvestry improperly disregarded. *Compare* Silvestry Report (Ex. A) at Materials and Documents Reviewed in Preparation of Report pp. 1 & 4 (citing the Brown and D'Ambra studies referenced as Exhibits D and F to plaintiff's Motion), *with* Motion at 5-7 (arguing that Dr. Silvestry misapplied Brown and D'Ambra in reaching his opinions). *See also* Silvestry Report (Ex. A) at 1; *Puckett* Silvestry Dep. (Ex. B) at 18:18-19:23 (testifying to his own knowledge that Trasylol had been associated with renal dysfunction "or transient elevation [in] creatinine" as early as "1998 to 2000"), 22:2-23:3 (explaining his review of the medical and scientific literature on aprotinin as part of his clinical practice).

Plaintiff disregards all of this, and instead, mischaracterizes Dr. Silvestry's methodology. Specifically, plaintiff claims that Dr. Silvestry "exclude[d] an association between aprotinin and renal failure based *solely* on the fact that meta-analyses of the randomized control trials do not confirm the risk reported in the observational studies." Motion at 11 (emphasis added). This plainly ignores the robust collection of sources that Dr. Silvestry considered in forming his opinions, including "the overwhelming majority of the medical literature [that] suggest that the renal effects associated with aprotinin use in cardiac surgery are limited to renal dysfunction . . . ." Generic Report (Ex. C) at 26; Silvestry Report (Ex. A) at Materials and Documents Reviewed in Preparation of Report; *see also* Deposition of Scott C. Silvestry, M.D. ("Silvestry Dep.") (Ex. D) at 10:22-25 ("I believe that aprotinin does not cause renal failure on the basis of the body of the medical literature. My experience and – and that – and my experience."), 11:5-8 ("Well, I believe that you're placing a single reliance on that single statement. And that is within the context of the body of literature . . . ."), 18:17-25 ("I think it's possible to estimate the magnitude of effect based on the literature that we've seen as well as the

patients who were reported with renal insufficiency and other trials, whether they were well controlled for bias observational trials. And I think that conclusion is that the majority of literature supports there not being a role for dialysis dependent renal failure in these patients in the majority of operations.").

Although claiming to criticize Dr. Silvestry's methodology, plaintiff, at bottom, attacks Dr. Silvestry's *conclusion* that Trasylol has not reliably been shown to cause permanent renal failure. Motion at 6-8. This, of course, is not a legitimate basis upon which to exclude expert testimony. *See Burke v. Gen. Motors Corp.*, 218 Fed. App'x 951, 953-54 (11th Cir. 2007) (affirming exclusion because the court did not "improperly focus[] on the expert's conclusions," but rather "questioned [the expert's] methodology"); *see also In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2010 WL 1489734, at *5 (S.D. Fla. Mar. 8, 2010) (concluding that "vigorous cross-examination and the presentation of contrary evidence" are the appropriate remedies should a party wish to contest an expert's conclusions).

### 2. Plaintiff Mischaracterizes the Basis of Dr. Silvestry's Generic Opinion.

Plaintiff likewise mischaracterizes the basis of Dr. Silvestry's generic opinion, claiming that it is improperly limited to the results of prospective, randomized clinical trials. *See* Motion at 7-12. To the contrary, Dr. Silvestry repeatedly asserts that the results of randomized clinical trials are only one of several considerations that he accounted for in reaching his opinion that renal effects associated with Trasylol use in cardiac surgery are limited to renal dysfunction (a mild short-term rise in serum creatinine). Specifically, these results, viewed in the broader context of the body of medical literature and other available evidence, support Dr. Silvestry's generic opinion:

> Q: Is it fair to say that you can't – that you can't rule that out, to a reasonable degree of medical certainty, based upon the prospective randomized control trials alone? And by that I mean the association of aprotinin with renal failure in the population of patients going into surgery with preexisting renal dysfunction.
>
> A: I think it's possible to estimate the magnitude of effect based on the literature that we've seen as well as the patients who were reported with renal insufficiency and other trials, whether they were well controlled for bias observational trials. And I think that that conclusion is that the majority of literature supports there not being a role for dialysis dependent renal failure in these patients in the majority of operations.
>
> Q: But based solely on the randomized control trials which you site [sic] in your generic report, Doctor, is it fair to say that you cannot rule out that aprotinin is associated with an increased risk of renal failure in patients who have preexisting renal dysfunction? Can't rule that out based on randomized control trials because no randomized control trial has been conducted to look at that issue?
>
> \* \* \* \*
>
> A: I believe that in medicine we use a variety of information and if there's not a well-controlled randomized clinical trial, we use the other evidence available. And the majority of evidence points to the fact that it is not a common, likely or large magnitude effect that has been reported in a way that's – that would lead to that conclusion.

Silvestry Dep. (Ex. D) at 18:10-19:18; *see also id.* at 42:19-43:1-4 ("While the randomized clinical trials do not – have not directly addressed that [whether aprotinin is associated with an increased risk of postoperative renal failure] with an adequate statistical power, the body of evidence exists in other ways as well."); Generic Report (Ex. C) at 26 ("These results taken in concert with the overwhelming majority of the medical literature suggest that the renal effects associated with aprotinin use in cardiac surgery are limited to renal dysfunction, defined as a mild short term rise in serum creatinine, in a small percentage of patients."). Plaintiff's fixation on the results of prospective, randomized clinical trials to the exclusion of the many other

6

sources that Dr. Silvestry consulted in forming his generic opinion is an improper basis upon which to exclude Dr. Silvestry's generic opinion.

### 3. Substantial Scientific Evidence Shows That Trasylol Is Associated Only With Transient Elevations In Serum Creatinine In A Small Number Of Patients.

Plaintiff's attacks on Dr. Silvestry's generic opinion are also inaccurate. First, Dr. Silvestry's opinion regarding Trasylol's transient effect on serum creatinine in some patients is supported by the medical literature and Bayer's database of randomized controlled clinical trials. *See, e.g.*, Silvestry Dep. (Ex. D) at 9:2-15; *Puckett* Silvestry Dep. (Ex. B) at 26:15-28:9; P.R. Feindt, et al., *Effects of High-Dose Aprotinin on Renal Function in Aortocoronary Bypass Grafting*, ANNALS OF THORACIC SURGERY 1995; 60: 1076-1080 (Ex. E) at 1076 (noting transient changes in renal function associated with high-dose Trasylol); J.H. Levy, et al., *A Multicenter, Double-Blind, Placebo-Controlled Trial of Aprotinin for Reducing Blood Loss and the Requirement for Donor-Blood Transfusion in Patients Undergoing Repeat Coronary Artery Bypass Grafting*, CIRCULATION 1995; 92(8): 2236-2244 (Ex. F) at 2243 (noting "transient and small effect on renal function" potentially associated with Trasylol). The FDA agreed, approving language in Trasylol's September 1998 *and* December 2006 labels that described serum creatinine elevations associated with Trasylol as "not severe" and "reversible." *See* Trasylol Package Insert (revised September 1998) (Ex. G) at 2; Trasylol Package Insert (revised December 2006) (Ex. H) at 1. Indeed, plaintiff himself acknowledges that the Lemmer study on which Dr. Silvestry relies showed only transient elevations in serum creatinine. Motion at 5-6 (citing J.H. Lemmer, et al., *Aprotinin for Coronary Bypass Grafting: Effect on Postoperative Renal Function*, ANNALS OF THORACIC SURGERY 1995; 59: 132-36 (Ex. E to Motion)). That plaintiff believes this study was underpowered is not a basis to exclude Dr. Silvestry's opinion. *See, e.g.*, *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345-46

7

(11th Cir. 2003) (noting that objections to the validity of a study are "precisely the role of cross-examination").

Plaintiff's assertion that the Brown meta-analysis precludes Dr. Silvestry's opinion that randomized clinical trials have failed to confirm an association between Trasylol and kidney failure is without merit for the same reason. Motion at 6-7 (citing J. Brown, et al., *Meta-Analysis Comparing the Effectiveness and Adverse Outcomes of Antifibrinolytic Agents in Cardiac Surgery* 2007; 115: 2801-13 (Ex. D to Motion)). Dr. Silvestry, in fact, specifically rebutted this assertion during his deposition in *Puckett*: "[I]f the effect witnessed in Mangano was correct; that is to say, if it was a doubling of . . . renal failure, the power of Henry 2007 [a meta-analysis smaller than Brown], for example, would be sufficient to detect a signal at that level or higher." *Puckett* Silvestry Dep. (Ex. B) at 34:16-35:11.

Plaintiff cites only two studies to support his contention that Dr. Silvestry misinterpreted the medical literature to conclude that Trasylol has not been reliably associated with kidney failure in randomized clinical trials. Motion at 6 (citing M.N. D'Ambra, et al., *Aprotinin in Primary Valve Replacement and Reconstruction: A Multicenter, Double-Blind Placebo-Controlled Trial*, J. THORACIC & CARDIOVASCULAR SURGERY 1996; 112: 1081-89 (Ex. F to Motion) and Brown, et al., *Meta-Analysis Comparing the Effectiveness and Adverse Outcomes of Antifibrinolytic Agents in Cardiac Surgery*, Circulation 2007; 115:2801-2813 (Ex. D to Motion)). However, the D'Ambra study did not involve surgeries as complicated as Mr. Stevens's,[1] and the study results are called into question by the imbalance between the

---

[1] D'Ambra studied primary valve replacement only. *See* D'Ambra (Ex. F to Motion) at 1082. Mr. Stevens, by contrast, had repairs of an acute left ventricular aneurysm and an acute inferoposterior wall septal defect, as well as a coronary artery bypass graft. Stevens Medical Records (Ex. I) at CFVMC-MD-1015-16. Thus, his surgery would not have qualified for inclusion in D'Ambra's study.

Trasylol and control groups.[2]  Moreover, plaintiff mischaracterizes the findings of the D'Ambra study.  Rather than showing that high-dose Trasylol – the dose that Mr. Stevens received – was significantly associated with renal failure, the D'Ambra authors found no difference between treatment groups when "an increase in the serum creatinine of greater than 2.0 mg/dl was considered," D'Ambra (Ex. F to Motion) at 1087, and documented only a single patient in the high-dose aprotinin group who received dialysis, but this patient's "renal failure had resolved by the time of discharge."  *Id*.  Experts are not required to accept studies with which they disagree; they are merely required to consider them.  *See Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 851 (W.D. Tex. 2005) (requiring experts to consider positive and negative studies, not to adopt their conclusions).  This is precisely what Dr. Silvestry did, and plaintiff's motion should be denied.

---

[2] As Dr. Silvestry explained, the pre-surgery incidence of renal dysfunction, time on cardiopulmonary bypass, complexity of surgery, and other risk factors were unbalanced among the three groups D'Ambra studied.  *See Puckett* Silvestry Dep. (Ex. B) at 32:18-34:14.

9

## CONCLUSION

For these reasons, plaintiff's motion to exclude the case-specific testimony of Dr. Scott Silvestry should be denied in its entirety.

Dated: April 1, 2011                                Respectfully submitted,

*/s/ Barbara Bolton Litten*
Patricia E. Lowry
Florida Bar No. 332569
E-mail:  patricia.lowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
E-mail:  barbara.litten@ssd.com
**SQUIRE SANDERS & DEMPSEY (US) LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
Telephone:  561-650-7200
Facsimile:   561-655-1509

Philip S. Beck
Email:  philip.beck@bartlit-beck.com
Steven E. Derringer
Email:  steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR
    & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL  60603
Telephone:  312-494-4400
Facsimile:   312-494-4440

Eugene A. Schoon
Email:  eschoon@sidley.com
James W. Mizgala
Email: jmizgala@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone:  312-853-7000
Facsimile:   312-853-7036

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:   313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:   412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc., Bayer*
*HealthCare LLC, and Bayer Schering Pharma AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Barbara Bolton Litten*
Barbara Bolton Litten

SERVICE LIST
Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone:  215-790-4584
Facsimile:  215-875-7701
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone:  561-684-2500
Facsimile:  561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: patricia.lowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY (US) LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone:  561-650-7200
Facsimile:  561-655-1509
*Liaison Counsel for Defendants*

Scott A. Love
Email:  slove@triallawfirm.
**CLARK BURNETT LOVE & LEE, GP**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone:  203-610-6393
Facsimile:  203-610-6399
*Federal-State Liaison for Plaintiffs*

Gregory M. Martin
Email:  gmm@m-j.com
**MARTIN & JONES, PLLC**
410 Glenwood Avenue, Suite 200
Raleigh, NC  27603
Telephone:  919-821-0005
Facsimile:  919-863-6071
*Counsel for Plaintiff Jon Whitney Phipps*