UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

This Document Relates to All Actions.

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT CHERYL BLUME, Ph.D. AND BRIEF IN SUPPORT THEREOF

COME NOW, Plaintiffs in the above styled cause ("Plaintiffs") and submit the following "Plaintiffs' Opposition to Defendants' Motion to Exclude Testimony of Plaintiffs' Expert Cheryl Blume, Ph.D. and Brief in Support Thereof." Plaintiffs would respectfully show the Court that the expert testimony of Cheryl Blume Ph.D. ("Dr. Blume") should be admitted for the following reasons:

## I.
## INTRODUCTION AND SUMMARY OF PLAINTIFFS' OPPOSITION

Bayer's[1] *Daubert* challenge to Dr. Blume is a curious one. Rather than questioning Dr. Blume's qualifications or challenging her methodology, Bayer focuses its energy on shoehorning the *style* of Dr. Blume's testimony into the mold of previously-excluded regulatory expert, Dr. Suzanne Parisian. But Dr. Blume is not Dr. Parisian. And Dr. Blume's testimony does not exhibit the characteristics that led this Court to exclude Dr. Paisian's testimony. Thus, Bayer's one-size-fits-all approach to challenging the testimony of FDA regulatory experts misses the mark.

---

[1] Defendants Bayer Corporation, Bayer Healthcare Pharmaceuticals Inc. (as successor in interest to Bayer Pharmaceutical Corporation), Bayer AG, and Bayer Schering Pharma AG (now known as Bayer Pharma AG) are referenced collectively throughout this opposition as "Bayer."

Mindful of this Court's prior orders,[2] and the fact that Dr. Parisian's report and testimony were found "unwieldy" and "lack[ing] in analysis," great care has been taken to put forth only those opinions of Dr. Blume's that are both material to the litigation and compliant with this Court's earlier orders. To that end, Dr. Blume will not be offering any opinions on medical causation or epidemiology, foreign regulatory matters, or state law standards.[3] Instead, Dr. Blume seeks to assist the jury by testifying in two primary regards:[4]

> (1) by explaining the regulations, standards and events that bear upon her opinion that Bayer failed to adequately test Trasylol (the "failure-to-test" opinions), and
>
> (2) by explaining the regulations, standards and events that bear upon her opinion that Bayer failed to adequately inform doctors and patients of various risks associated with Trasylol (the "failure-to-warn" opinions),

That Dr. Blume might *have* opinions on other issues touched upon by this case – and may even have discussed them when asked to do so by Defense Counsel – does not make the whole of her testimony inadmissible in the face of repeated assurances by both Dr. Blume and Plaintiff's counsel that such opinions will not be elicited at trial. [*See* Argument *supra* at IV.].

This Court has already concluded that "there is a proper place for expert testimony with respect to FDA regulations in this case" [Parisian Order, 709 F.Supp. at 1350]. As demonstrated

---

[2] The Court has previously ordered that "any new FDA regulatory expert shall be limited to offering testimony only as to those FDA regulatory area deemed permissible under the Court's previous *Parisian* and *Buckman*Orders." [ Order Granting Plaintiff's Motion for Leave to file Supplemental Generic Expert, p. 1]

[3] While Dr. Blume does not intend to offer the opinion that Bayer violated any specific state law statute or decisional standard and does not base her standard of care opinions on the requirements of any particular state law, to the extent that state laws may reflect or inform the general standard of care, they may be discussed by Dr. Blume.

[4] The opinions summarized on page 18 of the Dr. Blume's report are broadly categorized for purposes of this Report as opinions relating to Bayer's failures to warn and opinions relating to Bayer's failures to test.

2

herein, Dr. Blume is the proper expert to offer qualified, relevant and reliable expert testimony to assist the jury in understanding a narrow range of FDA related issues.

## II.
## INCORPORATION BY REFERENCE OF MATTERS SET FORTH IN PLAINTIFFS' OPPOSITION TO BAYER'S MOTION TO EXCLUDE THE TESTIMONY OF DR. MARK J. EISENBERG

In the interest of brevity and to avoid burdening the Court with duplicative briefing, Plaintiffs have set forth the following matters in their "Plaintiffs' Opposition to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Mark J. Eisenberg and Brief in Support Thereof" (hereinafter "Eisenberg Opposition") which are fully incorporated herein by reference.

- Section "I" – BACKGROUND AND HISTORY OF MDL LITIGATION
- Section "IV.B" – THE PROPER DAUBERT STANDARDS

To further the Court's understanding of the history of this litigation, the scientific data that underlies the expert testimony in this case, and the separate and distinct areas of each expert's proffered testimony, Plaintiffs would respectfully refer the Court to Plaintiffs' Eisenberg Opposition.

## III.
## EVIDENCE

In support of this Opposition to Bayer's motion to exclude the expert testimony of Dr. Blume, Plaintiffs specifically rely upon the following documents which are set forth in "Plaintiffs' Compendium of Exhibits in Support of Plaintiffs' Opposition to Exclude the Testimony of Expert Cheryl Blum and Brief in Support Thereof " (hereinafter "Compendium of Exhibits") filed herewith:

    A.    Expert Report of Cheryl Blume (hereinafter "Blume Report").

    B.    Excerpts from the Deposition of Cheryl Blume (hereinafter "BlumeDepo.").

In addition, Plaintiffs rely upon all pleadings, discovery and evidence filed in this case and any admissions made by Bayer therein.

## IV.
## ARGUMENT AND AUTHORITIES

A. **IT IS UNDISPUTED THAT DR. BLUME IS ABUNDANTLY QUALIFIED TO OFFER OPINIONS REGARDING A DRUG COMPANY'S DUTIES TO STUDY AND TO WARN.**

   1. **Dr. Blume is Qualified To Offer Her Opinions Regarding Bayer's Failure-to-Warn and Failure-to-Test.**

It is difficult to imagine an expert more qualified to opine about the reasonableness of a drug company's failure to study and warn than Cheryl Blume, Ph.D. Dr. Blume has a Bachelor of Arts degree in biology and a Ph.D. in pharmacology and toxicology.[Blume Report, ¶ 1]. She has held executive positions in pharmaceutical companies for over 20 years.[Blume Report, ¶ 1]. Specifically, she served as the vice-president of scientific affairs for Mylan Laboratories and as Executive Vice President and Chief Operations Officer for Somerset Pharmaceuticals Inc.[Blume Report, ¶ 1]. In those roles, Dr. Blume was responsible for directing studies on new drug products, supervising post-marketing surveillance of approved drugs, preparing new drug applications, interacting with the FDA, and advising pharmaceutical companies of their duties. [Blume Report ¶ 1-3]. In fact, Dr. Blume currently serves as the Phamacovigilence Officer for several pharmaceutical companies making decisions on what testing and communications are required by the applicable regulations, standards and circumstances in response to post-approval safety signals. [BlumeDepo. 359-363].

Today, Dr. Blume continues to (a) consult with drug companies on their dealings with the FDA, (b) design studies on drug safety as part of her consulting work,(c) consult with drug companies on their product warnings and marketing activities, and (d) develop effective post-marketing surveillance for drug companies. Dr. Blume has been involved at the highest levels in

4

precisely the activities she has evaluated in this case. Thus, while Bayer questions Dr. Blume's qualifications in areas where she is not offering opinions – *e.g.*, causation and foreign regulatory matters– it does not (and cannot) contest her ample qualifications to offer the failure-to-test and failure-to-warn opinions at issue here.

> 2. **Dr. Blume Is Qualified To Discuss FDA Regulations Requiring Bayer To Have And Follow Standard Operating Procedures.** (In response to Bayer's Argument at III.B., p. 25).

The only substantive area of Dr. Blume's testimony which both (1) is challenged by Bayer and (2) is actually offered by Dr. Blume for purposes of submission to the jury relates to Bayer's standard operating procedures ("SOPs").[5] Yet, while Dr. Blume readily admits that she has not worked for Bayer and had no role in drafting Bayer's SOPs, that fact does not disqualify her expert testimony. That is because the subject of Dr. Blume's opinion is not merely the SOP, it is the FDA regulations that require Bayer to prepare and adhere to SOPS. For example, the FDA's labeling provision states:

> Procedures shall be written describing in sufficient detail the control procedures employed for the issuance of labeling; such written procedures shall be followed.

21 CRF § 211.125(f). It is undisputed that Dr. Blume is qualified to testify regarding the meaning and application of FDA regulations. Assessing whether Bayer complied with FDA regulations requiring it to prepare and adhere to appropriate SOPs is a matter requiring experience and expertise in pharmaceutical regulations and practices. Dr. Blume has such expertise. Consequently, she should be found qualified to offer opinions relating to the FDA's requirements for SOPs.

---

[5] Bayer also contests Dr. Blume's qualifications to offer opinions on foreign regulatory matters, state law standards, and issues of causation and epidemiology. [Daubert Motion, pp. 24-28]. However, because Dr. Blume has not been proffered on such issues and does not intend to offer opinions on any of those issues before the jury, they will not be addressed in this Response.

5

## B. NUMEROUS COURTS HAVE ADMITTED TESTIMONY FROM DR. BLUME SIMILAR TO THE TESTIMONY OFFERED HERE.

Numerous courts have admitted Dr. Blume's testimony on FDA regulatory issues. [*See* Appendix 2 to Dr. Blume's Report (identifying fourteen (14) proceedings in which Dr. Blume offered trial testimony)]. Nevertheless, Bayer opens its motion by citing to a small handful of cases it claims support the exclusion of the opinions Dr. Blume offers in this case. [Bayer's Daubert Motion, p. 3]. What Bayer neglects to tell the Court is that, in three out of the four cases it cites (as well as in others it does not cite), Dr. Blume's testimony was admitted on the very same regulatory issues for which Dr. Blume is offered as an expert in this case. That is, while excluding testimony on matters such as the defendant's intent or foreign regulations (neither of which is being offered here), even the opinions cited by Bayer stand for the proposition that Dr. Blume'sexpert opinions regarding a drug company's duties to test and to warn are admissible. An example of the disparity between what cases are cited for by Bayer and what they hold in reality is *Smith v. Pfizer Inc.*, Cause No. 3:05-0444, 2010 WL 1963379 (M.D. Tenn. May 14, 2010). Bayer claims that the *Smith* court excluded Dr. Blume's testimony as "unreliable," "unduly prejudicial bad company type opinions" and as "state-of-mind" testimony. In truth, the *Smith* Court found the charge of "bad-company" testimony to be "meritless," "disagree[d] that Blume's phrasing was unduly prejudicial or misleading" and made no finding whatsoever that Dr. Blume's testimony was unreliable or inadmissible other than in relation to a particular chart. *Id.* at *11.*See also,In re Viagra Prods. Liab. Litigation.,* 658 F.Supp.2d 950, 962 (D.Minn. 2009)(admitting Dr. Blume's testimony that Pfizer should have conducted additional testing and added additional warnings to its Viagra label); *Wright v. Am. Home Prods. Corp.,* 557

6

F.Supp.2d 1032, 1037038 (W.D. Mo. 2008)(finding Dr. Blume "clearly qualified" to testify about the general industry standards Wyeth followed or failed to follow…" ).[6]

### C. DR. BLUME IS NOT AN UNCONTROLLABLE WITNESS.*(In response to Bayer's Argument I., pp. 5-10).*

Bayer's leading argument for excluding *Dr. Blume's* testimony seems to be that the testimony of *a wholly different regulatory expert, Dr. Suzanne Parisian,* was previously excluded. There are several problems with Bayer's argument. First, and most obviously, Dr. Blume is not Dr. Parisian. The characteristics that led this Court to exclude the Dr. Parisian's expert's testimony are not exhibited by Dr. Blume. Second, Bayer cannot merely extract the adjectives used in the Parisian order and stamp them across incomplete excerpts of Dr. Blume's testimony to make them true. Bayer's selective citations notwithstanding, Dr. Blume is not a deliberately non-responsive or uncooperative witness. Noris Dr. Blume's testimony lacking in regulatory support or a readily provided basis. Consequently, Bayer's claims that Dr. Blume would be an unruly witness should be denied.

#### 1. Dr. Blume's Deposition Testimony Was Neither Routinely Nor Deliberately Non-Responsive.

Bayer's portrayal of Dr. Blume's testimony as "repeatedly" non-responsive to the questions asked is greatly exaggerated. Over the course of a nearly eleven (11) hour deposition,[7] counsel for the defendants moved to strike portions of Dr. Blume's answers in only ten instances. Moreover, even the testimony Bayer sought to strike as non-responsive was generally related to the overall line of questioning or necessary for a complete answer.

---

[6] The only case cited by Bayer where Dr. Blume's testimony was excluded in its entirety was *In re Prempro Prods. Liab. Litig.,* MDL Docket No. 4:03–cv–01507, 2010 WL 5663003 (E.D.Ark. Sept.16, 2010). However, the *Prempro* court noted that it was ruling, not on the admissibility of testimony generally but rather was addressing solely the "very narrow issue" of whether a basis had been established for standard of care testimony. In *Prempro,* Plaintiff's counsel conceded that there was not a defined standard and there is no reference in the opinion to the bases for Dr. Blume's opinons that have been set forth in this case. Consequently, the *Prempro* holding should not control the admissibility of Dr. Blume's testimony.

[7] Approximately eight (8) hours of Dr. Blume's deposition was on the record.

7

> Q: Can you think of a case in which you testified on behalf of a pharmaceutical company in a personal injury lawsuit brought by a plaintiff?
>
> A: No. Because the ones that I did settled before it [sic] got to testifying.
>
> Q. Okay. I'll move to strike the last part of that.

[Blume 91:2-9]. In some instances, the testimony Bayer moved to strike was actually responsive to the question asked. [Blume 180:21-181:12].

Similarly, Bayer mischaracterizes Blume as refusing "for over six deposition transcript pages" to concede that her opinion Bayer violated its own SOPs was not based on FDA regulations. In actuality, the question Blume was asked was whether her opinion regarding SOP violations was "based on any FDA regulation"? [Blume 126:21-24]. In response, Dr. Blume explained that the regulations come into play because: (1) they require drug companies to have standard operating procedures [Blume 129:3-9], and (2) drug companies sometimes reference or adopt FDA standards as their standard operating procedure. [Blume 128:7-16]. It was *defense counsel*, not Dr. Blume, that then diverged into a lengthy line of questioning regarding specific regulations and the definition of SOPs. [Blume 129:6; 129:12; 130:6 130:17; 131:6-12; 131:15-17]. That Dr. Blume answered the questions she was asked before being redirected to the original question (which she then directly and succinctly answered) is hardly an indicator of an unreliable witness. If Bayer seeks a more targeted exchange at trial than the deposition exchange it cites, it is entirely within Bayer's power to control the questions Dr. Blume is asked.

2. **Dr. Blume's Testimony Is Not Subject To Exclusion Merely Because She Consulted the FDA Regulations When Asked to Identify Specific Provisions.**

Bayer next lodges the curious complaint that Dr. Blume testimony is unreliable because she was too careful and deliberate in her responses to questions asking for specific FDA

8

provisions. Indeed, even Bayer's example reflects that when she was asked to identify the "specific regulatory provision" requiring pharmaceutical companies to develop standard operating procedures, Dr. Blume responded "That's definitely under [Sections] 210 and 211." [Blume 129:17]. It was only when asked for the specific provision within those sections that Dr. Blume sought to consult the regulations. [Blume: 130:7-10].

Plaintiffs know of no case, and Bayer has cited none, where the reliability of an expert's opinions turned upon his ability to recite technical or regulatory information from memory. Indeed, to impose such an obligation upon FDA regulatory experts tasked with explaining voluminous FDA regulations would virtually insure that FDA testimony was ever admitted to the jury. This Court should decline to be the first to make the admissibility of expert testimony hinge on a memory test.

### 3.   Dr. Blume's Opinions Are Not Lacking Support.

Bayer attempts to convert a quibble over Dr. Blume's support for one particular opinion (singular) into a global attack on the regulatory support for all her opinions (plural).[8] That is not the case. Dr. Blume consistently sets forth the regulatory or other bases for her opinions. For example, when Dr. Blume says drug companies have the responsibility and means to independently amplify their labeling to address safety-related information she cites to 21 CFR 201.56; 201.57; 202.1; 314.50; 314.70; and Pharmacoepidemiology, 2006. [Blume Report, ¶ 8]. Similarly, when Dr. Blume asserted the opinion that Bayer should have amended its Traylol labeling in 2002 to reflect potentially increased mortality, she cited to 21 CFR § 201.56; 201.57, PhRMA 1995; PhRMA Medicine Safety; Overview; PhRMA; US Prescription Drug Safety: The World Standard; PhRMA Principles; Pharmacoepidemiology 2006; and the March 2005

---

[8] Bayer's sole example of an unsupported opinion by Dr. Blume is one where the expert described FDA guidance documents, textbooks, the PhRMA code and FDA submission forms – but not a CFR provision.

Guidance. [Blume Report ¶ 75]. The same level of specificity in identifying the support for her opinions is exhibited throughout Dr. Blume's report.

### 4. Dr. Blume Fully Disclosed the Materials on Which She is Relying.

Bayer removes snippets of testimony from their greater context in order to suggest that Dr. Blume is hiding source materials from Defendants. Not so. Read in its entirety and in context, the exchange about which Bayer complains begins with an inquiry whether there are any other alleged industry standards beyond those listed in Dr. Blume's report. Dr. Blume responds by saying that she listed the gold standard textbook and a book by Brian Strom as her sources but that there are other publications dealing with industry standards that were not included. [Blume 168:10-16]. Dr. Blume also states that she would only be relying on the two sources she cited. [Blume 169:12-13]. Thus, there was nothing "improper" or "prejudicial" about Dr. Blume acknowledging the existence of other textbooks while explaining that her opinions are based solely on her cited sources.

### D. DR. BLUME DOES NOT INTEND TO OFFER OPINIONS THAT VIOLATE THIS COURT'S PRIOR "BUCKMAN" AND "PARISIAN" ORDERS. *(In Response to Bayer's Argument II., pp. 10-23)*

#### 1. Dr. Blume's Proposed Expert Opinions Do Not Violate the *Buckman* Order.[9]

Neither Plaintiffs nor Dr. Blume cannot say it any plainer than this: Dr. Blume does *not* intend to offer any opinion that Bayer failed to provide information to the FDA. Dr. Blume has testified that Bayer's failures to provide information to the FDA will not be a subject of her testimony. [Blume 145:22-23. Plaintiffs' Counsel have likewise stated on the record that Dr.

---

[9] The Order granting Plaintiffs' Motion for Leave to File Supplemental Generic Expert requires as a condition for admission that the supplemented expert not offer any opinions precluded under the Court's previous Buckman Order. That Plaintiffs have limited the scope of Dr. Blume's testimony accordingly does not imply agreement by Plaintiffs with the prior *Buckman* order or constitute a waiver of any arguments, whether on appeal or otherwise, regarding the correctness of the prior ruling.

Blume will not be offering opinions regarding Bayer's compliance or non-compliance with FDA reporting requirements. [Blume143:23-144:6; 219:9-12].

Bayer nevertheless persists in portraying Dr. Blume as unwilling to abide by this Court's *Buckman* order. In so doing, Bayer overstates the scope of the *Buckman* order. The *Buckman* order does not prohibit Dr. Blume from *having* opinions as to whether Bayer properly submitted specific information to the FDA. It merely holds that such opinions are inadmissible. The bulk of Dr. Blume's deposition testimony claimed by Bayer to violate the *Buckman* holding was directly responsive to questions asked by Defense Counsel. Plaintiff's counsel alluded to this very problem at Dr. Blume's deposition saying:

> [N]owhere in this report does Dr. Blume state that there was a failure to provide specific information to the FDA. That's not her opinion, that's not what she's going to be testifying about today, and I'm concerned that that type of question would evoke -- could evoke testimony that's inconsistent with what her state of opinions are going to be.

[Blume 143:24-144:6]. Indeed, the deposition transcript is replete with questions by defense counsel asking Dr. Blume whether information was properly provided to the FDA:

> Q. Can you think of any other time that FDA noted that they were not provided with information from Bayer? [Blume 160:25-161:1].
>
> Q. In your review of the IND. . . did you see that there was any information that was missing or incomplete from . . Bayer's submission? [Blume 143:19-22].
>
> Q. Can you. . . think of any post-marketing commitment made by Bayer to the FDA about Trasylol that Bayer did not fulfill to the FDA's satisfaction? [Blume 151:24-162:2].

The mere fact that Dr. Blume holds such opinions -- and discussed them when defense counsel asked her to do so -- does not change the fact that the opinions she intends to offer in this case have nothing to do with Bayer providing or failing to provide information to the FDA.

11

2.  **Dr. Blume's Proffered Opinions Do Not Violate the *Parisian* Order.**

Plaintiffs do not dispute that expert testimony must have an adequate basis and connection to analysis to be admissible. Dr. Blume's testimony meets these requirements. Even a cursory review of Dr. Blume's report and deposition testimony reveals multiple statements linking Bayer's failures to test and failures-to-warn to specific FDA regulations. Nevertheless, Bayer sets forth two "reporting" opinions from Dr. Blume's report and claims they are "unsupported conclusions unrelated to any regulatory expertise" that must be excluded for the reasons Dr. Parisian's opinions were excluded. [Daubert Motion, p. 14]. Bayer's statement is blatantly false. Far from the lengthy and sometimes disjointed report provided by Dr. Parisian, Dr. Blume offers a lean 44 page report with specific citations to regulations, textbooks, industry documents and factual materials following each assertion of an FDA violation. Indeed, the very opinion cited by Bayer, that Bayer violated FDA regulations by failing to publish the Kress study, was followed by five CFR citations.[*See* Blume Report ¶ 53 (citing "21 CFR § 201.56 (labeling requirements); § 312.33 (annual reporting requirements); § 314.70 (supplementing and changing an approved application); §3114.80 (postmarketing reporting of adverse drug experiences); and § 314.81 (other postmarketing reports))]. Similarly thorough citations to the regulatory basis for her opinions were given in each of the other paragraphs cited by Bayer as unsupported and conclusory. [*See* Blume Report ¶¶ 50, 54, 60, 62].

Moreover, Dr. Blume's testimony is not an impermissible factual narrative. Expert testimony excluded as a narrative generally falls into one of two categories. Either it is excluded as testimony presented to the jury solely for the purpose of constructing a factual narrative out of record evidence. *E.g. Highland v. Capital Management, L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005). Or it is factual testimony that a lay juror is equally capable of

constructing. *E.g. In re Rezulin*, 309 F.Supp.2d 531, 551 (S.D.N.Y. 2004) (excluding testimony of expert specifically proposed to testify to a factual narrative reciting selected regulatory events). Neither of these categories describes the expert testimony of Dr. Blume.

Unlike Dr. Parisian whose voluminous 250 page report and broad-ranging testimony was excluded by this Court as an improper narrative, Dr. Blume proffers a concise 44-page report that includes references to regulations, textbooks, industry documents and factual materials after each assertion. The same argument that Dr. Blume was improperly summarizing documents was addressed, and rejected, in a case cited by Bayer as support for its *Daubert* motion. In *Smith v. Pfizer Inc.*, the court noted that "Blume's discussion of the record gives context to her conclusions, which is necessary in a complex case." Cause No. 3:05-0444, 2010 WL 1963379, *11 (M.D. Tenn. May 14, 2010). Consequently, the court declined to exclude Dr. Blume's testimony as an unsupported narrative. This Court should do the same.

Lastly, Dr. Blume is not offering impermissible "bad company" opinions. A prohibited "bad company" opinion is one where the claim or wrongdoing is unconnected to any expert analysis or applicable standards. *See In re Prempro*, 554 F.Supp.2d at 883; *In re Fosamax*, 645 F.Supp.2d at 191. Dr. Blume's opinions are not in that category. When stated accurately and considered in their proper context, it is apparent that Dr. Blume's challenged testimony involves specialized analysis and expertise and is not merely a personal opinion. Faced with this same argument against Dr. Blume, even the authorities relied upon by Bayer have concluded:

> The defendants further argue that Blume improperly offers her personal views on the defendant's conduct, . . . but the court finds that this objection is meritless.

13

*Smith v. Pfizer Inc.*, Cause No. 3:05-0444, 2010 WL 1963379, *11 (M.D. Tenn. May 14, 2010). After considering Dr. Blume's ample citations to regulatory and industry standards, this Court should also decline to exclude Dr. Blume's testimony as lacking in support.[10]

> a. **Dr. Blume does not intend to testify to Bayer's motive or intentions; but her testimony regarding what Bayer knew or should have known is admissible and does not violate the *Parisian* Order.**

Dr. Blume will not opine about Bayer's motives or intent. Knowledge, however, is a different matter. What Bayer knew or should have known at a given time and what it did or should have done in response to that knowledge are integral issues in Dr. Blume's testimony. A careful reading of the Parisian Order makes clear that Dr. Blume is not prohibited, under the terms of that order, from referencing the fact of what studies had been done, or what databases were available, at a given time. When the Parisian Order speaks of improper references to "knowledge" it refers to inferences of "the FDA's knowledge." Parisian Order, p. 1338. Every reference to improper testimony regarding Bayer's mental state dealt with inferences of motive or intentions – not knowledge. Id. That is because it is impossible for Blume to render an opinion on whether, when and what warning was required or testing was called for without

---

[10] Tucked within its lack-of analysis based opinions, Bayer includes a single sentence argument that Dr. Blume's opinions are inadmissible as legal conclusions. Not so. The Federal Rules of Evidence make abundantly clear that an expert may offer testimony embracing an ultimate issue of fact that the jury will decide. FED. R. EVID. 704; *In re Fosamax*, 645 F.Supp.2d at 191. Most courts have interpreted the federal rule as meaning that an expert can render an opinion that is based on his analysis of facts but that an expert cannot offer an opinion that is based solely on his interpretation of the law. The expert may even give an opinion on the ultimate issue in the case so long as the opinion is based upon the expert's analysis of the facts and not based on the expert's interpretation of the law.

An expert's testimony goes too far only when it tells the jury what opinion to reach on the ultimate legal conclusion; for example, whether the defendant was negligent. *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir.1994). The distinction is subtle, but significant. Experts may reasonably disagree about whether or not a party breached the standard of care (a fact), but there is only one answer to whether a defendant is negligent (the ultimate legal conclusion). Thus, the question with regard to admissibility under Rule 704 is whether the expert's opinions assist the jury in understanding the evidence or determining a fact issue. The answer here is that they do.

The testimony which Bayer characterizes as impermissible legal conclusions consists of Dr. Blume's opinions that Bayer failed to comply with FDA and FDCA standards. [Bayer's Daubert Motion p. 14]. However, Dr. Blume's testimony consists of fact-based opinions comparing Bayer's conduct to a specialized standard of care. Such fact-based conclusions are distinct from conclusory legal opinions and are proper under Rules 702 and 704. *See United States v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002)(To be an improper legal conclusion, the opinion must regurgitate the law with an opinion in one side's favor. In contrast, an expert's factual determinations "give the jury insight into the bases of the expert's conclusion.").

14

setting forth what Bayer knew or should have known at that point in time. Consequently, Dr. Blume's testimony is not inadmissible merely because it sets forth what information was available to a Bayer at a given time, and what the action (if any) the available information would provoke from a reasonable and prudent pharmaceutical company

        **b.    Dr. Blume's testimony regarding industry standards does not violate the Parisian Order.**

Dr. Blume's testimony regarding industry standards for testing and warnings does not violate the Parisian Order. First and most obviously, the Parisian Order includes no prohibition on industry standard testimony. Thus, there is no basis for Bayer's assertion that Dr. Blume's testimony in this regard violates the Parisian Order.

Second, Dr. Blume has clearly articulated the basis for her testimony that the PhRMA Code and other industry documents and texts establish an industry standard.[Blume Report ¶ 11].The Pharmaceutical Research and Manufacturers of America ("PhRMA") is an organization of research-intensive drug manufacturers. [Blume 169:21]. PhRMA puts out a code for its members (of which Bayer is one) that it calls the "world standard." [Blume 169:20-22]. Dr. Blumehas explained that it is not merely the existence of the PhRMA code that gives rise to an industry standard but the fact that the PhRMA is an embodiment of the practices used in the industry and reviewed and approvedby it members within the industry. No major pharmaceutical company has professed a refusal to recognize or abide by the PhRMA Code's provisions. As Dr. Blume explained at her deposition:

> Q.    Based on your practice and pharmacovigilance, your observations at the FDA and your observations of pharmaceutical companies have you been – have you formed an opinion as to whether or not the PhRMA Code and related documents are an industry standard?
>
> A.    For the ones with which I have had experience, the ability to observe information, I would believe that the

15

> PhRMA Code – I believe that the PhRMA Code is used as a reference for their standard of care, yes.

[Blume 372:8-16].

Nevertheless, because the PhRMA Code does not use the words "industry standard," Bayer suggests that it cannot establish a standard of care. Not so. That Code states on its first page that "the obligations of the industry are identified below" and then continues on to discuss drug companies' post-marketing obligations – including the obligations to conduct post-marketing testing and warnings. [Dr. Blume 176:8-18; 178:7-11]. Nor is the PhRMA Code lacking as evidence of an industry standard merely because it does not include a mandatory schedule of testing or a specific reporting metrics.

> Apparently, [Defendant] is under the impression that a standard of care must either be written in stone, or so easy to discern that a trier of fact need no help in determining it. This misconception defies logic and case law.

Opinion, *Barton v. Wyeth*, April Term 2004, No. 6301, *28 (CCP Phila. 1st Dist. Jan. 29, 2010).[11]

Bayer's reliance on the *PremPro* opinion as support for excluding Dr. Blume's testimony regarding industry standards is misplaced. The Prempro MDL Court did not exclude expert testimony regarding the PhRMA Code because it could never establish a standard of care. The *Prempro* Court excluded the use of the PhRMA Code because, in that particular case, the plaintiffs had not shown that governing Arkansas law permitted evidence of industry standards to prove strict liability or negligence. *In re Prempro Prods.Liab. Litig.*, 2010 WL 5663003, *3

---

[11] To the extent that Bayer's argument implies that testimony regarding an industry standard must be exclusively premised on FDA regulations in order to be admissible, it is incorrect. To the contrary, FDA regulations are merely minimum standards for drug companies. [Blume 180:2-9]. The reasonableness of a company's actions may also be measured by the obligations imposed by the industry and by the company's own individual undertakings.

16

(E.D.Ark). Thus, the *Prempro* holding has no bearing on the admissibility of Dr. Blume's testimony regarding industry standards.

Finally, Dr. Blume's opinions do not violate the substitution order. The substitution order restricted Dr. Blume's testimony to "those FDA regulatory *areas* deemed permissible" under prior orders. Bayer, however, would have the court restrict not merely the subject areas of Dr. Blume's testimony but the specific bases underlying the subject opinions. Bayer's position defies common sense. It cannot be that Dr. Parisian's opinions were excluded due to an insufficient grounding in the regulations and industry documents but the substituted expert is prohibited from relying on any support for her opinions other than the inadequate sources cited by Dr. Parisian. The better approach is to require the subject matter of Dr. Blume's opinions to conform to the subject matter of the originally-submitted FDA experts (which it does) but to permit additional citations to regulations, guidances, textbooks and industry documents supporting those opinions.

## V.
## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court DENY Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Cheryl Blume. Plaintiffs additionally request all other and further relief as the Court deems just and proper.

This the 19th day of September, 2011.

Respectfully submitted,

/s/ *Theodore Babbitt*
Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBOURNE&LECLAINCHE, PA**
1641 Worthington Road, Suite 100
West Palm Beach, FL  33409
Telephone:  561-684-2500
Facsimile:   561-684-6308
***Liaison Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Theodore Babbitt*

# SERVICE LIST

### Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON
### Case No. 9:08-cv-80395-DMM

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN & SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-735-1130
Facsimile: 215-875-7758
*Co-Lead Counsel for Plaintiffs*

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE & LECLAINCHE, P.A.**
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile: 561-684-6308
*Liaison Counsel for Plaintiffs*

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
Barbara Bolton Litten
Florida Bar No. 91642
Email: Barbara.litten@ssd.com
**SQUIRE, SANDERS & DEMPSEY L.L.P.**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile: 561-655-1509
*Liaison Counsel for Defendants*

Scott Love
Email: slove@triallawfirm.com
**CLARK, DEAN & BURNETT, G.P.**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX 77002
Telephone: 713-759-1400
Facsimile: 713-759-1217
*Co-Lead Counsel for Plaintiffs*

Neal Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: 203-610-6393
Facsimile: 203-610-6399
*Federal-State Liaison for Plaintiffs*

Philip S. Beck
Email: philip.beck@bartlit-beck.com
Steven E. Derringer
Email: steven.derringer@bartlit-beck.com
**BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP**
54 W. Hubbard Street, Suite 300
Chicago, IL 60603
Telephone: 312-494-4400
Facsimile: 312-494-4440
*Attorneys for Defendants*

Eugene A. Schoon
Email: eschoon@sidley.com
Susan A. Weber
Email: saweber@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
Telephone: 312-853-7000
Facsimile: 312-853-73036
*Attorneys for Defendants*