**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No. 1:08-MD-01928-MIDDLEBROOKS/JOHNSON**

IN RE TRASYLOL PRODUCTS LIABILITY
LITIGATION – MDL-1928

**This Document Relates to:  ALL CASES**

**BAYER'S REPLY IN SUPPORT OF ITS MOTION
TO EXCLUDE TESTIMONY OF PLAINTIFFS' EXPERT CHERYL BLUME**

In its Motion to Exclude Testimony of Plaintiffs' Expert Cheryl Blume

[D.E. 10595 in 1:08-md-1928] ("Mot."), Bayer demonstrated that Dr. Blume is likely to be an

uncontrollable and unhelpful witness, that the majority of her proposed testimony violates this

Court's prior orders, and that she is not qualified in certain areas that encompass her proposed

opinions.  In response, plaintiffs ostensibly concede some of these points, stating that Dr. Blume

will not offer opinions that violate this Court's prior *Buckman*, Parisian, and Substitution orders,

*see* Pls.' Opp. To Defs.' Mot. to Exclude Test. Of Pls.' Expert Cheryl Blume, Ph.D. ("Opp.") 10-

17 & n.9, or where she lacks expertise, including on the following matters:

- medical causation, Opp. 2, 5 n.5;

- epidemiology, *id.*;

- foreign regulatory matters or foreign regulations, *id.* 2, 5 n.5, 6;

- state law standards, *id.* 2, 5 n.5;

- defendants' motives or intent, *id.* 6, 14; or

- Bayer's alleged failure to provide information to FDA, *id.* 10-11 (*Buckman*).

But plaintiffs fail to acknowledge that a substantial number of the opinions

contained in Dr. Blume's report and about which she testified at her deposition actually violate

1

these concessions.  Thus, while this Court's orders prohibit Dr. Blume from offering such opinions, and/or while plaintiffs' attorneys themselves concede that such opinions are improper, Dr. Blume seemingly cannot help herself and, nevertheless, presents these opinions in this case. This inability or unwillingness to follow the directives of the Court and apparently the instructions of plaintiffs' counsel underscores the need to exclude her testimony in its entirety.[1]

Moreover, plaintiffs do not refute Bayer's showing that Dr. Blume's testimony violates the *Buckman* Order, by opining that Bayer failed adequately to disclose information to FDA, and the Parisian Order, by offering testimony that:  (1) lacks regulatory analysis; (2) is mere factual narrative; (3) opines on Bayer's knowledge; and (4) is based on unknowable, pseudo-"industry standards."  Dr. Blume also offers a host of opinions on matters for which plaintiffs concede she is not qualified.

## I.    PLAINTIFFS DO NOT REBUT BAYER'S SHOWING THAT DR. BLUME WOULD NOT BE A HELPFUL OR CONTROLLABLE WITNESS AT TRIAL.

In its motion, Bayer cited numerous specific examples from Dr. Blume's deposition demonstrating that, if permitted to testify at trial, she is likely to confuse the jury, waste the Court's time, and unduly prejudice Bayer.  Mot. 5-10.  Plaintiffs have not undermined Bayer's showing that Dr. Blume:  (1) provides evasive and non-responsive answers; (2) needs to search her materials to answer basic questions within her supposed expertise, resulting in lengthy delays; (3) cannot support some of her core opinions with relevant regulations; and (4) could not confirm whether she disclosed all the materials she relied on to form her opinions.  *Id.* 6-10.

---

[1]  Although plaintiffs contend that not all courts have excluded Dr. Blume's testimony in its entirety, plaintiffs do not refute Bayer's showing that numerous other courts have excluded "testimony from Dr. Blume, in whole or in part."  Defs.' Mot. to Exclude Test. of Pls.' Expert Cheryl Blume ("Mot.") 3 & n.3 (citing opinions and nature of excluded testimony).  Bayer has amply demonstrated why and how aspects of Dr. Blume's proposed testimony here violate the principles of those cases.  *E.g.*, *id.* 3, 15-16, 17, 19, 20-23.

Even if "Dr. Blume is not Dr. Parisian," Opp. 7, unfortunately, as the record clearly shows, Dr. Blume has proven to be a similarly unhelpful and uncontrollable witness with "no expectation or intention of abiding by the opinion constraints of Rule 702." *In re Trasylol Prods. Liab. Litig.* ("Parisian Order"), 709 F. Supp. 2d 1323, 1351 (S.D. Fla. 2010). The Court should exercise its important gatekeeping role and exclude her testimony. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (explaining that "the expert's opinion 'can be both powerful and quite misleading because of the difficulty in evaluating it'").

        *Evasive answers and non-responsive commentary*. Plaintiffs do not—and cannot—rebut Bayer's showing that Dr. Blume was evasive and non-responsive at her deposition. Mot. 6-7. Plaintiffs suggest that Dr. Blume should be permitted to testify because Bayer "only" had to move to strike her testimony ten times. Opp. 7. Bayer respectfully submits that this preview of the kind of prejudicial, rambling commentary and evasive tactics Dr. Blume would engage in if permitted to testify at trial amply demonstrates the need to exclude her testimony. *See* Parisian Order, 709 F. Supp. 2d at 1339 (finding it problematic that Dr. Parisian "just wouldn't answer [defense counsel's] questions") (quoting Tr. of Dr. Parisian *Daubert* Hr'g (Apr. 13, 2010) 167:21-211:23).

        The only rebuttal plaintiffs offer is their claim that Bayer mischaracterizes the record regarding whether Dr. Blume refused, for over six deposition transcript pages, to concede that her factual conclusion that Bayer violated its own standard operating procedures ("SOPs") was not based on FDA regulations. Opp. 8. But plaintiffs' claim is demonstrably false. Rather, it is plaintiffs' selective quotation of the transcript that mischaracterizes the initial question and omits completely the follow-up exchange between Dr. Blume and defense counsel, which make abundantly clear the straightforward question asked of Dr. Blume:

> Q.    Now, your factual conclusion about whether or not Bayer followed its own standard operating procedures, that's not based on any FDA regulation, is it?
>
> A.    That you need to develop procedures and follow them?
>
> Q.    No, that wasn't my question.  Your factual conclusion about whether or not Bayer followed its standard operating procedures, that conclusion is not based on any FDA regulation.  Correct?
>
> A.    Okay.  Please direct me to the paragraph you're referring.

Deposition of Cheryl Blume, Ph.D. (July 21, 2011) ("Blume Dep.") 126:21-127:7 (Ex. B to Mot.[2]).  Even after this clarification, Dr. Blume did not "directly and succinctly" answer the question, as plaintiffs suggest.  Opp. 8.  Instead, she provided a lengthy explanation of her general "procedure across any project" for evaluating SOPs and a vague application of those procedures to a hypothetical situation.  Blume Dep. 127:16-128:21.  Indeed, it was only after defense counsel asked the same question a *sixth* time that Dr. Blume conceded the point, stating: "Yeah.  It's part—yes.  It is—*I am not relying upon FDA in making a statement on this*.  I'm relying on my review of the records and what the industry standards are relating to this."  *Id.* 132:22-25 (emphasis added).  Plaintiffs do not address the numerous other examples Bayer cites of Dr. Blume's non-responsive answers.[3]  Thus, plaintiffs' assertion that "it is entirely within Bayer's power to control the questions Dr. Blume is asked" misses the point—Dr. Blume's deposition performance shows that neither defendant, the Court, nor plaintiffs' counsel will be able to confine her testimony to a proper response at trial.

---

[2] Exhibits A-F were attached to Bayer's Motion to Exclude Testimony of Plaintiffs' Expert Cheryl Blume [D.E. 10595 in 1:08-md-1928]; exhibit G is attached to this Reply.

[3] *See, e.g.*, Blume Dep. 178:16-179:3; 181:8-12; 191:18-192:20; 203:22-204:5; 280:4-281:16; 304:6-24; 351:24-353:14 (non-responsive testimony); *id.* 173:1-174:16; 213:18-24; 214:23-216:12; 261:9-13 (instances where plaintiffs' counsel had to interject to try to get Dr. Blume to answer defense counsel's questions).  Based on this record, defendants' characterization of Dr. Blume's testimony as "repeatedly" non-responsive is not "greatly exaggerated," Opp. 7; rather, it is plainly warranted.

***Inability to answer questions without lengthy delays to search for support.***

Plaintiffs claim that Dr. Blume's inability to answer basic regulatory questions without looking through voluminous materials reflects only that she is being "careful and deliberate" in her responses, and they argue that she should not have to pass a "memory test." Opp. 8-9. But defendants are not asking Dr. Blume to quote verbatim from the Code of Federal Regulations, only that she be able to meaningfully support her opinions with citation to relevant regulatory provisions. Mot. 7-8. Rule 702 and *Daubert* require an expert to be able to provide the bases for her opinions. *See* Parisian Order, 709 F. Supp. 2d at 1340-41 (criticizing Dr. Parisian for "citing regulations that had marginal relevance to the issues being discussed"). Dr. Blume showed that she often is unable to do so without substantial delay and distraction that is likely to waste time and confuse the jury. For example:

- "Q. Without going to get the whole book, can you tell me sitting here right now what provisions require that? A. No. And that's why these notebooks are all here." Blume Dep. 129:12-130:5.
- "And if you would give me the courtesy of giving me a paragraph and perhaps I won't even have to leave the room and I can go to the notebooks that I prepared to avoid issues such as this and look up both regulations I have listed in there." *Id.* 130:12-16.
- "Do we know where this is at in this notebook, because it is going to take me 10 minutes to go through here?" *Id.* 174:12-16.
- "Okay. I'll have to read a little bit of [the notebook], but I'll get to the answer." *Id.* 326:9-328:15.

These excerpts demonstrate that Dr. Blume often is unable to support her opinions without lengthy delays and detours, which will unnecessarily lengthen the trial and waste the Court's and the jury's time. Accordingly, her testimony should be excluded. *See* Fed. R. Evid. 702, 403.

***Lack of regulatory support for her opinions.*** Bayer showed that some of Dr. Blume's core opinions are not grounded in FDA regulations. Mot. 8-9. In response, plaintiffs state that "Dr. Blume consistently sets forth the regulatory *or other bases* for her opinions," Opp.

9 (emphasis added), implicitly conceding that some of her opinions have no regulatory support. Moreover, according to plaintiffs, Dr. Blume is offering two "primary" opinions:  "'failure-to-test' opinions"[4] and "'failure-to-warn' opinions."  *Id.* 2.  As explained in Bayer's opening motion—and unrebutted by plaintiffs—none of Dr. Blume's failure-to-test opinions is tied to an FDA regulatory provision.  Mot. 15; *see* Blume Dep. 206:13-221:5 (unsupported failure-to-test opinions).  Plaintiffs cite two examples of Dr. Blume's failure-to-warn opinions that they claim are properly supported with regulatory standards, Opp. 9-10, but they do not contest Bayer's argument that Dr. Blume's failure-to-test opinions are not tied to regulatory provisions.  Mot. 8-9, 14-15.  Thus, contrary to plaintiffs' argument that Dr. Blume offers only "one particular opinion" that is not adequately supported, Opp. 9 & n.8, Dr. Blume's testimony regarding one of the two main subjects on which she is being presented is not grounded in any FDA regulatory requirement.  *See*, *e.g.*, Expert Rep. of Cheryl D. Blume, Ph.D. ("Blume Rep.") (Oct. 4, 2010) ("Blume Rep.") ¶¶ 36, 38, 74, 76, 85 (Ex. A to Mot.).  Even more problematic is Dr. Blume's attempt to obfuscate this weakness in her failure-to-test opinions by citing regulatory provisions that have no bearing on a pharmaceutical manufacturer's obligation to conduct scientific studies.  Blume Dep. 206:13-221:5; *see also* Parisian Order, 709 F. Supp. 2d at 1339-41; Mot. 8-9.

    ***Failure to disclose materials on which she is relying.***  Bayer cited multiple instances at deposition where Dr. Blume refused to confirm that she disclosed all materials on which she relied.  Mot. 9-10.  For example, plaintiffs do not explain Dr. Blume's testimony that she "may have relied upon something else that isn't specifically cited in the report, it may have happened."  Blume Dep. 39:12-13.  This and similar testimony in which Dr. Blume hedges about her disclosure obligations calls her testimony into further doubt.  *Cf.* Parisian Order, 709 F. Supp.

---

[4] Bayer's motion referenced these as "failure to study" opinions.

2d at 1339 (critiquing that Dr. Parisian "considered evidence and formed new opinions the night before the *Daubert* hearing").  Moreover, despite plaintiffs' promise at her deposition to confirm that Dr. Blume has made complete disclosures, no such confirmation has been forthcoming.[5]

## II.    DR. BLUME'S TESTIMONY VIOLATES THE COURT'S *BUCKMAN* AND PARISIAN ORDERS.

### A.    Dr. Blume Offers Testimony That Violates The *Buckman* Order.

In its motion, Bayer demonstrated that many of Dr. Blume's opinions violate the Court's *Buckman* Order.  Mot. 10-13.  Plaintiffs concede that Dr. Blume may not testify about "Bayer's compliance or non-compliance with FDA reporting requirements" and disclaim that Dr. Blume has any intention to offer this improper testimony.  Opp. 10-11.  Unfortunately, Dr. Blume persists in offering such opinions anyway—in multiple instances in her report and at her deposition, s*ee* Mot. 10-13 (citing examples)—and plaintiffs have not adequately demonstrated that she can be persuaded to abide by this Court's or plaintiffs' counsel's directives.  *See* Blume Dep. 143:23-144:21; 218:21-219:12 (contradicting plaintiffs' counsel's statement that she will not offer opinions that violate *Buckman*).  This testimony should be excluded.

First, plaintiffs claim that Dr. Blume herself has disavowed any intention to testify about Bayer's alleged failure to provide information to FDA.  Opp. 10.  This is false.  As plaintiffs' own citation to the record shows, Dr. Blume testified only that she does not plan to critique Bayer's submission of the IND for Trasylol to FDA.  Blume Dep. 145:18-23.  But she repeatedly stated that she plans to testify that Bayer failed to submit certain post-marketing

---

[5] At the deposition, defense counsel explained to plaintiffs' counsel that Dr. Blume's reliance on undisclosed materials would result in substantial prejudice to Bayer, necessitating a motion "to strike any reliance on anything that's not disclosed to [defendants]."  Blume Dep. 40:20-25. Plaintiffs' counsel agreed that they would "certainly look into that" and confirm that Dr. Blume disclosed all of these materials.  *Id.* 39:22-41:14.  As of the date of filing this Reply, however, defense counsel has not received any such confirmation from plaintiffs' counsel.

safety data to FDA:

- "My report indicates that certain studies were not provided to the FDA." *Id.* 144:18-19.

- "Q. Are you claiming that Bayer was required to report the fact of the Italian marketing suspension to the FDA and that Bayer violated FDA regulations and guidances by not doing so? A. Yes." *Id.* 334:18-23.

- "As I recall, that was in 2006 for data that were available in 2003, so I guess in addition to [i]3, I would add the studies [that] have been called the Kress and Stone study, and the Treasure study, St. George Hospital study, I would add those, that FDA did not receive those." *Id.* 161:6-11.

This is all testimony that plaintiffs concede is prohibited under *Buckman*. *See* Opp. 10-11.

Second, plaintiffs are wrong that Dr. Blume only provided this testimony in response to defense questioning. *See* Opp. 11. At deposition, plaintiffs' counsel claimed that "nowhere in this report does Dr. Blume state that there was a failure to provide specific information to the FDA." Blume Dep. 143:24-144:1. This is demonstrably wrong, as the following examples illustrate:

- "Based likely at least in part on the incomplete data provided to them by Bayer . . . the Advisory Committee did not require action." Blume Rep. ¶ 62.

- "Although the final version of [the Treasure Study] was dated December 11, 2003, it was not submitted to the FDA until nearly three years later (November 2006) following Bayer's admission that they failed to provide information from the i3 Drug Safety (Ingenix) study to the FDA Advisory Committee." *Id.* ¶ 54.

- "Although Bayer was apparently concerned with [the Kress and Stone study] results . . . they were not published or submitted to the FDA, violating reporting standards and internal practices." *Id.* ¶ 53.

- "this suspension does not appear to have been reported [to FDA] in either the NDA Annual Report for Trasylol" or the "Periodic Adverse Drug Experience Report" *Id.* ¶ 49.

- "Bayer failed to mention to FDA . . . that, prior to the Advisory Committee Meeting, they had received preliminary results from" the i3 Drug Safety. *Id.* ¶ 63.

- "Bayer did not inform FDA" of results from Kress and Treasure. *Id.* ¶ 64.

- "A copy of the Treasure study was included in the submission [to FDA] . . . but a copy of the Kress study was not attached." *Id.* ¶ 66.

Plaintiffs' opposition does not even address the improper opinions in her report. Accordingly, it is far from "plain[]," Opp. 10, that Dr. Blume will abide by the Court's *Buckman* Order or plaintiffs' counsel's instructions on this point if she were permitted to testify at trial.

### B. Dr. Blume Offers Testimony That Violates The Parisian Order.

#### 1. Merely citing FDA regulations does not satisfy the requirement of providing expert analysis.

Plaintiffs' response to Bayer's showing that Dr. Blume's opinions lack expert analysis is that Dr. Blume's opinions are (at times) "followed by [] CFR citations." Opp. 12. But merely inserting a string of citations after a conclusion does not make an opinion reliable under Rule 702 and *Daubert*. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). As this Court already has recognized in the area of regulatory expert testimony, the witness must include "analysis or connection between the facts and the opinions." Parisian Order, 709 F. Supp. 2d at 1349 ("On the rare occasion where Dr. Parisian states that Bayer violated a specific regulation with some specific action, she *fails to explain why that regulation was violated*.") (emphasis added); *see also Kaufman v. Pfizer Pharms., Inc.*, 1:02-cv-22692, slip op. at 12 (D.E. 269) (S.D. Fla. Aug. 4, 2011) (expert "must explain *how* her experiences led to the conclusions she reached, *why* her experiences are sufficient bases for her opinions, and how her experiences are *reliably applied* to the facts of the case") (Ex. D to Mot.). Regardless of whether she includes citations to the C.F.R. at the end of her report paragraphs, as explained at length in Bayer's motion, Mot. 13-

15, Dr. Blume omits the regulatory analysis—the "critical link" necessary to provide proper expert testimony.  Parisian Order, 709 F. Supp. 2d at 1349 n.34.[6]

## 2. Dr. Blume may not offer factual narratives or summarize documents.

The Court already has held that "a narrative of select regulatory events and a summary of Bayer's internal documents" falls "outside the proper scope of expert testimony." *Id.* at 1337.  Plaintiffs claim that Dr. Blume "proffers a concise 44-page report that includes references to regulations, textbooks, industry documents or factual materials after each assertion."  Opp. 13.[7]  But plaintiffs cannot deny that a significant portion of Dr. Blume's proposed testimony seeks impermissibly to regurgitate a factual narrative of matters over which she has no personal knowledge.  For example, Dr. Blume offers the following factual testimony about the 2006 FDA Advisory Committee based solely on the contents of Bayer documents:

> Knowing that Bayer had not discussed their safety data at the Advisory Committee meeting, Dr. Alexander Walker of i3 Drug Safety requested that Bayer submit the draft study report to FDA (BAY03498393; BHCAG01034947; BHCAG04211548).  Bayer submitted the draft i3 report to FDA on September 27, 2006 (BAY00323004; BAY03514820).  On September 29, 2006, FDA announced that, based on the i3 results, Trasylol may increase the risk of death, serious kidney damage, congestive heart failure and strokes (BAY00981697).  FDA also noted that they had not been aware of this data at the time of the Advisory Committee Meeting.

Blume Rep. ¶ 65; *see*, *e.g.*, *id.* ¶¶ 25-33; 40-49; 51-52; 56-59; 61-72; 78-81; 83-84; 87-94; 96-97 (improper factual narrative testimony).  Plaintiffs again fail to address the numerous examples Bayer offers where Dr. Blume was not a percipient witness to the factual matters she seeks to

---

[6] For the same reason, plaintiffs' contention that Dr. Blume does not offer impermissible "bad company" testimony is meritless.  Opp. 13-14.  Plaintiffs do not—and cannot—show that Dr. Blume provided any expert analysis or supporting standards for the improper opinions Bayer cited in its Motion and opinions of that ilk.  *See* Mot. 19 (citing Blume Rep. ¶¶ 42, 103).

[7] It simply is not true that Dr. Blume includes references to regulations, textbooks, or industry documents after each assertion in her report, and it is hard to see how her inclusion of "factual materials," whatever that might mean, alleviates the concern that she merely is offering a factual narrative.  Opp. 13.

recite and where no expertise is needed to summarize or read internal Bayer documents to the jury.  Mot. 15-17.  The Parisian Order forecloses plaintiffs' experts from providing this kind of advocacy.  709 F. Supp. 2d at 1346; *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding factual narrative testimony).[8]

### 3.     The Parisian Order excludes testimony about Bayer's knowledge.

Plaintiffs concede that "Dr. Blume will not opine about Bayer's motives or intent,"[9] but inexplicably maintain that Dr. Blume may speculate about Bayer's knowledge because "[w]hen the Parisian Order speaks of improper references to 'knowledge' it refers to inferences of 'the FDA's knowledge'" but not Bayer's knowledge.  Opp. 14.  That is not what the Parisian Order holds.  Rather, it states:  "I found that many of the opinions challenged by Bayer fall outside the proper scope of expert testimony because they contain improper references to *Bayer's* and the FDA's knowledge and intent."  709 F. Supp. 2d at 1337-38 (emphasis added).  Moreover, plaintiffs' claim that "[e]very reference [in the Parisian Order] to improper testimony regarding Bayer's mental state dealt with inferences of motive or intentions—not knowledge," Opp. 14, also is incorrect.  *See* Parisian Order, 709 F. Supp. 2d at 1338 ("examples of improper references to *knowledge* and intent" include opinions stating "that Bayer *was aware* that FDA changed its risk-benefit profile for Trasylol but 'continued to expand the Trasylol sales force and provided training and sales aids designed to help minimize the risks of Trasylol for physicians'")

---

[8] Plaintiffs are wrong that the expert in *Rezulin* was offered only to give a history of Rezulin and nothing more.  Like Dr. Blume, the excluded *Rezulin* expert was offered to testify on "regulatory matters including comments on FDA requirements for drug studies and aspects of the FDA's approval process for Rezulin."  309 F. Supp. 2d at 547 n.50.

[9] Dr. Blume opines about Bayer's motive and intent anyway.  *E.g.*, Blume Rep. ¶ 51 (opinion that "Bayer advocated the publication of manuscripts authored by Drs. Royston and Spiess to 'counterbalance the Mangano effect'" improperly speculates about motive).  Plaintiffs have conceded that this is inadmissible testimony.  Opp. 14 ("Dr. Blume will not opine about Bayer's motives or intent.").

(emphasis added).  Under this Court's prior order, Dr. Blume may not speculate about defendants' knowledge, as well as their motives or intent.  *Id.*

### 4.    Dr. Blume's "industry standards" opinions are inadmissible.

Plaintiffs do not contest Bayer's showing that neither Dr. Parisian nor Dr. Furberg offered testimony based on industry standards and Dr. Blume's testimony therefore impermissibly exceeds the scope of the topics of these prior witnesses' testimony.  *See* Mot. 22; Opp. 17.  Accordingly, Dr. Blume's opinions that Bayer's conduct violated supposed industry standards impermissibly "expand upon . . . the scope of the original expert's documented opinions" and should be excluded on this ground alone.  Order Granting Pls.' Mot. for Leave to File Supplemental Generic Expert ("Substitution Order") (D.E. 6807, Aug. 6, 2010) at ¶ 2.[10]

Moreover, in arguing that PhRMA and other unspecified "industry documents and texts" establish industry standards, Opp. 15, plaintiffs leave unanswered defendants' key point that Dr. Blume could not articulate a valid basis for asserting that these documents are "industry standards" or point to sufficiently concrete benchmarks by which to evaluate meaningfully Bayer's conduct.  *See*, *e.g.*, Blume Dep. 185:19-20 ("I don't know if I would call [Exhibit 13] an industry standard.").[11]  For example, Dr. Blume invokes a "Frequently Asked Questions" document from PhRMA's website that is unrelated to her opinions and addresses issues such as:

- "Does the time of day when I take my medication matter?"
- "Can I take expired medications?"
- "Should I store my medicines in the bathroom medicine cabinet?"

---

[10] It is not surprising that the Parisian Order "includes no prohibition on industry standard testimony," Opp. 15, in light of the fact that Dr. Parisian did not offer any such testimony, *see* Mot. 22.  What the Court did exclude was testimony by plaintiffs' new regulatory expert that goes beyond the scope of the prior experts' testimony.  Substitution Order ¶ 2.

[11] *Id.* Ex. 16 (PhRMA document including general statements such as "PhRMA members are committed to the development of life-saving and life-enhancing medicines") (attached hereto as Ex. G); *see also id.* 169:14-170:10; 174:24-175:23; 184:21-195:14.

- "Is it okay to have an emergency supply of medicine handy in my car?"
- "Can I crush drugs that I have difficulty swallowing?"
- "Does it matter what I drink when I take medications?"

Blume Dep. Ex. 13 (cited at Blume Rep. ¶ 76).

Further, plaintiffs are wrong that *Prempro* is inapplicable because it involved Arkansas law.  Opp. 16-17.  In *Prempro*, Dr. Blume sought to offer the same testimony she does here:  "the reasonable standard of care that Defendants should have followed in the continued testing of [its drug] after it was placed on the market."  *In re Prempro Prods. Liab. Litig.* (*Ingram v. Wyeth, Inc.*), No. 4:05-cv-00718, 2010 WL 5663003, at *2 (E.D. Ark. Sept. 16, 2010).  The *second* reason the Court gave for excluding Dr. Blume's testimony was that plaintiff failed to show the PhRMA Code was admissible as a standard of care under Arkansas law.  *Id.*; *see* Opp. 16-17.  But the court's *first* reason for excluding her testimony was that use of the PhRMA Code "would likely cause confusion, undue prejudice, and delay" under Federal Rule 403 because it does not *require* a manufacturer to engage in any particular conduct.  *Prempro MDL*, 2010 WL 5663003, at *2*.  Other courts similarly have recognized that the general principles of "the PhRMA Code [do] not provide a reliable foundation" for an expert's failure-to-test opinions.  *See Kaufman*, slip op. at 15-16.  This reasoning is directly applicable here.  *See* Mot. 21-22.

## III.     THE COURT SHOULD EXCLUDE DR. BLUME'S TESTIMONY ON MATTERS ABOUT WHICH SHE LACKS EXPERTISE.

### A.     Dr. Blume Is Not Qualified To Offer Factual Conclusions About Whether Bayer Adhered To Its SOPs.

The Court should reject plaintiffs' attempt to bootstrap an improper factual conclusion regarding Bayer's SOPs—which is not based on Dr. Blume's personal knowledge or any expertise—to an FDA regulatory opinion that was supplied, not by Dr. Blume, but by plaintiffs' counsel in their opposition to Bayer's motion.  Opp. 5.  Specifically, plaintiffs and Dr.

13

Blume concede that "she has not worked for Bayer and had no role in drafting Bayer's SOPs." Opp. 5; *see also* Blume Dep. 124:6-8 ("But I do not consider myself an expert in Bayer's standard operating procedures."). Thus, Dr. Blume has no expertise in Bayer's SOPs and should not be permitted to opine about them. Dr. Blume further concedes that her opinions about whether Bayer adhered to its own SOPs are factual conclusions based on her review of Bayer documents, not FDA regulatory analysis. Blume Dep. 132:13-25. Thus, Dr. Blume's SOP testimony should be excluded.

Nevertheless, plaintiffs claim that Dr. Blume should be able to offer factual testimony about Bayer's alleged failure to comply with its SOPs because 21 C.F.R. § 211.125(f) requires companies to have and adhere to SOPs. Opp. 5. But *Dr. Blume* did not cite § 211.125(f) anywhere in her report and could only broadly reference Sections 210 and 211 (which contain many sub-parts) at her deposition. Plaintiffs should not be permitted to smuggle in undisclosed opinions and factual conclusions that are properly within the province of the jury. *See* Parisian Order, 709 F. Supp. 3d at 1346 ("Dr. Parisian assumes the role of Plaintiffs' advocate in her presentation of the facts and invades the province of the jury.").

**B.      Plaintiffs' Concessions That Dr. Blume Lacks Expertise To Opine On Medical Causation, Epidemiology, Foreign Regulatory Matters, And State Law Standards Means She Cannot Testify On These Matters.**

Plaintiffs do not challenge Bayer's showing that Dr. Blume is not qualified to testify about medical causation, epidemiology, foreign regulatory matters, and state law standards, claiming that Dr. Blume will not offer opinions on these matters. Opp. 2, 5 n.5, 6. Despite these concessions, however, many of Dr. Blume's opinions contain embedded conclusions or otherwise rely on these areas in which it is uncontested that she lacks expertise. All of these opinions are inadmissible. Mot. 24-25, 27-28.

For example, Bayer's Motion explained that Dr. Blume's failure to warn opinions necessarily include testimony about the implications of scientific studies related to Trasylol, including whether such findings medically warranted changes to Trasylol's labeling, and that Dr. Blume is not qualified to offer these predicate conclusions. *See* Mot. 24-25 (citing examples). Plaintiffs do not rebut this argument and Dr. Blume's labeling opinions on these matters should be excluded. *Id.* Similarly, plaintiffs contend that Dr. Blume will not offer testimony on foreign regulatory matters, Opp. 2, 5 n.5, 6, but they do not address the paragraphs of her report or deposition testimony on this subject cited in Bayer's motion, *see* Mot. 22-23, 27. Dr. Blume should not be permitted to offer this testimony.

Finally, plaintiffs concede that Dr. Blume will not testify based on state-law standards, an area in which she admittedly lacks expertise. Opp. 2, 5 n.5; Blume Dep. 119:13-122:2. Yet plaintiffs maintain that "to the extent that state laws may reflect or inform the general standard of care, they may be discussed by Dr. Blume." Opp. 2 n.3. This statement is problematic for several reasons. First, Dr. Blume concedes that she is not an expert on state law standards. Blume Dep. 119:13-122:2. Therefore, she is not qualified to analyze the ways in which state law may inform the "general standard of care." *See* Opp. 2 n.3. Second, it underscores the unpredictable and unfairly prejudicial nature of Dr. Blume's testimony—if Dr. Blume's opinions are informed by a state law, that information already should have been disclosed to Bayer so it could fully explore the basis for her opinions. Plaintiffs cannot leave the door open to allow Dr. Blume to form new opinions or supplement her opinions to include new bases in the future. *See* Parisian Order, 709 F. Supp. 2d at 1339 (critiquing that Dr. Parisian "considered evidence and formed new opinions the night before the *Daubert* hearing").

## CONCLUSION

For these reasons and those in the opening brief, Bayer respectfully submits that Dr. Blume's proposed testimony is inadmissible and should be excluded in its entirety.

October 3, 2011                                    Respectfully submitted,

                                                   *//s/ Barbara Bolton Litten*
                                                   Patricia E. Lowry
                                                   Florida Bar No. 332569
                                                   E-mail:  plowry@ssd.com
                                                   Barbara Bolton Litten
                                                   Florida Bar No. 91642
                                                   E-mail:  blitten@ssd.com
                                                   **SQUIRE, SANDERS & DEMPSEY (US) LLP**
                                                   1900 Phillips Point West
                                                   777 South Flagler Drive
                                                   West Palm Beach, FL  33401-6198
                                                   Telephone:  561-650-7200
                                                   Facsimile:   561-655-1509

                                                   Philip S. Beck
                                                   Email:  philip.beck@bartlit-beck.com
                                                   Steven E. Derringer
                                                   Email:  steven.derringer@bartlit-beck.com
                                                   **BARTLIT BECK HERMAN PALENCHAR
                                                        & SCOTT LLP**
                                                   54 W. Hubbard Street, Suite 300
                                                   Chicago, IL  60603
                                                   Telephone:  312-494-4400
                                                   Facsimile:  312-494-4440

                                                   Eugene A. Schoon
                                                   Email:  eschoon@sidley.com
                                                   Susan A. Weber
                                                   Email:  saweber@sidley.com
                                                   **SIDLEY AUSTIN LLP**
                                                   One South Dearborn Street
                                                   Chicago, Illinois 60603
                                                   Telephone:  312-853-7000
                                                   Facsimile:   312-853-73036

16

Rebecca K. Wood
Email:  rwood@sidley.com
Amy L. Hanke
Email:  ahanke@sidley.com
**SIDLEY AUSTIN LLP**
1501 K Street, NW
Washington, DC 20005
Telephone:  202-736-8000
Facsimile:  202-736-8711

Susan Artinian
Email:  sartinian@dykema.com
Daniel Stephenson
Email:  dstephenson@dykema.com
**DYKEMA GOSSETT PLLC**
400 Renaissance Center
Detroit, MI  48243
Telephone:  313-268-9788
Facsimile:  313-568-6658

Richard K. Dandrea
Email:  rdandrea@eckertseamans.com
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
USX Tower, 600 Grant St., 44th Floor
Pittsburgh, PA.  15219
Telephone:  412-566-6000
Facsimile:  412-566-6099

*Attorneys for Bayer Corporation,*
*Bayer HealthCare Pharmaceuticals Inc.,*
*and Bayer Pharma AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*//s/ Barbara Bolton Litten*
Patricia E. Lowry

18

## SERVICE LIST

**In re Trasylol Products Liability Litigation – MDL-1928**
**Case No. 08-MD-1928-MIDDLEBROOKS/JOHNSON**

**United States District Court**
**Southern District of Florida**

James R. Ronca
Email: jronca@anapolschwartz.com
**ANAPOL, SCHWARTZ, WEISS, COHAN, FELDMAN
& SMALLEY, P.C.**
1710 Spruce Street
Philadelphia, PA 19103
Telephone: 215-790-4584
Facsimile:  215-875-7701
***Co-Lead Counsel for Plaintiffs***

Theodore Babbitt
Email: tedbabbitt@babbitt-johnson.com
**BABBITT JOHNSON OSBORNE
& LECLAINCHE, P.A**.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
Telephone: 561-684-2500
Facsimile:  561-684-6308
***Liaison Counsel for Plaintiffs***

Patricia E. Lowry
Florida Bar No. 332569
Email: plowry@ssd.com
**SQUIRE, SANDERS & DEMPSEY (US) LLP**
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
Telephone: 561-650-7200
Facsimile:  561-655-1509
***Liaison Counsel for Defendants***

Scott A. Love
Email:  slove@triallawfirm.
**CLARK BURNETT LOVE & LEE, GP**
Lyric Center
440 Louisiana Street, Suite 1600
Houston, TX  77002
Telephone:  713-757-1400
Facsimile:  713-759-1217
***Co-Lead Counsel for Plaintiffs***

Neal L. Moskow
Email: neal@urymoskow.com
**URY & MOSKOW, LLC**
883 Black Rock Turnpike
Fairfield, CT 06825
Telephone: 203-610-6393
Facsimile:  203-610-6399
***Federal-State Liaison for Plaintiffs***